William J. O'Shaughnessy (WJO 5256)
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Evan R. Chesler
Richard J. Stark
David R. Marriott
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Richard S. Taffet
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

Attorneys for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION | Civil Action No. 05-3550 (MLC) |
| Plaintiff, | NOTICE OF MOTION |
| v. | Return Date: June 19, 2006 |
| QUALCOMM INCORPORATED, | Oral Argument Requested |
| Defendant. | |

TO:    WILLIAM S. FEILER, ESQ.
       Morgan & Finnegan, LLP
       3 World Financial Center
       New York, NY 10281-2101
       (212) 415-8700
       Fax: (212) 415-8701

       Attorneys for Telefonaktiebolaget LM Ericsson and Ericsson, Inc.

DAVID S. STONE, ESQ.
Boies, Schiller & Flexner LLP
150 John F. Kennedy Parkway
Short Hills, NJ 07078
(973) 218-1111
Fax: (973) 218-1106

Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500
Fax: (202) 974-1999

Boies, Schiller & Flexner LLP
570 Lexington Avenue
New York, NY 10022
(212) 446-2300
Fax: (212) 446-2350

Attorneys for Plaintiff

PLEASE TAKE NOTICE that Defendant QUALCOMM Incorporated

("QUALCOMM") will move this Court at The Fisher Federal Building and United States

Courthouse, 402 East State Street, Trenton, New Jersey, on June 19, 2006 at 9 a.m., before

Magistrate Judge John J. Hughes, for an order pursuant to Fed. R. Civ. P. 45(c)(2)(B) compelling

the production of documents by Telefonaktiebolaget LM Ericsson and its wholly owned U.S.

subsidiary, Ericsson, Inc. responsive to QUALCOMM's April 4, 2006, and February 27, 2006,

subpoenas; and granting such other and further relief as the Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that in support of the motion,

QUALCOMM relies on the accompanying Memorandum in Support of QUALCOMM'S Motion

to Compel the Production of Documents by Telefonaktiebolaget LM Ericsson and Ericsson, Inc.

and the Declaration of Fabian D. Gonell with exhibits thereto.

2

PLEASE TAKE FURTHER NOTICE that a proposed form of order granting

QUALCOMM's motion is submitted with the motion.

Dated:  May 26, 2006

McCARTER & ENGLISH, LLP


By: _s/ William J. O'Shaughnessy_____
     William J. O'Shaughnessy

       P.O. Box 652
       Four Gateway Center
       100 Mulberry Street
       Newark, NJ 07101-0652
       (973) 622-4444

CRAVATH, SWAINE & MOORE LLP
     Evan R. Chesler
     Richard J. Stark
     David R. Marriott
       Worldwide Plaza
       825 Eighth Avenue
       New York, NY 10019
       (212) 474-1000

BINGHAM McCUTCHEN LLP
     Richard S. Taffet
       399 Park Avenue
       New York, NY 10022
       (212) 705-7000

*Attorneys for Defendant Qualcomm Incorporated*

ME1\5670097.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BROADCOM CORPORATION,

Plaintiff,

v.

QUALCOMM INCORPORATED,

Defendant.

Civil Action No. 05-3350 (MLC)

RETURN DATE:  JUNE 19, 2006

---

MEMORANDUM IN SUPPORT OF QUALCOMM INCORPORATED'S MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS BY TELEFONAKTIEBOLAGET LM
ERICSSON AND ERICSSON, INC.

---

William J. O'Shaughnessy  (WJO-5256)
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-0652

Evan R. Chesler
Richard J. Stark
David R. Marriott
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Richard S. Taffet
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, New York 10022
(212) 705-7000

Attorneys for Defendant

**Table of Contents**

Page

Table of Authorities ..................................................................................................... ii

Background .................................................................................................................4

    A.    The Litigation....................................................................................4

           1.    Broadcom's Allegations and QUALCOMM's Motion to Dismiss..................................................................................4

           2.    The Court's Scheduling and Discovery Orders ...............................5

    B.    QUALCOMM's Need for Discovery from Ericsson....................................5

           1.    Ericsson Has Documents Highly Relevant to QUALCOMM's Defenses that QUALCOMM Cannot Obtain from Broadcom ........5

           2.    Ericsson Is Acting in Concert With Broadcom Against QUALCOMM.............................................................................8

    C.    QUALCOMM's Subpoena and Ericsson's Objections ...............................9

Argument ................................................................................................................14

I.    ERICSSON'S ATTEMPT TO DELAY PRODUCTION UNTIL JUDGE COOPER DECIDES QUALCOMM'S MOTION TO DISMISS IS IMPROPER.......................................................................................................14

II.    ERICSSON CANNOT LIMIT ITS PRODUCTION TO DOCUMENTS REGARDING ACTIVITIES IN THE UNITED STATES ...................................16

III.    ERICSSON CANNOT LIMIT ITS PRODUCTION TO AN ARBITRARY DATE RANGE ........................................................................................17

    A.    Ericsson's Refusal to Produce Selected Documents Dated Before July 1, 2001, Is Improper ........................................................................18

    B.    Ericsson's Refusal to Produce Documents Dated After July 1, 2005, Is Improper.............................................................................................19

Conclusion ..............................................................................................................21

## Table of Authorities

Page

**Cases**

Am. Health Sys., Inc. v. Liberty Health Sys., Civ. A. No. 90-3112, 1991
    WL 3076 (E.D. Pa. Mar. 5, 1991) ............................................................................. 14

Brown Shoe Co. v. United States, 370 U.S. 294 (1962) .................................................... 13

DIRECTV, Inc. v. Richards, No. Civ. 03-5606 (GEB), 2005 WL 1514187
    (D.N.J. June 27, 2005) .................................................................................................. 16

Fitzgerald v. Henderson, 251 F.3d 345 (2d. Cir. 2001) .................................................... 18

Kellam Energy, Inc. v. Duncan, 616 F.Supp. 215 (D.C. Del. 1985) ................................ 14

Mathews v. Lancaster Gen. Hosp., 87 F.3d 624 (3d Cir. 1996) ....................................... 13

U.S. v. IBM Corp., 66 F.R.D. 186 (S.D.N.Y. 1974) ......................................................... 14


**Statutes**

24 Am. Jur. 2d Limitation of Actions § 24 (2005) ............................................................ 18

5 Bus. & Commercial Litig. Fed. Cts. § 61:8 (Robert L. Haig, ed.) (2d ed.
    2006) .............................................................................................................................. 14

Manual for Complex Litigation § 30.2 (4th ed. 2004) ...................................................... 14

Telefonaktiebolaget LM Ericsson ("LM Ericsson") and its wholly owned U.S. subsidiary, Ericsson, Inc. ("Ericsson U.S.") (collectively, "Ericsson"), refuse to produce documents in response to subpoenas served by QUALCOMM Incorporated ("QUALCOMM") on April 4, 2006 (Gonell Ex. 1)[1], and February 27, 2006 (Gonell Ex. 2) until Judge Cooper decides QUALCOMM's pending motion to dismiss the First Amended Complaint filed by Broadcom Corporation ("Broadcom") on September 19, 2005. Moreover, Ericsson has stated that even after Judge Cooper decides that motion, it refuses to produce documents responsive to QUALCOMM's subpoenas regarding (i) activities outside the United States; and (ii) outside the arbitrary date range of July 1, 2001, to July 1, 2005. In addition, Ericsson has stated that it believes it "unreasonable" and "unnecessary" even to meet and confer with QUALCOMM regarding the subpoenas until after Judge Cooper decides QUALCOMM's motion to dismiss.

Ericsson's position is untenable. First, fact discovery in this case is scheduled to end on December 31, 2006, and the Court has repeatedly stated that it does not intend to extend that date. The motion to dismiss will not even be argued until June 26. In such circumstances, it is inappropriate for Ericsson to delay producing responsive documents during the pendency of QUALCOMM's motion. (See Part I.)

Second, plaintiff Broadcom has alleged "worldwide" and "global" relevant antitrust markets, and its complaint is replete with references to actions allegedly occurring outside the United States. Accordingly, there is no basis for Ericsson's contention that events outside the United States are "irrelevant" and its refusal to produce

---

[1] Citations in the form "Gonell Ex. ___" are to exhibits to the Declaration of Fabian D. Gonell dated May 26, 2006, submitted herewith.

documents regarding such actions.  (See Part II.)  Broadcom's allegations, not Ericsson's view of the world, determine the scope of discovery.

Third, Broadcom's complaint alleges anticompetitive activity before July 1, 2001, and after July 1, 2005.  QUALCOMM's requests seek documents relating to those allegations.  Accordingly, there is no basis for Ericsson's contention that documents created before July 1, 2001, and after July 1, 2005 are "irrelevant" and its blanket refusal to produce such documents.  (See Part III.)

Discovery of Ericsson is critical to QUALCOMM's defense in this antitrust case.  Ericsson is one of the leading players in the mobile telecommunications industry.  It is a direct competitor of both QUALCOMM (as a maker of wireless communications chips) and QUALCOMM's downstream customers (handset and base station manufacturers), as well as a major patent holder, licensor and participant in standards development organizations ("SDOs").  As such, Ericsson holds crucial, unique information that is directly relevant to central issues in this case, including market definition, competition among the various industry players, licensing practices in the industry, the impact (positive, negative or neutral) of various types of conduct on competition in the industry, and many of the specific factual matters alleged in Broadcom's complaint.

In this case, Broadcom broadly questions QUALCOMM's role in and impact on the mobile telecommunications industry as a whole.  In order to defend itself against Broadcom's charges, QUALCOMM intends to demonstrate, *inter alia*, that there is robust competition in the relevant markets, that QUALCOMM's business practices are pro-competitive and not unreasonable, and that QUALCOMM's license terms are

2

consistent with the understanding of "fair, reasonable and non-discriminatory" in the industry generally. To do this, QUALCOMM must obtain discovery of other industry players on a number of issues relating to the structure and operation of the industry and of the conduct and experience of QUALCOMM's competitors within the industry. That is precisely what QUALCOMM seeks from Ericsson.

It is also noteworthy that Ericsson is hardly a disinterested bystander relative to this dispute. Ericsson is, in fact, one of Broadcom's co-complainants in a parallel proceeding before the European Commission, through a letter to Judge Cooper in this very case, has aligned itself directly with Broadcom in opposing to QUALCOMM's motion to dismiss. (Letter from L. Walsh, counsel for Ericsson, Nokia Corp. and Texas Instruments Inc., to Judge Mary L. Cooper dated Feb. 24, 2006 (Gonell Ex. 3).) Indeed, Ericsson is working in concert with Broadcom, Nokia and others as part of an effort they refer to as "Project 17" or "Project Stockholm" (and perhaps other codenames), (see BCMBLA0868475, BCMBLA0467013-014 (Gonell Exs. 4-5)), to hobble QUALCOMM as a competitor by, among other things, bringing a coordinated series of lawsuits in various jurisdictions. These facts, we believe, render untenable any claim of "burden" by Ericsson and militate in favor of prompt, full compliance with QUALCOMM's subpoenas.

For all the reasons stated above and discussed in more detail below, QUALCOMM respectfully asks the Court to grant this motion to compel and order Ericsson to comply with the subpoenas fully.

**Background**

A.    The Litigation

Over the past 16 years, QUALCOMM has pioneered and led the commercialization of a digital communication technique called Code Division Multiple Access ("CDMA"). As a result of this long history of innovation, QUALCOMM has developed significant intellectual property, including patents, patent applications and trade secrets, that it licenses to other companies. The wireless communications industry generally recognizes that a company seeking to develop, manufacture or sell products that use CDMA technology will need a patent license from QUALCOMM. Accordingly, virtually every major wireless communications company has taken a license to QUALCOMM's patents.

Broadcom is a latecomer to the mobile wireless communications industry. To produce and sell lawfully integrated circuit chips for use in cell phones that comply with the Wideband Code Division Multiple Access ("WCDMA") Third Generation ("3G") standard, a technology based on CDMA, Broadcom needs to license certain patents from QUALCOMM.

1.    Broadcom's Allegations and QUALCOMM's Motion to Dismiss

Fundamentally, the basis for Broadcom's Complaint is that QUALCOMM owns patents that are essential to CDMA and WCDMA, and thus to products Broadcom wants to make and sell. Obviously, there is nothing unlawful about that. Accordingly, Broadcom has dressed up this grievance in the guise of a hodge-podge of federal antitrust and state law claims generally directed at QUALCOMM's licensing practices and at its

4

pricing of baseband modem chips[2] used in cell phones.  QUALCOMM has moved to dismiss all of Broadcom's claims on a number of grounds.  Judge Cooper has scheduled argument on QUALCOMM's motion to dismiss for June 26, 2006.

> 2.    The Court's Scheduling and Discovery Orders

On September 22, 2005, the Court entered an Order that, among other things, scheduled the close of fact discovery for December 31, 2006.  (Order dated Sept. 22, 2005 (Gonell Ex. 6.), at 1.)  The Court has indicated that closing date is firm.

Notably, at a conference on February 22, 2006, the Court ruled that, because it did not intend to change the deadline for the end of discovery, QUALCOMM would have to produce certain documents concerning Broadcom's Flarion-related claims by April 22, 2006 (notwithstanding QUALCOMM's contention that Broadcom lacks standing to assert such claims) if Judge Cooper had not granted QUALCOMM's motion by that date.  (Order dated Mar. 13, 2006 (Gonell Ex. 7), at 1.)

During the most recent teleconference, held on April 17, 2006, the Court reiterated that it did not intend to extend the discovery deadlines and described the December 31, 2006 deadline as "set in stone".

> B.    QUALCOMM's Need for Discovery from Ericsson

> > 1.    Ericsson Has Documents Highly Relevant to QUALCOMM's
> > Defenses that QUALCOMM Cannot Obtain from Broadcom

Ericsson describes itself as "a world-leading provider of telecommunications equipment and related services to mobile and fixed network operators globally" and claims that "40 percent of all mobile calls are made through [its]

---

[2] A "baseband modem" chip is the central brain in a cell phone, which processes radio signals and performs many other essential functions.

systems". See Ericsson Corporate Info., http://www.ericsson.com/ericsson/corpinfo/
index.shtml (last visited May 26, 2006).  Ericsson participates in all phases of the mobile
telecommunications industry.  Specifically, Ericsson (1) manufactures and sells
infrastructure equipment to carriers deploying mobile telecommunications networks; (2)
manufactures and sells mobile baseband chips, in competition with, among others,
QUALCOMM, for use in mobile phones and other subscriber equipment; and (3)
manufactures and sells, through a joint venture with Sony Corporation, Sony Ericsson
Mobile Communications AB ("SEMC"), mobile telephones for consumer use.  See, e.g.,
Ericsson Summary Annual Report 2005 (Gonell Ex. 8), at 10, 17, 19, 30, available at
http://www.ericsson.com/ericsson/investors/financial_reports/2005/annual05/summary_d
ownloads/summary2005_en.pdf (last visited May 25, 2006).  Ericsson also is an active
participant in standards development organizations ("SDOs"), and was a key promoter of
the use of WCDMA in the SDOs.  (See, e.g., QBN00805995-999 (Gonell Ex. 9)
(reporting on "ETSI SMG2 Concept Group Alpha (W-CDMA) Meeting Stockholm 9/15-
16, Hosted by Ericsson") (emphasis added)).

Because of its longtime participation in all phases of the mobile
telecommunications industry, Ericsson has documents highly relevant to QUALCOMM's
defenses and that QUALCOMM cannot obtain from Broadcom.  First, because Ericsson
was a key participant in SDOs at the time Broadcom alleges QUALCOMM defrauded
those SDOs (see, e.g., id.), Ericsson likely has documents relating to the SDO
participants' (including Ericsson's) contemporary understanding of FRAND
commitments, the alternatives to QUALCOMM's patented technology that the SDOs
were considering at the time, and the SDO participants' (including Ericsson's) reliance, if

6

any, on QUALCOMM's allegedly fraudulent FRAND promises. Broadcom was not a participant in the relevant SDOs at the relevant time, and therefore has none of these documents.

Second, because it is the world's leading developer of mobile communications infrastructure equipment, Ericsson likely has documents that will rebut Broadcom's allegations that "[e]ach type of wireless system (e.g., GSM, 2G CDMA, 2.5G CDMA, 3G CDMA, and UMTS) has unique features and technology, and thus neither the systems, nor the phones used for each system, are interchangeable or substitutes" and that "once a carrier's initial decision to install a system has been made, the sunk investment in that system, and the costs that would be incurred to establish a different system, make it virtually impossible to switch to a different technology". (Am. Compl. ¶ 53.) Indeed, when Telefonica, a Spanish company, chose to replace a CDMA network with a GSM network – precisely the type of change Broadcom claims is "virtually impossible" – it did so using Ericsson equipment and with Ericsson's support. (See Gonell Ex. 8 at 13.) Ericsson has similarly offered to support other carriers in switching from CDMA to GSM. Broadcom does not sell infrastructure equipment and thus, has no first-hand knowledge regarding the ability of carriers to switch between wireless standards.

Third, because of its consumer business through SEMC (see Gonell Ex. 8 at 17), Ericsson is likely to have documents regarding the development time and life cycle of mobile phone models, as well as regarding license terms offered to manufacturers of mobile phones by other companies. Broadcom does not sell consumer mobile telecommunications products, and thus would have no such documents.

Fourth, because Ericsson has an extensive portfolio of patents relating to wireless communications – including many patents that are "essential" to a wireless communications standard and as to which Ericsson has made FRAND commitments (see Gonell Ex. 8 at 8) – its license agreements will be of particular relevance to the issue of the meaning of a FRAND commitment and to establish common licensing practices in the mobile telecommunications industry. Broadcom, as noted above, is a relative newcomer to the mobile telecommunications industry and thus likely has fewer, if any, relevant patents and licenses.

Fifth, because Ericsson is a leading manufacturer of UMTS chips[3] (i.e., the chips sold in the alleged "UMTS chipset market" central to Broadcom's claims), it will have unique and essential documents regarding its costs, its market share, and its competitive position in that alleged market. Broadcom is unlikely to have detailed competitive information regarding Ericsson, and indeed has already stated that it does not know Ericsson's share of the alleged "UMTS chipset market". (See Broadcom Corp.'s Objections and Resps. to Qualcomm Inc.'s First Set of Interrogatories dated Feb. 16, 2006 (Gonell Ex. 10), at 14.)

### 2. Ericsson Is Acting in Concert With Broadcom Against QUALCOMM

As already pointed out, Ericsson is hardly a disinterested third party to this case. To the contrary, Ericsson and Broadcom are apparently acting in concert in a campaign against QUALCOMM called "Project 17" or "Project Stockholm". (See, e.g., Gonell Exs. 4-5.). Ericsson, Broadcom and others filed coordinated complaints against

---

[3] See Gonell Ex. 8 at 27 ("The majority of 3G handsets sold outside Japan are based on technology supplied by Ericsson mobile platforms.").

QUALCOMM before the European Commission's Directorate General – Competition, making many of the same allegations that Broadcom makes here. And at a joint press conference held by representatives of Ericsson, Broadcom and others in October, one of Broadcom's attorneys, Maurits Dolmans, went so far as to say that Broadcom was "carrying the torch in the US" on behalf of Ericsson and others. Transcript of Telephonic Press Conference, held Oct. 28, 2005 (Gonell Ex. 11), at 9, available at http://europe.nokia.com/BaseProject/Sites/NokiaCom_CAMPAIGNS_57710/CDA/Categ ories/PressEvents/_Content/_Static_Files/transcript.pdf (last visited May 25, 2006)[4].

Finally, Ericsson has insinuated itself into this case by, together with Nokia and Texas Instruments, submitting a letter to Judge Cooper on February 24, 2006, in which Ericsson urged the Court to deny QUALCOMM's pending motion to dismiss. (Gonell Ex. 3.) In that letter, Ericsson made several factual assertions regarding QUALCOMM, markets, license practices, FRAND terms and standardization based on its "experience . . . in the marketplace". (See id. at 2.) The documents sought by QUALCOMM's subpoena are, at least in part, documents regarding those assertions.

C.    QUALCOMM's Subpoena and Ericsson's Objections

QUALCOMM's subpoenas to LM Ericsson and Ericsson U.S. seek documents related to the competitive forces and practices within the cellular industry that are central to this action. (Gonell Exs. 1-2.) Requests 1 through 4 and 34 seek production from Ericsson of documents relating to SDOs and their evaluations and

---

[4]    In a later interview with Business Week, Mr. Dolmans stated that it was the joint goal of Broadcom, Ericsson and the other cooperating companies "to bring [Qualcomm] back to the [negotiating] table". Andy Reinhardt, A Scrum Over Qualcomm's Fees, Bus. Wk., Oct. 31, 2005 (Gonell Ex. 12), available at http://www.businessweek.com/ technology/content/oct2005/tc20051031_066557.htm? (last visited on May 25, 2006).

implementation of standards and technologies. Requests 5 through 19, 21, 26 and 30 seek documents from which the parties will learn of industry practices and standards necessary to evaluate Broadcom's claims and QUALCOMM's defenses, including licensing practices and rights and the meaning of licensing on FRAND terms (Requests 5-7, 18), relationships among Ericsson and other industry players (Requests 8-10, 26), competition within the industry and the ease with which technologies are deployed and shifts occur among competing technologies (Requests 11-17, 30), industry shortages (Request 19). Requests 20, 22 through 25, 27 through 29 and 32 seek production of documents relating to QUALCOMM and its entry into the market, its competitive position in the industry, standards, licensing practices, relationships within the industry and the ongoing parallel litigation before the European Commission – third party documents which will more fully develop the Court's and parties' understanding of the market. Requests 31 and 33 seek documents concerning ongoing litigations in which Ericsson is a named party involving the same subject matter at issue herein. As shown above, these requests seek documents essential to QUALCOMM's defenses that QUALCOMM cannot obtain from Broadcom, and many are documents unique to Ericsson.

Ericsson served objections to QUALCOMM's subpoena on April 7, 2006, broadly refusing to produce the vast majority of the requested documents. Ericsson made three objections applicable to the entirety of QUALCOMM's requests. First, Ericsson refused to produce any documents "prior to a final decision by the court on the pending motion to dismiss". (Objections to QUALCOMM's Subpoena to Telefonaktiebolaget LM Ericsson Commanding the Production of Documents (Gonell Ex. 13) at Gen. Obj.

