UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BROADCOM CORPORATION,

                                 Plaintiff,

      v.

QUALCOMM INCORPORATED,

                               Defendant.

Civil Action No. 05-3350 (MLC)

RETURN DATE: JUNE 19, 2006

---

**REPLY MEMORANDUM IN SUPPORT OF QUALCOMM INCORPORATED'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY TELEFONAKTIEBOLAGET LM ERICSSON AND ERICSSON, INC.**

---

William J. O'Shaughnessy  (WJO-5256)
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-0652

Evan R. Chesler
Richard J. Stark
David R. Marriott
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Richard S. Taffet
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, New York 10022
(212) 705-7000

Attorneys for Defendant

**Table of Contents**

Page

Argument ........................................................................................................................ 3
I.    QUALCOMM's Subpoena Does Not Impose an Undue Burden on Ericsson. ...... 3
        A.    The Documents Sought by QUALCOMM Are Relevant. ......................... 3
        B.    Ericsson Has No Legitimate Complaint of Undue Burden. ...................... 5
II.    Ericsson's Objections to Production Are Meritless. ............................................. 8
        A.    Ericsson Cannot Delay Discovery Pending the Court's Decision on QUALCOMM's Motion to Dismiss. .......................................................... 8
        B.    Documents Concerning Activities Outside the United States are Undeniably Relevant and Necessary to this Litigation. ............................. 8
        C.    There is no basis for Ericsson's Arbitrary Time Limits. ............................ 8
Conclusion  …………………………………………………………………………. 11

**Table of Authorities**

<u>Page</u>

**Cases**

Barbine v. Keystone Quality Transp., No. Civ.A.03-3426, 2004 WL
   1119933 (E.D. Pa. May 17, 2004) ................................................................. 6

Cash Today of Texas, Inc. v. Greenberg, No. Civ.A.02-MC-77-GMS,
   2002 WL 31414138 (D. Del. Oct. 23, 2002) ............................................. 6, 9

DIRECTV, Inc. v. Richards, No. Civ. 03-5606 (GEB), 2005 WL 1514187
   (D.N.J. June 27, 2005) ................................................................................. 9

*Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001) ...................................... 8

In re Automotive Refinishing Paint Antitrust Litig., 229 F.R.D. 482 (E.D.
   Pa. 2005) ....................................................................................................... 8

Kellam Energy, Inc. v. Duncan, 616 F. Supp. 215 (D. Del. 1985) .................... 9

*Levine v. McCabe*, 357 F. Supp. 2d 608 (E.D.N.Y. 2005) ................................ 9

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525
   (D.Del. 2002) ................................................................................................ 9

Needles v. F.W. Woolworth Co., 13 F.R.D. 460 (E.D. Pa. 1952) ................... 10

Singer Mfg. Co. v. Brother Int'l Corp., 191 F. Supp. 322 (S.D.N.Y. 1960) ..... 9

Sir Speedy, Inc. v. L&P Graphics, Inc., 957 F.2d 1033 (2d Cir. 1992) ............ 9

Societe Nationale Industrielle Aeropastiale v. United States District Court
   for the Southern District of Iowa, 482 U.S. 522 (1987) .............................. 7

*United States v. Ashdown*, 509 F.2d 793 (5th Cir. 1975) ................................ 9

**Other Authorities**

51 Am. Jur. 2d Limitation of Actions § 24 (2005) ............................................ 9

In its Opposition, Telefonaktiebolaget LM Ericsson ("LM Ericsson") and its wholly owned subsidiary, Ericsson, Inc. ("Ericsson U.S.") (collectively "Ericsson") have failed to put forth any coherent argument against production.[1]  As noted in QUALCOMM Incorporated's ("QUALCOMM") opening brief, Ericsson is a major competitive force in all aspects of the mobile telecommunications industry and, by virtue of its position in the industry, is exclusively able to provide the parties with necessary and vital information directly relevant to issues central to this litigation as plead by Broadcom Corp. ("Broadcom"), including the relevant market structure and practices, and the nature of conduct and competition among various industry players.  (Mem. at 5-8.)  Ericsson's insistence on delaying discovery pending the Court's decision on QUALCOMM's motion to dismiss and refusing to produce necessary documents regarding relevant activities occurring outside the United States and outside the arbitrary time period of July 1, 2001, through July 1, 2005, is without support in reason or law.  The Court should order Ericsson to comply with QUALCOMM's subpoenas.[2]

