Liza M. Walsh
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
335 Madison Avenue
New York, NY 10017
(212) 702-8100

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>              Plaintiff,<br><br>     v.<br><br>QUALCOMM INCORPORATED.,<br><br>              Defendant. | Civil Action No. 05-03350 (MLC)<br><br>**NOTICE OF MOTION** |

TO:    David S. Stone, Esq.
        Boies, Schiller & Flexner, LLP
        150 John F. Kennedy Parkway
        4th Floor
        Short Hills, NJ 07078

        William J. O'Shaughnessy, Esq.
        McCarter & English LLP
        4 Gateway Center
        100 Mulberry Street
        Newark, NJ 07101

**PLEASE TAKE NOTICE** that, August 21, 2006 at 9:00 a.m. or as soon as the

Court deems appropriate, Non-Party Texas Instruments Incorporated, ("TI") shall move

before Honorable John J. Hughes, U.S.M.J., at the United States District Court for the

District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East States Street, Trenton, New Jersey, for the entry of an Order pursuant to Fed.R.Civ.P. 45(c)(3)(A) to quash the subpoena issued by defendant Qualcomm Incorporated.("Qualcomm") on TI as to Qualcomm's request that TI comply with document request number 6.

**PLEASE TAKE FURTHER NOTICE** that TI will rely upon the submitted Memorandum of Law, Declaration of Stephen R. Neuwirth, Esq., the Declaration of Richard Andrews, and any additional submissions made hereafter. A proposed Order is also submitted.

**PLEASE TAKE FURTHER NOTICE** that TI requests oral argument.

CONNELL FOLEY LLP

DATED: July 20, 2006                *s/Liza M. Walsh*
                                    Liza M. Walsh

                                    85 Livingston Avenue
                                    Roseland, New Jersey 07068
                                    (973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
335 Madison Avenue
New York, NY 10017
(212) 702-8100

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BROADCOM CORPORATION,

        Plaintiff,

    v.

QUALCOMM INCORPORATED.,

        Defendant.

*FILED ELECTRONICALLY*

Civil Action No. 05-03350 (MLC)

---

## DEFENDANT TEXAS INSTRUMENTS INCORPRATED'S MOTION TO QUASH

---

Liza M. Walsh
Jennifer C. Critchley
Christine I. Gannon
Connell Foley LLP
Attorneys for Non-Party
Texas Instruments Incorporated
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Of Counsel:
Stephen R. Neuwirth
David Elsberg
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue
New York, New York  10010
(212) 849-7000

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 2

I.  BACKGROUND ON THE PARTIES AND UNDERLYING CASE ............................... 2

II.  QUALCOMM'S SUBPOENA SERVED ON NON-PARTY TI AND TI'S
     REASONABLE RESPONSE ............................................................................... 2

III.  TI'S OBJECTION TO QUALCOMM'S DOCUMENT REQUEST NUMBER
      SIX ............................................................................................................... 3

IV.  TI'S FAIR AND REASONABLE OFFERS OF COMPROMISE TO
     QUALCOMM DOCUMENT REQUEST NUMBER SIX .................................... 5

LEGAL ARGUMENT ............................................................................................. 6

     QUALCOMM IS NOT ENTITLED TO TI'S TRADE SECRET LICENSE
     INFORMATION ............................................................................................. 6

     A.  Qualcomm Has Failed to Establish Substantial Need For TI's Licensing
         Information ............................................................................................. 7

     B.  The Highly Sensitive Information Qualcomm Seeks From TI Cannot Be
         Produced Without Causing TI Undue Hardship ..................................... 8

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## Cases

*Act, Inc. v. Sylvan Learning Sys., Inc.,*
 1999 WL. 305300 (E.D. Pa. May 14, 1999)..................................................................7

*Am. Stnd. Inc. v. Pfizer Inc.,*
 828 F.2d 734 (Fed. Cir. 1987) ...................................................................................9

*Coca Cola Bottling Co. of Shreveport, Inc. v. Coca Cola Co.,*
 107 F.R.D. 288 (D. Del. 1985) ...................................................................................8

*Davis v. Leal,*
 43 F. Supp. 2d 1002 (E.D. Cal. 1999) .........................................................................7

*DeRance, Inc. v. Painewebber, Inc.,*
 872 F.2d 1312 (7th Cir. 1987) ...................................................................................7

*Mannington Mills, Inc.,*
 206 F.R.D. at 529 ............................................................................................7, 8, 9

*Micro Motion, Inc. v. Kane Steel Co., Inc.,*
 894 F.2d 1318 (Fed. Cir. (N.J.) 1990) .........................................................................7

*Mycogen Plant Science, Inc. v. Monsanto Co.,*
 164 F.R.D. 623 (E.D. Pa. 1996) .................................................................................7

*Qualcomm Inc. v. Texas Instruments Inc.,*
 875 A.2d 626 (Del. Supr. 2005). (.......................................................................4, 5, 8

*Solarex Corp. v. Arco Solar, Inc.,*
 121 F.R.D. 163 (S.D.N.Y. 1988)................................................................................9

*Texas Instruments Inc. v. Qualcomm Inc.,*
 C.A. No. 20569.......................................................................................................4

## Statutes

Fed.R.Civ.P. 45(c)(3)(A) and Fed. R. Civ. P. 26(c) ........................................................1

Rule 26(b)(1) ...........................................................................................................6

Rules 26 ..................................................................................................................6

Rule 45(c)(3)(B) ......................................................................................................7

Rules 45(c)(3)(B) and 26(c) .......................................................................................6

## **PRELIMINARY STATEMENT**

Non-Party Texas Instruments Incorporated ("TI") respectfully submits this memorandum in support of its motion, pursuant to Fed.R.Civ.P. 45(c)(3)(A) and Fed. R. Civ. P. 26(c), to quash a portion of a subpoena served by defendant Qualcomm Incorporated ("Qualcomm"). More specifically, TI seeks to quash Qualcomm's document request number six (6), which demands that TI produce to Qualcomm – a direct competitor – highly sensitive trade secrets that are of little value to any issue relevant to this litigation. A copy of the subpoena is attached as Exhibit 1 to the accompanying declaration of Stephen R. Neuwirth, Esq., dated July 20, 2006 ("Neuwirth Decl.").

Through its request, Qualcomm is asking TI to produce all of TI's cross-licenses. Qualcomm purports to need the cross-licenses to demonstrate to the Court Qualcomm's own consistency with the industry's fair, reasonable, and non-discriminatory ("FRAND") licensing terms. However, Qualcomm's conduct during negotiations to limit the scope of this subpoena, and more specifically as to document request number six, demonstrates otherwise. TI is not a party to this litigation. This is a suit brought by Broadcom against Qualcomm alleging antitrust violations. Simply because Qualcomm and TI compete in the same industry does not entitle Qualcomm to information regarding TI licenses. TI's license agreements include no terms specific to any licenses to which TI has made a FRAND commitment, and thus shed no light on how TI interprets FRAND or how TI applies FRAND to particular licenses. Accordingly, Qualcomm cannot show any substantial need for this highly sensitive, confidential, commercial trade secret information, the disclosure of which would cause TI serious harm.

## STATEMENT OF FACTS

### I.    BACKGROUND ON THE PARTIES AND UNDERLYING CASE

Qualcomm, the defendant in this action, is accused by plaintiff Broadcom Corporation ("Broadcom") of federal and state antitrust violations. Broadcom alleges that Qualcomm has, among other things, engaged in illegal and anticompetitive conduct in the markets for the technology and chipsets for cell phones employing Wideband Code Division Multiple Access ("WCDMA"), a third generation technology that is implemented through a mobile telephone standard known as the Universal Mobile Telephone System ("UMTS"). Certain standards setting bodies adopted UMTS/WCDMA as a third generation standard for use in the United States, Europe and other parts of the world. In connection with those standard setting processes, Qualcomm agreed in writing to license its patents essential to the standard on fair, reasonable and non-discriminatory ("FRAND") terms. Broadcom alleges that since adoption of the UMTS standard, Qualcomm has disregarded its FRAND commitments and engaged in anticompetitive practices designed to foreclose competition in the WCDMA chipset markets. Broadcom also alleges that Qualcomm has used mergers and acquisitions to substantially lessen competition and extend Qualcomm's existing monopoly power into next generation wireless technologies. TI is a subpoenaed non-party to this action, and a competitor of the litigants.

### II.    QUALCOMM'S SUBPOENA SERVED ON NON-PARTY TI AND TI'S REASONABLE RESPONSE

In February 2006, Qualcomm served on non-party TI a far-reaching subpoena with thirty-four document requests. (*See* Neuwirth Decl. Ex. 1.) TI timely objected, but notwithstanding the plain overbreadth of the subpoena, TI has taken a reasonable and practical approach to Qualcomm's overreaching subpoena and has sought responsibly to negotiate with Qualcomm reasonable limitations on the scope of the subpoena. TI counsel has engaged in numerous telephonic and in-person meetings, and exchanged more than fifteen letters, with Qualcomm counsel. (*See* Neuwirth Decl. at ¶4 and Exs. 2-19.)

2

In response to the subpoena, despite TI's objections to its scope, TI has already produced a total of 15,647 pages of materials and has already committed to producing approximately 5,000 additional documents. Among other things, TI has produced to Qualcomm a copy of the documents TI produced to the Department of Justice in connection with the Department's investigation of Qualcomm's acquisition of Flarion. (*See* Neuwirth Decl. Ex. 7.) TI has also agreed to produce to Qualcomm a copy of the documents TI produced to the European Commission, in connection with the Commission's preliminary review of complaints that six companies filed against Qualcomm. (*See* Neuwirth Decl. Ex. 16.)

TI now files this motion because Qualcomm has insisted (*see* Neuwirth Decl. ¶¶ 25-27 and Exs. 17 and 19), over TI's objection (*see* Neuwirth Decl. Exs. 16 and 18), that TI produce to Qualcomm certain license agreements -- license agreements that not only contain highly sensitive trade secrets, but that TI respectfully submits have no probative value for any issue relevant to this litigation.

## III.   TI'S OBJECTION TO QUALCOMM'S DOCUMENT REQUEST NUMBER SIX

Specifically, Qualcomm's document request number 6 seeks "[a]ll documents relating to licenses or prospective licenses to any Texas Instruments patent essential to any mobile wireless communications standard." (*See* Neuwirth Decl. Ex. 1.) Qualcomm agreed to limit its request number 6 to any TI license agreements covering patents for which TI made a so-called "FRAND" commitment to a mobile telephony standards setting body. (*See* Neuwirth Decl. Ex. 15.) Qualcomm stated that its purported reason for seeking these agreements was to understand how TI interprets "FRAND," and to learn TI's licensing practices with respect to any patents for which TI has made a FRAND commitment to a mobile telephony standards setting body. (*See* Neuwirth Decl. ¶ 14 and Ex. 18.) As TI explained to Qualcomm, however, TI has no license agreements specific to any such patents for which TI has made a FRAND commitment to a mobile telephony standards setting body. Rather, any such patents are included within the scope of broad cross-license agreements covering TI's entire patent portfolio or portions thereof. (*See* Neuwirth Decl. Exs. 16 and 18.) Each of TI's broad cross-license agreements covers hundreds

3

or thousands of patents – *the vast majority of which are **not** subject to any FRAND commitment and do not relate to mobile telephony.* (Declaration of Richard Andrews, dated July 20, 2006, ("Andrews Decl.," ¶ 5.) Accordingly, these arguments are not probative of the issues that Qualcomm says are the basis for its request – namely, to understand how TI interprets "FRAND," and to learn TI's licensing practices with respect to patents that are the subject of a FRAND commitment.

There can be no dispute that the information requested constitutes trade secrets and is confidential. These agreements contain highly sensitive trade secret information of non-party TI, including the identities of its licensees, and the royalty rates and terms of the licenses for each licensee. This trade secret information goes to the heart of TI's business, thus proving extremely valuable property of TI. By corollary, TI's trade secret information also would be of great interest and value to its competitors if they were able to secure access to such information. As a result, this information must be protected from discovery in this litigation. (Andrews Decl., ¶¶ 2-4, 6.)

Qualcomm itself knows of the valuable nature of such trade secret information and in fact is one of many companies that impose strict confidentiality provisions in its licensing agreements. Indeed, several years ago, Qualcomm filed a lawsuit against TI in the Delaware Court of Chancery, claiming that TI allegedly had materially breached its Patent Portfolio Agreement ("PPA") with Qualcomm by disclosing information about certain terms of that agreement. *See Texas Instruments Inc. v. Qualcomm Inc.*, C.A. No. 20569, Letter Opinion at 2 (July 14, 2004) (Court of Chancery dismissed on summary judgment Qualcomm's allegation that TI had committed a material breach of the PPA, noting that, "I granted Qualcomm the opportunity to muster evidence to support is claim that TI's breach was material. Qualcomm has failed in this effort."), *aff'd Qualcomm Inc. v. Texas Instruments Inc.*, 875 A.2d 626 (Del. Supr. 2005). (*See* Neuwirth Decl. Ex. 20.)

Moreover, in the Delaware litigation against TI, Qualcomm itself withdrew a $30 million claim precisely because Qualcomm did not want to reveal the terms of its own licensing

agreements. As the Delaware Supreme Court explained in its decision: "Qualcomm claims that it suffered a $30 million loss because another company withdrew from negotiations over a licensing agreement after learning the royalty terms of the PPA. Assuming that TI's May 2003 disclosure was the reason for the breakdown in negotiations, Qualcomm would have been able to recover damages from TI caused by the disclosure. *Qualcomm decided to forego its damage remedy, however, because (it says) a trial court discovery ruling would have forced it to reveal the confidential terms of all of its licensing agreements -- a result that would be even more damaging that TI's wrongful conduct.*" *Qualcomm Inc.*, 875 A.2d at 629 (emphasis added).

Moreover, TI's license agreements contain trade secrets not only of TI, but also of TI's licensees, and those agreements include provisions requiring TI to notify the licensees before the terms of the agreement can be disclosed to any non-party.

And finally, the risk to TI of disclosure of this information is exacerbated by the fact that Qualcomm has had complaints filed against it by TI as well as other companies in other fora (*e.g.,* before the European Commission or the Korean Fair Trade Commission). Qualcomm may have an incentive to disclose this trade secret information in the context of these other pending proceedings.

