Liza M. Walsh
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
335 Madison Avenue
New York, NY 10017
(212) 702-8100

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BROADCOM CORPORATION, | |
| Plaintiff, | Civil Action No. 05-03350 (MLC) |
| v. | **AMENDED NOTICE OF MOTION** |
| QUALCOMM INCORPORATED., | |
| Defendant. | |

TO:    David S. Stone, Esq.
        Boies, Schiller & Flexner, LLP
        150 John F. Kennedy Parkway
        4th Floor
        Short Hills, NJ 07078

        William J. O'Shaughnessy, Esq.
        McCarter & English LLP
        4 Gateway Center
        100 Mulberry Street
        Newark, NJ 07101

**PLEASE TAKE NOTICE** that, August 21, 2006, at 9:00 a.m. or as soon as the

Court deems appropriate, Non-Party Texas Instruments Incorporated, ("TI") shall move

before Honorable John J. Hughes, U.S.M.J., at the United States District Court for the

District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East

States Street, Trenton, New Jersey, for the entry of an Order pursuant to Fed.R.Civ.P.

45(c)(3)(A) to quash the subpoena issued by defendant Qualcomm Incorporated

("Qualcomm") on TI as to Qualcomm's request that TI comply with document requests

numbers 6, 7, 10, 16 and 17.

     **PLEASE TAKE FURTHER NOTICE** that TI will rely upon the previously

submitted Memorandum of Law, Declaration of Stephen R. Neuwirth, Esq., and

Declaration of Richard Andrews. TI will also rely upon the Letter Brief, Declaration of

David Elsberg, Supplemental Declaration of Richard Andrews and any additional

submissions made hereafter. A proposed Order is also submitted.

     **PLEASE TAKE FURTHER NOTICE** that TI requests oral argument.

                       CONNELL FOLEY LLP

DATED: August 2, 2006         *s/Liza M. Walsh*
                       Liza M. Walsh

                       85 Livingston Avenue
                       Roseland, New Jersey 07068
                       (973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (212) 849-7000
*Attorneys for Non-Party*
*Texas Instruments Incorporated*

# CONNELL FOLEY LLP
## ATTORNEYS AT LAW

JOHN A. PINDAR (1969)
GEORGE W. CONNELL (2005)
ADRIAN M. FOLEY, JR.
GEORGE J. KENNY*
KENNETH F. KUNZMAN
SAMUEL D. LORD
RICHARD D. CATENACCI
RICHARD J. BADOLATO*
PETER D. MANAHAN
JOHN B. MURRAY
MARK L. FLEDER
KEVIN J. COAKLEY
WILLIAM H. GRAHAM†
THOMAS S. COSMA
KATHLEEN S. MURPHY
PATRICK J. MCAULEY
PETER J. PIZZI*†
KEVIN R. GARDNER
ROBERT E. RYAN
MICHAEL X. MCBRIDE*
JEFFREY W. MORYAN
JOHN K. BENNETT
PETER J. SMITH*
BRIAN G. STELLER
PHILIP F. MCGOVERN, JR.
KAREN PAINTER RANDALL
LIZA M. WALSH
JOHN P. LACEY
TIMOTHY E. CORRISTON*
ERNEST W. SCHOELLKOPFF†

PATRICK J. HUGHES*†*
JAMES C. MCCANN
JOHN D. CROMIE
ANGELA A. IUSO*
GLENN T. DYER
CLARENCE SMITH, JR.—
WILLIAM T. MCGLOIN*
BRENDAN JUDGE
DAREN S. MCNALLY*
STEPHEN V. FALANGA*
JEFFREY L. O'HARA
TRICIA O'REILLY*
ANTHONY F. VITIELLO*
MARC D. HAEFNER
JONATHAN P. MCHENRY
JAMES P. RHATICAN*†
MATTHEW W. BAUER*
JOSEPH C. DEBLASIO

COUNSEL
JOHN W. BISSELL
JOHN B. LA VECCHIA
VIRGINIA M. EDWARDS*
FRANCIS E. SCHILLER*
EUGENE P. SQUEO*
BERNARD M. HARTNETT, JR.*
NOEL D. HUMPHREYS*
ANTHONY ROMANO II*
CHARLES J. HARRINGTON III†
STEVE BARNETT
KARIN I. SPALDING*
JODI ANNE HUDSON*

RICHARD A. JAGEN
W. NEVINS MCCANN*
MITCHELL W. TARASCHI
BRAD D. SHALIT*
THOMAS J. O'LEARY*
DAVID J. MAIRO*
AGNES ANTONIAN*
BRYAN P. COUCH*
GREGORY E. PETERSON
MICHELE T. TANTALLA*
PHILIP N. FLUHR
THOMAS J. PASUIT*
PATRICK S. BRANNIGAN*
MATTHEW I. GENNARD
M. TREVOR LYONS*
MICHAEL A. SHADIACK
OWEN C. MCCARTHY
PATRICIA A. LEE†
NEIL V. MODY*
JENNIFER C. CRITCHLEY*
MELISSA A. DIDATO*
MATTHEW S. SCHULTZ*
CRAIG A. ROSEN
RYAN A. MCGONIGLE*
DANIA M. BILLINGS*
ANTONIO CELII*

ALEXIS E. LAZZARA
TED P. CASTELL*
RONAK R. CHOKSHI†
CHRISTINE I. GANNON*
DOUGLAS J. SHORT*
MICHAEL A. BASELUOS
CATHERINE G. BRYAN†
AYANNA A. CAGE
MICHAEL P. DAVIS
JAMES C. HAYNIE
LAURIE B. KACHONICK
MAIDA PEREZ
WILLIAM D. DEVEAU*
THOMAS A. TELESCA*
VINCENT A. ANTONIELLO
LAUREN E. SWEENEY*
ELIZABETH W. EATON
JOSEPH M. MURPHY
JASON E. MARX*
SARAH B. BLUMBERG†
CHRISTOPHER ABATEMARCO*
MEGHAN C. GOODWIN*
DANIELA R. D'AMICO*
CRAIG S. DEMARESKI*
MELISSA ASTUDILLO*
ANDREW J. MCNALLY*
AMY TODD*
ADAM M. LUSTBERG*

*ALSO ADMITTED IN NEW YORK
†ALSO ADMITTED IN PENNSYLVANIA
—ONLY ADMITTED IN NEW YORK

WRITER'S DIRECT DIAL

85 LIVINGSTON AVENUE
ROSELAND, N.J. 07068-3702
(973) 535-0500
FAX: (973) 535-9217

JERSEY CITY OFFICE
HARBORSIDE FINANCIAL CENTER
2510 PLAZA FIVE
JERSEY CITY, N.J. 07311-4029
(201) 521-1000
FAX: (201) 521-0100

NEW YORK OFFICE
888 SEVENTH AVENUE
NEW YORK, N.Y. 10106
(212) 262-2390
FAX: (212) 262-3118

PHILADELPHIA OFFICE
1500 MARKET STREET
PHILADELPHIA, PA 19102
(215) 246-3403
FAX: (215) 665-5727

PLEASE REPLY TO ROSELAND, N.J.

August 2, 2006

**VIA ELECTRONIC FILING AND HAND DELIVERY**

Hon. John J. Hughes, U.S.M.J.
United States District Court
Clarkson S. Fischer Federal Bldg. &
Courthouse
402 East State Street
Trenton, NJ 08608

Re:     Broadcom Corporation v. Qualcomm Incorporated
        Civil Action No. 05-3350 (MLC)

Dear Judge Hughes:

    Non-party Texas Instruments, Inc. ("TI") respectfully submits this letter in support of its amended motion to quash in part Qualcomm Incorporated's ("Qualcomm's") third-party subpoena in the above-referenced action. TI filed its original motion to quash, and the accompanying declarations of Stephen R. Neuwirth and Richard Andrews, on July 20, 2006.

Qualcomm served its far-reaching subpoena to TI, containing 34 broad document requests, on March 7, 2006. *See* Declaration of Stephen R. Neuwirth, dated July 20, 2006 ("Neuwirth Decl."), Ex. 1. Since that time, counsel for Qualcomm and counsel for TI have engaged in extensive negotiations concerning TI's objections to the subpoena and the scope of the requests. In tandem with those negotiations, TI in good faith has made substantial headway in its production to Qualcomm, thus far producing 15,657 pages of materials that TI earlier produced to the U.S. Department of Justice in connection with the Department's investigation of Qualcomm's acquisition of Flarion. TI has also agreed to produce to Qualcomm the approximately 5,000 additional pages of documents from TI's files that TI produced earlier this year to the European Commission, as well as other documents requested from the files of a particular TI employee.

