## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BROADCOM CORPORATION,

        Plaintiff,

    v.

QUALCOMM INCORPORATED,

        Defendant.

Civil Action No. 05-03350 (MLC)

**REPLY MEMORANDUM IN FURTHER SUPPORT OF TEXAS INSTRUMENTS INCORPORATED'S MOTION TO QUASH, AND IN OPPOSITION TO QUALCOMM INCORPORATED'S CROSS-MOTION TO COMPEL**

Liza M. Walsh
Jennifer C. Crichtley
Christine I. Gannon
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068
(973) 535-0500

Of Counsel:
Stephen R. Neuwirth
David L. Elsberg
Christopher M. Evans
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT.................................................................................................................................4

I.    AS A NON-PARTY, TI IS ENTITLED TO PROTECTION
      FROM UNREASONABLE INSTRUSION INTO ITS
      CONFIDENTIAL TRADE SECRETS....................................................................................4

II.   THE PROPER INQUIRY IS WHETHER THE INFORMATION SOUGHT
      IS A TRADE SECRET, DISCLOSURE OF WHICH MIGHT BE HARMFUL,
      AND, IF YES, WHETHER THE REQUESTING PARTY'S NEED FOR THE
      DOCUMENTS OUTWEIGHS THE POTENTIAL HARM FROM
      DISCLOSURE. .......................................................................................................................8

III.  UNDER THE GOVERNING STANDARDS, QUALCOMM'S
      OVERBROAD REQUESTS AT ISSUE ON TI'S MOTION
      SHOULD BE QUASHED OR LIMITED. .............................................................................11

      A.    Document Request 6 Should Be Quashed. ...........................................................11

      B.    Request 7 Should Be Quashed to the Extent It Requires
            TI to Produce all of Its Broad Cross-Licenses. .....................................................14

      C.    Request 10 and 17 Should Be Quashed to the Extent They
            Would Require TI to Produce Each and Every of Its
            Chipset Agreements with Nokia and Other Third Parties. ....................................14

      D.    Request 16 Should Be Quashed to the Extent It Would Require
            Production Of Each and Every of TI's High Level Business
            and Marketing Plans for TI's Mobile Telephone Chipset Business......................15

      E.    Document Requests Are Not the Appropriate Means to Obtain the Names
            Of TI Personnel Involved in Agreements and Business/Marketing Plans.............17

IV.   TI HAS GOOD CAUSE FOR SEEKING ADDITIONAL
      CONFIDENTIALITY RESTRICTIONS ...........................................................................17

V.    QUALCOMM'S CROSS-MOTION IS BOTH PREMATURE AND
      MISPLACED. ......................................................................................................................20

CONCLUSION..............................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Stndrd. v. Pfizer, Inc.,*
  828 F.2d 734 (Fed. Cir. 1987).................................................................16

*American Health Systems, Inc. v. Liberty Health System,*
  Civ. A. No. 90-3112, 1991 WL 30726 (E.D. Pa. Mar. 5, 1991).............................10

*Andrx Pharm. LLC v. GlaxoSmithKline, PLC,*
  236 F.R.D. 583 (S.D. Fla. 2006).................................................................19

*Bjovail Corp. Int'l v. Hoechst Aktiengesellschaft,*
  No. Civ. A 98-1434 (MTB), 1999 WL 33454801 (D.N.J. Nov. 12, 1999) ...........................19

*Brown Bag Software v. Symantec Corp.,*
  960 F.2d 1465 (9th Cir. 1992) .................................................................18

*California Motor Transport Co. v. Trucking Unlimited,*
  404 U.S. 508 (1972).................................................................7

*Carpet Group., Intern. v. Oriental Rug Importers Ass'n,*
  256 F. Supp. 2d 249 (D.N.J. 2003) .................................................................7

*Centurion Indus., Inc. v. Warren Steurer & Associates,*
  665 F.2d 323 (10th Cir. 1981) .................................................................8

*Cincinnati Riverfront Coliseum, Inc. v. City of Cincinnati,*
  556 F. Supp. 664 (D. Oh. 1983).................................................................7

*Coca Cola Bottling Co. of Shreveport, Inc. v. Coca Cola Co.,*
  107 F.R.D. 288 (D. Del. 1985) .................................................................8, 18

*Collins and Aikman Corp. v. J.P. Stevens & Co., Inc.,*
  51 F.R.D. 219 (D.S.C. 1971) .................................................................4

*Dart Indus. Co. v. Westwood Chem. Co.,*
  649 F.2d 646 (9th Cir. 1980) .................................................................4

*Davis v. Leal,*
  43 F. Supp. 2d 1102 (E.D. Cal. 1999).................................................................8

*DeRance, Inc. v. PaineWebber, Inc.,*
  872 F.2d 1312 (7th Cir. 1987) .................................................................8

*Del Campo v. Kennedy,*
  236 F.R.D. 454 (N.D. Cal. 2006).................................................................9

*Duke Energy,*
  2005 WL 2674938 .................................................................13

*In re EXDS, Inc.,*
   No. C05-0787 PVT, 2005 WL 2043020 (N.D. Cal. Aug. 24, 2005) .......................................19

*Eastern R.R. Pres. Conf. v. Noerr Motor Freight,*
   365 U.S. 127 (1961)................................................................................................................6

*Glenmede Trust Co. v. Thompson,*
   56 F.3d 476 (3d Cir. 1995)....................................................................................................13

*Gonzales v. Google, Inc.,*
   234 F.R.D. 674 (N.D. Cal 2006) .............................................................................................4

*In re Grand Jury Subpoena: Under Seal,*
   415 F.3d 333 (4th Cir. 2005) ..................................................................................................6

*Greater Rockford Energy and Technology Corp. v. Shell Oil Co.,*
   138 F.R.D. 530 (C.D. Ill. 1991) ..............................................................................................9

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.,*
   No. Civ. A. 00-3058, 2002 WL 32349383 (E.D. Pa. Feb. 6, 2002) ......................................19

*Heat & Control, Inc. v. Hester Indus., Inc.,*
   785 F.2d 1017 (Fed. Cir. 1986)..........................................................................................9, 15

*Insulate Am. v. Masco corp.,*
   227 F.R.D. 427 (W.D.N.C. 2005) ...........................................................................................9

*Kellam Energy, Inc. v. Duncan,*
   616 F. Supp. 215 (D.C. Del. 1985) .......................................................................................10

*Lugosch v. Congel,*
   219 F.R.D. 220 (N.D.N.Y. 2003) ............................................................................................6

*Mannington Mills v. Armstrong World Indus.,*
   206 F.R.D. 525 (D. Del. 2002) ...............................................................................................9

*Micro Motion, Inc. v. Kane Steel Co., Inc.,*
   894 F.2d 1318 (Fed. Cir. (N.J.) 1990) .....................................................................................9

