UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>                         Plaintiff,<br><br>          v.<br><br>QUALCOMM INCORPORATED,<br><br>                         Defendant. | Civil Action No. 05-3350 (MLC) (JJH)<br><br>Return Date: February 19, 2008<br>Oral Argument Requested |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS CLAIMS FOUR THROUGH EIGHT OF PLAINTIFF'S
SECOND AMENDED COMPLAINT**

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022

CONRAD O'BRIEN GELLMAN & ROHN, P.C.
1515 Market Street, Suite 1600
Philadelphia, PA 19102

*Attorneys for Defendant
Qualcomm Incorporated*

ME1 7146044v.1

## Table of Contents

Page(s)

Preliminary Statement ..................................................................................................................1

Argument ......................................................................................................................................2

I. BROADCOM'S STATE LAW CLAIMS FAIL BECAUSE BROADCOM HAS NOT ADEQUATELY ALLEGED CAUSATION OR INJURY ................................................2

    A. Breach of Contract .................................................................................................2

    B. Promissory Estoppel ..............................................................................................4

    C. Tortious Interference with Prospective Economic Advantage ..............................4

    D. Fraud ......................................................................................................................5

    E. UCL .......................................................................................................................6

    F. Broadcom's 802.20 Theory ...................................................................................6

    G. Broadcom's Invocation of Inapposite Filings and Unrelated Cases ......................7

II. BROADCOM'S JVT CLAIMS SHOULD BE DISMISSED UNDER THE COMPULSORY COUNTERCLAIM RULE AND RES JUDICATA ...............................8

    A. The Compulsory Counterclaim Rule .....................................................................8

    B. Res Judicata ........................................................................................................10

Conclusion ..................................................................................................................................12

# Table of Authorities

Page(s)

**Cases**

*AccuImage Diagnostics Corp. v. TeraRecon, Inc.*, 260 F. Supp. 2d 941 (N.D. Cal. 2003) ............ 5

*Bradley v. Google, Inc.*, No. C 06-05289, 2006 WL 3798134 (N.D. Cal. Dec. 22, 2006).............. 4

*Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297 (3d Cir. 2007) ........................................ 5, 6, 8

*Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002) ................................................................... 10, 11

*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798 (2007) ............................................. 6

*Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537 (Fed. Cir. 1985) ............................ 4

*Duse v. IBM Corp.*, 212 F.R.D. 58 (D. Conn. 2002), *aff'd*, 75 Fed. Appx. 44
  (2d Cir. 2003) ............................................................................................................................ 11

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ............................................................... 5

*Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005) ...................... 10

*Gamble v. General Foods Corp.*, 229 Cal. App. 3d 893 (1991)................................................... 12

*Guale v. Rolls-Royce Engine Servs.-Oakland, Inc.*, No. A105370, 2005 WL 984373
  (Cal. Ct. App. Apr. 28, 2005)...................................................................................................... 4

*Haefner v. North Cornwall Twp.*, 40 Fed. Appx. 656 (3d Cir. 2002)................................... 10, 11

*Harnett v. Billman*, 800 F.2d 1308 (4th Cir. 1986)..................................................................... 11

*Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717 (1994) .................................................... 3

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ....................................... 6

*Lewis Jorge Constr. Mgmt. v. Pomona Unified School Dist.*, 34 Cal. 4th 960 (2005)................. 3

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ........................................................................ 5

*McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609 (10th Cir. 1983)......................................... 11

*Nokia Corp. v. Qualcomm, Inc.*, No. Civ. A 06-509, 2006 WL 2521328
  (D. Del. Aug. 29, 2006) .............................................................................................................. 7

*Russell v. Sunamerica Sec., Inc.*, 962 F.2d 1169 (5th Cir. 1992) ................................................ 11

Page(s)

**Cases**

*Schmitz v. Mars, Inc.*, 261 F. Supp. 2d 1226 (D. Or. 2003) .......................................................... 12

*Schwarz Pharma., Inc. v. Teva Pharms, U.S.A.*, Civ. No. 01-4995 (D.N.J. June 5, 2002) (slip op.) ........................................................................................................................................ 8

*Shook v. Pearson*, 99 Cal. App. 2d 348 (1950) ............................................................................... 3

*Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38 (1990) ......................................... 4

