# Cravath, Swaine & Moore llp

ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON

JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III

WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DeMASI
LIZABETHANN R. EISEN

DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
CHRISTINE BESHAR

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1058

March 19, 2008

Broadcom Corp. v. Qualcomm Inc., No. 05-3350 (MLC) (JJH)

Dear Judge Hughes:

        We represent defendant-counterclaim plaintiff Qualcomm Incorporated in this matter, and I am writing to request a conference in connection with a dispute arising out of Broadcom Corporation's Amended Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) dated December 21, 2007 ("Amended Initial Disclosures") (attached hereto as Exhibit A). In addition to listing the names of 26 current or former Broadcom employees, Broadcom identifies the names of 163 third party companies or organizations—located all over the world—asserting it "believes that individual(s) *not yet identified* from each company and/or each company's subsidiaries and affiliates are likely to have discoverable information that Broadcom may use to support its claims". (Exh. A at 12; emphasis added.) Broadcom's Amended Initial Disclosures do not meet the requirements of Rule 26(a)(1) on numerous grounds and, in addition, are not consistent with the Court's Amended Pretrial Scheduling Order dated November 30, 2007, which limited each of the parties to no more than 40 depositions. We have exchanged letters and conducted numerous meet and confer sessions with Broadcom in an attempt to resolve this dispute, without success.[1]

---

[1] The issue was first raised in my letter of January 15, 2008, sent to counsel for Broadcom. (Attached hereto as Exhibit B.) Counsel for Broadcom responded by letter dated February 1, 2008 (attached hereto as Exhibit C), declining to amend Broadcom's Amended Initial Disclosures. Broadcom's letter also criticized Qualcomm's Amended Disclosures for failing to supply the names of specific individuals at Broadcom and to list any third parties. On February 29, 2008, Qualcomm served its Supplemental Rule 26(a)(1) Disclosures, which remedied both of the alleged failures identified by Broadcom.

On its face, Rule 26(a)(1) expressly requires that a party disclose "the *name* . . . of each *individual* likely to have discoverable information . . . that the disclosing party may use". (Emphasis added.) The Advisory Committee's Notes to Rule 26(a)(1) explain that, "[b]efore making its disclosures, a party has the obligation . . . to make a reasonable inquiry into the facts of the case" and that:

> As officers of the court, counsel are expected to disclose the identity of those persons who may be used by them as witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the other parties. Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed.

Advisory Committee Notes to 1993 Amendments to Rule 26(a); *see Hertz v. Luzenac America, Inc.*, No. 04-CV-1961, 2006 WL 994431, at *5, *5 n.3 (D. Colo. Apr. 13, 2006) (discussing purpose of Rule 26(a)(1) disclosures and noting that "[t]he United States Supreme Court has acknowledged the 'weight' and deference to be given to the Advisory Committee's construction of any Federal Rule of Civil Procedure" (citing *Schiavone v. Fortune*, 477 U.S. 21, 30-31 (1986))). As numerous courts have recognized, the purpose of requiring the early disclosure of the names of particular individuals is to "'assist other parties in deciding which depositions will actually be needed'". *Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004) (quoting Advisory Committee Notes to 1993 Amendments to Rule 26(a)) (attached hereto as Exhibit D); *see Lobato v. Ford*, No. 05-CV-01437, 2007 WL 2593485, at *5 (D. Colo. Sept. 5, 2007) (similar); *McKinney v. Reassure Am. Life Ins. Co.*, No. 06-Civ-271, 2006 WL 3228791, at *1 (E.D. Okla. Nov. 2, 2006) (citing *Sender*, 225 F.R.D. at 650) (similar); *Hertz*, 2006 WL 994431, at *5-6 (similar). As former Magistrate Judge Rosen stated in *Fitz v. Ralph Wilson Plastics Co.*, "the Rule 26 disclosure requirement should be applied with 'common sense . . . keeping in mind the salutary purposes that the rule is intended to accomplish'". 174 F.R.D. 587, 589 (D.N.J. 1997) (quoting Advisory Committee Notes to 1993 Amendments to Rule 26(a)).

The *Sender v. Mann* case is particularly instructive. The plaintiff in *Sender* was sanctioned for submitting a Rule 26(a)(1) disclosure listing the names of more than 300 third party witnesses. The Court in *Sender* found the plaintiff's submission to be inconsistent with the fact that "Rule 26(a)(1) disclosures are designed to accelerate the exchange of basic information and 'help focus the discovery that is needed, and facilitate preparation for trial or settlement'". 225 F.R.D. at 650 (quoting Advisory Committee Notes to 1993 Amendments to Rule 26(a)). The Court further stated that a "party cannot defeat the purposes of Rule 26(a)(1) simply by providing a laundry list of undifferentiated witnesses . . . particularly given the numerical limitations on depositions [of 25 per side] incorporated in the parties' Scheduling Order". *Id.* at 651. The situation here is remarkably similar. Notwithstanding a limit of 40 depositions-per-side—and notwithstanding Broadcom's argument that the parties should in fact be limited to 30

depositions-per-side[2]—Broadcom has identified over 160 third party *entities* as having discoverable information on which Broadcom may rely. Assuming each such entity had only two individuals with relevant information, the number of individuals at issue here would well exceed the number at issue in *Sender*.

Broadcom has cited no cases to support its position that it is permissible under Rule 26(a)(1) to disclose such a large number of third party entities rather than individuals. Broadcom has merely asserted that its failure to comply with Rule 26(a)(1)'s requirement to supply "the name . . . of each individual" is somehow excused on the basis that "the listed entities are generally actual or potential Qualcomm licensees and/or customers . . . and/or are participants in the standard-setting organizations at issue in this case" and that Qualcomm is supposedly "best positioned to know the identity of the specific individuals likely to possess" relevant information. (Exh. C at 1.) Moreover, Broadcom has not even attempted to reconcile its disclosure of 163 third parties with the 40-deposition limit set by the Court in response to Broadcom's position that only 30 depositions per side should be permitted.

The cases in fact reject Broadcom's position. For example, Broadcom's contention that it is excused from identifying the names of any individuals at any of 163 third party companies—because Qualcomm allegedly is "best positioned" to know who at each company has relevant knowledge—was expressly rejected in *Fitz v. Ralph Wilson Plastics, Co.*, in which Judge Rosen explained that "the plaintiffs also purport that Rule 26(e) [which requires supplementation of disclosures under Rule 26(a)] does not require disclosure of what is already known to the defendants. However, 'it is not usually ground for objection that the information [sought] is equally available to the interrogator'." 174 F.R.D. at 591 (citing 8 Wright, Miller & Kane, *Federal Practice and Procedure* § 2014 (2d ed. 1994)). It is also frankly absurd for Broadcom to assert that Qualcomm must know the names of the individuals Broadcom would likely call as witnesses from each of 163 third party companies and organizations, many of which are large multinationals with thousands of employees spread all over the globe.[3]

In the end, Broadcom's position is that it is appropriate to supply Qualcomm now with a long list of third party companies as to which Broadcom hopes it *might* be able to find a suitable witness, and then supplement its disclosures later with the actual names of any such witnesses. The Court in *Sender* rejected such a "laundry list" approach as inconsistent with the purpose of Rule 26(a), including the obligation to

---

[2] *See* November 16, 2007 Letter from Steven J. Kaiser to Your Honor at 4 (contending that a 30-deposition limit should be imposed; suggesting that "fewer depositions [than 30] may be needed" and "more are unlikely"; and that Qualcomm's request for a 60-deposition limit was "an invitation for waste and harassment") (attached hereto as Exhibit E).

[3] With respect to the foreign entities listed, prompt identification of specific individuals is particularly crucial to ensure that any foreign discovery—which will likely have to proceed through the Hague Convention—can be accomplished prior to the December 19, 2008 fact discovery deadline.

"conduct a reasonable inquiry in advance" of making the required disclosures. 225 F.R.D. at 651. As the Court explained in *Intel Corp. v. Via Technologies, Inc.*:

> [W]hen a fact witness is disclosed [under Rule 26(a)(1)], all parties are on notice that the disclosing side contends the witness has relevant knowledge. All are thus on notice that the disclosing side may well have interviewed the witness and may have even obtained a statement. That would be the normal practice. 204 F.R.D. 450, 452 (N.D. Cal. 2001)

Accordingly, Qualcomm respectfully requests that the Court direct Broadcom to amend its Initial Disclosures in compliance with the requirements of Rule 26(a)(1) to identify specific individuals. Depending upon how many names of individuals Broadcom actually discloses from its current list of 163 third party companies and organizations, Qualcomm may seek to increase the current 40-deposition limit, but that issue need not be taken up by the Court at this time.

Respectfully,

Peter T. Barbur

The Honorable John J. Hughes
    United States District Court – District of New Jersey
        Clarkson S. Fisher Federal Building & U.S. Courthouse
           402 East State Street
           Trenton, NJ 08608

Copy w/encls. to counsel for all parties.

Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BROADCOM CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-3350 (MLC) |
| v. | ) ) | |
| QUALCOMM INCORPORATED, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF BROADCOM CORPORATION'S AMENDED INITIAL DISCLOSURES

## PURSUANT TO FED. R. CIV. P. 26(a)(1)

Pursuant to the Court's Amended Pretrial Scheduling Order entered December 4, 2007, Broadcom Corporation ("Broadcom") makes the following initial disclosures under Federal Rule of Civil Procedure 26(a)(1). These initial disclosures are based on information reasonably available to Broadcom at this time. Broadcom's investigation and review of documents related to this matter is continuing, and Broadcom reserves the right to supplement these disclosures as provided for under Federal Rule of Civil Procedure 26(e) as developments warrant.

These disclosures are made without waiving any right to object (1) to any discovery request or proceeding involving or relating to the subject matter of these disclosures consistent with the Federal Rules of Civil Procedure and the Local Rules; or (2) to the use of any information disclosed in any proceeding in this action or in any other action.

**A.    Individuals Likely to Have Discoverable Information That Broadcom May Use to Support Its Claims**

Subject to the foregoing and based on the information reasonably available to Broadcom at the present time, Broadcom identifies the following individuals as likely to have discoverable information that Broadcom may use to support its claims, unless solely for impeachment.

<u>Past & Present Broadcom Corporation Employees</u>

1.    Moussa Bavafa – Broadcom Corporation, 190 Mathilda Place, Sunnyvale, California 94086 (T: 408-922-5898).  Subjects:  development of the IEEE 802.20 standard.

2.    Joseph Boccuzzi – Broadcom Corporation, 100 Matawan Road, Suite 210, Matawan, New Jersey 07747 (T: 732-888-3500).  Subjects: Broadcom's efforts to design and/or sell WCDMA[1] ASICs; and standard-setting/development efforts related to 3G mobile wireless technologies.

3.    Mark D. Brazeal – Broadcom Corporation, 190 Mathilda Place, Sunnyvale, California 92618 (T: 408-543-3300).  Subjects:  Broadcom's WCDMA and GSM/GPRS/EDGE licensing negotiations with Qualcomm Incorporated ("Qualcomm").

4.    Xuemin Chen – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6185).  Subjects:  development of the H.264 video compression standard.

5.    Michael A. Civiello – Broadcom Corporation, 1131 West Warner Street, Suite 104, Tempe, Arizona 85284 (T: 480-753-2260).  Subjects:  Zyray's WCDMA licensing negotiations with Qualcomm; Zyray's and Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; and Zyray's and Broadcom's efforts to design and/or sell WCDMA ASICs.

6.    Yossi Cohen – Broadcom Corporation, 5300 California Ave., Irvine California 92617 (T: 949-585-5319).  Subjects:  Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCMDA ASICs; and Broadcom's efforts to design and/or sell WCDMA ASICs.

7.    Ed H. Frank – Broadcom Corporation, 190 Mathilda Place, Sunnyvale, California 92618 (T: 408-543-3300).  Subjects:  Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs.

---

[1] Terms such as "WCDMA," "ASICs," "3G," and the other acronyms and terms used herein have the same meanings as in the Plaintiff's Second Amended Complaint.

8.      Stephen Gordon – Broadcom Corporation, 200 Brickstone Square, Suite 401, Andover, Massachusetts 01810 (T: 978-719-1322).  Subjects:  development of the H.264 video compression standard; and Broadcom's H.264-compliant products.

9.      Victor Hou – Broadcom Corporation, 16340 West Bernardo Drive, San Diego, California 92127 (T: 858-521-5875).  Subjects:  standard-setting/development efforts related to B3G/4G mobile wireless technologies.

10.     Ketan Kamdar – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-450-8700).  Subjects:  Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; and Broadcom's efforts to design and/or sell WCDMA ASICs.

11.     Mark Kent – Broadcom Corporation, 16340 West Bernardo Drive, San Diego, California 92127 (T: 858-521-5853).  Subjects:  ETSI rules and requirements.

12.     Thomas Kolze – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6136).  Subjects:  development of the IEEE 802.20 standard.

13.     Thomas Lagatta – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6644).  Subjects:  effect of Qualcomm's misconduct on Broadcom's business.

14.     Alexander MacInnis – Broadcom Corporation, 2370 E. Stadium Boulevard, No. 42, Ann Arbor, Michigan 48104-4811 (T: 408-501-3801).  Subjects:  development of the H.264 video compression standard; and Broadcom's H.264-compliant products.

15.     Robert G. Nalesnik – Broadcom Corporation, 190 Mathilda Place, Sunnyvale, California 94086 (T: 408-543-3300).  Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCMDA ASICs; and Broadcom's efforts to design and/or sell WCDMA ASICs.

16.     Robert A. Rango – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-450-8700).  Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; and Broadcom's efforts to design and/or sell WCDMA ASICs.

17.     Henry Samueli – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-5610).  Subjects:  Broadcom's corporate history and business model; and Broadcom's marketing and sales of products compliant with the WCDMA, GSM/GPRS/EDGE, and H.264 standards.

18.     Nambi Seshadri – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-450-8700).  Subjects:  Broadcom's WCDMA licensing negotiations with Qualcomm; Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; Broadcom's efforts to design

3

and/or sell WCDMA ASICs; effect of Qualcomm's misconduct on Broadcom's business; and Broadcom's strategic planning and/or competitive analyses relating to B3G/4G mobile wireless technologies and products.

19.    Bazhong Shen – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6019).  Subjects:  ETSI rules and requirements.

20.    Adam C. Spice – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-450-8700).  Subjects:  Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs.

21.    Robert E.M. Swann – Broadcom Corporation, Unit 406, Science Park, Milton Road, Cambridge, CB4 0WW, United Kingdom (T: 44-1223-381352).  Subjects:  Broadcom's H.264-compliant products; and effect of Qualcomm's misconduct on Broadcom's business.

22.    Pat Thaler – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-570-2707).  Subjects:  rules and regulations pertaining to the IEEE 802.20 working group.

23.    Shannon Tyson, Jr., Esq. – Broadcom Corporation, 8303 Mopac Expressway North, Austin, Texas 78759 (T: 512-651-9542).  Subjects:  Broadcom's participation in standard-setting organizations; Qualcomm's participation in standard-setting organizations; and rules and requirements of standard-setting organizations.

24.    Pieter van Rooyen – Broadcom Corporation, 15434 Innovation Drive, San Diego, California 92128 (T: 858-385-8800).  Subjects:  Zyray's WCDMA licensing negotiations with Qualcomm; Zyray's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; Zyray's efforts to design and/or sell WCDMA ASICs; standard-setting/development efforts related to 3G mobile wireless technologies and B3G/4G mobile wireless technologies; and Broadcom's strategic planning and/or competitive analyses relating to B3G/4G mobile wireless technologies and products.

25.    Wade K. Wan – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6387).  Subjects:  development of the H.264 video compression standard.

