WILMERHALE

April 4, 2008

Mark D. Selwyn

+1 650 858 6031 (t)
+1 650 858 6100 (f)
mark.selwyn@wilmerhale.com

The Honorable John J. Hughes
United States District Court, District of New Jersey
Clarkson S. Fischer Federal Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re: *Broadcom Corporation v. Qualcomm Incorporated*, C.A. No. 05-3350 (MLC) (JJH)

Dear Judge Hughes:

We represent Broadcom Corporation. We write pursuant to the parties' agreement to submit simultaneous letter briefs today describing certain disputes relating to the "second wave" of discovery that the parties were unable to resolve through the meet-and-confer process. We address below (1) Qualcomm's position that it should not be required to collect and produce documents from each of the Qualcomm custodians who Qualcomm believes to possess relevant documents, and (2) three Broadcom requests for production that Qualcomm refuses to answer meaningfully.[1]

### The Number of Qualcomm Custodians Whose Files Should be Searched

In correspondence to Broadcom, Qualcomm itself has identified 120 Qualcomm custodians who Qualcomm believes have documents relevant to the allegations in this case. Broadcom believes that, as required by Fed. R. Civ. Proc. 26 and 33, Qualcomm must conduct a reasonable search of the documents of these custodians, using the electronic search protocol that the parties have discussed (which is designed to lessen the parties' search burden). Qualcomm's position, on the other hand, is that the number of custodians with relevant documents -- again, whom Qualcomm itself has identified -- is too large to search, and that it should therefore be excused from having to collect and produce documents from each of them. But Qualcomm has provided Broadcom with no reason why it should not be required to search for the relevant documents of any particular custodian or custodians, no information about the volume of relevant documents each custodian has or why such a search would be unreasonably burdensome, and no explanation why this case should be treated differently from any of the other cases between these parties where relevant documents have been collected and produced from large numbers of custodians. Accordingly, Qualcomm has presented no reason it should be excused from the normal requirements of Fed. R. Civ. Proc. 26 and 33.

---

[1]    In its response letter brief due April 11, 2008, Broadcom will reply to Qualcomm's arguments regarding certain discovery to which Qualcomm believes it is entitled but for which the parties were unable to reach agreement.

WILMERHALE

The Honorable John J. Hughes
April 4, 2008
Page 2

Broadcom has another serious concern related to Qualcomm's request to restrict its document search. Qualcomm essentially asks the Court to allow Qualcomm to withhold concededly relevant documents, which is akin to the conduct for which Qualcomm recently was severely sanctioned in other litigation with Broadcom. In *Qualcomm, Inc. v. Broadcom Corp.*, No. 05-1958, 2008 WL 66932 (S.D.Cal. Jan. 7, 2008), the court found, *inter alia*, that "Qualcomm withheld tens of thousands of emails showing that it actively participated in the JVT in 2002 and 2003" – one of the same standards bodies at issue in this case[2] – "and then utilized Broadcom's lack of access to the suppressed evidence to repeatedly and falsely aver that there was 'no evidence' that it had participated in the JVT prior to September 2003. Qualcomm's misconduct in hiding the emails and electronic documents prevented Broadcom from correcting the false statements and countering the misleading arguments." *Id.* at *6. Despite that finding, Qualcomm now asks this Court for permission not to search and collect from custodians that it has identified as having relevant documents. Broadcom believes that restricting the document search in the manner urged by Qualcomm would invite some of the same problems that occurred during the litigation in the Southern District of California. *See id.* at *10 (citing as "misconduct by Qualcomm" that "Qualcomm . . . has not established that it searched the computers or email databases of the individuals who testified on Qualcomm's behalf at trial or in depositions as Qualcomm's most knowledgeable corporate witnesses").

## Disputed Broadcom Requests For Production

### Broadcom Request No. 47

Broadcom Request No. 47 reads as follows:

> "Any Qualcomm plan or draft thereof, or the plan of any other person or company or any draft thereof, whether adopted or not, for the development, marketing, or licensing of technology for any actual or potential Mobile Wireless Standard or Video Compression Standard, of the following nature: business plans, short term and long range strategies and objectives, budgets and financial projections, research and development plans,

---

[2]       *See* Second Amended Complaint ("SAC") ¶¶ 290, 298, 309, 320.

