# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON

JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III

WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN

DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
CHRISTINE BESHAR

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1058

April 4, 2008

<u>Broadcom Corp. v. Qualcomm Inc., No. 05-3350 (MLC)(JJH)</u>

Dear Judge Hughes:

As provided in the parties' joint letter of March 21, 2008 (attached hereto as Exhibit A), this letter sets forth Qualcomm's position on five outstanding areas of dispute with respect to the "second wave" of discovery in this action. It is our understanding that Broadcom will also file a letter today setting forth its position on these five disputed areas, and that each party then will file a letter on April 11 responding to the other's letter of today.[1]

The disputes between the parties relate to three primary issues. *First*, Qualcomm seeks discovery related to the practices of Broadcom and other companies in connection with the IEEE standards body's Project 802. In its Second Amended Complaint ("SAC"), Broadcom accuses Qualcomm of violating the rules and procedures of IEEE Project 802—rules and procedures that, according to Broadcom's own theory, are established in large part by the practices of other participants in the IEEE Project 802

_____

[1] In a letter sent to the Court on April 2, 2008 (attached hereto as Exhibit B), Broadcom indicated that it is belatedly seeking to raise three additional purported discovery disputes—disputes that were not timely raised during the parties meet-and-confer discussions and are not mentioned in the parties' March 21 joint letter. Because Broadcom failed to meet and confer in good faith about these additional issues, and because they are described only in the most conclusory fashion in Broadcom's April 2 letter, Qualcomm is not sure exactly what Broadcom claims is even in dispute. Nonetheless, we briefly respond at the end of this letter to Broadcom's tardy effort to raise these additional issues.

working groups, including Broadcom.  Accordingly, under Broadcom's theory, it is highly relevant how Broadcom and other companies interpret and apply the IEEE Project 802 rules and how they in fact behave in the Project 802 working groups.  Qualcomm has therefore requested that Broadcom produce documents relating to several working groups in which Broadcom has been active, including 802.1, 802.2, 802.3, 802.11, 802.16 and 802.20.  Qualcomm also seeks documents concerning communications Broadcom had with Broadcom's current employee, Patricia Thaler, prior to the time Ms. Thaler joined Broadcom in 2006.  Ms. Thaler chaired several IEEE working groups and task forces and served on the IEEE Project 802 Executive Committee before and after she joined Broadcom.  As a high-level Project 802 participant and Broadcom recruit, Ms. Thaler necessarily has highly relevant information about the rules, procedures and practices of Project 802.

*Second*, Qualcomm seeks discovery relating to two code-named Broadcom initiatives—"Project Stockholm" and "Project Koala"—that are of core relevance to this case.  As described at length in Qualcomm's Counterclaims, Project Stockholm is a group consisting of Broadcom and five entrenched wireless companies (Nokia, Ericsson, Texas Instruments, Panasonic and NEC) that have collectively agreed to attack Qualcomm through concerted global litigation, standards development and licensing activities.  Project Koala is an internal Broadcom plan to use litigation for leverage in negotiations with Qualcomm.  Both projects—which explain why, contrary to the allegations in the Second Amended Complaint, Broadcom rejected Qualcomm's repeated FRAND licensing offers and brought this case—are clearly and critically relevant to Qualcomm's counterclaims and defenses.  Broadcom therefore should be required to produce (or log if privileged) documents relating to Project Stockholm and Project Koala.

*Third*, despite the impending fact discovery deadline (December 19, 2008), Broadcom seeks to require Qualcomm to search and produce documents from the files of 120 separate Qualcomm custodians.  Such an effort would dwarf the discovery that has already taken place in this case, would likely require processing and reviewing approximately 10 million additional documents (amounting to upwards of 40 million pages) at a cost over $10 million and—even with a staff of 20 lawyers working non-stop 12 hours a day—simply could not be completed before the discovery cut-off already set in this case.  Accordingly, Qualcomm asks that the Court limit the number of custodians whose files must be reviewed so that the second wave of discovery feasibly can be completed in compliance with the December 19, 2008, close of fact discovery.

**1.     IEEE 802 Working Groups**

Broadcom alleges that Qualcomm manipulated the IEEE 802.20 Working Group by taking "improper steps"—including hiring consultants to attend working group meetings, paying the working group chair as a "consultant" and failing to disclose the affiliation of these consultants—to prevent the IEEE 802.20 Working Group from adopting a particular technical standard, all in alleged violation of the IEEE rules.  (SAC ¶¶ 260-62, 265.)  As with all of its claims related to alleged misconduct before various standards development organizations (SDOs), Broadcom specifically alleges that

Qualcomm's conduct should be measured not only against the written policies and procedures of the IEEE 802 working groups, but also against the "practices" of other working group participants including, by definition, Broadcom. (*See, e.g.,* SAC ¶¶ 19, 138.) Obviously, therefore, how Broadcom and other companies in fact have conducted themselves in Project 802 is highly relevant here. It is for this reason that Qualcomm has sought discovery relating to six Project 802 working groups (*i.e.*, 802.1, 802.2, 802.3, 802.11, 802.16 and 802.20) in which Broadcom has actively participated. Notably, all of these groups have, at all relevant times, been governed by the *same* written rules, policies and procedures promulgated by IEEE and Project 802, including those relating to "dominance", working group conduct and voting procedures, appeals and affiliation disclosure. (*See* IEEE Project 802 LAN MAN Standards Committee (LMSC) Policies and Procedures, http://standards.ieee.org/board/aud/LMSC.pdf.)

This is not a fishing expedition. To the contrary, even the limited information Qualcomm has been able to develop to date shows that Broadcom's own conduct in Project 802 belies its allegation that Qualcomm engaged in actionable "misconduct". For example, whereas Broadcom alleges it was improper for Qualcomm to hire consultants to attend 802.20 Working Group meetings, it is a matter of public record that the Chair of the 802.1 Working Group (which follows the same rules) is a consultant hired by Broadcom. (*See* http://ieee802.org/wgchairs.html (identifying Tony Jeffree as "self-employed" and affiliated with Broadcom).) Other Broadcom consultants have also attended 802.1 Working Group meetings. Moreover, while Broadcom alleges that Qualcomm somehow broke Project 802 rules by steering the 802.20 Working Group toward a particular technology, such advocacy of a particular technology is in fact a common and well-known practice. Indeed, Broadcom participated in a group that met outside the 802.11 Working Group and presented, as a *fait accompli,* a standard on which the group had secretly agreed. Broadcom also alleges that Qualcomm somehow improperly attempted to "dominate" the 802.20 working group by sending multiple representatives to its meetings. However, since the late 1990s, over twenty Broadcom employees have attended 802.3 Working Group meetings and Broadcom currently has sixteen official voting members in the 802.11 Working Group alone. (*See* http://www.ieee802.org/11/Voters/votingmembers.htm.) Moreover, Broadcom is a member of both formal and informal organizations that appear to engage in block voting in Project 802 working groups—the very conduct Broadcom claims is somehow contrary to the "practices" of IEEE participants (including Broadcom itself).

Evidence relating to other Project 802 working groups is also relevant to rebutting Broadcom's claim that Qualcomm's conduct somehow caused the 802.20 Working Group not to issue a standard. Causation is an essential element of all of Broadcom's claims, including its 802.20 claim. However, one cannot begin to understand what caused the 802.20 Working Group not to issue a standard without also looking at the 802.16 Working Group, which amended its charter to overlap with that of the 802.20 Working Group and then actively developed a standard that would be an alternative to the standard being developed by the 802.20 Working Group. Indeed, the evidence will show that, in order to help insulate themselves from the competition posed by 802.20, Broadcom and other 802.16 Working Group participants actively interfered with the development of a standard by the 802.20 Working Group and thereby

themselves caused the suspension of the 802.20 Working Group (something Broadcom improperly tries to blame on Qualcomm).

At bottom, Broadcom should not be permitted to manipulate the record relating to IEEE Project 802 by focusing on just one working group of Broadcom's choosing (802.20) while attempting to wall off discovery of five other 802 working groups that would show that Broadcom's 802.20 allegations are baseless. Broadcom will not be burdened by discovery related to the five other IEEE 802 working groups Qualcomm has proposed. As described in greater detail below, the parties have agreed to conduct discovery by running agreed-upon search terms across the electronic records of custodians. To the extent that Broadcom's documents relating to 802.1, 802.2, 802.3, 802.11 and 802.16 include agreed-upon search terms, Broadcom's reviewers will simply mark them to be produced instead of marking them as non-responsive. Therefore, while the number of documents produced may increase, Broadcom would not suffer any further burden.

## 2.    Broadcom Employee Patricia Thaler

Qualcomm's Request No. 117 seeks "[a]ll communications with Patricia Thaler sent or received by Broadcom employees or agents prior to the commencement of Ms. Thaler's employment at Broadcom". Broadcom contends that the request is "harassing" and "seeks documents not relevant to the allegations of the Second Amended Complaint". That is wrong.

Ms. Thaler, whom Broadcom recruited from Agilent Technologies in 2006, has been deeply involved in IEEE Project 802 and has served on the Project 802 Executive Committee since at least early 2003. In that capacity, she participated in the March 2003 discussions regarding whether the Executive Committee should uphold the election of Jerry Upton to chair the 802.20 Working Group—a key event in Broadcom's 802.20 allegations. (SAC ¶ 262.) In addition, she has chaired several working groups and task forces within IEEE Project 802 and currently is the Second Vice Chair of IEEE 802. (*See* http://ieee802.org/wgchairs.html.) Notably, in March 2006, Ms. Thaler voted "no" to the extension of the project authorization request for the 802.20 Working Group, thus hindering the ability of the 802.20 Working Group to complete its standard— something which, as noted, Broadcom blames on Qualcomm. (SAC ¶¶ 265-66.)

Ms. Thaler is thus well-situated to have documents relevant to Broadcom's IEEE 802 allegations. Moreover, Ms. Thaler, who was recruited by Broadcom after already participating in IEEE Project 802—and who continues to be a key participant today—was in a unique position to pass information along and to aid Broadcom in connection with its own IEEE Project 802 efforts. In short, Broadcom, having alleged that Qualcomm's conduct derailed the 802.20 Working Group, should not be permitted to shield from discovery its own communications with a top Project 802 operative and Broadcom recruit who actually contributed to the suspension of the working group.

Qualcomm's request for Ms. Thaler's documents is also limited, targeted and reasonable, especially when compared with Broadcom's requests. Broadcom has, for example, requested an extremely broad universe of documents related to Jerry Upton, a Qualcomm consultant who chaired the 802.20 Working Group. (*See* Broadcom Request No. 62 (seeking "[a]ll documents and things concerning, constituting, referring to, or evidencing any communications by or between Qualcomm and Jerry Upton").) Qualcomm, on the other hand, far from "harassing" Broadcom, seeks a much narrower set of communications between Broadcom and Ms. Thaler, designed to discover documents relating to Broadcom's attempts to influence IEEE activities by recruiting a Project 802 executive. Such documents are clearly relevant to Broadcom's IEEE claims. Moreover, the additional burden to Broadcom of producing such documents—which presumably exist only in the files of the relatively few employees who communicated with Ms. Thaler before she joined Broadcom—is minimal and, in light of Broadcom's insertion of IEEE Project 802 into this case, perfectly appropriate.

**3.      Project Stockholm**

Project Stockholm is an alleged conspiracy, involving Broadcom, Nokia, Ericsson, Texas Instruments, Panasonic and NEC, to fix technology prices and stifle competition from Qualcomm and its customers. Broadcom's Project Stockholm behavior is therefore critical to Qualcomm's Counterclaims and defenses, including its unclean hands affirmative defense. (*See* Counterclaims ¶¶ 2, 86-110.) As alleged in detail in Qualcomm's Counterclaims, Qualcomm's innovative technology and non-discriminatory licensing policy have enabled new entrants to compete in the wireless marketplace, to the detriment of entrenched equipment manufacturers (*e.g.*, Nokia, Ericsson, Panasonic and NEC) and chip makers who supply those manufacturers (*e.g.*, Texas Instruments and Broadcom). As a result, the Project Stockholm companies seek to protect their own entrenched market positions at the expense of Qualcomm and the new entrants that have been enabled by Qualcomm's technology and licensing policy. Broadcom's actions in connection with Project Stockholm include its unreasonable refusals to accept Qualcomm's many FRAND license offers, which were as good as or better than offers that had been accepted by companies situated similarly to Broadcom, and its decision to launch coordinated global litigation (including this case) against Qualcomm. Broadcom's conduct as part of Project Stockholm thus directly contradicts one of Broadcom's central allegations in this case—*i.e.*, that the reason Broadcom does not have a license from Qualcomm is that Qualcomm has refused to offer FRAND licensing terms.

Project Stockholm members have repeatedly announced their intention to fix license rates and attack Qualcomm through coordinated global litigation, standards development activities and licensing conduct. Critically, on an October 28, 2005, conference call, counsel for Nokia, Texas Instruments and Broadcom specifically announced that Broadcom, by refusing Qualcomm's FRAND license offers and bringing this case, is "carrying the torch in the U.S." for the conspiracy. (*See* Counterclaims ¶ 99.) Accordingly, Broadcom's communications with other Project Stockholm companies are directly relevant not only to Broadcom's decision to reject Qualcomm's repeated licensing offers but also to the claims Broadcom asserts in this case. (*See* Qualcomm's Requests No. 123-24, 126.)