29.)[5] <u>Second</u>, Ericsson refused to produce any documents "regarding activities taking place outside the United States of America". (<u>Id.</u> at Gen. Obj. 3.) <u>Third,</u> Ericsson refused to produce any documents created before July 1, 2001, or after July 1, 2005 (the date of Broadcom's original complaint). (<u>Id.</u> at Gen. Objs. 24-25.) Ericsson also objected to each of QUALCOMM's requests as "overly broad" and "unduly burdensome". (<u>See id.</u> at 8-28.) Ericsson stated that it would produce only a narrow subset of documents limited to "the United States market and relating to WCDMA technology for Universal Mobile Telephone System" in response to Requests Nos. 3, 7-15, 17-20, 27 and 30, and flatly refused to produce any documents responsive to QUALCOMM's Requests Nos. 1-2, 4-6, 16, 21-26, 28-29 and 31-34.

On April 13, 2006, QUALCOMM wrote to Ericsson and attempted to address Ericsson's objections. (Letter from F. Gonell to W. Feiler dated Apr. 13, 2006 (Gonell Ex. 14).) As to the time scope of production, QUALCOMM limited the majority of its requests to documents created between January 1, 2003, and March 31, 2006 (<u>i.e.</u>, a shorter time period than that sought by Ericsson). QUALCOMM stated that it sought older documents only in a limited number of categories where such older documents are of particular relevance.[6] As to Ericsson's objection to producing documents related to

---

[5] LM Ericsson and Ericsson, Inc. served QUALCOMM with virtually identical objections to QUALCOMM's subpoena on April 7, 2006.

[6] QUALCOMM limited its requests to documents created between January 1, 2003, and March 31, 2006, with the exception of the following: (1) Requests 1-5, 9-10 and 27 were limited to documents created between January 1, 1997, and March 31, 2006; (2) requests 13 and 31 were limited to documents created between January 1, 1999, and March 31, 2006; (3) license agreements responsive to requests 6 and 7 were to be produced without regard to their dates; (4) with respect to other documents responsive to requests 6 and 7 related to patents essential to any WCDMA standard, the requests were limited to documents created between January 1, 1999, and March 31, 2006; and (5)

activities outside the United States, QUALCOMM pointed out that Broadcom's

complaint explicitly alleges worldwide markets and refers to activities outside the United

States.  As to Ericsson's refusal to produce documents until QUALCOMM's motion was

decided, QUALCOMM stated that it could not agree to such a delay.  In an attempt to

break the logjam and accelerate the production of documents responsive to the subpoena,

QUALCOMM offered to begin its review of responsive documents by accepting the

following limited production of easily identifiable and easily collected documents as to

which there would be little burden to Ericsson:

- License agreements to essential patents responsive to requests 6 and 7;

- Agreements for the sale of baseband modem chips responsive to requests 14 and 17;

- Communications and document productions to the United States Department of Justice in connection with the Department's investigation of QUALCOMM's acquisition of Flarion;

- Communications and document productions to the Directorate General – Competition of the European Commission in connection with Ericsson's complaint regarding QUALCOMM;

- Ericsson's high-level business plans regarding UMTS and CDMA baseband modem chips responsive to request 14; and

- The common interest or other agreements pursuant to which Ericsson will claim that responsive communications between it and Broadcom or others are privileged.  (Id. at 2-3.)

With a view of obtaining prompt production of documents responsive to the remaining

requests, QUALCOMM also offered to discuss any genuine concerns Ericsson might

have had about the language or scope of any of QUALCOMM's requests, and proposed

---

agreements for the sale of chips responsive to requests 14 or 17 were requested without regard to their dates. (Gonell Ex. 14, at 2.)

that the parties "meet and confer regarding these issues this as soon as possible". (Id. at 3.)

In its April 24, 2006 response, Ericsson stonewalled, reiterating its broad objections and stated that it believed that a meeting to confer on QUALCOMM's specific requests was neither "necessary" nor "reasonable" until QUALCOMM's motion to dismiss was decided. (Letter from W. Feiler to F. Gonell dated Apr. 24, 2006 (Gonell Ex. 15).)

On May 5, 2006, QUALCOMM tried once again to engage Ericsson in a constructive dialogue and to avoid unnecessary motion practice. (See Letter from F. Gonell to W. Feiler dated May 5, 2006 (Gonell Ex. 16).) Ericsson once again stated that meeting to confer on specific requests was neither "necessary" nor "reasonable" until QUALCOMM's motion to dismiss was decided. (Letter from W. Feiler to F. Gonell dated May 9, 2006 (Gonell Ex. 17), at 2.) On May 15, 2006, QUALCOMM informed Ericsson that it was preparing this motion and that if Ericsson continued to refuse to discuss its other objections, QUALCOMM would consider them waived. (Letter from F. Gonell to W. Feiler dated May 15, 2006 (Gonell Ex. 18).) To date, Ericsson has not responded.

<p align="center">**Argument**</p>

It is axiomatic that the antitrust laws protect <u>competition</u>, not <u>competitors</u>. See, e.g., <u>Brown Shoe Co. v. United States</u>, 370 U.S. 294, 320 (1962). Thus, an antitrust plaintiff cannot prevail merely by showing harm to itself, but rather must plead and prove harm to competition generally. See, e.g., <u>Mathews v. Lancaster Gen. Hosp.</u>, 87 F.3d 624, 641 (3d Cir. 1996). For this reason, antitrust cases frequently require extensive third-party discovery of competitors and other market participants. See, e.g., 5 Bus. &

<p align="center">13</p>

Commercial Litig. Fed. Cts. § 61:8 (Robert L. Haig, ed.) (2d ed. 2006) ("A common problem for plaintiffs and defendants alike in antitrust cases is third-party discovery. Often third parties all over the United States will need to be subpoenaed to produce documents and submit to depositions."); Manual for Complex Litigation § 30.2 (4th ed. 2004) ("Antitrust cases often involve the collection, assimilation, and evaluation of vast amounts of evidence regarding numerous transactions and other economic data."). "[D]iscovery in antitrust litigation is most broadly permitted and 'the burden or cost of providing the information sought is less weighty a consideration than in other cases. . . .'" U.S. v. IBM Corp., 66 F.R.D. 186, 189 (S.D.N.Y. 1974) (granting motion to compel compliance with Rule 45 subpoena); see also Am. Health Sys., Inc. v. Liberty Health Sys., Civ. A. No. 90-3112, 1991 WL 30726, at *2 (E.D. Pa. Mar. 5, 1991) (courts in this Circuit follow a "general policy of allowing liberal discovery in antitrust cases"); Kellam Energy, Inc. v. Duncan, 616 F.Supp. 215, 217 (D.C. Del. 1985) ("there is a general policy of allowing liberal discovery in antitrust cases").

As described above, Ericsson has made three broad objections to QUALCOMM's subpoena that are the subject of this motion: (1) an objection to producing any documents before Judge Cooper decides QUALCOMM's motion to dismiss; (2) an objection to producing any documents relating to activities outside the United States; and (3) an objection to producing any documents outside the date range of July 1, 2001, to July 1, 2005. None of these objections has merit.

I.      ERICSSON'S ATTEMPT TO DELAY PRODUCTION UNTIL JUDGE COOPER DECIDES QUALCOMM'S MOTION TO DISMISS IS IMPROPER

Fact discovery in this matter is scheduled to end on December 31, 2006. The Court has repeatedly stated that it does not intend to extend that date. Judge Cooper

14

has scheduled argument on QUALCOMM's motion to dismiss for June 26, 2006. We do not know when Judge Cooper will decide QUALCOMM's motion.

In such circumstances, delaying discovery until resolution of QUALCOMM's motion is inappropriate. Indeed, this Court decided as much when it ordered QUALCOMM to produce documents related to the Flarion transaction – despite QUALCOMM's strong arguments that Broadcom lacks standing to bring its Flarion-related claim – if Judge Cooper had not decided QUALCOMM's motion by April 22, 2006. QUALCOMM must have time to review Ericsson's documents to identify necessary Ericsson deponents and take their depositions, and also to use those documents to plan the rest of its discovery.

In correspondence, Ericsson has argued that such production prior to a decision on the motion is "burdensome" because it is a "non-party". (Gonell Ex. 15 at 3.) That argument is baseless. First, nothing in Rule 45 states that a response to a subpoena is not required while a motion to dismiss is pending. Second, as noted above, Ericsson is no disinterested third party. To the contrary, Ericsson is cooperating with Broadcom and has even made a submission to Judge Cooper opposing QUALCOMM's motion to dismiss. Having done so, Ericsson should be neither heard to complain of the supposed "burden" of complying with a subpoena in this litigation nor permitted to evade discovery regarding the contentions made in its submission. Third, Ericsson has refused to produce any documents, including the documents listed in QUALCOMM's April 13, 2006 letter as to which there would be little burden, if any, and Ericsson has refused to discuss any other ways to minimize the burden of production with QUALCOMM. Thus,

it is apparent that Ericsson's objection is more about attempting to deprive QUALCOMM

of discovery through delay than it is about "undue burden".

## II.   ERICSSON CANNOT LIMIT ITS PRODUCTION TO DOCUMENTS REGARDING ACTIVITIES IN THE UNITED STATES

Ericsson's stated basis for refusing to produce documents regarding

activities outside the United States – i.e., that such documents are "irrelevant" – is both

unfounded.  QUALCOMM "may obtain discovery regarding any matter, not privileged,

that is relevant to the claim or defense of any party".  DIRECTV, Inc. v. Richards, No.

Civ. 03-5606 (GEB), 2005 WL 1514187, at *3 (D.N.J. June 27, 2005) (considering a

Rule 45 non-party subpoena for the production of documents and applying relevancy as

defined in Rule 26). "The relevancy requirement has been construed broadly and liberally

in order to ensure mutual knowledge of all relevant facts." Id.

Indeed, QUALCOMM's requests for documents relating to activities

outside the United States seek relevant subject matter necessary to resolve central

questions at issue in this litigation.  Broadcom's complaint is replete with references to

actions allegedly occurring outside the United States, including, but not limited to:

- "[I]nternational and United States standard-setting bodies only adopted UMTS as a mobile telephone standard after QUALCOMM represented in writing that it would licenses its WCDMA patents on fair, reasonable and non-discriminatory (that is, so-called "FRAND") terms."  (¶ 3.)

- "As carriers around the world are moving from GSM to UMTS, and as the number of subscribers to UMTS is growing rapidly, QUALCOMM is acting to exclude competition and extend its monopoly grip – already firm in 2G and 3G CDMA markets and the market for its WCDMA technology – into the chipsets that will' power millions of UMTS-based phones around the world." (¶ 10.)

- "QUALCOMM's anticompetitive conduct with respect to UMTS chipsets and its 'essential' WCDMA patents has affected and is

16

affecting a substantial volume of interstate and foreign commerce, including commerce in this District. QUALCOMM's planned acquisition of Flarion, which is based in South Bedminster, New Jersey, would also affect a substantial of interstate and foreign commerce, including commerce in this District." (¶ 27.)

- "The geographic scope of each of the CDMA chipset markets is worldwide." (¶ 56.)

- "The geographic scope of the market for UMTS chipsets is worldwide." (¶ 57.)

- "In reliance on Qualcomm's assurances, SDOs around the world adopted WCDMA standards, including into the UMTS standards, and wireless service carriers in turn invested billions of dollars in building and improving wireless networks utilizing WCDMA technology." (¶ 85.)

- "The global UMTS chipset market is a relevant antitrust market." (¶ 145.)

- "Qualcomm's agreements unreasonably restrain trade and restrict the access of Qualcomm's competitors to significant channels of distribution, thereby restraining competition in the UMTS chipset market and foreclosing substantial interstate and foreign commerce." (¶ 151, see, e.g., ¶¶ 159, 164, 170, 177.)

Most – if not all – of the key documents QUALCOMM seeks, such as Ericsson's license agreements, Ericsson's agreements related to the sale of baseband modem chips, documents regarding Ericsson's involvement in carriers' switching between different wireless systems, and documents regarding Ericsson's business plans related to baseband modem chips, are documents that involve activities outside the United States. Ericsson's objection is nothing more than a thinly-veiled attempt to render QUALCOMM's subpoena a dead letter.

III.    ERICSSON CANNOT LIMIT ITS PRODUCTION TO AN ARBITRARY DATE RANGE

Ericsson seeks to impose two arbitrary date cut-offs on its production, neither of which is appropriate: (1) Ericsson refuses to produce any documents created

before July 1, 2001, and (2) Ericsson refuses to produce any documents created after July 1, 2005.

      A.     <u>Ericsson's Refusal to Produce Selected Documents Dated Before July 1, 2001, Is Improper</u>

      Ericsson's stated reason for refusing to produce documents dated before July 1, 2001 – <u>i.e.</u>, that such documents are irrelevant because they concern activities outside the statute of limitations period (Gonell Ex. 15 at 3) – is meritless. In this case, Broadcom claims that it was harmed in 2005 – within the statute of limitations period – by QUALCOMM's actions in SDOs and QUALCOMM's license and chipset business practices dating back to the late 1990s. (<u>See, e.g.</u>, ¶ 84.) Thus, certain SDO activities and licensing practices dating back to the 1990s are central to this case. <u>See, e.g.</u>, <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 365 (2d. Cir. 2001) (Applicable statutes of limitation do not bar the discovery or use at trial of documents "that predate[] the commencement of the limitations period but [are] relevant to events during the period"); <u>Am. Health Sys.</u>, 1991 WL 30726 at *3 ("[T]he temporal scope of discovery should not be confined to the limitations period of the antitrust statutes."); 51 Am. Jur. 2d <u>Limitation of Actions</u> § 24 (2005).

      QUALCOMM has only requested documents dating prior to July 1, 2001, where such older documents are particularly relevant. Specifically,

> •     QUALCOMM seeks documents dating back to January 1, 1997 as to Requests Nos. 1-5 (relating to SDO activities and the meaning of "FRAND"); Requests Nos. 9-10 (relating to agreements with Texas Instruments and Nokia); and Request No. 27 (relating to Ericsson's communications with others regarding QUALCOMM's licensing practices). Each of these requests is directed toward documents related to the standardization and licensing activities in the 1990s about which Broadcom complains.

- QUALCOMM seeks documents dating back to January 1, 1999 as to Request No. 13 (relating to Ericsson's efforts to induce carriers to switch from one mobile telecommunications system to another). This request seeks documents necessary to rebut Broadcom's false allegations that carriers were "locked in" to particular technologies as of 1999, when the UMTS standard was adopted. QUALCOMM also seeks such documents as to Request No. 31 (relating to complaints filed against Ericsson and others before the European Commission). QUALCOMM understands that Ericsson and perhaps Sony Ericsson and Nokia Corp. have been the target of complaints relating to their licensing practices with respect to the GSM mobile wireless communications standard. Request No. 31 is directed as documents regarding positions taken by those companies with respect to common and permissible FRAND licensing practices in the mobile wireless communications industry.

- QUALCOMM seeks patent licenses responsive to Requests Nos. 6 and 7 and agreements for the sale of chips responsive to Requests 14 and 17 regardless of their dates. Producing this discrete and easily identifiable set of documents will impose little burden on Ericsson, and license agreements are central to this case. In addition, QUALCOMM seeks documents relating to license negotiations dating back to January 1, 1999. The UMTS standard was adopted in 1999, and thus documents relating to license negotiations going back to 1999 are particularly relevant to the industry's understanding of FRAND licensing obligations under the UMTS standard.

As to all other requests, QUALCOMM seeks documents only dating back to January 1, 2003. We respectfully submit that the Court should order Ericsson to comply with QUALCOMM's requests.

B.  Ericsson's Refusal to Produce Documents Dated After July 1, 2005, Is Improper

Ericsson's stated reason for refusing to produce documents dated after July 5, 2001 – i.e., that such documents are irrelevant because they concern activities occurring after the initial complaint in this matter was filed – is untenable. Broadcom amended its complaint on September 19, 2006, adding new allegations and new antitrust claims involving conduct after July 1, 2005. Thus, documents regarding licensing and

19

competition in the mobile wireless industry dated after July 1, 2005 are plainly relevant.

Indeed, Broadcom and QUALCOMM have been generally producing documents created

up to October 1, 2005, and have agreed to produce certain documents post-dating even

that date. QUALCOMM offered to discuss a similar arrangement with Ericsson, and

Ericsson refused to have such discussions. Accordingly, the Court should overrule

Ericsson's arbitrary July 1, 2005 cutoff.

**Conclusion**

For the foregoing reasons, QUALCOMM's motion to compel the production of documents by Ericsson should be granted.

Respectfully submitted,

May 26, 2006

McCARTER & ENGLISH, LLP

By: _s/ William J. O'Shaughnessy_____
    William J. O'Shaughnessy
        P.O. Box 652
        Four Gateway Center
        100 Mulberry Street
        Newark, NJ 07101-0652
        (973) 622-4444
CRAVATH, SWAINE & MOORE LLP
    Evan R. Chesler
    Richard J. Stark
    David R. Marriott
        Worldwide Plaza
        825 Eighth Avenue
        New York, NY 10019
        (212) 474-1000
BINGHAM McCUTCHEN LLP
    Richard S. Taffet
        399 Park Avenue
        New York, NY 10022
        (212) 705-7000
*Attorneys for Defendant Qualcomm
Incorporated*

William J. O'Shaughnessy (WJO 5256)
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Evan R. Chesler
Richard J. Stark
David R. Marriott
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Richard S. Taffet
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
(212) 705-7000

Attorneys for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>                    Plaintiff.<br><br>          v.<br><br>QUALCOMM INCORPORATED,<br><br>                    Defendant. | Civil Action No. 05-3350 (MLC) |

**DECLARATION OF FABIAN D. GONELL**

Fabian D. Gonell, declares pursuant to 28 U.S.C. § 1746, as follows:

1.    I am an attorney admitted to practice *pro hac vice* in this Court for purposes of this action. I am associated with the law firm of Cravath, Swaine & Moore LLP, attorneys for defendant QUALCOMM Incorporated, and am familiar with the matters stated herein. I submit this declaration is support of QUALCOMM Incorporated's Motion to Compel the Production of Documents by Telefonaktiebolaget LM Ericsson and Ericsson, Inc.

2.    Attached hereto are true and correct copies of the following documents:

**Exhibit 1:**    A subpoena *duces tucem* served by QUALCOMM, Incorporated on Telefonaktiebolaget LM Ericsson on April 4, 2006.

**Exhibit 2:**    A subpoena *duces tucem* served by QUALCOMM, Incorporated on Ericsson, Inc. on February 27, 2006.

**Exhibit 3:**    A letter from L. Walsh, Esq. on behalf of Telefonaktiebolaget LM Ericsson, Nokia Corporation , and Texas Instruments Incorporated to Judge Mary L. Cooper dated February 24, 2006.

**Exhibit 4:**    A document produced by Broadcom entitled "PROJECT STOCKHOLM – 27 October – 10am", reflecting the status of approvals for a joint press release by Broadcom, Texas Instruments, Nokia, Ericsson, NEC and Panasonic relating to those companies' complaints to the European Commission about QUALCOMM, bearing production number BCMBLA0868475.

**Exhibit 5:**    An email produced by Broadcom from Gail Chandler of Texas Instruments to, among others, Peter Olofsson of Ericsson and Bill Blanning of Broadcom, confirming that "Project Stockholm" and "Project 17" are the same "project", bearing production numbers BCMBLA0467013-014.

**Exhibit 6:**    The Court's Order dated September 22, 2006, and entered on September 23, 2006.

**Exhibit 7:**    The Court's Order dated March 10, 2006, and entered on March 13, 2006.

**Exhibit 8:**    Excerpts of Ericsson Summary Annual Report 2005, available at http:// www.ericsson.com/ericsson/investors/financial_reports/2005/annual05/su mmary_downloads/summary2005_en.pdf (visited May 26, 2006).

**Exhibit 9:**    An email from Ed Tiedemann of QUALCOMM to Oliver Glauser of QUALCOMM dated September 19, 1997, reporting on the "ETSI SMG2 Concept Group Alphas (W-CDMA) Meeting Stockholm 9/15-16, Hosted by Ericsson", bearing production numbers QBN00805995-999.

**Exhibit 10:**    Excerpts of Broadcom Corporation's Objections and Responses to QUALCOMM Incorporated's First Set of Interrogatories, dated February 14, 2006.

**Exhibit 11:**    Excerpts of the transcript of a telephonic press conference held jointly by Broadcom, Ericsson, Nokia, Texas Instruments, Panasonic, and NEC on October 28, 2005, available at http://europe.nokia.com/BaseProject/Sites/NokiaCom_CAMPAIGNS_577 10/CDA/Categories/PressEvents/_Content/_Static_Files/transcript.pdf (visited May 25, 2006).

**Exhibit 12:**    Andy Reinhart, A Scrum Over Qualcomm's Fees, Business Week, Oct. 31, 2005, available at http://www.businessweek.com/print/technology/ content/oct2005/tc20051031_066557.htm.

**Exhibit 13:**    Objections to QUALCOMM's Subpoena to Telefonaktiebolaget LM Ericsson Commanding the Production of Documents dated April 7, 2006.

**Exhibit 14:**    A letter from F. Gonell to W. Feiler dated April 13, 2006.

**Exhibit 15:**    A letter from W. Feiler to F. Gonell dated April 24, 2006.

**Exhibit 16:**    A letter from F. Gonell to W. Feiler dated May 5, 2006.

**Exhibit 17:**    A letter from W. Feiler to F. Gonell dated May 9, 2006.

**Exhibit 18:**    A letter from F. Gonell to W. Feiler dated May 15, 2006.

Dated:  May 26, 2006

Fabian D. Gonell

# EXHIBIT 1

# Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BROADCOM CORPORATION** | ## SUBPOENA IN A CIVIL CASE |
| **V.** | CASE NUMBER[1]::  05-3350 (MLC) |
| **QUALCOMM INCORPORATED** | |

To:    Telefonaktiebloget LM Ericsson
c/o William S. Feiler, Esq. –
Morgan & Finnegan LLP
3 World Financial Center
New York, NY 10281

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | , |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. The testimony will be recorded by the following method(s):
  ☐ stenographic; ☐ sound; ☐ sound and visual

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | , |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):
Documents described in Attachment A

| PLACE | DATE AND TIME |
|---|---|
| McCarter & English LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07102 | April 18, 2006, 10:00 a.m. |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | , |

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature]      Attorney for    Defendant | April 4, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Fabian D. Gonell, Cravath Swaine & Moore LLP, 825 Eighth Avenue, New York, NY 10019, 212 474-1000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| **SERVED** | | | |

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
|---|---|---|
| | | |

| SERVED BY (PRINT NAME) | | TITLE |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                        DATE                                SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(ii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subject a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

<u>ATTACHMENT A</u>

Please produce the following documents at the time and place specified in the subpoena.