**Argument**

I.     QUALCOMM'S SUBPOENA DOES NOT IMPOSE AN UNDUE BURDEN ON ERICSSON.

   A.     <u>The Documents Sought by QUALCOMM Are Relevant.</u>

Ericsson's contention that QUALCOMM seeks the production of irrelevant documents is meritless.  To the contrary, each of the "six categories of

---

[1] Citations in the form "Gonell Ex. __." are to exhibits to the Declaration of Fabian D. Gonell, dated May 26, 2006, submitted with the Memorandum in Support of QUALCOMM Incorporated's Motion to Compel the Production of Documents by Telefonaktiebolaget LM Ericsson and Ericsson, Inc. (hereinafter "Memorandum", "Mem.").

[2] For a summary of the pertinent factual and procedural background, QUALCOMM refers the Court to its Memorandum at 4-13.

documents" addressed in Ericsson's brief, (Opp'n at 7-8)[3], is particularly relevant to QUALCOMM's defense:

- <u>License agreements to essential patents</u> are relevant, at least, to the issue of the meaning of FRAND commitments. According to the Complaint, such licenses must be granted on FRAND terms. (<u>See, e.g.</u>, Compl. ¶ 3, 42.)[4] The terms of Ericsson's licenses will shed considerable light on the understanding of FRAND terms in the industry. That is particularly so in view of the fact that (1) Ericsson is one of the largest patent holders in the industry; (2) Ericsson is one of the largest manufacturers of mobile wireless communications equipment; and (3) Ericsson has been a key participant in relevant standards-setting activities.

- <u>Agreements for the sale of baseband modem chips</u> are highly relevant to, at a minimum, Broadcom's claim for attempted monopolization of alleged relevant chipset markets. Specifically, QUALCOMM seeks the production of these documents to analyze (1) the quantity of chipsets sold by Ericsson; (2) the terms on which Ericsson sells its chipsets; and (3) the frequency with which Ericsson enters into such contracts for sale. An analysis of Ericsson's agreements will reveal its strength in a competitive market and thus shed light on Broadcom's allegations of attempted monopolization.

- <u>Communications and document productions to the DOJ regarding QUALCOMM's Acquisition of Flarion</u> are relevant to Broadcom's claim related to that transaction. Because Ericsson has already collected and produced such relevant documents, their production to QUALCOMM herein entails minimal burden.

- <u>Communications and document productions to the Directorate General -- Competition of the European Commission in connection with Ericsson's complaint regarding QUALCOMM</u> are relevant because that complaint is based on many of the same allegations as the complaint in this action. Indeed, we believe that the European Commission has asked for the production of documents relevant to both the ongoing action before the European Commission and to this action herein, and that Ericsson has produced such documents.

---

[3] Citations in the form "Opp'n at __" refer to Third Parties Telefonaktiebolaget LM Ericsson's and Ericsson, Inc.'s Memorandum in Opposition to QUALCOMM Incorporated's Motion to Compel the Production of Documents

[4] Citations in the form "Compl. ¶ __" refer to Broadcom's First Amended Complaint, filed on September 19, 2005.

> Because Ericsson has already collected and produced these documents, reproduction to QUALCOMM would involve little, if any, burden.

- <u>Ericsson's high-level business plans regarding UMTS and CDMA baseband modem chips</u> are relevant to Broadcom's claims that relate to alleged relevant markets in such chips. Ericsson is a leader in the mobile wireless communications industry, whose high-level business plans will reveal, among other things, (1) an understanding of the nature of competition between and among UMTS, CDMA and related technologies; (2) an assessment of the competition arising within the industry between and among Ericsson and other chipset manufacturers; and (3) industry trends and forecasts for the future of the market.