## IV. TI'S FAIR AND REASONABLE OFFERS OF COMPROMISE TO QUALCOMM DOCUMENT REQUEST NUMBER SIX

By letter dated July 18, 2006, TI counsel advised Qualcomm counsel that TI had developed some alternatives for a compromise on the requested license agreements. These alternatives included providing Qualcomm with samples of TI's licensing agreements (with licensee names redacted), as well protective restrictions beyond those included in the protective order previously entered by this Court. (*See* Neuwirth Decl. Ex. 18.) TI counsel proposed that the counsel for the parties meet and confer on July 20, 2006 (*id.*), which they did.

At the July 20 meeting, TI counsel reiterated the offer to provide Qualcomm with representative samples of TI's cross-license agreements. Unfortunately, Qualcomm counsel rejected this proposal, and instead insisted that Qualcomm counsel must have the opportunity to

inspect *every and all* of TI 's cross-license agreements. Qualcomm counsel refused to carve out any exceptions, going so far as to insist that if there were a cross-license agreement that covered 10,000 patents -- and only 1 of the 10,000 were the subject of a FRAND commitment -- even that cross-license would have to be made available for inspection by Qualcomm's counsel.

When asked to explain why TI's proposal to provide sample agreements was unsatisfactory, Qualcomm counsel stated that there is only one reason: Qualcomm does not trust TI or its counsel to select samples that are truly representative of the remaining agreements. When asked if there is any other explanation, Qualcomm counsel replied that a lack of trust is the sole basis for Qualcomm's rejection of TI's proposed compromise.[1] (*See* Neuwirth Decl. ¶¶ 25-26.)

## LEGAL ARGUMENT

### QUALCOMM IS NOT ENTITLED TO TI'S TRADE SECRET LICENSE INFORMATION

Document request number six of Qualcomm's subpoena should be quashed because Qualcomm (1) has established no substantial need for this information; and (2) seeks discovery of trade secret, commercially-sensitive and proprietary information from TI concerning its licenses.

As the Court well knows, when considering such a motion to quash, the inquiry is guided by Rules 26 and 45 of the Federal Rules of Civil Procedure, which taken together, provide a three-pronged balancing inquiry as to each discovery request: (1) whether the information sought is relevant under Rule 26(b)(1); (2) whether the information is a trade secret or other confidential commercial information protected from discovery under Rules 45(c)(3)(B) and 26(c); and (3)

---

[1] It bears note that during the meeting, Qualcomm counsel also stated that one reason for Qualcomm's interest in TI's cross-license agreements is to see the royalty rates in those agreements. When asked to explain the relevance of those royalty rates, Qualcomm counsel responded that they would be pertinent to charges, made by Broadcom and other companies, that Qualcomm's royalty rates are excessive. To TI's knowledge, however, Broadcom has made no excessive pricing charge in this case, though excessive pricing charges have been made by certain companies before the European Commission -- suggesting that at least a partial motive for Qualcomm seeking this discovery is to obtain information for use in the European Commission proceedings. (*See* Neuwirth Decl. ¶ 27).

whether the party seeking the protected information has established a "substantial need for the . . . material that cannot be otherwise met without undue hardship. . ."  Rule 45(c)(3)(B); *see Mycogen Plant Science, Inc. v. Monsanto Co.*, 164 F.R.D. 623, 625-26 (E.D. Pa. 1996); *Act, Inc. v. Sylvan Learning Sys., Inc.*, 1999 WL 305300, at *1 (E.D. Pa. May 14, 1999).

**A.    Qualcomm Has Failed to Establish Substantial Need For TI's Licensing Information**

Qualcomm has established no substantial need for the information it seeks from TI in document request number six.  Qualcomm's insistence that the broad cross-licenses are "relevant" misses the point.  TI does not dispute that the cross-licenses are "relevant" under the broad definition of "relevance" embodied in the Federal Rules of Civil Procedure.  TI respectfully submits, however, that Qualcomm has shown no substantial need for discovery of the information it now seeks in this litigation under the Rules of Civil Procedure.  Qualcomm's asserted basis for this request is to understand how TI interprets "FRAND," and to learn TI's licensing practices with respect to patents that are the subject of a FRAND commitment.  But these agreements include no terms specific to any licenses for which TI has made a FRAND commitment, and they therefore shed no light on how TI interprets FRAND or how TI applies FRAND to particular licenses.  (Andrews Decl., ¶ 5.)

The lack of any showing of substantial need is sufficient reason alone to grant this motion to quash.  *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318 (Fed. Cir. (N.J.) 1990); *Mannington Mills, Inc.* 206 F.R.D. at 529 ("even if the information sought is relevant, discovery is not allowed where no need is shown"); *Davis v. Leal*, 43 F. Supp. 2d 1002, 1111 (E.D. Cal. 1999) ("the discovery limits of 26(b)(2), when utilized, generally preclude discovery of information that is not fairly probative of the issues in a case either directly or indirectly.  Discovery that is not necessary or significant in an evidentiary sense, nor reasonably calculated to lead to significant evidence, is not permitted."); *see also DeRance, Inc. v. Painewebber, Inc.*, 872 F.2d 1312, 1326 (7th Cir. 1987) (upholding district court decision denying discovery of

certain investments where defendant's "other investments [were] not directly probative of the issue in [the] case" and would have increased the burdens of discovery).

**B.     The Highly Sensitive Information Qualcomm Seeks From TI Cannot Be Produced Without Causing TI Undue Hardship**

Another reason the motion to quash should be granted is that any conceivable benefit from the production of these documents is far outweighed by the potential harm to TI, a non-party, from divulging its sensitive trade secrets -- its cross-licensing terms and royalty rates, the identities of its cross-licensees, the businesses in which TI may be developing products -- to Qualcomm, a direct competitor of TI in mobile telephone chipset and application processor markets. *See Mannington Mills*, 206 F.R.D. at 529 ("even if the information sought is relevant, discovery is not allowed where . . . the potential harm caused by production outweighs the benefit."). Indeed, "courts have traditionally recognized that disclosure [of a trade secret] to a competitor is more harmful than disclosure to a noncompetitor." *Id.* at 531; *see also Coca Cola Bottling Co. of Shreveport, Inc. v. Coca Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985).   Frankly, Qualcomm's rejection of TI's offer to produce representative samples of the cross-licenses (with licensee names redacted), strongly suggests that Qualcomm's true motive is not to learn about FRAND issues, but rather, to obtain a massive amount of TI's commercially sensitive information.

There can be no dispute that the information sought by Qualcomm is highly sensitive trade secrets.  Indeed, it is Qualcomm who has explicitly recognized the heightened value and sensitivity of the information contained in licensing agreements in this industry.  In fact, when TI sought to discover this exact type of information in litigation against Qualcomm, rather than disclose the terms of its licensing agreements, Qualcomm chose instead to forgo a claim for $30 million. *See Qualcomm Inc. v. Texas Instruments Inc.*, 875 A.2d at 629.  By Qualcomm's own actions it acknowledges the sensitive proprietary commercial trade secret of TI it now seeks to discover.  The Rules specifically protect a non-party from the invasiveness of just such a request.

Moreover, the risk to TI is exacerbated by the fact that Qualcomm may have an incentive to disclose this trade secret information in the context of pending proceedings in other fora (*e.g.,* before the European Commission or the Korean Fair Trade Commission, where Texas Instruments and other companies have filed complaints against Qualcomm).

It cannot be emphasized enough that TI has offered samples of its licenses to Qualcomm as a compromise to this dispute. That Qualcomm rejected TI's offer of compromise and continues to demand every license agreement of TI evidences its ulterior motives. If the Qualcomm's stated reason for its request is genuine the offer to produce samples of TI's licenses should be sufficient.

The foregoing reasons for granting TI's motion to quash are especially compelling in view of TI's status as, not only a non-party, but also a competitor of Qualcomm. *See, e.g., Mannington Mills*, 206 F.R.D. at 529; *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (S.D.N.Y. 1988) (non-party status significant factor in determining whether discovery is unduly burdensome); *see also Am. Stnd. Inc. v. Pfizer Inc.*, 828 F.2d 734, 738 (Fed. Cir. 1987) (affirming district court's restriction of discovery where non-party status "weighs against disclosure").

9

## CONCLUSION

For the foregoing reasons, TI respectfully submits that its motion to quash should be granted.

> CONNELL FOLEY LLP
> Attorneys for Non-Party
> Texas Instruments Incorporated
>
>
> BY: _____
>    Liza M. Walsh

DATED:  July 20, 2006

Of Counsel:
Stephen R. Neuwirth
David Elsberg
Christopher Evans
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue
New York, New York  10010
(212) 849-7000

10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BROADCOM CORPORATION,

Plaintiff,

v.

QUALCOMM INCORPORATED,

Defendant.

Civil Action No. 05-3350 (MLC)

**DECLARATION OF
STEPHEN R. NEUWIRTH**

Stephen R. Neuwirth declares as follows:

1.       I am member of the law firm Quinn Emanuel Urquhart Oliver & Hedges, LLP, counsel to third-party Texas Instruments ("TI"), which has been subpoenaed by Qualcomm, Inc. ("Qualcomm") in this action.  I am admitted to practice in the State of New York.

2.       I respectfully submit this declaration in support of TI's motion to quash, in part, Qualcomm's subpoena to TI.  I am personally familiar with the facts set forth herein.

3.       Attached as Exhibit 1 hereto is a true and correct copy of the subpoena served by Qualcomm on TI.

4.       On April 4, 2006 and May 5, 2006, I participated with Qualcomm counsel in telephonic meet and confer discussions about the subpoena.

5.       Attached hereto as Exhibit 2 is a true and correct copy of the letter from Stephen R. Neuwirth to Fabian D. Gonell, dated April 5, 2006.

6.       Attached hereto as Exhibit 3 is a true and correct copy of the letter from Fabian D. Gonell to Stephen R. Neuwirth, dated April 9, 2006.

7.     Attached hereto as Exhibit 4 is a true and correct copy of the letter from Stephen R. Neuwirth to Fabian D. Gonell, dated April 17, 2006.

8.     Attached hereto as Exhibit 5 is a true and correct copy of the letter from Fabian D. Gonell to Stephen R. Neuwirth, dated May 4, 2006.

9.     Attached hereto as Exhibit 6 is a true and correct copy of the letter from Fabian D. Gonell to Stephen R. Neuwirth, dated May 5, 2006.

10.     Attached hereto as Exhibit 7 is a true and correct copy of the letter from Stephen R. Neuwirth to Fabian D. Gonell, dated May 9, 2006.

11.     Attached hereto as Exhibit 8 is a true and correct copy of the letter from Fabian D. Gonell to Stephen R. Neuwirth, dated June 7, 2006.

12.     Attached hereto as Exhibit 9 is a true and correct copy of the letter from Stephen R. Neuwirth to Fabian D. Gonell, dated June 8, 2006.

13.     Attached hereto as Exhibit 10 is a true and correct copy of the letter from Fabian D. Gonell to Stephen R. Neuwirth, dated June 9, 2006.

14.     Attached hereto as Exhibit 11 is a true and correct copy of the letter from Stephen R. Neuwirth to Fabian D. Gonell, dated June 14, 2006.

15.     Attached hereto as Exhibit 12 is a true and correct copy of the letter from Fabian D. Gonell to Stephen R. Neuwirth, dated June 14, 2006.

16.     Attached hereto as Exhibit 13 is a true and correct copy of the letter from Stephen R. Neuwirth to Fabian D. Gonell, dated June 15, 2006.

17.     Attached hereto as Exhibit 14 is a true and correct copy of the letter from Fabian D. Gonell to Stephen R. Neuwirth, dated June 18, 2006.

18.    Attached hereto as Exhibit 15 is a true and correct copy of the letter from Stephen R. Neuwirth to Fabian D. Gonell, dated June 21, 2006.

19.    Attached hereto as Exhibit 16 is a true and correct copy of the letter from Stephen R. Neuwirth to Fabian D. Gonell, dated July 5, 2006.

20.    Attached hereto as Exhibit 17 is a true and correct copy of the letter from Fabian D. Gonell to Stephen R. Neuwirth, dated July 9, 2006.

21.    Attached hereto as Exhibit 18 is a true and correct copy of the letter from Stephen R. Neuwirth to Fabian D. Gonell, dated July 18, 2006.

22.    Attached hereto as Exhibit 19 is a true and correct copy of the letter from Fabian D. Gonell to Stephen R. Neuwirth, dated July 19, 2006.

23.    As reflected in my letter to Fabian D. Gonell dated July 5, 2006, TI has agreed to produce to Qualcomm in this action a copy of the documents that TI produced earlier this year to the European Commission, in connection with the European Commission's preliminary investigation of complaints filed by six companies against Qualcomm.  TI and Qualcomm have also reached agreement on several categories of documents that Qualcomm has requested.

24.    As reflected in my letter to Fabian D. Gonell dated June 21, 2006 (*see* Ex. 18 attached hereto), Qualcomm's counsel agreed, during a June 20, 2006 meeting with counsel for TI, to limit document request number 6 to seek any license agreements covering patents for which TI made a "FRAND" commitment to a mobile telephony standards setting organization. Counsel for Qualcomm explained during that June 20, 2006 meeting, that Qualcomm's reason for seeking such agreements was to understand how TI interprets "FRAND," and to learn TI's licensing practices with respect to patents that are the subject of a FRAND commitment.

25.    During a July 20, 2006 meeting between counsel for Qualcomm and counsel for TI, counsel for TI offered to provide Qualcomm with representative samples of TI's cross-license agreements. Qualcomm counsel rejected this proposal, and instead stated that Qualcomm counsel must have the opportunity to inspect all of TI 's cross-license agreements. Qualcomm counsel refused to carve out any exceptions, stating that even if there were a cross-license agreement that covered 10,000 patents -- and only 1 of those 10,000 were the subject of a FRAND commitment -- that cross-license would need to be made available for inspection by Qualcomm's counsel.

26.    During the July 20, 2006 meeting, TI counsel asked Qualcomm counsel to explain why TI's proposal to provide sample agreements is unsatisfactory, Qualcomm counsel stated that Qualcomm does not trust TI or its counsel to select samples that are truly representative of the remaining agreements. When TI counsel asked Qualcomm counsel if there is any other explanation, Qualcomm counsel again identified a lack of trust as the only reason for Qualcomm's rejection of TI's proposed compromise.