Despite that progress, however, the parties have reached an impasse over several of Qualcomm's requests, thus necessitating TI's original motion to quash filed on July 20, 2006, as well as TI's amended motion to quash of today.

## I.    TI's Original Motion to Quash Qualcomm's Subpoena As to Document Request 6

TI's original motion to quash, filed on July 20, 2006, focused on document Request 6 in the Qualcomm subpoena, which (as defined by Qualcomm) would require TI to produce all of its broad cross-license agreements with third parties -- agreements that contain highly sensitive trade secrets of no probative value in this litigation, and for which, TI respectfully submits, Qualcomm can show no substantial need. The grounds for TI's original motion to quash are set forth in detail in the memorandum of law, and the declarations, accompanying that motion.

TI limited its original motion to quash to Qualcomm's document Request 6, because at the time TI was still in the process of negotiating with Qualcomm about the scope of Qualcomm's other document requests, and TI believed that it could negotiate in good faith reasonable limitations on the scope of those other requests. *See* Accompanying Declaration of David L. Elsberg, dated Aug. 2, 2006 ("Elsberg Decl.") ¶ 3. Unfortunately, it is now clear that TI and Qualcomm have reached an impasse in their negotiations, specifically with respect to Requests 7, 10, 16 and 17 in the Qualcomm subpoena.

## II.    Qualcomm's Has Refused to Negotiate with TI Reasonable Limits to the Scope of Qualcomm's Broad Requests 7, 10, 16 and 17

As set forth in more detail below, TI -- a non party that competes directly with both Qualcomm and plaintiff Broadcom Corporation ("Broadcom") -- has negotiated in good faith with Qualcomm as to the documents requested in Qualcomm's subpoena to TI. However, TI understandably has, through these negotiations, sought to avoid producing highly sensitive trade secret documents for which Qualcomm can show no substantial need, and that are of no probative value to any issue in this litigation -- while TI, at the same time, has sought to narrow certain of Qualcomm's requests to those documents that include relevant, probative information and for which the parties have a substantial need. TI expressly offered to work with Qualcomm to define reasonable limitations on the scope of the requests in question, but Qualcomm refused.

2

Faced with the threat of an imminent motion to compel, TI now amends its original motion to quash to seek additional protection from this Court.

### A.    Request 7

Through Request 7, Qualcomm originally sought "All documents relating to licenses or prospective licenses to any non-Texas Instruments patent essential to any mobile wireless communications standard, including, but not limited to, documents relating to (i) offers to license; (ii) requests that Texas Instruments obtain a license; (iii) proposals to license; (iv) licensing terms; (iv) [*sic*] anyone's licensing practices; (v) anyone's licensing policies; and (vi) all proposed or executed license agreements." Neuwirth Decl. Ex. 1.

Following several meetings and an exchange of letters between counsel for Qualcomm and counsel for TI, Qualcomm at a June 20, 2006 meeting stated that it was seeking through document Request 7 "[a]ny license agreement that gives TI a license to a patent as to which the licensor gave a FRAND commitment to a mobile telephony standard-setting body." *See* Neuwirth Decl. Ex. 15 (Letter from S. Neuwirth to F. Gonell, dated June 21, 2006), at 1. However, at a meeting between counsel for Qualcomm and counsel for TI on July 20, 2006, TI counsel advised Qualcomm counsel that TI's agreements responsive to this request are principally -- and perhaps exclusively -- broad cross licenses covering multiple, even thousands, of patents, most of which were not subject to any FRAND commitment. *See* Elsberg Decl. ¶ 3.

In an effort to reach a compromise, TI proposed by letter dated July 25, 2006 to produce licenses (if any), other than broad-cross licenses, responsive to Request 7. *See* Elsberg Decl. Ex. 1 (Letter from S. Neuwirth to F. Gonell, dated Jul. 25, 2006). By letter dated July 26, 2006, and in a telephone conference on July 27, 2006, however, Qualcomm declined this proposal and reiterated its demand that TI produce all of its cross-licenses. *See* Elsberg Decl. ¶ 4 & Ex. 2 (Letter from F. Gonell to S. Neuwirth, dated Jul. 26, 2006), at 1.

As set forth in TI's original motion to quash Qualcomm's document Request 6, Qualcomm can show no substantial need for such broad cross-licenses, which have no probative value in this litigation. As also set forth in the accompanying Supplemental Declaration of Richard Andrews, dated Aug. 2, 2006 ("Supp. Andrews Decl."), if TI were compelled to produce its broad cross-licenses in response to Request 7, TI "would suffer substantial and specific harm, including but not limited to, potential financial damage, . . . damage to valuable business relationships and, concomitantly, irreparable harm." Supp. Andrews Decl. ¶ 5.

For the foregoing reasons and all of the reasons set forth in TI's original July 20, 2006 motion to quash, TI respectfully now amends that motion to request that the Court also quash Qualcomm's document Request 7, to the extent it would require TI to produce broad cross-licenses with third parties.

### B.    Requests 10 and 17

Through Request 10, Qualcomm originally sought "All documents relating to any agreements between Texas Instruments and Nokia." Neuwirth Decl. Ex. 1. Through Request 17,

Qualcomm originally sought "All documents relating to the prices and terms offered to customers and potential customers of Texas Instruments' wireless communication chips, including documents related to any incentives, rebates or bundling related to any wireless communication chip and all agreements for the sale or purchase of wireless communication chips." *Id.*

At the meeting between counsel for Qualcomm and counsel for TI on June 20, 2006, Qualcomm stated that it was seeking, pursuant to its Request No. 10, all agreements between TI and Nokia related to baseband modem chips for mobile wireless telephones. *See* Neuwirth Decl. Ex. 15 at 1. At that same meeting, and in a previous letter dated May 4, 2006, Qualcomm stated that it was seeking, pursuant to its request No. 17, all of TI's agreements for the sale of baseband modem chips for mobile wireless communications. *Id.* at 2; Neuwirth Decl. Ex. 5 (Letter from F. Gonell to S. Neuwirth, dated May 4, 2006).

TI has been unable to determine any substantial need by the parties, or any probative value in this litigation, of *all* of these agreements as a group, and Qualcomm has refused to identify any such need or probative value. *See* Elsberg Decl. ¶ 6. In an effort to reach a compromise, however, TI reasonably proposed, on July 25, 2006, that Qualcomm identify the type of information it was seeking from TI's chipset agreements, with the goal of having the parties agree to narrow these requests to any chipset agreements actually containing such information. *See* Elsberg Decl. Ex. 1.

In response to this proposal, however, Qualcomm has refused to engage in the negotiations suggested by TI, and also has failed to provide any justification for the breadth of Requests 10 and 17 (as defined by Qualcomm at the June 20 meeting). *See* Elsberg Decl. Ex. 2 at 4. With respect to the purported need for, and probative value of, these documents, Qualcomm counsel has offered only the conclusory assertion that "you know full well the relevance of documents regarding products, substitutes for products, and competition in the alleged relevant markets." Elsberg Decl. Ex. 2 at 3. Qualcomm has not even attempted to identify what information in TI's chipset agreements has any relevance to a defense that Qualcomm plans to assert in this litigation, or more generally to any claim that Broadcom has made in this case. Qualcomm's counsel has simply stated that plaintiff Broadcom had requested similar documents from third parties. *Id.* at 3-4. Significantly, however, Qualcomm's counsel has not disclosed whether any of those third parties objected to those requests. Nor has Qualcomm counsel explained why Broadcom's requests to other third parties should be determinative in assessing the appropriateness of Qualcomm's requests to TI. *See* Elsberg Decl. ¶ 7 & Ex. 3 at 2.

The documents Qualcomm seeks -- TI's agreements for the sale of chipsets to Nokia and other customers of TI -- are among TI's most sensitive trade secrets. This sensitivity is particularly heightened vis á vis Qualcomm and Broadcom, direct competitors of TI in the chipset markets. *See* Supp. Andrews Decl. ¶ 2. Where, as here, disclosure of trade secrets would be harmful, a party is entitled to certain protections from disclosure, and the burden is on the party seeking discovery to demonstrate that the trade secrets are relevant and necessary to the litigation. *See Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 2004 WL 115594, at *2 (D. Del. Jan. 13, 2004); *see also Coca Cola Bottling Co. of Shreveport, Inc. v. Coca Cola Co.*,

107 F.R.D. 288, 292 (D. Del. 1985). Significantly, "the court must consider 'not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order.'" *Id* (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). The determination of the substantial need of the party seeking discovery "is particularly important in the context of enforcing a subpoena when discovery of trade secret or confidential commercial information is sought from non-parties." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006).