*Pansy v. Borough of Stroudsburg,*
   23 F.3d 772 (3d Cir. 1994)...............................................................................................12, 18

*Qualcomm Inc. v. Texas Instruments Inc.,*
   875 A.2d 626 (Del. Supr. 2005).............................................................................................13

*R&D Bus. Sys., Inc. v. Xerox Corp.,*
   152 F.R.D. 195 (D. Colo. 1993) ..............................................................................................9

*Schachar v. Am. Academy of Ophthalmology, Inc.,*
   106 F.R.D. 187 (N.D. Ill. 1985).............................................................................................6

*SEC v. Deep Ocean Tech., Inc.,*
   166 F.R.D. 268 (D. Conn. 1996).............................................................................................4

*Solarex Corp. v. Arco Solar, Inc.*,
  121 F.R.D. 163 (E.D.N.Y. 1988) ..................................................................4

*In re: Subpoena Duces Tecum Served on Duke Energy Corp.*,
  No. 3:05-MC-201, 2005 WL 2674938 (W.D.N.C. Oct. 18, 2005)..........................9

*Texas Instruments Inc. v. Qualcomm Inc.*,
  C.A. No. 20569, Letter Opinion (July 14, 2004),
  *aff'd Qualcomm Inc. v. Texas Instruments, Inc.*,
  *875 A.2d 626 (Del. Supr. 2005)* .........................................................12, 13

*United Mine Workers v. Pennington*,
  381 U.S. 657 (1965)...........................................................................6, 7

*United States v. Columbia Broadcasting System, Inc.*,
  666 F.2d 364 (9th Cir. 1982) .................................................................10

*United States v. IBM Corp.*,
  66 F.R.D. 186 (S.D.N.Y. 1974) ..............................................................10

*United States v. Schwimmer*,
  892 F.2d 237 (2d Cir. 1989)....................................................................6

*U.S. Steel v. United States*,
  730 F.2d 1465 (Fed. Cir. 1984)...............................................................18

*Vegetable Kingdom, Inc. v. Katzen*,
  653 F. Supp. 917 (N.D.N.Y. 1987) ............................................................7

## Statutes

Local Rule 33.1 ..............................................................................21, 22

Local Rule 45 .....................................................................................4

## Other Authorities

Areeda and Hovenkamp, *Antitrust Law*, ¶¶ 201 ...............................................7

Susan V. Watson, "Ethical Implications of Joint Defense or Common Interest
  Agreements," 12 Sum-Antitrust 29 (1998) ..................................................5

Non-Party Texas Instruments Incorporated ("TI") respectfully submits this reply memorandum in further support of its motion (as amended) to quash, in part, defendant Qualcomm Incorporated's subpoena, and in opposition to Qualcomm's cross-motion to compel.

## Preliminary Statement

In its motion to quash, TI explained that Qualcomm's five document requests at issue would require TI to produce to its direct competitors documents of little or no probative value in this litigation, but that contain many of TI's most sensitive trade secrets. Qualcomm is seeking to compel production, for example, of TI's broad cross-license agreements, which cover thousands of patents wholly unrelated to mobile telephones and which contain no terms specific to mobile telephone patents or chipsets -- that is, documents that may provide a road map to TI's confidential business, but that can shed no light on any matters at issue in this litigation.[1]

Qualcomm devotes relatively little space in its responsive papers to the specific merits of TI's motion to quash. Qualcomm instead focuses on issues having no bearing on those merits -- such as the fact that TI and Broadcom have engaged in the entirely appropriate, common,

---

[1] TI's motion, as amended, is limited and straightforward. From among Qualcomm's more than 30 document requests, TI seeks relief only as to five. TI asks this Court to quash request number 6, because it calls for TI to produce any license agreements for patents essential to any mobile wireless communications standards, and TI has informed Qualcomm that its only license agreements covering such mobile communications patents are broad cross-license agreements that span the breadth of TI's extensive patent portfolio (covering thousands of patents unrelated to mobile telephones), and that contain no terms specific to mobile telephone patents or chipsets. TI asks this Court to quash Qualcomm's request number 7, which calls for agreements where TI is the licensee of a patent essential to a mobile communications standard, to the extent that request calls for TI to produce broad cross-license agreements with third parties. TI asks this Court to quash requests 10 and 17, which ask for all of TI's chipset agreements with Nokia and with other third parties, to the extent those requests call for TI to produce, without any limitation, each and every of TI's chipset agreements with Nokia and other third parties. And TI asks this Court to quash request 16, which seeks production of TI's high-level business and marketing plans related to mobile telephone chipsets, to the extent the request seeks, without limitation, each and every of TI's high level business plans.

and legally-protected practice of communicating, through counsel, in pursuit of the companies' common interests in petitions to government agencies or courts. Qualcomm thus appears principally focused on "poisoning the well" -- and on doing so without regard for the legal or factual accuracy of its assertions.

None of Qualcomm's assertions, however, can change the facts fundamental to TI's motion. First, TI is a non-party. Notwithstanding any interest TI may have in the substantive outcome of this litigation, TI has never appeared as a party or been named as a party in this action. Second, Qualcomm's requests at issue are inappropriately broad, particularly in light of the nature of TI's responsive documents. Qualcomm's general and conclusory assertions about the type of discovery appropriate in antitrust cases fail to address the specific circumstances here. Thus, while Qualcomm suggests that its disputed document requests -- Nos. 6, 7, 10, 16 and 17 -- have been sufficiently "targeted" and narrowly drawn, these requests as currently defined would require TI to produce all of TI's broad cross-licenses with third parties (which cover thousands of TI patents unrelated to mobile telephones and, as noted, include no terms specific to mobile telephone patents or chipsets); all of TI's agreements with third parties for the use or sale of baseband modem chips for mobile wireless communications; all of TI's high-level marketing and business plans pertaining to baseband modem chips for mobile wireless communications applications; and documents that would enable Qualcomm to identify all TI personnel with responsibility for any of these agreements or business plans.

TI previously produced close to 16,000 pages of materials to Qualcomm in this action, and also agreed to produce over 5,000 more (including all of the documents from TI's files that TI has produced to the European Commission). Since the filing of TI's motion, TI has also

produced, as requested by Qualcomm, non-privileged documents from the files of TI employee Gail Chandler.

In this context of cooperation, and only after Qualcomm rejected TI's efforts to reach reasonable compromises as to the trade secret materials at issue, TI filed its motion to quash. Qualcomm rejected, for example, TI's proposal to provide Qualcomm with sample cross-license agreements to confirm that these agreements contain nothing of probative value in this litigation. Qualcomm also rejected TI's request that Qualcomm provide more specificity as to the type of contract terms Qualcomm is seeking to review in TI's chipset agreements, so that TI could produce any agreements containing that type of information, and avoid the need for TI to produce every single one of its chipset agreements. And Qualcomm has also rejected TI's proposed confidentiality restrictions, beyond those in the existing protective order, that would ensure, for example, that none of Qualcomm's outside lawyers involved in Qualcomm's intellectual property licensing or chipset agreements would be entitled to view any agreement produced by TI in this litigation.