*Tierney v. Omnicom Group Inc.*, No. 06 Civ. 14302, 2007 WL 2012412 (S.D.N.Y. July 11, 2007) ...................................................................................................... 10

*Travelers Indem. Co. v. Gore*, 761 F.2d 1549 (11th Cir. 1985) .................................................... 12

*US Ecology, Inc. v. State*, 129 Cal. App. 4th 887 (2005) ............................................................... 4

*Walsh v. Truck Ins. Exch. Co.*, No. A097316, 2003 WL 121997 (Cal. Ct. App. Jan. 13, 2003) ............................................................................................................ 3

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996) ............................. 5

*Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999) ................................................ 5

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................................................... 5

## Preliminary Statement[1]

In its opening brief, Qualcomm argued that, because Broadcom fails to allege that any of Qualcomm's patents are essential, Broadcom does not plead direct injury to itself. In its opposition, Broadcom concedes the point. Notwithstanding the sweeping allegations in the SAC relating to Qualcomm's supposedly improper practices in disclosing and licensing its patents, Broadcom concedes that, on the face of the SAC, it does not need a license to any of those patents because none of them is essential to practice any standard. That concession is fatal because Broadcom cannot be directly injured by anything Qualcomm has done with respect to patents Broadcom does not need to practice in the first place.

Unable to support a claim of direct injury, Broadcom instead falls back on two much narrower and ultimately flawed theories: (1) it suffered *indirect* injury in the form of lost profits arising from "threats to [Broadcom's] actual and potential customers"; and (2) it was injured through the "expenditure of time and money attending meetings" of the allegedly "corrupted" 802.20 working group. However, as discussed below, in addition to narrowing the scope of this case dramatically, Broadcom's new injury arguments fail because, with respect to each of Broadcom's state law claims, Broadcom fails to allege facts essential to support its newfound theories.

In addition, Broadcom fails to respond in any meaningful way to Qualcomm's argument that the compulsory counterclaim rule and res judicata preclude Broadcom from burdening this Court with its JVT nondisclosure claim, which was previously litigated in another action in which the Judgment granted affirmative coercive relief to Broadcom.

---

[1] Citations and abbreviations used herein are in the same form as those used in Qualcomm's opening brief, unless otherwise indicated. "Mem." refers to Qualcomm's opening brief and "Opp." refers to Broadcom's opposition brief.

## Argument

### I. BROADCOM'S STATE LAW CLAIMS FAIL BECAUSE BROADCOM HAS NOT ADEQUATELY ALLEGED CAUSATION OR INJURY

Broadcom recognizes its "refusal to concede that [Qualcomm's] patents are essential". (Opp. 9.) As such, Broadcom does not argue that it has been directly injured by Qualcomm's alleged refusal to license its patents on FRAND terms or to disclose its patents in a timely manner.[2] Instead, Broadcom adopts a new and much narrower theory of indirect injury: that Qualcomm has attempted "to threaten BC's current and potential customers . . . and thereby impair BC's ability to make sales".[3] (*Id.* at 5.) Broadcom's theory of indirect injury fails because, with respect to each of Broadcom's state law claims, such a theory would require additional allegations that Broadcom cannot and does not make.

#### A. Breach of Contract

Abandoning its direct theory of liability, Broadcom acknowledges that its damages are limited to "lost profits" allegedly flowing from Qualcomm's "threats" against Broadcom customers. (Opp. 5, 11.) But Broadcom never alleges that such "threats" constitute a breach of any contract. Moreover, it is black letter law that, to recover lost profits on a contract claim, Broadcom must plead that those lost profits were "actually foreseen [] or reasonably

---

[2] As Broadcom alleges, SDO policies are aimed at preventing injuries caused by "holders of *essential* patents" and attempt to do so by "requir[ing] patent holders to . . . commit to license such *essential* IP" on FRAND terms. (SAC ¶¶ 5, 20 (emphasis added).)