26.    Sheng Zhong – Broadcom Corporation, 2451 Mission College Blvd., Santa Clara, California 95054 (T: 408-501-3885).  Subjects:  development of the H.264 video compression standard.

Past & Present Qualcomm Incorporated / Flarion Technologies Incorporated Employees[2]

27.    Derek K. Aberle – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Broadcom's WCDMA licensing

---

[2] Broadcom believes that all individuals listed are employed, or were employed, by Qualcomm or an affiliate of Qualcomm.  The noted affiliations within Qualcomm may not in some instances be current or correct.

negotiations with Qualcomm; and Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

28.     Jeff Altman – Qualcomm Technology Licensing, Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; and Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

29.     Steven R. Altman  – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; Qualcomm's participation in ETSI; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

30.     Sanjeev Athalye – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

31.     Kent Baker – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's licensing policies; Qualcomm's understanding of its patent disclosure obligations; Qualcomm's understanding of its FRAND obligations; Qualcomm's participation in ETSI; and Qualcomm's participation in the JVT.

32.     Gwen Barriac – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

33.     Yiliang Bao - Qualcomm Incorporated, 10145 Pacific Heights Blvd., San Diego, California  92121.  Subjects:  Qualcomm's participation in the JVT.

34.     Marvin Blecker – Qualcomm Technology Licensing, Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

35.     Luke Bonacci – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Zyray's WCDMA licensing negotiations with Qualcomm; and Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

36.     Peter Carson – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

5

37.    Tao Chen – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

38.    Greg Cobb – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; and Qualcomm's participation in the JVT.

39.    James Determan – Qualcomm Incorporated, 9950 Barnes Canyon Road, San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

40.    Sean English – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in ETSI; and Qualcomm's efforts to conceal information related to its JVT patents.

41.    Mark Epstein – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

42.    John Fan – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

43.    Mark Frankel – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

44.    Hari Ganti – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

45.    Harinath Garudadri – Qualcomm Incorporated, 5665 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in ETSI; and Qualcomm's participation in the JVT.

46.    Glenn Golden – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

47.    Dhananja Gore – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

48.     Jin Guo – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

49.     Michael Hartogs – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; Qualcomm's understanding of its patent disclosure obligations; Qualcomm's understanding of its FRAND obligations; and Qualcomm's participation in ETSI.

50.     George Iritz – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

51.     A. Chris Irvine – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

52.     Irwin M. Jacobs – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

53.     Jeffrey A. Jacobs – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

54.     Paul E. Jacobs – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

55.     Avinash Jain – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

56.     Sanjay K. Jha – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264

technology; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

57.     Ravi Kalavakunta – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

58.     Samir Kapoor – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

59.     Farrokh Khatibi – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

60.     Mark Klerer – Qualcomm Incorporated, 500 Somerset Corporate Blvd., Bridgewater, New Jersey 08807.  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group; Qualcomm's violations of the rules of the 802.20 working group; Qualcomm's participation in ETSI; and the Mobile Broadband Wireless Access Working Group.

61.     Rajiv Larioa – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

62.     Junyi Li – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

63.     James Lederer – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Qualcomm's licensing, interactions with standard-development organizations and related business practices.

64.     Jeff Lorbeck – MediaFLO USA, Inc., Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

65.     Albert Scott Ludwin – Qualcomm Incorporated, 5665 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in ETSI; and Qualcomm's participation in JVT.

66.     Louis M. Lupin  – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; Qualcomm's understanding of its patent disclosure obligations; Qualcomm's

understanding of its FRAND obligations; Qualcomm's participation in ETSI; and Qualcomm's participation in the JVT.

67.     Ajay Luthra – Motorola, BCS, 6420 Sequence Drive, San Diego, CA 92121 (T:858-404-3470).  Subjects:  JVT disclosure obligation; and Qualcomm's participation in the JVT.

68.     Sandip Minhas – Qualcomm Incorporated, 5355 Mira Sorrento Place, San Diego, CA 92121.  Subjects:  Qualcomm's participation in JVT.

69.     Max Miyazono – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

70.     Ayman Naguib – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

71.     Mullaguru Naidu – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

72.     Tom O'Neil – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Qualcomm's licensing and related business practices.

73.     William Otondo – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Qualcomm's licensing and related business practices.

74.     Roberto Padovani – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and standard-setting/development efforts related to 3G mobile wireless technologies and B3G/4G mobile wireless technologies.

75.     Vincent Park – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

76.     Vladimir Parizhsky – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

77.    Luis Pineda – Qualcomm CDMA Licensing, Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

78.    Rajat Prakash – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

79.    Viji Raveendran – Qualcomm Incorporated, 10145 Pacific Heights Blvd., San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

80.    Yuriy Reznik – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

81.    Alex Rogers – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

82.    Thomas R. Rouse – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; Qualcomm's understanding of its patent disclosure obligations; Qualcomm's understanding of its FRAND obligations; Qualcomm's participation in ETSI; Qualcomm's participation in the JVT; and Qualcomm's obligations to comply with standard-setting organization rules.

83.    Phoom Sagetong – Qualcomm Incorporated, address unknown.  Subjects:  Qualcomm's participation in the JVT.

84.    Don Schrock – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Qualcomm's licensing and related business practices.

85.    Ammon Silberger – Qualcomm Incorporated, 9940 Barnes Canyon Road, San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

86.    Richard Sulpizio – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm.

87.    Arak Sutivong – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

88.    Anne-Lise Thieblemont – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

89.    Edward Tiedemann – Qualcomm Incorporated, 5665 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in ETSI, the JVT, and the 802.20 working group.

90.    James Tomcik – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

91.    Stephane Tronchon – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Qualcomm's interactions with ETSI and other standard-development organizations.

92.    Tom Wasilewski – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

93.    Rao Yallapragada – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

94.    Yan Ye – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

95.    Jay C. Yun – Qualcomm Incorporated, 10145 Pacific Heights Blvd. San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

<u>Other</u>

96.    Friedhelm Hillebrand – [contact info to come].  Subject:  the development of the UMTS standard; IPR policies pertinent to the development of the UMTS standard; and Qualcomm's participation in the development of the UMTS standard.

97.    Lee Patch – Day Casebeer Madrid & Batchelder LLP, 20300 Stevens Creek Boulevard, Suite 400, Cupertino, California 95014.  Subjects:  Qualcomm's concealment of its participation in the JVT.

98.    Gary Sullivan – Microsoft Corp., One Microsoft Way, Redmond, Washington 98052 (T: 425-703-5308).  Subjects:  JVT disclosure obligations; and Qualcomm's participation in the JVT.

99.    Jerry Upton – J. Upton Consulting, 317 N. Meacham, Park Ridge, Illinois 60068 (T: 847-772-4800).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

100.    Andrew Viterbi – University Park Campus, Viterbi Department of Electrical Engineering, University of Southern California, Los Angeles, California 90089.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm

11

ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); Flarion, its technology and intellectual property holdings; and Qualcomm's proposed acquisition of Flarion.

101.    Thomas Wiegand – Heinrich Hertz Institute, Einsteinufer 37, 10587, Germany (T: 49-0-30-31002-617).  Subjects:  JVT disclosure obligation; and Qualcomm's participation in the JVT.

For the companies listed below, Broadcom believes that individual(s) not yet identified

from each company and/or each company's subsidiaries and affiliates are likely to have

discoverable information that Broadcom may use to support its claims.

102.    Agere Systems Incorporated (individual(s) not yet identified), 1110 American Parkway NE, Allentown, Pennsylvania 18109.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

103.    Airvana, Incorporated (individual(s) not yet identified), 19 Alpha Road, Chelmsford, Massachusetts 01824.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

104.    AirWalk Communications, Inc. (individual(s) not yet identified), 1830 North Greenville Avenue, Richardson, Texas 75081.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

105.    ALBAHITH (individual(s) not yet identified), P.O. Box 927495, Amman 11190, Jordan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

106.    Alcatel SA (individual(s) not yet identified), 54, rue La Boétie, 75008 Paris, France.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for

similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

107.    Alliance for Telecommunications Industry Solutions, ATIS (individual(s) not yet identified), 1200 G Street, NW, Suite 500, Washington, DC 20005, T: 202-628-6380. Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

108.    Alltel Corporation (individual(s) not yet identified), One Allied Drive, Little Rock, Arkansas, 72202.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

109.    Alps Electric Co., Ltd. (individual(s) not yet identified), Suite # 500, 910 E. Hamilton Avenue, Campbell, California 95008.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

110.    Alvarion Ltd. (individual(s) not yet identified), 21A HaBarzel Street, P.O. Box 13139, Tel Aviv 61131, Israel.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

111.    American National Standards Institute, ANSI (individual(s) not yet identified), 1819 L Street, NW, Sixth Floor, Washington, DC 20036, T: 202-293-8020.  Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

112.    Amoi Mobile Co., Ltd. (individual(s) not yet identified), 210 Middel Road, #08-01, IOI Plaza, Singapore 188994.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

113.    Analog Devices, Inc., (individual(s) not yet identified), One Technology Way, Norwood, Massachusetts 02062-9106.  Subjects:  standard-setting/development efforts related to 3G mobile wireless technologies.

114.    Apple. Inc.  (individual(s) not yet identified), 1 Infinite Loop, Cupertino, California, 95014.  Qualcomm licensing practices for CDMA technology, WCDMA

technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

115.    ArrayComm Incorporated (individual(s) not yet identified), 2480 N. First Street, Suite 200, San Jose, California 95131 or Davies Corporate Center, 1016 Rt. 33 East, Freehold, New Jersey 07728.  Subjects:  Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

116.    Association of Radio Industries and Businesses, ARIB (individual(s) not yet identified), Nittochi Bldg. 14F, 1-4-1, Kasumigaseki, Chiyoda-ku, Tokyo 100-0013, Japan, T: 81-3-5510-8590.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

117.    AT&T Inc. (individual(s) not yet identified), 175 E. Houston, San Antonio, Texas.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

118.    Axesstel, Incorporated (individual(s) not yet identified), 6815 Flanders Drive, Suite 210, San Diego, California 92121.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

119.    Axio Wireless, Incorporated (individual(s) not yet identified), 805 Aerovista Place, Suite 103, San Luis Obispo, California 93401.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

120.    Bellwave, Incorporated (individual(s) not yet identified), 6th Floor Kamco Yang Jae Tower, 949-3 Dogok-Dong, Kangnam-GU, Seoul 135-270, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

121.    BenQ Corporation (individual(s) not yet identified), 157 Shanying Road, Gueishan, Taoyuan 333, Taiwan.  Subjects:  Qualcomm licensing practices for CDMA

technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

122.    BT Group PLC (individual(s) not yet identified), BT Centre, 81 Newgate Street, London EC1A 7AJ.  Subjects:  standard-setting/development efforts related to 3G mobile wireless technologies.

123.    Casio Computer Co., Ltd. (individual(s) not yet identified), 6-2, Honmachi 1-chome, Shibuya-ku, Tokyo 151-8543, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

124.    CEC Telecom Co., Ltd. (individual(s) not yet identified), CEC Information Mansion, No. 6, Zhongguancun South Road, Haidian District, Beijing, China.  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

125.    Chi Mei Communications Systems (individual(s) not yet identified), 11F, No. 39, Chung Hua Road Sec. 1, Taipei 100, Taiwan, R.O.C.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

126.    China Communications Standards Association, CCSA (individual(s) not yet identified), 52, Hua Yuan Bei Road, Haidian District, Beijing 100083, China, T: 86-10-6230-2645.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

127.    China Mobile (individual(s) not yet identified), 60/F, The Center 99 Queen's Road Central, Hong Kong.  Subjects:  Qualcomm licensing practices for CDMA technology and WCDMA technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders.

128.    China Unicom (individual(s) not yet identified), 75th Floor The Center 99 Queens Road, Central, Hong Kong.  Subjects:  Qualcomm licensing practices for CDMA technology and WCDMA technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

129.     Cisco Systems, Incorporated (individual(s) not yet identified), 170 West Tasman Drive, San Jose, California 95134.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

130.     Compal Electronics, Incorporated (individual(s) not yet identified), 581 Juikang Road Neihu, Taipei, Taiwan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

131.     Contela, Incorporated (individual(s) not yet identified), 4th Floor, Korea First Bank Building 6-8, Sunae-dong, Bundang-gu, Sungnam-si, Kyunggido 463-825, Korea. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

132.     Curitel Communications, Incorporated (individual(s) not yet identified), Peungwha Seocho Bldg., 1451-34, Seochodong, Seocho-gu, Seoul 137-867, Korea. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

133.     Dalian Daxian Group Co., Ltd. (individual(s) not yet identified), Houge Street, Gezhenpu, Ganjingzi District, Dalian, Liaoning, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

134.     Dalian Huanyu Mobile Technological Co., Ltd. (individual(s) not yet identified), No.107 Huaihe Road, 116600, Dalian, Tianjin, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

135.     Datang Telecom Technology Co., Ltd. (individual(s) not yet identified), 40 Xueyuan Road, Haidian District, Beijing 100083, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA

mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

136.    Dell Incorporated (individual(s) not yet identified), One Dell Way, Round Rock, Texas 78682.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

137.    Denso Corporation (individual(s) not yet identified), 1-1, Showa-cho, Kariya, Aichi 448-8661, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

138.    Deutsche Telekom AG (individual(s) not yet identified), Friedrich-Ebert-Allee 140, 53113 Bonn, Germany.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

139.    eAnywhere Telecom, Incorporated (individual(s) not yet identified), 9710 Scranton Road, Suite 200, San Diego, California 92121.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

140.    Eastern Communications Co., Ltd., No. 66 Dongxin Avenue, Binjiang High Tech Dev. Zone, Hangzhou,  ZHJ 310053, PRC.  Subjects:  Qualcomm licensing practices for CDMA technology and WCDMA technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders.

141.    Eastern Communications Co., Ltd. (individual(s) not yet identified), No.398, Wensan Road, Hanghou, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

142.    EC Telecom Ltd. (individual(s) not yet identified), 801, Tower 2, World Trade Square, 123 Hoi Bun Road, Kwun Tong, Kowloon, Hong Kong.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE

technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

143.    Egyptian Telephone Company (individual(s) not yet identified), HATIF Telecom Industries, P.O. Box 1058, Amman 11821, Jordan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

144.    EMS Technologies, Incorporated (individual(s) not yet identified), 660 Engineering Drive, Norcross, Georgia 30092.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

145.    EoNex Technologies, Incorporated (individual(s) not yet identified), 10th Floor Sunae-Dong 22-3, Bundang-Gu, Songnam, Kyunggi-Do 463-825, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

146.    ERON Technologies Corporation (individual(s) not yet identified), 6-8 NownHyun-Dong, Seoul, 135-010, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

147.    ETRONICS Corporation (individual(s) not yet identified), 177, Chongchon-Dong, Bupyung-Gu, Inchon 403-030, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

148.    European Telecommunications Standards Institute, ETSI (individual(s) not yet identified), 650, route des Lucioles, 06921 Sophia-Antipolis Cedex, France, T: 33 (0)4 92 94 42 00.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

149.    Evercore Partners (individual(s) not yet identified), 55 East 52nd Street, 43rd Floor, New York, New York 10055.  Subjects:  Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

150.    Flarion Technologies Incorporated (additional individual(s) not yet identified), Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921.  Subjects: Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

151.    Flextronics International Ltd. (individual(s) not yet identified), 2 Changi South Lane, Singapore 486123.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

152.    France Telecom (individual(s) not yet identified), 6, place d'Alleray, 75015 Paris, France.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; and selecting mobile wireless technologies.