WilmerHale

The Honorable John J. Hughes
April 4, 2008
Page 3

      technology licensing plans, and presentations to management committees, executive
      committees, and boards of directors."[3]

Qualcomm objects to this request and proposes to limit its production to responsive documents
related to the GSM, GPRS, EDGE, UMTS, H.264, and IEEE 802 standards.

Broadcom cannot accept Qualcomm's proposed limitation because it would exclude categories
of documents directly relevant to Broadcom's claims, *in particular, documents related to
CDMA-based technologies*, of the type the Third Circuit already has found to be relevant to this
case. As Broadcom told Qualcomm during the meet-and-confer process, it is prepared to narrow
this request to documents relating to the standards that Qualcomm proposes plus CDMA-based
technologies, but Qualcomm has rejected this proposal. These documents are important to
several of Broadcom's claims, in particular: (a) its claim that Qualcomm attempted to
monopolize the market for UMTS chipsets, SAC ¶ 282; (b) its claim that Qualcomm
monopolized markets for technologies necessary to practice the standards at issue in this case,
SAC ¶¶ 48, 276, 286.[4]

*Attempted Monopolization of The Market for UMTS Chipsets*

The Third Circuit has made clear that CDMA-related evidence is relevant in this case to showing
that "the same anticompetitive practices that resulted in Qualcomm's acquisition of monopoly
power in the markets for CDMA chipsets and technologies now threaten to create monopoly
power in the emerging market for UMTS chipsets." *Broadcom Corporation v. Qualcomm
Incorporated*, 501 F.3d 297, 319 (3d Cir. 2007).

A claim of attempted monopolization requires "(1) that the defendant has engaged in predatory
or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous

---

[3]     "Mobile Wireless Standard" and "Video Compression Standard" are defined to include
the standards that Qualcomm is alleged to have manipulated to the detriment of Broadcom.
*Compare* SAC ¶¶ 276, 281, 286, 290-94, 298, 303, 309, and 320 *with* Broadcom's Second Set of
Requests for Production at 9 ("'Mobile Wireless Standard' means any industry standard for
mobile wireless communications, including, but not limited to, AMPS, CDMA, GSM, GPRS,
EDGE, TDMA, WTDMA, TD-SCDMA, UMTS, OFDM/OFDMA, IEEE 802.20 WiMAX and
any Future Generation standard."); *id.* at 11 ("'Video Compression Standard' means any industry
standard for the processing of digital video signals, including, but not limited to, H.264, H.263,
H.26L, MPEG 2, and MPEG 4.").

[4]     These documents are also relevant to Broadcom's related common law and California
unfair competition claims.

WILMERHALE

The Honorable John J. Hughes
April 4, 2008
Page 4

probability of achieving monopoly power." *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993). The requested documents relating to CDMA-based technologies are relevant to all three of these essential elements.

As to the first element, Broadcom has alleged that Qualcomm is attempting to monopolize the UMTS chipset market by wrongful conduct that includes, among other things, refusing to license on FRAND terms its purportedly essential patents to competing UMTS chipset manufacturers, which includes demands for unreasonable royalties. SAC ¶¶ 121-122. As Broadcom has alleged, one indicator that Qualcomm has demanded unreasonably royalties is that it "has publicly represented that it is charging the same royalty rates for licensing on WCMDA technology as it charges for licenses to its 3G CDMA technology . . . despite the fact that its patents comprise a much smaller proportion of the UMTS standard than of the 3G CDMA technology standard." SAC ¶ 121; *see also* SAC ¶ 122. Accordingly, documents relating to Qualcomm's development, marketing, and licensing practices for CDMA-based technologies are directly relevant to proving that Qualcomm has refused to license WCDMA technology on FRAND terms.

As to the second element, Broadcom's Second Amended Complaint alleges that Qualcomm has "specific intent" to monopolize the market for UMTS chipsets. SAC ¶ 282. Documents related to Qualcomm's marketing and licensing practices for CDMA-related technologies are relevant to this claim because Broadcom has alleged that Qualcomm obtained its monopoly in CDMA chipsets through its licensing practices for CDMA-based technologies.[5] Accordingly, documents revealing that Qualcomm intended to use these intentionally exclusionary licensing practices to monopolize the CDMA chipset market and that those practices had that effect will buttress Broadcom's assertion that Qualcomm has a similar specific intent to monopolize the UMTS chipset market through similar exclusionary licensing practices in the markets for UMTS-related technology. *Cf. Broadcom*, 501 F.3d at 319 (noting relationship of CDMA activities to Broadcom's UMTS-related claims).