Indeed, Broadcom recently re-emphasized that its claims against Qualcomm are part of a coordinated effort with the other Project Stockholm companies. In a March 21, 2008, San Diego Tribune article, David Rosmann, Broadcom's vice president of intellectual property litigation, is quoted as saying that "[t]here is no secret about this commonality of interest or the fact of the companies' cooperation and consultation with regard to Qualcomm's exclusionary conduct, nor need there be". Nokia spokeswoman Laurie Armstrong concurred, stating that "[w]e've done everything very publicly". Jonathan Sidener, *Qualcomm Says Competitors Conspiring in Patent Dispute*, San Diego Union-Tribune, Mar. 21, 2008, at C-1 (attached hereto as Exhibit C).

Based on Qualcomm's Counterclaims alone, there can be no serious dispute that documents relating to Project Stockholm are relevant and, in the parties' meet-and-confer discussions, Broadcom has never really contended to the contrary.[2] Rather, Broadcom has simply referred to Broadcom's view that *most* documents relating to Project Stockholm are privileged and, therefore, Broadcom does not think it should have to respond to *any* of Qualcomm's document requests directed to Project Stockholm. However, as with every other category of documents requested, if a party contends that relevant and responsive documents are privileged, then those documents should be described on a privilege log so that the other side can evaluate the claim of privilege. *See* Fed. R. Civ. P. 26(b)(5)(A). And any responsive documents that are not privileged should be produced. No special rule applies to Project Stockholm documents simply because Broadcom would prefer that they be shielded from view.

## 4.    Project Koala

Related to Project Stockholm, Project Koala is a Broadcom initiative to extort better licensing terms from Qualcomm by using litigation for leverage rather than negotiating in good faith. As outlined above and in Qualcomm's Counterclaims, Qualcomm has made repeated license offers to Broadcom on terms that were as good as or better than licensing terms to which other chip manufacturers have agreed. (Counterclaims ¶¶ 56-66, 77-83.) But Broadcom, just days after sending Qualcomm a counteroffer that indicated that Broadcom believed its patent portfolio to be significantly more valuable than Qualcomm's portfolio, abruptly launched a cavalcade of litigation against Qualcomm. (*Id.* ¶¶ 65-67, 84-85.)

Qualcomm has since learned that Broadcom was not negotiating in good faith, but rather was following a "litigation enabled" negotiating strategy called "Project Koala". (*Id.* ¶¶ 75-76.) As a result, Qualcomm requests that Broadcom produce documents relating to Project Koala. (*See* Qualcomm's Request No. 132.) Broadcom's only response is that "'Koala' is an internal code name for [Qualcomm], thus this

---

[2] Broadcom has not filed a motion to dismiss Qualcomm's Counterclaims and, even if it does, the parties have agreed that any such motion shall *not* result in a stay of discovery relating to the matters alleged in the Counterclaims. (*See* March 19, 2008, Stipulation Extending Time To Answer, Move or Otherwise Reply.)

[request] amounts to an unrestricted request to produce every document 'relating to' Qualcomm and is therefore overly burdensome because it could require "a search of every document in Broadcom's possession". (March 18, 2008, Broadcom Chart of Objections to Qualcomm's Third Set of Requests for the Production of Documents, at 18 (attached hereto as Exhibit D).)

Broadcom's stated concern is baseless for at least two reasons. *First*, Qualcomm has not asked for all documents referencing "Koala" but rather has asked specifically for documents concerning "Project Koala", Broadcom's "litigation enabled" strategy aimed at Qualcomm. Presumably, this is just a small subset of Broadcom's documents relating in some general way to Qualcomm. And, even if it is a large collection, Qualcomm certainly is entitled to any document relating to Broadcom's "litigation enabled" licensing strategy in this lawsuit because *Broadcom is suing Qualcomm over licensing*. Broadcom's strategy to pursue litigation rather than negotiate licensing in good faith is undeniably relevant. *Second*, the parties have a search term and custodian protocol in place that generally prevents either party from having to conduct company-wide searches. Qualcomm is simply asking that Broadcom search for the term "koala" in the files of relevant custodians and produce documents relating to "Project Koala". That is not an unreasonable request.

**5.     Custodian Limits**

Because the vast majority of responsive documents in the case will be electronic, the parties have agreed to a protocol for production of electronic documents during the "second wave" of discovery that is similar to what was agreed to during the "first wave". Specifically, the parties are assembling an agreed list of search terms that will be run against the electronic files associated with certain identified custodians. All electronic documents identified in this manner will then be manually reviewed for responsiveness to the parties' document requests (as modified through the meet-and-confer process). Responsive documents will either be produced or described on a privilege log.

During the "first wave" of discovery, 81 Qualcomm custodians were identified as having potentially relevant information and their electronic documents were reviewed pursuant to the search term methodology described above. The process of interviewing these custodians in order to identify their relevant electronic files and then collecting those files and running the electronic searches against the files alone took four months. Ultimately, just under 2.7 million documents were collected for attorney review. With a staff of more than 20 attorneys working 12-hour days, the review for responsiveness and privilege spanned 8 additional months.

In connection with the "second wave" of discovery, 39 additional Qualcomm custodians have been identified as likely to have responsive materials because of the additional issues raised in the Second Amended Complaint. Adding these 39 additional custodians to the original 81 custodians, Broadcom is now demanding that Qualcomm collect, search and review documents from a total of 120 custodians. This would necessarily result in considerable duplication of effort from the first wave of

discovery in that Qualcomm would have to go back to many of the same original group of custodians, obtain an updated collection of electronic documents, run a new and expanded list of search terms against these documents and then manually review the resulting "hits" for responsiveness to a new and expanded series of document requests. Not only would this process be wasteful, but it literally cannot be completed consistent with the existing fact discovery cut-off of December 19, 2008.

Qualcomm has already collected approximately 6.7 million electronic documents (not pages) from a subset of the 120 custodians and anticipates that completing the collection would result in approximately 3.2 million additional documents—bringing the total to approximately 10 million electronic documents. Assuming a "hit rate" of just 30 percent—which is consistent with our experience in the past—there would be approximately 3 million documents (likely spanning well in excess of 10 million pages) that would need to be manually reviewed by attorneys.

Reviewing such a volume of documents prior to the fact discovery cut-off is simply not feasible. Including weekends and holidays, there are 238 days between the hearing date of this dispute (April 25, 2008) and the close of fact discovery (December 19, 2008). If Qualcomm were to deploy 20 attorneys to review documents for 12 hours a day every day (including weekends and holidays) before fact discovery closes, they would likely be able to review just over half of the documents demanded by Broadcom. The cost of just the attorney time spent reviewing those documents, not including costs like hardware, data conversion and storage, would exceed $10 million.

Qualcomm has raised this issue repeatedly with Broadcom and has said that it is open to many possible alternative ways to narrow the custodian list based on either side's views about which custodians should be prioritized. Qualcomm has said it is willing to discuss adding custodians to the priority list as discovery progresses, so long as time permits. Qualcomm has also encouraged Broadcom to make its own suggestions concerning how to solve the problem that there are simply too many identified custodians to permit all such custodians' documents to be searched and produced in the next seven or eight months. (*See* February 22, 2008, Barbur Letter at 5 (attached hereto as Exhibit E); March 7, 2008, Barbur Letter at 2 (attached hereto as Exhibit F).) All of this has been to no avail. Broadcom has refused to agree to any alternative that does not include Qualcomm's commitment to search the files of all 120 identified Qualcomm custodians.

Because of the extraordinary costs and the virtual impossibility of complying with Broadcom's demand before fact discovery closes, Qualcomm requests that the Court enter an order requiring the parties to select 30 "priority" custodians for each side and to focus on producing their documents as quickly as possible. Time permitting, additional custodians may be added to this list. In this way, the parties will receive documents from the most important custodians as early as possible and be able to complete fact discovery under the deadlines set by the Court.

### 6.    Broadcom's Tardy Identification of Additional Issues

In addition to the five areas of disagreement that were timely identified in the parties' joint letter to the Court on March 21, 2008, Broadcom now also apparently seeks to raise three more purported discovery disputes. These additional issues are very briefly described in a letter to the Court dated April 2 but were not timely raised during the parties' lengthy meet-and-confer process. Nor did Broadcom identify these additional issues in the parties' joint letter of March 21, even though the parties had committed to each other and to the Court that there would be "a deadline of March 21, 2008 for these meet-and-confer discussions to be completed, after which they will notify the Court if any judicial intervention is required to resolve any remaining disagreements". (*See* February 22, 2008, Joint Letter to the Court (attached hereto as Exhibit G).)

Broadcom has offered no explanation whatsoever for why the matters mentioned in its April 2 letter were not timely raised during the meet-and-confer process or included in the March 21 joint letter. Accordingly, Broadcom's belated attempt to raise these issues should be rejected on timeliness grounds alone.

Broadcom's failure to raise these issues in a timely manner during the meet-and-confer process also leaves Qualcomm somewhat at a loss in even understanding exactly what Broadcom is complaining about. Nonetheless, we also briefly set forth below why we do not think Broadcom has any basis to complain about Qualcomm's responses to the three document production requests identified in Broadcom's April 2 letter.

### a.    Broadcom's Request No. 47

As modified in a letter from Broadcom dated March 20, 2008 (attached hereto as Exhibit H), Broadcom's Request No. 47 seeks documents concerning plans "for the development, marketing, or licensing of technology for any actual or potential Mobile Wireless Standard or Video Compression Standard". Qualcomm has agreed to produce the documents Broadcom seeks, subject only to the clarification that the plans should relate to the standards that are actually relevant to this case (*i.e.*, the GSM, GPRS, EDGE, UMTS, H.264 and IEEE 802 standards). Notably, Broadcom has agreed that this clarification is appropriate for more than a dozen other document requests served by Broadcom (Nos. 35, 38, 45 50, 52, 53, 55, 58, 60, 66, 69, 70, 81, 83, 84, 86 and 89) and Broadcom has not offered any reason why the clarification should not apply to Request No. 47. Broadcom also cannot seriously contend that it is entitled to plans concerning standards (or "potential" standards) that are not relevant to its claims. Moreover, Broadcom's reference to "actual or potential Mobile Wireless Standard[s] or Video Compression Standard[s]" is impossibly vague. If Broadcom seeks plans relating to standards other than those listed in Qualcomm's response to Request No. 47, then Broadcom should at least be required to identify those standards and explain why it believes plans relating to them are relevant. Broadcom has not done so.

### b.    Broadcom's Request No. 68

Broadcom's Request No. 68 seeks documents relating to "communications between Qualcomm and its customers [or licensees] . . . regarding Broadcom". In its written response to Request No. 68, Qualcomm made clear that, beyond its response to Broadcom's Request No. 50 (which seeks communications regarding *disputes* with Broadcom), Qualcomm objected to and would not produce documents in response to Request No. 68. Throughout literally weeks of meet-and-confer discussion, Broadcom never once raised any issue with respect to Qualcomm's response to Request No. 68. And Broadcom certainly did not identify Request No. 68 as an area of dispute in the parties' March 21 joint letter to the Court. Indeed, the first mention of Request No. 68 was in a letter Broadcom sent to Qualcomm on March 28, 2008, a full week after the March 21 joint letter. In that letter, Broadcom simply noted that Request No. 68 "differs from and is more inclusive than Request 50"—something that is and always has been obvious—and then asserted without explanation that Qualcomm's response "is not acceptable". (March 28, 2008, Saxton Letter at 4 (attached hereto as Exhibit I).) Having failed to meet and confer in good faith about any objection to Qualcomm's response to Request No. 68, Broadcom's belated attempt to raise a dispute about Request No. 68 should be rejected. Moreover, Qualcomm's responses to Request Nos. 50 and 68— offering to produce communications with customers relating to *disputes* with Broadcom but not every communication with a customer that simply mentions the word "Broadcom" in an unrelated and irrelevant context—is perfectly reasonable.