<u>Documents To Be Produced</u>

1.    All documents relating to Ericsson's communications with any SDO or any committee of any SDO relating to any mobile wireless communications standard or technology.

2.    All documents relating to Ericsson's communications with anyone relating to an SDO's evaluation or consideration of any mobile wireless communications standard or technology.

3.    All documents relating to the adoption by any SDO of any standard that utilizes or otherwise implements WCDMA technology.

4.    All documents relating to the adoption by any SDO of any standard that utilizes or otherwise implements CDMA technology.

5.    All documents relating to the meaning of licensing on RAND terms, in the context of any commitment by anyone to any SDO.

6.    All documents relating to licenses or prospective licenses to any Ericsson patent essential to any mobile wireless communications standard, including, but not limited to, documents relating to (i) offers to license; (ii) requests that any other person or company obtain a license; (iii) proposals to license; (iv) licensing terms; (iv)

Ericsson's licensing practices; (v) Ericsson's licensing policies; and (vi) all proposed or executed license agreements.

7.    All documents relating to licenses or prospective licenses to any non-Texas Instruments patent essential to any mobile wireless communications standard, including, but not limited to, documents relating to (i) offers to license; (ii) requests that Ericsson obtain a license; (iii) proposals to license; (iv) licensing terms; (iv) anyone's licensing practices; (v) anyone's licensing policies; and (vi) all proposed or executed license agreements.

8.    All documents relating to any agreements between Ericsson and Broadcom.

9.    All documents relating to any agreements between Texas Instruments and Ericsson.

10.    All documents relating to any agreements between Ericsson and Nokia.

11.    All documents relating to the ability of any provider or carrier to adopt or deploy different wireless technologies, including 3G, 4G or other mobile wireless technology.

12.    All documents concerning the ability, or lack of ability, of any wireless telecommunications carrier or carriers, whether specifically or generally, to switch from (or the costs, time, or other resources involved in switching from) one mobile wireless telecommunications technology, system or network to another, including

without limitation switching from CDMA-based systems or networks to non-CDMA based systems or networks.

13.    All documents concerning Ericsson's efforts to induce any wireless telecommunications carrier to switch from one mobile wireless telecommunications technology, system or network to another, including without limitation switching from CDMA-based systems or networks to non-CDMA based systems or networks.

14.    All documents concerning actual or potential competition in the design or sale of chipsets for use in mobile wireless telecommunications devices, including (i) market shares, competitive position, and competitors, including any comparison of relative strengths and weaknesses, number of customers, revenues, Ericsson's attempts to win customers from other companies or increase usage of Ericsson products, losses of customers to other companies, and responses to the entry of new competitors; (ii) competitive analyses of mobile wireless communications products, including improvements or innovations in features, functions, ease of operation, performance, cost, or other advantages to customers or users; and (iii) supply and demand conditions, including the impact of substitutes.

15.    All documents relating to an entry or potential entry of a new competitor into the market for chips or chipsets for use in mobile wireless communications.

16.    All documents relating to the market or potential market for WiMax.

17.     All documents relating to the prices and terms offered to Ericsson by providers of wireless communication chips, including documents relating to any incentives, rebates or bundling related to any wireless communication chip and all agreements for the sale or purchase of wireless communication chips.

18.     All documents relating to Ericsson's communications with any provider or prospective provider of wireless communication chips relating to any person's rights to make or sell wireless communication chips or with respect to any person's right to use any such chips.

19.     All documents relating to any inability of any supplier of materials or services related to wireless communication chips to meet Ericsson's demands for such materials.

20.     All documents relating to QUALCOMM's entry into the UMTS chip business.

21.     All documents relating to Broadcom or QUALCOMM.

22.     All documents relating to any complaint by anyone to the European Commission alleging that QUALCOMM is violating the competition law of the European Union or its member states.

23.     All documents relating to any communication between or among Broadcom, Ericsson, NEC, Nokia, Panasonic Mobile Communications, Sony Ericsson, and Texas Instruments relating to QUALCOMM, standards or licensing terms, including RAND terms.

24.     All joint defense agreements, common interest agreements or any other agreements between Ericsson and anyone relating to any dispute, litigation, or government investigation involving QUALCOMM.

25.     All documents relating to any communications with any person or company about any dispute or disputes between Broadcom and QUALCOMM or between Ericsson and QUALCOMM.

26.     All documents relating to communications or meetings between Ericsson and Broadcom, Sony Ericsson, Texas Instruments or Nokia relating to any of the following topics:  (a) any market related to mobile wireless communications; (b) competition between or among companies in the mobile wireless communications industry; (c) products in the mobile wireless communications industry; (d) competitors of Sony Ericsson, Ericsson, Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications; (e) customers of Sony Ericsson, Ericsson, Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications; (f) prices in the mobile wireless communications industry; (g) licensing in the mobile wireless communications industry; (h) SDOs that set standards for the mobile wireless communications industry; (i) any litigation or government investigation in the mobile wireless communications industry; and (j) mobile wireless technology.

27.     All documents relating to any communications between Ericsson and anyone relating to QUALCOMM's licensing practices or terms or QUALCOMM's products or product sales practices or terms.

28.    All documents relating to any complaint by anyone to any government or government official of any nation or multinational organization relating to QUALCOMM.

29.    All documents relating to BREW, including, but not limited to, documents relating to Ericsson's communications with anyone relating to BREW.

30.    All documents relating to any effort by Ericsson to make any product related to mobile wireless communications of any company ineffective, incompatible, or otherwise less desirable to consumers.

31.    All documents relating to any complaint by anyone to the European Commission Directorate General – Competition regarding Sony Ericsson, Ericsson or Nokia.

32.    All documents relating to the retention or destruction of documents related to QUALCOMM or to mobile wireless communications.

33.    All documents relating to Ericsson's litigation with Samsung styled Ericsson Inc. et al. v. Samsung Electronics Co. et al., No. 02-06CV-63 (E.D. Tex. filed Feb. 20, 2006), and related foreign litigations.

34.    All documents regarding the Wireless World Research Forum.

<u>Definitions</u>

All relevant definitions contained in the Federal Rules of Civil Procedure and the local rules of this Court are incorporated herein by reference and are supplemented as follows:

A.     The term "relating to" means concerning, referring to, describing, evidencing, referencing, discussing or constituting.

B.     The term "communication" means any transmittal of information, whether oral or written, including correspondence, electronic mail, telex, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes or memoranda relating to written or oral communications.

C.     The term "document" is synonymous in meaning and usage to the broadest scope of the term used in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" includes without limitation all written, phonic, graphic or recorded matter, including without limitation, information stored on computers, disks, tapes (i.e., magnetic or other storage media), World Wide Web pages, electronic mailing lists or automated fax support systems. The term "document" specifically includes electronic mail, electronic correspondence, or electronic peer-to-peer messages ("e-mail") and any attachments and files created and maintained in electronic form in the normal course of business.

D.     The term "QUALCOMM" means, collectively and individually, to QUALCOMM Incorporated and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with QUALCOMM Incorporated, subsidiaries of QUALCOMM Incorporated, and all other persons acting on behalf of QUALCOMM Incorporated.

E.     The term "Broadcom" means, collectively and individually, Broadcom Corporation and all its directors, officers, authorized agents, employees,

consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Broadcom Corporation, subsidiaries of Broadcom Corporation, and all other persons acting on behalf of Broadcom Corporation.

F.    The term "Ericsson" means, collectively and individually, Telefonaktiebolaget LM Ericsson and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Telefonaktiebolaget LM Ericsson, subsidiaries of Telefonaktiebolaget LM Ericsson (including but not limited to Ericsson Inc.), and all other persons acting on behalf of Telefonaktiebolaget LM Ericsson.

G.    The term "NEC" means, collectively and individually, NEC Corporation and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with NEC Corporation, subsidiaries of NEC Corporation (including but not limited to NEC America, Inc.), and all other persons acting on behalf of NEC Corporation.

H.    The term "Nokia" means, collectively and individually, Nokia Corporation and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Nokia Corporation, subsidiaries of Nokia Corporation (including but not limited to Nokia Inc.), and all other persons acting on behalf of Nokia Corporation.

I.    The term "Panasonic Mobile Communications" means, collectively and individually,  Matsushita Electric Industrial Co., Ltd. and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Matsushita Electric Industrial Co., Ltd. subsidiaries of Matsushita Electric Industrial Co., Ltd. (including but not limited to Panasonic Mobile Communications Co., Ltd.), and all other persons acting on behalf of Matsushita Electric Industrial Co., Ltd.

J.    The term "Sony Ericsson" means, collectively and individually, Sony Ericsson Mobile Communications AB and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Nokia Corporation, subsidiaries of Sony Ericsson Mobile Communications AB, sinter companies of Sony Ericsson Mobile Communications AB (including but not limited to Sony Ericsson Mobile Communications (USA), Inc.), and all other persons acting on behalf of Sony Ericsson Mobile Communications AB.

K.    The term "Texas Instruments" means, collectively and individually, Texas Instruments Incorporated and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Texas Instruments Incorporated, subsidiaries of Texas Instruments Incorporated, and all other persons acting on behalf of Texas Instruments Incorporated.

L.    The term "agreement" means any executed agreement or draft agreement whether or not ultimately executed.

M.     The term "BREW" means Binary Runtime Environment for Wireless.

N.     The term "Complaint" means the First Amended Complaint filed in September 2005 by Broadcom against QUALCOMM in the United States District Court for the District of New Jersey with the civil docket number 05-3350 (MLC).

O.     The term "CDMA" means Code Division Multiple Access, including without limitation technologies referred to in the wireless telecommunications industry as cdmaOne, CDMA2000-lx-RTT, CDMA2000-lxEVDO, and CDMA2000-lxEVDV.

P.     The term "chip" means a component of a cell phone or other mobile wireless telecommunications device that delivers in whole or in part the device's core ability to communicate with the wireless system or network with which the device is designed to operate.

Q.     The term "essential" means necessary for implementation of any mobile wireless technology standard, such that the standard could not be practiced without infringing the patent or technology to which "essential" refers.

R.     The term "RAND" means (a) fair, reasonable and non-discriminatory; (b) reasonable and non-discriminatory; (c) fair, reasonable and free from unfair discrimination; or (d) any other recitation used by any SDO to reflect a commitment to license on non-discriminatory terms.

S.     The term "Standards Development Organization," or "SDO," means any international, regional, or national organization (including without limitation

the Alliance of Telecommunications Industry Solutions ("ATIS"), the American National

Standards Institute ("ANSI"), the European Telecommunications Standards Institution

("ETSI"), the Institute of Electrical and Electronics Engineers ("IEEE"), the International

Telecommunications Union ("ITU"), the Telecommunications Industry Association

("TIA"), the Third Generation Partnership Project ("3GPP"), the Third Generation

Partnership Project 2 ("3GPP2"), and the Bluetooth SIG) that has been or currently is

involved with the development of current or prospective standards for mobile wireless

communications.

        T.     The term "WCDMA" means Wideband Code Division Multiple

Access.

        U.     The term "WiMax" means wireless technology conforming to any

IEEE 802.16 specification.

<div align="center">Instructions</div>

        The instructions contained in Rule 45 of the Federal Rules of Civil

Procedure and the local rules of this Court are incorporated herein by reference and are

supplemented as follows:

        V.     Each paragraph in this attachment shall be construed independently

and no paragraph shall be construed to limit any other paragraph.

        W.     The use of any definition in this attachment is not an agreement or

acknowledgment that such definition is accurate, meaningful or appropriate for any other

purpose in this action.

X.    Each requested document shall be produced in its entirety.  If a document responsive to any request cannot be produced in its entirety, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

Y.    Each page or sheet produced shall be marked with a consecutive document control number.

Z.    All documents produced in response to this subpoena shall be produced in the same order that they are kept in the ordinary course of business. Documents that are attached in the ordinary course of business shall not be separated or disassembled.

# EXHIBIT 2

## Issued by the
# UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BROADCOM CORPORATION** | ## SUBPOENA IN A CIVIL CASE |
| **V.** | CASE NUMBER[1]::   05-3350 (MLC) |
| **QUALCOMM INCORPORATED** | |

To:    Ericsson Inc.
c/o National Registered Agents, Inc.
160 Greentree Drive, Suite 101
Dover, DE 19904

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. The testimony will be recorded by the following method(s):
☐ stenographic; ☐ sound; ☐ sound and visual

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):
Documents described in Attachment A

| PLACE | DATE AND TIME |
|---|---|
| c/o Guy Renzie, 824 West State Street, Trenton, NJ 08618 | March 28, 2006, 10:00 a.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_      Attorney for    Defendant | February 27, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard J. Stark, Cravath Swaine & Moore LLP, 825 Eighth Avenue, New York, NY 10019, 212 474-1000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | 160 Greentree Drive, Suite 101, Dover, DE 19904 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____     _____
                        DATE                                    SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subject a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

ATTACHMENT A

Please produce the following documents at the time and place specified in the subpoena.

Documents To Be Produced

1.      All documents relating to Ericsson's communications with any SDO or any committee of any SDO relating to any mobile wireless communications standard or technology.

2.      All documents relating to Ericsson's communications with anyone relating to an SDO's evaluation or consideration of any mobile wireless communications standard or technology.

3.      All documents relating to the adoption by any SDO of any standard that utilizes or otherwise implements WCDMA technology.

4.      All documents relating to the adoption by any SDO of any standard that utilizes or otherwise implements CDMA technology.

5.      All documents relating to the meaning of licensing on RAND terms, in the context of any commitment by anyone to any SDO.

6.      All documents relating to licenses or prospective licenses to any Ericsson patent essential to any mobile wireless communications standard, including, but not limited to, documents relating to (i) offers to license; (ii) requests that any other person or company obtain a license; (iii) proposals to license; (iv) licensing terms; (iv)

Ericsson's licensing practices; (v) Ericsson's licensing policies; and (vi) all proposed or executed license agreements.

7.      All documents relating to licenses or prospective licenses to any non-Texas Instruments patent essential to any mobile wireless communications standard, including, but not limited to, documents relating to (i) offers to license; (ii) requests that Ericsson obtain a license; (iii) proposals to license; (iv) licensing terms; (iv) anyone's licensing practices; (v) anyone's licensing policies; and (vi) all proposed or executed license agreements.

8.      All documents relating to any agreements between Ericsson and Broadcom.

9.      All documents relating to any agreements between Texas Instruments and Ericsson.

10.     All documents relating to any agreements between Ericsson and Nokia.

11.     All documents relating to the ability of any provider or carrier to adopt or deploy different wireless technologies, including 3G, 4G or other mobile wireless technology.

12.     All documents concerning the ability, or lack of ability, of any wireless telecommunications carrier or carriers, whether specifically or generally, to switch from (or the costs, time, or other resources involved in switching from) one mobile wireless telecommunications technology, system or network to another, including

without limitation switching from CDMA-based systems or networks to non-CDMA based systems or networks.

13.    All documents concerning Ericsson's efforts to induce any wireless telecommunications carrier to switch from one mobile wireless telecommunications technology, system or network to another, including without limitation switching from CDMA-based systems or networks to non-CDMA based systems or networks.

14.    All documents concerning actual or potential competition in the design or sale of chipsets for use in mobile wireless telecommunications devices, including (i) market shares, competitive position, and competitors, including any comparison of relative strengths and weaknesses, number of customers, revenues, Ericsson's attempts to win customers from other companies or increase usage of Ericsson products, losses of customers to other companies, and responses to the entry of new competitors; (ii) competitive analyses of mobile wireless communications products, including improvements or innovations in features, functions, ease of operation, performance, cost, or other advantages to customers or users; and (iii) supply and demand conditions, including the impact of substitutes.

15.    All documents relating to an entry or potential entry of a new competitor into the market for chips or chipsets for use in mobile wireless communications.

16.    All documents relating to the market or potential market for WiMax.

17.    All documents relating to the prices and terms offered to Ericsson by prividers of wireless communication chips, including documents relating to any incentives, rebates or bundling related to any wireless communication chip and all agreements for the sale or purchase of wireless communication chips.

18.    All documents relating to Ericsson's communications with any provider or prospective provider of wireless communication chips relating to any person's rights to make or sell wireless communication chips or with respect to any person's right to use any such chips.

19.    All documents relating to any inability of any supplier of materials or services related to wireless communication chips to meet Ericsson's demands for such materials.

20.    All documents relating to QUALCOMM's entry into the UMTS chip business.

21.    All documents relating to Broadcom or QUALCOMM.

22.    All documents relating to any complaint by anyone to the European Commission alleging that QUALCOMM is violating the competition law of the European Union or its member states.

23.    All documents relating to any communication between or among Broadcom, Ericsson, NEC, Nokia, Panasonic Mobile Communications, Sony Ericsson, and Texas Instruments relating to QUALCOMM, standards or licensing terms, including RAND terms.

24.     All joint defense agreements, common interest agreements or any other agreements between Ericsson and anyone relating to any dispute, litigation, or government investigation involving QUALCOMM.

25.     All documents relating to any communications with any person or company about any dispute or disputes between Broadcom and QUALCOMM or between Ericsson and QUALCOMM.

26.     All documents relating to communications or meetings between Ericsson and Broadcom, Sony Ericsson, Texas Instruments or Nokia relating to any of the following topics:  (a) any market related to mobile wireless communications; (b) competition between or among companies in the mobile wireless communications industry; (c) products in the mobile wireless communications industry; (d) competitors of Sony Ericsson, Ericsson, Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications; (e) customers of Sony Ericsson, Ericsson, Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications; (f) prices in the mobile wireless communications industry; (g) licensing in the mobile wireless communications industry; (h) SDOs that set standards for the mobile wireless communications industry; (i) any litigation or government investigation in the mobile wireless communications industry; and (j) mobile wireless technology.

27.     All documents relating to any communications between Ericsson and anyone relating to QUALCOMM's licensing practices or terms or QUALCOMM's products or product sales practices or terms.

28.     All documents relating to any complaint by anyone to any government or government official of any nation or multinational organization relating to QUALCOMM.

29.     All documents relating to BREW, including, but not limited to, documents relating to Ericsson's communications with anyone relating to BREW.

30.     All documents relating to any effort by Ericsson to make any product related to mobile wireless communications of any company ineffective, incompatible, or otherwise less desirable to consumers.

31.     All documents relating to any complaint by anyone to the European Commission Directorate General -- Competition regarding Sony Ericsson, Ericsson or Nokia.

32.     All documents relating to the retention or destruction of documents related to QUALCOMM or to mobile wireless communications.

33.     All documents relating to Ericsson's litigation with Samsung styled <u>Ericsson Inc. et al. v. Samsung Electronics Co. et al.</u>, No. 02-06CV-63 (E.D. Tex. filed Feb. 20, 2006), and related foreign litigations.

<div align="center">Definitions</div>

All relevant definitions contained in the Federal Rules of Civil Procedure and the local rules of this Court are incorporated herein by reference and are supplemented as follows:

A.      The term "relating to" means concerning, referring to, describing, evidencing, referencing, discussing or constituting.

B.     The term "communication" means any transmittal of information, whether oral or written, including correspondence, electronic mail, telex, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes or memoranda relating to written or oral communications.

C.     The term "document" is synonymous in meaning and usage to the broadest scope of the term used in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" includes without limitation all written, phonic, graphic or recorded matter, including without limitation, information stored on computers, disks, tapes (i.e., magnetic or other storage media), World Wide Web pages, electronic mailing lists or automated fax support systems. The term "document" specifically includes electronic mail, electronic correspondence, or electronic peer-to-peer messages ("e-mail") and any attachments and files created and maintained in electronic form in the normal course of business.

D.     The term "QUALCOMM" means, collectively and individually, to QUALCOMM Incorporated and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with QUALCOMM Incorporated, subsidiaries of QUALCOMM Incorporated, and all other persons acting on behalf of QUALCOMM Incorporated.

E.     The term "Broadcom" means, collectively and individually, Broadcom Corporation and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Broadcom Corporation,

subsidiaries of Broadcom Corporation, and all other persons acting on behalf of Broadcom Corporation.

F.      The term "Ericsson" means, collectively and individually, Telefonaktiebolaget LM Ericsson and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Telefonaktiebolaget LM Ericsson, subsidiaries of Telefonaktiebolaget LM Ericsson (including but not limited to Ericsson Inc.), and all other persons acting on behalf of Telefonaktiebolaget LM Ericsson.

G.      The term "NEC" means, collectively and individually, NEC Corporation and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with NEC Corporation, subsidiaries of NEC Corporation (including but not limited to NEC America, Inc.), and all other persons acting on behalf of NEC Corporation.

H.      The term "Nokia" means, collectively and individually, Nokia Corporation and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Nokia Corporation, subsidiaries of Nokia Corporation (including but not limited to Nokia Inc.), and all other persons acting on behalf of Nokia Corporation.

I.      The term "Panasonic Mobile Communications" means, collectively and individually,  Matsushita Electric Industrial Co., Ltd. and all its directors,

officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Matsushita Electric Industrial Co., Ltd. subsidiaries of Matsushita Electric Industrial Co., Ltd. (including but not limited to Panasonic Mobile Communications Co., Ltd.), and all other persons acting on behalf of Matsushita Electric Industrial Co., Ltd.

      J.     The term "Sony Ericsson" means, collectively and individually, Sony Ericsson Mobile Communications AB and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Nokia Corporation, subsidiaries of Sony Ericsson Mobile Communications AB, sinter companies of Sony Ericsson Mobile Communications AB (including but not limited to Sony Ericsson Mobile Communications (USA), Inc.), and all other persons acting on behalf of Sony Ericsson Mobile Communications AB.

      K.     The term "Texas Instruments" means, collectively and individually, Texas Instruments Incorporated and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Texas Instruments Incorporated. subsidiaries of Texas Instruments Incorporated., and all other persons acting on behalf of Texas Instruments Incorporated.

      L.     The term "agreement" means any executed agreement or draft agreement whether or not ultimately executed.

      M.     The term "BREW" means Binary Runtime Environment for Wireless.

N.      The term "Complaint" means the First Amended Complaint filed in September 2005 by Broadcom against QUALCOMM in the United States District Court for the District of New Jersey with the civil docket number 05-3350 (MLC).

O.      The term "CDMA" means Code Division Multiple Access, including without limitation technologies referred to in the wireless telecommunications industry as cdmaOne, CDMA2000-lx-RTT, CDMA2000-lxEVDO, and CDMA2000-lxEVDV.

P.      The term "chip" means a component of a cell phone or other mobile wireless telecommunications device that delivers in whole or in part the device's core ability to communicate with the wireless system or network with which the device is designed to operate.