- <u>Common interest or other agreements pursuant to which Ericsson will claim that communications between itself and others are privileged</u> are necessary for QUALCOMM to evaluate Ericsson's privilege claims.

As described in QUALCOMM's opening brief, QUALCOMM's other requests are similarly directed toward topics relevant to the allegations of the complaint. (<u>See</u> Mem. at 9-10.)

  B. <u>Ericsson Has No Legitimate Complaint of Undue Burden.</u>

Ericsson makes no attempt to substantiate its claims of "undue burden", either quantitatively or qualitatively. Ericsson provides no estimate regarding the quantity of responsive documents, the number of custodians Ericsson believes it is necessary to search, or the financial costs associated with production. QUALCOMM has made targeted requests for easily identifiable documents. Ericsson has made no attempt to show that the burden of production would be particularly heavy or in any way unusual for a major antitrust action. Moreover, QUALCOMM has repeatedly offered to discuss ways to minimize any additional burden, only to be rebuffed by Ericsson. (<u>See</u> Mem. at 9-13.)

5

The very case relied upon by Ericsson, Cash Today of Texas, Inc. v. Greenberg, No. Civ.A.02-MC-77-GMS, 2002 WL 31414138 (D. Del. Oct. 23, 2002), demonstrates that Ericsson has no legitimate claim of "undue burden" here. In Cash Today, the Court denied a motion to quash a subpoena seeking the production of relevant documents from a third party over the third party's objections based, in part, on "undue burden". The court found that the requested documents were relevant and necessary to the claims and defenses in the litigation, unavailable from any other sources and any burden encountered by the third party was "substantially reduced" by the issuing party's proposal of conditions to ease in production. Id. at *4; see also Barbine v. Keystone Quality Transp., No. Civ.A.03-3426, 2004 WL 1119933 at *2 (E.D. Pa. May 17, 2004) (considering "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden is imposed" in evaluating complaint of "undue burden").

Like the defendant in Cash Today, QUALCOMM has taken "reasonable steps to avoid imposing an undue burden or expense" on Ericsson by "propos[ing] conditions that would dramatically lessen the burden". Cash Today of Texas, 2002 WL 31414138 at *4. As detailed in QUALCOMM's opening brief, (Mem. at 11-13), QUALCOMM has repeatedly attempted to address any legitimate "burden" concerns Ericsson may have. For example, QUALCOMM narrowed the applicable time period for the majority of its requests to documents created between January 1, 2003, and March 31, 2006. (Mem. at 11.) Moreover, QUALCOMM offered to accept an initial production, the limited set of particularly relevant, easily identifiable and easily collected documents

discussed in Part I.A.  (See also Mem. at 12.)  In its initial letter and the letters following on May 5, 2006, and May 15, 2006, QUALCOMM repeatedly offered to meet with Ericsson in an attempt to secure its cooperation.  (Mem. at 12-13.)  Ericsson has ignored QUALCOMM's efforts.

Having rebuffed QUALCOMM's attempts to discuss any legitimate concerns Ericsson might have about any specific request, Ericsson should not now be heard to complain of "undue burden".[5]  And in particular, Ericsson has no basis to complain of "undue burden" with respect to the specifically identified documents discussed in Part I.A.

---

[5] LM Ericsson is not subject to different discovery rules merely because it is a third party.  In Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522 (1987), relied upon by Ericsson, the Supreme Court held that the Hague Convention did not provide exclusive means for obtaining discovery from foreign entities.  Rather, a case-by-case analysis of reasonableness when evaluating discovery issues concerning foreign entities is necessary.  Id. at 545.