27.    Also during the July 20, 2006 meeting, Qualcomm counsel stated that one reason for Qualcomm's interest in TI's cross-license agreements is to see the royalty rates in those agreements. When asked by TI counsel to explain the relevance, in this action, of those royalty rates, Qualcomm counsel responded that those rates would be pertinent to charges, made by Broadcom and other companies, that Qualcomm's royalty rates are excessive.

28.    Attached hereto as Exhibit 20 is a true and correct copy of *Texas Instruments, Inc. v. Qualcomm, Inc.*, C.A. No. 20569, Letter Opinion (Del. Ch. July 14, 2004).  The Delaware Court of Chancery made the redactions in the body of the opinion.


I declare the foregoing to be true and correct to the best of my knowledge.


Dated: July 20, 2006

_____
Stephen R. Neuwirth

# EXHIBIT 1

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process
Transmittal**
02/08/2006
Log Number 510911296

| | |
|---|---|
| **TO:** | Jay Johnson<br>Texas Instruments Incorporated<br>7839 Churchill Way, M/S 3999<br>Dallas, TX, 75251-1900 |
| **RE:** | **Process Served in New York** |
| **FOR:** | Texas Instruments Incorporated (Domestic State  DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Broadcom Corporation, Pltf  vs  Qualcomm Incorporated, Dft  To  Texas Instruments Incorporated |
| **DOCUMENT(S) SERVED:** | Subpoena, Attachment |
| **COURT/AGENCY:** | New Jersey  United States District Court, NJ<br>Case # 05-3350(MLC) |
| **NATURE OF ACTION:** | Subpoenas - To provide any and all documents pertaining to this case |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/08/2006 at 16 10 |
| **APPEARANCE OR ANSWER DUE:** | 3/7/06 |
| **ATTORNEY(S) / SENDER(S):** | McCarter & English LLP<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, NJ, 07102 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day, 790315757235<br>Email Notification, Charlotte Dockray CDOCKRAY@TI COM |
| **SIGNED<br>PER:<br>ADDRESS** | C T Corporation System<br>Christopher Tilton<br>111 Eighth Avenue<br>New York, NY, 10011 |
| **TELEPHONE:** | 212-894-8940 |

Information displayed on this transmittal is for CT Corporation s
record keeping purposes only and is provided to the recipient for
quick reference  This information does not constitute a legal opinion
as to the nature of action  the amount of damages  the answer date
or any information contained in the documents themselves
Recipient is responsible for interpreting said documents and for
taking appropriate action

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

BROADCOM CORPORATION

V.

QUALCOMM INCORPORATED

## SUBPOENA IN A CIVIL CASE

CASE NUMBER[1]    05-3350 (MLC)

To    Texas Instruments Incorporated
c/o CT Corporation System
111 Eighth Avenue
New York, NY 10011

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | , |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case  The testimony will be recorded by the following method(s)
   ☐ stenographic, ☐ sound, ☐ sound and visual

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | , |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects)
Documents described in Attachment A

| PLACE | DATE AND TIME |
|---|---|
| McCarter & English LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07102 | March 7, 2006, 10 00 a m |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
| | , |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify  Federal Rules of Civil Procedure, 30(b)(6)

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for    Defendant | February 8, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard J  Stark, Cravath Swaine & Moore LLP, 825 Eighth Avenue, New York, NY 10019, 212 474-1000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number

## PROOF OF SERVICE

| | DATE<br>February 8, 2006 | PLACE<br>111 Eighth Avenue, New York, NY 10011 |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on _____          _____
                              DATE                                  SIGNATURE OF SERVER

                                                  _____
                                                     ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B) Subject to paragraph (d)(2) of this rule a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued If objection has been made, the party serving the subpoena was issued If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subject a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

## ATTACHMENT A

Please produce the following documents at the time and place specified in the subpoena

### Documents To Be Produced

1      All documents relating to Texas Instruments' communications with any SDO or any committee of any SDO relating to any mobile wireless communications standard or technology

2      All documents relating to Texas Instruments' communications with anyone relating to an SDO's evaluation or consideration of any mobile wireless communications standard or technology

3      All documents relating to the adoption by any SDO of any standard that utilizes or otherwise implements WCDMA technology

4      All documents relating to the adoption by any SDO of any standard that utilizes or otherwise implements CDMA technology

5      All documents relating to the meaning of licensing on RAND terms, in the context of any commitment by anyone to any SDO.

6      All documents relating to licenses or prospective licenses to any Texas Instruments patent essential to any mobile wireless communications standard, including, but not limited to, documents relating to (i) offers to license; (ii) requests that any other person or company obtain a license; (iii) proposals to license, (iv) licensing

terms, (iv) Texas Instruments' licensing practices, (v) Texas Instruments' licensing policies, and (vi) all proposed or executed license agreements.

       7     All documents relating to licenses or prospective licenses to any non-Texas Instruments patent essential to any mobile wireless communications standard, including, but not limited to, documents relating to (i) offers to license; (ii) requests that Texas Instruments obtain a license, (iii) proposals to license, (iv) licensing terms, (iv) anyone's licensing practices, (v) anyone's licensing policies; and (vi) all proposed or executed license agreements

       8     All documents relating to Texas Instruments' acquisition of Dot Wireless, Inc

       9     All documents relating to any agreements between Texas Instruments and Broadcom

       10     All documents relating to any agreements between Texas Instruments and Nokia

       11     All documents relating to the ability of any provider or carrier to adopt or deploy different wireless technologies, including 3G, 4G or other mobile wireless technology

       12     All documents concerning the ability, or lack of ability, of any wireless telecommunications carrier or carriers, whether specifically or generally, to switch from (or the costs, time, or other resources involved in switching from) one mobile wireless telecommunications technology, system or network to another, including

without limitation switching from CDMA-based systems or networks to non-CDMA based systems or networks

13    All documents concerning actual or potential competition in the design or sale of chipsets for use in mobile wireless telecommunications devices, including (i) market shares, competitive position, and competitors, including any comparison of relative strengths and weaknesses, number of customers, revenues, Texas Instruments' attempts to win customers from other companies or increase usage of Texas Instruments products, losses of customers to other companies, and responses to the entry of new competitors, (ii) competitive analyses of mobile wireless communications products, including improvements or innovations in features, functions, ease of operation, performance, cost, or other advantages to customers or users; and (iii) supply and demand conditions, including the impact of substitutes

14    All documents relating to an entry or potential entry of a new competitor into the market for chips or chipsets for use in mobile wireless communications  This request includes, but is not limited to, documents relating to entry by Texas Instruments into the CDMA chip business

15    All documents relating to the market or potential market for WiMax

16    All documents relating to Texas Instruments' marketing and selling, or plans to market and sell, chips for mobile wireless communications applications

17    All documents relating to the prices and terms offered to customers and potential customers of Texas Instruments' wireless communication chips, including documents related to any incentives, rebates or bundling related to any wireless communication chip and all agreements for the sale or purchase of wireless communication chips

18    All documents relating to Texas Instruments' communications with any purchaser or prospective purchaser of wireless communication chips relating to any person's rights to make or sell wireless communication chips or with respect to any person's right to use any such chips purchased from Texas Instruments

19    All documents relating to any inability of any supplier of materials or services related to wireless communication chips to meet Texas Instruments' demands for such materials

20    All documents relating to QUALCOMM's entry into the UMTS chip business

21    All documents relating to any decision by Texas Instruments to reduce supply or increase the price of power management chips to QUALCOMM

22    All documents relating to Broadcom or QUALCOMM

23    All documents relating to any complaint by anyone to the European Commission alleging that QUALCOMM is violating the competition law of the European Union or its member states

24    All documents relating to any communication between or among Broadcom, Ericsson, NEC, Nokia, Panasonic Mobile Communications, Sony Ericsson,

and Texas Instruments relating to QUALCOMM, standards or licensing terms, including

RAND terms

       25     All joint defense agreements, common interest agreements or any

other agreements between Texas Instruments and anyone relating to any dispute,

litigation, or government investigation involving QUALCOMM

       26     All documents relating to any communications with any person or

company about any dispute or disputes between Broadcom and QUALCOMM or

between Texas Instruments and QUALCOMM

       27     All documents relating to communications or meetings between

Texas Instruments and Broadcom or Texas Instruments and Nokia relating to any market

related to mobile wireless communications, competition between or among companies in

the mobile wireless communications industry, products in the mobile wireless

communications industry, competitors of Texas Instruments, Nokia, or Broadcom in any

market related to mobile wireless communications, customers of Texas Instruments,

Nokia, or Broadcom in any market related to mobile wireless communications, prices in

the mobile wireless communications industry, licensing in the mobile wireless

communications industry, SDOs that set standards for the mobile wireless

communications industry, any litigation or government investigation in the mobile

wireless communications industry, and mobile wireless technology

       28     All documents relating to any communications between Texas

Instruments and anyone relating to QUALCOMM's licensing practices or terms or

QUALCOMM's products or product sales practices or terms

29 All documents relating to any complaint by anyone to any government or government official of any nation or multinational organization relating to QUALCOMM

30 All documents relating to BREW, including, but not limited to, documents relating to Texas Instruments' communications with anyone relating to BREW

31 All documents relating to any effort by Texas Instruments to make any product related to mobile wireless communications of any company ineffective, incompatible, or otherwise less desirable to consumers, including without limitation changes in design to Texas Instruments chips

32 All documents produced in, transcripts of depositions taken in, and non-public pleadings and other papers served in <u>Texas Instruments Inc v QUALCOMM Inc</u>, No Civ A 20569 (Del Ch), and related appeals

33 All documents relating to any communication between Texas Instruments and Broadcom relating to <u>Texas Instruments Inc v QUALCOMM Inc</u>, No Civ A 20569 (Del Ch), and related appeals

34 All documents relating to the retention or destruction of documents related to QUALCOMM or to mobile wireless communications

<u>Definitions</u>

All relevant definitions contained in the Federal Rules of Civil Procedure and the local rules of this Court are incorporated herein by reference and are supplemented as follows

A    The term "relating to" means concerning, referring to, describing, evidencing, referencing, discussing or constituting

B    The term "communication" means any transmittal of information, whether oral or written, including correspondence, electronic mail, telex, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes or memoranda relating to written or oral communications

C    The term "document" is synonymous in meaning and usage to the broadest scope of the term used in Rule 34(a) of the Federal Rules of Civil Procedure The term "document" includes without limitation all written, phonic, graphic or recorded matter, including without limitation, information stored on computers, disks, tapes (i e , magnetic or other storage media), World Wide Web pages, electronic mailing lists or automated fax support systems  The term "document" specifically includes electronic mail, electronic correspondence, or electronic peer-to-peer messages ("e-mail") and any attachments and files created and maintained in electronic form in the normal course of business

D    The term "QUALCOMM" means, collectively and individually, to QUALCOMM Incorporated and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with QUALCOMM Incorporated, subsidiaries of QUALCOMM Incorporated, and all other persons acting on behalf of QUALCOMM Incorporated

E    The term "Broadcom" means, collectively and individually, Broadcom Corporation and all its directors, officers, authorized agents, employees,

consultants, attorneys, sales representatives, distributors, dealers, direct and indirect

contractors, entities that were acquired by or merged with Broadcom Corporation,

subsidiaries of Broadcom Corporation, and all other persons acting on behalf of

Broadcom Corporation

        F      The term "Ericsson" means, collectively and individually,

Telefonaktiebolaget LM Ericsson and all its directors, officers, authorized agents,

employees, consultants, attorneys, sales representatives, distributors, dealers, direct and

indirect contractors, entities that were acquired by or merged with Telefonaktiebolaget

LM Ericsson, subsidiaries of Telefonaktiebolaget LM Ericsson (including but not limited

to Ericsson Inc ), and all other persons acting on behalf of Telefonaktiebolaget LM

Ericsson

        G      The term "NEC" means, collectively and individually, NEC

Corporation and all its directors, officers, authorized agents, employees, consultants,

attorneys, sales representatives, distributors, dealers, direct and indirect contractors,

entities that were acquired by or merged with NEC Corporation, subsidiaries of NEC

Corporation (including but not limited to NEC America, Inc ), and all other persons

acting on behalf of NEC Corporation

        H      The term "Nokia" means, collectively and individually, Nokia

Corporation and all its directors, officers, authorized agents, employees, consultants,

attorneys, sales representatives, distributors, dealers, direct and indirect contractors,

entities that were acquired by or merged with Nokia Corporation, subsidiaries of Nokia

Corporation (including but not limited to Nokia Inc ), and all other persons acting on

behalf of Nokia Corporation

I  The term "Panasonic Mobile Communications" means, collectively and individually, Matsushita Electric Industrial Co., Ltd. and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Matsushita Electric Industrial Co., Ltd. subsidiaries of Matsushita Electric Industrial Co., Ltd. (including but not limited to Panasonic Mobile Communications Co., Ltd.), and all other persons acting on behalf of Matsushita Electric Industrial Co., Ltd.

J  The term "Sony Ericsson" means, collectively and individually, Sony Ericsson Mobile Communications AB and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Nokia Corporation, subsidiaries of Sony Ericsson Mobile Communications AB, sister companies of Sony Ericsson Mobile Communications AB (including but not limited to Sony Ericsson Mobile Communications (USA), Inc.), and all other persons acting on behalf of Sony Ericsson Mobile Communications AB

K  The term "Texas Instruments" means, collectively and individually, Texas Instruments Incorporated and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, distributors, dealers, direct and indirect contractors, entities that were acquired by or merged with Texas Instruments Incorporated subsidiaries of Texas Instruments Incorporated, and all other persons acting on behalf of Texas Instruments Incorporated

L  The term "agreement" means any executed agreement or draft agreement whether or not ultimately executed

M       The term "BREW" means Binary Runtime Environment for Wireless.