Qualcomm has failed to meet its burden with respect to Requests 10 and 17 and, moreover, has refused to negotiate reasonable limitations, proposed by TI, as to the scope of these requests. TI respectfully submits that Requests 10 and 17 should therefore be quashed, at least to the extent that they seek production of each and every of TI's chipset license agreements with Nokia and other third parties.

In addition, Qualcomm has also insisted that, along with the agreements at issue, TI also produce all documents sufficient to identify all TI personnel who negotiated or authorized each agreement responsive to requests 10 and 17. *See* Elsberg Decl. Ex. 2; Neuwirth Decl. Ex. 5. In this regard, the requests place an unreasonable burden on TI to search for and produce additional trade secret documents. TI submits that, to the extent Qualcomm is entitled to the identities of all TI personnel who negotiated or authorized each and every TI chipset agreement, Qualcomm should seek this information, at least in the first instance, by means of a deposition on written question on this specific topic.

## C.    Request 16

In its subpoena, Qualcomm sought by Request 16 "All documents relating to Texas Instruments' marketing and selling, or plans to market and sell, chips for mobile wireless communications applications." *See* Neuwirth Decl. Ex. 1.

By letter dated May 4, 2006, Qualcomm counsel stated that Qualcomm is seeking, pursuant to Request 16, all of TI's high-level marketing and business plans related to baseband modem chips for mobile wireless communications applications, as well as documents sufficient to identify the TI personnel who are responsible for developing and directing the implementation of such plans. *See* Neuwirth Decl. Ex. 5 at 2. Qualcomm counsel reiterated this at the June 20, 2006 meeting between counsel for Qualcomm and counsel for TI. *See* Neuwirth Decl. Ex. 15. These documents are again among TI's most sensitive trade-secret documents, particular vis á vis direct chipset business competitors Qualcomm and Broadcom. It would be very harmful for TI to divulge these secrets to these direct competitors. Supp. Andrews Decl. ¶ 2.

By correspondence dated July 25, 2006, TI counsel advised Qualcomm counsel that TI could not understand or identify Qualcomm's need for *all* of TI's high level business and marketing plans for the mobile telephone chipset business. *See* Elsberg Decl. Ex. 1. In an effort to reach a reasonable solution, however, TI proposed that Qualcomm identify the information sought from these business and marketing plans, with the goal of limiting Request 16 to any documents containing such information. *Id.* In response, however, Qualcomm offered nothing more than it offered for Requests 10 and 17 -- a conclusory assertion that "you know full well the

relevance of documents regarding products, substitutes for products, and competition in the alleged relevant markets." Elsberg Decl. Ex. 2 at 3. As with Requests 10 and 17, Qualcomm similarly pointed to the fact that Broadcom had requested similar information from certain third parties -- again without identifying any objections that might have been made to those requests, and without explaining why Broadcom's requests to other third parties would be determinative of the appropriateness of Qualcomm's requests to TI. *Id.* at 3-4.

As noted in TI's original motion to quash, TI previously agreed to produce to Qualcomm all of the documents from TI's files that TI had produced earlier this year to the European Commission. By letter dated July 28, 2006, TI advised Qualcomm that the production to the European Commission included several high level business and marketing plans. *See* Elsberg Decl. Ex. 3 (Letter from D. Elsberg to F. Gonell, dated Jul. 28, 2006), at 1. On July 27, 2006, Qualcomm agreed to review these documents in the first instance, but Qualcomm also refused to negotiate with TI any further limitations on the scope of Request 16. *See* Elsberg Decl. Ex. 4 (Letter from F. Gonell to D. Elsberg, dated Jul. 27, 2006), at 1.

It is without question that these documents are among TI's most sensitive trade-secret documents, and it would be exceptionally harmful for TI to divulge these secrets to its direct chipset business competitors. *See* Supp. Andrews Decl. ¶¶ 2, 5. TI therefore asks this Court to quash Request 16 to the extent that it would require TI to produce each and every one of its high level business and marketing plans for TI's mobile telephone chipset business. Qualcomm has failed to meet its burden of identifying any need for these documents as a group, *see Medtronic*, 2004 WL 115594, at \*2, and Qualcomm has refused to place any reasonable restrictions on the scope of the request.

### III.    TI Has Proposed Additional Reasonable Confidentiality Restrictions

In connection with its now-rebuffed efforts to negotiate reasonable limitations on Qualcomm's document requests, TI had also proposed to negotiate some additional reasonable confidentiality restrictions beyond those in the protective order already entered by the Court. *See* Elsberg Decl. Ex. 5. Such additional restrictions are necessary because, to date, Qualcomm has refused to place reasonable limitations on the scope of the requests seeking these documents; and these documents contain some of TI's most sensitive and confidential information. As detailed in a letter from TI counsel to Qualcomm counsel dated July 31, 2006 (included as Elsberg Decl. Ex. 5), TI has proposed that to the extent TI is required to produce any cross-license agreements, chipset agreements, or business or marketing plans, that the following restrictions apply:

1.    TI will produce to outside counsel for Qualcomm and to outside counsel for Broadcom two hard copies of the document, which outside counsel for each company shall store in a secure, locked file in the office of the law firm. The document shall be produced on red paper that cannot be readily duplicated.

2.    At the outside firms representing Qualcomm and Broadcom, the only attorneys entitled to review the document will be those that have certified in writing that they play no role, and anticipate playing no role in the future, in the negotiation or preparation of intellectual property licenses or chipset sale agreements related to mobile telephones. Outside counsel for each

company shall maintain a log showing the name of each attorney reviewing the document. That log shall be treated as privileged and confidential, but subject to review by the Court in the event that Texas Instruments challenges an improper disclosure of the document or the information contained therein.

3.     Outside counsel for Qualcomm and Broadcom shall make no additional copies of the document, except if necessary to attach to a Court pleading (which pleading shall be filed under seal).

4.     Outside counsel for Qualcomm and Broadcom will not scan, or otherwise transmit the content of the document, on to any electronic media or electronic storage device, including without limitation email, word processing files, case management files, or Adobe files.

5.     Outside counsel for Qualcomm and Broadcom shall not reference the content of the document in open court, unless granted express, advance permission by the Judge presiding over the hearing.

6.     In the event the document is referenced in a Court hearing by outside counsel for Qualcomm or Broadcom, the Court reporter, in the event one is present, shall be provided with a single copy of the document that shall be maintained in the Court file under seal.

7.     The document may be shown in deposition to current employees of Texas Instruments. Outside counsel for Qualcomm or Broadcom shall not show or describe the document to anyone else without providing Texas Instruments 10 business days advance notice of the intention to do so, in order that Texas Instruments, if it does not so consent, will have an opportunity to seek an appropriate protective order from the Court.

Counsel for Qualcomm have not yet advised counsel for TI whether they consent to these additional proposed restrictions. If Qualcomm does not agree to the additional limitations, TI respectfully requests that the Court impose these reasonable, and often utilized, additional restrictions for non-party documents containing such highly sensitive information. *See* Elsberg Decl. ¶ 12.

*     *     *

IV.     **TI Has Acted Reasonably In Its Response To Qualcomm's Overreaching Subpoena, And The Relief Requested In The Within Motion Is Both Fair and Necessary**

As TI demonstrated in its original motion to quash and as set forth above, TI has taken a reasonable and practical approach to Qualcomm's overreaching subpoena, and TI has sought responsibly to negotiate with Qualcomm reasonable limitations on the scope of the subpoena. Even before filing the original motion to quash, TI had already produced to Qualcomm the 15,657 pages of materials that TI had previously produced to the U.S. Department of Justice in connection with the Department's investigation of Qualcomm's acquisition of Flarion. *See* Elsberg Decl. ¶ 13. TI has also agreed to produce to Qualcomm the approximately 5,000

7

additional pages of documents from TI's files that TI produced earlier this year to the European Commission. *See id.* In addition, TI has agreed, as requested by Qualcomm, to produce from the files of TI employee Gail Chandler all non-privileged documents responsive to Qualcomm's Requests 24 and 29,[1] as well as a log of any responsive, but privileged, documents in Ms. Chandler's files. Further, as discussed above, TI has made the various proposals, rejected by Qualcomm, to negotiate reasonable limitations on additional document requests.