To the extent Qualcomm has filed a cross-motion asking this Court to compel cooperation by TI, this cross motion is both misplaced (to the extent TI has already been voluntarily cooperating) and premature (to the extent TI has already agreed to produce additional documents, including the documents from TI's files previously produced to the European Commission). TI respectfully submits that TI's motion to quash should be granted, and Qualcomm's cross-motion should be denied.

**Argument**

To the extent Qualcomm seeks production by TI of competitive trade secret material, governing precedents require a determination of whether Qualcomm has shown a substantial need for the material that outweighs the potential harm to TI from disclosure. TI respectfully submits that Qualcomm does not meet its burden of demonstrating a substantial need for the documents at issue -- either because, in some cases, the material simply is not probative of any issue in this litigation, or because, even to the extent probative, Qualcomm has refused reasonably to narrow the requests to minimize any necessary intrusion into TI's trade secrets.

I.     **AS A NON-PARTY, TI IS ENTITLED TO PROTECTION FROM UNREASONABLE INSTRUSION INTO ITS CONFIDENTIAL TRADE SECRETS**

TI's status as a non- party is a relevant factor for assessing Qualcomm's subpoena on a motion to quash. *See* TI Brief in Support of its Motion to Quash, dated Jul. 20, 2006 ("TI Opening Brf."), at 9; *SEC v. Deep Ocean Tech., Inc.*, 166 F.R.D. 268, 269 (D. Conn. 1996); *see also Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (non-party status a significant factor in determining whether discovery is unduly burdensome). As one district court has explained, "Underlying the protections of Rule 45 is the recognition that 'the word "non-party" serves as a constant reminder of the reasons for the limitations that characterize "third party" discovery.'" *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal 2006) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)); *see also Collins and Aikman Corp. v. J.P. Stevens & Co., Inc.*, 51 F.R.D. 219, 221 (D.S.C. 1971) ("There appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents.").

Qualcomm -- apparently recognizing the appropriate limitations on discovery of non-parties -- devotes substantial space in its papers to arguing that TI should not be considered a true

third party, given that TI has communicated with plaintiff Broadcom Corporation about this case and about filings against Qualcomm in the European community, and because certain of TI's outside counsel are also representing Broadcom. *See* Qualcomm Brf. at 1, 7-9.

First, none of these arguments by Qualcomm can operate somehow to convert TI into a party in this action. TI has not filed any complaint against Qualcomm before this Court, and TI has not been named in this Court as a defendant to any complaint or counterclaim. TI did join with two other non-parties -- Nokia Corporation and Telefonaktiebolaget LM Ericsson ("Ericsson") -- to file a letter with this Court related to Qualcomm's pending motion to dismiss Broadcom's complaint. But that letter brief expressly described TI, Nokia and Ericsson as non- parties, *see* Letter Brf. dated Feb. 24, 2006, at 1, and perhaps for this reason the Court, at its hearing on Qualcomm's dismissal motion, stated that it had not even considered the letter filing.[2] Moreover, that letter reflects TI's interest, as a non-party, in this Court's analysis of FRAND and whether FRAND commitments are enforceable under the antitrust laws.

Second, nothing about TI's common interest agreement with Broadcom (and other companies) is remotely improper or supports a factual, or "equitable," finding that TI should be treated as a party rather than a non-party here. Common interest agreements are frequently used to facilitate communications between companies that are petitioning a government agency or court. *See, e.g.,* Susan V. Watson, "Ethical Implications of Joint Defense or Common Interest Agreements," 12 Sum-Antitrust 29 (1998) (common interest agreements have become "a commonplace element of many forms of legal representation"); *see also id* ("Common interest arrangements are particularly useful in the practice of antitrust law.").

---

[2] It is our understanding that Qualcomm's motion to dismiss Broadcom's complaint is presently under the Court's advisement. In the event Qualcomm prevails on its motion to dismiss, the instant requests for discovery from TI would be moot.

Those common interest agreements, among other things, permit communications in support of the common interest to be covered by attorney-client and work product privileges, if applicable. *See, e.g., In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005) (purpose of common interest agreements is to enable "persons with a common interest to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims."); *Lugosch v. Congel*, 219 F.R.D. 220, 236 n.10 (N.D.N.Y. 2003) ("the common interest arrangement doctrine . . . includes both litigation and non-litigation matters. In essence, the common interest arrangement extends the joint litigant premise further and permits parties to share information outside of its normal legal advice infrastructure even though it may not involve a lawsuit. The intra-group sharing of communications, documents, and advice is protected."); *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) ("The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter."); *Schachar v. Am. Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 191-92 (N.D. Ill. 1985) (protecting exchanges of information among attorneys for co-plaintiffs in any antitrust action).

Third, far from being improper, communications among parties that are petitioning a government agency or court are ***constitutionally protected*** communications under the so-called *Noerr-Pennington* doctrine, which protects collaborative efforts to pursue common private objectives and commercial self-interests by petitioning the government through legislation, adjudication, or executive and administrative machinery. *See Eastern R.R. Pres. Conf. v. Noerr Motor Freight*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965); Areeda and Hovenkamp, *Antitrust Law*, ¶¶ 201 et seq. at ¶ 201a, p. 146 ("This right is founded in our Constitution but can also be independently derived from statutory interpretation of the antitrust

laws."). The *Noerr-Pennington* doctrine has been held to apply where groups with common interests seek to use courts and government agencies for advocacy with respect to economic interests *vis-à-vis* their competitors. *See Cincinnati Riverfront Coliseum, Inc. v. City of Cincinnati*, 556 F. Supp. 664, 668-69 (D. Oh. 1983) (citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972)).

The Noerr-Pennington doctrine applies not only to communications in furtherance of petitioning the U.S. government, but also petitioning of foreign governments. *See, e.g., Carpet Group., Intern. v. Oriental Rug Importers Ass'n*, 256 F. Supp. 2d 249, 266-67 (D.N.J. 2003) (lobbying of foreign governments, whether performed at home or abroad, is protected from antitrust liability under the *Noerr-Pennington* doctrine).