[3] Broadcom also asserts that its injuries consist of "refusals to license intellectual property on FRAND terms" (Opp. 11), but Broadcom could not be injured thereby absent an allegation that the patents are essential. (Mem. 4-8.) Broadcom's only other injury theory—*i.e.*, that it incurred unnecessary (and presumably small) expenditures by attending 802.20 meetings—is discussed below. (*See infra* at 6-7.)

foreseeable" when the contract was made *and* plead the losses with particularity.[4] Broadcom fails on both counts. *First*, Broadcom never alleges that lost profits arising from threats to customers were foreseen or reasonably foreseeable under any alleged Qualcomm SDO commitments; rather, Broadcom alleges only that such commitments created obligations to disclose potentially essential IPR, license it on FRAND terms and (in the 802.20 context) disclose financial relationships with committee members. (SAC ¶¶ 85, 106-07, 183.) *Second*, Broadcom's lost profit allegations are utterly bereft of particularity: they identify no current or potential customers, no relationships with such customers, no instances of contact between Qualcomm and those customers and no resulting injury.

Broadcom also fails to allege (as it must) contract terms and facts supporting the conclusion that it is a third party beneficiary. *See Walsh v. Truck Ins. Exch. Co.*, No. A097316, 2003 WL 121997, at *4 (Cal. Ct. App. Jan. 13, 2003). Instead, Broadcom simply asserts as a bald conclusion—without reference to any contract language—that SDO disclosure policies and the 802.20 working group rules exist for Broadcom's benefit.[5] That is clearly inadequate. *See id*; *see also Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717, 1724-25 (1994).[6]

---

[4] *Lewis Jorge Constr. Mgmt. v. Pomona Unified School Dist.*, 34 Cal. 4th 960, 968-70, 975 (2005); *Shook v. Pearson*, 99 Cal. App. 2d 348, 352 (1950) ("The facts as to special damages must be stated with particularity. . . . The amount of such damages must be given, and the means of occasioning them must be set forth.").

[5] Broadcom misses the point with its argument that its patent disclosure theory properly pleads injury because the Third Circuit "held that BC's general allegation that an SSO's adoption of a standard eliminates competing technologies" was alleged with sufficient particularity. (Opp. 8.) That holding related only to antitrust injury. Furthermore, the SAC does not plead that the "attractive alternatives" available to the SDOs did not *also* contain Qualcomm technology. (*See, e.g.*, SAC ¶¶ 88, 146.) Notably, Broadcom does not contend that this omission was inadvertent.

[6] Although Broadcom accuses Qualcomm of "fail[ing] to mention" the terms of the ARIB and ATIS IPR policies that purportedly give rise to an obligation to Broadcom (Opp. 14 n.19), Broadcom failed to *plead* those terms—which is fatal to its ARIB and ATIS claims.

B.     **Promissory Estoppel**

Broadcom's vague and conclusory allegations of indirect injury also fail to support a claim for promissory estoppel. Having identified no "threatened" customers or adequately alleged any damage flowing from such threats, Broadcom's allegations are speculative, not definite—and therefore are insufficient as a matter of law. *See US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 904 (2005) (promissory estoppel damages "may include . . . loss of profits *when the loss is definite rather than speculative*") (emphasis added). Moreover, having failed to allege that Qualcomm's patents are essential, Broadcom cannot possibly allege (as it must to sustain its complaint) that it detrimentally relied on any promises made by Qualcomm relating to those patents. *See Guale v. Rolls-Royce Engine Servs.-Oakland, Inc.*, No. A105370, 2005 WL 984373, at *3 (Cal. Ct. App. Apr. 28, 2005) ("[D]etrimental reliance is an essential element of promissory estoppel."); *Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38, 48 (1990) ("No facts are alleged which show that [plaintiffs] changed their position in any way *because* of what they had been promised by the City.") (emphasis added).

C.     **Tortious Interference with Prospective Economic Advantage**

"Generic allegations that there was an interference with an unnamed third party are insufficient as a matter of law" to plead tortious interference with prospective economic advantage. *Bradley v. Google, Inc.*, No. C 06-05289, 2006 WL 3798134, at *4 (N.D. Cal. Dec. 22, 2006). Broadcom's tortious interference claim must accordingly be dismissed for two independently sufficient reasons. *First*, the SAC alleges, at most, that Qualcomm "did only what any patent owner has the right to do to enforce its patent[s], and that includes threatening alleged infringers with suit". *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985). Broadcom has failed to allege (as it must) that Qualcomm did so in "bad faith"—*i.e.*, that it knew its patents to be invalid. *See, e.g., Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340,

1355 (Fed. Cir. 1999). *Second*, the SAC fails to identify any third parties with whom Broadcom had an existing relationship or a single instance of interference with such a relationship. Broadcom's contention that those prospective customers "are among a narrow class of manufacturers of equipment that use specific chipsets" (Opp. 17) is insufficient. *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 520-23 (1996); *AccuImage Diagnostics Corp. v. TeraRecon, Inc.*, 260 F. Supp. 2d 941, 946, 957 (N.D. Cal. 2003).