153.    Freescale Semiconductor, Incorporated (individual(s) not yet identified), 6501 William Cannon Drive West, Austin, Texas 78735.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

154.    Fujitsu Limited (individual(s) not yet identified), Shiodome City Center, 1-5-2 Higashi-Shimbashi Minato-ku, Tokyo 105-7123 Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

155.    Garmin Corporation (individual(s) not yet identified), No 68, Jangshu 2nd Road, Shijr, Taipei County, Taiwan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

156.    Glenayre Electronics, Incorporated (individual(s) not yet identified), Unit 22 Challenge House, Showered Drive, Bletchley, MK3 6DP.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE

technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

157.     Great Dragon Information Technology Corporation Ltd. (individual(s) not yet identified), 169 Beiyuan Road, Chaoyang District, Beijing 100101, China.  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

158.     Growell Telecom Co., Ltd. (individual(s) not yet identified), Two University Plaza, Suite 308, Hackensack, New Jersey 07601.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

159.     GSM Association (individual(s) not yet identified), 1st Floor Mid City Place, 71 High Holborn, London WC1V 6EA.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

160.     Guangzhou Jinpeng Group Co., Ltd. (individual(s) not yet identified), No.9 Shenzhou Road, Guangzhou Science City, Guangzhou, Guangdong 510663, China. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

161.     Guangzhou Southern Hi-Tech Co., Ltd. (individual(s) not yet identified), Er heng Road, Science Park, Guangzhou Hi-tech Industrial Development Zone, Guangzhou, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

162.     Haier Group Company (individual(s) not yet identified), No.1 Haier Road Hi-tech Zone Qingdao, China 266101.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

163.     Hewlett-Packard Company (individual(s) not yet identified), 3000 Hanover Street, Palo Alto, California 94304.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264

technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

164.    High Tech Computer Corporation (individual(s) not yet identified), No.23, Hsin Hua Road, Taoyuan 330, Taiwan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

165.    Hisense Group Co., Ltd. (individual(s) not yet identified), 17 Donghaixi Road, Qingdao, China. Subjects Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

166.    Hitachi Kokusai Electric Incorporated (individual(s) not yet identified), P's higashi-nakano Bldg., 3-14-20 Higashi-Nakano, Nakano-ku, Tokyo 164-8511, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

167.    Hitachi, Ltd. (individual(s) not yet identified), 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo, 100-8280 Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

168.    Hon Hai Precision Industry Co., Ltd. (individual(s) not yet identified), 2 Tzu Yu St., Tu-Cheng City, Taipei, Taiwan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

169.    Huawei Technologies Co., Ltd. (individual(s) not yet identified), Bantian, Longgang District, Shenzhen 518129, China. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

170.    Hutchison Telecommunications Ltd. (individual(s) not yet identified), Building A, 207 Pacific Highway, St. Leonards NSW 2065, Australia.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

171.    Hynix Semiconductors Inc. (individual(s) not yet identified), San 136-1, Ami-Ri Bubal-eub Icheon-si Kyoungki-do, Korea 467-701.  Subjects:  Qualcomm licensing practices for WCDMA technology and GSM/GPRS/EDGE technology, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

172.    Infineon Technologies AG (individual(s) not yet identified), St.-Martin-Strasse 53, 81669 Munich, Germany.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

173.    Institute of Electrical and Electronic Engineers, Incorporated, IEEE (individual(s) not yet identified), IEEE Operations Center, 445 Hoes Lane, Piscataway, New Jersey 08854, T: 732-981-0060.  Subjects:  standard-setting/development efforts related to B3G/4G mobile wireless technologies.

174.    Intel Corporation (individual(s) not yet identified), 2200 Mission College Blvd., Santa Clara, California 95052.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

175.    InterDigital (individual(s) not yet identified), 781 3rd Ave., King of Prussia, Pennsylvania 19406-1409.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; licensing practices of other CDMA or WCDMA intellectual property holders; actual or potential litigation threatened by Qualcomm regarding the licensing of its CDMA or WCDMA technology patents or regarding sales of its CDMA or WCDMA ASICs; and standard-setting/development efforts related to 3G mobile wireless technologies; essentiality of declared CDMA and WCDMA patents.

176.    International Telecommunication Union, ITU (individual(s) not yet identified), Place des Nations, CH-1211 Geneva 20, Switzerland, T: 41 22 730 51 11.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

177.    Inventec Appliances Corp. (individual(s) not yet identified), No.37, Wugung 5th Rd., Wugu Shiang, Taipei, Taiwan 248.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

178.    IP Wireless, Incorporated (individual(s) not yet identified), 1001 Bayhill Drive, 2nd Floor, San Bruno, California 94066.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

179.    Italtel Group S.p.A. (individual(s) not yet identified), Castelletto, 20019 Settimo Milanese, Milan, Italy.  Subjects:  Qualcomm licensing practices for WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; and selecting mobile wireless technologies.

180.    KDDI Corporation (individual(s) not yet identified), Garden Air Tower, 10-10, Iidabashi 3-chome, Chiyoda-ku, Tokyo 102-8460, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

181.    Kenwood Corporation (individual(s) not yet identified), 2967-3, Ishikawa-machi, Hachioji-shi, Tokyo, 192-8525 Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

182.    Kisan Telecom Co., Ltd. (individual(s) not yet identified), Taewon Building, 65 Bangyi-Dong, Songpa-Gu, Seoul, 138-828 Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

183.    Koninklijke KPN N.V. (individual(s) not yet identified), Maanplein 55, The Hague, 2516 CK.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

184.    Koninklijke Philips Electronics N.V. (individual(s) not yet identified), Groenewoudseweg 1, 5621 BA Eindhoven, Netherlands.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

185.    Konka Group Co., Ltd. (individual(s) not yet identified), Overseas Chinese Town, Shenzhen, Guangdong 518053, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

186.    KTF Technologies Incorporated (individual(s) not yet identified), 9th Floor Shinyoong Tower 265-3(4), Seohyun-dong Bundang-gu, Songnam City, Korea 463 769.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

187.    Kyocera Corporation (individual(s) not yet identified), 6, Takeda Tobadono-cho, Fushimi-ku, Kyoto, Japan 612-8501.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

188.    Langchao Group Co., Ltd. (individual(s) not yet identified), 2 Xinxizhonglu Road, Shangdi, Haidian District, Beijing, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

189.    Lenovo Mobile Communications Technology Ltd. (individual(s) not yet identified), 1 Manhattanville Rd., Purchase, New York 10577-2100.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm

ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

190.    LG Electronics, Incorporated (individual(s) not yet identified), LG Twin Towers, 20,Yeouido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

191.    Lucent Technologies Incorporated (individual(s) not yet identified), 600 Mountain Ave., Murray Hill, New Jersey 07974-0636.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies and B3G/4G mobile wireless technologies; and selecting mobile wireless technologies.

192.    Matsushita Electronic Components Co., Ltd. (individual(s) not yet identified), 1006, Oaza Kadoma, Kadoma, Osaka 571-8506, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

193.    Maxim Integrated Products, Incorporated (individual(s) not yet identified), 120 San Gabriel Dr., Sunnyvale, California 94086.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and actual or potential litigation threatened by Qualcomm regarding the licensing of its CDMA or WCDMA technology patents or regarding sales of its CDMA or WCDMA ASICs.

194.    Maxon Telecom Co., Ltd. (individual(s) not yet identified), 3F Sewon Venture Bldg.,705-18,Yeuksam-dong, Kangnam-gu, Seoul, Korea 135-948.  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

195.    Mitsubishi Electric Corporation (individual(s) not yet identified), Mitsubishi Denki Building, 2-2-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan.  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm

ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

196. Mobile System Technologies, Incorporated (individual(s) not yet identified), West Hill Building, 2chome 24-4 Nishigotanda, Shinagawa-Ku, Tokyo 141-0031, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

197. Morgan Stanley, (individual(s) not yet identified), 1585 Broadway, New York, New York 10036. Subjects: Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

198. Motorola, Incorporated (individual(s) not yet identified), 1299 East Algonquin Rd., 2nd Floor, Schaumburg, Illinois 60196. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; essentiality of declared CDMA and WCDMA patents; and selecting mobile wireless technologies.

199. NEC Corporation (individual(s) not yet identified), 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

200. Neuf Cegetel SA (individual(s) not yet identified). 40/42 quai du Point du Jour, 92659 Boulogne Billancourt cedex, France. Subjects: Qualcomm licensing practices for WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; and selecting mobile wireless technologies.

201. Ningbo Bird Co., Ltd. (individual(s) not yet identified), 99 Chengshan Road, Ningbo 315500, Zhejiang, China. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

202.     NOKIA Corporation (individual(s) not yet identified), Keilalahdentie 4, FIN-00045 Espoo, Finland.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; essentiality of declared CDMA and WCDMA patents; Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

203.     Nortel Networks (individual(s) not yet identified), 8200 Dixie Road, Brampton, Ontario L6T 5P6, Canada.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts for 3G mobile wireless technologies; selecting mobile wireless technologies; Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

204.     Novatel Wireless Incorporated (individual(s) not yet identified), 9645 Scranton Rd., Suite 205, San Diego, California 92121.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

205.     NTT DoCoMo (individual(s) not yet identified), Sanno Park Tower 11-1, Nagata-cho 2-chome, Chiyoda-ku, Tokyo 100-6150, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

206.     NXP B.V. (individual(s) not yet identified), High Tech Campus 60, 5656 AG, Eindhoven, The Netherlands.  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

207.    Option NV S.A. (individual(s) not yet identified), 45 Kolonel Begaultlaan, B-3012 Leuven, Belgium.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

208.    Palm, Inc. (individual(s) not yet identified), 950 W. Maude Avenue, Sunnyvale, California.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

209.    Panasonic Mobile Communications Co., Ltd. (individual(s) not yet identified), 600 Saedo-cho, Tsuzuki-ku Yokohama-city, Kanagawa 224-8539.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

210.    Pantech Co., Ltd. (individual(s) not yet identified), Sinsong Center Bldg. 25-12, Yeiouido-dong, Yeoungdeungpo-gu, Seoul, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

211.    Planet Technology Corporation (individual(s) not yet identified), 11F, No. 96, Min Chuan Road, Hsin Tien, Taipei, Taiwan, R.O.C.  Subjects:  standard-setting/development efforts related to 3G mobile wireless technologies.

212.    Putian Capital Group (individual(s) not yet identified), No. 28, Xuan Wu Men, Xi Da Jie, Beijing 100053, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

213.    Renesas Technology Corp. (individual(s) not yet identified), Marunouchi Bldg., 4-1, Marunouchi 2-chome, Chiyoda-ku, Tokyo 100-6334, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

214.    Research In Motion Limited (individual(s) not yet identified), 295 Phillip Street, Waterloo, Ontario, Canada N2L 3W8.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

215.    Sagem SA (individual(s) not yet identified), 27, rue Leblanc, 75512 Paris Cedex 15.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

216.    Samsung Electronics Co. (individual(s) not yet identified), 250, 2-ga, Taepyung-ro, Chung-gu Seoul 100-742, South Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); standard-setting/development efforts related to B3G/4G mobile wireless technologies; and licensing practices of other CDMA or WCDMA intellectual property holders.

217.    Sanyo Electric Co., Ltd. (individual(s) not yet identified), 5-5 Keihan-Hondori, 2-chome, Moriguchi, Osaka 570-8677, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

218.    Seiko Instruments Incorporated (individual(s) not yet identified), Seavans North, 1-2-1, Shibaura, Minato-ku, Tokyo 105-8459, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

219.    Sejin Electron Incorporated (individual(s) not yet identified), 60-19, Gasan-Dong, Keumchon-Ku, Seoul, Korea 153-023.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

220.    Sendum Wireless Corporation (individual(s) not yet identified), 4500 Beedie St., Burnaby, British Columbia V5J 5L2, Canada.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile

telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

221.    Sewon Telecom Ltd. (individual(s) not yet identified), 1077-2, Younyang-dong, Kimpo-si, Kyunggi-do, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

222.    Shanghai Huntel Technologies Co., Ltd. (individual(s) not yet identified), Room 820, Hongmei Business Center., No.8075 Humin Road, Xuhui District, Shanghai 200233, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

223.    SHARP Corporation (individual(s) not yet identified), 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

224.    Siemens Aktiengesellschaft (individual(s) not yet identified), Wittelsbacherplatz 2, D-80333 Munich, Germany.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

225.    Sierra Wireless, Incorporated (individual(s) not yet identified), 13811 Wireless Way, Richmond, British Columbia V6V 3A4, Canada.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

226.    Silicon Laboratories (individual(s) not yet identified), 4635 Boston Lane, Austin, Texas 78735.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

227.    SK Telecom Co., Ltd. (individual(s) not yet identified), 11 Eulijiro, 2-ga, Jung-gu, Seoul 100-999, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

228.    Skyworks Solutions, Incorporated (individual(s) not yet identified), 20 Sylvan Rd., Woburn, Massachusetts 01801.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

229.    SOMA Networks, Incorporated (individual(s) not yet identified), 312 Adelaide St. W., Suite 600, Toronto, Ontario M5V 1R2, Canada.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

230.    Sony Corporation (individual(s) not yet identified), 6-7-35 Kitashinagawa, Shinagawa-ku, Tokyo 141-0001, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

231.    Sony Ericsson Mobile Communications (individual(s) not yet identified), Sony Ericsson House, 202 Hammersmith Rd., London W6 7DN, United Kingdom.  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

232.    Sprint Nextel Corporation (individual(s) not yet identified), 2001 Edmund Halley Drive, Reston, Virginia 20191.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; selecting mobile wireless technologies; Flarion, its technology and intellectual property holdings; and Qualcomm's proposed acquisition of Flarion.

233.    STMicroelectronics (individual(s) not yet identified), 39, Chemin du Camp des Filles, C.P. 21, CH 1228 Plan-les-Ouates, Geneva, Switzerland.  Subjects:  Qualcomm

licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

234.    Sungil Telecom Co., Ltd. (individual(s) not yet identified), Yongsan-gu Galwol-dong 92 Yongsan Bldg. 2nd Seoul, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

235.    Swisscom AG  (individual(s) not yet identified), CH – 3050 Berne, Switzerland. Subjects:  Qualcomm licensing practices for WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; and selecting mobile wireless technologies.

236.    Synertek, Incorporated (individual(s) not yet identified), Trade Tower Rm. 3808, World Trade Center, Samsung-dong, Kangnam-gu, Seoul 135-729, Korea.  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

237.    TCL Corporation (individual(s) not yet identified), E. Yunshan Road, Jiangbei, Huizhou, Guangdong 516003, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

238.    Techfaith Wireless Communication Technology Limited (individual(s) not yet identified), 3/F M8 West, No. 1 Jiu Xian Qiao East Rd., Beijing 100016, China. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

239.    Telecom Italia S.p.A. (individual(s) not yet identified), Piazza degli Affari, 2-20123 Milan, Italy.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

240.    Telecommunications Industry Association, TIA (individual(s) not yet identified), 2500 Wilson Blvd., Suite 300, Arlington, Virginia 22201, T: 703-907-7700).  Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

241.    Telecommunications Technology Association, TTA (individual(s) not yet identified), 267-2 Seohyeon-dong, Bundang-gu, Seongnam-City, Gyonggi-do, Korea, T: 82 31 724 0114.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

242.    Telecommunications Technology Committee, TTC (individual(s) not yet identified), Hamamatsu-cho Suzuki Building, 1-2-11,Hamamatsu-cho,Minato-ku, Tokyo105-0013, Japan, T: 81 3 3432 1551.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

243.    Telefónica S.A. (individual(s) not yet identified), Gran Via 28, 29013 Madrid, Spain.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

244.    Telefonaktiebolaget LM Ericsson (individual(s) not yet identified), Torshamnsgatan 23, Kista, SE-164 83 Stockholm, Sweden.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; actual or potential litigation threatened by Qualcomm regarding the licensing of its CDMA or WCDMA technology patents or regarding sales of its CDMA or WCDMA ASICs; standard-setting/development efforts related to 3G mobile wireless technologies; selecting mobile wireless technologies; essentiality of declared CDMA and WCDMA patents; Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

245.    TeliaSonera AB (individual(s) not yet identified), Sturegatan 1 SE-106 63 Stockholm, Sweden.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

246.    Telit Communications PLC (individual(s) not yet identified), 3 Nirim Street, Tel-Aviv 67060, Israel.  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of

Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies

247.    Telular Corporation (individual(s) not yet identified), 647 N. Lakeview Pkwy, Vernon Hills, Illinois 60061. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

248.    Texas Instruments Incorporated (individual(s) not yet identified), 12500 TI Blvd., Dallas, Texas 75266. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; actual or potential litigation threatened by Qualcomm regarding the licensing of its CDMA or WCDMA technology patents or regarding sales of its CDMA or WCDMA ASICs; standard-setting/development efforts related to 3G mobile wireless technologies; and essentiality of declared CDMA and WCDMA patents.