Documents showing how Qualcomm's CDMA licensing practices led to its CDMA chipset monopoly are similarly relevant to the third element of Broadcom's attempted monopolization claim – a dangerous probability that Qualcomm will monopolize the UMTS chipset market. Documents demonstrating that Qualcomm's CDMA-based technology licensing practices led to its CDMA chipset monopoly will show that similar licensing practices for UMTS-related technologies create a "dangerous probability" that Qualcomm will also obtain a monopoly in the

---

[5]     SAC ¶ 58 ("Qualcomm has used [its] power over CDMA technology to obtain and protect monopoly power in the various generations of CDMA chipset markets."); *see also* SAC ¶¶ 62, 69.

WILMERHALE

The Honorable John J. Hughes
April 4, 2008
Page 5

UMTS chipset market. Broadcom is entitled to discovery into Qualcomm's CDMA-based
technology licensing practices to demonstrate this similarity.

*Monopolization of Technology Markets*

Documents bearing on Qualcomm's licensing strategies for CDMA-related technology are
relevant also to Broadcom's claim that Qualcomm illegally monopolized technology markets
through wrongful conduct including, among other things, fraudulent breaches of FRAND
commitments and IPR disclosure obligations. SAC ¶¶ 276, 286; *see Verizon Communications v.
Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ("the possession of monopoly power
will not be found unlawful unless it is accompanied by an element of anticompetitive conduct").
For the reasons that we have discussed in connection with Broadcom's attempted
monopolization claim, documents relating to Qualcomm's marketing and licensing of CDMA-
related technology will also demonstrate that Qualcomm has engaged in anti-competitive
conduct by refusing to license its WCDMA-related technology on FRAND terms. Moreover,
because Qualcomm's FRAND licensing and IPR disclosure obligations for CDMA-related
technology are similar to its obligations for WCDMA-related technology,[6] documents showing
how Qualcomm has construed its obligations for CDMA-related technologies are relevant to
showing what it understood its WCMDA-related obligations to be and Qualcomm's intent to
violate them. SAC ¶¶ 276, 286.

*CDMA/UMTS Entanglement*

Underlying the relevance of CDMA discovery described above is the extensive factual
entanglement between CDMA and UMTS in regard to FRAND commitments and licensing
practices. Indeed, in its "Counterclaim," Qualcomm itself alleges that many of the same
Qualcomm patents bear on both CDMA and WCDMA/UMTS (¶ 43); that the FRAND
commitments it made and received regarding CDMA and WCDMA/UMTS are directly related
(¶ 51); and that its licensing proposals to Broadcom simultaneously encompassed both CDMA
and WCDMA/UMTS (¶ 58). Moreover, in an effort to show compliance with its UMTS
FRAND licensing commitment, Qualcomm repeatedly refers to past and contemporaneous
licensing practices that almost surely encompass CDMA as well as UMTS (e.g., ¶¶ 55, 56, 62,
81, 84, and 86). Given these acknowledged interrelationships, the relevance of CDMA
discovery is all the more clear.

---

[6]    Qualcomm has admitted as much in public statements such as its annual SEC filings. *See*
10-K Report of Qualcomm, Incorporated for Fiscal Year Ending September 25, 2005 at 6, 17
(Nov. 2, 2005), *available at* http://investor.qualcomm.com/sec.cfm.

WILMERHALE

The Honorable John J. Hughes
April 4, 2008
Page 6

**Broadcom Request No. 68**

Broadcom Request No. 68 reads as follows:

> "All documents and things related to or comprising communications between Qualcomm
> and its customers or prospective customers and/or its licensees or prospective licensees
> regarding Broadcom."

Qualcomm has refused to provide *any* documents responsive to this request, and has declined to
propose any modification or compromise. Instead, it contends that Broadcom Request No. 50
will provide all necessary information. Request No. 50, however, is limited only to
communications about *disputes* between Broadcom and Qualcomm.[7] It does not encompass
other relevant documents sought by Request No. 68, in particular, communications between
Qualcomm and its actual or prospective customers and licensees regarding Broadcom.