### c.    Broadcom's Request No. 80

Broadcom's Request No. 80 seeks "documents and things concerning any evaluation of any *Qualcomm patent or patent portfolio* relating to intellectual property rights for any Mobile Wireless Standard or Video Compression Standard". (Emphasis added.) In clarifying its response to this request in a chart provided to Broadcom on March 17, Qualcomm noted that it would not produce any documents concerning any third party patent portfolios unless such portfolios were subsequently acquired by Qualcomm. This was an unnecessary clarification in that Request No. 80 did not even request documents relating to third-party patent portfolios—it concerns only *Qualcomm* patents and patent portfolios. Qualcomm pointed this out to Broadcom during the parties' meet-and-confer process and said that Broadcom could simply disregard Qualcomm's clarification and consider it withdrawn. Broadcom, however, apparently persists in attempting to make an issue about the clarification previously provided (but subsequently withdrawn) by Qualcomm. Indeed, in its March 28 letter—the only place where Broadcom even purports to raise issues about Qualcomm's response to Request No. 80—Broadcom "object[ed] to Qualcomm's 'Clarification'" and took the nonsensical position that it was "not acceptable" for Qualcomm to refuse to "produce documents related to any third party's patent positions or portfolios" in response to Request No. 80, even though Request No. 80 on its face relates only to *Qualcomm* patents and patent portfolios. Broadcom's March 28 letter also said that Broadcom's *only* complaint relating Request No. 80 is Qualcomm's (unnecessary and now withdrawn) "Clarification". (*See* Ex. I at 4 ("Qualcomm's proposed response, as written, is

acceptable, but the 'Clarification' is not acceptable.").)  The bottom line is that, even if Broadcom had raised this issue in a timely manner (which it did not), we are not aware of any actual dispute relating to Qualcomm's response to Request No. 80.

Thank you for your attention to this matter.

Respectfully,

*Peter Barbur* /MPA
Peter T. Barbur

The Honorable John J. Hughes
    United States District Court – District of New Jersey
        Clarkson S. Fisher Federal Building & U.S. Courthouse
            402 East State Street
            Trenton, NJ 08608

Copy w/encls. to counsel for all parties.

March 21, 2008

**By Facsimile and Overnight Mail**

The Honorable John J. Hughes
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, New Jersey 08608

Re: *Broadcom Corporation v. Qualcomm Incorporated*, Civil Action No. 05-3350 (MLC) (JJH)

Dear Judge Hughes:

      As reported to the Court on February 22, 2008, the parties agreed to complete by today their meet and confer discussions on issues relating to the "second wave" of discovery in this action and to notify the Court if any judicial intervention were required to resolve remaining disagreements. Accordingly, the parties identify below five areas of disputes that remain. The parties propose to file simultaneous letter briefs concerning these issues on April 4, 2008, and response letter briefs on April 11, 2008.

1.    Discovery relating to the working groups known as 802.1, 802.2, 802.3, 802.11 and 802.16 that are component parts of the IEEE standards-development organization, in response to various Qualcomm Requests for Production.

2.    Discovery relating to Patricia Thaler, in response to Qualcomm's Third Request for Production No. 117.

3.    Discovery relating to Qualcomm's "Project Stockholm" allegations, in response to Qualcomm's Third Request for Production Nos. 123, 124, 126.

4.    Discovery relating to "Project Koala", in response to Qualcomm's Third Request for Production No. 132.

5.    The appropriate scope of discovery of Qualcomm, as measured by the number of Qualcomm custodians whose files will be searched.

Respectfully submitted,

Mark D. Selwyn                              Peter T. Barbur
Counsel for Broadcom Corporation             Counsel for Qualcomm Incorporated

WILMERHALE

April 2, 2008

Mark D. Selwyn

+1 650 858 6031 (t)
+1 650 858 6100 (f)
mark.selwyn@wilmerhale.com

**By Facsimile and Overnight Mail**

The Honorable John J. Hughes
United States District Court, District of New Jersey
Clarkson S. Fischer Federal Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re: *Broadcom Corporation v. Qualcomm Incorporated*, C.A. No. 05-3350 (MLC) (JJH)

Dear Judge Hughes:

We represent Broadcom Corporation, and write to provide notice of certain areas of dispute relating to the parties' "second wave" of discovery that are in addition to those set forth in the March 21, 2008 letter submitted by the parties. The parties have engaged in further discussions since March 21, 2008, during which it has become clear that certain additional areas of discovery are in dispute. Broadcom will address the parties' disagreement regarding the proper scope of discovery on the subjects set forth below in its letter brief to be submitted on April 4, 2008:

1.  Discovery relating to Qualcomm's plans for the development, marketing, or licensing of technology for actual and potential mobile wireless standards and video compression standards, in response to Broadcom's Second Request for Production No. 47.

2.  Discovery relating to communications between Qualcomm and its customers or prospective customers regarding Broadcom, in response to Broadcom's Second Request for Production No. 68.

3.  Discovery relating to Qualcomm's evaluation of patents and patent portfolios relating to the relevant standards, in response to Broadcom's Second Request for Production No. 80.

Sincerely yours,

Mark D. Selwyn

cc:    All Counsel

**Exhibit C**

4 of 540 DOCUMENTS

Copyright 2008 The San Diego Union-Tribune
The San Diego Union-Tribune

March 21, 2008 Friday

**SECTION:** BUSINESS; Pg. C-1

**LENGTH:** 739 words

**HEADLINE:** Qualcomm says competitors conspiring in patent dispute

**BYLINE:** Jonathan Sidener, STAFF WRITER

**BODY:**

Qualcomm has accused rivals Broadcom, Nokia, Texas Instruments and others of collusion and price fixing in their wide-ranging dispute over licensing the San Diego company's patents.

The companies are fighting over how much -- if anything -- the others must pay Qualcomm for technology that enables high-speed mobile Internet phones and networks.

In court filings, Qualcomm formalized charges of a conspiracy that it has previously alluded to, saying its competitors are coordinating attacks because they don't want to pay royalties for Qualcomm's "key patents" covering so-called third-generation phone networks.

Broadcom and Nokia said there was no collusion.

Qualcomm said its adversaries called themselves "Project Stockholm" and orchestrated a broad strategy against the company, according to its Feb. 29 counterclaim to a lawsuit filed by Broadcom in New Jersey. The filing claims that the goal of Project Stockholm was to reduce the value of Qualcomm's technology and to reduce competition from companies such as Samsung, which relies heavily on Qualcomm technology and has become the second-largest cell phone maker in the world.

The filing said Broadcom and Nokia "conspired" to coordinate global litigation against Qualcomm. Broadcom has filed several lawsuits against Qualcomm in the United States, while Nokia has sued Qualcomm in the United States, Europe and Asia.

Qualcomm quoted a Nokia attorney at a 2005 news conference as saying, "Broadcom is now carrying the torch in the U.S."

In the New Jersey suit, Broadcom claimed that Qualcomm did not properly notify an industry-standards organization of its patents. Qualcomm disputed the claim but has also asked the federal judge to dismiss Broadcom's claims under what is known as the doctrine of unclean hands.

"The group has even gone so far as to adopt a code name for their anticompetitive conspiracy," Qualcomm said in its filing. "An e-mail dated Nov. 18, 2005, from a representative of the Brunswick Group, a public relations firm jointly retained by Nokia, Broadcom, Ericsson, Texas Instruments, NEC and Panasonic, identifies the group as `Project Stockholm.' "

Qualcomm says competitors conspiring in patent dispute The San Diego Union-Tribune March 21, 2008 Friday

Broadcom said in a written statement that the companies openly collaborated and jointly announced complaints filed with the European Union.

By definition, collusion involves secret alliances.

"There is no secret about either this commonality of interest or the fact of the companies' cooperation and consultation with regard to Qualcomm's exclusionary conduct, nor need there be," said David Rosmann, Broadcom's vice president of intellectual property litigation.

The heart of the dispute involves Qualcomm's patents for a technology called WCDMA.

Qualcomm pioneered the use of a technology called CDMA, or code division multiple access, which allows multiple phone calls to exist on the same frequency without interfering with one another. The technology is the basis for Sprint and Verizon's networks and the phones for those networks. Manufacturers pay Qualcomm an estimated 5 percent of the cost of phones to license its patents.

CDMA became one of two dominant technologies in the United States, but it wasn't used in the first generation of digital phones in Europe, where a competing technology, GSM, had been adopted as a unified standard. European wireless companies such as Ericsson and Nokia were able to sell GSM phones and network equipment without paying royalties to Qualcomm.

For third-generation networks, Europe is migrating to wideband CDMA, or WCDMA, which sets up the conflict between Qualcomm and Nokia and Ericsson. Qualcomm, which holds a number of patents in the area, says its WCDMA patents are key to the technology. Broadcom, Ericsson and Nokia each hold some WCDMA patents.

Qualcomm says it is entitled to its 5 percent royalties for WCDMA phones.

The competitors are challenging that with a number of arguments.

In its court filings, Qualcomm said one of those strategies amounts to price fixing. The Project Stockholm companies pushed to limit licensing fees on WCDMA phones to a total of 5 percent to be split among the various companies with patents, Qualcomm said. They hoped to have a government agency or industry-standards body enforce the limit on royalty fees, Qualcomm said.

A Nokia spokeswoman said there was no Project Stockholm and that Qualcomm made up the name.

"There's no plot, no back-door actions," spokeswoman Laurie Armstrong said. "We've done everything very publicly."

**LOAD-DATE:** March 23, 2008

Exhibit D

**Broadcom v. Qualcomm, No. 05-3350 (MLC)**
**Chart of Broadcom's Responses to Qualcomm's Third Set of Requests for the Production of Documents**
**(March 18, 2008)[1]**

O = overbroad and/or not limited to a reasonable scope of time; B = unduly burdensome; NR = not relevant; NRC = not reasonably calculated to lead to the discovery of admissible evidence; D = duplicative; V = vague request failing to provide reasonable particularity regarding the scope of the documents sought; A = ambiguous and subject to multiple interpretations; PR = privilege; P = calls for the production of information that is publicly available or in the possession of QC and/or previously produced by BC

As expressed in previous communications with QC counsel, BC proposes limiting standards-related discovery to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. However, with respect to IPR and licensing policies, practices, and procedures, standards-related discovery will also encompass the following SDOs and specific working groups identified in the Second Amended Complaint: ETSI, the ITU, ATIS, ARIB, ANSI, ISO/IEC, JVT, the IEEE 802.20 working group (Par. 320); 3GPP (par. 89).

| | | |
|---|---|---|
| **NO. 65**<br><br>Documents sufficient to show (i) all organizational structures of Broadcom applicable in each year since 2005, including the title, job function and line of reporting for each managerial or executive employee of Broadcom; and (ii) Broadcom's document retention policies since 2005. | O, B, NRC, V, P, PR<br><br>BC is willing to produce after conferring to clarify non-privileged responsive documents not already produced. | BC will produce updated organizational structure documents that have not been previously produced, provided that Qualcomm agrees to produce similar documents in response to BC Request 30. |
| **NO. 66**<br><br>All documents that Broadcom contends establish any purported contractual right of any SDO that can be enforced by third parties as alleged in ¶¶ 77 and 291 of the Second Amended Complaint. | O, B, NRC, P, PR<br><br>BC objects insofar as this RFP mischaracterizes the allegations of ¶¶ 77 and 291, but BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |

---

[1] Broadcom reserves the right to supplement or correct this chart as necessary.

| **NO. 67**<br><br>All documents relating to Broadcom's interpretation of, or compliance with, any obligation to disclose IPR to any SDO, including all documents relating to Broadcom's policies, practices, and procedures relating to any such obligation. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced, related to ETSI, JVT, IEEE 802.20, ITU, VCEG, MPEG, and ISO/IEC. | BC proposes that with respect to policies, practices, and procedures, standards-related discovery will also encompass the following SDOs and specific working groups identified in the Second Amended Complaint:  ETSI, the ITU, ATIS, ARIB, ANSI, ISO/IEC, JVT, the IEEE 802.20 working group; 3GPP. |
|---|---|---|
| **NO. 68**<br><br>All documents relating to Broadcom's interpretation of, or compliance with, any obligation to license IPR on FRAND/RAND terms, including all documents relating to Broadcom's policies, practices, and procedures relating to any such obligation. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced, related to ETSI, JVT, IEEE 802.20, ITU, VCEG, MPEG, and ISO/IEC. | BC proposes that with respect to policies, practices, and procedures, standards-related discovery will also encompass the following SDOs and specific working groups identified in the Second Amended Complaint:  ETSI, the ITU, ATIS, ARIB, ANSI, ISO/IEC, JVT, the IEEE 802.20 working group; 3GPP. |
| **NO. 69**<br><br>All documents relating to Broadcom's contention that Qualcomm purportedly breached any contract with any SDO as alleged in ¶¶ 292-294 of the Second Amended Complaint, including documents supporting Broadcom's contention that Qualcomm deliberately delayed disclosing any IPR to any SDO with the intent to defraud as alleged in ¶ 324 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes limiting standards-related discovery to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
| **NO. 70**<br><br>All documents relating to any factual statement made by Qualcomm to any SDO that Broadcom contends was not true as alleged in ¶¶ 7, 90 and 312 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes limiting standards-related discovery to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |

| **NO. 71**<br><br>All documents relating to any fact that Broadcom contends Qualcomm had a duty to disclose, but failed to disclose to any SDO, or failed to disclose to any SDO in a timely manner or otherwise in compliance with any duty as alleged in ¶¶ 310 and 324 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes limiting standards-related discovery to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
|---|---|---|
| **NO. 72**<br><br>All documents relating to whether any standard or technical specification, or any technology underlying any standard or technical specification, would not have been adopted but for the timing of Qualcomm's IPR disclosures. | O, B, NRC, V, P, PR<br><br>BC will produce for the SDOs and standards most relevant to BC's Claims responsive non-privileged documents that have not previously been produced. | BC proposes that this RFP be limited to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
| **NO. 73**<br><br>All documents relating to the way(s) in which any standard or technical specification, or any technology underlying any standard or technical specification, would have been different but for the timing of Qualcomm's IPR disclosures | O, B, NRC, V, P, PR<br><br>BC will produce for the SDOs and standards most relevant to BC's Claims responsive non-privileged documents that have not previously been produced. | BC proposes that this RFP be limited to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
| **NO. 74**<br><br>All documents relating to any proposed standard or technical specification or any technology underlying any standard or technical specification that Broadcom alleges would have been adopted or developed but for Qualcomm's alleged misconduct. | O, B, NRC, V, P, PR<br><br>BC will produce for the SDOs and standards most relevant to BC's Claims responsive non-privileged documents that have not previously been produced. | BC proposes that this RFP be limited to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |

| **NO. 75**<br><br>All documents relating to any proposed standard or technical specification or any technology underlying any proposed standard or technical specification that Broadcom contends were considered by any SDO as an alternative to any Qualcomm technology as alleged in ¶¶ 88, 146, 147, 197 and 272 of the Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes that this RFP be limited to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
|---|---|---|
| **NO. 76**<br><br>All documents relating to any proposed standard or technical specification or any technology underlying any proposed standard or technical specification that Broadcom contends performed or would have performed at least as well as the Qualcomm technology selected or adopted by any SDO as alleged in ¶ 88 of the Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce for the SDOs regarding the allegations in ¶ 88 of the the Complaint responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 77**<br><br>All documents relating to any IPR that Broadcom has ever believed would have been essential to any proposed standard or technical specification or any technology underlying any proposed standard or technical specification considered by any SDO that Broadcom believes would have been different but for the timing of Qualcomm's IPR disclosures as alleged in ¶¶ 146, 147, 197 and 272. | BC objects to this RFP as unintelligible, vague, and ambiguous (other objections reserved). | Unless clarified by QC, no response necessary. |
| **NO. 78**<br><br>All documents relating to any Qualcomm IPR that Broadcom contends should have been disclosed to any SDO earlier, as alleged in ¶¶ 8, 94, 145 and 196 of the Second Amended Complaint, including documents relating to any communications concerning that IPR within Broadcom or between Broadcom and third parties. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |

| **NO. 79**<br><br>Documents sufficient to show the date and circumstances under which Broadcom or any other participants in any SDO first learned of any Qualcomm IPR that Broadcom contends should have been disclosed earlier to any SDO, as alleged in ¶¶ 8, 94, 145 and 196 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
|---|---|---|
| **NO. 80**<br><br>All documents relating to Broadcom's contention in ¶ 88 of the Second Amended Complaint that Qualcomm made "proposals in an attempt to steer the UMTS standard then under development toward purportedly patented Qualcomm technologies and away from alternative technologies that were at least as effective." | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 81**<br><br>All documents relating to the selection of technology for inclusion in the UMTS standard. | O, B, NRC, V, P, PR | Unless narrowed by QC, no response necessary. |
| **NO. 82**<br><br>All documents relating to Broadcom's participation in, or involvement with, the development of the UMTS standard. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to versions of the UMTS standard in existence as of October 1, 2005 responsive non-privileged documents that have not previously been produced. | BC proposes that this RFP be narrowed to versions of the UMTS standard in existence as of October 1, 2005. |
| **NO. 83**<br><br>All documents relating to or reflecting any statements or representations by Qualcomm in connection with the development of the UMTS standard. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |

| **NO. 84**<br><br>All documents relating to any specific action that Broadcom took, but would not have taken, had Qualcomm disclosed its IPR at any earlier date. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes limiting standards-related discovery to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
|---|---|---|
| **NO. 85**<br><br>All documents relating to any specific action that Broadcom did not take, but would have taken, had Qualcomm disclosed its IPR at an earlier date. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes limiting standards-related discovery to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
| **NO. 86**<br><br>All documents relating to Broadcom's membership or participation in any SDO, and any technical and non-technical committees or working groups thereof, including all documents relating to (i) any technical submissions or contributions made by Broadcom to those SDOs; (ii) the meetings Broadcom attended; and (iii) any Persons employed by, represented, affiliated with or acting on Broadcom's behalf at such meetings. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |
| **NO. 87**<br><br>All documents relating to Broadcom's disclosure of any IPR to any SDO, including all documents relating to the timing of such disclosure and any decision to disclose, not to disclose or to otherwise delay or limit Broadcom's disclosure. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |

| **NO. 88**<br><br>All documents relating to Broadcom's financial relationships with any Person employed by, representing, acting or participating on Broadcom's behalf in any SDO. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |
|---|---|---|
| **NO. 89**<br><br>All documents relating to Broadcom's financial relationships with any Person not an employee of Broadcom that ever represented or acted on behalf of Broadcom in connection with any SDO. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |
| **NO. 90**<br><br>All documents relating to Broadcom's policies and practices with respect to, and performance or nonperformance of, any alleged licensing or disclosure obligations established by any SDO, and any allegations, complaints or claims by any Person that Broadcom failed to comply with such licensing or disclosure obligations. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes that this RFP be limited to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
| **NO. 91**<br><br>All documents relating to Qualcomm's purported licensing practices and Broadcom's awareness thereof, as alleged in ¶¶ 6, 69, 107, 125, 127, 129, 134, and 281 of the Second Amended Complaint, without regard to any time limitation. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |

| **NO. 92**<br><br>All documents relating to any Qualcomm IPR that Broadcom contends Qualcomm has or had an obligation to license on FRAND terms, without regard to any time limitation. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes that this RFP be limited to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
|---|---|---|
| **NO. 93**<br><br>All documents relating to Broadcom's interpretation of the term "FRAND" without regard to any time limitation. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes that this RFP be limited to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |
| **NO. 94**<br><br>All documents relating to any FRAND undertakings that Broadcom made, without regard to any time limitation. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |
| **NO. 95**<br><br>All documents relating to Broadcom's participation in, or involvement with, any efforts within any SDO to amend or change any IPR rules or policies. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | BC proposes that this RFP be limited to: (1) activities within ETSI related to the GSM, GPRS, EDGE, and UMTS standards, from January 1, 1997 through the present; (2) activities within the JVT and its parent organizations (ITU/VCEG and ISO/IEC/MPEG) related to the H.264 standard, from January 1, 2000 through the present; and (3) activities within the IEEE 802.20 working group, from January 1, 2001 to the present. |

| **NO. 96**<br><br>All documents relating to any proposed or consummated licenses to any IPR that Broadcom or, to Broadcom's knowledge, any other Person believe or contend to be essential to any standard for wireless communications or video compression, including all documents relating to licensing discussions, negotiations or disputes in which Broadcom participated, and all documents relating to disputes over the parties' performance under any such license. | O, B, NRC, V, P, PR<br><br>BC will produce for the UMTS, GSM/GPRS/EDGE, and proposed IEEE 802.20 wireless communication standards and the H.264 video compression standard identified in the Complaint, responsive non-privileged documents that have not previously been produced and relate to IPR other than Broadcom's IPR. | Broadcom will not produce documents related to its IPR and not responsive to any other RFP. BC's own IPRs are irrelevant to any claim or defense in this suit.<br><br>BC proposes that this RFP be narrowed to the UMTS, GSM/GPRS/EDGE, and proposed IEEE 802.20 wireless communication standards and the H.264 video compression standard identified in the Complaint. |
|---|---|---|
| **NO. 97**<br><br>All communications relating to licensing discussions or negotiations between Qualcomm and Broadcom. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 98**<br><br>All documents relating to the rules, policies or procedures that are applicable to members, participants or activities of any IEEE working group, including all documents that Broadcom alleges (i) prohibit "dominance" of an IEEE working group by a single organization or committee; (ii) require disclosure of any member's "affected interest" or "affiliation"; and (iii) require disclosure of "financial relationships" as alleged in ¶¶ 252, 253, 261, 294, 310 and 324 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the allegations in ¶¶ 252, 253, 261, 294, 310, and 324 of the Complaint responsive non-privileged documents that have not previously been produced. | BC proposes that RFPs relating to IEEE working groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint. |

| NO. 99 | O, B, NRC, V, P, PR | BC proposes that RFPs relating to IEEE working |
|---|---|---|
| Documents sufficient to identify all persons participating in an IEEE Project 802 working group or an IEEE Project 802 technical advisory group who were employees or agents of Broadcom. | BC will produce with respect to the IEEE working group specifically identified in the Complaint (the IEEE 802.20 working group) responsive non-privileged documents that have not previously been produced. | groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint. |
| **NO. 100**<br><br>Documents sufficient to identify all persons participating in any committee or subcommittee of the IEEE Standards  Association or the IEEE 802 Sponsor Executive Committee, including but not limited to the IEEE Standards Board New Standards Committee and the IEEE Standards Board Standards Review Committee. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the IEEE working group specifically identified in the Complaint (the IEEE 802.20 working group) responsive non-privileged documents that have not previously been produced. | BC proposes that RFPs relating to IEEE working groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint. |
| **NO. 101**<br><br>All documents relating to Qualcomm's employees or agents who were acting on behalf of Qualcomm and not in their individual capacity, as alleged in ¶ 256 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the allegations in ¶ 256 of the Complaint responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 102**<br><br>All documents relating to the consideration or adoption of the "Flash OFDM" technology developed by Flarion Technologies, Inc. referenced in ¶ 258 of the Second Amended Complaint by an IEEE Project 802 working group. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the IEEE working group specifically identified in the Complaint (the IEEE 802.20 working group) responsive non-privileged documents that have not previously been produced. | BC proposes that RFPs relating to IEEE working groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint. |
| **NO. 103**<br><br>All documents relating to the improper steps taken by Qualcomm to prevent the 802.20 Working Group from adopting Flarion's Flash-OFDM technology, as alleged in ¶ 260 of the Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the allegations in ¶ 260 of the Complaint responsive non-privileged documents that have not previously been produced. | No clarification necessary. |

| **NO. 104**<br><br>All documents relating to Qualcomm's multiple acts of misconduct, as alleged in ¶ 261 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the allegations in ¶ 261 of the Complaint responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
|---|---|---|
| **NO. 105**<br><br>All documents relating to Broadcom's investment of significant time and resources in attending 802.20 Working Group related meetings, as alleged in ¶ 267 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the allegations in ¶ 267 of the Complaint responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 106**<br><br>All documents relating to the demand for 802.20 standard complaint products, as alleged in ¶ 268 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the allegations in ¶ 268 of the Complaint responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 107**<br><br>All documents relating to Broadcom's ability to develop and bring to market successfully products complaint with the 802.20 standard, as alleged in ¶ 268 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the allegations in ¶ 268 of the Complaint responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 108**<br><br>All documents relating to Jerry Upton. | O, B, NRC, V, P, PR<br><br>BC will produce with respect to the allegations in ¶ 262 of the Complaint responsive non-privileged documents that have not previously been produced. | BC proposes to limit this RFP to the allegations of ¶ 262 because there is no reasonable way to interpret or limit the search for documents "related to" Jerry Upton. |

| NO. 109 | O, B, NRC, V, P, PR | BC proposes to limit this RFP to the allegations of ¶¶ 261-262 and 265 because those are the allegations of financial relationships and affiliations relevant to the Complaint. |
|---|---|---|
| All documents relating to the date when and circumstances under which Broadcom first became aware of any "financial relationships" or "affiliations" or any member or participant of any IEEE project 802 working group. | BC will produce with respect to the allegations in ¶¶ 261-262 and 265 of the Complaint responsive non-privileged documents that have not previously been produced. | BC proposes that RFPs relating to IEEE working groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint. |
| NO. 110 | O, B, NRC, V, P, PR | BC proposes to limit this RFP to the allegations of ¶¶ 261-262 and 265 because those are the allegations of financial relationships and affiliations relevant to the Complaint. |
| All documents relating to the date when and circumstances under which any "financial relationships" or "affiliations" of any member or participant of any IEEE Project 802 working group was purportedly disclosed to IEEE. | BC will produce with respect to the allegations in ¶¶ 261-262 and 265 of the Complaint responsive non-privileged documents that have not previously been produced. | BC proposes that RFPs relating to IEEE working groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint. |
| NO. 111 | O, B, NRC, V, P, PR | BC proposes to limit this RFP to the allegations of ¶¶ 261-262 and 265 because those are the allegations of financial relationships and affiliations relevant to the Complaint. |
| All documents relating to any "financial relationships" or "affiliations" of any member or participant of any IEEE Project 802 working group. | BC will produce with respect to the allegations in ¶¶ 261-262 and 265 of the Complaint responsive non-privileged documents that have not previously been produced. | BC proposes that RFPs relating to IEEE working groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint. |
| NO. 112 | O, B, NRC, V, P, PR | No clarification necessary. |
| All documents relating to Broadcom's contention that Qualcomm concealed any facts from IEEE or any working group or committee thereof with the intent to defraud as alleged in ¶¶ 309 and 310 of the Second Amended Complaint. | BC will produce with respect to the allegations in ¶¶ 309, 310 of the Complaint responsive non-privileged documents that have not previously been produced. | |