Q.      The term "essential" means necessary for implementation of any mobile wireless technology standard, such that the standard could not be practiced without infringing the patent or technology to which "essential" refers.

R.      The term "RAND" means (a) fair, reasonable and non-discriminatory; (b) reasonable and non-discriminatory; (c) fair, reasonable and free from unfair discrimination; or (d) any other recitation used by any SDO to reflect a commitment to license on non-discriminatory terms.

S.      The term "Standards Development Organization," or "SDO," means any international, regional, or national organization (including without limitation the Alliance of Telecommunications Industry Solutions ("ATIS"), the American National Standards Institute ("ANSI"), the European Telecommunications Standards Institution

("ETSI"), the Institute of Electrical and Electronics Engineers ("IEEE"), the International

Telecommunications Union ("ITU"), the Telecommunications Industry Association

("TIA"), the Third Generation Partnership Project ("3GPP"), the Third Generation

Partnership Project 2 ("3GPP2"), and the Bluetooth SIG) that has been or currently is

involved with the development of current or prospective standards for mobile wireless

communications.

    T.  The term "WCDMA" means Wideband Code Division Multiple

Access.

    U.  The term "WiMax" means wireless technology conforming to any

IEEE 802.16 specification.

<u>Instructions</u>

    The instructions contained in Rule 45 of the Federal Rules of Civil

Procedure and the local rules of this Court are incorporated herein by reference and are

supplemented as follows:

    V.  Each paragraph in this attachment shall be construed independently

and no paragraph shall be construed to limit any other paragraph.

    W.  The use of any definition in this attachment is not an agreement or

acknowledgment that such definition is accurate, meaningful or appropriate for any other

purpose in this action.

    X.  Each requested document shall be produced in its entirety.  If a

document responsive to any request cannot be produced in its entirety, it shall be

produced to the extent possible with an explanation stating why production of the remainder is not possible.

    Y.  Each page or sheet produced shall be marked with a consecutive document control number.

    Z.  All documents produced in response to this subpoena shall be produced in the same order that they are kept in the ordinary course of business. Documents that are attached in the ordinary course of business shall not be separated or disassembled.

# EXHIBIT 3

# CONNELL FOLEY LLP

## ATTORNEYS AT LAW

JOHN A. PINDAR (1968)
GEORGE W. CONNELL (2005)
ADRIAN M. FOLEY, JR.
GEORGE J. KENNY*
KENNETH F. KUNZMAN
SAMUEL D. LORD
RICHARD D. CATENACCI
RICHARD J. BADOLATO*
PETER D. MANAHAN
JOHN B. MURRAY
MARK L. FLEDER
KEVIN J. COAKLEY
WILLIAM H. GRAHAM*
THOMAS S. COSMA
KATHLEEN S. MURPHY
PATRICK J. MCAULEY
PETER J. PIZZI**
KEVIN R. GARDNER
ROBERT E. RYAN
MICHAEL X. McBRIDE*
JEFFREY W. MORYAN
JOHN E. BENNETT
PETER J. SMITH*
BRIAN G. STELLER
PHILIP F. McGOVERN, JR.
KAREN PAINTER RANDALL
LIZA M. WALSH
JOHN P. LACEY
TIMOTHY E. CORRISTON*
ERNEST W. SCHOELLKOPF*

*ALSO ADMITTED IN NEW YORK
*ALSO ADMITTED IN PENNSYLVANIA
—ONLY ADMITTED IN NEW YORK

WRITER'S DIRECT DIAL

PATRICK J. HUGHES**
JAMES C. McCANN*
JOHN D. CROMIE
ANGELA A. IUSO*
GLENN T. DYER
CLARENCE SMITH, JR.—
WILLIAM T. McCLOSH*
BRENDAN JUDGE
DAREN S. McNALLY*
STEPHEN V. FALANGA*
JEFFREY L. O'HARA
TRICIA O'REILLY*
ANTHONY E. VITIELLO*
MARC D. HAEFNER
JONATHAN P. McHENRY
JAMES P. KHATCANI**
MATTHEW W. KANE*
JOSEPH G. DEBLASIO*

COUNSEL
JOHN W. BISSELL
JOHN B. LAVECCHIA
VIRGINIA M. EDWARDS*
FRANCIS E. SCHILLER*
EUGENE P. SQUEO*
BERNARD M. HARTNETT, JR.*
NOEL D. HUMPHREYS*
ANTHONY ROMANO II*
CHARLES J. HARRINGTON III*
STEVE BARNETT
KARIN I. SPALDING*
JODI ANNE HUDSON*

85 LIVINGSTON AVENUE
ROSELAND, N.J. 07068-3702
(973) 535-0500
FAX: (973) 535-9217

JERSEY CITY OFFICE
HARBORSIDE FINANCIAL CENTER
2510 PLAZA FIVE
JERSEY CITY, N.J. 07311-4029
(201) 521-1000
FAX: (201) 521-0100

NEW YORK OFFICE
888 SEVENTH AVENUE
NEW YORK, N.Y. 10106
(212) 262-2390
FAX: (212) 262-3116

PHILADELPHIA OFFICE
1500 MARKET STREET
PHILADELPHIA, PA 19102
(215) 246-3403
FAX: (215) 665-5727

RICHARD A. JAGEN
W. NEVINS McCANN*
MITCHEL W. TARASCHI
BRAD D. SHALIT*
THOMAS J. O'LEARY*
DAVID J. MAIRO*
AGNES ANTONIAN*
BRYAN P. COUCH*
GREGORY E. PETERSON
MICHELE T. TANTALLA*
PHILIP M. FLEHR
THOMAS J. PASHIT*
PATRICK S. BRANNIGAN*
MATTHEW I. GENNARO
M. TREVOR LYONS*
MICHAEL A. SHADIACK
OWEN C. McCARTHY
PATRICIA A. LEE*
NEIL V. MODY*
JENNIFER C. CRITCHLEY*
MELISSA A. DIDATO*
MATTHEW S. SCHILTZ*
CRAIG A. ROSEN
RYAN A. McGONIGLE*
DANIA M. BILLINGS*
ANTONIO CELIY*

ALEXIS P. LAZZARA
TED P. CASTELL*
RONAK R. CHOKSHI*
CHRISTINE I. GANNON*
DOUGLAS J. SHORT*
MICHAEL A. BASILIOS
CATHERINE C. BRYAN*
AYANNA A. GAGE
MICHAEL P. DAVIS
JAMES C. HAYNIE
LAURIE B. KACHONICK
MAIDA PEREZ
WILLIAM D. DEVEAU
THOMAS A. TELESCA*
VINCENT A. ANTONIELLO
LAUREN E. SWEENEY*
ELIZABETH W. EATON
JOSEPH M. MURPHY
JASON E. MARX*
SARAH R. BLUMBERG*
CHRISTOPHER ABATEMARCO*
MEGHAN C. GOODWIN*
DANIELA R. D'ANGCO*
CRAIG S. DEMARESKI*
MELISSA ASTUDILLO*
ANDREW J. McNALLY*
AMY TODD*
ADAM M. LUSTBERG*

PLEASE REPLY TO ROSELAND, N.J.

February 24, 2006

## Via Hand Delivery

Hon. Mary L. Cooper
United States District Court
Clarkson S. Fisher Federal Bldg. & Courthouse
402 East State Street
Trenton, NJ 08608

RE:     **Broadcom Corporation v. Qualcomm Incorporated**
        **Civil Action No. 05-3350 (MLC)**

Dear Judge Cooper:

Non-parties Telefonaktiebolaget LM Ericsson ("Ericsson"), Nokia Corporation ("Nokia") and Texas Instruments Incorporated ("Texas Instruments") respectfully submit this letter to assist the Court in its consideration of defendant Qualcomm Incorporated's pending motion to dismiss plaintiff Broadcom Corporation's complaint in the above-referenced action.

Ericsson, Nokia and Texas Instruments believe that granting Qualcomm's motion to dismiss would set a dangerous precedent suggesting as a matter of law that a patent holder can misrepresent to standard-setting bodies its commitment to license patents, essential to a proposed standard, on fair, reasonable and non-discriminatory ("FRAND") terms, without fear of antitrust liability. Ericsson, Nokia and Texas Instruments believe that such a result would substantially undermine the standard-setting bodies that have been so critical, in an increasingly

Hon. Mary L. Cooper
February 24, 2006
Page 2

interconnected global economy, to technological advancement in the mobile telephone industry and in many other economic sectors in which systems interoperability is critical.

Ericsson, Nokia and Texas Instruments submit that the positions advanced by Qualcomm - including Qualcomm's argument that commitments to a standards body to license on FRAND terms place no limitations on a patent-holder's power to license (or not license) on any terms of its own choosing - are inconsistent with the binding precedents of the United States Supreme Court and the Third Circuit. See, e.g., Allied Tube & Conduit Corp. v. Indian Head Inc., 486 U.S. 492, 506-07 (1988) ("private standard-setting by associations comprising firms with horizontal and vertical business relations is permitted at all under the antitrust laws only on the understanding that it will be conducted in a nonpartisan manner offering procompetitive benefits"); Eastman Kodak Co. v. Image Technical Services, 504 U.S. 451, 498 n. 29 (1992) (the Supreme Court "has held many times that power gained through some natural and legal advantage such as patent, copyright, or business acumen can give rise to liability if 'a seller exploits his dominant position in one market to expand his empire into the next'"); LePage's Inc. v. 3M, 324 F.3d 141 (3d Cir. 2003) (en banc) ((above-cost discounting can violate Sherman Act Section 2); SmithKline Corp. v. Eli Lilly & Co., 575 F.2d 1056 (3d Cir. 1978) (defendant Lilly violated Section 2 of the Sherman Act by offering price rebates for a Lilly-patented product only to customers that also agreed to purchase from Lilly a product for which Lilly did not hold the patent). These binding holdings have placed limitations on patent rights and have held that the antitrust laws are applicable in the context of standard-setting.

Qualcomm suggests, however, that its exercise of Qualcomm's monopoly power as asserted here is immune to antitrust scrutiny, because Qualcomm's monopoly power purportedly derives solely from Qualcomm's essential patents. Qualcomm's position ignores not only the legally established limitations on patent rights, but also the fact that Qualcomm's patents only became essential following adoption of standards incorporating those patents - an adoption that occurred only on the basis that Qualcomm would commit in writing (as required by the standards-setting organizations) to license the resulting essential patents on FRAND terms. Qualcomm cannot separate its misrepresentation from the monopoly power that resulted from that conduct. If Qualcomm had made known, at the time the standard was being considered, Qualcomm's current position that FRAND commitments were meaningless, a different standard might have been adopted and, as a result, the telecommunications industry might not have embarked on the irretrievable path of making enormous investments to design compliant equipment, manufacture it, and install it in billion dollar networks around the world - all based on Qualcomm's FRAND promise.

The experience of Ericsson, Nokia and Texas Instruments in the marketplace is also inconsistent with Qualcomm's self-serving description of the relevant facts. Qualcomm asserts without any evidentiary support, for example, that the terms of its license agreements are in fact fair, reasonable and non-discriminatory. But Qualcomm's assertions are as misplaced as they are unsupported by any actual evidence. Those assertions are particularly suspect given Qualcomm's alleged abuse of monopoly power gained through misrepresentations to the standard setting bodies. In this regard, it bears note that the type of anticompetitive conduct identified by the Third Circuit in SmithKline is alleged by Broadcom here: Qualcomm discriminates in the

Hon. Mary L. Cooper
February 24, 2006
Page 3

licensing terms for its patents essential to adopted mobile phone standards, based on whether licensees also agree to purchase mobile phone chipsets manufactured, but not patented, by Qualcomm (as opposed to chipsets manufactured by companies that compete with Qualcomm in the manufacture of chipsets).

Ericsson, Nokia and Texas Instruments thus respectfully submit that Qualcomm's motion to dismiss should be denied.

Respectfully submitted,

Liza M. Walsh

cc:     (via facsimile)
        David S. Stone, Esq.
        Robert A. Magnanini, Esq.
        Steven John Kaiser, Esq.
        William J. O'Shaughnessy, Esq.
        Evan Chesler, Esq.
        Jay Johnston, Esq.
        (via email)
        Nina MacPherson, Esq.
        Petri Kuoppamaki, Esq.

# EXHIBIT 6

<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | | |
|---|---|---|
| **BROADCOM CORPORATION,** | : | Civil Action No.  05-3350 (MLC) |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **PRETRIAL SCHEDULING ORDER** |
| | : | |
| **QUALCOMM INCORPORATED,** | : | |
| | : | |
| **Defendant.** | : | |

This matter having come before the Court during an initial scheduling conference, conducted on September 22, 2005, pursuant to FED. R. CIV. P. 16, and the Court having considered the positions of the Parties; and good cause having been shown;

IT IS on this 22nd day of September 2005,

ORDERED THAT:

1. The Parties will complete fact discovery in this case on or before December 31, 2006.  No discovery will issue beyond that date, except upon motion and for good cause shown.

2. In accordance with FED. R. CIV. P. 30, the Parties shall be limited to 30 depositions, per side (multiple day depositions by specific agreement of counsel on conference call application) except upon leave of the Court.  In accordance with FED. R. CIV. P.  33, the parties will be limited to   35   interrogatories (including all subparts), per party, exception leave of the Court.

3. In accordance with FED. R. CIV. P. 26(a)(1), each party will submit a letter, not later than, October 31, 2005, to the undersigned certifying that initial disclosure has been made.  This material will not be filed with the Clerk of the Court.

4. No later than October 31, 2005, each party shall designate an electronic information representative knowledgeable about the respective party's automation system.

5. Any motion to join new parties, whether by amended or third-party complaint, mu t be filed no later than October 13, 2006 and made returnable on November 6, 2006.

6. Any motion to amend the pleadings must be filed no later than October 13, 2006 and made returnable on November 6, 2006.

7.   Any  discovery or case management disputes will be brought to the Magistrate Judge's attention immediately by conference call with local counsel, with letter preceding the conference call.   L. Civ. R.  37.1(a)(1); see also L. Civ. R. 16.1(f).

8.   Any dispositive motions shall be addressed during the status conference conducted on February 22, 2006.

9. Counsel will confer in an attempt to resolve any discovery or case management disputes before making such dispute the subject of a motion.  No discovery motion will be entertained absent counsel's full compliance with L. Civ. R. 37.1(a)(1); see also L. Civ. R. 16.1(f).

10.  Plaintiff's and Defendant's expert reports shall be addressed during the status conference conducted on February 22, 2006.

11.  A status conference will be held before the undersigned, at the Clarkson S. Fisher United States Courthouse, Trenton, New Jersey on February 22, 2006 at 11:00 A.M., to discuss experts, settlement, and dispositive motion practice.

12.  The final pretrial conference shall be addressed during the status conference on February 11, 2006.

13.  The Parties shall arrange a 26(f) type meeting with counsel and their representatives after initial written discovery has been propounded.  A written report shall be submitted to the Court no later than November 30, 2005.

14.  The attorneys for all parties are further directed to meet together by agreement, initiated by counsel for the plaintiff no later than ten (10) days before the date of the pretrial conference to:

a.  discuss settlement;

b.  stipulate to as many facts and issues as possible;

c.  prepare a Final Pretrial Order in the form and content as required by the Court.  Plaintiff's counsel will prepare the Final Pretrial Order and will submit it to all other counsel for approval and execution.  The original and one copy of the executed Final Pretrial Order will be delivered to the pretrial conference.  All counsel are responsible for the timely submission of the Final Pretrial Stipulation and Order;

d.  examine all exhibits and documents proposed to be used at trial;

e.  complete all other matters which may expedite both the pretrial and trial of the case;

f.  original and one copy of the proposed Final Pretrial Order is to be submitted five (5) days

in advance of the conference.

15. Appropriately colored markers (obtained from the Clerk's Office) will be affixed to the exhibits at or prior to the time they are shown to opposing counsel at the meeting of counsel referred to above, and each marker will bear the number of the exhibit to which it is affixed.

16. At the pretrial conference counsel should be prepared to discuss settlement of the case. Clients must be made available by telephone.

17. The Court may, from time to time, schedule conferences as may be required, either on its own motion or at the request of counsel.

18. Since all dates set forth herein are established with the assistance and knowledge of counsel, there will be no extensions except for good cause shown and by leave of Court, even with consent of all counsel.

19. Failure to appear at subsequent conferences, or to comply with any of the terms of this Order, may result in sanctions.

20. Any proposed confidentiality order agreed to by the parties must be accompanied by a separate statement showing specific good cause for the entry of the order. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994); *Glenmede Trust Company v. Thompson*, 56 F.3d 476 (1995); FED R. CIV. P. 26(c).

21. Counsel are advised that the Court has various audio/visual and evidence presentation equipment available for use at trial at no cost to the Bar. This equipment includes an evidence presentation system, which consists of a document camera, digital projector, and screen. The projector may be used to display images which originate from a variety of sources, including television, VCR, and personal computer. The document camera may be used to display documents, photographs, charts, transparencies and small objects. For further information, please contact the Courtroom Deputy Clerk, Denis Glynn at 609-989-2144.

22. Counsel are invited to use the *George H. Barlow* Attorney Conference Room located on the third floor of the Courthouse Annex. The room is equipped with telephones, laptop access/printer, copier, and *fax*.

/s/ John J. Hughes
JOHN J. HUGHES
United States Magistrate Judge

ALL PROPOSED ORDERS AND LETTER MEMORANDA SENT TO CHAMBERS SHOULD BE IN WORDPERFECT FORMAT AND E-MAILED TO: njdnef_hughes@njd.uscourts.gov. ANY FILINGS WITH THE CLERK'S OFFICE SHOULD BE IN PDF FORMAT.

# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**RECEIVED**

MAR 1 3 2006

BROADCOM CORPORATION,                )
                                     )   [PROPOSED] ORDER
        Plaintiff,                   )                    AT 8:30 _____M
                                     )              WILLIAM T. WALSH
                                     )                   CLERK
                                     )
                                     )
                                     )   Civil Action No. 05-3350 (MLC)
                                     )
        v.                           )
                                     )
QUALCOMM INCORPORATED,               )
                                     )
        Defendant.                   )
                                     )

        WHEREAS, the parties appeared before the Court on February 22, 2006 for a status conference and at that status conference addressed certain matters relating to discovery, and for good cause shown,

        IT IS HEREBY ORDERED THAT:

        1.      Unless by April 22, 2006 Judge Cooper has dismissed Broadcom's Eighth Claim for Relief, QUALCOMM shall on that date produce to Broadcom documents responsive to Broadcom's Request 25, including the documents produced by Flarion Technologies, Inc. to the Department of Justice.

        2.      The parties shall meet and confer further about documents responsive to QUALCOMM's Request 18.

        3.      The parties shall meet and confer regarding Broadcom's request for certain pre-2000 documents relating to CDMA. Should the parties not reach agreement, the parties shall submit to the Court a joint letter regarding any disagreement. Any such letter is not to exceed three pages in length.

        4.      A status conference will be held on May 10, 2006, at 2:00 p.m., to discuss the completion of document discovery and the scheduling of depositions. At that conference, the

1

parties shall report to the Court on any outstanding documents to be produced and propose specific time frames for completion of such production and the progress of deposition scheduling.

IT IS SO ORDERED

DATED: ___3/10/_____                     _____
                                                THE HONORABLE JOHN J. HUGHES

2

# EXHIBIT 8

# ERICSSON SUMMARY ANNUAL REPORT 2005





**ERICSSON**

**TAKING YOU FORWARD**

# THE ADVANTAGE OF TECHNOLOGY LEADERSHIP

Bringing faster, more reliable and cost-efficient networks to the world is what we do best. When operators choose their equipment suppliers they are often selecting a partner for the next 10-15 years to take them through not only the initial deployment but also the subsequent expansion and upgrade phase as new solutions come to market.

Our early involvement with, and substantial contribution toward, creating the world's leading technology standards enable us to be first-to-market with many of these solutions. This is a key differentiator for Ericsson and a significant advantage for operators that choose Ericsson as their network partner.

With nearly one-third of our employees working in Research and Development and one of the industry's largest mobile systems R&D programs, we are a technology leader. We hold over 20,000 patents worldwide and are a leading contributor to the standards of GSM and WCDMA technologies, as well as a considerable holder of Intellectual Property Rights (IPRs) in many other technologies. While our ability to license IPRs to other vendors generates additional profits for Ericsson, our deep commitment to developing technology based on open standards is key to our success.

**2003**
Ericsson launches world's first commercial EDGE network, increasing data speeds and capacity in GSM networks.

**2004**
Ericsson is first to launch a network with IMS (IP Multimedia Subsystem), the initial step towards a converged all-IP network.

**2005**
Ericsson is the first to rollout HSDPA technology in a live commercial network, bringing broadband access to mobile subscribers.

In addition to both mobile and fixed networks, we also develop and license technology platforms, including the chip design and software that are inside many of the world's most advanced GPRS and WCDMA handsets.

We have become much more efficient in recent years as we have consolidated R&D centers and focused our investments on fewer core technologies. This has enabled us to improve time-to-market and invest in new areas, such as multimedia solutions, while decreasing R&D as a percentage of sales. This is yet one more aspect of our technology leadership and a key component of our drive for operational excellence.





**TOTAL NUMBER OF PATENTS**

| 2001 | 2002 | 2003 | 2004 | 2006 |
|------|------|------|------|------|
| 10,000 | 12,000 | 15,000 | 16,000 | 20,000 |

**R&D**

R&D expenses: (SEK billion)
| 2005 | 2004 |
|------|------|
| 24.5 | 23.4 |

R&D employees
| 2005 | 2004 |
|------|------|
| 16,500 | 16,000 |

R&D as percentage of sales
| 2005 | 2004 |
|------|------|
| 16.1% | 17.7% |

2004 numbers are restated according to IFRS.

# UNDERSTANDING OUR MARKETS



| | |
|---|---|
| North America | **68%** penetration<br>**221** million subscriptions<br>**13%** subscription growth 2005 |
| Latin America | **43%** penetration<br>**238** million subscriptions<br>**36%** subscription growth 2005 |
| Western Europe | **102%** penetration<br>**405** million subscriptions<br>**10%** subscription growth 2005 |
| Central & Eastern Europe, Middle East and Africa | **40%** penetration<br>**505** million subscriptions<br>**53%** subscription growth 2005 |
| Asia Pacific | **23%** penetration<br>**844** million subscriptions<br>**22%** subscription growth 2005 |

Mobile penetration; the number of subscriptions divided by the total population in a geographical area.