Ericsson quotes Societe Nationale Industrielle Aerospatiale for the generalized proposition that heightened scrutiny is necessary to protect foreign entities in American discovery processes.  However, Ericsson fails to fully appreciate the context in which this point is made -- to "prevent improper uses of discovery requests".  Id. at 546.  The Supreme Court recognized that, given to the "additional cost[s]" involved in foreign discovery, courts must "supervise pretrial proceedings particularly closely to prevent discovery abuses", including, by example, "the improper purpose of motivating settlement".  Id.  In our case, LM Ericsson is a third party asked to produce a targeted set of easily identifiable, easily produced, highly relevant documents. Ericsson has made no showing that it will be subjected to any appreciable special costs as a "foreign" nonparty. Indeed, it has not shown that its burden will be any different that from any U.S. company required to respond to a subpoena.

Ericsson fails to acknowledge that the Societe Nationale Industrielle Aerospatiale Court noted in its decision the self-evident proposition that foreign entities availing themselves of business opportunities in the United States, including LM Ericsson, are "subject to the same legal constraints, including the burdens associated with American judicial procedures, as their American competitors." Id. at 540 n.25.  Like any other business subpoenaed in an American court, LM Ericsson is under an obligation to perform a search of reasonable scope to identify and produce responsive materials in a timely manner.  LM Ericsson has failed to do so.

7

II.   ERICSSON'S OBJECTIONS TO PRODUCTION ARE MERITLESS.

    A.   Ericsson Cannot Delay Discovery Pending the Court's Decision on QUALCOMM's Motion to Dismiss.

During the June 8, 2006 conference, the Court reiterated its firm intention that fact discovery in this case be completed by December 31, 2006. The Court also directed the parties to discuss and plan for depositions. If the Court's deadline is to be met, QUALCOMM simply cannot wait for Ericsson's production of documents until Judge Cooper's decision on QUALCOMM's motion to dismiss.

    B.   Documents Concerning Activities Outside the United States are Undeniably Relevant and Necessary to this Litigation.

Ericsson does not dispute that Broadcom's allegations implicate activities outside the United States. Nevertheless, Ericsson claims that because Broadcom is invoking "United States and state antitrust" law, "the relevant arena is the United States and documents regarding activities taking place outside of the United States are simply irrelevant". (Opp'n at 10-11.) Ericsson cites no authority for such a proposition. To the contrary, in In re Automotive Refinishing Paint Antitrust Litig., 229 F.R.D. 482 (E.D. Pa. 2005), cited by Ericsson throughout its brief, the court ordered the production of documents located in Belgium from an international non-profit trade association in a case involving claims under the United States antitrust laws. Id. at 496-97.[6]

    C.   There is no basis for Ericsson's Arbitrary Time Limits.

Ericsson's contention that documents created before July 1, 2001, are irrelevant because of the statute of limitations is meritless.[7] Courts have "establish[ed]

---

[6] Moreover, the court ordered production of documents created over a nine-year time period. See id.

[7] Ericsson's attempt to distinguish Fitzgerald v. Henderson, 251 F.3d 345 (2d Cir. 2001), is entirely off-base. Fitzgerald has been cited as recently as 2005 for the general

8

that the temporal scope of discovery in antitrust suits should not be confined to the limitations period of antitrust statutes". Kellam Energy, Inc. v. Duncan, 616 F. Supp. 215, 218 (D. Del. 1985); see also Sir Speedy, Inc. v. L&P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir. 1992) ("The statute of limitations is . . . not a rule of evidence. . . . [It] has no bearing on the admissibility of evidence.") (quoting United States v. Ashdown, 509 F.2d 793, 798 (5th Cir. 1975), cert. denied, 423 U.S. 829 (1975)). "A statute of limitations may not operate to bar, as to a timely claim, the use of a document that predates the commencement of the limitations period but is relevant to events during the period." 51 Am. Jur. 2d Limitation of Actions § 24 (2005).[8] Moreover, as explained in QUALCOMM's opening brief, (Mem. at 18-19), QUALCOMM's requests call for documents pre-dating 2001 only when such documents are particularly relevant.