N       The term "Complaint" means the First Amended Complaint filed in September 2005 by Broadcom against QUALCOMM in the United States District Court for the District of New Jersey with the civil docket number 05-3350 (MLC)

O       The term "CDMA" means Code Division Multiple Access, including without limitation technologies referred to in the wireless telecommunications industry as cdmaOne, CDMA2000-lx-RTT, CDMA2000-lxEVDO, and CDMA2000-lxEVDV

P       The term "chip" means a component of a cell phone or other mobile wireless telecommunications device that delivers in whole or in part the device's core ability to communicate with the wireless system or network with which the device is designed to operate

Q       The term "essential" means necessary for implementation of any mobile wireless technology standard, such that the standard could not be practiced without infringing the patent or technology to which "essential" refers

R       The term "RAND" means (a) fair, reasonable and non-discriminatory, (b) reasonable and non-discriminatory, (c) fair, reasonable and free from unfair discrimination, or (d) any other recitation used by any SDO to reflect a commitment to license on non-discriminatory terms

S       The term "Standards Development Organization," or "SDO," means any international, regional, or national organization (including without limitation

the Alliance of Telecommunications Industry Solutions ("ATIS"), the American National Standards Institute ("ANSI"), the European Telecommunications Standards Institution ("ETSI"), the Institute of Electrical and Electronics Engineers ("IEEE"), the International Telecommunications Union ("ITU"), the Telecommunications Industry Association ("TIA"), the Third Generation Partnership Project ("3GPP"), the Third Generation Partnership Project 2 ("3GPP2"), and the Bluetooth SIG) that has been or currently is involved with the development of current or prospective standards for mobile wireless communications

T      The term "WCDMA" means Wideband Code Division Multiple Access

U      The term "WiMax" means wireless technology conforming to any IEEE 802 16 specification

Instructions

The instructions contained in Rule 45 of the Federal Rules of Civil Procedure and the local rules of this Court are incorporated herein by reference and are supplemented as follows

V      Each paragraph in this attachment shall be construed independently and no paragraph shall be construed to limit any other paragraph

W      The use of any definition in this attachment is not an agreement or acknowledgment that such definition is accurate, meaningful or appropriate for any other purpose in this action

11 of 12

X       Each requested document shall be produced in its entirety   If a document responsive to any request cannot be produced in its entirety, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible

Y       Each page or sheet produced shall be marked with a consecutive document control number

Z       All documents produced in response to this subpoena shall be produced in the same order that they are kept in the ordinary course of business Documents that are attached in the ordinary course of business shall not be separated or disassembled

# EXHIBIT 2

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22th Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
stephenneuwirth@quinnemanuel.com

April 5, 2006

VIA ELECTRONIC MAIL AND FIRST CLASS MAIL

Fabian D. Gonell, Esq.
Cravath, Swaine & Moore
Worldwide Plaza
828 Eighth Avenue
New York, New York  10019

Re:     Broadcom Corporation v. Qualcomm Incorporated

Dear Fabian:

This is to confirm our discussion this morning concerning Qualcomm's subpoena, dated February 8, 2006, directed to Texas Instruments Incorporated ("TI").

TI's Willingness to Produce Documents Responsive to Narrower Requests.  For each request (or definition) as to which TI objected on grounds of over-breadth or undue burden, TI invited Qualcomm to present a narrower request (or definition).  If narrower requests are presented, TI will consider them in good faith and will produce documents in response to reasonably drawn demands.

Protective Order.  We explained that TI is willing to produce documents under the provisions of the Protective Order, subject to three caveats.  (1) If Qualcomm plans to make any filing to the Court that includes materials designated "Confidential" or "Highly Confidential" by TI, the Qualcomm will (a) give TI advance notice (at least 5 business days) of its intent to do so, (b) move to file the papers under seal, and (c) submit with the motion any declaration that TI chooses to provide setting forth the reasons for TI's designations.  (2) Paragraph 18 of the Protective Order currently provides that any material designated "Confidential" or "Highly Confidential" can be shown at a deposition of any employees of the employer of the authors or

quinn emanuel urquhart oliver & hedges, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

Fabian D. Gonell, Esq.
April 5, 2006

recipients for the material, or to any person who has or had access to the material outside the context of this litigation. We propose that with respect to TI, Qualcomm will agree, and will obtain Broadcom's consent, that no TI document will be shown to anyone other than the author or recipient without TI's prior written consent. (3) Paragraph 17 of the Protective Order should be modified in the case of TI so that the receiving party has the burden of demonstrating why the information should not remain confidential (as opposed to the current version of Paragraph 17, which would put the burden on TI to prove why the information should remain confidential).

Production Schedule. TI agreed that it will begin production of documents as soon as reasonably practicable and will do so on a rolling basis in order to expedite the process of delivering information to Qualcomm.

Producing to Cravath, Swaine & Moore LLP. TI agreed that, as requested by you and subject to resolving cost issues, TI will produce documents to your offices in New York City.

Time Frame Applicable to Each Request. You agreed to send a letter specifying specific time frames you propose to apply to each document request.

Search Criteria. You stated that Qualcomm is prepared to limit the scope of what must be searched. You agreed to provide a written statement of the criteria that Qualcomm wants applied in establishing a search protocol, to which we will respond with a proposed search protocol.

Costs. We agreed to postpone discussion of Qualcomm paying the costs and expenses of TI's compliance with the subpoena, until we have had more detailed discussions about the search protocol TI will follow. TI made clear that at this point it is not committing to conduct any particular search, or produce any documents, without Qualcomm agreeing to pay reasonable costs and expenses.

Documents Withheld Based on "Right to Privacy" or Other Privilege or Immunity. TI agreed that in the event that it withholds any documents based on a right to privacy, TI will so indicate on a log. TI more generally agreed that to the extent any responsive documents are withheld based on any other privilege or immunity, TI will disclose that to Qualcomm to the extent required by any applicable rules.

Request 33. As TI agreed during our conversation, TI has reconsidered its response to Request 33. Without waiving or withdrawing any of the objections stated in TI's written response to request 33, and without acknowledging that TI possesses any documents responsive to Request 33, TI will produce any relevant, discoverable and non-privileged documents and things in its possession that are responsive to Request 33 and can be located with reasonable searching.

Request 34. While TI maintains all of its objections to Request 34, TI agrees to produce any generally applicable document retention/destruction policies, subject to agreement with you on

2

Fabian D. Gonell, Esq.
April 5, 2006

the time period covered by the request.  TI will also consider in good faith any revised and more narrowly drawn version of Request 34 that you may choose to submit to us.

                        *            *            *

As stated during our conversation, TI has every hope and expectation that the parties will proceed in good faith and in the spirit of cooperation, so that QUALCOMM will obtain any information it reasonably needs while avoiding unnecessarily burdening non-party TI.

Very truly yours,

*Stephen R. Neuwirth*

Stephen R. Neuwirth

SRN:ab

cc:    Richard R. Andrews, Esq.
        Texas Instruments, Incorporated

3

# EXHIBIT 3

FROM CSM LLP

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1956

April 9, 2006

Broadcom Corporation v. QUALCOMM Incorporated

Dear Stephen:

   I write to follow up on our telephone conference and in response to your letter of April 5.

   We also have every hope and expectation that the parties and their advocates will proceed in good faith and in the spirit of cooperation so as to minimize the burdens on all concerned, including the Court. It must be understood, however, that Texas Instruments Incorporated ("TI") is no ordinary disinterested third party to this matter. To the contrary, TI and Broadcom are both represented by Cleary Gottlieb Steen & Hamilton LLP and are apparently acting in concert in this case as well as in other, related matters. In fact, one of TI's attorneys, Maurits Dolmans, stated at a telephonic press conference in October that Broadcom was "carrying the torch in the US" on behalf of TI and others. Moreover, TI, together with Nokia and Ericsson, submitted a letter to the Court on February 24, 2006, in which TI urged the Court to deny QUALCOMM's pending motion to dismiss and made several factual assertions regarding QUALCOMM, markets, license practices, FRAND terms, and standardization. Having done so, TI can not now resist discovery regarding its assertions by assuming the posture of an innocent bystander to this action.

   TI's Demand that QUALCOMM Unilaterally Narrow Its Requests. In my March 22, 2006 letter to Rich Andrews, we offered to discuss TI's concerns about the language of any request so as to alleviate any legitimate concerns about overbreadth or "undue burden". We attempted to do so during Wednesday's call, beginning with a discussion regarding Requests Nos. 6 and 7, directed at licensing materials. When we asked for the basis of TI's refusal to produce the requested documents, you stated, among other things, that the requests were overbroad inasmuch as they sought "all documents". We then offered to discuss specific, identifiable documents – specifically, license agreements. You then stated that the requests were overbroad because they were not

2

limited to the markets as alleged by Broadcom. We then asked whether TI would produce licenses in those alleged markets (i.e., licenses to essential WCDMA and CDMA patents). You declined to answer. Instead, you stated that you refused to engage in an "iterative" discussion about the scope of QUALCOMM's requests. Rather, you demanded that QUALCOMM unilaterally narrow its requests and stated that TI would "consider" narrowed requests. Our other attempts to discuss specific requests were similarly fruitless. Indeed, as to certain requests, you flatly refused to explain the basis for TI's refusal to produce documents, stating only that the reasons were those "stated in the responses".

We believe that QUALCOMM's requests as written are appropriately tailored in light of the issues in the case and TI's status as an interested party actively advocating on Broadcom's behalf. That being said, we remain willing to discuss any request as to which TI has legitimate concerns. We will not, however, engage in a guessing game to try to determine what part of a request TI finds problematic. If TI believes a request should be narrowed, it should (1) state what documents responsive to the request it is, in fact, willing to produce; and (2) explain the portion of the request with which it takes issue.

The few concerns that TI identified on the call are addressed below.

TI's Concerns Regarding Requests for "All Documents". In response to TI's concern about requests seeking "all documents" regarding certain topics, we stated that we saw three ways to narrow a request, each of which we were willing to discuss: (1) narrowing the time scope of the request; (2) limiting the request to specific files and custodians; and (3) narrowing the topical scope of the request.

As to the time scope of the requests, we stated that we would provide a narrowing time scope by request. Pursuant to that commitment, QUALCOMM limits all of the requests to documents created between January 1, 2003, and March 31, 2006, with the exception of the following: (1) Requests 1-5, 10, and 28 are limited to documents created between January 1, 1997, and March 31, 2006; (2) request 8 is limited to documents created between January 1, 1999, and March 31, 2006; (3) license agreements responsive to requests 6 and 7 must be produced without regard to their dates; (4) with respect to other documents responsive to requests 6 and 7 related to patents essential to any WCDMA standard, the requests are limited to documents created between January 1, 1999, and March 31, 2006; and (5) agreements for the sale of chips responsive to Request 17 must be produced without regard to their dates.

As to the scope of TI's search, we stated that we would suggest a mechanism for the exchange of information so that the parties could try to reach a mutually acceptable agreement (I assume this is what is referred to in your letter as "search criteria"). We believe that among the most effective ways to limit the scope of a request is to limit a search to those files or custodians most likely to have highly pertinent documents. Accordingly, we suggest that TI provide us with (1) organizational charts and/or other information sufficient for the parties to discuss the identities of the TI personnel working in the relevant business unit whose duties are such that they are likely

3

to have responsive documents; and (2) sufficient information about TI's policies and procedures with respect to electronic information, including back-ups, such that we can understand the potential sources of information and determine the most efficient manner of search and retrieval. The parties can then work together to identify a limited number of custodians and files to search.

We believe that the narrowing by time scope and scope of search described above will obviate the need for any further narrowing by topical scope. Nevertheless, as we have stated, we remain willing to discuss the topical scope of any request as to which TI has legitimate concerns.

<u>TI's Objections Based on Broadcom's Market Definitions.</u>  In our discussion regarding documents relating to licenses to patents essential to a mobile wireless communications standards (<u>i.e.</u>, requests 6 and 7), you stated that the requests were overbroad insofar as they were not limited to the specific markets alleged by Broadcom in its complaint. That is incorrect. <u>First</u>, the fundamental premise of your position – <u>i.e.</u>, that QUALCOMM is limited in its conduct of discovery by Broadcom's market definitions – is wrong. QUALCOMM's requests are appropriately tailored to seek information about not only those "products" Broadcom contends constitute a relevant market, but also about substitute or potential substitute "products". <u>See</u> Fed. R. Evid. 401.

<u>Second</u>, even if your underlying premise were correct – which it is not – your position would nevertheless be baseless because documents relating to licenses to essential patents are relevant to the issue of the meaning of FRAND regardless of the standard on which the patents read. For example, the GSM standard was enacted by ETSI, which has an IPR policy involving FRAND commitments. Accordingly, licenses to patents essential to the GSM standard are likely to be subject to FRAND commitments and to therefore reflect FRAND terms. Likewise, documents concerning the negotiation of a license to patents essential to the GSM standard will likely reflect the negotiating parties' expectations regarding the meaning of a FRAND commitment and FRAND terms. Accordingly, TI must produce documents responsive to requests 6 and 7 regardless of the standard on which the relevant patents read.

<u>TI's Objections to the "Overbreadth" of Defined Terms.</u>  You stated during our call that, in general, TI's objections to specific defined terms were intended to be prophylactics against an unreasonable or unforeseeable interpretation of those terms by QUALCOMM. QUALCOMM is not using any words in its definitions in any manner inconsistent with their ordinary meanings, and accordingly we believe that the meaning of each of the defined terms is both reasonable and readily understood. For example, it is apparent from TI's reference to "standards-setting bodies" in its February 24 letter to the Court that TI understands what an "SDO" is in the context of this case. We expect that TI will, consistent with its statements about its good faith, reasonably interpret QUALCOMM's requests, including definitions, and will inform us if it elects to withhold responsive documents on the basis of an allegedly "overbroad" defined term. Please let us know if TI intends to do otherwise.

4

<u>Protective Order.</u> When we discussed TI's request for advance notice of the filing of any document containing TI's confidential information, you stated that TI's concern was its ability to address the Court as to the reasons for the need for confidentiality. We do not object to giving TI an opportunity to protect its confidential information and are therefore happy to agree to inform TI of any such filings, but believe that TI's concerns regarding advance notice are already adequately addressed by the existing protective order. Paragraph 11 requires any party submitting a document containing designated Material to do so with a motion to seal pursuant to Local Rule 5.3. Pursuant to Local Rule 5.3(c)(1), any such motion shall be made returnable "on the next available return date". Pursuant to Local Rule 5.3(c)(3), any material that is the subject of such motion "shall remain sealed until such time as the motion is decided". Pursuant to Local Rules 5.3 and 7.1, any such motion will be filed a minimum of 24 days in advance of its return date. Accordingly, if TI is notified at the time any such filing is made, it will have ample opportunity to address the Court if it feels the need to do so.