It is in this context that TI, for the reasons set forth above and in TI's original motion to quash, respectfully amends its original motion to quash, which focused on Qualcomm request Number 6, to also request that the Court quash:

(a)    Qualcomm's Request 7, to the extent it calls for TI to produce broad cross-license agreements with third parties;

(b)    Qualcomm's Request 16, to the extent it would require TI to produce each and every of its high level business and marketing plans for TI's mobile telephone chipset business; and

(c)    Qualcomm's Requests 10 and 17, to the extent those requests call for TI to produce each and every of TI's chipset agreements with Nokia and other third parties.

Respectfully submitted,

s/Liza M. Walsh
Liza M. Walsh

85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (212) 849-7000
*Attorneys for Non-Party*
Texas Instruments Incorporated

---

[1]    Request 24 calls for all communications among TI, Broadcom, Ericsson, NEC, Nokia, Panasonic and Sony Ericsson relating to Qualcomm, mobile wireless communications standards or licensing terms, as well as documents reflecting such communications. *See* Neuwirth Decl. Ex. 5 at 2. Request 29 seeks documents concerning any complaint by anyone to any government concerning Qualcomm's licensing practices, chipset pricing or any conduct alleged in Broadcom's First Amended Complaint. *See id.* at 3.

8

Enclosures

cc:     Counsel of Record (via email and regular mail)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BROADCOM CORPORATION,

Plaintiff,

v.

QUALCOMM INCORPORATED,

Defendant.

Civil Action No. 05-3350 (MLC)

**DECLARATION OF
DAVID L. ELSBERG IN
SUPPORT OF THIRD-PARTY
TEXAS INSTRUMENTS'
AMENDED MOTION TO QUASH**

David L. Elsberg declares as follows:

1.     I am member of the law firm Quinn Emanuel Urquhart Oliver & Hedges, LLP,

counsel to third-party Texas Instruments, Inc. ("TI"), which has been subpoenaed by Qualcomm,

Inc. ("Qualcomm") in this action.  I am admitted to practice in the State of New York.

2.     I respectfully submit this declaration in support of TI's amended motion to quash,

in part, Qualcomm's subpoena to TI.  I am personally familiar with the facts set forth herein.

3.     *Request 7.*  Following several meetings and an exchange of letters between

counsel for Qualcomm and counsel for TI, Qualcomm counsel at a June 20, 2006 meeting stated

that Qualcomm was seeking through document Request  7 "[a]ny license agreement that gives TI

a license to a patent as to which the licensor gave a FRAND commitment to a mobile telephony

standard-setting body." *See* Declaration of Stephen R. Neuwirth, dated July 20, 2006 ("Neuwirth

Decl."), Ex. 15 (Letter from S. Neuwirth to F. Gonell, dated June 21, 2006, at 1).  However, at a

meeting between counsel for Qualcomm and counsel for TI on July 20, 2006, TI counsel advised

Qualcomm counsel that TI's agreements responsive to this request are principally -- and perhaps

1

exclusively -- broad cross licenses covering multiple, even thousands, of patents, most of which were not subject to any FRAND commitment.

4.    In an effort to reach a compromise, TI proposed by letter dated July 25, 2006 to produce licenses (if any), other than broad-cross licenses, responsive to Request 7. *See* Letter from S. Neuwirth to F. Gonell, dated Jul. 25, 2006. (A true and correct copy of that letter is attached as Exhibit 1 hereto.) By letter dated July 26, 2006, and in a telephone conference on July 27, 2006, however, Qualcomm counsel declined this proposal and reiterated its demand that TI produce all of its cross-licenses. *See* Letter from F. Gonell to S. Neuwirth, dated Jul. 26, 2006, at 1. (A true and correct copy of that letter is attached as Exhibit 2 hereto.)

5.    *Requests 10 and 17*. At the meeting between counsel for Qualcomm and counsel for TI on June 20, 2006, Qualcomm counsel stated that Qualcomm was seeking, pursuant to its Request No. 10, all agreements between TI and Nokia related to baseband modem chips for mobile wireless telephones. *See* Neuwirth Decl. Ex. 15 at 1. At that same meeting, and in a previous letter dated May 4, 2006, Qualcomm counsel stated that Qualcomm was seeking, pursuant to its request No. 17, all of TI's agreements for the sale of baseband modem chips for mobile wireless communications. *Id.* at 2; Neuwirth Decl. Ex. 5 (Letter from F. Gonell to S. Neuwirth, dated May 4, 2006).

6.    TI has been unable to determine any substantial need by the parties, or any probative value in this litigation, of *all* of these agreements as a group, and Qualcomm has refused to identify any such need or probative value. In an effort to reach a compromise, however, TI proposed, on July 25, 2006, that Qualcomm identify the type of information it was seeking from TI's chipset agreements, with the goal of having the parties agree to narrow these requests to any chipset agreements actually containing such information. *See* Ex. 1.

7.     In response to this proposal, however, Qualcomm has refused to engage in the negotiations suggested by TI, and also has failed to provide any justification for the breadth of Requests 10 and 17 (as defined by Qualcomm at the June 20 meeting). *See* Ex. 2 at 4. With respect to the purported need for, and probative value of, these documents, Qualcomm counsel has offered only the conclusory assertion that "you know full well the relevance of documents regarding products, substitutes for products, and competition in the alleged relevant markets." *Id.* at 3. Qualcomm has not even attempted to identify what information in TI's chipset agreements has any relevance to a defense that Qualcomm plans to assert in this litigation, or more generally to any claim that Broadcom has made in this case. Qualcomm's counsel has simply stated that plaintiff Broadcom had requested similar documents from third parties. *Id.* at 3-4. Qualcomm's counsel has not disclosed whether any of those third parties objected to those requests. Nor has Qualcomm counsel explained why Broadcom's requests to other third parties should be determinative in assessing the appropriateness of Qualcomm's requests to TI.

8.     In addition, Qualcomm has also insisted that, along with the agreements at issue, TI also produce all documents sufficient to identify all TI personnel who negotiated or authorized each agreement responsive to requests 10 and 17. *See* Ex. 2; Neuwirth Decl. Ex. 5.

9.     ***Request 16.*** By letter dated May 4, 2006, Qualcomm counsel stated that Qualcomm is seeking, pursuant to Request 16, all of TI's high-level marketing and business plans related to baseband modem chips for mobile wireless communications applications, as well as documents sufficient to identify the TI personnel who are responsible for developing and directing the implementation of such plans. *See* Neuwirth Decl. Ex. 5 at 2. Qualcomm counsel reiterated this at the June 20, 2006 meeting between counsel for Qualcomm and counsel for TI. *See* Neuwirth Decl. Ex. 15 at 2.

3

10.    By correspondence dated July 25, 2006, TI counsel advised Qualcomm counsel

that TI could not understand or identify Qualcomm's need for *all* of TI's high level business and

marketing plans for the mobile telephone chipset business. *See* Ex. 1. In an effort to reach a

reasonable solution, however, TI proposed that Qualcomm identify the information sought from

these business and marketing plans, with the goal of limiting Request 16 to any documents

containing such information. *Id.* In response, however, Qualcomm offered nothing more than it

offered for Requests 10 and 17 -- a conclusory assertion that "you know full well the relevance

of documents regarding products, substitutes for products, and competition in the alleged

relevant markets." Ex. 2 at 3. As with Requests 10 and 17, Qualcomm similarly pointed to the

fact that Broadcom had requested similar information from certain third parties -- again without

identifying any objections that might have been made to those requests, and without explaining

why Broadcom's requests to other third parties would be determinative of the appropriateness of

Qualcomm's requests to TI. *Id.* at 3-4.

11.    As noted in TI's original motion to quash, TI previously agreed to produce to

Qualcomm all of the documents from TI's files that TI had produced earlier this year to the

European Commission. By letter dated July 28, 2006, TI advised Qualcomm that the production

to the European Commission included several high level business and marketing plans. *See*

Letter from D. Elsberg to F. Gonell, dated Jul. 28, 2006, at 1. (A true and correct copy of that

letter is attached as Exhibit 3 hereto.) On July 27, 2006, Qualcomm agreed to review these

documents in the first instance, but Qualcomm also refused to negotiate with TI any further

limitations on the scope of Request 16. *See* Letter from F. Gonell to D. Elsberg, dated Jul. 27,

2006, at 1. (A true and correct copy of that letter is attached as Exhibit 4 hereto.)