Finally, it is of no moment that certain law firms representing TI are also representing Broadcom. It is not disputable that TI and Broadcom are commercial rivals, and that Broadcom is seeking to enter the UMTS/WCDMA chipset market to compete with, among others, TI. But *vis á vis* Qualcomm's alleged anticompetitive conduct, TI and Broadcom have a common interest, and are not adverse parties in this litigation. No conflict exists between TI and Broadcom here, and it is perfectly appropriate for counsel representing Broadcom also to represent TI. *See, e.g., Vegetable Kingdom, Inc. v. Katzen*, 653 F. Supp. 917, 923-24 (N.D.N.Y. 1987) (holding that law firm's representation of plaintiff and third party defendant did not require disqualification, because parties were not adverse).[3] The relevant question on this motion, which Qualcomm sidesteps in focusing on

---

[3] Qualcomm observes that Stephen Neuwirth, since January 2006 a member of the firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP, counsel for TI on this motion, previously was counsel of record for Broadcom in this action when he was a member of the firm Boies, Schiller & Flexner LLP. TI notes (as Qualcomm has previously been advised) that although Mr. Neuwirth did not formally withdraw his notice of appearance for Broadcom in this action until April 2006, he has not played a role in the representation of Broadcom since January 2006, when he left the Boies (footnote continued)

common interest agreement, representation, and similar issues, is whether the documents at issue include confidential trade secrets, and whether Qualcomm's need for those trade secrets outweighs the harm to TI from disclosing these secrets to its competitors or their counsel.

**II.     THE PROPER INQUIRY IS WHETHER THE INFORMATION SOUGHT IS A TRADE SECRET, DISCLOSURE OF WHICH MIGHT BE HARMFUL, AND, IF YES, WHETHER THE REQUESTING PARTY'S NEED FOR THE DOCUMENTS OUTWEIGHS THE POTENTIAL HARM FROM DISCLOSURE.**

To protect trade secrets from discovery, the resisting party must demonstrate that the information sought is a trade secret and that disclosure might be harmful. *Coca Cola Bottling Co. of Shreveport, Inc. v. Coca Cola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985). "If this showing is made, 'the burden shifts to the party seeking discovery to establish that the disclosure of the trade secrets is relevant and necessary to the action.'" *Id* (quoting *Centurion Indus., Inc. v. Warren Steurer & Associates*, 665 F.2d 323, 325 (10th Cir. 1981)).

If information is arguably relevant, the party seeking discovery cannot meet its burden where the information is not actually *probative* of any issues in the litigation. *See, e.g.*, *DeRance, Inc. v. PaineWebber, Inc.*, 872 F.2d 1312, 1326 (7th Cir. 1987) (upholding district court decision denying discovery of certain investments where defendant's "other investments [were] not directly probative of the issue in [the] case" and would have increased the burdens of discovery); *Davis v. Leal*, 43 F. Supp. 2d 1102, 1111 (E.D. Cal. 1999) ("the discovery limits of 26(b)(2), when utilized, generally preclude discovery of information that is not fairly probative of the issues in a case either directly or indirectly. Discovery that is not necessary or significant in an evidentiary sense, nor reasonably calculated to lead to significant evidence, is not permitted.").

---

Schiller firm. *See* Declaration of David L. Elsberg, dated Aug. 2, 2006 ("Elsberg Decl.") Ex. 3 at 2 (submitted with TI's amended motion to quash).

A failure by the requesting party to demonstrate substantial need is sufficient reason to grant a motion to quash. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318 (Fed. Cir. (N.J.) 1990); *see also Mannington Mills v. Armstrong World Indus.*, 206 F.R.D. 525 (D. Del. 2002) ("even if the information sought is relevant, discovery is not allowed where no need is shown.").

As this Court is well aware, Courts must balance "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986); *Del Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006) (same). Thus, "courts apply a balancing standard . . . considering relevance, need, confidentiality, and harm." *In re: Subpoena Duces Tecum Served on Duke Energy Corp.*, No. 3:05-MC-201, 2005 WL 2674938, at *7 (W.D.N.C. Oct. 18, 2005).

Qualcomm asserts in its papers that many of the cases on which TI relies, *see, e.g., Micro Motion*, 894 F.2d 1318 (Fed. Cir. 1990), concern patent infringement, not antitrust, claims. *See* Qualcomm Brf. at 24 & n.10. This is a distinction without a difference, however, because the proposition for which TI cited those authorities -- that discovery should not be allowed where no need is shown -- is just as routinely applied in the antitrust context. *See, e.g., Insulate Am. v. Masco corp.*, 227 F.R.D. 427, 432 (W.D.N.C. 2005) (granting, in part, non-party's motion to quash subpoena in antitrust action and stating that "[e]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit."); *R&D Bus. Sys., Inc. v. Xerox Corp.*, 152 F.R.D. 195, 196-97 (D. Colo. 1993) (granting non-party's motion to quash subpoena seeking trade secrets and discussing requirement that subpoenaing party establish need for the requested information); *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 534

(C.D. Ill. 1991) ("Even if the information is relevant, discovery is not allowed if the person seeking discovery fails to show their need for the information.").

Qualcomm also asserts that, in the antitrust context, extensive non-party discovery should uniformly be permitted to shed light on the state of competition in the relevant market. *See* Qualcomm Brf. at 15 & n.6. The authorities Qualcomm cites, however, do not support that position. *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 366-67 (9th Cir. 1982), addressed the issue of whether non-parties that had been subpoenaed were entitled to be reimbursed for the costs of compliance -- not whether non-parties should be subjected to limitless discovery simply because the underlying litigation involves antitrust claims. In *United States v. IBM Corp.*, 66 F.R.D. 186 (S.D.N.Y. 1974), *American Health Systems, Inc. v. Liberty Health System*, Civ. A. No. 90-3112, 1991 WL 30726 (E.D. Pa. Mar. 5, 1991), and *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217 (D.C. Del. 1985), the courts were not addressing disclosure of a non-party's valuable trade-secret information. Additionally, in *Kellam Energy*, the court actually limited a number of the subpoena requests at issue, finding those requests overbroad and irrelevant. *See* 616 F. Supp. 215 at 220 (finding requests pertaining to products unrelated to alleged product market irrelevant; request seeking discovery on all of defendant's inventories was overbroad and irrelevant; and request seeking any former contracts between defendant and retail operators was overbroad).

Each of the requests at issue on TI's motion indisputably involves highly sensitive trade-secret information, and Qualcomm does not (and could not) demonstrate a substantial need for this information -- let alone a need that outweighs the harm to TI from disclosure.

### III.   UNDER THE GOVERNING STANDARDS, QUALCOMM'S OVERBROAD REQUESTS AT ISSUE ON TI'S MOTION SHOULD BE QUASHED OR LIMITED.

#### A.   Document Request 6 Should Be Quashed.

Qualcomm's request 6 seeks "[a]ll documents relating to licenses or prospective licenses to any Texas Instruments patent essential to any mobile wireless communications standard," and that Qualcomm has limited this request to any TI license agreements covering patents for which TI made a so-called "FRAND" commitment to a mobile telephony standards setting body. *See* TI Opening Brf. at 3.