### D. Fraud

Fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). As set forth above, Broadcom fails to allege with particularity any facts supporting its new indirect injury theory. Nor does it adequately plead reliance. (Mem. 18-19.)[7] The SAC also does not allege "the date, place or time of the fraud" arising from alleged threats to Broadcom customers. *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004). The facts Broadcom must allege—including the identity and actions of Broadcom's customers, Qualcomm's purported threats to those customers and the precise technology Qualcomm allegedly should have disclosed—are not "factual information that is peculiarly within QC's knowledge or control" (Opp. 19 (alterations and quotation marks omitted)); rather, they are known to Broadcom and must be pleaded with particularity.[8]

---

[7] The Third Circuit opinion, which raises but does not resolve the "interesting question" whether Broadcom's antitrust claims must be pleaded with particularity under Rule 9(b), is inapposite. *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 315 n.9 (3d Cir. 2007) (*cited in* Opp. 18). The Third Circuit's *dicta* related to whether Broadcom had alleged with particularity a "deceptive FRAND commitment"—and does not indicate, as Broadcom contends, that the Third Circuit found that Broadcom had adequately alleged every element of a state law fraud claim.

[8] Indeed, if Broadcom were truly as uninformed as it implies (Opp. 19) and as is indicated by the complete lack of detail surrounding its lost profits theory, then the SAC would raise serious issues under Rule 11, let alone Rule 9(b).

### E. UCL

To have standing to maintain any claim under the UCL, even for injunctive relief, a plaintiff must allege both that it "lost money or property" as to which it had a "vested interest", *and* that the defendant possesses money or property that could properly be the subject of a restitutionary remedy. *See Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 817 (2007); *see also* Mem. 19-20.[9] Broadcom has alleged neither, and Broadcom's strawman argument concerning whether it needs to allege that it paid monies *directly* to Qualcomm misses the point. The injury claimed by Broadcom is limited to "sales opportunities" it claims were "diverted" (Opp. 23), but Broadcom has no *vested* interest in such lost sales. (*See* Mem. 20-21 & n.9 (citing cases including *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (no vested interest in lost profits but only "an expectancy interest")). In addition, Broadcom fails to allege that Qualcomm holds any Broadcom monies that could be "restored", as required to establish standing. Broadcom alleges only "a contingent expectancy of payment from a third party", which cannot be the subject of a restitution award. *Id.* at 1150.

### F. Broadcom's 802.20 Theory

Broadcom attempts to evade the Third Circuit's holding that Broadcom could not have been harmed by any delay of the 802.20 standard. (Opp. 9, 11.) But the Third Circuit clearly held that Broadcom could not have suffered 802.20-related injury because "Broadcom does not compete" in the B3G (*i.e.*, "beyond 3G") and 4G areas and because Broadcom's allegation that it "may require a license" was too speculative. *Broadcom*, 501 F.3d at 322.

---

[9] Broadcom's claim that *Buckland* "turned on 'special facts'" (Opp. 23) is incorrect. The "special facts" related only to whether "the standing requirement at issue incorporates a requirement of actual reliance"—which is not at issue here. *Id.* at 818 n.11.

ME1 7146044v.1                                     6

Broadcom, again lacking an injury theory arising from Qualcomm's licensing conduct, adopts a fatally flawed theory—*i.e.*, that Broadcom "was injured through its expenditure of time and money attending meetings of" the 802.20 working group. (Opp. 9.) However, again, Broadcom fails to allege sufficient facts—*i.e.*, when it attended meetings and its reasonable expenditures—to support a claim under its "unnecessary expenditure" theory.

Accordingly, all of Broadcom's 802.20-related claims—which arise only under state law—should be dismissed.