249.    The 3rd Generation Partnership Project, 3GPP (individual(s) not yet identified), ETSI Mobile Competence Centre, 650, route des Lucioles, 06921 Sophia-Antipolis Cedex, France, T: 33 (0)4 92 94 42 00. Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

250.    The 3rd Generation Partnership Project 2, 3GPP2 (individual(s) not yet identified), 2500 Wilson Boulevard, Suite 300, Arlington, Virginia 22201, T: 703-907-7497. Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

251.    T-Mobile USA, Incorporated (individual(s) not yet identified), 12920 S.E. 38th Street, Bellevue, Washington 98006. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

252.    Toshiba Corporation (individual(s) not yet identified), 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

253.    Ubistar Co., Ltd. (individual(s) not yet identified), 5/7/8/9/15F, SeoungDo Building, 587-23 SinsaDong, Gangnam-Gu, Seoul, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

254.    Uniden Corporation (individual(s) not yet identified), 2-12-7 Hatchobori, Chuo-ku, Tokyo 104-8512, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

255.    United Computer & Telecommunication, Incorporated (individual(s) not yet identified), 18902 Bardeen Ave, Irvine, California 92612.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

256.    UTStarcom, Incorporated (individual(s) not yet identified), 1275 Harbor Bay Pkwy, Alameda, California 94502.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

257.    Verizon Wireless (individual(s) not yet identified), 180 Washington Valley Road, Bedminster, New Jersey 07921.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

258.    VIA Telecom, Incorporated (individual(s) not yet identified), 3390 Carmel Mountain Rd., San Diego, California, 92121.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

259.    Vitelcom Mobile Technology S.A. (individual(s) not yet identified), Avda. Juan López Peñalver, 7, 29590 Campanillas, Málaga, Spain.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA

mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

260.    VK Corporation (individual(s) not yet identified), Yoido P.O. Box 393, Seoul 150-603, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

261.    Vodafone Group plc (individual(s) not yet identified), The Connection, Newbury, Berkshire RG14 2FN, United Kingdom.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

262.    Wavecom S.A. (individual(s) not yet identified), 3, Esplanade du Foncet, 92442 Issy-les-Moulineaux, France.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

263.    Westech Korea, Incorporated (individual(s) not yet identified), 548-9, Gajwa 3-Dong, Seo-Gu, Incheon, 404-817, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

264.    Wherify Wireless, Incorporated (individual(s) not yet identified), 39111 Paseo Padre Pkwy., Suite 304, Fremont, California 94538.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

265.    Wide Telecom Co., Ltd. (individual(s) not yet identified), 514-1 Yatap-Dong, Pundang-Ku, Sungnam-Si, Kyunggi-Do, Korea 463-070.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

266.    ZTE Corporation (Zhongxing Telecommunications Equipment Corp.) (individual(s) not yet identified), Keji Road South, Hi-Tech Industrial Park, Shenzhen 518057, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

In addition to the above-named individuals, other persons identified in the documents described in Section B below may have discoverable information that Broadcom may use to support its claims.  Broadcom reserves the right to seek discovery from, and relating to, other persons that may subsequently become known as persons likely to have discoverable information.  The foregoing list also does not include experts and/or consultants who might be retained.

### B.    Relevant Documents and Tangible Things

The types of documents Broadcom may use in support of its claims include but are not limited to:  strategic plans, market studies, sales projections, cost analyses, marketing materials, pricing information, product materials, internal and external correspondence (including negotiation correspondence), draft and final license agreements, and meeting notes and presentations.  Some of these documents are currently in the possession of Broadcom and many already have been produced to Qualcomm.  Broadcom's paper files are located at various Broadcom offices, including its Irvine, California office (5300 California Ave., Irvine, CA 92617), its Matawan, New Jersey office (100 Matawan Road, Suite 210, Matawan, NJ 07747), its San Diego, California office (15434 Innovation Drive, San Diego, CA 92128), its Sunnyvale, California office (190 Mathilda Place, Sunnyvale, CA 94086), and its Tempe, Arizona office (1131 West Warner St., Suite 104, Tempe, AZ 85284).  Broadcom's electronic files are stored on servers located at the aforementioned locations and at Broadcom's San Jose, California office

(3151 Zanker Road, San Jose, CA 95134) and also locally on hard drives and other electronic storage media that Broadcom provides for its employees' use in undertaking their employment with Broadcom, which generally are located at those employees' offices in the aforementioned locations.

Broadcom may also support its claims with documents currently in the possession of Defendant and of third-parties. To the extent any documents are produced in this case in response to any party's document request or subpoena, the documents should be considered disclosed for purposes of Broadcom's obligations under Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure.

Based upon information reasonably available to Broadcom at the present time, the subject matters of the documents that Broadcom may use to support its claims include the following:

- Operations and policies of organizations that have developed or are developing standards related to mobile wireless technology (including adoption of 3G technology and subsequent generations of technology) and video compression technology, and Defendant's participation in those processes.

- Mobile wireless technology and video compression technology markets and the ability of carriers and manufacturers to switch from one mobile wireless technology to another.

- Mobile wireless and video compression technology and product markets in general, including UMTS/WCDMA, GSM, GPRS, and EDGE technology markets.

- Competition for the sale of ASICs for use in mobile wireless handsets.

- Defendant's plans to market and sell ASICs for use in mobile wireless handsets.

- Defendant's plans related to its mobile wireless technology (including CDMA, WCDMA, GSM, GPRS, EDGE, and CDMA EVDO) and video compression technology.

- Defendant's plans related to any mobile wireless technology for or beyond 3G technologies.

- Defendant's licenses or offers to license any of its patents relating to mobile wireless technology and video compression technology, and Defendant's licensing practices for technology related to mobile wireless telephony and video compression.

- Pricing and supply of Defendant's ASICs for mobile wireless handsets and for video compression.

- Defendant's practices as to mobile wireless handset manufacturers that are or were considering purchasing or that are or were purchasing ASICs from a supplier other than Defendant.

- Defendant's practices as to mobile wireless handset manufacturers that are or were considering purchasing or that are or were purchasing ASICs exclusively or on preferential terms from Defendant.

- Defendant's communications with any purchaser of ASICs regarding any person's rights to make or sell ASICs for mobile wireless communications or video compression.

- Actual or potential litigation threatened or filed by Defendant regarding the licensing of its patents relating to mobile wireless technology, video compression technology, or regarding sales of its ASICs for mobile wireless handsets or video compression, including actual and threatened litigation against Broadcom and Broadcom's customers and potential customers.

- Licensing practices of intellectual property holders other than Defendant for mobile wireless technology and video compression technology.

### C.    Computation of Damages

Because discovery is just underway, Broadcom has not yet calculated its damages. Such calculations will involve assessments of information not yet collected and/or reviewed, as well as expert analysis. Broadcom anticipates calculating its damages in connection with preparing its disclosures under Rule 26(a)(2) of the Federal Rules of Civil Procedure, and will make any disclosures required under that Rule at the time specified herein, or as the court otherwise orders.

D.    **Insurance Agreement**

Broadcom is not currently aware of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy a judgment.

Dated:  December 21, 2007

George S. Cary (admitted *pro hac vice*)
Mark W. Nelson (admitted *pro hac vice*)
Steven J. Kaiser
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500     Fax: (202) 974-1999

David S. Stone (DSS-8580)
Boies, Schiller & Flexner LLP
150 John F. Kennedy Parkway
Short Hills, NJ 07078
(973) 218-1111     Fax: (973) 218-1106

David Boies (admitted *pro hac vice*)
David A. Barrett (admitted *pro hac vice*)
Steven C. Holtzman (admitted *pro hac vice*)
Scott E. Gant
W. Fred Norton
Kieran P. Ringgenberg

Boies, Schiller & Flexner LLP
570 Lexington Avenue
New York, NY 10022
(212) 446-2300     Fax: (212) 446-2350

*Counsel for Plaintiff Broadcom Corporation*

## PROOF OF SERVICE

I, Steven J. Kaiser, declare:

I am a citizen of the United States and employed in Washington, D.C. I am over the age of eighteen years and not a party to the within action. My business address is 2000 Pennsylvania Avenue, N.W., Washington, D.C., 20006-1801. On [DATE], 2005, I served a copy of the following document: ***Broadcom Corporations's Amended Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1).***

⊠  by transmitting via email the document(s) listed above on this date.

☐  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Washington, D.C. addressed as set forth below.

☐  by placing the document(s) listed above in a sealed FedEx envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for delivery.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

For Defendant Qualcomm Incorporated:

William J. O'Shaughnessy
McCarter & English
Four Gateway Center
100 Mulberry Street

Evan R. Chesler
Peter T. Barbur
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019-7475

Counsel for Defendant Qualcomm Incorporated

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 21, 2007, at Washington, D.C.

*(signature)*

41

Exhibit B

# CRAVATH, SWAINE & MOORE LLP

ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON

JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700
————
CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1058

WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN

DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
————
SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR
————
OF COUNSEL
CHRISTINE BESHAR

January 15, 2008

## Broadcom Corporation v. QUALCOMM Incorporated

Dear Steve and Kate:

I write regarding Broadcom's Amended Initial Disclosures dated December 21, 2007 (the "Amended Disclosures").

The Amended Disclosures list 266 individuals or entities that, Broadcom asserts, are "likely to have discoverable information that Broadcom may use to support its claims". Of these, 26 are current or former Broadcom employees and 163 are third parties for which Broadcom identifies only a company and then asserts that "individual(s) not yet identified from each company and/or each company's subsidiaries or affiliates are likely to have discoverable information that Broadcom may use to support its claims". Broadcom's failure to disclose the names of individuals associated with any of these 163 third parties is inconsistent with Fed. R. Civ. P. 26(a)(1)(A) (requiring the parties to provide "the *name* . . . of each *individual* likely to have discoverable information that the disclosing party may use") (emphasis added)). In addition, Broadcom's use of the term "individual(s)" suggests Broadcom believes more than one person associated with each named entity is likely to possess discoverable information. Thus, if Broadcom were now to identify just two individuals from each named third party, that list would include well over 300 persons.

We also seriously question whether Broadcom's counsel really believes, based on "a reasonable inquiry" conducted prior to submission of its Amended Disclosures (*see* Fed. R. Civ. P. 26(g)(1)(A)), that all of these individuals are "likely" to have discoverable information that Broadcom may use to support its claims. Indeed, the overbreadth of Broadcom's disclosures obviously has the effect of impeding Qualcomm's ability to decide which individuals are in fact suitable targets for third party discovery. (*See* Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a) (Rule

26(a)(1) disclosures are intended to "help focus the discovery that is needed, and facilitate preparation for trial and settlement").)

Broadcom's Amended Disclosures also cannot be squared with Broadcom's arguments to Magistrate Judge Hughes about the proper number of depositions in this matter. Neither 30 depositions (the number urged by Broadcom) nor 40 depositions (the number accepted by Magistrate Judge Hughes) can possibly be sufficient if there are 26 current or former Broadcom employees and more--possibly many more--than 163 individuals employed by third party entities who are "likely" to have discoverable information that Broadcom currently believes it may use to support its claims. (*See Sender v. Mann*, 225 F.R.D. 645, 654 (D. Colo. 2004) (finding Rule 26(a)(1) disclosures deficient and imposing sanctions where, in the face of a 25 depositions-per-side limit, plaintiff identified over 300 third parties without first interviewing them).)

We therefore request that Broadcom revise its Amended Disclosures to identify more precisely a reasonable list of individuals who possess discoverable information which Broadcom may use to support its claims. We hope we can avoid bringing this issue to the Court.

Very truly yours,

Peter T. Barbur

Steven J. Kaiser, Esq.
    Cleary Gottlieb Steen & Hamilton LLP
        2000 Pennsylvania Avenue, N.W.
            Washington, DC 20006

Kate Saxton, Esq.
    Wilmer Cutler Pickering Hale & Dorr LLP
        60 State Street
            Boston, MA 02109

BY E-MAIL AND FIRST CLASS MAIL

Exhibit C

WILMERHALE

**By Email**

Kate Saxton

+1 617 526 6253 (t)
+1 617 526 5000 (f)
kate.saxton@wilmerhale.com

February 1, 2008

Peter T. Barbur, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019-7475

Re: Broadcom Corporation v. Qualcomm Inc., Civil Action No. 05-3350-MLC-JJH

Dear Peter:

I write to respond to your January 15, 2008 letter regarding Broadcom Corporation's Amended Initial Disclosures.

We disagree with your suggestion that Broadcom has failed to conduct a "reasonable inquiry" regarding such disclosures, or that Broadcom must "revise" its Amended Disclosures to "identify more precisely a reasonable list of individuals who possess discoverable information." (*See* Jan. 15, 2008 letter from Barbur to Kaiser and Saxton.)

As an initial matter, we note that you make no complaint regarding either the number of current and former Broadcom and Qualcomm employees identified on Broadcom's Amended Disclosures, or the sufficiency of Broadcom's disclosure of the subjects of information believed to be possessed by these individuals. Indeed, the number of current and former Broadcom employees who are identified (twenty-six) is lower than the number of current and former Qualcomm employees that Qualcomm has identified on its own Amended Disclosures (sixty-eight). In addition, Broadcom has provided a fuller description of the subjects of information believed to be possessed by the individuals identified on its Amended Disclosures than Qualcomm has provided for the individuals identified on its own Amended Disclosures.

We understand your complaint to be solely directed to the number of third-party entities that Broadcom has identified on its Amended Disclosures and the fact that Broadcom has not identified the names of individuals from these entities. As Qualcomm well knows, the listed entities are generally actual or potential Qualcomm licensees and/or customers (*see*, *e.g.*, www.qualcomm.com/technology/licensing/index.html) and/or are participants in the standard-setting organizations at issue in this case. As such, it is Qualcomm, not Broadcom, that is best positioned to know the identity of the specific individuals likely to possess discoverable information about the listed subject matters. We expect that Qualcomm possesses a substantial amount of communications with these listed entities, very little of which, as far as we can tell, Qualcomm has ever produced.

As Broadcom's Amended Disclosures state: "Broadcom believes that individual(s) not yet identified for each company and/or each company's subsidiaries and affiliates are likely to

WILMERHALE

Peter T. Barbur, Esq.
February 1, 2008
Page 2

have discoverable information that Broadcom may use to support its claims."  We know of no rule that requires a party to identify the names of individuals of which it is not aware.