For instance, Request No. 68 would cover communications in which Qualcomm claims that
Broadcom is infringing Qualcomm's intellectual property or that Qualcomm licensees would
receive a better deal if they ceased purchasing Broadcom chipsets, even if those communications
do not concern an actual dispute between Broadcom and Qualcomm. These and other
documents responsive to Request No. 68 (but not Request No. 50) are highly relevant to
establishing, among other things, that (a) Qualcomm injured competition and Broadcom by
excluding Broadcom from standards-compliant chipset markets (SAC Counts Two and Eight)
and (b) Qualcomm interfered with Broadcom's prospective economic advantage (SAC Count
Five) by, for example, suggesting to potential Broadcom customers that Broadcom's products
infringe Qualcomm patents. Such anticompetitive behavior lies at the heart of Broadcom's
Complaint, and Qualcomm cannot proffer any justification for withholding these documents.

Furthermore, Request No. 68 is necessary to obtain documents that can be used to identify
Qualcomm employees and third parties whose depositions will be required. Broadcom will take
such depositions to discover what Qualcomm's agents have communicated to customers and
licensees about Broadcom's products and technology. Request No. 68 is important in this regard
because other document requests may not shed sufficient light on the interactions of
Qualcomm's agents and Broadcom's potential customers.

---

[7]      Request No. 50 states: "All documents and things concerning any communications by or
between Qualcomm and any person or company about any dispute or disputes between
Broadcom and Qualcomm."

WILMERHALE

The Honorable John J. Hughes
April 4, 2008
Page 7

**Broadcom Request No. 80**

Broadcom Request No. 80 seeks documents central to several Broadcom allegations. It reads:

> "All documents and things concerning any evaluation of any Qualcomm patent or patent portfolio relating to intellectual property rights for any Mobile Wireless Standard or Video Compression Standard. This request also covers all proposed or potential standards, whether or not actually adopted."

Qualcomm proposes to limit its response to only those documents that concern its evaluation of intellectual property rights (IPR) that Qualcomm actually declared to relevant SDOs to be essential to relevant standards. Qualcomm's proposal to produce only documents relevant to *disclosed* IPRs is inadequate. Several of Broadcom's claims are grounded in allegations that Qualcomm *failed to disclose* to SDOs all required IPR.[8]  Broadcom asserts, for example, that Qualcomm has tried to influence SDOs to adopt certain technology—without disclosing Qualcomm's belief that this technology was covered by its own patents, and allowing Qualcomm later to "surface" its purportedly standards-essential IPRs. *See, e.g.*, SAC ¶¶ 322, 324. Qualcomm's proposal would prevent Broadcom from seeing documents relevant to these claims, by excluding documents relating to Qualcomm's evaluation of Qualcomm patent or patent portfolios that are relevant to Qualcomm's non-disclosure.

Further, Qualcomm's proposed response could entirely exclude documents relating to its analysis of any IPR that Qualcomm considered relevant to the 802.20 standard. The IEEE 802.20 working group was suspended due to Qualcomm's misfeasance (SAC ¶ 265), and the proposed 802.20 standard has not been finalized. Before the working group was suspended, Qualcomm may have been internally identifying which of its IPRs were relevant to the draft standard under discussion (including Qualcomm IPRs not disclosed to 802.20); if so, Broadcom is entitled to all such evaluations and analysis. Qualcomm's internal assessment of the nature and value of its IPRs that were relevant to -- and could be incorporated in -- the draft standard bears on Qualcomm's motives for influencing the working group through improper means. This information is relevant to at least the Fourth, Sixth, and Eighth Claims of the SAC.

---

[8]  *See* SAC ¶¶ 276 (nondisclosure of relevant IPRs alleged in First Claim); 281 (nondisclosure of relevant IPRs alleged in Second Claim); 286 (nondisclosure of relevant IPRs alleged in Third Claim); 292 (nondisclosure of relevant IPRs alleged in Fourth Claim); 303 (nondisclosure of relevant IPRs alleged in Sixth Claim); 309 (nondisclosure of relevant IPRs alleged in Seventh Claim); 322 (nondisclosure of relevant IPRs alleged in Eighth Claim).

WILMERHALE

The Honorable John J. Hughes
April 4, 2008
Page 8

Sincerely yours,

Mark D. Selwyn

cc:     All Counsel