| NO. 113 | O, B, NRC, V, P, PR | No clarification necessary. |
|---|---|---|
| All documents relating to Broadcom's contention in ¶ 8 of the Second Amended Complaint that Qualcomm engaged in "vote stacking." | BC will produce responsive non-privileged documents that have not previously been produced. | |
| **NO. 114** | O, B, NRC, V, P, PR | No clarification necessary. |
| All documents relating to Qualcomm's "misuse of its market power over participants in the standard-setting process" as alleged in ¶ 8 of the Second Amended Complaint. | BC will produce responsive non-privileged documents that have not previously been produced. | |
| **NO. 115** | O, B, NRC, V, P, PR | No clarification necessary. |
| All documents relating to any effort by anyone to delay or disrupt any step toward standardization in the IEEE 802.20 Working Group, including all documents related to the "802 Next Steps" group, the suspension of the IEEE 802.20 Working Group in June 2006 (as alleged in ¶¶ 265 and 266 of the Second Amended Complaint), or the initiation or use of letter ballot processes. | BC will produce with respect to the allegations in ¶¶ 265-66 of the Complaint responsive non-privileged documents that have not previously been produced. | |
| **NO. 116** | O, B, NRC, V, P, PR | BC proposes to limit this RFP to the allegations of ¶ 265 because those are the allegations of appeals of agents. |
| All communications sent or received by Broadcom employees or agents relating to any appeals filed with the IEEE regarding any decision of an IEEE Project 802 working group. | BC will produce with respect to the allegations in ¶ 265 of the Complaint responsive non-privileged documents that have not previously been produced. | BC proposes that RFPs relating to IEEE working groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint. |
| **NO. 117** | O, B, NRC | Unless narrowed by QC, no response necessary. |
| All communications with Patricia Thaler sent or received by Broadcom employees or agents prior to the commencement of Ms. Thaler's employment with Broadcom. | BC objects to this RFP because it is harassing and seeks documents not relevant to the allegations of the Complaint. | |

| NO. 118<br><br>All communications sent or received by Broadcom employees or agents relating to motions made during IEEE 802.20 Working Group sessions in 2005, 2006 and 2007. | O, B, NRC, V, P, PR<br><br>BC will produce for the period prior to the suspension of the IEEE 802.20 working group on June 8, 2006 responsive non-privileged documents that have not previously been produced. | Beyond those categories of documents BC has agreed to produce in response to the RFP, any other documents that BC may have related to the IEEE 802.20 working group for the period after the suspension of the IEEE 802.20 working group on June 8, 2006 are not relevant to the allegations of the Complaint. |
|---|---|---|
| NO. 119<br><br>All communications sent or received by Broadcom employees or agents relating to any Project Authorization Request for the IEEE 802.16 Working Group or IEEE 802.20 Working Group. | O, B, NRC, V, P, PR<br><br>BC will produce for the period prior to the suspension of the IEEE 802.20 working group on June 8, 2006 responsive non-privileged documents related to the IEEE 802.20 working group that have not previously been produced. | BC proposes that RFPs relating to IEEE working groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint.<br><br>Beyond those categories of documents BC has agreed to produce in response to the RFP, any other documents that BC may have related to the IEEE 802.20 working group for the period after the suspension of the IEEE 802.20 working group on June 8, 2006 are not relevant to the allegations of the Complaint. |
| NO. 120<br><br>All technical submissions or contributions offered to the IEEE 802.20 Working Group by Broadcom employees or agents. | O, B, NRC, V, P, PR<br><br>BC will produce for the period prior to the suspension of the IEEE 802.20 working group on June 8, 2006 responsive non-privileged documents that have not previously been produced. | Beyond those categories of documents BC has agreed to produce in response to the RFP, any other documents that BC may have related to the IEEE 802.20 working group for the period after the suspension of the IEEE 802.20 working group on June 8, 2006 are not relevant to the allegations of the Complaint. |
| NO. 121<br><br>All communications sent or received by Broadcom employees or agents relating to their votes, or the votes of Broadcom, on any IEEE 802.20 Working Group motion, letter ballot, practice letter ballot or sponsor ballot. | O, B, NRC, V, P, PR<br><br>BC will produce for the period prior to the suspension of the IEEE 802.20 working group on June 8, 2006 responsive non-privileged documents that have not previously been produced. | Beyond those categories of documents BC has agreed to produce in response to the RFP, any other documents that BC may have related to the IEEE 802.20 working group for the period after the suspension of the IEEE 802.20 working group on June 8, 2006 are not relevant to the allegations of the Complaint. |

| NO. 122<br><br>All documents relating to Broadcom's plans, projects or intentions to develop products compliant with any standard under development by an IEEE Project 802 working group. | O, B, NRC, V, P, PR, D<br><br>BC will produce with respect to the allegations in ¶ 268 of the Complaint responsive non-privileged documents that have not previously been produced. | BC proposes that RFPs relating to IEEE working groups be restricted to the IEEE 802.20 working group, which is the only IEEE working group specifically identified in the Complaint. Documents regarding the allegations in ¶ 268 of the Complaint will provide all documents relevant to BC's efforts to develop products compliant with the standard under development by the IEEE 802.20 working group.<br><br>BC objects to this RFP because it is duplicative of RFP 107, among others. |
|---|---|---|
| NO. 123<br><br>All documents relating to communications between or among Broadcom and any of Nokia, Ericsson, NEC, Panasonic, Texas Instruments or any other Person relating to (i) Qualcomm's IPR, including its disclosure to any SDO, enforceability or value; (ii) any proposed or consummated licenses between Qualcomm and any Person (including any rate, term or condition thereof); (iii) Qualcomm's sales of, or efforts to sell integrated circuits for use in wireless phones; and (iv) BCOM's design or sale, or efforts to design and sell integrated circuits for use in GSM, GPRS, EDGE or UMTS wireless phones, other wireless consumer devices or network infrastructure equipment. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |

| **NO. 124**<br><br>All documents relating to communications between or among Broadcom and any of Nokia, Ericsson, NEC, Panasonic, Texas Instruments or any other Person relating to the strengths, weaknesses, advantages, disadvantages, relative merits, capacity, performance, quality, reliability, implementation costs or licensing costs of GSM, TDMA, TD-CDMA, EDGE, GPRS, WCDMA, OFDMA, OFDM, TD-SCDMA or any other technologies that Broadcom contends were or are non-infringing alternatives to any Qualcomm IPR as alleged in ¶¶ 88, 146, 147, 197 and 272 of the Second Amended Complaint. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |
|---|---|---|
| **NO. 125**<br><br>All documents relating to the strengths, weaknesses, advantages, disadvantages, capacity, quality, performance, relative merits, implementation costs or licensing costs of any of GSM, EDGE, GPRS, TDMA, TD-CDMA, CDMA, WCDMA, UMTS, OFDM or OFDMA. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |
| **NO. 126**<br><br>All documents relating to communications between or among Broadcom and any of Nokia, Ericsson, NEC, Panasonic, Texas Instruments or any other Person relating to (i) any SDO policy, procedure or guideline relating to IPR, (ii) Qualcomm's participation in any SDO; (iii) Qualcomm's business model or licensing terms; and (iv) the impact or effect of any act or omission by Qualcomm on any Person or on competition. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |

| NO. 127<br><br>All documents relating to the differences and similarities between WCDMA and CDMA. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |
|---|---|---|
| NO. 128<br><br>All documents relating to the definition of the markets for "technology and integrated circuit chips" as alleged in ¶ 4 of the Second Amended Complaint, including all documents relating to the geographical limits, products, competitors, market shares and competition within such markets. | O, B, NRC, V, P, PR, D<br><br>BC will produce with respect to the definition of the markets for "technology and integrated circuit chips" in ¶ 4 of the Complaint responsive non-privileged documents that have not previously been produced. | Unless clarified and narrowed by QC, no further response is necessary.<br><br>BC objects to the overbreadth and burden of the request for "all documents relating to", among other things, products, competitors, and competition within such markets. |
| NO. 129<br><br>All documents supporting Broadcom's contention that Qualcomm undermined competition in markets for technology and integrated circuit chips as alleged in ¶ 4 of the Second Amended Complaint, including all documents relating to any alleged harm caused to Broadcom, competitors or consumers. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| NO. 130<br><br>All documents relating to the value or valuation of any Broadcom wireless communications or video compression technology IPR. | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |
| NO. 131<br><br>All documents relating to the value or valuation of a license to Broadcom's portfolio of wireless communications or video compression technology IPR. | O, B, NRC, V, P, PR | Broadcom will not produce documents related to its IPR and not responsive to any other RFP. BC's own IPRs are irrelevant to any claim or defense in this suit. Further, the terms "value or valuation" are undefined and ambiguous. |

| NO. 132 | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response |
|---|---|---|
| All documents relating to Broadcom's Project Koala including, but not limited to, any documents generated in connection with Project Koala and any internal or external communications made in relation to Project Koala. | | necessary. " Koala" is an internal code name for QC, thus this RFP amounts to an unrestricted request to produce every document "relating to" Qualcomm, and is overly burdensome because it could require a search of every document in Broadcom's possession. |
| **NO. 133**<br><br>All documents reflecting, including or mentioning any "assertion" by Qualcomm to any Person other than Broadcom, as alleged in ¶ 104 of the Second Amended Complaint, that "Broadcom does not have a license from Qualcomm to implement the UMTS standard." | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 134**<br><br>All documents reflecting, including or mentioning any "assertion" by Qualcomm to any Person other than Broadcom, as alleged in ¶ 216 of the Second Amended Complaint, that "Broadcom does not have a license from Qualcomm to implement the GSM, GPRS or EDGE standards." | BC objects because the scope of the request is unclear. Should state objections as we have done for others. | Unless clarified by QC, no response necessary. |
| **NO. 135**<br><br>All documents reflecting, including or mentioning any "assertion" by Qualcomm to any Person other than Broadcom, as alleged in ¶ 238 of the Second Amended Complaint, that "Broadcom does not have a license from Qualcomm to implement the H.264 standard." | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |

| **NO. 136**<br><br>All documents relating to any discussion between Broadcom and any Person other than Qualcomm about whether Qualcomm has granted to Broadcom a license to make, sell or use products reading on Qualcomm's patents, or has agreed not to assert its patents against Broadcom or Broadcom's customers. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
|---|---|---|
| **NO. 137**<br><br>All documents relating to any discussion between Qualcomm and any Person other than Broadcom about whether Qualcomm has granted to Broadcom a license to make, sell or use products reading on Qualcomm's patents, or has agreed not to assert its patents against Broadcom or Broadcom's customers. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 138**<br><br>All documents relating to any discussion between Broadcom and any Person other than Qualcomm about whether Broadcom has granted to Qualcomm a license to make, sell or use products reading on Broadcom's patents, or has agreed not to assert its patents against Qualcomm or Qualcomm's customers. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 139**<br><br>All documents relating to BC's contention that BC was harmed as a result of QC's allegedly withheld or delayed disclosures of IPR to any SDO, as alleged in ¶¶ 229, 306 and 325 of the Complaint, including, but not limited to, all documents relating to the specific amount of any alleged damages and the calculation of such damages. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |

| **NO. 140**<br><br>All documents relating to BC's contention that BC was harmed as a result of Qualcomm's alleged failure to license its IPR on FRAND terms, as alleged in ¶¶ 229, 306 and 325 of the Complaint, including, but not limited to, all documents relating to the specific amount of any alleged damages and the calculation of such damages. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
|---|---|---|
| **NO. 141**<br><br>All documents relating to BC's contention that BC was harmed as a result of QC's alleged misconduct related to the 802.20 Working Group, as alleged in ¶¶ 268 and 325 of the Second Amended Complaint, including, but not limited to, all documents relating to the specific amount of any alleged damages and the calculation of such damages. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 142**<br><br>All documents relating to any contract, agreement, sale, potential sale or any other business opportunity that Broadcom contends was lost or impaired as a result of Qualcomm's allegedly improper conduct as alleged in ¶¶ 278, 283, 287, 295, 301 and 327 of the Second Amended Complaint. | O, B, NRC, V, P, PR<br><br>BC will produce responsive non-privileged documents that have not previously been produced. | No clarification necessary. |
| **NO. 143**<br><br>All documents relating to the relative merits, including quality, performance, reliability, features, functions, capabilities, capacity or pricing of integrated circuits sold or offered for sale by Broadcom, and integrated circuits sold by Qualcomm or any other Person, for use in GSM, GPRS, EDGE or UMTS phones, other consumer devices, or network infrastructure equipment. | O, B, NRC, V, P, PR<br><br>This RFP is unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |

| **NO. 144**<br><br>All documents relating to any communication between Broadcom and any Person relating to the response by such Person to any offer by Broadcom to design or sell integrated circuits for use in GSM, GPRS, EDGE or UMTS phones, other consumer devices, or network infrastructure equipment. | O, B, NRC, V, P, PR<br><br>This RFP is unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |
|---|---|---|
| **NO. 145**<br><br>All documents relating to any communication between Broadcom and any Person relating to integrated circuits that Broadcom designed, sold or proposed to design or sell for use in GSM, GPRS, EDGE OR UMTS phones, other consumer devices, or network infrastructure equipment. | O, B, NRC, V, P, PR<br><br>This RFP is unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |
| **NO. 146**<br><br>All documents relating to Broadcom's ability or inability to develop, bring to market successfully or deliver a single chip WCDMA solution for use in GSM, GPRS, EDGE or UMTS phones, other consumer devices, or network infrastructure equipment. | O, B, NRC, V, P, PR<br><br>This RFP is unintelligible, unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |
| **NO. 147**<br><br>All documents relating to the strengths, weaknesses, advantages, disadvantages, relative merits, capacity, performance, quality, reliability or implementation costs of single chip WCDMA solutions as compared to two-chip or multi-chip WCDMA solutions, including but not limited to solutions incorporating one or more co-processors. | O, B, NRC, V, P, PR<br><br>This RFP is unintelligible, unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |

| **PRODUCTION NO. 148**<br><br>All documents relating to the schedule under which Broadcom will be providing WCDMA chipsets to Nokia, Samsung or any other Person, including any documents or communications related to delays in that schedule. | O, B, NRC, V, P, PR<br><br>This RFP is unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |
|---|---|---|
| **NO. 149**<br><br>All documents relating to the conduct, outcome and results of any tests, including limited die size reports, yield reports, wafer probe yield reports and system test compliance reports, of any integrated circuit chips, chipsets and prototypes or designs thereof for use in or with GSM, EDGE, GPRS or UMTS network infrastructure equipment or subscriber devices. | O, B, NRC, V, P, PR<br><br>This RFP is unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |
| **NO. 150**<br><br>All documents analyzing or relating to customer satisfaction surveys, customer complaints and lost sales reports of Broadcom's wireless communications products, or digital video products, that are complaint with any of the standards promulgated under ETSI, JVT, ITU, TIA, ATIS, ARIB, TTC, CCSA, TTA, ANSI, 3GPP, OR 3GPP2. | O, B, NRC, V, P, PR<br><br>This RFP is unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |

| **NO. 151**<br><br>All documents relating to analyses, discussions or benchmarking studies comparing any Broadcom wireless communications product, or digital video product, that is complaint with any of the standards promulgated under ETSI, JVT, ITU, TIA, ATIS, ARIB, TTC, CCSA, TTA, ANSI, 3GPP, OR 3GPP2 and that Broadcom claims to have lost the "ability to make sales of," as alleged in ¶¶ 162, 239 and 325 of the Second Amended Complaint, to similar or functionally-equivalent products of other Persons, including but not limited to their availability, design, capabilities, features, functions, capacity, level of integration, performance, quality, reliability, test results, reputation in the marketplace and price. | O, B, NRC, V, P, PR<br><br>This RFP is unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |
|---|---|---|
| **NO. 152**<br><br>All documents relating to Broadcom's marketing activities and plans for any Broadcom wireless communications product, or digital video product, that is compliant with any of the standards promulgated under any SDO. | O, B, NRC, V, P, PR<br><br>This RFP is unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | Unless clarified and narrowed by QC, no response necessary. |
| **NO. 153**<br><br>All documents that Broadcom has made available to any expert retained by Broadcom, whether or not such expert is expected to testify at trial. | O, B, NRC, V, P, PR<br><br>BC will produce the documents made available to any expert who is expected to testify at trial pursuant to the Federal Rules of Civil Procedure and the schedule set forth in the Court's Amended Pretrial Scheduling Order. | No clarification necessary. |

| **NO. 154** | O, B, NRC, V, P, PR | No clarification necessary. |
|---|---|---|
| All documents relating to Broadcom's contention that Qualcomm "threatened supply disruption in CDMA chipsets to induce customers to purchase Qualcomm UMTS chipsets" as alleged in ¶ 133 of the Second Amended Complaint. | BC will produce responsive non-privileged documents that have not previously been produced. | |
| **NO. 155** | O, B, NRC, V, P, PR | Unless clarified and narrowed by QC, no response necessary. |
| All communications between (a) any former Qualcomm employee that is now employed by Broadcom, on the one hand, and (b) any Broadcom employee in the Human Relations Department or in any Broadcom Business Unit in which the former Qualcomm employee now works, on the other, that took place while the former Qualcomm employee was employed by Qualcomm. | This RFP is unacceptably overbroad and seeks documents irrelevant to the allegations of the Complaint. | |

O = overbroad and/or not limited to a reasonable scope of time; B = unduly burdensome; NR = not relevant; NRC = not reasonably calculated to lead to the discovery of admissible evidence; D = duplicative;  V = vague request failing to provide reasonable particularity regarding the scope of the documents sought; A = ambiguous and subject to multiple interpretations; PR = privilege; P = calls for the production of information that is publicly available or in the possession of QC and/or previously produced by BC

Exhibit E

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1058

ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON

JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III

WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN

DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE

SPECIAL COUNSEL

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL

CHRISTINE BESHAR

February 22, 2008

## Broadcom Corporation v. Qualcomm Incorporated

Dear Mark:

      As we discussed during the meet and confer session on February 15, 2008, this letter summarizes our understanding of the status of discovery negotiations in the case styled Broadcom Corp. v. QUALCOMM, Inc., 07CC01249 (Superior Court, Orange County, California) (the "1249 case"), before the 1249 case was stayed. This letter also discusses amending the custodian and/or search term lists from the first wave of discovery and the 1249 case, consistent with the December 19, 2008, fact discovery deadline.

## I.    Agreements and Open Issues from the 1249 Case

      Broadcom has proposed that the parties use the 1249 case as a starting point for negotiations concerning their responses to the "second wave" document requests (*i.e.*, Qualcomm's Third Request for Production of Documents and Broadcom's Second Request for Production of Documents). However, as we have discussed, the agreements reached in the 1249 case need to be amended in light of the fact discovery deadline. The following summarizes our understanding of the agreements and open issues remaining from the 1249 case.

### A.    Standard Development Organizations ("SDOs")

    1.    <u>Agreements</u>: The parties agreed that, where the document requests relate to SDOs, they would generally limit their searches to ETSI, JVT and the IEEE 802.20 working group. (*See* Saxton letter dated August 21, 2007.) The parties also agreed to limited policies, practices and procedures discovery for VCEG, ITU, MPEG and ISO/IEC. (*See id.*)

    2.    <u>Open Issues</u>:

        a.    Qualcomm proposed that searches also include the IEEE 802.1, 802.2, 802.3, 802.11, 802.15, 802.16, 802.20 and 802.0 working groups, subject to the possible need to expand that list as additional facts are learned through discovery. (*See* Barbur letter dated October 1, 2007.)

        b.    Broadcom proposed that searches also include TIA. (*See* Saxton letter dated August 21, 2007.)

**B.**    <u>**Standards**</u>

    1.    <u>Agreements</u>: The parties agreed that, where the document requests relate to standards, they would generally limit their searches to the GSM, GPRS, EDGE, UMTS, IEEE 802.20 and H.264 standards. (*See id.*)

    2.    <u>Open Issues</u>: Broadcom proposed that searches also include IS-95, IS-95A, IS-95B, CDMA2000 1xRTT, CDMA2000 1xEV-D0 and CDMA2000 1xEV-DV. (*See* Saxton letters dated August 8, 2007, and August 21, 2007.)

**C.**    <u>**Search Terms**</u>

    1.    <u>Agreements</u>: The parties agreed to search within 10 words rather than within the same sentence when the phrase "w/s" is used. (*See* Barbur letter dated September 18, 2007.)

    2.    <u>Open Issues</u>:

        a.    By letter dated August 27, 2007, Broadcom provided Qualcomm with a list of proposed search terms that Broadcom would use to locate documents responsive to Qualcomm's discovery requests. (*See* Saxton letter dated August 27, 2007.)

        b.    By letter dated August 27, 2007, Qualcomm provided Broadcom with a list of proposed search terms that Qualcomm would use to locate documents responsive to Broadcom's discovery requests. (*See* Guinan letter dated August 27, 2007.)

        c.    Qualcomm proposed using a combined list of the parties' proposed search terms that were exchanged on August 27, 2007, with the additional term "SMG". Broadcom proposed that: (i) no party should search for its own name—or variation thereof—on its own documents; (ii) the

numerical terms ".11", ".16" and ".20" should not be used (although the terms "802.11", "802.16" and "802.20" would be used); (iii) search terms that are names of individuals—such as Jordan Isailovic—should not be used against those individuals' documents or the documents of their immediate direct subordinates or supervisors; and (iv) Broadcom would not search its own documents for the term "koala". Qualcomm was willing to agree to caveats (i) through (iii). Qualcomm did not agree to removing the term "koala" from the list of proposed search terms. (*See* Barbur letter dated September 18, 2007.)

d.      By letter dated August 31, 2007, Broadcom proposed adding the following terms: BC, BEST EFFORTS BASIS, DISCLOSURE OF PATENT, FINAL IPR DECLARATION, MPEG-LA, MPEGLA, INTELLECTUAL PROPERTY (w/s) CONCEAL*, INTELLECTUAL PROPERTY (w/s) DISCLOS*, INTELLECTUAL PROPERTY (w/s) POLIC*, IPR GUIDELINES, IPR (w/s) DISCLOS*, IPR (w/s) POLIC*, PATENT DISCLOS*, PATENT POLICY, REASONABLE EFFORTS TO TIMELY INFORM, TIMELY AND ADEQUATE NOTICE, and WORKING (w/s) GROUP (w/s) DOMINANCE. (*See* Tompros letter dated August 31, 2007.)

**D.     <u>Custodians</u>**

1.      <u>Open Issues</u>:

a.      By letter dated September 25, 2007, Broadcom proposed 26 custodians. (*See* Tompros letter dated September 25, 2007.)

b.      By letter dated September 25, 2007, Qualcomm proposed 63 custodians. (*See* Barbur letter dated September 25, 2007.)

c.      During the meet and confer session on October 3, 2007, Broadcom asked Qualcomm to add Jordan Isailovic, Durga Malladi, Mark Klerer and Dino Flore to its proposed custodian list, and Qualcomm asked Broadcom to add Scott McGregor to its proposed custodian list.

4

E.    **Time Periods**

    1.    <u>Agreements</u>: The parties agreed to use the following date restrictions for ETSI, IEEE and JVT searches: ETSI (Jan. 1, 1997-present); IEEE (Jan. 1, 2001-present); JVT (Jan. 1, 2000-present). (*See* Saxton letter dated August 21, 2007.)

F.    **Third-Party Patent Portfolios**

    1.    <u>Agreements</u>: The parties agreed to limit discovery related to third parties' patent positions or portfolios to those third parties that were subsequently acquired by Qualcomm or Broadcom. (*See id.*)

G.    **Scope of Licensing Discovery**

    1.    <u>Agreements</u>: The parties agreed, in the case of discovery requests seeking documents or information related to licensing, to produce documents concerning the negotiation and execution of those licenses, but not performance thereunder. (*See id.*)

H.    **Objections**

    1.    <u>Open Issues</u>: Many of Broadcom's responses to Qualcomm's document requests in the 1249 case provided that Broadcom would produce documents "subject to" its objections, which left unclear whether Broadcom would, in fact, produce all relevant, non-privileged documents pursuant to the parameters agreed during the meet and confer process. (*See* Barbur letter dated August 22, 2007; Saxton letter dated August 23, 2007.)