Our long-term presence in many of the world's markets translates into a deep understanding of local market conditions for business and insights into the global trends driving change.

Consolidation has picked up momentum in recent years, creating larger multinational operators. This is primarily driven by the need for improved economies of scale, business growth, expansion into new markets and the desire to better serve subscribers. More complex technology and the need to reduce costs have increasingly led operators to outsource network management to vendors like Ericsson. While these drivers are constant throughout many parts of the world, markets are in different stages of developing their communications sector.

## EMERGING MARKETS*
### (45 PERCENT OF ERICSSON'S SALES)

For people in many parts of the world, access to traditional fixed network services is very limited. Here mobile networks are the best solution for rapid large-scale deployment. While GSM networks have been rolled out in most big cities, there is still much work to do to increase coverage in rural areas and boost capacity in larger cities. With subscriber penetration still low in most of these markets, we are working with our customers to shrink the "digital divide." We are doing this by reducing the total cost

\* The GSM Association (GSMA) defines an emerging market as a country with a GNP per capita index below the World Bank average and a mobile penetration below 50 percent.

# OUR MARKET POSITION

MARKET SHARE OF THE GSM/WCDMA FAMILY



35%

## MOBILE TECHNOLOGY LEADERSHIP

We are the world's leading supplier of GSM, GPRS, EDGE, WCDMA and HSDPA equipment and services, the technology family that connects more than 80 percent of the world's mobile subscribers. We are also leading the market in upgrading networks to mobile broadband via WCDMA/HSDPA.

IMS

18 contracts for commercial launch

Softswitch

Mobile networks – in more than 35 GSM & WCDMA networks
Fixed networks – for more than 40 customers

## UPGRADING NETWORKS TO IMS AND SOFTSWITCH

Ericsson has comprehensive solutions for upgrading networks to IMS and Softswitch architectures. Ericsson Mobile Platforms includes IMS client architecture in their new releases. We have a leading position in IMS and Softswitch, with solutions for both fixed and mobile networks.

GLOBAL SERVICES AS PERCENT
OF SYSTEMS' SALES



28%

GLOBAL SERVICES SALES
SEK billion



## GROWING WITH GLOBAL SERVICES

Our Global Services include network rollout, systems integration, technical support and managed services (network operation and hosting). As a result of our world-class expertise, Ericsson was entrusted to plan, build and integrate over 800 networks during 2005.

Ethernet-based
broadband access
– in more than
90 networks

## EMPOWERING FIXED BROADBAND

Our IP-solutions for upgrading fixed networks to accommodate broadband traffic enable operators to offer their subscribers richer data content and a faster, lower-cost experience. We have a strong position in Ethernet-based broadband access and with Marconi's ATM-based broadband access we will establish a top-tier global position.



# SONY ERICSSON – OUR LINK TO THE CONSUMER

Sony Ericsson Mobile Communications is a 50/50 joint venture that combines our technology leadership with Sony's consumer electronics expertise. These complementary strengths enable Sony Ericsson to bring innovative products to market and provide us with valuable insight into consumer trends. In 2005, Sony Ericsson once again started a mobile phone trend with the introduction of several Walkman®-branded music phones. The W800 was the first in the industry to offer a quality digital music experience and a high-performance 2 mega pixel auto-focus camera, combined with a full-feature mobile phone. Another innovative and popular model, the K750, raised the bar for imaging quality in mobile phones, winning a number of industry awards including the coveted TIPA (Technical Image Press Association) award for Best Mobile Imaging Device.

These successful 2005 launches helped to propel Sony Ericsson to new heights in 2005. The joint venture reported record sales and profitability and enhanced its position with a number of leading operators and distributors.

Sony Ericsson continues to expand its portfolio by adding a variety of handsets designed and priced for different market segments. In the emerging WCDMA market, the K600 offers an attractive and affordable handset with no compromise on size or design. Additions to the 2G portfolio include basic affordable models, camera phones and sleek clamshell designs. This broadening phone portfolio, combined with Sony Ericsson's accessories, PC-cards and Machine-to-Machine solutions, demonstrate the company's progress in becoming a leading supplier of a full range of innovative and feature-rich products.







NUMBER OF UNITS SHIPPED (million)

| 2002 | 2003 | 2004 | 2005 |
|------|------|------|------|
| 22.9 | 27.2 | 42.3 | 51.2 |

SALES (million Euro)

| 2002 | 2003 | 2004 | 2005 |
|------|------|------|------|
| 4,176 | 4,673 | 6,525 | 7,268 |

INCOME BEFORE TAXES (million Euro)

| 2002 | 2003 | 2004 | 2005 |
|------|------|------|------|
| -291 | -130 | 486 | 514 |

 Though we are a very innovative company with excellent technology and strong service delivery, at the end of the day our biggest strength is the people we have on the ground."

Jacqueline Hey, Head of Ericsson Northwest Europe



# MANAGING NETWORKS FOR OPERATOR 3

When the operator 3 of the Hutchison Whampoa Group asked us to manage their U.K. network in a 7-year deal signed this past December, it was celebrated throughout our company. This is true not only because this partnership represents the largest contract in our 129-year history, but because it was the 3rd country where 3 decided to trust us with this critical function.

This is not a decision that an operator takes lightly as it requires a great deal of trust to commit to this handover. Yet when 3 asked themselves who do they trust to run their network, Ericsson was the answer all three times – first in Australia, then in Italy and now in the United Kingdom.

Unlike the previous two managed services deals where we were actively supplying the equipment for their network buildout, in the case of 3 UK Ericsson was not an infrastructure supplier before the managed services agreement. That is one more reason why 3 UK is particularly rewarding. As a result of this partnership, a supply of equipment, additional technology and related services will also be part of our future relationship.

The size and breadth of these agreements are prime examples of how our industry-leading services organization, technology leadership, geographic reach and consistent performance make us the supplier of choice for most of the world's leading operators.

# OUR BUSINESS HELPS CREATE A BETTER WORLD

Ericsson is committed to making positive contributions to the communities in which we work and the world in which we live. Corporate Responsibility encompasses everything we do to build an enduring value-creation capability for all our stakeholders; customers, employees, investors and society as a whole. We strive to maintain the necessary controls to minimize risk, and we link our products and services to an overall business goal of sustainable growth.

Our corporate responsibilities are founded on three main principles:

**Economic Prosperity: Pursuing sustainability based on sound economic principles.** We contribute to growth in the communities in which we do business; we reduce our customers' operating costs with an energy-lean portfolio; we help to bridge the "digital divide" by making communication affordable to all.

**Environmental Performance: Designing products and services to minimize impacts.** We use design for environment (DfE) to avoid hazardous substances and decrease power consumption. Also, telecommunication reduces the need for personal transportation.

**Social Equity: Supporting the UN Global Compact.** Ericsson was one of the first companies to commit to the Compact's ten principles, covering human rights, fair labor practices, the environment and anti-corruption.

Ericsson supports the UN Global Compact.



In 2005, we were again included in the FTSE4Good and the global DJSI World indexes. And 2005 we were also included in the European DJSI STOXX Index for the first time, where we were named the Technology Equipment Supersector Leader.





We are also listed as one of the top 100 most sustainable companies by Global 100.



# BOARD OF DIRECTORS' REPORT

*This Board of Directors' Report contains discussion and analysis of the financial statements and operational results. This report also includes "forward-looking statements" about future market conditions, strategies and anticipated results. Such statements are based on assumptions and estimates, which are subject to risks and uncertainties. Actual results could differ materially from those described or indicated by such forward-looking statements. For further discussion, please see "Forward-looking Statements."*

*The terms "Ericsson", "Group", "the Company", or similar all refer to Telefonaktiebolaget LM Ericsson and its consolidated subsidiary companies. Unless otherwise noted, numbers in parenthesis indicate prior year, i.e. 2004.*

*As of January 1, 2005, Ericsson changed accounting principles to International Financial Reporting Standards (IFRS) as required by all publicly listed companies within the EU (European Union). Our consolidated financial statements for 2004 have been restated according to IFRS. However, the Parent Company is required by Swedish regulations to continue reporting according to Swedish GAAP.*

## SUMMARY

With sales increasing 15 percent and net income 37 percent, the Company's 2005 performance can be characterized by profitable growth and good progress in strategically important areas. Ericsson supplied the first 3G/HSDPA mobile broadband network in commercial service. Ericsson is the first and only supplier with an IMS-based service layer in commercial operation. BT named Ericsson as the exclusive supplier of softswitching functions for their 21st Century Network in the UK. These achievements reinforce Ericsson's leading position in "next generation" networks.

Professional services operations were expanded considerably with a number of multi-year managed services agreements, including the two largest agreements in the Company's history. The majority of all 3G handsets sold outside of Japan are based on technology supplied by Ericsson Mobile Platforms. The Sony Ericsson Mobile Communications joint venture also reported solid progress and has now reached positive accumulated earnings.

The acquisition of Marconi's optical transmission, broadband access and other strategic operations is expected to significantly improve the Company's position in these high-growth markets. All in all, we have strengthened the Company's ability to benefit from a number of growth opportunities beyond those offered by the mobile systems equipment market.

## MARKET ENVIRONMENT AND TREND INFORMATION

2005 was a record year in terms of net subscriber additions: some 450 million new mobile subscriptions and almost 800 million mobile phones were sold. Network equipment markets also developed positively during 2005 with particularly strong growth in mobile systems, fixed broadband access and optical transmission.

Excluding the effects of technological developments, pricing trends remained similar to previous years with competition continuing to be especially intense regarding strategic pricing necessary to win new contracts. A number of major contracts for new network rollouts are expected to be awarded in the near term and price competition is likely to intensify during the bidding process. The price/performance trend in both mobile phones and network infrastructure is significantly expanding the addressable market with resulting unit volume increases more than offsetting lower average selling prices.

New mobile subscriptions, mainly in emerging markets, increased usage in almost all regions and expanding deployment of 3G networks drove growth within the mobile systems market. There are now some two billion mobile subscribers worldwide and global subscription penetration was 34 (27) percent at year-end. We expect another billion net subscription additions before the end of this decade, which will drive a significant increase in the number of initial network build outs and create opportunities for network rollout services and professional services in addition to mobile network systems offerings.

Total traffic on mobile networks worldwide grew an estimated 30% in 2005, driven by subscriber additions and increased average minutes of use (MOU). Western Europe is among the highest penetrated mobile markets in the world in terms of subscriptions. However, Western European usage is significantly lower than the average for the rest of the world. Increased tariff competition among operators is expected to stimulate Western European usage closer to the global average over the coming few years, requiring continued expansion of mobile network capacity.

At year-end, there were 91 3G/WCDMA networks in commercial service of which Ericsson is a supplier to 49. The number of WCDMA subscriptions almost tripled during 2005 and now exceeds 47 million. Net subscriptions are expected to increase rapidly as more 3G networks are placed in service and as lower-cost handsets become available.

Operator consolidation continues to be a key trend in a number of markets. In North America, operator consolidation caused a temporary slowdown in GSM/EDGE investments during 2004 and early 2005 while the companies involved underwent their merger process. In Latin America, where significant operator consolidation occurred in 2003 and earlier, we experienced extraordinarily strong growth for the second consecutive year, especially from operators converting to GSM technology. In Europe, we see an acceleration of cross border expansion as operators there seek revenue growth and economies of scale. In other regions, operator consolidation is ongoing with the emergence of a number of rapidly growing pan-regional operators.

Within fixed networks, many operators are contemplating a conversion to an all-IP (Internet Protocol) broadband environment. This will enable more efficient handling of fixed and mobile voice, data and image based communications as well as provide a platform for converged services. Several operators have already started such an upgrade process with many others expected to follow soon. While we believe that fixed network operators' spending for network equipment in total was up slightly in 2005, certain segments essential to "next generation" networks – optical transmission, broadband access and IMS/softswitch – showed stronger growth.

In addition to network rollout and systems integration services, the opportunity to supply network management and hosting of services for network operators is growing strongly. The market for such managed

services is estimated at USD 8 billion in 2005 with good growth prospects going forward as operators realize the competitive advantages that are made possible when outsourcing operations and other non-strategic activities. Smaller operators especially benefit by gaining access to service capabilities and content far beyond what they could normally afford while at the same time lowering their risks and improving their time to market.

## GOALS, STRATEGY AND FINANCIAL RESULTS

Our ultimate goal is for the Company to generate growth and competitive profit that is sustainable over the longer term. Ericsson's strategy is to be the preferred business partner to customers, especially the world's leading network operators. Ericsson strives to be the market and technology leader for the supply and operation of network infrastructure. Being a market leader allows the Company to leverage economies of scale to develop superior products and services and thereby offer customers competitive advantages. In addition, when systems integration is combined with mobile platform products and the Sony Ericsson joint venture for mobile handsets, the scope of Ericsson's operations extends to complete end-to-end solutions.

### Progress relative to financial targets

The Company performed in line with its financial targets of:
- Increase sales at least in line with the market growth;
- Deliver best-in-class operating margins, i.e. better than the main competitors;
- Generate positive cash flow before financing;
- Maintain Investment Grade credit ratings.

### Sales

Group sales grew 15 percent mainly driven by increased sales within our systems segment, which consists of network equipment and related services. The effect of fluctuations in foreign exchange rates was not significant on reported sales. Unit volume increases drove mobile network sales growth while network buildout projects and professional services drove Global Services growth. Based on Ericsson's reported sales combined with the publicly reported and estimated sales for Ericsson's main competitors, we believe the mobile systems market grew approximately 11 percent in USD terms during 2005. During this period, Ericsson's mobile systems sales increased by 15 percent measured in constant currencies, indicating that Ericsson grew faster than the market.

Sales of services grew 29 percent during 2005, reflecting strong market growth and our market position. Sales of professional services

were particularly encouraging as the Company was awarded a number of contracts for network management, including the largest contracts in Ericsson's history.

Within fixed networks, Ericsson was awarded a number of contracts for "next generation" converged networks that include broadband access, IMS/softswitch and packet switching products. We are optimistic regarding growth opportunities for broadband access, optical transmission and converged networks and are increasing our focus in these areas with the acquisition of key assets of Marconi.

Positive sales developments within Mobile Platforms and Cables (Network Technologies) were not sufficient to compensate for lower sales by the other units within Other Operations. Total sales declined by 4 percent and operating income was SEK 1 billion lower mainly due to losses in Enterprise Systems, Microwave Systems and Power Modules. Operating margin within Other Operations was also negatively affected by approximately SEK 0.2 billion due to one-off payments for breach of contract damages following an arbitration award.

During the year, we announced 78 new or expanded agreements to supply network equipment and/or related services to operators around the world. This compares with 59 in 2004 and 58 in 2003. Although we do not book frame agreements as firm orders, such customer commitments reassure the robustness of our order backlog, which is at the highest level in three years.

### Margins and operating expenses

Our ambition is for Ericsson to generate competitive margins. With best-in-class operating margins, the Company continued to perform at record levels. The lower gross margins were mainly a reflection of a product mix that has a significantly higher proportion of services sales. Operating margin was improved by tight cost control of operating expenses, especially selling, general and administrative expenses.

While sales increased 15 percent, operating expenses increased only 5 percent. Operating expenses measured as a percentage of net sales decreased from 30 percent in 2004 to 27 percent in 2005 reflecting ongoing efficiency improvements as well as the continued benefits of the cost reduction measures completed in 2004.

Going forward, we want the Company to continue to deliver competitive profit. We must also ensure a healthy balance between short-term profit and longer-term growth. Reinvesting more profits now will strategically position Ericsson to better benefit from a number of opportunities in the future.

### Other income statement items

Share in earnings of joint ventures and associated companies before

### SALES BY SEGMENT AND GEOGRAPHIC REGION 2005

| (SEK m.) | Systems | Percent change | Other Operations | Percent Change | Total | Percent change | Percent of total |
|---|---|---|---|---|---|---|---|
| Western Europe | 35,705 | 6% | 6,235 | −3% | 41,940 | 5% | 28% |
| Central and Eastern Europe, Middle East and Africa | 38,781 | 21% | 1,167 | −23% | 39,948 | 19% | 26% |
| Asia Pacific | 29,914 | 10% | 1,512 | 10% | 31,426 | 10% | 21% |
| North America | 18,773 | 27% | 659 | −9% | 19,432 | 26% | 13% |
| Latin America | 18,813 | 33% | 262 | −26% | 19,075 | 32% | 12% |
| **Total** | **141,986** | **17%** | **9,835** | **−6%** | **151,821** | **15%** | **100%** |

## Acquisitions/divestitures, partnerships and joint ventures

During 2005, Sony Ericsson Mobile Communications AB (SEMC) reported strong unit volume and sales increases. Income before tax improved during the year with the higher volumes and sales. The improved performance is mainly a result of focusing on imaging, music and enterprise phones while increasing the number of more affordable and attractively designed models. SEMC's ambition is continued profitable growth by leveraging the opportunities created by the combination of the parent companies' technologies in the joint venture. The joint venture results are accounted for under the equity method with no sales included in Ericsson's financial statements. For more information see Notes to the Consolidated Financial Statements – Note C1, "Significant Accounting Policies."

### SONY ERICSSON RESULTS 2004–2005

|  | 2005 | 2004 | Percent change |
|---|---|---|---|
| Shipments (unit millions) | 51.2 | 42.3 | 21% |
| Sales (EUR m.) | 7,268 | 6,525 | 11% |
| Income before tax (EUR m.) | 514 | 486 | 6% |
| Net income (EUR m.) | 356 | 316 | 13% |
| Ericsson share of earnings (SEK billion) | 2.3 | 2.1 | 5% |

SEMC invested approximately USD 14 million to purchase a controlling stake in Beijing Suohong Electronics Co, Ltd (BSE). The investment increased SEMC's ownership from 10 percent to 74.5 percent and strengthened its in-house manufacturing capacity. BSE will be consolidated into SEMC from the first quarter of 2006 with minor effects on reported results. Local minority shareholder ownership remains unchanged.

For more information on transactions with SEMC, please also see Notes to the Consolidated Financial Statements – Note C30, "Related Party Transactions."

During 2004, Ericsson made a public offer to purchase shares of Ericsson S.p.A. in Italy, increasing Ericsson's ownership to 93 percent. In the first quarter of 2005, a Residual Public Offer was launched for the remaining shares and subsequently Ericsson S.p.A. was delisted from the Milan Stock Exchange. In total SEK 2.2 billion was paid out for the shares of which SEK 0.6 billion in 2005.

On October 25, 2005, Ericsson announced the intention to acquire key assets of Marconi's telecommunications operations for SEK 16.8 billion in cash. The acquisition strengthens Ericsson's position in the accelerating transmission segment and expands Ericsson's platform for leadership in "next generation" converging networks. As fixed and mobile services converge, Ericsson's customers will benefit from the acquisition.

Ericsson is acquiring assets expected to generate 2005 sales of approximately SEK 14.0 billion (GBP 1.0 billion). The acquired operations had net tangible assets of approximately SEK 1.4 billion (GBP 0.1 billion) as of September 30, 2005. The remaining acquisition cost will mainly be allocated to intellectual property rights (patents, brands, trade marks, etc). The acquisition is expected to have a neutral effect on earnings per share in 2006 and contribute positively to earnings per share from 2007.

During 2005, there were several small acquisitions to increase capacity mainly to handle growing systems integration business. The Company also made two technology acquisitions, Netspira and Axxessit, to expand the systems product portfolio.

There were no material acquisitions or divestitures completed during 2003 or 2004.

## Material contracts and contractual obligations

Primary contractual obligations are outlined in the table below. Operating leases are mainly related to offices and production facilities. Purchase obligations are mainly related to outsourced manufacturing, R&D and IS/IT operations and for components for our own manufacturing. With the exception of the Marconi acquisition, Ericsson has not been a party to any material contracts over the last two years other than those entered in the ordinary course of business.

### CONTRACTUAL OBLIGATIONS 2005

|  |  | Payment due by period | | | |
|---|---|---|---|---|---|
| (SEK million) | Total | <1 year | 1–3 years | 3–5 years | >5 years |
| Long-term debt [1] | 21,964 | 9,739 | 3,279 | 8,360 | 586 |
| Capital lease obligations [2] | 2,697 | 199 | 389 | 324 | 1,785 |
| Operating leases [2] | 10,807 | 2,134 | 3,321 | 2,409 | 2,943 |
| Other non-current liabilities | 2,740 | 32 | 781 | 3 | 1,924 |
| Purchase obligations [3] | 7,398 | 7,398 | – | – | – |
| Commitments for customer financing [1] | 3,643 | 3,643 | – | – | – |
| Total | 49,249 | 23,145 | 7,770 | 11,096 | 7,238 |

[1] See also Notes to the Consolidated Financial Statements – Note C21, "Financial Risk Management and Financial Instruments."

[2] See also Notes to the Consolidated Financial Statements – Note C27, "Leasing."

[3] The amounts of purchase obligations are gross, before deduction of any related provisions.

## Critical accounting estimates

The preparation of financial statements and application of accounting policies often involve management's judgment and/or the use of estimates and assumptions deemed to be reasonable and prudent. However, other results may be derived using different assumptions or estimates. There are a number of accounting policies subject to such estimates or assumptions. Please see Notes to the Consolidated Financial Statements – Note C2, "Critical Accounting Estimates and Judgments" for more information about the policies that we believe have the most significant impact on Ericsson's reported results and financial position.

# EXHIBIT 9

| From: | Ed Tiedemann |
|---|---|
| Sent: | Thursday, September 18, 1997 6:16 AM |
| To: | Olivier Glauser |
| Subject: | Re: ETSI W-CDMA concept group meeting 9/15-16 |

<x-rich>Thanks an awful lot for trying..... As we figured, it was stacked against us.

-- Ed --

At 7:33 PM -0700 9/17/97, Olivier Glauser wrote:

>>>>

<excerpt><center><bold>ETSI SMG2 Concept Group Alpha (W-CDMA) Meeting Stockholm 9/15-16, Hosted by Ericsson

</bold></center><bold>

</bold><italic>Note: major points of the meeting follow, list of contributions with comments at the end.

</italic>* The agenda of the meeting was to agree on a final set of 'working assumptions', check simulation results and prepare the final group alpha evaluation report for SMG2 (deadline September 24).

* The reality was that the working assumptions were set in stone, the corresponding simulation results were all available and formatted for the report courtesy of Ericsson. The evaluation report that was supposed to be jointly drafted by the group during the meeting was prepared in advance by Ericsson, Nokia, NEC and Panasonic and was renamed the Group Alpha Evaluation Report.