Ericsson's attempt to limit its production to documents created up until only July 1, 2005, is meritless.[9] Broadcom does not appear to be limiting its claims to

---

proposition that "[a] statute of limitations does not generally bar the introduction of evidence that predates the commencement of the limitations period but is relevant to events during that period". Levine v. McCabe, 357 F. Supp. 2d 608, 616 (E.D.N.Y. 2005).

[8] Notwithstanding Ericsson's arguments, there are not separate rules of relevance for parties and non-parties. See, e.g., DIRECTV, Inc. v. Richards, No. Civ. 03-5606 (GEB), 2005 WL 1514187, at *3 (D.N.J. June 27, 2005) (considering a Rule 45 third party subpoena for the production of documents and applying Rule 26 definition of relevance); Cash Today of Texas, 2002 WL 31414138 at *1-2 (same); see also Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002) (cited by Ericsson; Opp'n at 5, 11) ("a nonparty may seek from the court protection from discovery via the overlapping and interrelated provision of both Rules 26 and 45").

[9] The cases cited by Ericsson in support of their arbitrary refusal to produce documents after July 1, 2005 are nearly fifty years old and not instructive. The Court in Singer Mfg. Co. v. Brother Int'l Corp., 191 F. Supp. 322 (S.D.N.Y. 1960), considered defendant's objections to interrogatories requesting information related to matters post-dating the filing of defendant's counterclaim for equitable relief in conjunction with antitrust allegations. The Singer court stated that it would compel the production of requested information from a later time period "if the counterclaim is hereafter amended to include a period subsequent to the date of filing of the present counterclaim". Id. at

conduct that occurred prior to July 1, 2005.[10]  Rather, its Complaint purports to address ongoing business practices.  Broadcom is seeking discovery beyond July 2005, as well as prospective, injunctive relief.  If QUALCOMM is to defend itself effectively in this case, it will require discovery that covers the entire time period that Broadcom is bringing into the case.  The mere fact that Ericsson is a nonparty does not excuse it from providing discovery throughout the full extent of the relevant time period.  The discovery QUALCOMM seeks of Ericsson is not limited to a few acts that occurred before July 2005, but rather goes to multiple facets of competition in the industry, and the relevant time period for such discovery is coextensive with the relevant time period for Broadcom's claims.

---

323.  Moreover, the Singer court also found the production of data concerning machines sold in foreign countries and the United States "clearly relevant and material" to charges of attempted monopolization under antitrust law.  Id.  In Needles v. F.W. Woolworth Co., 13 F.R.D. 460 (E.D. Pa. 1952), the court did not consider post-complaint discovery, but rather, examined a defendant's objection to plaintiff's interrogatory in a negligence action which requested the defendant reveal remedial measures taken after an alleged injury occurred.

[10] Even if a discovery cut-off related to the date of the filing of the complaint were appropriate -- which it is not -- a July 1, 2005, end to discovery would nonetheless be too early.  Broadcom's amended complaint, filed on September 19, 2006, includes allegations relating to time periods through the fall of 2005, including: (1) QUALCOMM's public estimates regarding the number of QUALCOMM CDMA chipsets sold world-wide through the end of fiscal year 2005 (Compl. ¶ 63); (2) QUALCOMM's estimates of increased sales of UMTS handsets by the end of 2005 (Compl. ¶ 112); and (3) Claims relating to QUALCOMM's acquisition of Flarion in August 2005.  (Compl. ¶ 117, 129.)

**Conclusion**

For the foregoing reasons, QUALCOMM's motion to compel the production of documents by Ericsson should be granted.

Respectfully submitted,

June 12, 2006

                    McCARTER & ENGLISH LLP

By
   s/ William J. O'Shaughnessy
   William J. O'Shaughnessy

*Attorneys for Defendant*
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Evan R. Chesler
Richard J. Stark
David R. Marriott
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Richard S. Taffet
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

*Attorneys for Defendant*
*QUALCOMM Incorporated*

11