With respect to TI's request that none of its documents be shown at a deposition to anyone other than an author or recipient without TI's prior written consent, we told you on the telephone that we will not agree to disclose to TI in advance the documents we may use at a deposition in light of TI's cooperation with Broadcom. In response, you stated that TI would not require identification of specific documents, but instead sought notification only that one or more of its confidential documents might be used. It is unclear to us how such a general notification would fit with a requirement that TI give permission before the use of its documents. As we stated on the telephone, we are happy to discuss any proposal TI may offer with respect to depositions that would alleviate the risk of advance notice to Broadcom of QUALCOMM's litigation strategy. With respect to Broadcom's consent to any such conditions, we believe that TI should address its requests to Broadcom and its counsel.

With respect to the burden of proof regarding the need for confidentiality, Third Circuit law places that burden on the party seeking confidential treatment.

<u>Production Schedule.</u> We were surprised and disappointed to learn that TI has not even begun to search for and collect documents responsive to QUALCOMM's requests in the nearly two months it has had QUALCOMM's subpoena. Nonetheless, we thank you for your commitment to begin production of documents as soon as reasonably practicable and to produce on a rolling basis. We believe that TI should be able to collect and produce at least the following readily identifiable and unquestionably relevant documents within 30 days:

- License agreements to essential patents responsive to requests 6 and 7;

- Agreements for the sale of baseband modem chips responsive to request 17;

- Communications and document productions to the United States Department of Justice in connection with the Department's investigation of QUALCOMM's acquisition of Flarion;

FROM CSM LLP
(SUN) 4. 9' 06 20:37/ST. 20:34/NO. 4864995522 P  6

5

- Communications and document productions to the Directorate General – Competition of the European Commission in connection with TI's complaint regarding QUALCOMM;

- TI's high-level business plans regarding UMTS and CDMA baseband modem chips responsive to request 16; and

- The common interest or other agreements pursuant to which TI will claim that responsive communications between it and Broadcom or Nokia are privileged.

Please let us know whether TI agrees to produce these documents on this schedule.

* * *

We accept your statements about TI's good faith. Accordingly, we hope and expect that your reluctance to discuss the production of specific documents (such as license agreements) on our call was the result of caution due to being recently retained and not a delaying tactic. With that in mind, I suggest that we schedule another call for late this week or early next week to renew our discussions after you and your team have had further time to consult with your client. I look forward to hearing from you.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
   Quinn Emanuel Urquhart Oliver & Hedges, LLP
      335 Madison Avenue, 17th Floor
      New York, NY 10017

BY FAX

# EXHIBIT 4

**quinn emanuel** trial lawyers | new york

335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
stephenneuwirth@quinnemanuel.com

April 17, 2006

VIA ELECTRONIC MAIL AND FIRST CLASS MAIL

Fabian D. Gonell, Esq.
Cravath, Swaine & Moore
Worldwide Plaza
828 Eighth Avenue
New York, New York  10019

Re:    Broadcom Corporation v. Qualcomm Incorporated

Dear Fabian:

We have received your letter of April 9.  As I mentioned when you called this morning, I was out of the office most of last week for observance of the Passover holiday, and therefore I was not available to send this response to you until today.

As reflected in my letter to you of April 5, Texas Instruments Incorporated ("TI") made clear from the outset its willingness to produce what will likely amount to thousands, if not tens of thousands, of pages of documents in response to many of Qualcomm's broad and far ranging requests.  Subject to resolution of cost issues, TI volunteered and agreed during our recent call to begin production of documents responsive to multiple requests as soon as reasonably practicable and on a rolling basis, and to produce the documents, as you requested, at your offices in New York.  TI also confirmed that it will prepare and produce any privilege logs required by the Federal Rules of Civil Procedure and any applicable local rules.

We are disappointed that you have chosen to send a shrill letter designed to create a self-serving and false litigation record.  We are not going to engage in a point-by-point refutation of your mischaracterizations of our discussion.  Rather, we note that (a) while TI agreed to produce documents in response to many of Qualcomm's requests, your letter suggests that Qualcomm

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

60420/1864965.1

Fabian D. Gonell, Esq.
April 17, 2006

prefers instead that TI focus initially on certain categories of documents, identified near the conclusion of your letter, that Qualcomm would like TI to produce within 30 days; (b) with respect to the requests that TI identified as overbroad, you have failed to provide TI with any proposed narrowing of these requests, notwithstanding TI's good faith offer to produce documents in response to reasonably drawn demands; (c) you have abandoned your commitment, made during our last call, to provide a written statement of the criteria that Qualcomm wants applied in establishing a search protocol, other than to reiterate a request that TI produce to you its organizational charts; and (d) in requesting that TI produce certain categories of documents within 30 days, you have failed to confirm that Qualcomm will pay the costs associated with collection and production of any such documents.

With respect to the documents that you have now asked TI to produce within 30 days, we reiterate our request that Qualcomm confirm it will cover the costs associated with the collection and production of these documents. Subject to Qualcomm agreeing to cover those costs and to resolution of issues related to the Protective Order (see below), and without waiving any of TI's previously stated objections, TI is prepared to produce on a rolling basis, beginning in 30 days, any responsive, non-privileged documents in the following categories:

- All license agreements for any TI patent essential to any standard incorporating CDMA or W-CDMA or UMTS technology. (We understand from our phone conference with you that Qualcomm is *not* seeking production of broad cross-licenses that are not specific to any of the technologies at issue in the litigation.)
- All licenses to any non-TI patent asserted by the patent holder to be essential to any standard incorporating CDMA, W-CDMA or UMTS technology. (Again, we understand from our phone conference with you that Qualcomm is *not* seeking production of broad cross-licenses that are not specific to any of the technologies at issue in the litigation.)
- Documents produced to the United States Department of Justice in connection with the Department's investigation of Qualcomm's acquisition of Flarion.

TI has previously advised you of its objections to the other categories of documents as to which your letter states you are seeking immediate production. Again, TI is prepared to consider any more narrowly tailored requests that you wish to provide. In addition, TI will be producing various categories of documents in response to Qualcomm's multiple requests, and we expect that a number of those documents will also have been provided to the Directorate General - Competition of the European Commission. However, as we have previously noted, it is inappropriate for Qualcomm to use this U.S. litigation to obtain discovery for use before the European Commission.

As for your request that we provide you with additional information concerning whether TI "elects to withhold responsive documents on the basis of an allegedly 'overbroad' defined term," TI will comply with the applicable legal rules.

Fabian D. Gonell, Esq.
April 17, 2006

Finally, we are reviewing your proposals with respect to the Protective Order, and we will respond to those proposals under separate cover.

I will be out of the office for the remainder of this week. Please contact my office if you wish to discuss any of these issues further, and we can arrange a mutually convenient time to speak.

Very truly yours,

Stephen R. Neuwirth

SRN:ab
60420/1864965.1

# EXHIBIT 5

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITIPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1956

May 4, 2006

<u>Broadcom Corporation v. QUALCOMM Incorporated</u>

Dear Stephen:

       I write in response to your letter of April 17.

       It is most unfortunate that rather than move past TI's unwillingness or inability to meaningfully confer on April 5, you have elected to engage in *ad hominem* attacks. I hope that future correspondence be more productive.

       Your assertion that QUALCOMM has not narrowed its requests is wrong. As set forth in my April 9 letter, QUALCOMM has narrowed its requests by time scope and indicated its willingness to cooperate with TI to narrow its requests by scope of search. Your letter ignores that. With respect to the substantive scope of the requests, as I stated in my letter of April 9, if TI believes a request should be narrowed, it should (1) state what documents responsive to the request it is, in fact, willing to produce; and (2) explain the portion of the request with which it takes issue.

       Inasmuch as TI has not explained the portions of particular requests that it finds problematic, we will assume that, consistent with TI's many statements regarding its "good faith", it is producing the documents responsive to requests as to which it has indicated it is producing documents without withholding any documents based on an "overbreadth" objection. We also understand that, with the exceptions set forth in your letter of April 17, TI is refusing to produce <u>any</u> documents responsive to Requests Nos. 6-7, 10, 16-17, 19, 24-27, and 29.

       TI's flat refusal to produce documents responsive to Requests Nos. 6-7, 10, 16-17, 19, 24-27, and 29 is improper. Each of those requests calls for documents as to which there can be no reasonable dispute about relevance. A party proceeding in "good faith", then, would produce those documents as to which there is no reasonable dispute and identify for discussion the parts of the requests it believed were overbroad.

**2**

Nonetheless, we have examined each of these requests in light of TI's objections, and are prepared to narrow them as follows:

- With respect to Requests Nos. 6 and 7, QUALCOMM narrows the requests to call for the production of all license agreements for patents essential to any mobile wireless communications standard and documents sufficient to identify the TI personnel who negotiated or authorized any of the terms reflected in each agreement. Contrary to the "understanding" set forth in your letter, QUALCOMM seeks the production of all such licenses, regardless of whether they are "broad cross-licenses". Moreover, QUALCOMM seeks production of responsive licenses regardless of the particular mobile wireless communications standard to which the licensed patents are essential.

- QUALCOMM narrows Request No. 10 to call for the production of all agreements between TI and Nokia related to mobile wireless communications and documents sufficient to identify the TI personnel who negotiated or authorized any of the terms reflected in each agreement.

- QUALCOMM narrows Request No. 16 to call for the production of TI's high level marketing and business plans related to baseband modem chips for mobile wireless communications applications and documents sufficient to identify the TI personnel who are responsible for developing and directing the implementation of such plans.

- QUALCOMM narrows Request No. 17 to call for the production of all agreements for the sale of chips for mobile wireless communications applications, documents sufficient to identify the TI personnel who negotiated or authorized any of the terms of each agreement, and documents sufficient to show all discounts (including all terms and conditions thereof) offered by TI on chips for mobile wireless communications applications.

- QUALCOMM narrows Request No. 19 to call for the production of all documents relating to any inability of any supplier of wafers for the manufacture of chips using 180 nanometer (.18 micron) technology to meet TI's demand for such wafers.

- QUALCOMM narrows Request No. 24 to call for the production of (i) all communications between or among Broadcom, Ericsson, NEC, Nokia, Panasonic Mobile Communications, Sony Ericsson, and Texas Instruments relating to QUALCOMM; mobile wireless communications standards; or licensing terms, including RAND terms; and (ii) all documents describing, quoting or reflecting such communications

- QUALCOMM narrows Request No. 25 to call for the production of all agreements between Texas Instruments and anyone relating to any dispute, litigation, or government investigation (i) involving QUALCOMM and any allegation that QUALCOMM is violating the antitrust or competition law of any

3

jurisdiction; (ii) involving QUALCOMM and in which TI has provided information to a party or government entity; or (iii) involving QUALCOMM and Broadcom.

- QUALCOMM narrows Request No. 26 to call for the production of all communications with any person or company about any dispute or disputes between Broadcom and QUALCOMM or between Texas Instruments and QUALCOMM involving patents or products used in mobile wireless communications applications and all documents describing, quoting or reflecting such communications.

- QUALCOMM narrows Request No. 27 to call for the production of (i) all communications between or among Texas Instruments, Broadcom or Nokia relating to any market related to mobile wireless communications, competition between or among companies in the mobile wireless communications industry, products in the mobile wireless communications industry, competitors of Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications, customers of Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications, prices in the mobile wireless communications industry, licensing in the mobile wireless communications industry, SDOs that set standards for the mobile wireless communications industry, any litigation or government investigation in the mobile wireless communications industry, and mobile wireless technology; (ii) all documents describing, quoting or reflecting such communications; and (iii) documents sufficient to show the dates of, topics of and participants in any meetings between Texas Instruments and Broadcom or Texas Instruments and Nokia relating to any market related to mobile wireless communications, competition between or among companies in the mobile wireless communications industry, products in the mobile wireless communications industry, competitors of Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications, customers of Texas Instruments, Nokia, or Broadcom in any market related to mobile wireless communications, prices in the mobile wireless communications industry, licensing in the mobile wireless communications industry, SDOs that set standards for the mobile wireless communications industry, any litigation or government investigation in the mobile wireless communications industry, and mobile wireless technology.

- QUALCOMM narrows Request No. 29 to call for the production of all documents relating to any complaint by anyone to any government or government official of any nation or multinational organization relating to QUALCOMM's licensing practices, QUALCOMM's pricing of its chips, any conduct alleged in Broadcom's First Amended Complaint, or any allegation that QUALCOMM is violating the antitrust or competition law of any jurisdiction.

Please let us know promptly if TI will produce the documents responsive to the requests as narrowed.

05/04/2006  14:13  3978                    CRAVATH                    PAGE  05/05

4

With respect to your expressed concern that QUALCOMM is "us[ing] this U.S. litigation to obtain discovery for use before the European Commission", we direct you to paragraph 14 of the March 13, 2006 Protective Order, which prohibits such use. I am certain that you did not mean to suggest that QUALCOMM is violating or intending to violate the Court's order.

With respect to the issue of costs, I told you on April 5 that QUALCOMM would be prepared to consider sharing TI's costs of production if TI cooperated with QUALCOMM regarding the scope of TI's search. Accordingly, I suggested in my April 9 letter that TI provide us with (1) organizational charts and/or other information sufficient for the parties to discuss the identities of the TI personnel working in the relevant business unit whose duties are such that they are likely to have responsive documents; and (2) sufficient information about TI's policies and procedures with respect to electronic information, including back-ups, such that we can understand the potential sources of information and determine the most efficient manner of search and retrieval. I also stated that upon QUALCOMM's receipt of such information, the parties could work together to identify a limited number of custodians and files to search. I further listed a discrete set of readily identifiable documents as to which there would be little or no "search" costs and minimal copying costs.

Your letter essentially ignores our efforts to cooperate regarding the scope of TI's search. So long as TI maintains that position, QUALCOMM will not agree to pay any "search" costs. As I told you on April 5, we are not going to hand TI a blank check by agreeing in advance to pay for a search that TI will not speak to us about. With respect to the documents listed in my April 9 letter, QUALCOMM is prepared to pay half of the reasonable costs of duplicating these items.

I look forward to receiving the start of TI's production on Tuesday, May 9, 2006.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
    Quinn Emanuel Urquhart Oliver & Hedges, LLP
        335 Madison Avenue, 17th Floor
            New York, NY 10017

BY FAX

05/04/2006 THU 14:16 [TX/RX NO 5752] ☒005

# EXHIBIT 6

# CRAVATH, SWAINE & MOORE LLP

### WORLDWIDE PLAZA
### 825 EIGHTH AVENUE
### New York, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1956

May 5, 2006

Broadcom Corporation v. QUALCOMM Incorporated

Dear Stephen:

　　　Thank you for your telephone call of today.  By this letter, I confirm that (1) QUALCOMM will treat any TI document designated "Confidential" or "Highly Confidential" as set forth in the protective order in this case unless and until TI and QUALCOMM agree otherwise (or as otherwise ordered by the Court); and (2) QUALCOMM will not contend that TI's production in this case of documents produced to the DOJ in connection with the Flarion transaction without seeking costs waives or otherwise prejudices in any way TI's right to seek costs related to the production of other documents.