4

12.    ***Confidentiality Restrictions***.  TI had also proposed to negotiate some additional reasonable confidentiality restrictions beyond those in the protective order already entered by the Court, as detailed in a letter from TI counsel to Qualcomm counsel dated July 31, 2006 (a true and correct copy of which is attached as Exhibit 5 hereto).  Counsel for Qualcomm have not yet advised counsel for TI whether they consent to these additional proposed restrictions.

*       *       *

13.    Even before filing the original motion to quash, TI had already produced to Qualcomm the 15,657 pages of materials that TI had previously produced to the U.S. Department of Justice in connection with the Department's investigation of Qualcomm's acquisition of Flarion.  TI has also agreed to produce to Qualcomm the approximately 5,000 additional pages of documents from TI's files that TI produced earlier this year to the European Commission.  In addition, TI has agreed, as requested by Qualcomm, to produce from the files of TI employee Gail Chandler all non-privileged documents responsive to Qualcomm's Requests 24 and 29, as well as a log of any responsive, but privileged, documents in Ms. Chandler's files.  Further, as discussed above, TI has made the various proposals, rejected by Qualcomm, to negotiate reasonable limitations on additional document requests.

14.    It is in this context that TI, for the reasons set forth above and in TI's memorandum of law, respectfully amends its original motion to quash, which focused on Qualcomm request Number 6, also to request that the Court quash:

(a)    Qualcomm's Request 7, to the extent it calls for TI to produce broad cross-license agreements with third parties;

(b)    Qualcomm's Request 16, to the extent it would require TI to produce each and every of its high level business and marketing plans for TI's mobile telephone chipset business; and

(c)     Qualcomm's Requests 10 and 17, to the extent those requests call for TI to produce each and every of TI's chipset agreements with Nokia and other third parties.

I declare the foregoing to be true and correct to the best of my knowledge.

Dated: August 2, 2006

David L. Elsberg

**EXHIBIT**

**1**

-----Original Message-----
From: Stephen Neuwirth
To: 'fgonell@cravath.com' <fgonell@cravath.com>
Sent: Tue Jul 25 19:06:27 2006
Subject: Letter from S. Neuwirth

July 25, 2006

Fabian Gonell, Esq.
Cravath, Swaine & Moore
825 Eighth Avenue
New York, New York  10019

Re:  Broadcom Corp. v. Qualcomm Incorporated

Dear Fabian:

I write in response to your letter of July 21, 2006, asking for us to advise you by today
of TI's position on the Qualcomm document requests, other than Request 6, that have been
the subject of our recent meetings and correspondence.  I cross reference, for these
purposes, my letter of June 21, 2006 (which identifies the requests at issue) and your
letter of July 9, 2006.

With respect to Request Number 7, TI will produce any responsive documents that are not
broad cross-licenses, subject to (a) Qualcomm's agreement to abide by appropriate
confidentiality restrictions beyond those included in the protective order, and (b) TI
first providing, to the other contracting parties, any advance notification required by
those agreements.

With respect to Request Number 25, we understand, as noted in my June 21 letter, that
Qualcomm is seeking agreements to which both TI and Broadcom are parties.  We therefore
believe it would be appropriate for Qualcomm to request any such documents from Broadcom,
a party to this litigation, rather than from TI, a third party.

With respect to Requests 24 and 25, TI will produce any responsive, non-privileged
documents from the files of Gail Chandler (as Qualcomm has requested), along with a log of
any privileged documents.

With respect to Requests 10, 16 and 17, Qualcomm is seeking, as described more fully in
your May 4 letter, TI's high level marketing and business plans for chipsets, and TI's
agreements, with Nokia and others, for the sale of chipsets.  These are, of course, among
the most sensitive trade secret documents for TI to disclose to Qualcomm and Broadcom,
direct competitors of TI in the chipset business.  We also do not understand how these
documents as a group are relevant to this litigation.  Qualcomm certainly is not entitled
to undertake a fishing expedition with these documents.  We therefore request that you
identify the specific types of information that Qualcomm is seeking to discover, with the
goal of using this as a basis to narrow these requests to any of the documents that
include such information.

We are available to discuss the foregoing at your convenience.

Very truly yours,

Stephen R. Neuwirth

1

EXHIBIT

2

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
New York, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1956

July 26, 2006

Broadcom Corporation v. QUALCOMM Incorporated

Dear Stephen:

I write in further response to your letter of June 21, 2006, and in response to your letter of yesterday's date.

In your letter of June 21, 2006, you write, "You stated that Qualcomm is willing to agree that TI need not produce anything more than the following in response to the requests identified below", and then you list various requests discussed at the June 20, 2006 meeting and describe the scope of the requests. Some of your descriptions are inaccurate, as set forth below:

**Requests 6 and 7:** In my letter of May 4, 2006, QUALCOMM narrowed these requests to call for the production of all license agreements for patents essential to any mobile wireless communications standards and documents sufficient to identify the TI personnel who negotiated or authorized and of the terms reflected in each agreement. At the June 20, 2006 meeting, we discussed a clearer definition of responsive license agreements, and agreed to the definition described in your June 21, 2006 letter. However, TI did not raise an objection to, and QUALCOMM certainly did not withdraw, those parts of QUALCOMM's requests that call for the production of documents sufficient to identify the TI personnel who negotiated or authorized any of the terms reflected in each agreement.

**Request 10:** In my letter of May 4, 2006, QUALCOMM narrowed this request to call for the production of all agreements between TI and Nokia related to mobile wireless communications and documents sufficient to identify the TI personnel who negotiated or authorized any of the terms reflected in each agreement. At the June 20, 2006 meeting, we discussed a narrower scope of responsive agreements, and agreed to the scope described in your June 21, 2006 letter. However, TI did not raise an objection to, and QUALCOMM certainly did not withdraw, that part of QUALCOMM's

request that calls for the production of documents sufficient to identify the TI personnel who negotiated or authorized any of the terms reflected in each agreement.

**Request 25:** In my letter of May 4, 2006, QUALCOMM narrowed this request to call for the production of all agreements between Texas Instruments and anyone relating to any dispute, litigation or government investigation (i) involving QUALCOMM and any allegation that QUALCOMM is violating the antitrust or competition law of any jurisdiction; (ii) involving QUALCOMM and in which TI has provided information to a party or government entity; or (iii) involving QUALCOMM and Broadcom. At the June 20, 2006 meeting, we discussed the scope of this request and QUALCOMM agreed to narrow it to call for the production of (a) all agreements between TI and Broadcom as to categories (i)-(iii) above; and (b) agreements between TI and any other party as to categories (i)-(iii) above where TI will rely on such agreements to make a claim of privilege. The description of QUALCOMM's agreement set forth in your June 21, 2006 letter is therefore inaccurate.

**Requests 24 and 29:** Although I am certain it is unintentional, your June 21, 2006 letter can be read to suggest that QUALCOMM agreed at the June 20, 2006 meeting to narrow these requests to call for only those responsive documents found in Ms. Chandler's files. As you know, that is not the case. We have discussed Ms. Chandler in the context of these requests only because QUALCOMM has agreed to pay the costs of a search of her files for documents responsive to these requests, as stated in my letter of June 9, 2005. As we have made clear, QUALCOMM maintains its requests for documents responsive to these requests in the files of other custodians, and, as you have made clear, TI refuses to produce such documents unless QUALCOMM agrees to pay costs for such production. We have put off further discussion of these requests (as well as the other documents called for by QUALCOMM's subpoena) pending our review of the documents produced to the EU and the documents as to which QUALCOMM has already agreed to pay reasonable costs.