The problem with this request, even as narrowed, is that TI simply has no agreements remotely specific to patents for which TI made a so-called "FRAND" commitment to a mobile telephony standards body. In fact, the only TI contracts reaching such patents are broad cross-license agreements covering TI's entire patent portfolio (which includes thousands of patents unrelated to mobile telephones) or portions thereof. *See* Declaration of Stephen R. Neuwirth, dated Jul. 20, 2006 ("Neuwirth Decl.") Exs. 16 and 18 (submitted with TI's original motion to quash). In each of these cross-licenses, the vast majority of the patents at issue are not subject to any FRAND commitment and do not relate to mobile telephones, and none of these documents contain any terms specific to mobile telephone patents or chipsets. *See* Andrews Decl. (Jul. 20, 2006) ¶ 5.

Thus, even if TI's broad cross-licenses are technically "relevant" as that term is used in the Federal Rules of Civil Procedure, those cross-licenses are in no way probative of any issue in this case, because they cannot be used to determine what particular consideration TI is receiving for any particular patent for which a FRAND commitment to a mobile telephone standards body was made. At the same time, as also reflected in the July 20, 2006, declaration of Richard Andrews of TI, these cross-licenses contain highly sensitive trade secret information, including the identities of TI's licensees, and the royalty rates and terms of the licenses for each licensee. These are trade

secrets that go to the heart of TI's business -- information of extreme value to TI, that would similarly be of extreme value to TI's actual and potential competitors. Yet, as noted, these documents contain no terms specific to mobile telephone patents or chipsets, or that shed any light on specific consideration for those patents or chipsets.

Qualcomm responds, first, that TI has failed to provide specific examples of how it would be injured by disclosure of these broad cross-licenses. *See* Qualcomm Brf. at 25. The Third Circuit has made clear, however, that the harm from disclosure of trade secrets may be shown either "by specific examples <u>or</u> articulated reasoning." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (emphasis added). Here, TI has provided both. TI has addressed with specificity the types of information that would be disclosed, and has provided straightforward reasoning as to the obvious competitive loss TI would incur if this information were to be disclosed. It is troubling that Qualcomm now questions the value of the trade secrets at issue to this Court, given that Qualcomm previously sued TI (albeit unsuccessfully) for purported disclosure of the terms of a cross-license, and Qualcomm then withdrew its $30 million claim precisely to avoid revealing the terms of its own licensing agreements. *See* TI Opening Brf. at 4-5 (citing *Texas Instruments Inc. v. Qualcomm Inc.*, C.A. No. 20569, Letter Opinion (July 14, 2004), *aff'd Qualcomm Inc. v. Texas Instruments Inc.*, 875 A.2d 626 (Del. Supr. 2005)).[4]

Qualcomm argues, second, that these documents must be relevant and useful here, because Qualcomm has cross-licenses that cover both essential patents subject to FRAND commitments and patents that are not. *See* Qualcomm Br. at 20. But Qualcomm misses the point.

---

[4] In this regard, Qualcomm's reliance on *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995) is misplaced. *Glenmede* did not even address harm stemming from disclosure of trade secret information, and instead involved mere "general allegations of embarrassment and injury to professional reputations." *See id.* 56 F.3d at 478.

Qualcomm's intellectual property licensing business focuses exclusively, or almost exclusively, on intellectual property for mobile telephones, and thus any cross-licenses may still be probative (at least according to Qualcomm) of the consideration Qualcomm receives for its mobile telephone patents (whether essential or not). By contrast, TI has a broad business with IP for many technologies unrelated to mobile telephones, and TI's broad cross-licenses thus tell us nothing about consideration or terms specific to any mobile telephone patent. Here, Qualcomm cannot demonstrate that any purported need for TI's broad cross-licenses outweighs the potential harm to TI from disclosure. *See Duke Energy*, 2005 WL 2674938, at *7 (barring discovery of sensitive commercial information from third-party, and noting that "Plaintiff . . . has not proven that its need is greater than the potential harm which might come to non-party Duke Energy by sharing this sensitive information.").

Qualcomm, finally, asserts that TI had purportedly offered to produce essential mobile telephone patents that TI knew did not exist. This is simply false. On April 17, 2006, before TI had completed an assessment of its potential responsive license agreements, TI agreed to produce any such agreements -- other than broad cross-licenses -- covering any TI patent essential to any standard incorporating CDMA, WCDMA or UMTS technology. *See* Neuwirth Decl. Ex. 4. On June 8, TI reiterated its objection to producing any broad cross-licenses. *See* Neuwirth Decl. Ex. 9. When TI subsequently determined that in fact its only license agreements reaching mobile telephone essential patents are broad cross-licenses, TI so informed Qualcomm promptly. *See* Declaration of David L. Elsberg, dated Aug. 2, 2006 ("Elsberg Decl."), Ex. 16 (submitted with TI's amended motion to quash).

**B.**     **Request 7 Should Be Quashed to the Extent It Requires**
          **TI to Produce all of Its Broad Cross-Licenses.**

TI explained in its moving papers that following several meetings with TI, Qualcomm stated that it had narrowed request 7 to cover "[a]ny license agreement that gives TI a license to a patent as to which the licensor gave a FRAND commitment to a mobile telephony standard-setting body." Neuwirth Decl. Ex. 15.  After TI determined that most, if not all, of its agreements responsive to this request are again broad cross-licenses spanning all or portions of TI's broad patent portfolio, TI proposed to Qualcomm that TI only be required to produce any responsive agreements that are not such broad cross-licenses, but Broadcom refused this proposal. *See* Elsberg Decl. Exs. 1 & 2.

For all of the reasons set forth above with respect to Request 6, TI respectfully submits that Qualcomm cannot show any substantial need for TI's broad cross-licenses, or that such need outweighs "the substantial and specific harm" TI would suffer from disclosure, "including but not limited to potential financial damage, . . . damage to valuable business relationships and, concomitantly, irreparable harm." *See* Supp. Andrews Decl. ¶ 5.  TI thus submits that this Court should quash request 7 to the extent it would require TI to produce broad cross-licenses.