### G.    Broadcom's Invocation of Inapposite Filings and Unrelated Cases

Broadcom's argument that Qualcomm's statements in other papers and proceedings excuse Broadcom from its pleading burden (Opp. 3-5) is meritless. *First*, the subject of this motion is *Broadcom's pleading*, not what Qualcomm allegedly has said. And here, as in other instances, Broadcom does *not* allege that any Qualcomm patents are essential or that Broadcom needs a license to them.[10] As such, Broadcom has failed to allege direct injury. *Second*, Qualcomm has never admitted that its alleged conduct injured Broadcom. Thus, Qualcomm's initial motion to dismiss merely *treated* Broadcom's allegations as true (as was required on motion to dismiss)—it plainly did not *concede* them.[11] *Third, Nokia Corp. v. Qualcomm, Inc.*, No. Civ. A 06-509, 2006 WL 2521328, at *2 (D. Del. Aug. 29, 2006), is inapposite. That court never held that Qualcomm's declarations of essentiality removed the

---

[10] *See* Supplemental Declaration of William J. O'Shaughnessy in Support of Defendant's Motion to Dismiss Claims Four Through Eight of Plaintiff's Second Amended Complaint ("Supp. O'Shaughnessy Decl."), Ex. 2 [Broadcom's Memorandum in Opposition to Qualcomm's Demurrer to Complaint, *Broadcom v. Qualcomm*, No. 07-CC-01249 (Orange Cty. Super. Ct. Apr. 12, 2007)], at 9 ("Broadcom has not conceded [that] Qualcomm's patents are essential").

[11] *See, e.g.*, Memorandum in Support of Defendant's Motion to Dismiss at 24 (Dec. 9, 2005); Reply Memorandum in Support of Defendant's Motion to Dismiss at 1 (Jan. 30, 2006); Brief of Defendant-Appellee at 47, *Broadcom v. Qualcomm*, No. 06-4292 (3d Cir. Jan. 30, 2007).

plaintiff's obligation to plead injury—indeed, it followed a remand hearing at which the complaint's sufficiency was not at issue.[12]

## II. BROADCOM'S JVT CLAIMS SHOULD BE DISMISSED UNDER THE COMPULSORY COUNTERCLAIM RULE AND RES JUDICATA

### A. The Compulsory Counterclaim Rule

Broadcom cannot avoid the compulsory counterclaim rule by contending that its JVT "allegations do not bear the requisite 'logical relationship' to the patent infringement claims QC asserted in the 1958 Action". (Opp. 29; citation omitted.) As Qualcomm previously noted (Mem. 25; citation omitted), Broadcom's JVT theory involves "'the same patent[s]'" at issue in the 1958 Action and the identical affirmative defense that Broadcom asserted in that case. Broadcom ignores these points as well as Qualcomm's supporting authority.[13]

Broadcom's remaining argument against application of the compulsory counterclaim rule is that, at the time Broadcom filed its Amended Answer and Counterclaims in the 1958 Action in December 2006, it "could not have asserted the H.264 claims it now brings". (Opp. 28.) Broadcom contends that, based upon its knowledge at the time, it was "impossible"

---

[12] Broadcom's citations to the Third Circuit's decision are similarly inapposite. That opinion focused on whether Broadcom had adequately alleged *anticompetitive conduct*, not injury-in-fact. *See, e.g., Broadcom*, 501 F.3d at 315 (*cited in* Opp. 6) (Broadcom alleged a Section 2 antitrust claim), 317-18 (*cited in* Opp. 4) (Broadcom alleged anticompetitive conduct).

[13] The cases cited by Broadcom (Opp. 29 n.43) concern an exception to the compulsory counterclaim rule for certain antitrust counterclaims in patent litigation. That exception has been confined to antitrust claims, as to which it has been narrowly construed. *See Schwarz Pharma, Inc. v. Teva Pharms., U.S.A.*, Civ. No. 01-4995, slip op. at 15-20 (D.N.J. June 5, 2002) (cited in Mem. 25; copy previously supplied). As previously noted (Mem. 26 & n.13), Rule 13(a) also applies to Broadcom's FRAND licensing theory involving patents essential to the H.264 standard, as well as to Broadcom's claims involving statements allegedly made by Qualcomm to Broadcom's customers concerning the same patents. Broadcom's brief is silent on those points.

for it to assert an affirmative counterclaim raising the JVT nondisclosure issue. (Opp. 25-28.)