We are surprised that Qualcomm has itself listed no third-parties (other than two of its own paid consultants) in its Amended Initial Disclosures, and we regard this omission as a serious deficiency.  In correspondence between the parties, as well as during the November 26, 2007 conference with the Court, Qualcomm complained that Broadcom's claims in this case would necessitate substantial third-party discovery, including numerous national and international depositions of third parties.  Yet Qualcomm's Amended Initial Disclosures fail to identify a single third party other than Messrs. Upton and Isailovic with discoverable information.

In addition Qualcomm's Amended Initial Disclosures are deficient in that they fail to identify any Broadcom employees who Qualcomm believes are likely to possess discoverable information that Qualcomm may use to support its claims or defenses.  Rather, Qualcomm simply identified "Broadcom Corporation, its subsidiaries and employees" as likely to have discoverable information to numerous subject matter and topics in this litigation.  As your own letter states, Fed. R. 26(a)(1)(A)(i) requires that the names of "each individual," where known, be disclosed.  After more than two years of litigation with Broadcom, including the production of millions of pages of documents and scores of depositions, we find it unreasonable that Qualcomm is unable or unwilling to identify those Broadcom employees who Qualcomm believes possess discoverable information that Qualcomm may use to support its claims or defenses.

Very truly yours,

Kate Saxton

Kate Saxton

cc: Steven J. Kaiser, Esq.
    Karl Huth, Esq.

Exhibit D

225 F.R.D. 645                                                                                          Page 1
225 F.R.D. 645, 60 Fed.R.Serv.3d 958
(Cite as: 225 F.R.D. 645)

H

Sender v. Mann
D.Colo.,2004.

United States District Court,D. Colorado.
Harvey SENDER, Trustee of the Lifeblood Bio-
medical, Inc. Liquidation Trust and Harvey Sender,
Trustee of the Lifeblood Biomedical, Inc. Opt-In
Trust, Plaintiffs,
v.
William Jeffrey MANN, an individual, Freeborn &
Peters, an Illinois partnership, Michael Sabian, an
individual, Darwin J. Poyfair, an individual, James
R. Leone, P.A., a Florida professional association,
James R. Leone, an individual, Defendants.
**Civ.A. No. 01-B-2315CBS.**

Dec. 14, 2004.

**Background:** Trustee of bankrupt corporation's li-
quidation trust brought action alleging that defend-
ants perpetrated Ponzi scheme by issuing promis-
sory notes through corporation.

**Holdings:** The District Court, Shaffer, United
States Magistrate Judge, held that:
(1) trustee failed to adequately disclose potential
witnesses;
(2) trustee's supplemental responses were inad-
equate; and
(3) appropriate sanction was to reopen discovery to
permit defendants to conduct discovery depositions
at trustee's expense.

Motion granted in part, and denied in part.

West Headnotes

**[1] Federal Civil Procedure 170A ⟶1272.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1272 Scope
                170Ak1272.1 k. In General. Most

Cited Cases
Initial discovery disclosures should provide parties
with information essential to proper litigation of all
relevant facts, to eliminate surprise, and to promote
settlement. Fed.Rules Civ.Proc.Rule 26(a)(1), 28
U.S.C.A.

**[2] Federal Civil Procedure 170A ⟶1272.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1272 Scope
                170Ak1272.1 k. In General. Most
Cited Cases

Federal Civil Procedure 170A ⟶1275

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1272 Scope
                170Ak1275 k. Identity and Location of
Witnesses and Others. Most Cited Cases
Initial discovery disclosures should be complete
and detailed, and should give opposing party in-
formation as to identification and location of per-
sons with knowledge so that they can be contacted
in connection with litigation. Fed.Rules
Civ.Proc.Rule 26(a)(1), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⟶1278**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1278 k. Failure to Respond; Sanc-
tions. Most Cited Cases
Trustee of bankrupt corporation's liquidation trust
failed to adequately disclose potential witnesses in
its action alleging that defendants perpetrated Ponzi
scheme by issuing promissory notes through cor-
poration, even if defendants were free to contact all
investors and brokers named by trustee, where
trustee initially disclosed names of 196 investors

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

and 126 brokers purportedly having knowledge regarding sale of promissory notes, disclosures did not identify particular brokers who had knowledge of other schemes attributed to defendants, counsel did not interview listed brokers and investors until after close of discovery, and trustee gave same generic disclosure for every broker and note holder. Fed.Rules Civ.Proc.Rule 26(a)(1), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⟨⟩1278**

170A Federal Civil Procedure
   170AX Depositions and Discovery
     170AX(A) In General
       170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
If party is unwilling to conduct reasonable inquiry in advance of making initial discovery disclosures, that party cannot simply provide laundry list of undifferentiated witnesses. Fed.Rules Civ.Proc.Rule 26(a)(1), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⟨⟩1278**

170A Federal Civil Procedure
   170AX Depositions and Discovery
     170AX(A) In General
       170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
Information disclosed by party during discovery is incomplete or incorrect in some material respect, and thus must be supplemented, if there is objectively reasonable likelihood that additional or corrective information could substantially affect or alter opposing party's discovery plan or trial preparation. Fed.Rules Civ.Proc.Rule 26(e)(1), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⟨⟩1278**

170A Federal Civil Procedure
   170AX Depositions and Discovery
     170AX(A) In General
       170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
Alternative methods for supplementation of discov-

ery responses must be consistent with and further objectives underlying mandatory disclosure requirement, and should provide opposing party with enough useful information to make informed decisions regarding discovery and trial preparation. Fed.Rules Civ.Proc.Rule 26(e), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⟨⟩1534**

170A Federal Civil Procedure
   170AX Depositions and Discovery
     170AX(D) Written Interrogatories to Parties
      170AX(D)3 Answers; Failure to Answer
       170Ak1534 k. Sufficiency. Most Cited Cases
Plaintiff's supplemental responses to defendants' interrogatories in fraud action seeking information regarding plaintiff's communications with allegedly defrauded investors and brokers were inadequate, where plaintiff had disclosed names of 196 investors and 126 brokers, only two brokers were referenced in plaintiff's responses, and each side was limited to 20 non-expert depositions. Fed.Rules Civ.Proc.Rule 26(e), 28 U.S.C.A.

**[8] Federal Civil Procedure 170A ⟨⟩1278**

170A Federal Civil Procedure
   170AX Depositions and Discovery
     170AX(A) In General
       170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
Non-moving party has burden of showing that it was substantially justified in failing to making discovery disclosures. Fed.Rules Civ.Proc.Rule 26(a)(1), 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ⟨⟩1278**

170A Federal Civil Procedure
   170AX Depositions and Discovery
     170AX(A) In General
       170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
Party's failure to make required discovery disclosure is substantially justified, and thus not subject to

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

sanctions, where non-moving party has reasonable basis in law and fact, and where there exists genuine dispute concerning compliance. Fed.Rules Civ.Proc.Rule 37(c)(1), 28 U.S.C.A.

**[10] Federal Civil Procedure 170A ⟬⟭1278**

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases

Plaintiff's failure in fraud action to comply with its discovery obligations was not substantially justified, and thus discovery would be reopened to permit defendants to conduct discovery depositions, at plaintiff's expense, of witnesses who would testify at trial, even though trial date had not been set, where plaintiff made deliberate decision not to conduct reasonable inquiry into information actually possessed by disclosed investors and brokers, providing instead description of anticipated testimony that were so general as to be virtually worthless for purposes of making informed pretrial decisions, and failure to disclose precluded defendants from efficiently using limited number of depositions. Fed.Rules Civ.Proc.Rules 26(a)(1)(A), (e)(1), 37(c), 28 U.S.C.A.

**\*647** John C. Smiley, Lindquist & Vennum, P.L.L.P., Denver, CO, for Plaintiff.

William Wells, II, Greenville, SC, Pro Se.

Daniel N. Brodersen, Miller, South & Michaussen, P.A., Winter Park, FL, Carolyn J. Fairless, Julie M. Walker, Michael L. O'Donnell, Wheeler Trigg Kennedy LLP, David W. Furgason, Herbert Anthony Delap, Dufford & Brown, P.C., Denver, CO, Ward Meythaler, Merkle & Magri, P.A., Tampa, FL, James R. Leone, James R. Leone, Attorney at Law, New Smyrna Beach, FL, Kristi J. Livedalen, Fleishman & Shapiro, PC, Denver, CO, for Defendants.

**MEMORANDUM ORDER REGARDING DEFENDANTS' MOTION TO STRIKE AND PRECLUDE PLAINTIFF'S WITNESSES AND EX-**

**HIBITS NOT PREVIOUSLY OR PROPERLY DISCLOSED**

SHAFFER, United States Magistrate Judge.

THIS MATTER comes before the court on Defendants Darwin Poyfair, Michael Sabian and Freeborn & Peters' [FN1] Motion to Strike and Preclude Plaintiff's Witnesses and Exhibits Not Previously or Properly Disclosed (hereinafter "Defendants' Motion to Strike"), filed on April 5, 2004 (Document # 335), and Supplement thereto filed on April 9, 2004. Based upon Sender's allegedly deficient Fed.R.Civ.P. 26(a)(1) disclosures, the Freeborn Defendants have moved to exclude witnesses and exhibits pursuant to Fed.R.Civ.P. 37(c)(1), arguing that Sender's failure to disclose or properly supplement his initial disclosures lacked substantial justification and was not harmless under the particular circumstances of this case. Sender filed a Response to Freeborn Defendants' Motion to Strike and Preclude Witnesses and Exhibits (hereinafter "Sender's Response") on April 26, 2004. The Freeborn Defendants filed their Reply in Support of Motion (hereinafter "Defendants' Reply") on May 11, 2004.

> FN1. For purposes of this Memorandum Order, Defendants Freeborn & Peters, LLP, Michael Sabian and Darwin J. Poyfair are referred to collectively as "the Freeborn Defendants."

By Order of Reference, dated October 17, 2002, this matter was referred to the Magistrate Judge to, *inter alia,* "hear and determine pretrial matters, including discovery and other non-dispositive motions." This court heard oral argument on the pending motion during hearings on May 18, and December 1, 2004. For the following reasons, the Freeborn Defendants' motion is granted in part and denied in part.

**FACTUAL BACKGROUND**

This action was commenced on November 30, 2001 by Harvey Sender, Trustee of the Lifeblood Bio-

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

medical, Inc. Liquidation Trust and the Lifeblood Biomedical, Inc. Opt-in Trust. The original Complaint asserted 34 separate claims against 11 different defendants, including the Freeborn Defendants. An Amended Complaint was filed on December 7, 2001, and remained the operative pleading for purposes of Sender's Rule 26(a)(1) disclosures.[FN2] That pleading, totaling 76 pages, alleged facts and events that occurred between December 1996 and December 1999. Sender maintains that the Defendants**648** participated or aided and abetted in a Ponzi scheme prior to the bankruptcy filing of Lifeblood Biomedical, Inc. The Amended Complaint generally alleged that Defendants Mann and Wells perpetrated a Ponzi scheme by issuing promissory notes through Lifeblood Biomedical, Inc. to approximately 200 individuals and entities who are now unsecured creditors of Lifeblood. *See* Amended Complaint, at ¶ 1. These unsecured creditors of Lifeblood are beneficiaries of the Liquidation Trust and many are also beneficiaries of the Opt-In Trust. It is alleged that Mann and Wells furthered their Ponzi scheme by falsely representing to investors and brokers that the promissory notes were being issued and backed by reputable business entities, that the promissory notes were bonded or insured, that the proceeds from the promissory notes would be used for legitimate business purposes, that interest payments on the promissory notes would be made and that the notes would be fully redeemed in nine months, upon maturity, and that Lifeblood Biomedical and related entities were viable companies actively engaged in legitimate business activities. *See* Amended Complaint, at ¶¶ 31-32. The Amended Complaint alleged that Mann and Wells were liable for fraud, breach of fiduciary duties, conspiracy, fraudulent transfers, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961*et seq.,* and the Colorado Organized Crime Control Act ("COCCA"), §§ 18-17-101 *et seq.*

> FN2. Sender filed his current Second Amended Complaint, filed on February 11,

2204. The Second Amended Complaint does not substantially change the factual allegations that are relevant to the issues raised in the Freeborn Defendants' motion to strike.

The Amended Complaint further alleged that the Freeborn Defendants were liable for aiding and abetting the fraud and breach of fiduciary duties committed by Mann and Wells, aiding and abetting the RICO and COCCA violations committed by Mann and Wells, for breaching their own fiduciary duty to the Lifeblood entities, for legal malpractice, for receipt of fraudulent transfers, and for conspiring with other defendants. Sender specifically alleged in the Amended Complaint that Mann furthered his fraudulent schemes by retaining the Freeborn Defendants to represent Lifeblood Biomedical and a related entity. The Amended Complaint averred that the Freeborn Defendants were aware that Mann and Wells were "soliciting renewals of matured Promissory Notes that Lifeblood was unable to pay" and knew "that Mann and Wells had engaged in criminal conduct-a Ponzi scheme-in connection with the issuance and re-issuance of the Promissory Notes, and that Mann had been under investigation in connection with a promissory note scheme operated under the name of another company." *See* Amended Complaint, at ¶ 68. Sender maintained that the Freeborn Defendants prepared and reviewed "scripts" that were intended "to assist Mann and Wells in responding to law enforcement inquiries and investor inquiries regarding such schemes and the Lifeblood Promissory Notes at a time when Mann and Wells sought to conceal Lifeblood's inability to pay the Promissory Notes and their own diversion of funds." *See* Amended Complaint, at ¶ 71.

On January 22, 2003, the parties filed a proposed Rule 16 Scheduling Order which contemplated that "each party shall be allowed up to 25 depositions." This court accepted that numerical limitation without change. The court also accepted the discovery cut-off date of December 31, 2003, proposed by

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

counsel for Sender and the Freeborn Defendants. The parties agreed to provide Rule 26(a)(1) disclosures by January 23, 2003.

Sender served his initial Rule 26(a)(1) disclosures on January 23, 2003. *See* Exhibit B attached to Defendants' Motion to Strike. Those initial disclosures stated that "individuals likely to have discoverable information that Plaintiff may use to support his claims" included

[i]ndividuals who purchased Lifeblood promissory notes, listed on Exhibit A, attached. Such individuals have knowledge regarding the sale of promissory notes and the amounts owed to them pursuant to such notes.

Brokers and marketing agents through whom Messrs. Mann and Wells sold promissory notes, listed on Exhibit B, attached. Such individuals have knowledge regarding the sale of promissory notes and, in some instances, other schemes attempted or contemplated by Mann and Wells.

Referenced Exhibits A and B identified 196 investors and 126 brokers, respectively. A **\*649** cursory review of addresses included on Exhibits A and B reveals investors and brokers geographically dispersed in at least 17 different states ranging throughout the East Coast and as far west as California. Sender supplemented his initial disclosures on October 31, 2003, November 20, 2003, and February 24, 2004. *See* Exhibits C, D and E attached to Defendants' Motion to Strike. None of these supplemental disclosures appear to reference investors or brokers, either generally or by specific name. More particularly, none of Sender's initial disclosures identified any investor or broker who would offer evidence concerning specific communications with any Freeborn Defendant or information concerning post-transaction conduct by a Freeborn Defendant.

The parties filed an initial proposed Final Pretrial Order on February 24, 2004. In that proposed Final Pretrial Order, Sender listed 163 brokers and 215 investors who "may" be called "to testify about information received regarding Lifeblood, reliance on such information, the impact that information

would have had had it been disclosed," as well as "communications with defendants" and the effect of the fraud perpetrated on the brokers and investors.