## II.    **Custodians**

    As we discussed during the February 15, 2008, meet and confer session, the number of custodians identified in this case and the 1249 case is simply too high to be consistent with the December 19, 2008, fact discovery deadline. Qualcomm identified the following 81 custodians in connection with the first wave of discovery in this case:

| | | |
|---|---|---|
| Behrooz Abdi | Paul Bender | Gail Cavanaugh-Parker |
| Derek Aberle | Peter Black | James Clifford |
| Victor Abramsky | Marv Blecker | Gregory Cobb |
| Avneesh Agarwal | Luke Bonacci | Ray Dolan |
| Ruby Alonso | Brian Butler | Rick Dynarski |
| Jeff Altman | David Bush | Mike Gallagher |
| Steve Altman | Taylor Cabaniss | Michael Hartogs |
| Christiano Amon | Paul Carlander | James Hutchinson |
| Sanjeev Althaye | Peter Carson | Irwin Jacobs |
| Matthew Bancroft | Scott Carson | Jeff Jacobs |
| Jeff Belk | Michael Casey | Paul Jacobs |

5

| | | |
|---|---|---|
| Pertti Johanssen | Stein Lundby | Jerry Samsen |
| Lars Johnsson | Louis Lupin | Michael Schultz |
| Ed Jordan | Durga Prasad Malladie | Kanwalinder Singh |
| Sanjay Jha | Sandip Minhas | Gerald Skiver |
| Samir Kapoor | Krishna Murti | Richard Sulpizio |
| Alex Katouzian | Andrew Oberst | Tony Thornley |
| William Keitel | Roberto Padovani | Edward Tiedemann |
| John Ketchum | Akash Palkhiwala | James Tomcik |
| Mark Klerer | Wallace Pai | Herbert Vanhove |
| Ed Knapp | Vlad Parizhsky | Rajiv Vijayan |
| Warren Kneeshaw | Haleah Partow | Mark Wallace |
| Frank Lane | David Patterson | Rod Walton |
| Rajiv Laroia | Luis Pineda | Serge Willenegger |
| James Lederer | Hank Robinson | David Wise |
| Mauricio Lopez-Hodoyan | Thomas Rouse | Andrew Wolff |
| Jeff Lorbeck | Abbaseh Samimi | Rao Yallapragada |

Qualcomm also identified dozens of custodians in the 1249 case, including the following 39 custodians who had not already been proposed in the first wave of discovery in this case:

| | | |
|---|---|---|
| Niels Andersen | Chris Irvine | John Ratzel |
| Kent Baker | Tingfang Ji | Viji Raveendran |
| Yiliang Bao | Farrokh Khatabi | Yuri Reznick |
| Gwendolyn Barriac | Richard Lane | Phoom Sagetong |
| Lorenzo Casaccia | Albert Ludwin | Amnon Silberger |
| Colin Chandler | Roger Martin | Arak Sutivong |
| James Determan | Ben Miller | Anne-Lise Thieblemont |
| Sean English | Max Miyazono | Kadayam Thyagarajan |
| Mark Epstein | Bhushan Mohit | Stephane Tronchon |
| Harinath Garudardri | Ayman Naguib | Fatih Ulupinar |
| Andrew Gilbert | Mullaguru Naidu | Dave Vigil |
| Alexei Gorokho | Sanjiv Nanda | Jay Yun |
| Jin Guo | Rajat Prakash | Byeong-Ho Yuu |

In sum, Qualcomm identified 120 unique custodians in connection with the 1249 case and the first wave of discovery in this case. Given the time constraints for the second wave of discovery, we will need to reduce that number substantially. We welcome your suggestions as to how to do so at the next meet and confer session.

## III.   **Search Terms**

Our document vendor is currently reviewing the hit rates for each search term we used during the "first wave" document production. As that review progresses, we might be able to suggest additional search terms that return a high error rate and could be culled. However, our preliminary review indicates that the following search terms

return an unusually high number of "exclusive hits"—*i.e.*, documents that contain only one search term:

| | |
|---|---|
| Licens* | OFDMA |
| Brew | GSM |
| GSM1x | CDMA2000 |
| EMP | |

We propose that the parties schedule a meet and confer call next week regarding the discovery issues discussed in this letter. Please let me know if you are available Tuesday, February 26, 2008, at 3:00 p.m. (Eastern). We can use the following call-in information: 877-228-0900, passcode 212-474-1328.

Very truly yours,

*Peter T. Barbur* / KCH

Peter T. Barbur

Mark D. Selwyn, Esq.
Kate Saxton, Esq.
  Wilmer Cutler Pickering Hale & Dorr LLP
    60 State Street
      Boston, MA 02109

BY E-MAIL AND FIRST CLASS MAIL

Exhibit F

# CRAVATH, SWAINE & MOORE LLP

ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON

JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III

WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DeMASI
LIZABETHANN R. EISEN

DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
CHRISTINE BESHAR

**WORLDWIDE PLAZA
825 EIGHTH AVENUE
New York, NY 10019-7475**

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1058

March 7, 2008

**Broadcom Corporation v. Qualcomm Incorporated**

Dear Mark:

      I write in regard to the upcoming meet and confer session tentatively scheduled for Monday, March 10. Because there are a number of open issues and we are facing a March 21 deadline to finish our meet and confer discussions, I thought it would be helpful briefly to summarize the matters we understand are scheduled to be discussed on Monday. Hopefully, this will make our call as productive as possible. We would obviously also be happy to discuss any other matters you would like to raise and invite you to identify in advance any matters you think we have omitted.

**Agreements and Disagreements from the 1249 Case**

- **SDOs:** Our understanding is that the parties generally agreed to limit standards-related discovery to ETSI, JVT and IEEE. However, with respect to policies, practices and procedures, we agreed that standards-related discovery would also encompass VCEG, ITU, MPEG and ISO/IEC. (*See* Saxton letter dated Aug. 21, 2007.) We would like to confirm this understanding.

- **TIA/CDMA:** We propose that discovery related to the IS-95, IS-95A, IS-95B, CDMA2000 1xRTT, CDMA2000 1xEV-DO and CDMA2000 1xEV-DV standards be limited to FRAND licensing and interpretation of FRAND commitments to TIA. We would like to know Broadcom's position on this.

- **IEEE:** We proposed that IEEE-related discovery should include the 802.1, 802.2, 802.3, 802.11, 802.16 and 802.0 working groups. This appears to

2

be an area of disagreement and we would like to get final confirmation of that one way or the other.

- **Licensing:** In the 1249 case, the parties agreed to limit licensing-related discovery to documents concerning the negotiation and execution of licenses, but not performance thereunder. You agreed to report back as to whether (and, if so, why) Broadcom now is seeking performance-related documents, including royalty schedules.

- **Search Procedure:** In the 1249 case, the parties agreed to search within 10 words rather than within the same sentence when the phrase "w/s" is used. (*See* Barbur letter dated Sept. 18, 2007). We would like to confirm that this agreement still applies.

- **Third Party Patent Portfolio-Related Discovery:** In the 1249 case, the parties agreed to limit discovery related to third parties' patent positions or portfolios to those third parties that were subsequently acquired by Qualcomm or Broadcom. (*See* Saxton letter dated Aug. 21, 2007.) Again, we would like to confirm that this agreement still applies.

- **Definition of "Essential":** Your February 22, 2008, letter proposed that "essential IPR" be defined as "any Qualcomm patents or IPR that Qualcomm has in the past contended, or presently contends, might be essential or necessary to practice the standards identified in Broadcom's complaint in that action". We pointed out that this definition conflicts with the definition in Broadcom's and Qualcomm's most recent document requests. You agreed to revisit this issue and give us Broadcom's final position.

- **Broadcom's IPR:** We intend to seek discovery relating to Broadcom's IPR relating to the standards identified in the SAC. This appears to be an area of disagreement and again we would like to get final confirmation of that one way or the other.

## Other Issues

- **Custodians:** We agreed that the combined list of custodians from the pre-dismissal New Jersey case plus the agreed list of custodians from 1249 case is too large to permit document production to be completed within the deadlines currently set in the New Jersey case. We agreed to exchange proposals on how the number of custodians can be narrowed and/or prioritized.

- **Search Terms List:** We agreed that the search terms to be used should generally combine the search terms previously agreed to in the New Jersey

3

and 1249 cases.  However, we agreed to discuss eliminating certain search terms that produce too many "false positives".[1]

- **Privilege Log Players Lists:**  Each party agreed to exchange "players lists" identifying the attorneys named in its February 22, 2008, privilege log. We agreed to discuss a deadline for this exchange.

- **26(a) Disclosures:**  On February 29, 2008, we served supplemental disclosures in response to concerns articulated by Broadcom.  We would like to discuss on Monday whether Broadcom intends to update its disclosures in light of the issues raised in my January 15, 2008, letter to Steve Kaiser and Kate Saxton.

- **Protective Order Issues:**  We proposed that Roy Hoffinger (and a corresponding additional in-house attorney at Broadcom) be added to the list of Qualcomm in-house counsel eligible to access "Highly Confidential" material pursuant to paragraph 6 of the March 13, 2006, Protective Order.  Along the same lines, we proposed an alternative procedure for disclosing third parties' Highly Confidential material to in-house counsel.  On further reflection, it would be cleaner simply to strike the following words from the second sentence of paragraph 6 of the Protective Order:  "as to materials produced by Broadcom or QUALCOMM only and not as to materials produced by third parties". Please let us know if you agree to these changes.

---

[1] On the February 29 call, we agreed with respect to specific terms that (i) no party would search for its own name (or variation thereof) in its own documents; (ii) the numerical terms ".11", ".16" and ".20" would not be used (although the terms "802.11", "802.16" and "802.20" would be used); and (iii) search terms that are names of individuals would not be used against those individuals' documents or the documents of their immediate direct subordinates or supervisors.  We disagreed with respect to Qualcomm's request that Broadcom search its documents for the term "koala".

4

        We can use the following call-in information for our call:  dial-in
877-228-0900, passcode 212-474-1328.


                                        Very truly yours,

                                        Peter T. Barbur


    Mark D. Selwyn, Esq.
    Kate Saxton, Esq.
        Wilmer Cutler Pickering Hale & Dorr LLP
        60 State Street
            Boston, MA 02109

    BY E-MAIL AND FIRST CLASS MAIL

REDACTED

February 22, 2008

<u>**By Facsimile and Overnight Mail**</u>

The Honorable John J. Hughes
United States District Court, District of New Jersey
Clarkson S. Fischer Federal Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re:    *Broadcom Corporation v. Qualcomm Incorporated*, Civil Action No. 05-3350 (MLC)

Dear Judge Hughes:

As the Court requested during the telephone conference held on January 30, 2008, we write to report on the status of the parties' plans for completing productions in response to Qualcomm's Third Request for Production of Documents and Broadcom's Second Request for Production of Documents ("second wave" document requests).

Since the conference, the parties have met and conferred twice by telephone to discuss in general the scope of the "second wave" document requests and methods by which they could search for, collect, and produce responsive documents. In addition, on February 11, Broadcom served its responses and objections to Qualcomm's Third Request for Production of Documents, and, Qualcomm today served its responses and objections to Broadcom's Second Request for Production of Documents.

During their last meet-and-confer discussion, the parties agreed to exchange written proposals today identifying, among other things, terms and custodians for use in performing an electronic search for responsive documents. The parties believe that following this exchange, it will be necessary and appropriate for counsel to continue their meet and confer discussions in the hope of reaching agreement upon all the parameters for electronic searching. The parties have agreed to a deadline of March 21, 2008 for these meet and confer discussions to be completed, after which they will notify the Court if any judicial intervention is required to resolve any remaining disagreements.

Respectfully submitted,

Mark D. Selwyn
Counsel for Broadcom Corporation

Peter T. Barbur /mbs w/ permission
Counsel for Qualcomm Incorporated

Exhibit H

WILMERHALE

March 20, 2008

Kate Saxton

+1 617 526 6253 (t)
+1 617 526 5000 (f)
kate.saxton@wilmerhale.com

**By E-mail and First Class Mail**

Peter T. Barbur, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Re: *Broadcom Corporation v. Qualcomm Incorporated*, Civil Action No. 05-3350 (MLC)

Dear Peter:

Per the parties conversation, I write to provide: (1) a list of our remaining areas of disagreement regarding the scope of document requests; (2) requested clarifications and limitations to some of Broadcom's document requests as well as our understanding of what Qualcomm has undertaken to provide in response to certain Broadcom document requests; (3) clarified or modified responses to certain Qualcomm document requests as well as our understanding of clarifications and modifications Qualcomm has undertaken to provide.

## 1.    **Remaining Areas of Disagreement**

IEEE 802 Working Groups:  Broadcom proposes to limit IEEE-related discovery to the 802.20 working group.  QC proposes that IEEE-related discovery include the 802.1, 802.2, 802.3, 802.11, 802.16, and 802.20 working groups.

## 2.    **Broadcom's Document Requests**

### A.    *Requested Clarifications and Modifications to Broadcom's RFPs*

Request No. 47:  BC proposes to modify Request 47 as follows:  "Any Qualcomm plan or draft thereof, or the plan of any other person or company or any draft thereof, whether adopted or not, for the development, marketing, or licensing of technology for any actual or potential Mobile Wireless Standard or Video Compression Standard, of the following nature:  business plans, short term and long range strategies and objectives, budgets and financial projections, research and development plans, technology licensing plans, and presentations to management committees, executive committees, and boards of directors."

Request No. 48:  BC proposes to modify Request 49 as follows:  "As to any actual or potential litigation or arbitration by or against Qualcomm (including the Litigations) in which any party other than Broadcom asserted claims or counterclaims under any federal or state antitrust or unfair competition laws, or claims, defenses or counterclaims based on improper conduct by Qualcomm before any SDO, any and all documents that Qualcomm produced in that action that would be responsive to any Request for Production served by Broadcom in the instant action , as

WILMERHALE

Peter T. Barbur, Esq.
March 20, 2008
Page 2

well all requests for documents received, all indexes of documents produced, all interrogatory requests and responses sent or received, and all transcripts of any deposition, hearing, or other recorded proceedings."

Request No. 49: BC proposes to modify Request 49 as follows: "All documents and things that would be responsive to any Request for Production served by Broadcom in the instant action that Qualcomm produced, whether formally or informally, or voluntarily or by compulsion, to any private party, foreign government, administrative agency, or regulatory entity, in connection with any investigation into potential antitrust or competition related violations, including but not limited to investigations by the European Commission, the Korea Fair Trade Commission, and the Japanese Fair Trade Commission into complaints relating to Qualcomm's licensing and sales practices."