* The working assumptions (summarized in contribution A29 by Ericsson and used by the Chairman as assumptions to agree upon) <underline>are based on the FRAMES FMA2 proposal</underline> (5MHz, 4.096 Mcps, asynchronous, single carrier direct-sequence) <underline>with a modified downlink based on NTT's proposal</underline>(time multiplexed pilot symbols for channel estimation on FL & RL, separate BCCH Perch channel for cell acquisition with 'masking' technique for frame sync).

<underline>The concept now also supports a TDD mode proposed by Panasonic.

</underline>The rumor mill was saying that those assumptions were the result of a deal between Ericsson and NTT: FRAMES rvs link, NTT fwd link, TDD mode to accommodate Panasonic (Kato Omasu from Matsushita was attending).

* The former evaluation report (containing the different proposals including Qualcomm's) had been renamed <underline>"Proposals for options in the WB-CDMA concept group"</underline>, <underline>The new evaluation report contains only one system description and one set of corresponding simulation results </underline>(see previous point). Note that this change had been decided by the Chair, Vice-Chair and Secretary (Ericsson, NEC and Nokia respectively) before the meeting without informing/consulting the SMG2alpha mailing list. Only the new evaluation report (one proposal) will be presented to other ETSI groups.

1

Confidential                                                                                  QBN00805995

* At this stage performance results, flexibility or other technical arguments do not seem to play a role in having contributions and proposals accepted. After presenting more on the multi-carrier concept (A20). I had to fight to have the right to present the corresponding simulation results before a final decision was made for single carrier. The Chair's answer to any technical argumentation is that 1)others (i.e. Ericsson) do not have system and link level simulation results ready for that scheme (to compare and include in evaluation report), 2) the emphasize is not for standardization but to have CDMA accepted as concept, 3) those proposal are coming too late and where not 'investigated' enough by other participants.

* The chair further states that a unique solid concept will be presented at SMG. Other proposals are included in the "Proposal for Options" document and can be re-examined during the standardization phase (after December 97 once concept is selected). The reality is that Ericsson et al. will likely lock the assumptions based on their proposal.

* <underline>Any contributor not member of the Ericsson, Nokia, NEC, Panasonic/Matsushita core group basically got the same treatment.

</underline>Motorola did not get its generalized QPSK scheme (dynamic phase transition) accepted as baseline despite simulation results showing superior peak to average performance already presented in August. Same treatment for their OTD (Orthogonal Transmit Diversity) scheme. Note that both scheme do not directly contradict the 'working assumptions'. After lengthy and tense discussion (7 Moto delegates) the scheme was briefly referred to in a 'capacity enhancing technique' annex of the evaluation report.

Mitsubishi and its bi-orthogonal modulation was also left in the "proposal for options".

* QUALCOMM contribution on soft-handover and IS-95B dynamic thresholds raised a lot of interest. I had to fight to present it as part of the <italic>system description</italic> agenda item as the Chair wanted to have it as part of the <italic>remaining actions</italic> (last) agenda item. After much argumentation to have it part of the System Description document they agreed to broadly describe soft-handover principles in the System Description and have there a pointer to the contribution.

* Motorola is trying to get in the standard some of their pieces for IS-95 <underline>(PUF, OTD)</underline>. Lucent is contributing little and Nortel (Matra Cellular) sent an observer. However it would be beneficial to all if LMNQ was more coordinated in its actions in this group. Lucent seems to protect their GSM European interests (no Lucent people from US). Motorola had some people from CIG.

* The agenda for the group is now as follow:

- September 24, deadline to submit the evaluation report to SMG2 chairman

- October 1-3, concept group presentations at SMG2 - Hannover Germany

- October 15, deadline to submit written questions to concept groups

- October 23-24, questions and answers workshop  location TBD

<color><param>FFFF,0000,0000</param>- [NEW] 3-4 November, concept group alpha meeting @ TBD - progress development of Evaluation report, focus only on selected concept (FRAMES) adding, changing.

</color>- 17-21 November SMG2 UMTS ad hoc - Helsinki

- 1-5 December SMG2, decision from SMG2 on concept

2

Confidential                                                                                      QBN00805996

- 15-19 December, SMG plenary confirming UMTS concept selection

-------- List of contributions --------

<color><param>0000,0000,FFFF</param>* Axx - Operator Questions [Concept Group Chairman]

</color>List of question from operators to be answered by October 1. Qualcomm was asked to help especially in answering operational questions.

<color><param>0000,0000,FFFF</param>* A11 - Panasonic's Contribution to the Alpha Concept Group Evaluation Document [Panasonic]

</color>Cell search and TDD issues.

<color><param>0000,0000,FFFF</param>* A12 - Concept Group Alpha W-DS-CDMA Evaluation Document (v 0.1)

</color>Table of content of the new evaluation document. Distributed by the Chair (Ericsson).

<color><param>0000,0000,FFFF</param>* A15 - Harmonized Scheme on Data/Control Multiplexing [NEC]

</color>Results of the Ericsson/Japan negotiations on the issue.

<color><param>0000,0000,FFFF</param>* A16 - Soft Handover Method and Performance [QUALCOMM]

</color>Included in the "proposals for options". A pointer to this document are in the Evaluation Report.

<color><param>0000,0000,FFFF</param>* A17 - A Proposal for Uncoordinated Operation [NEC]

</color>Proposes to introduce compulsory power control to avoid interference from MSa belonging to system A, sharing frequency and interfering to system B.

Proposes to put MSa in soft handover with System B for power control and interference avoidance. This solution raised a lot of skepticism. Was retained as FYI.

<color><param>0000,0000,FFFF</param>* A18 - Auxiliary Pilots [QUALCOMM]

</color>Included in the "proposal for options". After much argumentation did not make it in the Evaluation Report. Ericsson argued that it was incompatible with their Pilot MUX scheme.

<color><param>0000,0000,FFFF</param>* A19 - CDMA Code Planning Considerations [QUALCOMM]

</color>Was given FYI to show PILOT_INC flexibility.

<color><param>0000,0000,FFFF</param>* A20 - W-CDMA Downlink Multi-Carrier Approach [QUALCOMM]

</color>Included in the "proposal for options".

3

QBN00805997

Some operators raised the issue of willing to have only one antenna per BS. Same issue for Motorola's OTD scheme.

<color><param>0000,0000,FFFF</param>* A21 - W-CDMA Downlink Link-Level Simulation Results [QUALCOMM]

</color>Included in the "proposal for options".

<color><param>0000,0000,FFFF</param>* A22 - Orthogonal Transmit Diversity for DS-CDMA [Motorola]

* A23 - Questions and Comments on the W-CDMA Evaluation Document (v. 0.5) [Motorola]

* A24 - Comments on the August 1997 issue of the W-CDMA Evaluation Document (v. 0.5) [Lucent]

* A25- DS-CDMA Capacity Increase Attributable to Fast Forward Power Control [Motorola CIG]

</color>Considered as FYI

<color><param>0000,0000,FFFF</param>* A26 - Performance Evaluation of Bi-Orthogonal Modulation 2nd interim report [Mitsubishi]

</color>Reiteration of the proposal from Mistubishi to use bi-orthogonal modulation for better peak to average performances. Proposal was not adopted in the concept. New sim results were added in the "Proposals for options".

<color><param>0000,0000,FFFF</param>* A27 - FMA2 Current System Description [Ericsson]

</color>ITU-R paper submitted in Torronto on FRAMES.

<color><param>0000,0000,FFFF</param>* A28 - FMA2 Simulation Results [Ericsson]

</color>System and link level results corresponding to assumptions in A27. Generated a lost of discussions. System level simulation assume fix fwd link power allocation and maximum active set of 2.

<color><param>0000,0000,FFFF</param>* A29 - Proposal for W-CDMA Concept [Ericsson]

</color>Lists of assumption and concepts for UMTS per Ericsson to be adopted by concept group alpha

<color><param>0000,0000,FFFF</param>* A30 - Input to Editor of Annex 1 Answers [Ericsson]

</color>ITU-R and 0402 template filled for FMA2; contains link budget assumptions for FRAMES

<color><param>0000,0000,FFFF</param>* A31 - Packet Access Scheme Proposal [Ericsson]

</color>Based on FRAMES. Was presented for the fist time and adopted as basis for packet access. Proposal to add small packets in random access bursts.

<color><param>0000,0000,FFFF</param>* A33 - Input to Evaluation Document on Modulation

4

[Motorola]

* A35 - Modified Cell Search Scheme [Ericsson]

</color>Adopted as cell search scheme for system description. Proposed and decided for adoption by Ericsson.

<color><param>0000,0000,FFFF</param>* A36 - Mobile Station Location using Power Up Function [Motorola]

</color>Material based on PUF contributions to TR45.5. Scheme adapted for the FRAMES proposal.

Considered FYI. Has to be submitted again.

<color><param>0000,0000,FFFF</param>* A37 - W-CDMA System Description Draft 0.1

</color>Basis for the Evaluation document. Magically written by the group (in fact Ericsson) between Monday and Tuesday based on assumptions 'agreed' on Monday.

</excerpt><<<<<<<<

</x-rich>

5

QBN00805999

# EXHIBIT 11

## 28th October 2005

<u>Conference Call</u>
**Leading mobile wireless technology companies call on European
Commission to investigate Qualcomm's anti-competitive conduct**

### Presenters

- **Maurits Dolmans** – Moderator and representing Nokia
- **Kasim Alfalahi**  - Ericsson
- **David Dull** - Broadcom
- **George Cary**  - Speaking for Texas Instruments
- **Chris Shimizu** - NEC
- **Brendon Gore** - Panasonic Mobile Communications

**Operator:**

> Thank you for standing by, and welcome to the conference call. At this time, all participants are in a listen-only mode. There will be a presentation, followed by a question and answer session, at which time if you wish to ask a question, you will need to press *1 on your telephone. I must advise you that this conference is being recorded today, Friday, 28 October 2005. I would now like to hand the conference over your first speaker today, Maurits Dolmans.

**Moderator:**

> Thank you. Good morning, ladies and gentlemen, and thank you for joining the call. I also apologise for the slight delay this morning. My name is Maurits Dolmans, and I have been asked to act as the moderator for this call. I will also be the spokesperson for Nokia if there are any particular questions for that company.
>
> I am joined this morning by a number of representatives for the companies involved, and I will give you the names and the companies. They are:
>
> *Kasim Alfalahi of Ericsson; David Dull of Broadcom; George Cary speaking for Texas Instruments; Chris Shimizu of NEC; Brendon Gore of Panasonic Mobile Communications*

1

whether you're looking at launching a similar suite in the US or anywhere else?

**Moderator:**

On the first question, I have not raised it with Qualcomm as a representative of one of the companies. That doesn't mean that the companies in negotiations or past discussions have not raised issues with Qualcomm. Of course they have. It is not going to be that much of a surprise to Qualcomm to hear some of these points. On the second question, Broadcom is already litigating this issue in the US in court, and right now in Europe the third generation standards are just taking off. So now is the right moment to concentrate on Europe.

**Maija Palmer:**

So at the moment it's only Broadcom who is litigating in the US on this issue? Would the other companies be – are they interested in joining that suite in the US as well?

**Moderator:**

Well, I should let each of the companies speak for themselves, but I think that the important thing is that the issues are being addressed and whether it's one or six companies litigating doesn't really matter. Broadcom is now carrying the torch in the US and we have now raised this issue in the European Union. That means that adequate attention is being given to it.

**Maija Palmer:**

Right, and there are no plans for looking at this in Japan particularly or is it such a different situation with them?

**Moderator:**

Maybe somebody from Panasonic or NEC would like to comment on that but I do think this is a worldwide issue and it cannot be excluded that other antitrust authorities might be interested in thinking about this.

**Maija Palmer:**

Right, is there any comment from perhaps NEC or Panasonic whether you have any views on that at this time?

**Brendon Gore:**

# EXHIBIT 12

**BusinessWeek**
# HOT
# Companies

### Free Live Web Conference
Learn more about
what drives superachievers.

Sponsored by


**BusinessWeek** online

▶ **Close Window**

OCTOBER 31, 2005

NEWS ANALYSIS
By Andy Reinhardt

# A Scrum Over Qualcomm's Fees
## Europe is once again the scene of a bitter high-tech battle. This time it pits a half-dozen rivals against Qualcomm over its licensing practices

Qualcomm (**QCOM** ) has never been greatly beloved in the mobile-phone industry. The San Diego company invented and brought to market in the 1990s a radically better technology for second-generation digital mobile phones, called Code Division Multiple Access, or CDMA, that is now used by around 400 million customers worldwide and half the cell-phone operators in the U.S.

But Qualcomm has always been one tough cookie, tightly defending its intellectual property while charging others rich royalties to use its patents.

Its biggest coup came in 1999, when the International Telecommunications Union standards body chose CDMA as the basis for both flavors of the third generation in mobile technology, known by the generic name 3G. That six-year-old decision lies at the heart of a bitter battle launched on Oct. 26 -- but not revealed until 48 hours later. Shares of Qualcomm fell 4.6% on Oct. 28, to $41.07.

**DRIVING UP THE COST?**  Six companies sent separate letters demanding that the European Commission's powerful antitrust czar, Neelie Kroes, open an investigation into alleged misconduct in Qualcomm's licensing of key CDMA patents. The complainants are handset makers Nokia (**NOK** ), NEC (**NIPNY** ), and Panasonic Mobile Communications, chipmakers Texas Instruments (**TXN** ) and Broadcom (**BRCM** ), and the world's leading seller of mobile networks, LM Ericsson (**ERICY** ).

The companies charge that Qualcomm, which owns about one-quarter of the essential patents used in the W-CDMA (Wideband Code Division Multiple Access) version of 3G, is charging royalties that are "excessive and disproportionate."

The impact, they say, is higher prices for W-CDMA phones and networks, which are passed on to consumers and which hold back adoption of 3G. Nobody knows how big the royalties really are because specific terms are locked up in confidential contracts. However, Qualcomm made about $415 million last year from W-CDMA royalties, and researcher Gartner figures there were 18 million W-CDMA phones sold, which works out to $23 per phone.

**"LEGALLY MERITLESS."**  Gartner analyst Alan Brown says total royalties for W-CDMA phones likely amount to 8% to 10% of their selling costs. And Qualcomm's share is roughly half of that, figures analyst Albert Lin of American Technology Research in San Francisco. That means the total intellectual-property burden of a 3G phone approaches $50 -- making it tough to deliver phones priced less than $250 at retail.

But royalty rates aren't the only thing bothering the companies seeking action. They also allege that Qualcomm has engaged in exclusionary business practices, such as offering better royalty terms to customers who agree to buy all their W-CDMA chips exclusively from Qualcomm.

"They are trying to exclude rivals from the market and prevent the entry of new rivals," says Maurits Dolmans, a partner in the Brussels office of law firm Cleary Gottlieb, which represents Nokia. In a statement issued on Oct. 28, Qualcomm said that the reported allegations are "factually inaccurate and legally meritless."

**JOINING FORCES.**  At the heart of the dispute is a problem arising with growing frequency in the fiercely competitive yet incestuous technology sector. To set widely adopted industry standards, companies often join forces in private consortiums or under the auspices of international bodies.

Frequently, essential pieces of intellectual property have already been invented and patented by one or more members of the group. So in the interest of the standard, those companies are pressed to make the technologies available to others -- not necessarily for free, but licensed on "fair, reasonable, and nondiscriminatory" terms.

That's what Qualcomm did when its CDMA patents were selected to be included in both the W-CDMA standard and a Qualcomm-backed alternative called CDMA 2000. But the six companies complaining to the EC contend Qualcomm isn't playing by the rules, charging more than its patents are worth and using them as a lever to gain business. "They implied they would license on fair and reasonable terms, but they welched on the deal," says David Dull, general counsel for Broadcom.

**BLISTERING RULING.**  In its statement, Qualcomm replied that it has already struck licensing deals with five of the six complainants. "The action appears to be nothing more than an attempt by these licensees to renegotiate their license agreements by seeking governmental intervention," the company said.

The complainants' choice of the EC to hear the complaint is intriguing. Its competition directorate is the outfit that, under previous head Mario Monti, blocked General Electric's (**GE** ) proposed merger with Honeywell International (**HON** ) and issued a blistering antitrust

ruling against Microsoft (**MSFT** ), including the largest antitrust fine ever levied in the EC's history.

The directorate also is now reportedly mulling an antitrust case against Intel (**INTC** ) with the backing of new Commissioner Kroes. The Commission declines to comment on the new mobile-phone matter, other than to acknowledge that it has received the complaints.

**TRIED AND FAILED.**  The next step will be for the agency's staff to probe the claims and decide whether to proceed. It would then issue a so-called "Statement of Objection," the EC equivalent of an indictment, and finally a decision, which both sides could appeal.

The process could take years, but the complainants are clearly hoping Qualcomm will negotiate a settlement instead. "We're hoping to bring them back to the table," says Cleary Gottlieb's Dolmans.

The new complaints are but the latest chapter in a long-running legal battle between Qualcomm and its rivals. Several of the companies involved in the latest skirmish tried and failed years ago to get Qualcomm's patents invalidated in court. In 1998, Ericsson dropped three patents from a lawsuit it had filed against Qualcomm and surrendered claims regarding two others. And last July, Broadcom filed a lawsuit in the U.S. District Court for the District of New Jersey outlining allegations similar to those brought up in the latest complaint.

**"THERE'S A PRICE."**  To evaluate the merits of the case, the EC will lean on a small number of legal precedents dating back years, including rulings against British Airways (**BAB** ) and tiremaker Michelin saying they abused their dominant market positions through sales-incentive schemes and other exclusionary practices.

But Dolmans says the plaintiffs aim to rely less on the legal precedents than on solid economic arguments about the allegedly damaging effect Qualcomm's royalties have on 3G prices. They'll also harken back to several notorious cases in which companies have participated in standards-setting processes, only to come back later and assert unexpected patent claims against users of the standard.

In one such incident, dating back to 1993, computer maker Dell (**DELL** ) participated in the fashioning of a new interface for PC graphics -- even signing two agreements asserting that it had no intellectual-property claims -- only to later pursue users of the technology for violating its IP rights. The U.S. Federal Trade Commission ordered Dell to stop in 1996.

What makes this situation different -- and what could work against the complainants: There was no dispute when W-CDMA was approved over the nature of Qualcomm's intellectual property. The only bone of contention is how much it charges for licenses.

But as analyst Lin point out: "If [Qualcomm's technology] is the best way, then there's a price." Its rivals won't be able to renegotiate their contracts until 2008 or 2009 anyway. By that time the wheels of European justice probably will have turned and -- who knows -- the market will be fussing over 4G or other new technologies not yet even dreamed up.

---

**READER COMMENTS**

---

## Most recent comments

See all comments
Leave your own comments

**Nickname:** Loki
**Review:** Everyone has to pay for the technology.Qualcomm's effort need to be considered on developing such a technology. Like any pharma cos., IP wait till it comes to public domain or pay royality.If the same situation would have arised to the rival companies would they share ???
**Date reviewed:** Nov 2, 2005 4:44 PM

**Nickname:** ultraviolet
**Review:** Qualcomm, and quite a few others, will be wiped out by an electromagnetic storm: WiFi/WiMax plus Skype.
**Date reviewed:** Nov 1, 2005 7:12 AM

**Nickname:** SP
**Review:** The article analyzes the impact of this complaint from a 3G perspective, and suggests it's not of much use. However, using the same last observation in the article differently, this fight may have more to do with 4G than 3G. In 3G, the companies settled for better technology (Qualcomm's CDMA) for a higher price. With Qualcomm's purchase of Flarion, Qualcomm signaled it intends to repeat the same with 4G, while continuing to be a pain in these companies' (plus Intel's) throat for some time to come. As this next 4G battle is brewing, these companies (plus many more that will probably also join the circus soon) needed to warn Qualcomm. If they don't see much cooperation, I think they will try to steer the standards away from Qualcomm's potential future loyalty streams before it's too late, as it is in 3G, this time choosing price over technology.
**Date reviewed:** Oct 31, 2005 10:54 PM

**Nickname:** Big O
**Review:** These complaints are merely grousing about Qualcomm's better technology and therefore dominant position. It is a sad day when they try to gang up on Qualcomm through political means. They won't succeed.

---

**Reinhardt** is a correspondent in *BusinessWeek*'s Paris bureau. He was in Copenhagen for the INDEX: awards
Advertising | Special Sections | MarketPlace | Knowledge Centers

Terms of Use | Privacy Notice | Ethics Code | Contact Us

# EXHIBIT 13

William S. Feiler
MORGAN & FINNEGAN, L.L.P.
3 World Financial Center
New York, New York 10281
(212) 415-8700
(212) 415-8701 (FAX)

Attorneys for
Telefonaktiebolaget LM Ericsson

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>QUALCOMM INCORPORATED,<br><br>　　　Defendant. | CASE NO.: 05-3350 (MLC) |

**OBJECTIONS TO QUALCOMM'S SUBPOENA
TO TELEFONAKTIEBOLAGET LM ERICSSON
<u>COMMANDING PRODUCTION OF DOCUMENTS</u>**

Pursuant to FED. R. CIV. P. 45(c)(2)(B), third party Telefonaktiebolaget LM

Ericsson ("LM Ericsson") hereby objects to the Subpoena for documents served on April

4, 2006 by defendant ("Qualcomm").

980921 v1

Any response indicating that a document will be produced is not a representation that any such document currently exists. Such response only indicates that, subject to any and all objections, if any document does exist, it will be produced for inspection.

## GENERAL OBJECTIONS

1.      LM Ericsson objects to Qualcomm's Subpoena to the extent it seeks to impose, through definitions or otherwise, obligations on LM Ericsson beyond those specified in Fed. R. Civ. P. 26, 30, 34 & 45, other applicable Federal Rules and the Local Civil Rules of this Court.

2.      LM Ericsson objects to Qualcomm's Subpoena to the extent it seeks information that is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

3.      LM Ericsson objects to Qualcomm's Subpoena to the extent it seeks documents regarding activities taking place outside the United States of America.

4.      LM Ericsson objects to Qualcomm's Subpoena to the extent it seeks information protected from discovery under the attorney-client privilege, attorney work product immunity, common interest privilege, and/or any other applicable privilege or immunity.   In all instances, LM Ericsson intends to preserve its attorney-client privilege, attorney work product immunity, common interest privilege, and/or any other privilege or immunity to the full extent applicable. No document will be produced that is subject to a claim of attorney-client privilege, attorney work product immunity, common interest privilege, and/or any other applicable privilege or immunity.   If any such

-2-

documents are disclosed, except pursuant to a specific written agreement covering such documents, the disclosure shall be deemed inadvertent and shall not constitute a waiver of any applicable privilege.  LM Ericsson will identify documents withheld from discovery on grounds of attorney-client privilege, work product immunity, common interest privilege, and/or any other applicable privilege or immunity, if any, and will expressly identify the basis for the privilege or immunity asserted in a manner consistent with the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, and at a time agreed upon by counsel.  LM Ericsson also reserves the right to assert other privileges on its own under Fed. R. Evid. 501.