　　　I believe that the above is consistent with our call.  If it is not, please let me know.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
　　Quinn Emanuel Urquhart Oliver & Hedges, LLP
　　　335 Madison Avenue, 17th Floor
　　　　New York, NY 10017

BY EMAIL

# EXHIBIT 7

**quinn emanuel** trial lawyers | new york

335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
stephennenwirth@quinnemanuel.com

May 9, 2006

VIA HAND DELIVERY

Fabian D. Gonell, Esq.
Cravath, Swaine & Moore
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019

Re:    Broadcom Corporation v. Qualcomm Incorporated

Dear Fabian:

As previously agreed, Texas Instruments Incorporated ("TI") is today beginning its rolling production of documents in response to the above-referenced subpoena. Specifically, we are producing documents bearing the Bates range TI0000001 - TI0015647, constituting copies of the documents that TI produced to the Department of Justice in response to the DOJ subpoena served in connection with the Department's investigation of Qualcomm's then-proposed Flarion acquisition. The documents being produced bear the same Bates numbers as those that were produced to the Justice Department. Please note that we are not producing at this time the privilege log that TI submitted to the Justice Department, because it is our intention to provide, at a later date, a single privilege log in response to Qualcomm's subpoena.

Please find enclosed a CD-Rom containing the above-referenced documents, which are being produced subject to the agreements reflected in your letter to me of May 5, 2003 (a copy of which is attached hereto). In that regard, please note that TI has designated all of the documents being produced today as "Highly Confidential."

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

Fabian D. Gonell, Esq.
May 9, 2006

Please also note that in making this production of documents that TI provided to DOJ in response to the Department's Flarion-related subpoena, TI is not waiving any of its objections to Qualcomm's other document requests or agreeing that the subject matter of any particular document provided to DOJ is necessarily relevant to the litigation between Broadcom and Qualcomm.

As a professional courtesy, we are providing a copy of this letter, and the enclosed disc, to outside counsel for plaintiff Broadcom. In so doing, however, TI is not taking any position on a going forward basis as to the appropriate procedures for providing to Broadcom copies of any documents that TI may produce in response to Qualcomm's subpoena. The parties will need to reach agreement on any such procedures.

Very truly yours,

Stephen R. Neuwirth

SRN:ab

Enclosures

cc:    Mark Nelson
       Cleary Gottlieb Steen & Hamilton LLP
       (via Federal Express)

2

# EXHIBIT 8

CRAVATH

PAGE  02/02

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1956

June 7, 2006

### Broadcom Corporation v. QUALCOMM Incorporated

Dear Stephen:

It has been more than 30 days since you received my letter of May 4, and it has been over four months since TI received QUALCOMM's subpoena. Please let us know by the end of this week when you are available to meet and confer regarding TI's lack of communication and lack of production in this matter.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
    Quinn Emanuel Urquhart Oliver & Hedges, LLP
        51 Madison Avenue, 22nd Floor
        New York, NY 10010

BY FAX

# EXHIBIT 9

**quinn emanuel** trial lawyers | new york
51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
stephenneuwirth@quinnemanuel.com

June 8, 2006

<u>VIA ELECTRONIC MAIL, FACSIMILE AND FEDERAL EXPRESS</u>

Fabian D. Gonell, Esq.
Cravath, Swaine & Moore
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Re:     <u>Broadcom Corporation v. Qualcomm Incorporated</u>

Dear Fabian:

        We write in response to your letters of June 7, 2006 and May 4, 2006, which unfortunately both include the same type of combative tone and self-serving misstatements that have characterized your prior communications with us about this matter. We will not attempt here to address each of the misstatements in your letters, but stand by the record set forth in our prior correspondence.

        The suggestion in your June 7 letter that Texas Instruments ("TI") has had a "lack of communication and lack of production in this matter" is baseless. As you know well, TI in early May provided Qualcomm with a copy of TI's production to the Department of Justice made in connection with the Department's review of Qualcomm's Flarion acquisition. In addition, you and I have spoken by phone on several occasions, and we have exchanged a number of letters related to Qualcomm's subpoena. At the same time, Qualcomm has failed to date to confirm that it will reimburse TI, a third party, for the costs associated with TI's collection, review and production of documents.

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

Fabian D. Gonell, Esq.
June 8, 2006

   With respect to the specific numbered document requests addressed in your May 4 letter, and subject to the objections set forth in TI's Objections and Responses dated March 21, 2006 (all of which TI expressly reserves), we respond as follows.

   <u>Requests 6 and 7</u>:  We believe your continuing demand for <u>all</u> the licenses described in your letter, regardless of whether these are broad cross-licenses, is unreasonable and overbroad.  We ask that you explain the basis for your position that even general cross-licenses between TI and third parties are relevant and should be produced to Qualcomm.

   <u>Request 10</u>:  Again, we do not see how the information demanded is relevant. Please advise us as to the basis for your belief that all the TI-Nokia agreements described in your letter are germane to the Broadcom v. Qualcomm suit.

   <u>Request 16</u>:  We are taking under advisement you request to the extent it seeks high-level marketing plans for CDMA and UMTS/WCDMA chipsets and applications processors.

   <u>Request 17</u>:  We will take this request under advisement, although it raises significant issues with respect to TI's confidential and commercially sensitive information.

   <u>Request 19</u>:  We do not see how the information demanded could be relevant to the Broadcom v. Qualcomm litigation; however, TI will undertake a reasonable search to determine whether it can locate any documents in this category related to the issues in the lawsuit.

   <u>Requests 24 and 25</u>:  To the extent any such information might exist, it would be irrelevant and/or privileged.

   <u>Request 26</u>:  TI will produce non-privileged documents, if any, concerning the Broadcom v. Qualcomm lawsuit.

   <u>Request 27</u>:  The 25-line description set forth in your letter, purporting to "narrow" this request, is incomprehensible.

   <u>Request 29</u>:  TI will produce copies of the documents that TI produced to the Department of Justice in response to the Department's subpoena in connection with the Department's investigation of Qualcomm's then-proposed Flarion acquisition.  This request otherwise appears to be an effort by Qualcomm improperly to use the Broadcom v. Qualcomm litigation to obtain discovery for use in other forums.

   With respect to costs, we have identified approximately 85 TI employees that are reasonably likely to possess documents responsive to the Qualcomm subpoena.  TI is collecting

2

Fabian D. Gonell, Esq.
June 8, 2006

and reviewing documents from the files of these employees, but we continue to await confirmation that Qualcomm will undertake to reimburse TI for its reasonable costs and fees associated with searching for and producing hardcopy and electronic records responsive to the subpoena. As previously stated, non-party TI will not undertake to produce additional information absent Qualcomm's agreement to pay reasonable costs and fees. To the extent that Qualcomm seeks (as you have previously indicated) to have plaintiff Broadcom cover any portion of those costs and fees, that is an issue to be resolved between Broadcom and Qualcomm.

Very truly yours,

Stephen R. Neuwirth

SRN:ab

3

# EXHIBIT 10

06/09/2006 FRI 08:57 [TX/RX NO 6318] ✉002

# CRAVATH, SWAINE & MOORE LLP

### WORLDWIDE PLAZA
### 825 EIGHTH AVENUE
### New York, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1956

June 9, 2006

<u>Broadcom Corporation v. QUALCOMM Incorporated</u>

Dear Stephen:

   I write in response to your letter of yesterday's date. As your continuing mischaracterizations of our correspondence merit no response, let us proceed to the substance of QUALCOMM's requests and TI's responses.

   <u>Requests 6 and 7</u>: Licenses to essential patents are relevant to the meaning of FRAND, as explained in my letter of April 9, 2006. That is so regardless of whether the licenses are included as part of "broad cross-licenses".

   <u>Request 10</u>: Nokia is the market leader in the sale of cell phones. TI supplies most or all of the baseband modem chips used in Nokia's cell phones. Baseband modem chips are the products underlying Broadcom's alleged relevant markets. Accordingly, the terms of TI's relationship with Nokia, including any provisions affecting the ability of Nokia to purchase chips from another supplier, are relevant.

   <u>Request 16</u>: Why is TI refusing to produce business plans related to baseband modem chips – the products underlying Broadcom's alleged relevant markets? And why is TI only now taking the remainder of Request 16 "under advisement", more than a month after it was narrowed?

   <u>Request 17</u>: Again, why is TI only now taking this request "under advisement", more than a month after it was narrowed?

   <u>Request 24</u>: If TI is claiming privilege over responsive documents, it must provide the information required by the Federal Rules.

   <u>Request 25</u>: The agreements themselves are not "privileged", and their production is reasonably likely to lead to the discovery of admissible evidence because

06/09/2006 FRI 08:57 [TX/RX NO 6318] 003

2

the agreements will show the scope of the effort by the dominant companies in the industry, including TI, to hinder QUALCOMM's ability to compete. Moreover, they are necessary for QUALCOMM to evaluate TI's claims of privilege.

Request 26: There is no basis for TI's unilateral narrowing of this request. TI's communications with third parties about Broadcom's complaint or TI's complaint to the European Commission are relevant because those complaints are based on many of the same allegations as those in the complaint in this action. And TI's communications with third parties about its dispute with QUALCOMM over TI's breach of its agreement with QUALCOMM are relevant because Broadcom claims that QUALCOMM's enforcement of its contract rights was somehow "anticompetitive".

Request 27: We will be happy to explain Request 27 to you when we meet and confer.

Request 29: Request 29 calls for the production of documents relevant to issues in this case, and the protective order in this case prohibits us from using documents produced in this case for other purposes. There is therefore no basis for TI's purported concern that documents will be used in "other forums".

With respect to costs, QUALCOMM will pay reasonable collection and copying costs for the documents called for by Requests Nos. 6, 7, 10, 16, 17, and 25. QUALCOMM will also pay reasonable collection and copying costs for the documents called for by Request Nos. 24 and 29 found in the files of Gail Chandler, including all documents related to "Project 17" or "Project Stockholm". We will accept any electronic documents in native form to avoid unnecessary processing expenses. QUALCOMM will also pay reasonable copying costs for any production of documents TI has made to the European Commission in connection with TI's complaint regarding QUALCOMM.

With respect to other requests, we find it highly unlikely that it is necessary to search the files of 85 custodians to respond to QUALCOMM's requests. Please identify those custodians and, for each custodian, the requests as to which TI expects the custodian to have responsive documents. Please also state, for each custodian, whether the any of custodian's documents were produced to the European Commission. We believe it likely that the production of TI's production to the European Commission will obviate the need for a search of most of these custodians.

There is no reason for further delay in the production of those documents as to which we have given our commitment to pay reasonable collection and copying costs. Accordingly, we wish to meet and confer as soon as possible to resolve any

06/09/2006 FRI 08:57 [TX/RX NO 6318] ☒ 004

3

remaining differences as to these documents.  Please let us know when you are available to do so.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
    Quinn Emanuel Urquhart Oliver & Hedges, LLP
       51 Madison Avenue, 22nd Floor
         New York, NY 10010

BY FAX

# EXHIBIT 11

**quinn emanuel** trial lawyers | new york

_Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100_

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
stephenneuwirth@quinnemanuel.com

June 14, 2006

## VIA ELECTRONIC MAIL

Fabian D. Gonell, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Re:    Broadcom Corp. v. Qualcomm, Inc.

Dear Fabian:

We have your letter of June 9, 2006. Your letter suggests that Qualcomm remains focused on improperly using its third party subpoena to Texas Instruments ("TI") here to obtain discovery for use in proceedings before the European Commission. Subject to TI's previously stated objections, it has been, and remains, TI's intent to produce to Qualcomm documents responsive to Qualcomm's requests, including documents from TI's files that may also have been produced to the European Commission.

While we appreciate that Qualcomm has now finally agreed to bear costs associated with TI's compliance with Qualcomm's subpoena, we do not understand why Qualcomm has limited that agreement only to certain document requests -- specifically Nos. 6, 7, 10, 16, 17 and 25 -- given that Qualcomm is demanding that TI produce documents in response to Qualcomm's other requests as well.

We are also surprised by your suggestion that TI has perhaps gone too far in seeking to collect files from the 85 persons that TI believes may have documents responsive to Qualcomm's subpoena. Moreover, prior to receipt of your letter, TI had already embarked on the identification and collection of documents from these 85 persons, and we do not believe at this point any efficiencies would necessarily be gained by narrowing the list.

**quinn emanuel urquhart oliver & hedges, llp**

_LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100_
_SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700_
_SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100_
_SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3100 FAX 858-812-3336_

We would be available to meet and confer on these and other outstanding issues this coming Monday, June 19, or Tuesday, June 20. If those dates work for you, please let me know the specific times when you would be available.

Very truly yours,

Stephen R. Neuwirth

SRN/acb

# EXHIBIT 12

FROM CRAVATH SWAINE & MOORE LLP                    (WED) 6. 14' 06 19:04/ST. 19:03/NO. 4864994743 P  2

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1956

June 14, 2006

Broadcom Corporation v. QUALCOMM Incorporated

Dear Stephen:

I write in response to your letter of today's date.

As we have told you repeatedly, the protective order in this case prohibits the use of designated documents produced in this case in other cases or proceedings. Thus, there is no basis for your assertion that QUALCOMM is "using its third party subpoena to Texas Instruments ('TI') here to obtain discovery for use in proceedings before the European Commission". QUALCOMM will not violate the Court's order.

The suggestion in your letter that QUALCOMM has only agreed to pay reasonable collection and copying costs for the documents called for by Requests Nos. 6, 7, 10, 16, 17, and 25 is incorrect. As stated in my June 9, 2006 letter, QUALCOMM has also agreed to (1) pay such costs for the production of the documents called for by Request Nos. 24 and 29 found in the files of Gail Chandler, including all documents related to "Project 17" or "Project Stockholm"; and (2) pay reasonable copying costs for any production of documents TI has made to the European Commission in connection with TI's complaint regarding QUALCOMM. As we stated in my letter of June 9, we believe it likely that the production of these documents will obviate the need for a search of most of the 85 custodians from whom TI intends to collect documents in response to QUALCOMM's other requests. Moreover, we have stated that we will accept any electronic documents in native form to avoid unnecessary processing expenses.