Turning to your letter of yesterday's date, we note that QUALCOMM's requests have been pending for a long time. TI was served with QUALCOMM's subpoena more than six months ago. Our first telephone conference was on April 4, 2006 – almost four months ago. QUALCOMM significantly narrowed those requests as to which TI improperly refused to respond on May 4, 2006 – almost three months ago. QUALCOMM agreed to pay for the costs of producing all of the documents we have been discussing on June 9, 2006 – more than six weeks ago. We met to confer about these requests on June 20, 2006 – more than a month ago. At that meeting, you did not raise any objections to the scope of Requests 10, 16 and 17, as narrowed by my letter of May 4, 2006, other than to the scope of agreements responsive to Request 10, as set forth above. Indeed, your letter of June 21, 2006 reflects that the scope of Requests 16 and 17 as discussed on June 20, 2006, is that set forth in my letter of May 4, 2006. We met again on July 20, 2006. At that meeting, when I inquired about Requests 10, 16 and 17, you did not raise any of the issues raised in your letter of yesterday's date. Rather, you stated that in the time since the June 20, 2006 meeting, you had been "focused" on Request 6. With that backdrop, we turn to the issues raised in your letter:

3

**Request 7:** The parties are at an impasse. As I suggested at our meeting last week, the parties' disagreements with respect to Request 6 also apply to Request 7.

**Requests 10, 16 and 17:** The parties are at an impasse as to these requests. Your statement that you "do not understand how these documents as a group are relevant to this litigation", is, frankly, bizarre. You are a distinguished member of the bar with broad experience in antitrust matters. That experience includes, among other work on complex and high-profile cases, work in the DOJ's Microsoft antitrust case, work in the high fructose corn syrup antitrust litigation, the representation of American Express in antitrust litigation against Visa and MasterCard, and the representation of Philip Morris in antitrust litigation against R.J. Reynolds and others. As a renowned and experienced antitrust lawyer, you know full well the relevance of documents regarding products, substitutes for products, and competition in the alleged relevant markets.

Moreover, you are intimately aware of the issues in this case, having represented Broadcom from at least the time this litigation began until you withdrew as counsel of record for Broadcom on April 3, 2006. During the time you were counsel of record for Broadcom, it served a number of subpoenas on third parties seeking the production of far broader categories of documents than those sought by QUALCOMM's Requests 10, 16 and 17. For example, Broadcom's subpoena on VIA Telecom, Inc., includes the following requests:

> "15. All document analyzing, evaluating, discussing or referring to actual or potential competition in the design or sale of CDMA, WCDMA, UMTS or Future Generation chipsets for use in mobile wireless telecommunications devices, including without limitation any documents concerning market shares; the competitive position of Qualcomm or any of its competitors; relative strengths and weaknesses of Qualcomm or other companies; analyses of product, technology or market or standardization plans of Qualcomm or any of its actual or potential competitors; supply and demand conditions (including capacity constraints); numbers of customers; revenues; the demand for CDMA, WCDMA, UMTS or Future Generation chipsets for use in mobile wireless telecommunications devices; attempts to win customers from other companies or increase usage of Qualcomm products; losses of customers to other companies; allegations that anyone is not behaving in a competitive manner; any impact on supply, demand or prices as a result of competition from any other possible substitute service; analysis of actual or potential competition relating to improvements or innovations in features, functions, ease of operation, performance, cost, or other advantages to customers or users; and policies and strategies for responding to entry.

**4**

...

> 18. All documents concerning any plan of your company, whether adopted or not, for the development, marketing or sales of CDMA, WCDMA, UMTS, or Future Generation chipsets or technology, including without limitation business plans, short term and long term strategies and objectives, budgets and financial projections, expansion or retrenchment plans, research and development plans, technology licensing plans, and presentations to management committees, executive committees, and boards of directors."

Similar requests appear in a number of the subpoenas Broadcom served on third parties while you were counsel of record, including, for example, its subpoenas on Flarion Technologies Inc. (Requests 17 and 18), Verizon Wireless (Request 16), Lucent Technologies, Inc. (Request 14), and Freescale Semiconductor, Inc. (Requests 15 and 18). Request 10, 16 and 17, as narrowed, are in essence a subset of the requests quoted above. Inasmuch as you plainly understood while representing Broadcom the relevance of the documents Broadcom requested, we have no doubt that you understand the relevance of the far smaller set of documents called for by Requests 10, 16 and 17. Moreover, even if there were a legitimate question about the relevance of the requested documents -- which there is not – the issue should have been raised after my April 9, 2006 letter described these documents as "unquestionably relevant".

We will not further narrow Requests 10, 16 and 17, nor will we acquiesce to further delays in the production of these documents.

**Requests 24 and 29:** Your letter states that TI will produce "any responsive, non-privileged documents from the files of Gail Chandler", "along with a log of any privileged documents", with respect to Requests 24 and 25. Please confirm that this reference to Request 25 is a typo, and that TI will produce "any responsive, non-privileged documents from the files of Gail Chandler", "along with a log of any privileged documents", with respect to Request 29. In addition, your letter ignored our request for a date by which TI commits to produce documents. We see no reason that the documents and privilege log cannot be produced by August 11, 2006. Please confirm that TI will do so.

**Request 25:** As noted above, your understanding that QUALCOMM is seeking only agreements as to which TI and Broadcom are parties is incorrect. Please state whether TI will produce by August 11, 2006, those responsive agreements relevant to any claim of privilege.

*  *  *

In light of our deadline to oppose your motion and cross-move, we propose to confer by telephone tomorrow, July 27, to discuss TI's reference to

5

"appropriate confidentiality restrictions beyond those included in the protective order"
and TI's responses to the inquiries above regarding Requests 24, 25 and 29. Please let us
know if you are available and, if so, when you would like to have the call.

Very truly yours,

Fabian D. Gonell

Stephen R. Neuwirth, Esq.
    Quinn Emanuel Urquhart Oliver & Hedges, LLP
        51 Madison Avenue, 22nd Floor
            New York, NY 10010

BY EMAIL

# EXHIBIT

# 3

WRITER'S DIRECT DIAL NO.
(212) 349-7250

WRITER'S INTERNET ADDRESS
davidehberg@quinnemanuel.com

July 28, 2006

**VIA ELECTRONIC MAIL**

Fabian D. Gonell
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019

Re:     Broadcom Corporation v. Qualcomm Incorporated

Dear Fabian:

We write to in response to your letter of yesterday, which contains numerous mischaracterizations.

**Request 7:** You rejected our proposal that TI produce all responsive licenses, except for broad cross-licenses. Given your insistence that TI produce broad cross-licenses, we are at an impasse. As explained in our pending motion to quash, we believe the broad cross-licenses have no probative value concerning the meaning and interpretation of "FRAND."

**Request 16:** We advised you that the documents TI produced to the European Commission include high-level business and marketing plans. We proposed that we revisit Request 16 after you have had a chance to review the documents TI produced to the European Commission, and you stated that you will take this proposal "under advisement." Accordingly, we are not at an impasse.

**Requests 10 and 17:** Your letter's description of our discussion concerning Requests 10 and 17 is inaccurate and misleading. When we asked you whether you would be willing to narrow these Requests or identify more specifically the materials Qualcomm seeks, you flatly refused. That is the sum and substance of our conversation with respect to these Requests. Your letter, however,

does not focus on what was discussed. Instead, your letter focuses on what was not discussed --
as if your failure to bring up certain subjects could somehow constitute admissions by TI.
Specifically, your letter asserts that we did not offer any "reason why" the requests are
overbroad; that we did not "articulate any reason why any agreements regarding the sale of
baseband modem chips would be irrelevant"; that we "did not dispute that these documents are
documents regarding products, substitutes for products, and competition in the alleged relevant
markets in this case"; and that we did not "dispute that these requests, as narrowed, are a small
subset of the requests served by Broadcom on third parties while Mr. Neuwirth was counsel of
record for Broadcom." During our call you simply did not raise these issues. The fact that these
issues did not come up obviously cannot be equated with any statements or concessions by TI.
(On the flawed "logic" of your letter, the fact that during our conversation you "did not dispute"
that Qualcomm routinely violates antitrust law would constitute an admission that Qualcomm
routinely does so.)

Had you asked a question during our conversation concerning TI's reasons for believing that
Requests 10 and 17 are overbroad, we would have told you that these requests seek information
comprising some of TI's most sensitive trade secrets *without any limitation whatsoever*. Given
the highly sensitive information contained in TI's chipset agreements with Nokia (Request 10)
and TI's chipset agreements with other customers (Request 17), we believe reasonable limitations
should be placed on Requests 10 and 17 so that TI is not compelled to produce wholesale the
information sought.

With respect to your comments concerning Mr. Neuwirth's prior representation of Broadcom and
Broadcom's third party requests, he has had no active involvement with Broadcom since he
joined the law firm of Quinn Emanuel on January 1, 2006. In any case, whatever requests
Broadcom may have served on other third parties -- and you do not disclose the extent to which
those other third parties may have objected -- has no bearing on the reasonableness or
appropriateness of requests that Qualcomm makes to TI.