**C.**     **Request 10 and 17 Should Be Quashed to the Extent They**
          **Would Require TI to Produce Each and Every of Its**
          **Chipset Agreements with Nokia and Other Third Parties.**

Qualcomm is seeking through request 10 all agreements between TI and Nokia related to chipsets for mobile wireless telephones, and through request 10 all of TI's agreements for the sale of mobile telephone chipsets to any other customer. *See* Neuwirth Decl. Ex. 5, Ex. 15 at 1-2. There is no probative value, or substantial need, for TI's chipset agreements *as a group*, at least to an extent that would outweigh the palpable harm to TI from disclosing those documents to its competitors. *See* TI Letter Brief in Support of Its Amended Motion to Quash ("TI Letter Brf.") at 4-

5. Thus, as TI explained, TI sought a reasonable compromise that would permit Qualcomm to obtain the information it needs from these agreements, without requiring TI produce all of them: specifically, TI proposed that Qualcomm identify the specific types of information it is seeking (such as a type of contract term), and TI would produce any agreements including that information. *See id.*

Qualcomm, however, refused this proposed compromise outright, offering at the time only the generalization that "these documents are documents regarding products, substitutes for products, and competition in the alleged relevant markets" and that Broadcom had served similar requests on third parties. *See* Elsberg Decl. Ex. 4 at 1. Qualcomm now continues to assert its right to each and every one of TI's chipset agreements. As Qualcomm knows, however, these chipset agreements are among TI's sensitive trade secrets, a sensitivity at its height here, because Qualcomm and Broadcom are both direct competitors of TI in the mobile telephone chipset business. *See Heat & Control,* 785 F.2d at 1024 (stating that potential hardship of party subject to subpoena should be weighed against purported need of requesting party).

### D. Request 16 Should Be Quashed to the Extent It Would Require Production Of Each and Every of TI's High Level Business and Marketing Plans for TI's Mobile Telephone Chipset Business.

Through Request 16, Qualcomm has stated that it seeks all of TI's "high-level" marketing and business plans related to baseband modem chips for mobile wireless telephone communications applications. *See* Neuwirth Decl. Ex. 5 at 2. Such plans are obviously essential trade secrets that no business would want to disclose to its direct competitors. TI, however, sought a reasonable compromise that would give Qualcomm access to information it needs without requiring TI to make a wholesale production of these sensitive plans: specifically, TI proposed that Qualcomm identify the type of information it was seeking, with TI to produce any high-level business or marketing plans containing such information. *See* Elsberg Decl. Ex. 1.

Again, however, Qualcomm simply refused this proposal outright -- offering nothing more at the time than the conclusory assertion that "you know full well the relevance of documents regarding products, substitutes for products, and competition in the alleged relevant markets." Elsberg Decl. Ex. 2 at 3. Qualcomm has now reiterated this refusal to compromise, notwithstanding that Qualcomm will have access to a number of business and marketing plans included in the documents TI previously produced to the European Commission (and that TI will now be producing to Qualcomm).

Qualcomm asserts in its papers that it needs all of TI's high-level marketing and business plans to show that "TI competes with Qualcomm in the alleged relevant market." Qualcomm Br. at 23. Yet, TI will stipulate that TI and Qualcomm are competitors. The relevant issue, as alleged by Broadcom, is whether Qualcomm has engaged in practices that stifle, or are intended to stifle, that competition.

Qualcomm also says it needs these business and marketing plans to ascertain TI's market share, Qualcomm Br. at 23, but Qualcomm does not explain how these business and marketing plans are a reasonable means to obtain such information -- which could presumably be obtained through a request directed to market share, or an interrogatory.   Similarly, Qualcomm asserts that these business and marketing plans will "be critical to the issue of market definition, because they will show the extent to which TI, as a leading provider of GSM chips, experienced competitive pressures as to price or performance from CDMA chips or UMTS chips." Qualcomm Br. at 23. Again, however, Qualcomm could make a request for documents addressing any such competitive pressures, rather than seeking all of TI's high level business and marketing plans for the chipset business. *See generally Am. Stndrd. v. Pfizer, Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987)

(where information is available from other sources, the need for the requested discovery is correspondingly diminished).

**E.   Document Requests Are Not the Appropriate Means to Obtain the Names Of TI Personnel Involved in Agreements and Business/Marketing Plans**

Qualcomm emphasizes in its papers that through the requests at issue, it is not only seeking agreements and business and marketing plans, but also the names of TI personnel involved in the negotiation or authorization of those agreements and the preparation of those business and marketing plans.

The proper means, however, to obtain the names of involved personnel is, at least in the first instance, a deposition on written question, not a far-reaching document request. *See* TI Letter Brf. at 5. Qualcomm simply ignores this point, choosing not to offer any explanation for why, with this reasonable alternative available, TI should nonetheless undertake the cumbersome and burdensome task of searching for and producing documents to show names of involved persons. Qualcomm's burdensome request should be quashed.

**IV.   TI HAS GOOD CAUSE FOR SEEKING ADDITIONAL CONFIDENTIALITY RESTRICTIONS**

In connection with its rebuffed effort to negotiate reasonable limitations on Qualcomm's broad document requests, TI had proposed a series of additional restrictions that would apply to any cross-license agreements, chipset agreements, or business or marketing plans that TI would be required to produce. *See* TI Amended Motion, Letter Br. at 6-7. These reasonable proposed restrictions include, for example, that any outside counsel for Qualcomm or Broadcom reviewing these documents will certify that he or she has not been, nor expects to be, involved in preparation or negotiation of Qualcomm's or Broadcom's own patent licensing or chipset agreements; that the documents will not be reproduced, other than in connection with Court filings;

and that Qualcomm or Broadcom will provide TI advance notice of any plan to show or describe the document to anyone other than current employees of TI or the Court. *See id.*

These additional proposed restrictions address the reality that once a person becomes aware of confidential information in one context, it is virtually impossible to disregard that information in another context where the information might be relevant. This is not a question of good faith: even a lawyer acting in complete good faith may inevitable become "infected" by exposure to confidential information. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (consideration must be given to "not only whether the documents could be locked up in cabinets, but also whether . . . counsel could lock up trade secrets in his mind"); *see also U.S. Steel v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) ("the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure.").

Qualcomm fails to address the specifics of TI's proposals, instead arguing only that the existing protective order "is more than sufficient to protect any legitimate confidentiality concerns." Qualcomm Br. at 27-28. Qualcomm does not even attempt to explain why any of TI's proposed additional confidentiality restrictions are unreasonable or would somehow constrain either Qualcomm's or Broadcom's ability to use any of the information produced by TI in this litigation.

The Third Circuit, in the very case cited by Qualcomm, has explained that confidentiality restrictions are appropriate to prevent injury to parties from disclosure of trade secrets and other confidential information. *See Pansy*, 23 F.3d at 787. It is irrelevant here that a protective order is in place, since non-parties have been protected from disclosure of trade secrets notwithstanding the existence of a protective order. *See Coca Cola*, 107 F.R.D. at 292. Courts may modify existing protective orders and provide for additional confidentiality restrictions upon a

showing of "good cause." *See Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, No. Civ. A. 00-3058, 2002 WL 32349383, at *2 (E.D. Pa. Feb. 6, 2002); *Bjovail Corp. Int'l v. Hoechst Aktiengesellschaft*, No. Civ. A 98-1434 (MTB), 1999 WL 33454801, at *6 (D.N.J. Nov. 12, 1999). Additional safeguards, beyond those in a general protective order, are particularly warranted where a business is being asked to produce trade secrets to its competitors. *See, e.g., Andrx Pharm. LLC v. GlaxoSmithKline, PLC*, 236 F.R.D. 583, 585 (S.D. Fla. 2006) (owner of patent entitled to order limiting disclosure of confidential trade secrets in competitor's patent infringement action); *In re EXDS, Inc.*, No. C05-0787 PVT , 2005 WL 2043020 (N.D. Cal. Aug. 24, 2005).