But Broadcom's position is flatly inconsistent with its own statements in that case:

- In its Supplemental Interrogatory Answers in the 1958 Action, dated September 13, 2006—three months before filing its Amended Answer and Counterclaims—Broadcom asserted that "Qualcomm had an obligation to disclose the patents-in-suit to the JVT, prior to October 14, 2005, and that Qualcomm did not do so", and, as a result, "Qualcomm is barred by the doctrines of equitable estoppel, implied license by equitable estoppel, common law fraud, unclean hands, and breach of contract from asserting the patents-in-suit against Broadcom". *See* Ex. 2 to O'Shaughnessy Decl. at 15-16. Broadcom's JVT-related state law claims in this case rely on many of the same legal theories.

- In the same document, Broadcom stated that "Qualcomm . . . participated in the standard-setting process of the JVT, beginning in at least as early as December 2002". *Id.* Broadcom repeated that contention in its opposition to Qualcomm's Summary Judgment Motion directed at the JVT nondisclosure issue, filed a month before Broadcom's Amended Answer and Counterclaims. *See* Supp. O'Shaughnessy Decl., Ex. 1 [Broadcom's Opposition to Qualcomm's Motion for Summary Adjudication, *Qualcomm Inc. v. Broadcom Corp.*, No. 05 CV 1958 B (S.D. Cal. Dec. 4, 2006)], at 1, 11, 15. Contrary to its argument here (Opp. 27), Broadcom did not contend in either document that the evidence available to it at the time merely "suggested" Qualcomm's "likely" participation in JVT activities in 2002 (even assuming those "hedge" words to be material).

- In the same brief in the 1958 Action, Broadcom further stated that, in fact, "whether or not Qualcomm was involved in the JVT prior to 2003 was irrelevant to the issue of whether it had a duty to disclose the patents-in-suit" or whether that duty had been breached. As Broadcom stated, "[i]t is the March 2005 version of H.264 that Qualcomm's infringement expert relies on to argue that Broadcom infringes the patents-in-suit", and "even if it were true that Qualcomm's participation in the JVT began only in 2003 (which is contrary to the evidence), the evidence demonstrates that the JVT's patent disclosure policy imposed an ongoing duty of disclosure, which extended to time periods *after the standard was initially published*". (*Id.* at 1-2; emphasis in original.)

- Broadcom's brief also informed the Court in the 1958 Action that "Broadcom does not intend to pursue at trial in this action a claim of fraud, laches or breach of contract based on Qualcomm's failure to disclose the patents-in-suit to the Joint Video Team". (*Id.* at 3 n.3.)

Broadcom's statements in the 1958 Action contradict its argument here that its

JVT nondisclosure claim "had not matured" when it filed its Amended Answer and

Counterclaims. Broadcom consciously decided not to assert the counterclaim—but at the same

ME1 7146044v.1                                    9

time made *all* of the allegations necessary to support it in connection with an "affirmative defense" of "waiver". (*See* Opp. 2, 7; summarizing Broadcom's nondisclosure theory in the SAC.) Broadcom, by its own admissions in the 1958 Action, "knew enough to bring suit against [Qualcomm]" based upon the JVT nondisclosure theory when it filed its Amended Answer and Counterclaims. *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (*cited in* Opp. 30 n.44); *see also Haefner v. North Cornwall Twp.*, 40 Fed. Appx. 656, 658 (3d Cir. 2002) (defendant's concealment of information did not preclude plaintiff from including a certain claim in a prior lawsuit because "[t]he assertions in the original complaint in the [prior] action would have, by themselves, been more than sufficient to plead" the claim asserted in the second case).

### B. Res Judicata

Broadcom does not deny that it sought—and received—coercive affirmative relief on its JVT nondisclosure theory. (*See* Mem. 24, 27-28.) Nor does Broadcom contend that such coercive relief could have been entered based solely upon an affirmative defense of "waiver".[14]

Instead, Broadcom sidesteps these issues by claiming that principles *other* than "waiver", such as inequitable conduct and equitable estoppel, can provide "affirmative relief" without triggering res judicata. (Opp. 29-30.) But inequitable conduct, unlike "waiver", can be asserted in a patent case either as a defense or as an affirmative claim. *See, e.g., Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1362 & n.6 (Fed. Cir. 2005). And equitable estoppel operates to preclude injunction against the future infringing sale, manufacture, use or importation by the defendant of the *accused product*. The Court in the 1958 Action, however, did not simply permit continued sale of the accused H.264 products by Broadcom, but