The parties filed an amended proposed Final Pretrial Order on April 6, 2004. Attached to that document were Sender's lists of "will call" and "may call" witnesses. Sender did not designate any brokers or investors as "will call" witnesses. Sender's April 6th "may call" witness list included 163 brokers and 215 investors. Once again, Sender stated that if any brokers or investors were called at trial, they would "testify about information received regarding Lifeblood, reliance on such information, the impact that information would have had had it been disclosed, communications with defendants, [and] the effect of the fraud perpetrated on the brokers and their clients." The parties provided the court with yet another revised Final Pretrial Order on May 14, 2004, which included Sender's witness list. The May 14th Final Pretrial Order identified 5 brokers as "will call" witnesses and 21 brokers as "may call" witnesses, and included 15 investors as "will call" and 82 investors as "may call" witnesses. This court heard argument on the instant motion during a hearing on May 18, 2004. At that hearing, the court expressed its inclination at this point to find that there has been a violation of Rule 26(a) and (e). I don't believe the initial disclosures were sufficient to meet the requirements or the intent underlying Rule 26(a), and I don't believe that supplementation was undertaken at appropriate intervals.... Now, with respect to determining what an appropriate remedy is, again, in my view, an appropriate remedy is, in part, going to be a function of how many witnesses are on a witness list. If the plaintiff persists in its will-call and may-call list, then I-at this point, I believe that reopening discovery would not be an appropriate remedy because I think that would be unduly burdensome, and it would essentially force the defendants to bear the brunt of plaintiff's deficient disclosures. Now, to the extent their witness lists are substantially reduced, that might change the dynamic for the evaluation of prejudice.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

*See* Transcript of May 18, 2004 Motions Hearing, at pp. 74-75. At the conclusion of that hearing, the court directed Sender's counsel to provide Defendants with updated witness and exhibits lists within ten calendar days.

On May 27, 2004, the court received Sender's Submission of Revised Witness List and Trial Exhibit List. This revised witness list identified 5 brokers and 20 investors as "will call witnesses." Sender's May 27th witness list deleted approximately 21 brokers and 72 investors who had been identified in the immediately preceding draft Final Pretrial Order. Sender also identified on the May 27th witness list an additional 16 "may call" witnesses, none of whom were brokers or investors.

More recently, during a hearing on December 1, 2004, Sender's counsel advised the court and defense counsel that Sender will further limit to 15 the number of investors who will testify at trial either through live or deposition testimony. Sender has been directed to provide Defendants with the names of these 15 investors on or before December 13, 2004.

## *650 ANALYSIS

### I. The Sufficiency of Sender's Initial Disclosures

[1][2] Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure provides that a party must disclose, without awaiting a formal discovery request, "the name ... of each individual likely to have discoverable information *that the disclosing party may use to support its claims or defenses,* unless solely for impeachment, *identifying the subjects of the information.*" *See* Fed.R.Civ.P. 26(a)(1)(A) (emphasis added). This court has found very few cases that address the degree of specificity required under Rule 26(a)(1). However, some guidance can be gleaned from the purposes underlying the Rule itself. Rule 26(a)(1) disclosures are designed to accelerate the exchange of basic information and "help focus the discovery that is needed, and facilitate preparation

for trial or settlement." *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a). Initial disclosures should provide the parties "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement." *Windom v. FM Industries, Inc.,* 2003 WL 21939033 (D.Neb.2003) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.,* 145 F.R.D. 92, 94 (S.D.Iowa 1992)). *See also City and County of San Francisco v. Tutor-Saliba Corp.,* 218 F.R.D. 219, 221 (N.D.Cal.2003) (noting that Rule 26(a) seeks to " 'accelerate the exchange of basic information' that is 'needed in most cases to prepare for trial or make an informed decision about settlement' "). To that end, initial disclosures should be "complete and detailed," and should "give the opposing party information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation." *Crouse Cartage Co. v. National Warehouse Investment Co.,* 2003 WL 23142182 (S.D.Ind.2003) (quoting *Biltrite Corp. v. World Road Markings, Inc.,* 202 F.R.D. 359, 362 (D.Mass.2001)). "Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed." *See* Advisory Committee Notes on the 1993 Amendments to Fed.R.Civ.P. 26(a).

In short, the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish. The litigants should not indulge in gamesmanship with respect to the disclosure obligations." *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a). *See also Fitz, Inc. v. Ralph Wilson Plastics Co.,* 174 F.R.D. 587, 589 (D.N.J.1997) (Rule 26 disclosure requirement should be applied with common sense). Counsel who make the mistake of treating Rule 26(a)(1) disclosures as a technical formality, rather than as an efficient start to relevant discovery, do their clients no service and necessarily risk the imposition of

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

sanctions.

[3] Under the particular facts of this case, I find that Sender's Rule 26(a)(1) disclosures were deficient. On January 23, 2003, Sender disclosed the names of 196 investors and 126 brokers purportedly "hav[ing] knowledge regarding the sale of promissory notes and the amounts owed to them pursuant to such notes" or "*in some instances,* hav[ing] knowledge of other schemes attempted or contemplated by Mann and Wells." *See* Exhibit B attached to Defendants' Motion to Strike. Notably, Sender's initial disclosures did not even bother to identify with any greater specificity those particular brokers who allegedly have knowledge of other schemes attributed to Messrs. Mann and Wells.

[4] Rule 26(a)(1) requires initial disclosures based upon information then reasonably available to the disclosing party. Rule 26(g) states that the attorney or party making disclosures pursuant to Rule 26(a)(1) must sign those disclosures, thereby certifying that "to the best of the signer's knowledge, information, and belief, formed after a *reasonable inquiry,* the disclosure is complete and correct as of the time it is made." *See* Fed.R.Civ.P. 26(g)(1) (emphasis added). During the hearing on May 18, 2004, Sender's counsel conceded that as of the date Sender served his initial disclosures, counsel had not interviewed all of the listed brokers and investors. *See* Transcript of Hearing on May 18, 2004, at 47-48. Sender seems to **\*651** suggest that an inquiry in advance of his Rule 26(a)(1) disclosures was impractical because "any effort to communicate with the note holders, most of whom are not represented by counsel, is time consuming and costly. Whether because of age, distrust, infirmity or degree of sophistication, it is difficult to communicate with these witnesses by telephone." *See* Sender's Response, at 6. Yet the very purpose of Rule 26(a)(1) disclosures is to minimize for both parties the expenditure of time and money. If a party is unwilling to conduct a reasonable inquiry in advance of making Rule 26(a)(1) disclosures, that party cannot defeat the purposes of Rule

26(a)(1) simply by providing a laundry list of undifferentiated witnesses. *See also In re Independent Service Organizations Antitrust Litigation,* 168 F.R.D. 651, 653 (D.Kan.1996) (noting that a party cannot meet its discovery obligations, including obligations under Rules 26(a)(1) and 26(e)(1), "by sticking its head in the sand and refusing to look for the answers and then saying it does not know the answer"). Yet, that is precisely what Sender did in this case. Sender claims that his initial disclosures identified "every single one of the note holders and every single one of the brokers that we knew about in our 26(a)(1) disclosures, and we indicated that they would be testifying regarding their knowledge regarding the sale of promissory notes." *See* Transcript of May 18, 2004 hearing, at 36. Having deliberately decided not to make a reasonable inquiry, Sender resorted to giving the same generic disclosure for every broker and note holder. *But see Gucci America, Inc. v. Costco Wholesale Corp.,* 2003 WL 21018832, \*2 (S.D.N.Y.2003) (holding that Rule 26(g) imposes an obligation to make a reasonable inquiry to ensure that the party's disclosures are complete *and* accurate).

In the context of this case, Rule 26(a)(1) requires more. For example, Sender alleged in the Amended Complaint that "the operators of Lifeblood offered a first tranche of Promissory Notes to members of the public in or about 1997," and that investors loaned funds to Lifeblood "relying on the misrepresentations and material omissions made and advanced by the operators of Lifeblood." *See* Amended Complaint, at ¶¶ 38 and 39. Sender further alleges that "in or about 1998, Lifeblood, still under the control of Wells and Mann, issued a second tranche of Promissory notes to lenders, again propounding material misrepresentations and omissions on which the lenders relied in making their lending decisions." *See* Amended Complaint, at ¶ 41. Given these very specific allegations, it is difficult to see how Sender's initial disclosures or brokers and investors, which refer only to "the sale of promissory notes" and "other schemes attempted or contemplated by Mann and Wells," could "help

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
(Cite as: 225 F.R.D. 645)

focus the discovery" efforts of the Freeborn Defendants or the Leone Defendants. The initial disclosures are devoid of any information that would indicate which, if any, of these investors or brokers had information that Sender might use to prove the specific factual allegations against the Freeborn and the Leone Defendants, or any other aider and abettor for that matter.

Before making initial disclosures, parties must "make a reasonable inquiry into the facts of the case." Parties need not conduct "an exhaustive investigation at this stage of the case, but one that is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings."

*Lintz v. American General Finance, Inc.,* 1999 WL 619045, *3 (D.Kan.1999). *See also Aetna Casualty and Surety Co. v. Leahey Construction Co.,* 219 F.3d 519, 537 (6th Cir.2000) (to establish the "substantial assistance" element of aiding and abetting liability, the plaintiff must show that "the encouragement or assistance was a substantial factor in causing the tort"); *Primavera Familienstifung v. Askin,* 130 F.Supp.2d 450, 510 (S.D.N.Y.2001) ("a plaintiff alleging 'substantial assistance' by the aider and abettor must allege that the acts of the aider and abettor proximately caused the harm upon which the primary liability is predicated" '). The court is at a loss to understood how the initial disclosures relating to brokers and investors could have advanced the "just, speedy, and inexpensive determination" of this action, particularly given the numerical limitations on depositions incorporated in the parties' Scheduling Order.

**\*652** To fully appreciate the deficiencies in Sender's initial disclosures, it may be helpful to focus on two specific witnesses. On January 23, 2003, Sender simply disclosed that all identified brokers "have knowledge regarding the sale of promissory notes and, in some instances, other schemes attempted or contemplated by Mann and Wells." Michael Kohut was included among the identified brokers. Notably, Mann and Wells were the only Defendants

identified by name in the initial disclosures relating to brokers, such as Mr. Kohut. Sender's supplemental disclosures did not mention Mr. Kohut. Discovery in this case closed on December 31, 2003. Yet attached to Sender's March 5, 2004 Response to the Freeborn Defendants' Motions for Summary Judgment was an affidavit executed by Mr. Kohut. In his affidavit, dated March 2, 2004, Mr. Kohut states, in pertinent part,

I originally heard about Lifeblood Biomedical, Inc. ("Lifeblood") from Mark Roy. I spoke to Mr. Roy, Bill Wells, and James Leone, an attorney, about Lifeblood's business before I sold Lifeblood promissory notes. I thought that the cord blood business sounded like a good business to invest in. I also talked to John Belles, of Pinnacle Marketing, about the business.... I spoke with James Leone at least a half dozen times about Lifeblood. These conversations occurred both before and after I sold notes. Mr. Leone told me that he was involved from the outset, that Lifeblood was going to go public and was going to be valuable. He told me it was okay in his opinion to sell the promissory notes without being registered.... I did not learn there was a problem with the repayment of the Lifeblood promissory notes until around January 1999, when interest payments stopped.... I did not find out there was a fraud until around February 1999, when I learned of the investigation being conducted by Laura Royal, State of Florida. I talked to another Lifeblood attorney, Michael Sabian.... I talked to Mr. Sabian in early 1999. He said he was going to help the investors and asked for information regarding noteholders that I had sold Lifeblood notes to. I sent registered letters to Mr. Sabian, and tried to call him again. Mr. Sabian stopped answering my calls.... If I had heard about the SEC subpoena, I would have asked Mr. Mann, Mr. Wells and Mr. Leone what was going on.

*See* Declaration of Michael Kohut, attached as Exhibit I to Sender's Response to the Freeborn Defendants' Motions for Summary Judgment. In his May 27, 2004 Revised Witness List, Sender states that Mr. Kohut will testify, in part, about "indirect

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

communications with Mann, Wells and the Free-born Defendants insofar as he received documents about (i) other Lifeblood-related investment programs, (ii) Lifeblood's purported activities, and (iii) script(s) prepared with the assistance of the Freeborn Defendants." Nowhere in Mr. Kohut's March 2, 2004 affidavit does the word "script" appear and there is no discernible reference to the Freeborn Defendants' "assistance" in preparing such scripts. Certainly, Sender's January 23, 2003 initial disclosures would not have put the Defendants on notice that Mr. Kohut had information directly connecting Mr. Leone to particular sales of promissory notes, or information relating to post-transaction communications involving a Freeborn Defendant.

The Freeborn Defendants also claim that only after they received Sender's March 5, 2004 Response to the Freeborn Defendants' Motions for Summary Judgment did they learn that another broker, John Belles, claimed to have had communications with Michael Sabian in approximately June 1997. Belle's March 2, 2004 affidavit states that he received a letter from Mr. Sabian "regarding whether limited liability partnerships were securities."

I relied on Mr. Sabian's letter. When I received Mr. Sabian's letter from Mr. Wells, in approximately June 1997, I called Mr. Sabian and spoke to him about his letter. He confirmed to me that limited liability partnerships were not securities, and could be sold without a securities license, which I did not have.... I told Mr. Sabian that I wanted to be sure the limited liability partnerships would not result in the same securities questions that were being raised with the promissory notes, including the Lifeblood promissory notes. He said they would not.... In early 1999, **\*653** when interest payments had not been made for several months, I tried to contact Mr. Sabian again. I understood he was one of Lifeblood's attorneys, and left message (sic.) for him asking that he call me back. He did not return the call.

*See* Declaration of John Belles, attached as Exhibit J to Sender's Response to the Freeborn Defendants'

Motions for Summary Judgment. Again, Sender's initial disclosures do not hint at the possibility that Mr. Belles would have such information, or indicate that he had direct communications with a Freeborn Defendant.

Sender argues that his initial disclosures fully comply with the requirements of Rule 26(a)(1), and that the Freeborn Defendants were free to contact each and every one of the investors and brokers. That argument, however, ignores or nullifies the Rule 26(a)(1)(A) requirement that the *disclosing party* "identify[ ] the subjects of the information" that the disclosed individuals may offer to support that party's claims or defenses. It also overlooks the "reasonable inquiry" obligation imposed upon the *disclosing party* under Rule 26(g). Taken to its logical extreme, Sender's argument would mean a party could frustrate the salutory purposes underlying Rule 26(a)(1)(A) by simply professing ignorance and providing an undifferentiated list of "possible" witnesses who may have information in support of that party's claims. Requiring a disclosing party to correlate initial disclosures to specific claims or defenses of particular adverse parties does not impose an unreasonable burden, particularly given the pleading party's obligations under Fed.R.Civ.P. 11(b)(3). *Cf. City and County of San Francisco v. Tutor-Saliba Corp.,* 218 F.R.D. at 221 (in a case involving detailed allegations of, *inter alia,* fraud and breach of contract relating to several construction contracts, held that plaintiff must provide Rule 26(a)(1) disclosures "in sufficient detail so as to enable each of the multiple Defendants in this case to understand the contours of its potential exposure and make informed decisions as to settlement and discovery"); *Norman v. CP Rail Systems,* 2000 WL 1700137 (N.D.Ill.2000) (noting that Rule 26(a)(1) is a "fairness rule, not a technicality;" Rule 26(a)(1) eliminates the need to "slog through heaps of discovery material").