Request No. 71: BC proposes to modify Request 71 as follows: "All documents and things concerning actual and potential competition between Qualcomm and any person or company in the design or sale of chips or chipsets for use in devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 72: BC proposes to modify Request 72 as follows: "All documents and things concerning past, current, or future market shares of Qualcomm and any person or company in any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 73: BC proposes to modify Request 73 as follows: "All documents and things concerning the competitive positions of Qualcomm or any of its competitors, relative strengths and weaknesses of Qualcomm or other companies, analysis of product, technology, or market standardization plans of Qualcomm or any of its actual or potential competitors, in any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 74: BC proposes to modify Request 74 as follows: "All documents and things concerning supply and demand conditions (including capacity constraints on Qualcomm or any of its actual or potential competitors), for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 75: BC proposes to modify Request 75 as follows: "All documents and things concerning numbers and identifies of customers of Qualcomm or any of its competitors in any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

WILMERHALE

Peter T. Barbur, Esq.
March 20, 2008
Page 3

<u>Request No. 76</u>: BC proposes to modify Request 76 as follows: "All documents and things concerning actual or potential revenue of Qualcomm or any of its competitors, including but not limited to revenue generated by devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

<u>Request No. 77</u>: BC proposes to modify Request 77 as follows: "All documents and things concerning actual or potential losses of customers of Qualcomm or its competitors, in any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

<u>Request No. 78</u>: BC proposes to modify Request 78 as follows: "All documents and things concerning analysis of actual or potential competition between Qualcomm or any of its competitors related to improvements or innovations in features, functions, ease of operation, performance, cost, or other advantages to customers or users of devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

<u>Request No. 79</u>: BC proposes to modify Request 79 as follows: "All documents and things concerning policies and strategies of Qualcomm or any other person or company for responding to entry into any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

B.    *Our Understanding of What Qualcomm Has Undertaken to Provide In Response to Certain Broadcom RFPs*

<u>Request No. 35</u>:  QC will produce documents concerning relevant SDOs' adoption of the GSM, GPRS. EDGE, UMTS, H.264, and IEEE 802.20 standards.

<u>Request No. 38</u>:  QC understands that BC requires information concerning any Qualcomm change of position with respect to whether any IPR was or is essential to any relevant standard. QC will provide suggested language to respond to this request.

<u>Request No. 41</u>:  QC understands that BC requires information concerning potential licenses that were not ultimately executed.  QC also understands that "negotiation of licenses" encompasses amendments and renegotiations of existing licenses.  QC will provide documents relating to the CDMA-related standards listed in their communication of March 17, 2008.

<u>Request No. 42</u>:  QC will provide documents relating to the CDMA-related standards relevant to Request 41.

<u>Request No. 46</u>:  QC will provide documents relating to the CDMA-related standards relevant to Request 41.

WILMERHALE

Peter T. Barbur, Esq.
March 20, 2008
Page 4

Request No. 56: QC will clarify their response to this RFP to make clear that QC will provide responsive documents that relate to the parent organizations of the specified working groups.

Request No. 87: QC will clarify their response to this RFP to make clear that QC will provide responsive documents that relate to any threat or other communication by QC suggesting that QC might refuse or be unable to meet demand for chipsets.

Request No. 88: QC understands that BC requires documents related to any assertion by QC that a license to any QC IPRs might be required by any actual or potential customers of Broadcom or any other chipset manufacturer. QC will clarify their response to this RFP to make clear that (i) with respect to QC customers and potential customers for chipsets used in mobile wireless or video compression devices, QC will provide documents sufficient to show prices and terms offered and agreed to; and (ii) with respect to any actual or potential manufacturer of chipsets for use in mobile wireless or video compression devices that licensed or negotiated to license any QC IPRs, QC will provide documents sufficient to show prices and terms offered and agreed to; and (iii) QC will provide all documents related to communications or assertions by QC that a license to any QC IPRs is or might be required by any actual or potential customers of Broadcom or any other chipset manufacturer.

3.    **Qualcomm's Document Requests**

   A.    *Requested Clarifications and Modifications to Broadcom's Responses to Qualcomm's RFPs*

Qualcomm Request No. 67: BC proposes to modify its response to Request 67 as follows: "BC proposes that with respect to policies, practices, and procedures, standards-related discovery will encompass the following SDOs and specific working groups and their parent organizations: ETSI, JVT, and the IEEE 802.20 working group."

Qualcomm Request No. 68: BC proposes to modify its response to Request 68 as follows: "BC proposes that with respect to policies, practices, and procedures, standards-related discovery will encompass the following SDOs and specific working groups and their parent organizations: ETSI, JVT, and the IEEE 802.20 working group."

Qualcomm Request No. 115: BC proposes to modify its response to Request 115 as follows: "No clarification necessary."

   B.    *Our Understanding of Clarifications Qualcomm Has Undertaken to Provide*

WilmerHale

Peter T. Barbur, Esq.
March 20, 2008
Page 5

Qualcomm will provide clarification of Requests 77, 117, 123, 124, 125, 126, 128, 144, and 145.

Qualcomm will provide a clarification of the following requests to make clear that Qualcomm seeks documents "discussing or analyzing" the relevant materials:  127, 143, 146, 147, 149, 150.

## 4.    Broadcom's IPR

Broadcom agrees that, in response to Request No. 87, it will provide documents and information regarding its IPR disclosures to ETSI regarding the GSM, GPRS,EDGE, and UMTS standards; to the JVT, ISO/IEC/ITU regarding the H.264 standard; and to the IEEE regarding the 802.20 working group.

Please let us know if you believe we have omitted or misunderstood any issue or area of agreement or disagreement.  I look forward to speaking with you tomorrow.

Sincerely yours,

Kate Saxton

KS:djm

Exhibit I



WILMERHALE

March 28, 2008

**Kate Saxton**

+1 617 526 6253 (t)
+1 617 526 5000 (f)
kate.saxton@wilmerhale.com

**By E-mail and First Class Mail**

Peter T. Barbur, Esq.
Cravath, Swaine & Moore LLP
Wolrdwide Plaza
825 Eighth Ave.
New York, NY 10019-7475

Re: *Broadcom Corporation v. Qualcomm Incorporated*, Civil Action No. 05-3350 (MLC)

Dear Peter:

I write in an effort to reach final agreement on certain issues that we have been discussing. In particular, this letter includes: (1) our understanding of the modifications to Broadcom's document requests memorialized in Broadcom's March 20, 2008 letter, as well as all agreements subsequently reached; (2) requests for clarification and objections regarding Qualcomm's proposed responses to Broadcom's document requests—we hope to speak later this afternoon to reach an understanding on these issues.

Broadcom's objections and responses to Qualcomm's document requests are contained in the accompanying chart. Please promptly contact me if you have any questions regarding the scope or interpretation of any of Broadcom's requests, Broadcom's responses to Qualcomm's requests, or Broadcom's objections to Qualcomm's responses.

1.    **Broadcom's Document Requests**

    A.    *Agreement to Limit the Scope of Document Requests to Particular SDOs*

Broadcom understands that both parties have agreed to limit their responses to particular SDOs. Document requests that deal with policies, practices, and procedures will encompass the SDOs identified in the parties' respective objections and responses; where no specific SDOs are identified, such requests will encompass at least the following SDOs and specific working groups and their parent organizations: ETSI, JVT, and the IEEE 802.20 working group.

Document requests dealing with the evaluation, adoption, or implementation of any standard, the disclosure of any IPR, or any licensing commitments including FRAND commitments, will encompass the SDOs identified in the parties' respective objections and responses; where no specific SDOs are identified, such requests will encompass at least the adoption of the GSM, GPRS, EDGE, UMTS, H.264, and IEEE 802.20 standards by ETSI, JVT, and the IEEE 802.20 working group.

    B.    *Requested Clarifications and Modifications to Broadcom's RFPs*

Peter T. Barbur, Esq.
March 28, 2008
Page 2

Request No. 47:  BC proposes to modify Request 47 as follows:  "Any Qualcomm plan or draft thereof, or the plan of any other person or company or any draft thereof, whether adopted or not, for the development, marketing, or licensing of technology for any actual or potential Mobile Wireless Standard or Video Compression Standard, of the following nature:  business plans, short term and long range strategies and objectives, budgets and financial projections, research and development plans, technology licensing plans, and presentations to management committees, executive committees, and boards of directors."

Request No. 48:  BC proposes to modify Request 48 as follows:  "As to any actual or potential litigation or arbitration by or against Qualcomm (including the Litigations) in which any party other than Broadcom asserted claims or counterclaims under any federal or state antitrust or unfair competition laws, or claims, defenses or counterclaims based on improper conduct by Qualcomm before any SDO, any and all documents that would be responsive to any Request for Production served by Broadcom in the instant action produced by Qualcomm, as well all requests for documents received, all indexes of documents produced, all interrogatory requests and responses sent or received, and all transcripts of any deposition, hearing, or other recorded proceedings."

Request No. 49:  BC proposes to modify Request 49 as follows:  "All documents and things that would be responsive to any Request for Production served by Broadcom in the instant action produced, whether formally or informally, or voluntarily or by compulsion, to any private party, foreign government, administrative agency, or regulatory entity, in connection with any investigation into potential antitrust or competition related violations, including but not limited to investigations by the European Commission, the Korea Fair Trade Commission, and the Japanese Fair Trade Commission into complaints relating to Qualcomm's licensing and sales practices."

Request No. 71:  BC proposes to modify Request 71 as follows:  "All documents and things stating, discussing, or analyzing actual and potential competition between Qualcomm and any person or company in the design or sale of chips or chipsets for use in devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 72:  BC proposes to modify Request 72 as follows:  "All documents and things stating, discussing, or analyzing actual and potential market shares of Qualcomm and any person or company in any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 73:  BC proposes to modify Request 73 as follows:  "All documents and things stating, discussing, or analyzing the competitive positions of Qualcomm or any of its competitors, relative strengths and weaknesses of Qualcomm or other companies, analysis of

WILMERHALE

Peter T. Barbur, Esq.
March 28, 2008
Page 3

product, technology, or market standardization plans of Qualcomm or any of its actual or potential competitors, in any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 74: BC proposes to modify Request 74 as follows: "All documents and things stating, discussing, or analyzing supply and demand conditions (including capacity constraints on Qualcomm or any of its actual or potential competitors), for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 75: BC proposes to modify Request 75 as follows: "All documents and things stating, discussing, or analyzing numbers and identities of customers of Qualcomm or any of its competitors in any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 76: BC proposes to modify Request 76 as follows: "All documents and things stating, discussing, or analyzing actual or potential revenue of Qualcomm or any of its competitors, including but not limited to revenue generated by devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 77: BC proposes to modify Request 77 as follows: "All documents and things stating, discussing, or analyzing actual or potential losses of customers of Qualcomm or its competitors, in any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 78: BC proposes to modify Request 78 as follows: "All documents and things concerning analysis of actual or potential competition between Qualcomm or any of its competitors related to improvements or innovations in features, functions, ease of operation, performance, cost, or other advantages to customers or users of devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 79: BC proposes to modify Request 79 as follows: "All documents and things stating, discussing, or analyzing policies and strategies of Qualcomm or any other person or company for responding to entry into any actual or potential market for devices complying, conforming with, or using any Mobile Wireless or Video Compression Standard."

Request No. 86: BC declines to modify Request 86.

**2.      Objections to Qualcomm's Proposed Responses to Certain Broadcom RFPs**

WILMERHALE

Peter T. Barbur, Esq.
March 28, 2008
Page 4

Request No. 68:  Broadcom objects to Qualcomm's response to Request 68.  Request 68 clearly differs from and is more inclusive than Request 50, and the proposed response is not acceptable.

Request No. 79:  Broadcom objects to Qualcomm's response to Request 79.  Broadcom proposes that Qualcomm produced non-privileged, responsive documents *stating, discussing or analyzing* policies or strategies of Qualcomm and any other person or company for responding to entry into any actual or potential market for devices complying, conforming with, or using any Mobile Wireless of Video Compression Standard.

Request No. 80:  Broadcom objects to the "Clarification" Qualcomm offers in response to Request 80.  Broadcom believes it has clearly communicated that Qualcomm's evaluation of third party patent portfolios is relevant, and does not agree that the parties will not produce documents related to any third party's patent positions or portfolios.  Qualcomm's proposed response, as written, is acceptable, but the "Clarification" is not acceptable.

Request No. 86:  Broadcom declines to modify Request 86, and Qualcomm's proposed response is not acceptable.

Request No. 87:  Broadcom objects to Qualcomm's response to Request 87 and the "Clarification" Qualcomm offers in response to Request 87.  Qualcomm's proposed response, as written, is not acceptable because it refers only a "refusal by Qualcomm" and does not include "any inability, refusal, or threatened refusal by Qualcomm to meet demand for chipsets."  The accompanying "Clarification" is not acceptable insofar as it limits responses to documents relating to "any inability, refusal, or threatened refusal by Qualcomm to meet demand for chipsets *on or before December 31, 2005*."  Broadcom does not agree to the time limitation proposed in the Clarification.

Please contact me if you have any questions.

Sincerely yours,

Kate Saxton

KS:djm
Enclosure