5.     LM Ericsson objects to providing any confidential, competitively-sensitive, or proprietary information in the absence of an appropriate Protective Order entered by the Court.  LM Ericsson further objects to the production of documents containing confidential or proprietary information not relevant to the subject matter of this litigation.

6.     LM Ericsson reserves the right to redact information from any document provided for inspection and copying which is: (i) not responsive to Qualcomm's Subpoena; (ii) irrelevant; and/or (iii) subject to an objection specified herein.

7.     LM Ericsson objects to the definition of the term "QUALCOMM" to the extent that it attempts to extend coverage beyond the corporation Qualcomm Incorporated.

-3-

8.    LM Ericsson objects to the definition of the term "Broadcom" to the extent that it attempts to extend coverage beyond the corporation Broadcom Corporation.

9.    LM Ericsson objects to the definition of the term "Ericsson" to the extent that it attempts to extend coverage beyond the corporation LM Ericsson Incorporated.

10.    LM Ericsson objects to the definition of the term "NEC" to the extent that it attempts to extend coverage beyond the corporation NEC Corporation.

11.    LM Ericsson objects to the definition of the term "Nokia" to the extent that it attempts to extend coverage beyond the corporation Nokia Corporation.

12.    LM Ericsson objects to the definition of the term "Panasonic Mobile Communications" to the extent that it attempts to extend coverage beyond the corporation Matsushita Electric Industrial Co., Ltd.

13.    LM Ericsson objects to the definition of the term "Sony Ericsson" to the extent that it attempts to extend coverage beyond the corporation Sony Ericsson Mobile Communications AB.

14.    LM Ericsson objects to the definition of the term "Texas Instruments" to the extent that it attempts to extend coverage beyond the corporation Texas Instruments Incorporated.

15. LM Ericsson objects to the definition of the term "agreement" to the extent that it attempts to extend coverage beyond executed agreements.

16. LM Ericsson objects to the "Definitions" and "Instructions" sections of Qualcomm's Subpoena to the extent they attempt to impose obligations on LM Ericsson in responding to the Subpoena beyond those imposed by the Federal Rules of Civil Procedure and the Local Civil Rules of this Court.

17. LM Ericsson objects to Qualcomm's Subpoena with respect to the identification of documents lost, destroyed, erased or no longer in LM Ericsson's possession, to the extent it seeks to impose obligations on LM Ericsson beyond those specified in Fed. R. Civ. P. 34 & 45.

18. LM Ericsson objects to Qualcomm's subpoena in its entirety on the grounds that it is overly broad and unduly burdensome to the extent it calls for "all" documents as including production of multiple duplicate copies of documents and/or documents already in the possession of Qualcomm.

19. LM Ericsson objects to Qualcomm's subpoena in its entirety on the grounds that it is overly broad, vague, unduly burdensome and oppressive, and calls for the production of documents that are not relevant to this action and are not reasonably calculated to lead to the discovery of admissible evidence.

20. LM Ericsson objects to the time and place requested for production of documents as being unduly burdensome. Production of any documents required by

-5-

the subpoenas will be produced at the New York office of Morgan & Finnegan L.L.P. at a mutually convenient date.

21.    LM Ericsson's responses are not intended to waive or prejudice any objections LM Ericsson has raised or may assert now or in the future, including objections as to the admissibility at trial of any response or information or category of responses or information.

22.    LM Ericsson reserves the right to supplement or revise its objections and responses to the Subpoena.

23.    LM Ericsson objects to the requests to the extent that they seek documents already in the possession of Qualcomm, and/or documents available from public sources on the grounds that such requests are unduly burdensome.

24.    LM Ericsson objects to each request to the extent that such request seeks information dated after the filing of the Complaint in this action on July 1, 2005.

25.    LM Ericsson objects to the production of documents dated before July 1, 2001 on the ground of relevance and that such documents are not likely to lead to admissible evidence.  This date is four years prior to Broadcom's filing of the Complaint in this action.  Since any action under the federal antitrust laws and the New Jersey Antitrust Act must be commenced within four years after the cause of action accrues, any documents created more than four years before the filing date are not relevant to the subject matter involved in the pending action nor would such documents lead to the discovery of admissible evidence.

-6-

26.    LM Ericsson objects to the production of electronically stored information kept on individual devices and other electronic records not kept on central servers of LM Ericsson as unduly broad and burdensome and not likely to lead to admissible evidence.  LM Ericsson further objects to the production of electronically stored information not reasonably accessible including without limitation "deleted" files, embedded data, such as meta data, revision or tracking information, object coding, website source coding or the like, and system logs as unduly broad and burdensome and not likely to lead to admissible evidence.  LM Ericsson also objects to the production of electronically stored information contained in inactive archival information and back ups of all kinds as unduly burdensome and not likely to lead to admissible evidence.

27.    LM Ericsson objects to bearing the cost of production, restoration and duplication of all documents requested as unduly burdensome in view of the third party status of LM Ericsson.

28.    LM Ericsson objects to producing information in paper form and reserves the right to produce documents in the media and format as kept by LM Ericsson.

29.    LM Ericsson objects to the production of any documents prior to a final decision by the court on the pending motion to dismiss filed by Qualcomm on the basis that any production is unduly burdensome and totally irrelevant in the event that the motion is granted.

-7-

30.    LM Ericsson has not completed its investigation into the subject matter of the action or the underlying facts, evidence or allegations.  Accordingly, this response is made to the best of LM Ericsson's current knowledge, information and belief.  LM Ericsson reserves the right to conduct additional investigation and to assert additional objections.

## SPECIFIC OBJECTIONS TO REQUESTS
## FOR DOCUMENTS TO BE PROVIDED

REQUEST NO. 1

All documents relating to Ericsson's communications with any SDO or any committee of any SDO relating to any mobile wireless communications standard or technology.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.  LM Ericsson also objects to this request to the extent it calls for publicly available information available to Qualcomm.

-8-

REQUEST NO. 2

All documents relating to Ericsson's communications with anyone relating to an SDO's evaluation or consideration of any mobile wireless communications standard or technology.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

REQUEST NO. 3

All documents relating to the adoption by any SDO of any standard that utilizes or otherwise implements WCDMA technology.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide communications to United States based SDOs relating to WCDMA technology as that term is best understood, if any.

-9-

## REQUEST NO. 4

All documents relating to the adoption by any SDO of any standard that utilizes or otherwise implements CDMA technology.

### RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.  LM Ericsson also objects to this request to the extent it calls for publicly available information available to Qualcomm.

## REQUEST NO. 5

All documents relating to the meaning of licensing on RAND terms, in the context of any commitment by anyone to any SDO.

### RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.  LM Ericsson also objects to this request to the extent it calls for publicly available information.

-10-

REQUEST NO. 6

All documents relating to licenses or prospective licenses to any Ericsson patent essential to any mobile wireless communications standard, including, but not limited to, documents relating to (i) offers to license; (ii) requests that any other person or company obtain a license; (iii) proposals to license; (iv) licensing terms; (iv) Ericsson's licensing practices; (v) Ericsson's licensing policies; and (vi) all proposed or executed license agreements.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

REQUEST NO. 7

All documents relating to licenses or prospective licenses to any non-Texas Instruments patent essential to any mobile wireless communications standard, including, but not limited to, documents relating to (i) offers to license; (ii) requests that Ericsson obtain a license; (iii) proposals to license; (iv) licensing terms; (iv) anyone's licensing practices; (v) anyone's licensing policies; and (vi) all proposed or executed license agreements.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to

-11-

the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents of licensing Qualcomm patents in the United States relating to WCDMA technology for Universal Mobile Telephone System, if any.

## REQUEST NO. 8

All documents relating to any agreements between Ericsson and Broadcom.

## RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents of United States patent license agreements relating to WCDMA technology for Universal Mobile Telephone System, if any.

## REQUEST NO. 9

All documents relating to any agreements between Texas Instruments and Ericsson.

-12-

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents of United States patent license agreements relating to WCDMA technology for Universal Mobile Telephone System, if any.

REQUEST NO. 10

All documents relating to any agreements between Ericsson and Nokia.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents of United States patent license agreements relating to WCDMA technology for Universal Mobile Telephone System, if any.

-13-

## REQUEST NO. 11

All documents relating to the ability of any provider or carrier to adopt or deploy different wireless technologies, including 3G, 4G or other mobile wireless technology.

## RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. LM Ericsson additionally objects to this request as it is unclear in the terminology "4G." Subject to the foregoing, LM Ericsson will provide documents of any United States provider or carrier relating to 3G WCDMA technology for Universal Mobile Telephone System, if any.

## REQUEST NO. 12

All documents concerning the ability, or lack of ability, of any wireless telecommunications carrier or carriers, whether specifically or generally, to switch from (or the costs, time, or other resources involved in switching from) one mobile wireless telecommunications technology, system or network to another, including without limitation switching from CDMA-based systems or networks to non-CDMA based systems or networks.

-14-

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents of any United States wireless telecommunication carrier involving switching to WCDMA technology for Universal Mobile Telephone System, if any.

REQUEST NO. 13

All documents concerning Ericsson's efforts to induce any wireless telecommunications carrier to switch from one mobile wireless telecommunications technology, system or network to another, including without limitation switching from CDMA-based systems or networks to non-CDMA based systems or networks.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents of any United States wireless telecommunication carrier involving switching to WCDMA technology for Universal Mobile Telephone System, if any.

-15-

REQUEST 14

All documents concerning actual or potential competition in the design or sale of chipsets for use in mobile wireless telecommunications devices, including (i) market shares, competitive position, and competitors, including any comparison of relative strengths and weaknesses, number of customers, revenues, Ericsson's attempts to win customers from other companies or increase usage of Ericsson products, losses of customers to other companies, and responses to the entry of new competitors; (ii) competitive analyses of mobile wireless communications products, including improvements or innovations in features, functions, ease of operation, performance, cost, or other advantages to customers or users; and (iii) supply and demand conditions, including the impact of substitutes.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents of the requested activities occurring in the United States and relating to WCDMA technology for Universal Mobile Telephone System, if any.

REQUEST NO. 15

All documents relating to an entry or potential entry of a new competitor into the market for chips or chipsets for use in mobile wireless communications.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents involving the United States market and relating to WCDMA technology for Universal Mobile Telephone System, if any.

REQUEST NO. 16

All documents relating to the market or potential market for WiMax.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

REQUEST NO. 17

All documents relating to the prices and terms offered to Ericsson by providers of wireless communication chips, including documents relating to any

-17-

incentives, rebates or bundling related to any wireless communication chip and all agreements for the sale or purchase of wireless communication chips.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology or products, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents involving the United States market and relating to WCDMA technology for Universal Mobile Telephone System, if any.

REQUEST NO. 18

All documents relating to Ericsson's communications with any provider or prospective provider of wireless communication chips relating to any person's rights to make or sell wireless communication chips or with respect to any person's right to use any such chips.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology or products, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents involving the United

980921 v1

States market and relating to WCDMA technology for Universal Mobile Telephone System, if any.

## REQUEST NO. 19

All documents relating to any inability of any supplier of materials or services related to wireless communication chips to meet Ericsson's demands for such materials.

### RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology or products, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents involving the United States market and relating to WCDMA technology for Universal Mobile Telephone System, if any.

## REQUEST NO. 20

All documents relating to QUALCOMM's entry into the UMTS chip business.

### RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to time or geographical region, fails to request information relevant to the action, and is not

-19-

likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents involving the United States market and relating to WCDMA technology for Universal Mobile Telephone System, if any.


REQUEST NO. 21

      All documents relating to Broadcom or QUALCOMM.

RESPONSE

      In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. LM Ericsson also objects to the extent the request seeks information requested in other requests.


REQUEST NO. 22

      All documents relating to any complaint by anyone to the European Commission alleging that QUALCOMM is violating the competition law of the European Union or its member states.

RESPONSE

      In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. LM

-20-

Ericsson also objects to the extent the request calls for information that cannot be disclosed because of an applicable law, regulation or order.

## REQUEST NO. 23

All documents relating to any communication between or among Broadcom, Ericsson, NEC, Nokia, Panasonic Mobile Communications, Sony Ericsson, and Texas Instruments relating to QUALCOMM, standards or licensing terms, including RAND terms.

## RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. LM Ericsson also objects to the extent the request calls for information that cannot be disclosed because of an applicable law, regulation or order.

## REQUEST NO. 24

All joint defense agreements, common interest agreements or any other agreements between Ericsson and anyone relating to any dispute, litigation, or government investigation involving QUALCOMM.

## RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to

-21-

relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

REQUEST NO. 25

All documents relating to any communications with any person or company about any dispute or disputes between Broadcom and QUALCOMM or between Ericsson and QUALCOMM.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

REQUEST NO. 26

All documents relating to communications or meetings between Ericsson and Broadcom, Sony Ericsson, Texas Instruments or Nokia relating to any of the following topics: (a) any market related to mobile wireless communications; (b) competition between or among companies in the mobile wireless communications industry; (c) products in the mobile wireless communications industry; (d) competitors of Sony Ericsson, Ericsson, Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications; (e) customers of Sony Ericsson, Ericsson, Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications; (f) prices in the mobile wireless communications

-22-

industry; (g) licensing in the mobile wireless communications industry; (h) SDOs that set standards for the mobile wireless communications industry; (i) any litigation or government investigation in the mobile wireless communications industry; and (j) mobile wireless technology.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

REQUEST NO. 27

All documents relating to any communications between Ericsson and anyone relating to QUALCOMM's licensing practices or terms or QUALCOMM's products or product sales practices or terms.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. Subject to the foregoing, LM Ericsson will provide documents involving activities within the United States relating to WCDMA technology for Universal Mobile Telephone System, if any.

-23-

REQUEST NO. 28

All documents relating to any complaint by anyone to any government or government official of any nation or multinational organization relating to QUALCOMM.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. LM Ericsson also objects to the extent the request calls for information that cannot be disclosed because of an applicable law, regulation or order.


REQUEST NO. 29

All documents relating to BREW, including, but not limited to, documents relating to Ericsson's communications with anyone relating to BREW.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

REQUEST NO. 30

All documents relating to any effort by Ericsson to make any product related to mobile wireless communications of any company ineffective, incompatible, or otherwise less desirable to consumers.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. LM Ericsson additionally objects to this request as it is unclear in the terminology "mobile wireless communications." Subject to and without waiver of the foregoing objections, as presently advised LM Ericsson does not possess any documents that are responsive to this Request.

REQUEST NO. 31

All documents relating to any complaint by anyone to the European Commission Directorate General – Competition regarding Sony Ericsson, Ericsson or Nokia.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence. LM

-25-

Ericsson also objects to the extent the request calls for information that cannot be disclosed because of an applicable law, regulation or order.

REQUEST NO. 32

All documents relating to the retention or destruction of documents related to QUALCOMM or to mobile wireless communications.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

REQUEST NO. 33

All documents relating to Ericsson's litigation with Samsung styled Ericsson Inc. et al. v. Samsung Electronics Co. et al., No. 02-06CV-63 (E.D. Tex. filed Feb. 20, 2006), and related foreign litigations.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

-26-

REQUEST NO. 34

All documents regarding the Wireless World Research Forum.

RESPONSE

In addition to the General Objections set forth above, LM Ericsson objects to this request as being overly broad and ambiguous, especially since it is not limited to relevant technology, time or geographical region, fails to request information relevant to the action, and is not likely to lead to the discovery of admissible evidence.

Respectfully submitted,

Dated: April 7, 2006                    By: _William S. Feiler_____

William S. Feiler (WF7618)
MORGAN & FINNEGAN, L.L.P.
3 World Financial Center
New York, NY 10281
Tel: (212) 415-8700
Fax: (212) 415-8701

Attorneys for Third Party
Telefonaktiebolaget LM Ericsson

-27-

## CERTIFICATE OF SERVICE

On this 7th day of April, 2006, I caused copies of the attached

**OBJECTIONS TO QUALCOMM'S SUBPOENA
TO TELEFONAKTIEBOLAGET LM ERICSSON
COMMANDING PRODUCTION OF DOCUMENTS**

to be served, via Federal Express, upon the below listed counsel:

> Richard J. Stark
> Cravath Swaine & Moore LLP
> 825 Eighth Avenue
> New York, New York 10019
> Counsel for Qualcomm Incorporated
>
> David S. Stone
> Boies, Schiller, & Flexner, Esqs.
> 150 John F. Kennedy Parkway
> 4[th] Floor
> Short Hills, New Jersey 07078
> Counsel for Broadcom Corporation

I certify under the penalty of perjury that the foregoing is true.

Executed on April 7, 2006

_Danielle Vincenti Tully_
Danielle Vincenti Tully

-28-

# EXHIBIT 14

# CRAVATH, SWAINE & MOORE LLP

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON

DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS

**WORLDWIDE PLAZA**
**825 EIGHTH AVENUE**
**New York, NY 10019-7475**

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700
———
CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150
———
WRITER'S DIRECT DIAL NUMBER

**(212) 474-1956**

KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS

DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

April 13, 2006

<u>Broadcom Corporation v. QUALCOMM Incorporated</u>

Dear Bill:

   I write regarding the objections and responses of Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") to QUALCOMM's subpoenas.

   <u>Ericsson's Objections to the Costs Related to the Subpoenas.</u> QUALCOMM is willing to discuss the costs of compliance with QUALCOMM's subpoenas with Ericsson. It must be understood, however, that Ericsson is no ordinary disinterested third party to this matter. To the contrary, Ericsson and Broadcom are apparently acting in concert in this case as well as in other, related matters. In fact, at a joint press conference by representatives of Ericsson, Broadcom and others in October, one of Broadcom's attorneys, Maurits Dolmans, stated that Broadcom was "carrying the torch in the US" on behalf of Ericsson and others. Moreover, Ericsson, together with Nokia and Texas Instruments, submitted a letter to the Court on February 24, 2006, in which Ericsson urged the Court to deny QUALCOMM's pending motion to dismiss and made several factual assertions regarding QUALCOMM, markets, license practices, FRAND terms, and standardization. Ericsson cannot now resist discovery in this matter by pretending to be an innocent bystander to this action.

   <u>Documents Regarding Activities Outside the United States.</u> There is no basis for Ericsson's attempt to exclude from its production "documents regarding activities taking place outside the United States of America". (<u>E.g.</u>, General Obj. 3.) As Ericsson well knows, Broadcom has alleged that the relevant markets in this action are worldwide markets. (<u>E.g.</u>, Compl. ¶ 57.) Moreover, Broadcom's allegations explicitly implicate standards-setting outside the United States (<u>e.g.</u>, Compl. ¶ 84) and commercial activity – including licensing – outside the United States (<u>e.g.</u>, Compl. ¶¶ 73-74). Please let us know whether Ericsson will agree to produce relevant documents regardless of the location of the "activities" to which the documents pertain.

**Time Scope of Production.** There is no basis for the time constraints Ericsson seeks to put on its production. For example, standards setting and licensing related to WCDMA occurred at least as early as 1998. Accordingly, Ericsson cannot restrict its production to documents dated on or after July 1, 2001. There is also no basis for Ericsson's refusal to produce documents dated after July 1, 2005. Nevertheless, to address Ericsson's objections, QUALCOMM hereby limits all of the requests to documents created between January 1, 2003, and March 31, 2006, with the exception of the following: (1) Requests 1-5, 9-10, and 27 are limited to documents created between January 1, 1997, and March 31, 2006; (2) requests 13 and 31 are limited to documents created between January 1, 1999, and March 31, 2006; (3) license agreements responsive to requests 6 and 7 must be produced without regard to their dates; (4) with respect to other documents responsive to requests 6 and 7 related to patents essential to any WCDMA standard, the requests are limited to documents created between January 1, 1999, and March 31, 2006; and (5) agreements for the sale of chips responsive to requests 14 or 17 must be produced without regard to their dates.

**Ericsson's Specific Objections.** We understand from Ericsson's specific objections that it refuses to produce any documents responsive to Requests Nos. 1-2, 4-6, 16, 21-26, 28-29, and 31-34. As to the other requests (with the exception of Request No. 30, as to which Ericsson states that it does not have responsive documents), Ericsson states only that it will produce a small subset of responsive documents, limited to "the United States Market for WCDMA Technology for Universal Mobile Telephone System", if any such documents exist.

There is no basis for Ericsson's blanket refusal to produce responsive documents. The documents called for by QUALCOMM's requests are relevant to Broadcom's claims and/or QUALCOMM's defenses, and must be produced. If Ericsson has any genuine concerns about the language or scope of any of QUALCOMM's requests, we are happy to discuss them.

**Production Location and Schedule.** We have no objection to production at your offices. We will not agree, however, to Ericsson's withholding its production of documents until a decision on QUALCOMM's motion to dismiss -- particularly inasmuch as Ericsson has urged the Court to deny that motion. We believe that Ericsson should be able to collect and produce at least the following readily identifiable and unquestionably relevant documents within 30 days:

- License agreements to essential patents responsive to requests 6 and 7;

- Agreements for the sale of baseband modem chips responsive to requests 14 and 17;

- Communications and document productions to the United States Department of Justice in connection with the Department's investigation of QUALCOMM's acquisition of Flarion;

3

- Communications and document productions to the Directorate General – Competition of the European Commission in connection with Ericsson's complaint regarding QUALCOMM;

- Ericsson's high-level business plans regarding UMTS and CDMA baseband modem chips responsive to request 14; and

- The common interest or other agreements pursuant to which Ericsson will claim that responsive communications between it and Broadcom or others are privileged.

Please let us know if Ericsson agrees to produce these documents on this schedule.

\* \* \*

I propose that we meet and confer regarding these issues this as soon as possible. Please let me know when you are available to do so.