We have made clear since our first telephone call that QUALCOMM will not agree to pay for the costs of a search that TI will not discuss with us in advance. Thus, TI's belief that narrowing the list of 85 custodians will not result in "efficiencies" because TI has "already embarked on the identification and collection of documents from these 85 persons" is irrelevant. Whatever steps TI has already taken with respect to the 85 custodians have been voluntary, and TI has therefore waived any claim of burden with

respect to any costs associated with those steps. In particular, we see no reason why QUALCOMM should pay for TI to collect and process documents from custodians from whom documents were already collected, processed and produced to the European Commission.

We have responded in good faith to TI's demands that QUALCOMM narrow its requests and that QUALCOMM pay TI's costs. It is time for TI to produce the requested documents. We are available to meet at your offices at anytime on Tuesday, June 20. We suggest 10:30 a.m.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
    Quinn Emanuel Urquhart Oliver & Hedges, LLP
        51 Madison Avenue, 22nd Floor
        New York, NY 10010

BY FAX

# EXHIBIT 13

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
stephenneuwirth@quinnemanuel.com

June 15, 2006

VIA ELECTRONIC MAIL

Fabian D. Gonell, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Re:    Broadcom Corp. v. Qualcomm, Inc.

Dear Fabian:

We are available to meet on June 20 at 10:30 a.m. as proposed in your letter of today. We would prefer to meet at your offices. Please let me know if this is acceptable to you.

In anticipation of the meeting, please clarify, in light of your letter of today, whether it is Qualcomm's position that if TI produces to Qualcomm the set of documents that TI produced earlier this year to the European Commission, Qualcomm will not seek to have TI search for any additional documents from its employees.

Very truly yours,

*Stephen R. Neuwirth*

Stephen R. Neuwirth

SRN/acb

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

# EXHIBIT 14

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
(212) 474-1956

June 18, 2006

Broadcom Corporation v. QUALCOMM Incorporated

Dear Stephen:

I write in response to your letter of June 15, 2006. We are happy to host the meeting at 10:30 a.m. on June 20. Please let me know who will be attending so that you will not be delayed at security.

The answer to your inquiry regarding QUALCOMM's position is "no". In addition to TI's production to the European Commission, QUALCOMM also seeks – and has agreed to pay reasonable collection and copying costs for – (1) the documents called for by Requests Nos. 6, 7, 10, 16, 17, and 25 wherever they are found; and (2) the documents called for by Request Nos. 24 and 29 found in the files of Gail Chandler, including all documents related to "Project 17" or "Project Stockholm". As for other documents called for by QUALCOMM's requests, it is our hope and expectation that many of them will be found in TI's production to the European Commission. We would therefore be willing to postpone further discussion of additional searches by TI until after we have reviewed that production.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
   Quinn Emanuel Urquhart Oliver & Hedges, LLP
      51 Madison Avenue, 22nd Floor
         New York, NY 10010

BY EMAIL

# EXHIBIT 15

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212 849-7000 FAX 212 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
sneuwirth@quinnemanuel.com

June 21, 2006

Fabian D. Gonell, Esq.
Cravath Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Re:    Broadcom Corp. v. Qualcomm, Inc.

Dear Fabian:

      This is to confirm what we discussed during yesterday's meeting at your offices. You stated that Qualcomm is willing to agree that TI need not produce anything more than the following in response to the requests identified below:

- Request 6 - Any license agreement covering a patent as to which TI made a FRAND commitment to a mobile telephony standard-setting body.

- Request 7 - Any license agreement that gives TI a license to a patent as to which the licensor gave a FRAND commitment to a mobile telephony standard-setting body.

- Request 10 - All agreements between TI and Nokia related to "baseband modem chips." You will send us a letter proposing a definition for "baseband modem chips."

- Request 25 - All agreements prior to July 1, 2005 to which TI and Broadcom are both parties and that relate to any

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-1300 FAX 858-812-1400

1

dispute, litigation, or government investigation: (i) involving Qualcomm and any allegation that Qualcomm is violating the antitrust or competition law of any jurisdiction; (ii) involving Qualcomm and in which TI has provided information to a party or government entity; (iii) involving Qualcomm and Broadcom; or (iv) upon which TI is basing an assertion of joint defense or common interest privilege.

- Requests 24 and 29 - Only documents that are found in the files of Gail Chandler and that fit the descriptions in your May 4, 2006 letter.

- Request 16 - The documents described in your May 4, 2006 letter.

- Request 17 - The documents described in your May 4, 2006 letter.

As discussed during the meeting, and as you agreed, we are going to confer with our client and get back to you as to whether the foregoing approach is acceptable. As also discussed, we believe that any agreement by TI to produce documents responsive to Requests 24 and 29, as described above, should be contingent upon an agreement by Qualcomm that any non-privileged documents responsive to those requests will be reviewed only by attorneys at Cravath, Swaine & Moore LLP and not disclosed to any other persons. You stated that you would confer with your client to determine if this approach on confidentiality would be acceptable.

We reiterated TI's offer to search the files of all 85 TI custodian-employees that we believe may have information responsive to Qualcomm's requests. You advised us, however, that Qualcomm does not want us to search the files of all 85 TI custodians and that Qualcomm will not pay for a search of all 85 custodians. Rather, you asked that TI conduct a more limited "reasonable search" for the documents identified above by targeting, if possible, a narrower set of custodians, and you agreed that Qualcomm will pay the costs and fees TI incurs in connection with such reasonable searches.

We will be back in touch with you once we have consulted, as agreed, with TI as to the acceptability of the foregoing.

Sincerely,

Stephen R. Neuwirth

2

# EXHIBIT 16

**quinn emanuel** trial lawyers | new york
51 Madison Avenue, 22nd Floor, New York, New York 10010 | tel 212-849-7000 fax 212-849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
sneuwirth@quinnemanuel.com

July 5, 2006

**Via Electronic Mail and First Class Mail**
Fabian D. Gonell, Esq.
Cravath Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Re:     Broadcom Corp. v. Qualcomm, Inc.

Dear Fabian:

I write to follow up on our meeting of June 20, 2006, as well as my letter of June 21, 2006. I note that we have no record of any response by you to my June 21 letter.

I have confirmed that Texas Instruments ("TI") will produce, as requested by you, a copy of the documents, from TI's files, that TI produced earlier this year to the European Commission. Please confirm your agreement that TI may place new Bates numbers on these documents for purposes of its response to Qualcomm's subpoena.

With respect to Request No. 6, we have confirmed that TI does not have any licenses pertaining only to patents for which TI made a FRAND commitment to a mobile telephony standards setting organization. Rather, TI only has broad cross-licenses, which we believe are not probative of the issues you identified at our June 20 meeting. We also believe it would be inappropriate for Qualcomm to seek access to TI's cross-license agreements under the present circumstances. We therefore propose that Qualcomm withdraw Request No. 6. Please let us know if you would like to discuss this further.

**quinn emanuel urquhart oliver & hedges, llp**

los angeles | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | tel 213-443-3000 fax 213-443-3100
san francisco | 50 California Street, 22nd Floor, San Francisco, California 94111 | tel 415-875-6600 fax 415-875-6700
silicon valley | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | tel 650-801-5000 fax 650-801-5100
san diego | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | tel 858-812-3100 fax 858-812-3199

With respect to Request No. 7, TI is in the process of determining whether it has any responsive agreements. We will advise you of the results of this effort as soon as practicable.

We are also continuing our efforts to identify documents responsive to the other requests discussed at our June 20 meeting. I note, in this regard, that you have not yet provided us with a definition of "baseband chip," which you offered to provide us in connection with Request No. 10. We also are still awaiting your confirmation that only Cravath, Swaine & Moore will review and have access to any documents produced in response to Requests No 24 and No. 29.

Very truly yours,

Stephen R. Neuwirth

SRN/acb

# EXHIBIT 17

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
(212) 474-1956

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY

GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST

KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE

GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

———

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

———

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

July 9, 2006

Broadcom Corporation v. QUALCOMM Incorporated

Dear Stephen:

   I write in response to your letter of July 5. I am surprised that your former colleagues did not tell you that I have been at trial for the past two weeks.

   We have no objection to TI placing new production numbers on its production to the European Commission, at its own expense, and provided that there are no other changes or differences in the information provided to the Commission and the information produced in this case.

   A "baseband modem" chip is a chip that converts the cellular (radio) signal to purely digital form for internal processing within the cell phone.

   We will not agree to restrict access to TI's production to attorneys at Cravath, Swaine & Moore LLP. We see no reason why attorneys at Bingham McCutcheon LLP should not have access and you have not provided any such reason. Please let me know by the end of the week whether TI will withhold its production on this basis so that we can prepare an appropriate motion.

   We will not withdraw Request No. 6. You do not deny that the so-called "broad cross-licenses" are responsive. They are therefore relevant. Please let me know by the end of the week if TI will reconsider its position so that we can prepare an appropriate motion.

   I believe that there are no other open issues raised by your June 21, 2006 letter. If I am mistaken, please let me know. There is, however, one clarification: We stated that QUALCOMM would pay the reasonable costs and fees for the documents discussed on June 20. QUALCOMM will not pay for work TI undertakes for its own purposes, such as its intended restamping of its EC production. In that regard, we

2

reiterate that we are willing to accept electronic files in native format to avoid unnecessary processing fees.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
   Quinn Emanuel Urquhart Oliver & Hedges, LLP
      51 Madison Avenue, 22nd Floor
         New York, NY 10010

BY EMAIL

# EXHIBIT 18

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
stephenewirth@quinnemanuel.com

July 18, 2006

VIA ELECTRONIC MAIL AND FACSIMILE
Fabian D. Gonell
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York  10019

Re:    Broadcom Corporation v. Qualcomm Incorporated

Dear Fabian:

I write in response to your letter of July 9.  Your letter had requested a response by the end of this past week, but you agreed by phone last Friday to accept a response today.

With respect to access, we are comfortable if a limited number of attorneys at your firm, as well as at Bingham McCutcheon, have access to TI's production -- subject to the agreement that (a) documents produced by TI will only be used for purposes of this litigation, and (b) neither documents produced by TI nor their content will be shared with any lawyers representing Qualcomm in other pending proceedings.  We expect that TI's production, with limited exception, will be designated for outside attorneys' eyes only.

With respect to Request Number 6, seeking TI's license agreements, we trust you understand the sensitivity of these documents, which embody highly valuable trade secrets -- not only of TI, but of TI's licensees.  Qualcomm itself is one of many companies that imposes strict confidentiality restrictions in its licensing agreements.

You have indicated that Qualcomm seeks these agreements purportedly to understand how TI interprets FRAND, and to learn TI's licensing practices with respect to any patents for which TI has made a FRAND commitment to a mobile telephony standards setting body.  As explained in my previous correspondence, however, TI does not have any license agreements specific to such

quinn emanuel urquhart oliver & hedges, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-601-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-5107 FAX 858-812-3336

patents for which TI has made a FRAND commitment. Rather, any such patents are covered within the scope of broad cross-license agreements covering TI's patent portfolio or portions thereof. These broad agreements, thus, are not probative of the issues that you have stated are the basis for your request.

In an effort to avoid unnecessary motion practice, however, TI has attempted to develop some reasonable alternatives for responding to Request No. 6. These include, among other things, the possibility of TI providing samples of its cross license agreements (with licensee names redacted), and the option of additional protective restrictions, such as limitations on copying any agreements that TI produces. We would like to review these alternatives with you, to see if the parties can work in good faith to reach a mutually acceptable accommodation. To that end, I would propose that we promptly meet and confer in person. I have a busy schedule tomorrow, but would be available Thursday any time after 2:00 pm. Please let me know if you are available at that time.

Very truly yours,

Stephen R. Neuwirth

SRN:ab

2

# EXHIBIT 19

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
(212) 474-1956

July 19, 2006

Broadcom Corporation v. QUALCOMM Incorporated

Dear Stephen:

Thank you for your letter of yesterday's date.

We do not agree that licenses to patents covered by a FRAND commitment contained in "broad cross-licenses" are irrelevant to the issue of the meaning of FRAND. Patents in this industry are commonly licensed on a portfolio basis with such portfolios including both FRAND-covered patents and patents as to which no such commitment has been made. Indeed, the QUALCOMM license agreements about which Broadcom, TI, and their allies purport to complain include licenses to QUALCOMM's patents regardless of whether a FRAND commitment has been made as to those patents.

Nonetheless, we are willing, as always, to meet and confer on this issue as well as the other issues between QUALCOMM and TI. We are available at 3:00 p.m. tomorrow.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
   Quinn Emanuel Urquhart Oliver & Hedges, LLP
     51 Madison Avenue, 22nd Floor
      New York, NY 10010

BY EMAIL

# EXHIBIT 20

EFiled: Jul 19 2004 10:08A███EST
Filing ID 3903547

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

WILLIAM B. CHANDLER III
CHANCELLOR

P.O. BOX 581
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5424
FACSIMILE (302) 856-5251

Date Submitted: June 30, 2004
Date Decided: July 14, 2004

Thomas C. Grimm
Jon E. Abramczyk
Rodger D. Smith II
Susan D. Wood
James W. Parrett, Jr.
Morris, Nichols, Arsht & Tunnell
P.O. Box 1327
Wilmington, DE 19899-1347

Jesse A. Finkelstein
Jeffrey L. Moyer
Richards Layton & Finger
P.O. Box 551
Wilmington, DE 19899

Re:    *Texas Instruments Inc. v. Qualcomm Inc.*
Civil Action No. 20569

Dear Counsel:

This letter summarizes the reasons for my June 30, 2004 bench ruling. Pending before me on that date were the following motions: (1) Qualcomm moved for summary judgment as to whether Texas Instruments breached the confidentiality provision of the patent portfolio agreement ("PPA") between the parties; (2) TI and Qualcomm both moved for summary judgment as to whether the breach of the PPA's confidentiality provision was "material"; (3) Qualcomm moved for summary judgment as to whether it breached the most favored nations ("MFN") provision of the PPA; (4) TI moved for summary judgment as to the causation of Qualcomm's damages; (5) TI moved for summary judgment as to its unclean hands defense; and (6) TI moved to compel the production of several of Qualcomm's license agreements with third parties.