Request 25:  As reflected in Mr. Neuwirth's letter of June 21, 2006, TI and Qualcomm agreed at
the June 20 meeting to limit Request No. 25 to agreements to which TI and Broadcom are both
parties, not agreements between TI and any other parties, which is what you are now seeking.
Your letter of July 9, 2006 acknowledged that there were no "open issues" regarding any of the
Requests about which we had conferred. Notwithstanding the convoluted explanation in your
letter of yesterday as to how you now interpret "open issues," your attempt to expand the scope
of what Qualcomm seeks is a clear breach of our previous agreement.

Requests 24 and 29:  The statements in your letter concerning Requests 24 and 29 also confirm
that Qualcomm has determined to breach our prior agreements. You made it clear on June 20, as
reflected in Mr. Neuwirth's letter of June 21, that Requests 24 and 29 would be limited to the
files of Gail Chandler. You stated that Qualcomm did not want TI to search the files of the other
85 custodians TI had identified as potentially having documents that might be responsive to
those Requests. According to your letters of yesterday and July 26, however, Qualcomm now
asks TI to search the files of all 85 custodians -- at TI's own expense. Moreover, contrary to the
mischaracterization in your letter, we stated that we would make best efforts to produce the

2

documents from the files of Gail Chandler by August 11, 2006 and that our best estimate for when we would be able to do so is August 18, 2006.

Protective Order:  With respect to our discussion of the protective order, we did not state that TI has not yet notified other parties with which it has entered contracts that those agreements might need to be produced in this litigation.  Rather, we explained that TI has contractual obligations to do so and might seek to supplement the protective order to reflect that and other concerns.  We will send to you TI's additional proposed restrictions by Monday, July 31, 2006.

Sincerely,

David L. Elsberg

3

# EXHIBIT

# 4

# CRAVATH, SWAINE & MOORE LLP

### WORLDWIDE PLAZA
### 825 EIGHTH AVENUE
### NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

**(212) 474-1956**

July 27, 2006

<u>Broadcom Corporation v. QUALCOMM Incorporated</u>

Dear David:

        I write to memorialize our teleconference of today's date.

        At your request, we first discussed the requests addressed in my July 26, 2006 letter (Requests 7; 16; 10 and 17; 25; and 24 and 29), as follows:

        <u>Request 7:</u>  You reiterated that in theory TI was willing to produce responsive license agreements that were not "cross-licenses", but also stated that in fact you believed that there were no such agreements.  As we stated in my July 26, 2006 letter, we are at an impasse as to this request.

        <u>Request 16:</u>  You stated that some high-level business plans that were produced to the EC will be produced, and asked that we review those before pressing this issue further.  We stated that we would take that request under advisement.

        <u>Requests 10 and 17:</u>  You asked us to explain what we sought.  We explained that we sought agreements regarding the sale of baseband modem chips.  You stated that you understood the meaning of "agreements regarding the sale of baseband modem chips", but that you wanted us to further narrow these requests.  You offered no reason why the requests as already narrowed are overbroad in any way, nor did you articulate any reason regarding the sale of baseband modem chips would be irrelevant.  Moreover, you did not dispute that these documents are documents regarding products, substitutes for products, and competition in the alleged relevant markets in this case, as stated in my July 26, 2006 letter, nor did you dispute that these requests, as narrowed, are a small subset of the requests served by Broadcom on third parties while Mr. Neuwirth was counsel of record for Broadcom, as described in my July 26, 2006 letter.  We declined to further narrow these requests.

2

**Request 25:** You asked for clarification as to the difference between the description of this request in Mr. Neuwirth's letter of June 21, 2006, and the description in my letter of July 26, 2006. I explained that the description in the June 21, 2006 letter is inaccurate in that it failed to include agreements between TI and any other party as to categories upon which TI will rely to make a claim of privilege. You asked if QUALCOMM was seeking identification of the parties negotiating these agreements. We said no. You stated that you believed that because my letter of July 9, 2006 addressing the "open issues" raised in the June 21, 2006 letter did not mention this difference, we had agreed to the formulation set forth in the June 21, 2006 letter. We explained that you were mistaken, and that the "open issues" referred to in my letter of July 9 were the issues as to which the June 21, 2006 letter stated TI was waiting for a response from QUALCOMM, as set forth in the final paragraph of Mr. Neuwirth's letter of July 5, 2006. We then asked you to articulate any reason other than that mistaken belief that TI was refusing to produce agreements pursuant to which it will claim privilege. You stated that "you don't need them to prosecute your claims" and that "you are not entitled to them".

**Requests 24 and 29:** You asked if we still sought documents responsive to these requests from the 85 custodians TI has identified as possessing documents responsive to QUALCOMM's requests. We stated that QUALCOMM indeed sought the immediate production of such documents (as well as documents responsive to all of QUALCOMM's other requests), but understood that TI refused to produce any documents without QUALCOMM's agreement to pay costs for such production. We further stated that QUALCOMM had agreed to pay such costs for these requests as to Gail Chandler because we had been able to independently identify her as a custodian likely to have documents responsive to these requests. You then asked if we would state that we only sought documents responsive to these requests from Ms. Chandler's files at this time. We stated that, at this time, we can identify only Ms. Chandler as a person from whom we will pay for documents because TI has refused to identify or otherwise discuss with us the 85 custodians who have responsive documents and what documents they have. You did not disagree with our statement that TI refuses to identify the 85 custodians. We further stated that should TI reconsider its position with respect to identifying the 85 custodians, we would work with TI to identify the individuals, if any, as to whom QUALCOMM will agree to pay the costs of production. Barring that, we stated that we will revisit the issue after reviewing TI's EC production, as we have previously stated, and/or taking a deposition of TI to ascertain the identities of the 85 custodians. You then stated that TI would produce documents responsive to Requests 24 and 29 from Ms. Chandler's files. Although you did not say so explicitly, we understood that your statement was not a waiver of any alleged privilege as to Ms. Chandler's documents, and that if any responsive privileged documents are in Ms. Chandler's possession, TI will provide a privilege log. Although we agreed to pay for these documents on June 9, 2006, you stated that TI would not be able to produce them by August 11, 2006. Rather, you said that TI would make its "best efforts" to produce them by August 18, 2006.

We then turned to our inquiries about TI's issues with the protective order. You stated that TI sought QUALCOMM's agreement that TI be given time to notify third

3

parties as to any contracts it produces. You offered no explanation as to why TI has not already done so. In our view, TI should have done so no later than the time it served its formal response to QUALCOMM's subpoena, and, if it has not already done so as to the "broad cross-licenses" and agreements regarding baseband modem chips that are the subject of TI's motion and will be the subject of QUALCOMM's cross-motion, it should do so immediately.

You stated that you were not prepared during the call to articulate any other restrictions beyond those in the protective order sought by TI, but would do so in writing by Monday, July 31. If you have not produced all of the documents produced to the EC by then, please also (1) produce on that date the high level business plans from those documents so that we may evaluate them before our deadline to respond to TI's motion; and (2) tell us on that date when the remainder of those documents will be produced.

\* \* \*

Please let me know if you disagree with my description of our call.

Very truly yours,

Fabian D. Gonell

David Elsberg, Esq.
    Quinn Emanuel Urquhart Oliver & Hedges, LLP
        51 Madison Avenue, 22nd Floor
        New York, NY 10010

BY EMAIL

# EXHIBIT

# 5

QUINN EMANUEL trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7165

WRITER'S INTERNET ADDRESS
stephenneuwirth@quinnemanuel.com

July 31, 2006

VIA ELECTRONIC MAIL AND FACSIMILE
Fabian D. Gonell
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019

Re:    Broadcom Corporation v. Qualcomm Incorporated

Dear Fabian:

As you know, Qualcomm is seeking production by third party Texas Instruments ("TI") of certain highly sensitive, confidential business documents, including all of TI's licensing agreements, chipset sale agreements, and high level business and marketing plans related to the mobile telephone business. To date, Qualcomm has refused to place reasonable limitations on the scope of the requests seeking these documents, and you have rebuffed our efforts to negotiate such reasonable limitations.

We told you in recent correspondence that, in connection with limiting the scope of the requests, we also hope to negotiate with you confidentiality restrictions, beyond those in the existing protective order, on any documents that TI might produce in these categories. You asked us to advise you of what additional confidentiality restrictions we would propose. The purpose of this letter is to set forth those proposals.