The appropriateness of additional confidentiality restrictions is not mitigated, as Qualcomm suggests, because Broadcom's counsel also represent TI. According to Qualcomm, this overlap in outside counsel purportedly means that TI and Broadcom have an "affinity" that makes the existing protective order an adequate safeguard. *See* Qualcomm Brf. at 26. For purposes of confidentiality restrictions, however, Qualcomm's argument makes no sense: Broadcom is seeking to enter the chipset market precisely to compete with, among others, TI. So TI is just as concerned about disclosure of its confidential, commercial trade secrets to Broadcom as it is to Qualcomm. As to TI's trade secrets, TI and Broadcom have no "affinity." Quite the opposite. Broadcom is ill-positioned to serve as some sort of monitor of TI's confidentiality interests.

An example of the need for additional restrictions comes from the very papers that Qualcomm has filed in connection with the present motion. Specifically, Qualcomm's papers filed on August 22, 2006, included reference to and copies of documents produced by TI that TI had designated "highly confidential" -- that is, for review by Qualcomm's outside counsel only. Qualcomm, pursuant to the protective order, moved to file the papers under seal. The motion to seal itself, however, was not filed under seal, and was electronically filed with the Court (and thus

available to any member of the public). *See* Qualcomm Proposed Order to Seal Materials; *see also* Qualcomm Brf. in Support of Mot. to Seal. Qualcomm included in that public motion to seal substantive descriptions of the very documents that TI had designated "highly confidential." For example, Qualcomm describes an email chain, bearing production numbers TI-0020993 to TI-0020994, between Gail Chandler of TI and a newspaper reporter, and Qualcomm discloses both the name and newspaper of the reporter, as well as the fact that an attorney for TI would be speaking to that reporter. (Qualcomm also gives the name of that attorney.) *See* Qualcomm Proposed Order to Seal Materials, at 2. With that publicly available description, Qualcomm disclosed protected information concerning the identity of a valued TI media contact, the timing of TI's communications with that contact, and the purpose and methods of such communications.

## V.    QUALCOMM'S CROSS-MOTION IS BOTH PREMATURE AND MISPLACED.

Qualcomm's cross-motion asks this Court to compel TI to produce documents to Qualcomm, and to provide information to resolve a pending dispute between Qualcomm and Broadcom related to one of Broadcom's interrogatory responses.

TI's moving papers described in detail the many reasonable steps that TI has taken in response to Qualcomm's overreaching subpoena and refusal to negotiate meaningful compromises. *See* TI Opening Brf. at 5-6; TI Letter Brf. at 2-6. TI will not reiterate all of that here, except to emphasize that: (a) TI previously produced to Qualcomm almost 16,000 pages of documents that TI had earlier produced to the Justice Department in connection with the Department's investigation of Qualcomm's Flarion acquisition; (b) TI, after the filing of its motion, produced approximately 150 non-privileged documents that Qualcomm had specifically requested from the files of TI employee Gail Chandler (and TI has committed to produce, as promptly as practicable, a log of any privileged responsive documents from Ms. Chandler's files); (c) TI has voluntarily agreed to produce the approximately 5,000 pages of documents from TI's files that TI previously produced to the European

Commission, and TI is simply awaiting Qualcomm's agreement to, or a Court order permitting, additional confidentiality restrictions beyond those in the existing protective order (*see* Point IV, *supra*); and (d) TI has responsibly engaged Qualcomm in discussions with respect to any requests that Qualcomm has identified as a priority.

Qualcomm, in its cross motion, asserts that TI has itself somehow violated Local Rule 33.1, because *Broadcom* has purportedly failed to provide Qualcomm with information about TI sources for information in a Broadcom interrogatory response. *See* Qualcomm Br. at 28. This is, however, a pure red herring: disputes between the parties, Qualcomm and Broadcom, have no place in a non-party discovery motion. Qualcomm's remedy must be with Broadcom, not TI. Indeed, the question under Rule 33.1 is what is the source of *Broadcom's* knowledge -- something that only Broadcom can provide.

At bottom, Qualcomm's cross-motion is misplaced, because TI has engaged in reasonable and good faith efforts to resolve discovery disputes, and in the context of producing many thousands of documents, TI felt compelled to seek the Court's assistance with respect to just five of Qualcomm's thirty-four document requests. At best, Qualcomm's motion is simply premature.

### Conclusion

For the foregoing reasons, and those set forth in TI's moving papers, non-party TI respectfully requests that the Court grant TI's motion to quash, as amended, and deny Qualcomm's cross-motion to compel.

CONNELL FOLEY LLP
Attorneys for Non-Party
Texas Instruments Incorporated

Liza M. Walsh

Dated: August 30, 2006

Of Counsel:

Stephen R. Neuwirth
David L. Elsberg
Christopher M. Evans
Quinn Emanuel Urquhart Oliver & Hedges LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

Liza M. Walsh
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
 OLIVER & HEDGES, LLP
335 Madison Avenue
New York, NY 10017
(212) 702-8100

*Attorneys for Non-Party*
*Texas Instruments Incorporated*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION, | |
| Plaintiff, | Civil Action No. 05-03350 (MLC) |
| v. | **CERTIFICATION OF SERVICE** |
| QUALCOMM INCORPORATED., | |
| Defendant. | |

I certify that I caused copies of the Reply Memorandum of Law submitted in further support of Texas Instruments Incorporated's ("TI's") Amended Motion to Quash a portion of a subpoena issued by defendant, Qualcomm Incorporated on TI and in Opposition to defendant's Cross-Motion to Compel to be electronically filed today in accordance with L.Civ.R. 5.2.

I also certify that I caused a courtesy copy of the above to be delivered via Email and Federal Express to the Honorable John J. Hughes, U.S.M.J., United States District Court, District of New Jersey, Clarkson S. Fisher Federal Building and U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608 on August 31, 2006.