---

[14] *See* Mem. 28 n.15; *see also Tierney v. Omnicom Group Inc.*, No. 06 Civ. 14302, 2007 WL 2012412, at *10 (S.D.N.Y. July 11, 2007) (dismissing cause of action based upon "waiver" because it can be asserted only as an affirmative defense).

rather declared Qualcomm's patents unenforceable against the entire world. (Judgment, Ex. 6 to O'Shaughnessy Decl., at 2-3.) That Court, without objection from Broadcom, thus treated the waiver issue not as a defense but as a *de facto* counterclaim, thereby triggering res judicata.

Moreover, Broadcom's invocation of an exception to res judicata "where the party seeking to raise the bar engaged in misconduct in the initial action" (Opp. 30 & n.44) fails, for two reasons. *First*, under *all* of the cases cited by Broadcom, the opposing party's misconduct in a prior lawsuit must actually have "prevented" a litigant from asserting a particular claim. *Browning*, 283 F.3d at 769-71; *McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609, 612-13 (10th Cir. 1983); *see also Haefner*, 40 Fed. Appx. at 658; *Harnett v. Billman*, 800 F.2d 1308, 1313-14 (4th Cir. 1986). For the reasons already discussed, Broadcom was not "prevented" from asserting claims based upon its JVT nondisclosure theory. To the contrary, Broadcom did assert its JVT nondisclosure theory, prevailed on it and was awarded affirmative coercive relief on it.

*Second*, if Broadcom wanted additional relief, it should have sought such relief in the 1958 Action prior to the entry of final judgment. The trial in that case ended in January 2007. (Mem. 23-24; SAC ¶ 223.) After that, the Court conducted extensive hearings on the "waiver" issue, including consideration of Qualcomm's alleged litigation misconduct and the appropriate remedy. Moreover, Qualcomm *completed* its supplemental production to Broadcom *before* the August 6, 2007, Judgment, which awarded affirmative coercive relief to Broadcom. (*See* SAC ¶ 209.) Broadcom thus had ample opportunity to seek additional relief on its JVT nondisclosure claim in light of information produced during or after trial. Under longstanding

principles of finality and claim preclusion, Broadcom should not be permitted to seek additional relief in this Court.[15]

## Conclusion

For the foregoing reasons, Qualcomm's motion should be granted.

February 15, 2008

                                      Respectfully submitted,

                                      McCARTER & ENGLISH, LLP

                                      By:  s/ William J. O'Shaughnessy
                                             William J. O'Shaughnessy

                                      Four Gateway Center
                                      100 Mulberry Street
                                          Newark, NJ 07101-0652
                                             (973) 622-4444
                                      Email:  woshaughnessy@mccarter.com

| | |
|---|---|
| Evan R. Chesler | Richard S. Taffet |
| Peter T. Barbur | Philip L. Blum |
| Elizabeth L. Grayer | BINGHAM MCCUTCHEN LLP |
| CRAVATH, SWAINE & MOORE LLP | 399 Park Avenue |
| Worldwide Plaza | New York, NY 10022 |
|    825 Eighth Avenue |    (212) 705-7000 |
|    New York, NY 10019 | |
|    (212) 474-1000 | |

Robert N. Feltoon
CONRAD O'BRIEN GELLMAN & ROHN, P.C.
1515 Market Street, Suite 1600
   Philadelphia, PA 19102
   (215) 864-8064

*Attorneys for Defendant Qualcomm Incorporated*

---

[15] *See, e.g., Duse v. IBM Corp.*, 212 F.R.D. 58, 61-62 (D. Conn. 2002), *aff'd*, 75 Fed. Appx. 44 (2d Cir. 2003); *Russell v. Sunamerica Sec., Inc.*, 962 F.2d 1169, 1176-77 (5th Cir. 1992); *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985); *Schmitz v. Mars, Inc.*, 261 F. Supp. 2d 1226, 1231-32 (D. Or. 2003); *Gamble v. General Foods Corp.*, 229 Cal. App. 3d 893, 902 (1991).