During the hearing on May 18, 2004, Sender's counsel seemed to take the position that his client's initial disclosures satisfied the purposes underlying

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

Rule 26(a)(1) to the extent that Defendants were placed on notice that investors and brokers would be testifying about their knowledge regarding the sale of promissory notes. According to Sender's counsel, "it is clear that the knowledge of the sale of the promissory notes encompassed communications between [investors or brokers] and all of the defendants in this case." *See* Transcript of May 18, 2004 hearing, at 36-37. It is difficult to follow that logic, given Sender's concession that his counsel had not even bothered to interview the disclosed investors and brokers as of January 23, 2003. Sender's counsel interviewed investors and brokers only after the close of discovery, and only in the context of "preparing the final pretrial order and later in preparing a response to the Freeborn Defendants' motion for summary judgment." *See* Sender's Response, at 4-5. Sender's argument strikes this court as a transparent "after the fact" rationalization for his failure to comply with Rule 26(a)(1).

[5] Consistent with the objective of facilitating trial preparation, Rule 26 requires a party to supplement its mandatory disclosures "at appropriate intervals" if that party "learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *See*Fed.R.Civ.P. 26(e)(1). *See also Macaulay v. Anas,* 321 F.3d 45, 50 (1st Cir.2003) (once a mandatory disclosure is provided, it must be kept current); *Caldwell-Baker Co. v. Southern Illinois Railcar Co.,* 2001 WL 789389 (D.Kan.2001) (noting that "the supplementation requirement contemplates that initial disclosures may contain partial or incomplete information"). Webster's New Collegiate Dictionary defines "material" as "having real importance or great consequences." While the court has found no cases that address this precise issue, the objectives underlying**654** Rule 26(a)(1) suggest that information "is incomplete or incorrect" in "some material respect" if there is an objectively reasonable likelihood that the additional or correct-

ive information could substantially affect or alter the opposing party's discovery plan or trial preparation. *Cf. United States v. Fiorillo,* 376 F.2d 180, 184 (2d Cir.1967) (the materiality of testimony turns on its potential to affect the course of the inquiry); *United States v. De Lucia,* 256 F.2d 487, 491 (7th Cir.1958) (information is "material" when it goes to substantial matters in dispute or has an effective bearing on the resolution of that dispute).

Sender argues that any deficiencies in his initial disclosures were cured by Sender's discovery responses and disclosures made by other means.[FN3] *See* Sender's Response, at 8. However, the record suggests otherwise. The Freeborn Defendants' First Set of Discovery included Interrogatory No. 17 which specifically asked Sender to "describe any and all communications between any 'individuals who purchased Lifeblood promissory notes' as identified in your Rule 26 disclosures and any of [the Freeborn Defendants]." On June 3, 2003, Sender supplemented his response to Interrogatory No. 17 as follows: "[s]ubject to the General Objections, see documents marked LIFE17632-37, POY733-36, POY348-50, POY355-60, POY365-69, SW1104, POY438-40, SAB46, LIFE17855-57, LIFE17870-907, and LV3674-93, previously produced." *See* Exhibit 5 attached to Sender's Response. The court has personally reviewed the documents cited in this supplemental response. The vast majority of the referenced documents are completely non-responsive to Interrogatory No. 17. In fact, the cited documents only include communications between three investors and the Freeborn Defendants.[FN4] On January 6, 2004, Sender again supplemented his response to Interrogatory No. 17, as follows:

> FN3. Sender also argues that his initial disclosures were no less informative than the disclosures provided by the Freeborn Defendants. That argument is undermined by Rule 26(a)(1) itself, which provides that "a party must make its initial disclosures based on the information then reasonably

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

available to it and is not excused from making its disclosures ... because it challenges the sufficiency of another party's disclosures."

FN4. Of these three investors, Salvatore Avena, Dee Baker, Robert Branch, only Mr. Baker appears on Sender's May 27, 2004 witness list.

The Trustee objects to this request on the grounds that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, counsel for the Trustee has been advised from time to time that one noteholder may have spoken to another. There were also communications among the members of the Unsecured Creditors Committee and the Beneficiaries Committee. No consistent record of any such communications has been maintained. To the extent that counsel has notes regarding such communications, they are protected from discovery by the attorney work product doctrine.

Setting aside the questionable validity of Sender's boilerplate objection, the information provided in this supplement is not responsive at all to Interrogatory No. 17, which specifically sought information about communications between investors and the Freeborn Defendants.

The Freeborn Defendants' Interrogatory No. 18 asked Sender to "describe any and all communications between 'brokers and marketing agents through whom Messrs. Mann and Wells sold promissory notes' as identified in your Rule 26 disclosures and [any of the Freeborn Defendants]." Sender's Supplemental Response to Interrogatory No. 18, dated January 6, 2004, stated:

The Trustee objects to this request on the grounds that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, see answer to interrogatory No. 17 and Ryan Rule 2004 Examination Exhibits 15, 16, 17, 18, 21, 23 and 24; Deposition Transcripts of Eric Brumagin, Jeffrey Buck, Paul Fasullo, Curtis Creek, Russell

Jones, Todd Nye, Mark Roy, Robert Ryan, Consolidated Capital, John Santoro, and Joseph Shedlock; R & D Marketing Brochure at LV4738-4757. MD-SEC264, McG51, Life17511-17512, 17595-17618, 17622-17631, 17795-17891.

**\*655** *See* Exhibit F attached to Defendants' Motion to Strike. Messrs. Brumagin and Nye are the only brokers who are referenced in this supplemental response *and* in Sender's most recent list of trial witnesses. Mr. Kohut, a broker who appears on Sender's May 27, 2004 witness list, is mentioned in three of the documents cited in Sender's supplemental response to Interrogatory No. 17.FN5 Mr. Belles, another broker who remains on Sender's "will call" witness list, is not mentioned at all in Sender's supplemental response to Interrogatory No. 18.

FN5. Mr. Kohut is referenced in SW001104 and POY000367, which are letters written to Lifeblood Medical, Inc. dated January 20, 1999. These letters, signed by Michael Kohut and D.F. Baker, demand payment in full of outstanding promissory notes. One document, SW001104 reflects that Michael Sabian was copied on that letter to Lifeblood Bio-Medical. Sender's supplemental discovery responses also included POY000355, which is a letter to Michael Sabian on December 15, 1998, purportedly sent by Robert Branch and Michael Kohut. That letter, which demanded payment in full of overdue promissory notes, was signed only by Mr. Branch.

[6][7] Although Rule 26(e)(1) recognizes that supplementation of initial disclosures can take various forms, alternative methods for supplementation must be consistent with and further the objectives underlying the mandatory disclosure requirement. Rule 26(e)(1) must be governed by the same "common sense" standard applicable to Rule 26(a), and supplemental disclosures should provide the opposing party with enough useful information to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

make informed decisions regarding discovery and trial preparation. Measured against this standard, Sender's supplemental responses to Interrogatory No. 17 and 18 do not meet the requirements of Rule 26(e)(1). Having agreed to limit each side to 20 non-expert depositions, Sender's interrogatory responses left the Freeborn Defendants with the choice of either requesting a substantial number of additional depositions, with all of the attendant costs, or hoping that they correctly guessed which of the approximately 300 investors and brokers ultimately would testify at trial. I conclude that the Rule 26(e) supplementation requirement contemplates greater precision, particularly in a case such as this. *See Santiago v. Furniture Chauffeurs, Piano Movers, Packers and Handlers Local 705,* 2001 WL 11058 *7 (N.D.Ill.2001) ("civil litigation is not a game of hide-the-ball"). Here, Sender is seeking compensatory damages in excess of $9 million, as well as treble damages and attorneys fees and costs, and has brought claims involving multiple Defendants, alleged wrongdoing spanning a number of years, and generically identified more than 300 potential witnesses. It should also be noted that Plaintiff Sender had an opportunity to investigate the relevant facts in the context of bankruptcy proceedings that pre-dated the instant litigation. Under the particular circumstances of this case, mandatory and supplemental disclosures should have provided sufficient detail and clarity to permit each Defendant to make informed decisions about the discovery necessary to address the specific claims directed against that party, and to prepare for trial. *Cf. Dixon v. Certainteed Corp.,* 164 F.R.D. 685, 691 (D.Kan.1996) (noting that the a party's "reasonable inquiry" prior to making initial disclosures "will vary based upon such factors as the number and complexity of the issues; the location, number, and availability of potential witnesses ... and of course how long the party has to conduct an investigation, either before or after filing the case"). Sender's disclosures fall well short of that common-sense standard.

*II. Imposing an Appropriate Sanction*

[8] Rule 37(c)(1) of the Federal Rules of Civil Procedure states that where a party fails to make a disclosure required by Rule 26(a) or Rule 26(e)(1), that party may not use at trial any witness or information not so disclosed, unless the court determines that the failure to disclose was substantially justified or harmless. *See* Fed.R.Civ.P. 37(c)(1). The non-moving party has the burden of showing that they were substantially justified in failing to comply with Rule 26(a)(1). *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995). While Rule 37(c)(1) is written in mandatory terms, it also vests the court with discretion to impose "other appropriate sanctions" in addition to or in lieu of an order striking witnesses or evidence not properly disclosed. *See* ***656** Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.,* 170 F.3d 985, 993 (10th Cir.1999) (recognizing that Rule 37(c) vests broad discretion with the trial court). *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico,* 248 F.3d 29, 34 (1st Cir.2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations).

[9] Sanctions should not be imposed under Rule 37(c)(1) where the failure to disclose was substantially justified or harmless. For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance. *Nguyen v. IBP, Inc.,* 162 F.R.D. at 680. "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." *Id.*

The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court. A district court need

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.,* 170 F.3d at 993.

[10] Applying the *Woodworker's* factors to the record before the court, I conclude that Sender's failure to comply with its obligations under Rule 26(a)(1)(A) and 26(e)(1) was not substantially justified. It appears that Sender made a deliberate decision not to conduct a reasonable inquiry into the information actually possessed by the disclosed investors and brokers, providing instead a description of anticipated testimony that were so general as to be virtually worthless for purposes of making informed pretrial decisions. The court also does not find that Sender's non-compliance was harmless. *Cf. Lintz v. American General Finance, Inc.,* 1999 WL 619045, *6 (D.Kan.1999) (noting that non-compliance is harmless only when there is no prejudice to the opposing party). In weighing the element of prejudice or surprise, the court must take heed of the purposes underlying Rule 26(a)(1). "The importance of lay ... witness disclosures and the harms resulting from a failure to disclose need little elaboration." *Saudi v. Valmet-Appleton, Inc.,* 219 F.R.D. 128, 134 (E.D.Wis.2003). While Sender is not required to marshal all of Defendants' evidence, Rule 26(a)(1) disclosures must be sufficiently detailed to allow Defendants to make intelligent decisions regarding how they will efficiently use the limited number of depositions permitted under the Rule 16 scheduling order. *Cf. D.L. v. Unified School District # 497,* 270 F.Supp.2d at 1241 (finding prejudice to the extent that plaintiffs' failure to make required Rule 26(a)(1) disclosures undermined defendants' ability to conduct discovery

as to the non-disclosed witnesses). *Compare* 6 *Moore's Federal Practice* § 26.27[2][d] at 26-93 ("a failure to disclose witness information is 'harmless' if the other party was well aware of the identity of the undisclosed witness and the scope of their relevant knowledge well before trial").

Sender disputes any claim of prejudice by noting that virtually all of the investors and brokers reside beyond the court's subpoena power, thereby necessitating *de bene esse* depositions prior to trial. Sender reasons that Defendants can simply take a "discovery deposition" during the same trip and prior to each preservation deposition. As a practical matter, that "remedy" would afford Defendants little time to assimilate the information developed during the discovery deposition and prepare cross-examination for a preservation deposition. *Cf. Transclean Corp. v. Bridgewood Services, Inc.,* 77 F.Supp.2d 1045, 1064 (D.Minn.1999) (noting while a continuance and reopening of discovery might alleviate some of the prejudice caused by non-disclosure under Rule 26(a), "such a remedy would wreak its own distinctive prejudice," by unnecessarily prolonging the pretrial**\*657** process and increasing the expense of litigation), *aff'd in part and vacated in part on other grounds,*290 F.3d 1364 (Fed.Cir.2002). Moreover, Sender has conceded that communication with many of the investors is complicated by their age or infirmities. It is reasonable to assume that those complications have not diminished with the passage of time. Truly informative Rule 26(a)(1) disclosures, provided in a timely manner, would have afforded Defendants an opportunity to make informed discovery decisions before memories became even dimmer. *Cf. Reddick v. Bloomingdale Police Officers,* 2003 WL 1733560, *11 (N.D.Ill.2003) (finding that plaintiffs had been prejudiced by defendant's belated Rule 26(a)(1) disclosures; during the intervening two years, the witness' recollection had substantially diminished). The Tenth Circuit also recognizes that delay and mounting attorneys fees can equate to prejudice. *See Jones v. Thompson,* 996 F.2d 261, 264 (10th Cir.1993).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

225 F.R.D. 645, 60 Fed.R.Serv.3d 958
**(Cite as: 225 F.R.D. 645)**

As for the second and third *Woodworker's* factors, the court recognizes that a trial date has not been set in this case. That fact affords a greater ability to cure any prejudice to the Freeborn and Leone Defendants, and minimizes the possibility of trial disruption. However, the court cannot disregard the disruption that has already occurred as a result of Sender's deficient disclosures. To suggest that sanctions are not appropriate simply because the trial court can provide a further extension of time or delay the trial would effectively reward Sender's non-compliance. Rules 26(a)(1) and 26(e)(1) are designed to facilitate case management and the discovery process. Certainly, Sender's inadequate disclosures have disrupted those objectives.

Finally, with respect to the fourth factor, Defendants have not offered any evidence that would demonstrate that Sender's failure to comply with Rule 26(a)(1)(A) and Rule 26(e)(1) was the product of bad faith or willfulness. However, Sender's good faith alone may not be enough to overcome the other three factors. *Cf. Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 955 (10th Cir.2002), *cert. denied,*537 U.S. 1066, 123 S.Ct. 623, 154 L.Ed.2d 555 (2002). Sender should not be permitted to ignore his disclosure obligations throughout the discovery period and then avoid sanctions simply by claiming his deficiencies were not willful.

Consistent with the primary goal of Rule 37 sanctions, which is to deter misconduct, "the sanction imposed should be the least severe of those available, which appears adequate to deter and punish the wrongdoer." *Hite v. The PQ Corp.,* 1998 WL 895893, *2 (D.Kan.1998).* The Freeborn Defendants originally requested an order striking and precluding Sender from calling as witnesses at trial "any of the 195 investors regarding any communications with the Freeborn Defendants, or reliance upon any alleged script or other purported work product of Messrs. Sabian and Poyfair." The Freeborn Defendants also requested an order precluding "any of the 163 Brokers [from testifying] regarding any communications with the Freeborn Defendants

except for the specific communications identified in response to Interrogatory No. 18." After carefully considering the *Woodworker's* factors and the objectives underlying Rule 37(c), I find that the sanctions specifically requested by the Freeborn Defendants are not warranted under the facts in this case. *See Scott v. IBM Corp.,* 196 F.R.D. 233, 247 n. 9 (D.N.J.2000) (noting that exclusion of evidence under Rule 37(c) is not appropriate unless the party failed to disclose or supplement in bad faith or unless the resulting prejudice cannot be cured); *Comuso v. National Railroad Passenger Corp.,* 1998 WL 800342 *2 (E.D.Pa.1998)* (holding that the importance of the excluded testimony is also an important final consideration in considering Rule 37(c) sanctions).