Very truly yours,

Fabian D. Gonell

William S. Feiler, Esq.
Morgan & Finnegan, L.L.P.
3 World Financial Center
New York, NY 10281

**BY FAX**

# EXHIBIT 15

# Morgan & Finnegan, L.L.P.

DAVID H. PFEFFER
HARRY C. MARCUS
EUGENE MOROZ
JOHN F. SWEENEY[†]
ARNOLD I. RADY[†]
CHRISTOPHER A. HUGHES
WILLIAM S. FEILER[†]
JANET DORE
JAMES W. GOULD[†]
RICHARD C. KOMSON
CHRISTOPHER K. HU
BARTHOLOMEW VERDIRAME
DICKERSON M. DOWNING
MARIA C. H. LIN
JOSEPH A. DeGIROLAMO
MICHAEL P. DOUGHERTY
SETH J. ATLAS
ANDREW M. RIDDLES[♦]
BRUCE D. DeRENZI
MARK J. ABATE

JOHN T. GALLAGHER[♦]
STEVEN F. MEYER[♦]
KENNETH H. SONNENFELD
DAVID H.T. KANE
SIEGRUN D. KANE
TONY V. PEZZANO
ANDREA L. WAYDA
MICHAEL S. MARCUS[†]
JOHN E. HOEL[*†]
JOHN W. OSBORNE
ROBERT K. GOETHALS
PETER N. FILL
RICHARD STRAUSSMAN[♦]
STEPHEN J. MANETTA
KATHLEEN E. McCARTHY
DOROTHY R. AUTH
MICHAEL O. CUMMINGS
GERARD A. HADDAD
KENT STEVENS[*†]
WILLIAM G. HU[†]

COUNSEL
JOHN C. VASSIL
J. ROBERT DAILEY
ROGER S. SMITH
JOSEPH C. REDMOND, JR.[†]
HERBERT BLECKER
GEORGE TACTICOS[††]

SENIOR COUNSEL
JEROME G. LEE
THOMAS P. DOWLING
JOHN A. DIAZ
ALFRED P. EWERT[†]
STEPHEN R. SMITH

A Registered Limited Liability Partnership
3 WORLD FINANCIAL CENTER
NEW YORK, NY 10281-2101
TEL: 212-415-8700
FAX: 212-415-8701
www.morganfinnegan.com

WRITER'S DIRECT DIAL NUMBER:

(212) 415-8551
wfeiler@morganfinnegan.com
April 24, 2006

SCOTT D. GREENBERG
JOHN T. MOEHRINGER
MATTHEW K. BLACKBURN[♦]
JAMES HWA[†]
TOD M. MELGAR
MAREN C. PERRY
DAVID M. LA BRUNO
KEITH J. McWHA[†]
COLIN FOLEY
ERIC G. WRIGHT[*†]
REGINA M. LUTZ
MARY ANN C. BALL
JONATHAN D. BALL
JANICE A. CHRISTENSEN
CHRISTOPHER E. COPELAND
PING GU
ERIC L. LANE
SANDRA S. SHIM
ALEXANDER RUDIS
JENNIFER BIANROSA
AARON P. BUMGARNER
FRANK SEDLARCIK
PAMELA A. KAYATTA
DANIELLE VINCENTI TULLY
JEANNA M. WACKER
KATHERINE S. BROWN
JOSHUA H. HARRIS
JESSICA L. RANDO
NATHANIEL T. BROWAND

TODD L. FETTIG
YELEE Y. KIM
BRAD M. SCHELLER
JULIA K. SMITH[♦]
KIMBERLY A. TUSA
SCOTT BITTMAN
QUINN E. CLANCY
PANKAJ SONI
TIMUR YURTSEVEN
MICHAEL SAUER
SETH SILVERMAN[♦]

SCIENTIFIC ADVISORS
SUNGHO HONG, PH.D.
EVELYN M. KWON, PH.D.
JOSEPH ENG, JR., PH.D
MICHAEL A. WILLIS, PH.D.
DEBORAH DRAZEN, PH.D.
ANGUS GILL
BRIAN W. BROWN
JOHN J. WAKELEY
ELLIOT L. FRANK

[†] ADMITTED IN CALIFORNIA
[♦] ADMITTED IN CONNECTICUT
[*] ADMITTED IN WASHINGTON, D.C.
[†] NOT ADMITTED IN NEW YORK

## By Facsimile – (212) 474-3700

Fabian D. Gonell, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, N.Y. 10019-7475

Re:    Broadcom Corporation v. QUALCOMM Incorporated

Dear Fabian:

Thank you for your letter of April 13, 2006 regarding the objections and responses of Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") to QUALCOMM's subpoenas. For convenience, I have used the same headings set forth in your letter in this response.

Ericsson's Objections to the Costs Related to the Subpoenas

As an initial matter, Ericsson objects to being characterized as anything other than a disinterested third party to the action. Your attempt to paint Ericsson as a virtual party to the action between Broadcom and QUALCOMM is misplaced. Despite your characterization of Ericsson as "acting in concert" with Broadcom, Ericsson is and remains a third party to the dispute between Broadcom and QUALCOMM. Moreover, the February 24, 2006 letter to the Court referenced in your letter does not serve to make Ericsson a party to this action. With this in mind, Ericsson is willing to discuss with QUALCOMM the costs of compliance with QUALCOMM's subpoenas to Ericsson at the appropriate time.

# Morgan & Finnegan, L.L.P.

Fabian D. Gonell, Esq.
April 24, 2006
Page 2

Documents Regarding Activities Outside the United States

      Your letter states that there is no basis for Ericsson to exclude from its production documents regarding activities taking place outside the United States. You are incorrect. The Complaint filed by Broadcom in this action alleges violations of United States and state antitrust laws. Therefore, any documents regarding activities taking place outside of the United States are irrelevant to the causes of action asserted in the instant action. Accordingly, Ericsson maintains its position and will provide relevant, responsive, non-privileged documents regarding activities taking place in the United States where such documents exist.

Time Scope Of The Production

      You write that there is no basis for the time constraints which Ericsson has placed on its production. Again, you are incorrect. The request for documents created before July 1, 2001 ignores the fact that any documents created before this date cannot be relevant because any cause of action under the federal antitrust laws or the New Jersey Antitrust Act to which such documents may be relevant would be time barred under the applicable four year statute of limitations. Therefore, such documents would not be relevant to the instant action, nor would they be reasonably calculated to lead to admissible evidence.

      Your proposal to place an upper limit of March 31, 2006 on the production of certain documents is rejected. The cut off for discovery in a civil action normally ends with the filing date of the complaint. There is no reason to change here.

      We note QUALCOMM's modified start date of January 1, 2003 to Requests Nos. 8, 11, 12, 15, 16, 18-26, 28-30, and 32-34. However, the previously noted objections still apply.

Ericsson's Specific Objections

      In your letter, you write that there is no basis for Ericsson's "blanket refusal to produce responsive documents." QUALCOMM has chosen to make objectionable demands and Ericsson is not required to acquiesce to them. Ericsson has agreed to produce relevant, responsive, non-privileged documents where those documents are sought in QUALCOMM's subpoenas.

Production Location and Schedule

      We acknowledge that you have agreed to the production of documents at our offices. However, we cannot agree to producing those documents enumerated in

987324 v1

**Morgan & Finnegan, L.L.P.**

Fabian D. Gonell, Esq.
April 24, 2006
Page 3

your letter within the proposed 30 day time frame.  Ericsson believes that it is unduly burdensome for a non-party to be forced to incur the expense of collecting, reviewing and producing documents where that production could be rendered totally irrelevant should the pending motion to dismiss be granted.

While I am willing to meet and confer on these issues, I don't see that such action is necessary or reasonable before the decision on the Motion to Dismiss is decided.

Very truly yours,

*Bill*

William S. Feiler

WSF/wp

987324 v1

# EXHIBIT 16

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

—————

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1956

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON

DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS

KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS

DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DeMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

—————

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

—————

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

May 5, 2006

Broadcom Corporation v. QUALCOMM Incorporated

Dear Bill:

Thank you for your letter of April 24.  I very much appreciate your candor.

We disagree regarding the relevance of documents regarding activities outside the United States.  Broadcom is not limiting its claims to events in the United States.  To the contrary, Broadcom alleges "worldwide" markets and makes numerous allegations regarding activities outside the United States, as I described in my letter of April 13.  Accordingly, QUALCOMM will, if necessary, move to compel production of relevant documents regarding activities outside the United States.

We ask you to reconsider Ericsson's broad objection to the production of documents regarding activities before July 1, 2001.  QUALCOMM has now limited its requests to call for documents created on or after January 1, 2003, with the few exceptions set forth in my April 13 letter.  Those exceptions relate directly to pre-2003 conduct that Broadcom alleges is the subject of this case.  Accordingly, QUALCOMM will, if necessary, move to compel production of relevant documents created prior to July 1, 2001, in response to this limited number of requests.

With respect to the "upper limit" of production, we assume that by "the date of the filing of the complaint", you mean the date that Broadcom amended its complaint to add new allegations and claims (i.e., September 19, 2005).  We cannot agree globally to limit Ericsson's production to documents created before that date.  Broadcom recently repudiate an agreement with QUALCOMM to limit the parties' respective first sets of document requests to documents created before October 1, 2005, and is apparently going to take the position that current documents should be produced.  We think it impractical and inappropriate to set the cut-off date for discovery of Ericsson to a date before that which is in force for discovery in the case generally.  We are willing,

however, to discuss a cut-off date on a request-by-request basis and to limit the production of documents created after October 1, 2005, to those responsive to requests for which current documents are important.

Although we understand Ericsson's desire to wait for a decision of QUALCOMM's motion to dismiss before producing documents or further discussing QUALCOMM's requests, we cannot agree to such a delay. Fact discovery in this case is scheduled to close at the end of the year, a deadline that Magistrate Judge Hughes described during a recent teleconference as "set in stone". Argument on QUALCOMM's motion is set for June 8, and we simply have no way of knowing how long the Court will take to decide the motion. Accordingly, QUALCOMM will, if necessary, move to compel the production of documents before the motion to dismiss is decided.

Before we move to compel, we would prefer to discuss the scope of QUALCOMM's requests on a request-by-request basis to see if the parties can reach any agreement as to the scope of the requests in the event that the Court agrees with QUALCOMM's positions on the issues discussed above. We would, of course, agree that any such discussions would be subject to the Ericsson objections discussed above and would not constitute any concession on Ericsson's part as to those objections.

QUALCOMM's deadline to file a motion returnable in advance of the June 8 conference is Friday, May 12. Accordingly, we respectfully request that you let us know whether Ericsson is willing to engage in further discussions by Tuesday, May 9. I am available to meet at your offices Tuesday, Wednesday or Thursday afternoon next week.

Thank you once again for your courtesy.

Very truly yours,

Fabian D. Gonell

William S. Feiler, Esq.
    Morgan & Finnegan, L.L.P.
        3 World Financial Center
            New York, NY 10281

BY FAX AND U.S. MAIL

# EXHIBIT 17

# Morgan & Finnegan, L.L.P.

DAVID H. PFEFFER
HARRY C. MARCUS
EUGENE MOROZ
JOHN F. SWEENEY[†]
ARNOLD L. RADY[†]
CHRISTOPHER A. HUGHES
WILLIAM S. FEILER[‡]
JANET DORE
JAMES W. GOULD[†]
RICHARD C. KOMSON
CHRISTOPHER K. HU
BARTHOLOMEW VERDIRAME
DICKERSON M. DOWNING
MARIA C. H. LIN
JOSEPH A. DeGIROLAMO
MICHAEL P. DOUGHERTY
SETH J. ATLAS
ANDREW M. RIDDLES[†]
BRUCE D. DeRENZI
MARK J. ABATE

JOHN T. GALLAGHER[†]
STEVEN F. MEYER[†]
KENNETH H. SONNENFELD
DAVID H.T. KANE
SIEGRUN D. KANE
TONY V. PEZZANO
ANDREA L. WAYDA
MICHAEL S. MARCUS[‡]
JOHN E. HOEL[*‡]
JOHN W. OSBORNE
ROBERT K. GOETHALS
PETER N. FILL
RICHARD STRAUSSMAN[†]
STEPHEN J. MANETTA
KATHLEEN E. McCARTHY
DOROTHY R. AUTH
MICHAEL D. CUMMINGS
GERARD A. HADDAD
KENT STEVENS[*†]
WILLIAM G. HU[†]

COUNSEL
JOHN C. VASSIL
J. ROBERT DAILEY
ROGER S. SMITH
JOSEPH C. REDMOND, JR.[†]
HERBERT BLECKER
GEORGE TACTICOS[††]
LEON J. BECHET

SENIOR COUNSEL
JEROME G. LEE
THOMAS P. DOWLING
JOHN A. DIAZ
ALFRED P. EWERT[†]
STEPHEN R. SMITH

SCOTT D. GREENBERG
JOHN T. MOEHRINGER
MATTHEW K. BLACKBURN[*]
JAMES HWU
TOD M. MELGAR
MAREN C. PERRY
DAVID M. LA BRUNO
KEITH J. McWHA[†]
COLIN FOLEY
ERIC G. WRIGHT[*†]
REGINA M. LUTZ
MARY ANN E. BALL
JONATHAN D. BALL
JANICE A. CHRISTENSEN
CHRISTOPHER E. COPELAND
PING GU
ERIC L. LANE
SANDRA G. SHIM
ALEXANDER RUDIS
JENNIFER BIANROSA
AARON P. BUMGARNER
FRANK SEDLARCIK
PAMELA A. KAYATTA
DANIELLE VINCENTI TULLY
JEANNA M. WACKER
KATHERINE S. BROWN
JOSHUA H. HARRIS
JESSICA L. RANDO
NATHANIEL T. BROWAND

TODD L. FETTIG
BRAD M. SCHELLER
JULIA K. SMITH[†]
KIMBERLY A. TUSA
SCOTT BITTMAN
QUINN E. CLANCY
PANKAJ SONI
TIMUR YURTSEVEN
MICHAEL SAUER
SETH SILVERMAN[†]

SCIENTIFIC ADVISORS
SUNGHO HONG, PH.D.
EVELYN M. KWON, PH.D.
JOSEPH ENG, JR., PH.D
MICHAEL A. WILLIS, PH.D.
DEBORAH DRAZEN, PH.D.
ANGUS GILL
BRIAN W. BROWN
JOHN J. WAKELEY
ELLIOT L. FRANK

[††] ADMITTED IN CALIFORNIA
[*] ADMITTED IN CONNECTICUT
[‡] ADMITTED IN WASHINGTON, D.C.
[†] NOT ADMITTED IN NEW YORK

A Registered Limited Liability Partnership

3 WORLD FINANCIAL CENTER
NEW YORK, NY 10281-2101
TEL: 212-415-8700
FAX: 212-415-8701
www.morganfinnegan.com

WRITER'S DIRECT DIAL NUMBER:

(212) 415-8551
wfeiler@morganfinnegan.com
May 9, 2006

## By Facsimile – (212) 474-3700

Fabian D. Gonell, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, N.Y. 10019-7475

Re:    Broadcom Corporation v. QUALCOMM Incorporated

Dear Fabian:

Thank you for your follow up letter of May 5, 2006 regarding the objections and responses of Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") to QUALCOMM's subpoenas.

Your letter states that Broadcom is not limiting its claims to events in the United States, and, instead, is alleging "worldwide" markets and making allegation regarding activities outside the United States. As we stated in our April 24 letter, your position is incorrect. The Complaint filed by Broadcom in this action alleges violations of United States and state antitrust laws. Documents regarding activities taking place outside of the United States are simply irrelevant to the causes of action asserted in the instant action. Accordingly, Ericsson maintains its position and will provide relevant, responsive, non-privileged documents regarding activities taking place in the United States where such documents exist.

Ericsson considers the cut off date of July 1, 2001 to be entirely appropriate. Any document dated before July 1, 2001 cannot be relevant because any cause of action under the federal antitrust laws or the New Jersey Antitrust Act to which such documents may be relevant would be time barred under the applicable four year statute of limitations. We note QUALCOMM's modified start date of January 1, 2003

CALIFORNIA: 44 MONTGOMERY STREET, SUITE 2550, SAN FRANCISCO, CA 94104-4712   TEL: 415-318-8800   FAX: 415-676-5816
CONNECTICUT: 100 FIRST STAMFORD PLACE, STAMFORD, CT 06902   TEL: 203-391-2100   FAX: 203-391-2101
WASHINGTON, D.C.: 1775 EYE STREET, NW, SUITE 400, WASHINGTON, DC 20006-2401   TEL: 202-857-7887   FAX: 202-857-7929
SHANGHAI: AETNA TOWERS, 107 ZUNYI ROAD, SUITE 408, GUBEI, SHANGHAI 200051   TEL: 86-21-6237-5322   FAX: 86-21-6237-5323

991812 v1

## Morgan & Finnegan, L.L.P.

Fabian D. Gonell, Esq.
May 9, 2006
Page 2

with respect to certain requests set forth in your April 13 letter. However, Ericsson maintains its position and will not produce any document dated before July 1, 2001.

QUALCOMM's assumption that by "the date of the filing of the complaint", we mean the date that Broadcom amended its complaint (i.e., September 19, 2005) is obviously incorrect. Paragraph 24 of Ericsson's General Objections explicitly refers the filing of the complaint in this action on July 1, 2005 as the cut off date. An amended complaint does not change the date of the filing of the complaint. If activities occurring after the filing are to be raised, a party must file a supplemental complaint. (See Fed. Civ. P 15 (a) and (d)). Accordingly, Ericsson maintains its position and will produce responsive, non-privileged documents dated prior to July 1, 2005.

QUALCOMM's contention that Broadcom is "going to take the position that current documents should be produced" is irrelevant to Ericsson. As stated in my April 24 letter, Ericsson is and remains a third party to the dispute between Broadcom and QUALCOMM. Agreements or disagreements over the production of documents between the parties to this case does not change the fact that the cut off for discovery in a civil action normally ends with the filing date of the complaint. It is unreasonable and unduly burdensome to expect third-party Ericsson to do more.

QUALCOMM's concern that it has no way of knowing how long the Court will take to decide it's Motion to Dismiss does not change the situation. More importantly QUALCOMM's concern does not outweigh the cost and burden of a potentially unnecessary production to Ericsson. Ericsson maintains its position that it is unduly burdensome for a non-party to be forced to incur the expense of collecting, reviewing and producing documents where that production could be rendered totally unnecessary should the pending Motion to Dismiss be granted.

While I remain willing to meet and confer on issues relating to the subpoenas, I maintain the position that such action is unnecessary and unreasonable before the decision on the Motion to Dismiss is decided.

Very truly yours,

William S. Feiler

WSF/wp

991812 v1

# EXHIBIT 18

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1956

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON

DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS

KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS

DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

———

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

———

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

May 15, 2006

Broadcom Corporation v. QUALCOMM Incorporated

Dear Bill:

Thank you for your letter of May 9. It appears that QUALCOMM and Ericsson are at an impasse, and we will therefore prepare a motion to compel addressing the issues of the time scope of the production, whether documents regarding activities outside the United States must be produced, and whether Ericsson must produce documents before the motion to dismiss is decided. For your information, Broadcom has sought to postpone the argument on QUALCOMM's motion to dismiss from June 8 to, at the earliest, June 26.

We remain willing to discuss any other issues Ericsson may have with the scope of QUALCOMM's requests, but understand that Ericsson's position is that such additional discussions are "unnecessary and unreasonable" at this time. We, of course, cannot insist that Ericsson engage in further discussions before QUALCOMM moves to compel. However, absent such discussions we will consider further objections to QUALCOMM's requests waived.

Very truly yours,

Fabian D. Gonell

William S. Feiler, Esq.
    Morgan & Finnegan, L.L.P.
        3 World Financial Center
            New York, NY 10281

BY FAX AND U.S. MAIL

William J. O'Shaughnessy (WJO 5256)
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Evan R. Chesler
Richard J. Stark
David R. Marriott
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Richard S. Taffet
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED,<br><br>Defendant. | Civil Action No. 05-3350 (MLC) |

[PROPOSED] ORDER COMPELLING THE PRODUCTION OF DOCUMENTS

Having received, read and considered Defendant QUALCOMM Incorporated's

Motion to Compel the Production of Documents by Telefonaktiebolaget LM Ericsson and

Ericsson, Inc., dated May 26, 2006, and the memoranda and other materials filed in support of

and in opposition to the motion;

IT IS HEREBY ORDERED THAT Defendant QUALCOMM Incorporated's

Motion to Compel the Production of Documents by Telefonaktiebolaget LM Ericsson and

Ericsson, Inc. is granted.

Dated:  June ___, 2006


_____
Honorable John J. Hughes
United States Magistrate Judge

MEI\5671117.1

William J. O'Shaughnessy (WJO 5256)
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056
973-622-4444

Evan R. Chesler
Richard J. Stark
David R. Marriott
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000

Richard S. Taffet
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

Attorneys for Defendant

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

</div>

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>    Plaintiff,<br><br>        v.<br><br>QUALCOMM INCORPORATED,<br><br>    Defendant. | Civil Action No. 05-3350 (MLC)<br><br>CERTIFICATION OF SERVICE |

Richard Hernandez, of full age, certifies as follows:

1.    I am an attorney at law of the State of New Jersey and am associated with the firm of McCarter & English, LLP, attorneys for defendant Qualcomm Incorporated.

2.    On May 26, 2006, I caused the original of the following to be electronically filed with the United States District Court of New Jersey Clerk's Office:

(a)    Notice of Motion;

(b)    Memorandum in Support of Motion to Compel the Production of

Documents by Telefonaktiebolaget LM Ericsson and Ericsson, Inc.;

(c)    Declaration of Fabian D. Gonnell; and

(d)    Proposed form of Order;

(e)    Notice of Motion to Seal Materials Pursuant to Local Rule 5.3;

(f)    Brief in support of Motion to Seal Materials Pursuant to Local Rule 5.3;

and

(g)    Proposed form of Order.

3.    I further certify that, on this day, I caused copies of the foregoing documents to be

served upon counsel of record, as follows:

**_VIA_ FAX AND FIRST CLASS MAIL:**

David S. Stone, Esq.
Boies, Schiller & Flexner LLP
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
Attorneys for Plaintiff

William S. Feiler, Esq.
Morgan & Finnegan, LLP
3 World Financial Center
New York, New York 10281-2101
Attorneys for Telefonaktiebolaget LM Ericsson and
Ericsson, Inc.

**_VIA_ FIRST CLASS MAIL:**

Mark W. Nelson, Esq.
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Attorneys for Plaintiff

David Boies, Esq.
David A. Barrett, Esq.
Stephen R. Neuwirth, Esq.
Boies, Schiller & Flexner LLP
570 Lexington Avenue
New York, New York 10022
Attorneys for Plaintiff

Anne Patterson, Esq.
Riker Danzig Scherer Hyland & Perretti LLP
Headquarters Plaza 1 Speedwell Avenue
Morristown, New Jersey 07962
Attorneys for Plaintiff

I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

s/ Richard Hernandez

DATED: May 26, 2006