**Confidentiality Provision.** Qualcomm's motion for summary judgment that TI breached the confidentiality provision in Article 9.12 of the PPA is granted. Article 9.12 requires that both Qualcomm and TI (and their respective subsidiaries) keep the terms of the PPA confidential unless one of the seven

enumerated exceptions applies.

## REDACTED

.    This disclosure was a violation of Article 9.12.    For this reason, Qualcomm's motion for summary judgment that TI breached Article 9.12 is granted.

**Material Breach.**  Although TI breached the confidentiality provision in Article 9.12, TI's breach was not a "material" breach as a matter of New York law.[1]  For that reason, TI's motion for summary judgment as to no material breach is granted.  Under New York law, "for a breach of a contract to be material, it must go to the root of the agreement between the parties"[2] or "defeat[] the object of the parties in making the contract and deprive the injured party of the benefit that it justifiably expected."[3]    Initially, I denied TI's motion to dismiss Qualcomm's claims based on TI's breach of the confidentiality provision because the case was still "in its infancy and the true extent of TI's breach, if any, of the confidentiality provision and the corresponding impact on the Agreement [were] unknown."[4]  I granted Qualcomm the opportunity to muster evidence to support its claim that TI's breach was material.  Qualcomm has failed in this effort.  Although TI breached the confidentiality provision in the PPA, the breach was not material as a matter of law.

The PPA was the mechanism by which the parties intended to share their respective patent portfolios **REDACTED** without fear of litigation, **REDACTED**

---

[1]  The parties agree that the PPA is governed by New York law.
[2]  *Frank Felix Assoc., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (citations and internal quotations omitted); *see also Certain Underwriters at Lloyd's of London v. McDermott Int'l, Inc.*, 2002 WL 22023, at *4 (E.D. La. 2002) ("breach must go to the root of the agreement.") (interpreting New York law) (citations and internal quotations omitted); *Zim Israel Navigation Co., Ltd. v. Indonesian Exports Dev. Corp.*, 1993 WL 88223, at *2 (S.D.N.Y. 1993) ("Whether a breach is . . . material is an alternate formulation of the question of whether a breach 'goes to the essence' of the contract.").
[3]  *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp.2d 416, 421 (S.D.N.Y. 1999) (citations and internal quotations omitted).
[4]  *Texas Instruments, Inc. v. Qualcomm, Inc.*, 2004 Del. Ch. LEXIS 25, at *14-15 (Del. Ch. Mar. 15. 2004).

2

**REDACTED**              .[5]    In
other words, the PPA was an agreement to          **REDACTED**
respective intellectual property rights          **REDACTED**          . The
PPA is not a confidentiality agreement. Nor was confidentiality identified by the
parties as a critical term or goal of the PPA. The "root of the agreement" or the
"essence of the contract" was patent peace between Qualcomm and TI. The
agreement itself makes this abundantly clear.

Qualcomm's senior vice president and general counsel conceded that TI's
breach of Article 9.12 did not frustrate the parties' patent peace: "I don't believe
the breach by TI vitiates or undercuts or alters TI's covenants not to assert its
patents against Qualcomm."[6] He also conceded that "I don't think that there is
anything about what TI has done that would
**REDACTED**
."[7]  I have no doubt that Qualcomm believes the PPA's confidentiality
provision was important, but as "[i]mportant as the preservation of confidentiality
might have been . . . , there is no doubt that it was ancillary to the principal
objective"[8] of the PPA, namely, patent peace. TI's motion for summary judgment
on the materiality of the breach is granted.

**REDACTED.**  Qualcomm's motion for summary judgment that it did not
violate the **REDACTED** provision in Article 8 of the PPA is granted.

**REDACTED**
. . ."[9]  TI contends that Qualcomm is          **REDACTED**

---

[5] Compl. Ex. A, Patent Portfolio Agreement at 4 (hereinafter "Agreement")

**REDACTED**

[6] Dep. Louis Lupin, 229:24-230:8.
[7] *Id.* at 230:12-20.
[8] *In re Ivan Boesky Sec. Litig.*, 825 F. Supp. 623, 636 (S.D.N.Y. 1993), *aff'd*, 36 F.3d 255 (2d Cir. 1994).
[9] Agreement, Article 8.1(a) & (b).

3

REDACTED

."[10]  TI's argument misses the mark for four reasons.

First, Qualcomm's own integrated circuits business does not fall within the definition of "Company," as that term is used in the PPA.[11]  It is clear from the terms of the PPA that Qualcomm's own integrated circuits business is not a Company.  By way of contrast, a third party or "Spinco" (a defined entity created to address the *planned* spin off of Qualcomm's own integrated circuits business) fall within the definition of Company.  Qualcomm's integrated circuits business, however, is not a third party and is not Spinco.  Qualcomm never in fact spun off its integrated circuits business.  Had the spin-off occurred, the circumstances might be different.  But this Court will not rewrite the terms of the PPA to reflect a hypothetical transaction when the terms of the PPA are clear and unambiguous.

Second, this Court must consider the PPA based on the state of facts that existed at the time of breach, not on the basis of hypothetical facts.  The undisputed record does not support TI's contention that Qualcomm is the successor or acquirer of Spinco after it was dissolved.

REDACTED

.  Spinco's inclusion in the definition of "Company" recognized the possibility that Qualcomm *might* spin-off its integrated circuits business to a separate and distinct publicly traded entity.  TI knew all along that the spin-off was a possibility, but by no means an absolute certainty.[12]  Had TI desired, it could have negotiated for the inclusion of language that would protect it from the

---

[10] Amend. Compl. ¶ 11.

[11] Agreement, Article 8.1 (c) ("For purposes of Article 8, "Company" shall mean any third party (except a SUBSIDIARY of QUALCOMM), including SPINCO or its successors or acquirer . . . .").

[12] Holland Dep. at 42-44.  In response to the question of whether TI and Qualcomm discussed whether the spin off was an absolute certainty, Mr. Holland, TI's lead negotiator stated, "I remember Mr. Telecky pointing out to Qualcomm that there were no – you know, no guarantees in, in life, so to speak, that the economic conditions . . .could change, and Qualcomm may decide . . . it wasn't economically advantaged to spin off SpinCo." *Id.*  Likewise in response to the question of whether "there was no certainty or guarantee that they [Qualcomm] would ever in fact spin off [the] business," Mr. Holland stated, "That's correct." *Id.* at 110-11; *see also* Compl. ¶ 5 ("At the time of the negotiation of the Agreement, however, Qualcomm had announced its *intent* to spin off its semiconductor business into a separate company, Spinco.  The *possibility* of this spin-off added a layer of complexity to the negotiation of the Agreement.") (emphasis added).

4

situation of which it now complains. The PPA, however, was not written in that manner and this Court should not rewrite the PPA to protect TI from a course of events that TI knew was a distinct possibility. Sophisticated parties should not expect courts to rewrite their agreements.

Third, the PPA is clear and "unambiguous on its face and the product of long negotiation between sophisticated parties . . . ."[13] The plain language of the PPA does not support TI's argument that **REDACTED** . By failing to include Qualcomm's own integrated circuits business in the definition of Company, the PPA envisions a situation where Qualcomm could, before the *intended* (but by no means guaranteed) spin-off of its integrated circuits business, **REDACTED** . Thus, the PPA's terms make it clear that Qualcomm intended to protect its competitive position, at least until (if ever) a spin-off occurred.

Finally, Article 8.3(b) (the **REDACTED** provision) prohibits TI from contending that

**REDACTED**

. For these reasons, Qualcomm's motion for summary judgment that it did not violate Article 8.1 of the PPA is granted.

**Causation.** TI's motion for summary judgment for failure of causation of damages is denied. The facts surrounding the issue of causation of damages are in dispute. It is not entirely clear why negotiations broke down between Qualcomm and certain potential licensees following TI's breach of the confidentiality provision of the PPA. TI contends that there were major unresolved issues with Qualcomm's putative licensees, including disputes over **REDACTED** . Ultimately, the salient facts regarding the breakdown in negotiations are in dispute, making this issue unsuitable for summary judgment.

**Unclean Hands.** TI's motion for summary judgment based on the defense of unclean hands is denied. TI contends that Qualcomm itself violated the PPA's confidentiality provisions by discussing **REDACTED** numerous

---

[13] *Interactivecorp (f/k/a USA Interactive) v. Vivendi Universal, S.A.*, Del. Ch., C.A. No 20260, at 49, Lamb, V.C. (June 30, 2004).

5

times, including statements to the media and statements in Qualcomm's 10-Ks. The precise nature of these disclosures, and who made them, are warmly contested issues of fact. Accordingly, it is premature to rule on the unclean hands defense.

**Motion to Compel.**  TI's motion to compel the production of certain license agreements between Qualcomm and ASIC manufacturers is granted. The highly redacted license agreements produced thus far, to the extent they are ASIC license agreements, are of little or no use to TI. The ASIC license agreements, however, are relevant to the determination of damages that Qualcomm might be entitled to receive as a result of TI's breach of the confidentiality provision. Without the ASIC license agreements, it would be difficult, if not impossible, to compare Qualcomm's present situation with what it would have been absent breach of the confidentiality provision.[14]  Counsel should agree on a method to exchange the ASIC license agreements in a manner in which TI can discern the royalty terms between Qualcomm and other ASIC manufacturers.

**Conclusion.**  For the reasons briefly described above, I conclude that although TI breached the PPA's confidentiality provision, it does not rise to the level of a material breach. As a result, TI's motion for summary judgment as to no material breach of the confidentiality provision is granted.  Qualcomm's cross motion for summary judgment that the breach of the confidentiality provision was material is denied.  Qualcomm's motion for summary judgment that it did not violate Article 8.1 of the PPA is granted.  TI's motions for summary judgment based on unclean hands and causation of damages are denied.  And TI's motion to compel the production of Qualcomm's ASIC license agreements is granted.

A three-day trial is scheduled to commence in Georgetown, Delaware on Monday, August 16, 2004. As a result of my decisions on the various motions, trial will be limited to the issues of causation and damages arising from TI's breach of the confidentiality provision. Please advise me if the limited remaining issues will require all three days that have been set aside.

IT IS SO ORDERED.

Very truly yours,

*/s/ William B. Chandler III*

William B. Chandler III

---

[14]  Qualcomm is not required to produce its license agreements with handset manufacturers.

6

Liza M. Walsh
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
335 Madison Avenue
New York, NY 10017
(212) 702-8100

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED.,<br><br>Defendant. | Civil Action No. 05-03350 (MLC)<br><br>**DECLARATION OF**<br>**RICHARD ANDREWS** |

I, Richard Andrews, being of full age, do hereby certify as follows:

1.    I am Senior Counsel, Litigation of Texas Instruments Incorporated ("TI"). As such, I have personal knowledge of the facts set forth herein. I make this Declaration in support of TI's Motion to Quash the subpoena of Qualcomm Incorporated ("Qualcomm").

2.    The information Qualcomm seeks contains proprietary, commercial, trade secret, and other confidential information, including but not limited to the identities of TI's licensees, the royalty rates, and terms of the licenses for each licensee.

3.    This sensitive information goes to the heart of TI's business and is considered to be extremely valuable property of the company.

4. Additionally, the licenses Qualcomm seeks contain confidential information belonging to TI's licensees, who are not parties to this suit.

5. The license agreements Qualcomm seeks contain no terms specific to any licenses for which TI has made a FRAND commitment.

6. TI would suffer substantial and specific harm, including but not limited to, potential financial damage through the divulgence of proprietary information, the damage to business relationships, and/or other irreparable harm should any of the information be disclosed.

The foregoing statements made by me are true. I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: July 20, 2006

_____
Richard Andrews

Liza M. Walsh
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
335 Madison Avenue
New York, NY 10017
(212) 702-8100

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BROADCOM CORPORATION, | |
| Plaintiff, | Civil Action No. 05-03350 (MLC) |
| v. | **ORDER** |
| QUALCOMM INCORPORATED., | |
| Defendant. | |

**THIS MATTER** having been brought to the Court by Non-Party Texas Instruments Incorporated's ("TI's") motion to quash, having considered the responses of Plaintiff Broadcom Corporation and Defendant Qualcomm Incorporated ("Qualcomm") and oral argument of counsel for all parties, and good cause appearing,

**IT IS ON THIS** _____ day of August, 2006

**ORDERED** that pursuant to Fed.R.Civ.P. 45(c)(3)(A), the subpoena issued by Qualcomm on TI is hereby quashed as to Qualcomm's request that TI comply with document request number 6.

_____
Honorable John J. Hughes, U.S.M.J.

1738711-01

Liza M. Walsh
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
335 Madison Avenue
New York, NY 10017
(212) 702-8100

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>         Plaintiff,<br><br>   v.<br><br>QUALCOMM INCORPORATED.,<br><br>         Defendant. | Civil Action No. 05-03350 (MLC)<br><br>**CERTIFICATION OF SERVICE** |

     I certify that I caused copies of the following papers submitted in support of Texas Instruments Incorporated's ("TI's") Motion to Quash a portion of a subpoena issued by defendant, Qualcomm Incorporated  on TI to be electronically filed today in accordance with L.Civ.R. 5.2:

    1.  Notice of Motion;

    2.   Memorandum of Law;

    3.  Declaration of Stephen R. Neuwirth;

    4.  Declaration of Richard Andrews; and

    5.  Proposed form of Order.

I also certify that I caused a courtesy copy of the above to be delivered via Federal Express to the Honorable John J. Hughes, U.S.M.J., United States District Court, District of New Jersey, Clarkson S. Fisher Federal Building and U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608 on July 21, 2006.

I also certify that I caused to be served this date via Electronic Filing and Email, and via Federal Express on July 20, 2006, a copy of the above on the following counsel of record:

> David S. Stone, Esq.
> Robert A. Magnanini, Esq.
> Steven John Kaiser
> Boies, Schiller & Flexner, LLP
> 150 John F. Kennedy Parkway
> 4th Floor
> Short Hills, NJ 07078
>
> William J. O'Shaughnessy, Esq.
> McCarter & English LLP
> 4 Gateway Center
> 100 Mulberry Street
> Newark, NJ 07101
>
> Evan R. Chesler, Esq.
> Cravath, Swaine & Moore, LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Jennifer C. Critchley

Dated: July 20, 2006

1738877-01