Our proposals for additional confidentiality restrictions are not triggered by a lack of trust in any of the individual attorneys or law firms working on the case. Rather, these proposals are triggered by the business sensitivity of the documents at issue, and by the fact that even an attorney acting in good faith cannot create a "Chinese wall" within his or her own mind. Here, we cannot rule out the possibility that the same attorneys and law firms currently representing Qualcomm and Broadcom in this litigation might also represent those companies in connection

quinn emanuel urquhart oliver & hedges, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3100 FAX 858-812-3336

with the negotiation of licenses and/or chipset sale agreements. As you know, TI is a direct competitor of both Qualcomm and Broadcom in mobile telephone chipset markets.

Thus, we would propose that any (a) license, (b) chipset agreement (with Nokia or any other party), and (c) any business or marketing plans be subject to the following restrictions (in addition to those already in the protective order):

1.    TI will produce to outside counsel for Qualcomm and to outside counsel for Broadcom two hard copies of the document, which outside counsel for each company shall store in a secure, locked file in the office of the law firm. The document shall be produced on red paper that cannot be readily duplicated.

2.    At the outside firms representing Qualcomm and Broadcom, the only attorneys entitled to review the document will be those that have certified in writing that they play no role, and anticipate playing no role in the future, in the negotiation or preparation of intellectual property licenses or chipset sale agreements related to mobile telephones. Outside counsel for each company shall maintain a log showing the name of each attorney reviewing the document. That log shall be treated as privileged and confidential, but subject to review by the Court in the event that Texas Instruments challenges an improper disclosure of the document or the information contained therein.

3.    Outside counsel for Qualcomm and Broadcom shall make no additional copies of the document, except if necessary to attach to a Court pleading (which pleading shall be filed under seal).

4.    Outside counsel for Qualcomm and Broadcom will not scan, or otherwise transmit the content of the document, onto any electronic media or electronic storage device, including without limitation email, word processing files, case management files, or Adobe files.

5.    Outside counsel for Qualcomm and Broadcom shall not reference the content of the document in open court, unless granted express, advance permission by the Judge presiding over the hearing.

6.    In the event the document is referenced in a Court hearing by outside counsel for Qualcomm or Broadcom, the Court reporter, in the event one is present, shall be provided with a single copy of the document that shall be maintained in the Court file under seal.

7.    The document may be shown in deposition to current employees of Texas Instruments. Outside counsel for Qualcomm or Broadcom shall not show or describe the document to anyone else without providing Texas Instruments 10 business days advance notice of the intention to do so, in order that Texas Instruments, if it does not so consent, will have an opportunity to seek an appropriate protective order from the Court.

2

I trust this is responsive to your request for the foregoing information.

Very truly yours,

Stephen R. Neuwirth

SRN:ab

3

Liza M. Walsh
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES LLP
51 Madison Avenue
New York, NY 10010
(212) 849-7000

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION<br><br><br>                    Plaintiff,<br><br>            v.<br><br>QUALCOMM incorporated<br><br>                 Defendant. | Civil Action No. 05-3350 (MLC)<br><br>**SUPPLEMENTAL**<br>**DECLARATION OF**<br>**<u>RICHARD ANDREWS</u>** |

I, Richard Andrews, being of full age, do hereby certify as follows:

1.     I am senior counsel, Litigation of Texas Instruments Incorporated ("TI"). As such, I have personal knowledge of the facts set forth herein. I make this Declaration in support of TI's Amended Motion to Quash the Subpoena of Qualcomm Incorporated ("Qualcomm").

2.     The information Qualcomm seeks, including high-level business and marketing plans, agreements for the sale of chipsets, as well as broad cross-licenses for essential patents to which TI

was the licensee, are among TI's most sensitive trade secrets, especially with respect to Qualcomm and Broadcom Corporation, direct competitors of TI in the chipset markets. Such documents contain proprietary, commercial, trade secret and other highly confidential information, including proprietary analyses relating to business strategy, the identities of its licensors, its chipset customers, and the commercial terms under which customers buy chips and under which TI enters cross-licenses

3.    In fact, several of those customers, which are not parties to this lawsuit, have reserved the contractual right to object to the disclosure of those agreements given the sensitive nature of the information covered in them.

4.    This sensitive information goes to the heart of TI's business and is considered to be extremely valuable property of the company.

5.    TI would suffer substantial and specific harm, including but not limited to, potential financial damage through the disclosure of proprietary information, whether inadvertent or not, damage to valuable business relationships and, concomitantly, irreparable harm.

The foregoing statements made by me are true. I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:        August 2, 2006

Liza M. Walsh
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
335 Madison Avenue
New York, NY 10017
(212) 702-8100

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>            Plaintiff,<br><br>  v.<br><br>QUALCOMM INCORPORATED.,<br><br>            Defendant. | Civil Action No. 05-03350 (MLC)<br><br>**ORDER** |

**THIS MATTER** having been brought to the Court by Non-Party Texas Instruments Incorporated's ("TI's") Amended Motion to Quash, having considered the responses of Plaintiff Broadcom Corporation and Defendant Qualcomm Incorporated ("Qualcomm") and oral argument of counsel for all parties, and good cause appearing,

**IT IS ON THIS** _____ day of August, 2006

**ORDERED** that pursuant to Fed.R.Civ.P. 45(c)(3)(A), the subpoena issued by Qualcomm on TI is hereby quashed as to Qualcomm's request that TI comply with document request number 6;  and

**IT IS FURTHER ORDERED** that pursuant to Fed.R.Civ.P. 45(c)(3)(A), the subpoena issued by Qualcomm on TI is hereby quashed as to Qualcomm's request that TI comply with document request number 7, to the extent it calls for TI to produce broad cross-license agreements with third parties;  and

1740771-01

**IT IS FURTHER ORDERED** that pursuant to Fed.R.Civ.P. 45(c)(3)(A), the subpoena issued by Qualcomm on TI is hereby quashed as to Qualcomm's request that TI comply with document requests numbers 10 and 17, to the extent it calls for TI to produce each and every of TI's chipset agreements with Nokia and other third-parties; and

**IT IS FURTHER ORDERED** that pursuant to Fed.R.Civ.P. 45(c)(3)(A), the subpoena issued by Qualcomm on TI is hereby quashed as to Qualcomm's request that TI comply with document request number 16, to the extent it would require TI to produce each and every of its high level business and marketing plans for TI's mobile telephone chipset business.

_____
Honorable John J. Hughes, U.S.M.J.

Liza M. Walsh
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
335 Madison Avenue
New York, NY 10017
(212) 702-8100

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>        Plaintiff,<br><br>  v.<br><br>QUALCOMM INCORPORATED.,<br><br>        Defendant. | Civil Action No. 05-03350 (MLC)<br><br>**CERTIFICATION OF SERVICE** |

    I certify that I caused copies of the following papers submitted in support of Texas Instruments Incorporated's ("TI's") Amended Motion to Quash a portion of a subpoena issued by defendant, Qualcomm Incorporated on TI to be electronically filed today in accordance with L.Civ.R. 5.2:

    1.  Amended Notice of Motion;

    2.  Letter Brief;

    3.  Declaration of David Elsberg, Esq.;

    4.  Supplemental Declaration of Richard Andrews; and

    5.  Proposed form of Order.

I also certify that I caused a courtesy copy of the above to be delivered this date via Email to the Honorable John J. Hughes, U.S.M.J., njdnef_hughes@njd.uscourts.gov, and via Federal Express to the Honorable John J. Hughes, U.S.M.J., United States District Court, District of New Jersey, Clarkson S. Fisher Federal Building and U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608 on August 3, 2006.

I also certify that I caused to be served this date via Electronic Filing, Email, and via Federal Express on August 3, 2006, a copy of the above on the following counsel of record:

> David S. Stone, Esq.
> Robert A. Magnanini, Esq.
> Steven John Kaiser, Esq.
> Boies, Schiller & Flexner, LLP
> 150 John F. Kennedy Parkway
> 4th Floor
> Short Hills, NJ 07078
>
> William J. O'Shaughnessy, Esq.
> McCarter & English LLP
> 4 Gateway Center
> 100 Mulberry Street
> Newark, NJ 07101
>
> Evan R. Chesler, Esq.
> Cravath, Swaine & Moore, LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Christine I. Gannon

Dated: August 2, 2006