I also certify that I caused to be served this date via Electronic Filing and Email, and via Federal Express on August 31, 2006, a copy of the above on the following counsel of record:

> David S. Stone, Esq.
> Robert A. Magnanini, Esq.
> Steven John Kaiser
> Boies, Schiller & Flexner, LLP
> 150 John F. Kennedy Parkway
> 4th Floor
> Short Hills, NJ 07078
>
> William J. O'Shaughnessy, Esq.
> McCarter & English LLP
> 4 Gateway Center
> 100 Mulberry Street
> Newark, NJ 07101
>
> Evan R. Chesler, Esq.
> Cravath, Swaine & Moore, LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Christine I. Gannon

Dated: August 30, 2006

# CONNELL FOLEY LLP
## ATTORNEYS AT LAW

85 LIVINGSTON AVENUE
ROSELAND, N.J. 07068-3702
(973) 535-0500
FAX: (973) 535-9217

JOHN A. PINDAR (1969)
GEORGE W. CONNELL (2005)
ADRIAN M. FOLEY, JR.
GEORGE J. KENNY*
KENNETH F. KUNZMAN
SAMUEL D. LORD
RICHARD D. CATENACCI
RICHARD J. BADOLATO*
PETER D. MANAHAN
JOHN B. MURRAY
MARK L. FLEDER
KEVIN J. COAKLEY
WILLIAM H. GRAHAM*
THOMAS S. COSMA
KATHLEEN S. MURPHY
PATRICK J. McAULEY
PETER J. PIZZI**
KEVIN R. GARDNER
ROBERT E. RYAN
MICHAEL X. McBRIDE*
JEFFREY W. MORYAN
JOHN K. BENNETT
PETER J. SMITH*
BRIAN G. STELLER
PHILIP F. McGOVERN, JR.
KAREN PAINTER RANDALL
LIZA M. WALSH
JOHN P. LACEY
TIMOTHY E. CORRISTON*
ERNEST W. SCHOELLKOPFF*

PATRICK J. HUGHES**
JAMES C. McCANN*
JOHN D. CROME
ANGELA A. IUSO*
GLENN T. DYER
CLARENCE SMITH, JR.—
WILLIAM T. McGLONE*
BRENDAN JUDGE
DAREN S. McNALLY*
STEPHEN V. FALANGA*
JEFFREY L. O'HARA
TRICIA O'REILLY*
ANTHONY F. VITIELLO*
MARC D. HAEFNER
JONATHAN P. McHENRY
JAMES P. RHATICAN*
MATTHEW W. BAUER*
JOSEPH C. DeBLASIO

COUNSEL
JOHN W. BISSELL
JOHN B. LAVECCHIA
VIRGINIA M. EDWARDS*
FRANCIS E. SCHILLER*
EUGENE P. SQUEO*
BERNARD M. HARTNETT, JR.*
NOEL D. HUMPHREYS*
ANTHONY ROMANO II*
CHARLES J. HARRINGTON III*
STEVE BARNETT
KARIN I. SPALDING*
JODI ANNE HUDSON*

RICHARD A. JAGEN
W. NEVINS McCANN*
MITCHELL W. TARASCHI
BRAD D. SHALIT*
THOMAS J. O'LEARY*
DAVID J. MAIRO*
AGNES ANTONIAN*
BRYAN P. COUCH*
GREGORY E. PETERSON
MICHELE T TANTALLA*
PHILIP N. FLUHR
THOMAS J. PASUIT*
PATRICK S. BRANNIGAN*
MATTHEW I. GENNARO
M. TREVOR LYONS*
MICHAEL A. SHADIACK
OWEN C. McCARTHY
PATRICIA A. LEE*
NEIL V. MODY*
JENNIFER C. CRITCHLEY*
MELISSA A. DIDATO*
MATTHEW S. SCHULTZ*
CRAIG A. ROSEN
RYAN A. McGONIGLE*
DANIA M. BILLINGS*
ANTONIO CELI*

ALEXIS E. LAZZARA
TED P. CASTELL*
RONAK R. CHOKSHI*
CHRISTINE I. GANNON*
DOUGLAS J. SHORT*
MICHAEL A. BASELICES
CATHERINE G. BRYAN*
AYANNA A. CAGE
MICHAEL P. DAVIS
JAMES C. HAYNIE
LAURIE B. KACHONICK
MAIDA PEREZ
WILLIAM D. DEVEAU
THOMAS A. TELESCA*
VINCENT A. ANTONIELLO
LAUREN E. SWEENEY*
ELIZABETH W. EATON
JOSEPH M. MURPHY
JASON E. MARX*
SARAH B. BLUMBERG*
CHRISTOPHER ABATEMARCO*
MEGHAN C. GOODWIN*
DANIELA R. D'AMICO*
CRISTOPHER S. DEMARESKI*
MELISSA ASTUDILLO*
ANDREW J. McNALLY*
AMY TODD*
ADAM M. LUSTBERG*

PLEASE REPLY TO ROSELAND, N.J.

JERSEY CITY OFFICE
HARBORSIDE FINANCIAL CENTER
2510 PLAZA FIVE
JERSEY CITY, N.J. 07311-4029
(201) 521-1000
FAX: (201) 521-0100

NEW YORK OFFICE
888 SEVENTH AVENUE
NEW YORK, N.Y. 10106
(212) 262-2390
FAX: (212) 262-3118

PHILADELPHIA OFFICE
1500 MARKET STREET
PHILADELPHIA, PA 19102
(215) 246-3403
FAX: (215) 665-5727

*ALSO ADMITTED IN NEW YORK
+ALSO ADMITTED IN PENNSYLVANIA
—ONLY ADMITTED IN NEW YORK

WRITER'S DIRECT DIAL

August 30, 2006

**_Via Federal Express, Electronic Filing and Email_**
Hon. John J. Hughes, U.S.M.J.
United States District Court
Clarkson S. Fisher Federal Bldg. & Courthouse
402 East State Street
Trenton, NJ 08608

RE:     **Broadcom Corporation v. Qualcomm Incorporated**
        **Civil Action No. 05-3350 (MLC)**

Dear Judge Hughes:

On behalf of non-party, Texas Instruments Incorporated ("TI"), enclosed are the following papers submitted in further support of TI's Amended Motion to Quash a portion of the subpoena issued by the defendant on TI in the above referenced matter:

1. Reply Brief in Further support of TI's Amended Motion to Quash and in Opposition to Defendant's Cross-Motion to Compel; and

2. Certification of Service.

1750560-01

Hon. John J. Hughes, U.S.M.J.
August 30, 2006
Page 2


   We have also filed these papers electronically pursuant to the electronic filing procedures and have Federal Expressed and emailed a copy to Your Honor as well.  Should Your Honor or your staff have any questions regarding the above motion we are always available.

          Respectfully submitted,

          Liza M. Walsh


LMW/mym
Enclosures
cc:  (via Email and Federal Express)
   David S. Stone, Esq.
   William J. O'Shaughnessy, Esq.
   Robert A. Magnanini, Esq.
   Steven John Kaiser, Esq.
   Evan Chesler, Esq.
   Stephen R. Neuwirth, Esq.