The need for the requested relief has been significantly altered by Sender's more recent decision to limit the number of investor and broker witnesses who will testify live or through deposition at trial. Obviously, there is no reason to "strike" witnesses who will never appear at trial. At present, the parties do not have a trial date and the Freeborn Defendants have expressed their intention to file dispositive motions under Fed.R.Civ.P. 56. The court concludes that the Freeborn Defendants should be permitted to conduct discovery depositions of the 15 investor and 5 broker witnesses who will testify at **658** trial. Had Sender made proper disclosures in a timely manner, the Freeborn Defendants would have been in a position to factor that information into their discovery plan, would have had that information available to their experts, and could have taken that information in account in preparing a motion for summary judgment. *Cf. Perkasie Industries Corp. v. Advance Transformer, Inc.,* 143 F.R.D. 73, 76-77 (E.D.Pa.1992) ("[a] party is not permitted to postpone identification of is own witnesses and the substance of their testimony until a critical point in the proceedings at which it will become extremely burdensome for his opponent to prepare effectively to meet them"). The depositions permitted under this Memorandum Order will place the Freeborn Defendants in the position they would

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 225 F.R.D. 645)**

have enjoyed if the Initial Disclosures had been provided. Recognizing the additional costs that inevitably result from inefficient discovery, I will also require, as an appropriate sanction for Sender's failure to comply with disclosure obligations under Rules 26(a)(1) and 26(e)(1), that Sender pay the fees and costs for one attorney representing the Freeborn Defendants to participate in those depositions, up to a maximum of $3,000 per deposition. The court concludes that no other sanction is appropriate or necessary to achieve the objectives underlying Rules 26 and 37.[FN6]

> [FN6.] In their Reply Brief, the Freeborn Defendants indicate they still wish to strike Sender's trial exhibits 269 and 451. That portion of Defendants' motion is denied. As to Sender's exhibit 269, which is described as a letter relating to investor Russell Crosson, the Freeborn Defendants will have an opportunity to depose Mr. Crosson if he is included among the 15 designated investors. If he is not included as a trial witness, then exhibit 269 may well become irrelevant. As to Sender's exhibit 451, which is described as "telephone records for Richard Franzen," the court notes that Mr. Franzen no longer appears on Sender's list of "will call" or "may call" witnesses. Given that omission, the court will deny the motion to strike Sender's exhibit 451, but will certainly give Defendants leave to challenge the admissibility of that exhibit at trial, should it be offered.

D.Colo.,2004.

Sender v. Mann

225 F.R.D. 645, 60 Fed.R.Serv.3d 958

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit E

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

2000 PENNSYLVANIA AVENUE, N.W.

WASHINGTON, D.C. 20006-1801

(202) 974-1500

FACSIMILE
(202) 974-1999

WWW.CLEARYGOTTLIEB.COM

NEW YORK

PARIS

BRUSSELS

LONDON

MOSCOW

FRANKFURT

COLOGNE

ROME

MILAN

HONG KONG

BEIJING

KENNETH L. BACHMAN, JR.
SARA D. SCHOTLAND
JOHN S. MAGNEY
MARK LEDDY
JOHN C. MURPHY, JR.
DAVID M. BECKER
GEORGE S. CARY
JANET L. WELLER
MITCHELL S. DUPLER
LINDA J. SOLDO
GIOVANNI P. PREZIOSO
JOHN T. BYAM
MATTHEW D. SLATER
MICHAEL R. LAZERWITZ
DAVID I. GELFAND
MICHAEL A. MAZZUCHI
ROBERT W. COOK
MARK W. NELSON
ROBIN M. BERGEN
DEREK M. BUSH
PAUL D. MARQUARDT
BRIAN BYRNE
RESIDENT PARTNERS

J. EUGENE MARANS
DANIEL B. SILVER
RICHARD DEC. HINDS
SENIOR COUNSEL

W. RICHARD BIDSTRUP
SCOTT N. BENEDICT
KEVIN A. GRIFFIN
STEVEN J. KAISER
COUNSEL

JOYCE E. MCCARTHY
KAREN A. KERR
SCOTT R. GOODWIN
JOHN P. MCGILL, JR.
SENIOR ATTORNEYS

MATTHEW R. AYRES
JENNIFER M. BABOUNAKIS
MATTHEW I. BACHRACK
JENNIFER S. HENSON
LEE F. BERGER
MATTHEW J. BERMAN
CHINWE BINITIE
KATHLEEN W. BRADISH*
LEAH BRANNON
KEVIN R. BURKE*
JEREMY CALSYN
KATHERINE M. CARROLL
JACOB M. CHACHKIN*
KERRI J. CHASE
SHAWN J. CHEN
TAMARA S. CLARK
EMILY L. COOKE*
SEAN D. COREY
ALYSON J. DAIS
LARRY C. DEMBOWSKI
ALINA D. ELDRED
DESMOND EPPEL
MICHAEL P. FRANCK*
RYAN C. GAUBERT*
MICHAEL R. HARTMAN
ELIZABETH A. HARVEY
ERIC H. HILDENBRAND

STEPHANIE SUN HINDERKS*
MEGHAN A. IRMLER
DINAH R. KNIGHT
FIANA R. KWASNIK
CHRISTOPHER T. LEAHY
JEFFREY LEASURE
JOHN R. LOATMAN
THOMAS D. MCCONNELL
PATRICIA M. MCDERMOTT
ANNE NEWTON MCFADDEN
YASMIN MEHRAIN
ADAM J. MILLER
JENNIFER A. MORRISSEY
DAVID NUSBAUM*
AARON MARR PAGE
LAUREN L. PEACOCK
ANTONIO J. REYNOLDS
NICOLE ROTHE
PAUL R. ST. LAWRENCE III
AUDRA L. SAVAGE
OMAR SERAGELDIN
GARY SILBER
NATHANIEL F. STANKARD*
JOSHUA B. STERLING
SARAH G. TEN SIETHOFF
PETIA VRETENAROVA
JOANNE C. WALLINGTON
ASSOCIATES

* ADMITTED ONLY TO A BAR OTHER THAN THAT OF THE DISTRICT OF COLUMBIA.
WORKING UNDER THE SUPERVISION OF PRINCIPALS OF THE WASHINGTON OFFICE.

November 16, 2007

Honorable John J. Hughes
United States Magistrate Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re:  Broadcom Corp. v. Qualcomm Inc., Civil Action No. 05-3350 (MLC)

Dear Judge Hughes:

Pursuant to Your Honor's Order of October 18, the parties have met and conferred regarding an amended case management order. During those discussions, the parties reached agreement on a number of issues as follows.

1. Qualcomm shall have until December 21, 2007, to respond to Broadcom's Second Amended Complaint. The parties will exchange any additional initial disclosure information by that date as well.

2. If Qualcomm files a motion to dismiss, Broadcom shall have until January 25, 2008, to respond and Qualcomm shall have until February 15, 2008, to reply to that response.

3. The deadline to assert counterclaims shall be February 29, 2008.

4. Any motion to amend the pleadings or to join new parties shall be filed no later than October 3, 2008, and made returnable on October 27, 2008.

5. Fact discovery shall close on December 19, 2008.

6. Interrogatories shall be limited to 35 per side, exclusive of any interrogatories served on or before September 1, 2006.

7. Expert discovery shall close on March 27, 2009.

8. The form of document productions shall be as set forth in the parties' agreement of January 20, 2006.

9. The anticipated trial date is June 2009.

With Qualcomm's assistance, we have prepared the enclosed draft amended case management order, which reflects those agreed terms. As you will see, the draft order follows the language and conventions of Your Honor's original pretrial scheduling order of September 22, 2005.

The parties have been unable, however, to reach agreement on two issues, which we address below. For Your Honor's convenience, the draft amended case management order notes those disagreements in the text and sets forth the parties' competing proposals.

Porting of discovery from cases with overlapping facts. The first disagreement relates to the manner in which discovery from two other cases involving the parties will be used in this case, where those other cases had substantially overlapping facts. Although it is eminently sensible and efficient that such discovery be deemed produced here, Qualcomm refuses to do so, even though it agreed to that approach during negotiations regarding the California unfair competition action, which Your Honor may recall was stayed in favor of this case at Qualcomm's request and over Broadcom's objection.

The two cases at issue are patent infringement actions that Qualcomm brought against Broadcom, in which it accused Broadcom of infringing patents that it alleged were essential to practice certain industry standards. The two litigations are *Qualcomm v. Broadcom*, No. 05-CV-01392 (RMB) (S.D. Cal.) (the "1392 case") and *Qualcomm v. Broadcom*, No. 05 CV 01958B (BLM) (S.D. Cal.) (the "1958 case"). The 1392 case involved accusations by Qualcomm that Broadcom infringed certain patents that Qualcomm claimed are essential to the GSM, GPRS, EDGE, and/or UMTS standards. The 1958 case involved accusations by Qualcomm that Broadcom infringed other patents that Qualcomm claimed are essential to a video compression standard called H.264.

The GSM, GPRS, EDGE, UMTS, and H.264 standards are the very standards at issue in this case. Part of Broadcom's defenses in the 1392 and 1958 cases was that Qualcomm had waived its right to enforce the patents at issue by abusing the standard-setting process in connection with those standards, in particular by waiting until years after the standard was set to declare the patents essential and then only doing so as part of a strategy to undermine Broadcom as a competitor. Qualcomm pursued the 1958 case to trial, at the conclusion of which the jury recommended that Qualcomm's patents be deemed waived because of Qualcomm's failure to disclose as required. Qualcomm then withdrew the 1392 case just before it was scheduled for trial.

Key to both cases was Qualcomm's conduct during the standard-setting process. In the 1958 case, Judge Brewster found that Qualcomm had engaged in a pattern of deception in that process. As a consequence of that gross misconduct, Judge Brewster held that Qualcomm had waived its right to enforce the patents at issue. Judge Brewster also found that Qualcomm's misconduct extended into the litigation itself, including through Qualcomm's presentation of false testimony during trial (which followed Qualcomm's use of a similar false statement to support its motion for summary judgment) and Qualcomm's post-trial production of hundreds of thousands of pages of materials relating to standard setting that should have been produced during pre-trial discovery. Judge Brewster found that "Qualcomm counsel participated in an organized program of litigation misconduct and concealment throughout discovery, trial, and post-trial . . . ." *Qualcomm Inc. v. Broadcom Corp.*, No. 05-CV-1958-B (BLM) (S.D. Cal. Aug. 6, 2007), slip op. at 32 (attached as Exhibit A to this letter). (Qualcomm's counsel in the 1958 case were from different firms than Qualcomm's counsel in this case.) This misconduct and Qualcomm's intentional refusal to disclose its patents to the Joint Video Team ("JVT"), the standard-setting body that created the H.264 standard, led Judge Brewster to conclude that Qualcomm had willfully abused the standard-setting process: "[i]n light of all of the above evidence finally revealed, the eventual collapse of Qualcomm's concealment efforts exposes the carefully orchestrated plan and the deadly determination of Qualcomm to achieve its goal of holding hostage the entire industry desiring to practice the H.264 standard by insulating its IPR from the JVT so that the JVT would lose the opportunity to mitigate, if not avoid, Qualcomm's IPR in the development of the H.264 standard." *Id.* at 52.

Putting aside Qualcomm's troubling litigation conduct, the discovery in both the 1958 and 1392 cases is directly relevant and, in the interest of judicial economy and efficiency, should be deemed produced here. Both cases involved abuse of some of the very standard-setting processes at issue here and porting would impose zero burden on the parties. Indeed, that discovery material is already loaded on the computers of the parties' outside counsel.

Rather than agree to that simple and straightforward proposal, Qualcomm insists that Broadcom identify the specific discovery materials from those cases that Broadcom wants to have ported into this case. That makes no sense, because to do so would require Broadcom to review all of the material (which consists of millions of pages of documents and dozens or more depositions, as well as interrogatory responses and other discovery responses, all of which is covered by various protective orders entered in those other cases that strictly limit access to those materials) and would undoubtedly create numerous spurious disputes over relevance, which this Court would need to referee. As in any case, the proper time to resolve whether particular discovery materials *that have already been produced* are relevant is during the final pre-trial proceedings, where exhibit lists are set and evidentiary motions resolved. Qualcomm's proposal would impose unnecessary burdens on Broadcom and the Court for no legitimate purpose.

Indeed, directly contrary to the position it now asserts, in discussions about this same issue in connection with the California state litigation that was stayed in favor of this action, Qualcomm *agreed* that the discovery in the 1392 and 1958 cases should be deemed produced. Having agreed on that point, Qualcomm asserted that discovery from two other litigations, the so-called "0660" and "1662" actions, which involved trade-secret claims that are wholly irrelevant to the present proceedings (and which Qualcomm previously had dropped), should be cross-produced as well. In addressing that issue, Qualcomm's counsel Mr. Barbur

3

confirmed Qualcomm's *agreement* to port the 1392 and 1958 into the California action: "Qualcomm believes that the documents produced in the 0660 and 1662 actions – *just like the documents produced in the 1392 and 1958 matters – should be deemed produced* in the [California] matter . . . ." (8/14/07 letter from Barbur to Saxton, attached as Exhibit B (emphasis added).) (As far as Broadcom knows, Qualcomm has abandoned the argument that the 0660 or 1662 actions have any relevance here or that discovery from those actions should be ported into this action.)

Of course, now that the allegations and claims that were pending in the California action have been, at Qualcomm's insistence, moved here, the discovery should be ported here as well. Indeed, when Qualcomm's counsel Mr. Chesler (who is also lead counsel in this case) argued in favor of the stay of the California action, he stressed the similarity of discovery and how the same discovery in the California case should be available in New Jersey: "With respect to the documents, ... any discovery that's taken place in intervening litigations that will be available is going to be available in either place, in either – in either this litigation or the New Jersey litigation." (*Broadcom Corp. v. Qualcomm, Inc.*, No. 07CC01249 (Cal. Sup. Ct. Oct. 5, 2007) (Sundvold, J.) (transcript of stay hearing) at 11:9-18 (attached as Exhibit C).)

Qualcomm cannot have it both ways. It cannot argue that a stay is appropriate in California because discovery would be available to be ported into the New Jersey action and then resist that porting.

Number and counting of depositions. The second disagreement relates to how many depositions each party will be allowed to take and how those depositions will be counted. Broadcom believes that the 30 depositions that the Court ordered in Your Honor's original pretrial scheduling order of September 22, 2005 remains appropriate. Indeed, given the extensive discovery that has taken place in the 1392 and 1958 cases, fewer depositions may be needed than were anticipated at that time. Certainly more are unlikely to be needed. Qualcomm's assertion that it expects to take dozens of depositions of third parties is belied by the fact that during the more than 14 months the case was pending before it was dismissed, *Qualcomm took no depositions of third parties at all*. In any event, if either party believes during discovery that there is a need to exceed 30 depositions, it may always make an application to the Court; Qualcomm's proposal to allow from the outset as many as 60 depositions per side – six times the limit permitted by the Federal Rules – is an invitation for waste and harassment.

In addition, Broadcom believes that, to the extent there are multi-day depositions, including depositions under Rule 30(b)(6), they should count against the applicable limit as one deposition per deposition day. Establishing such a baseline rule now should reduce the need to invoke Your Honor's assistance as to particular depositions in the future.

4

*       *       *       *       *

We are available at Your Honor's convenience to present further information or argument on these issues.  Please do not hesitate to contact us if Your Honor would find that useful or if we or Broadcom can be of any further assistance.

Respectfully,

/s/ Steven J. Kaiser

Counsel for Broadcom Corporation

cc:  Counsel for Qualcomm Incorporated (via ECF service):

William J. O'Shaughnessy, Esq.
Evan Chesler, Esq.
Peter T. Barbur, Esq.

5