## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM, INC.,<br><br>Defendant | CIVIL ACTION NUMBER<br><br>05-3350 (MLC/JJH)<br><br>**PLAINTIFF BROADCOM CORPORATION'S NOTICE OF MOTION TO STRIKE AFFIRMATIVE DEFENSE AND RELATED ALLEGATIONS AND TO DISMISS COUNTERCLAIMS** |

**PLEASE TAKE NOTICE** that, on April 21, 2008, Plaintiff Broadcom Corporation, by its undersigned attorneys, Boies, Schiller & Flexner LLP, shall move this Court before the Honorable Mary L. Cooper, United States District Judge, at the Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608, for an Order to Strike Affirmative Defense and Related Allegations and to Dismiss Counterclaims set forth in the Counterclaims and Affirmative Defense of Defendant/Counterclaims-Plaintiff Qualcomm, Incorporated.

    **PLEASE TAKE FURTHER NOTICE** that a Brief and a Proposed Form of Order are hereby submitted in support of this motion.

                          Respectfully submitted,
                          BOIES, SCHILLER & FLEXNER LLP

                          By: s/ David S. Stone, Esq.
                              David S. Stone, Esq.
                              dstone@bsfllp.com
                              Boies, Schiller & Flexner LLP
                              150 JFK Parkway, 4th floor
                              Short Hills, NJ 07078
                              (973) 218-1111
                            *Counsel for Plaintiff Broadcom Corporation*

Dated:  April 21, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM, INC.,<br><br>Defendant. | CIVIL ACTION NUMBER<br><br>05-3350 (MLC/JJH) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF BROADCOM CORPORATION'S MOTION TO STRIKE AFFIRMATIVE DEFENSE AND RELATED ALLEGATIONS AND TO DISMISS COUNTERCLAIMS

**Boies, Schiller & Flexner LLP**
150 JFK Parkway, 4th Floor
Short Hills, NJ 07078
(973) 218-1111

**Wilmer Cutler Pickering Hale and Dorr LLP**
60 State Street
Boston, MA 02109
(617) 526-6000

**Wilmer Cutler Pickering Hale and Dorr LLP**
1117 California Avenue
Palo Alto, CA 94304
(650) 858-6000

*Attorneys for Plaintiff Broadcom Corporation*

On the Brief:
William F. Lee
David S. Stone

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ..........................................................................................................1

BACKGROUND .............................................................................................................2

ARGUMENT ..................................................................................................................5

I.     QUALCOMM'S AFFIRMATIVE DEFENSE AND ITS STOCKHOLM-KOALA
       ALLEGATIONS SHOULD BE STRICKEN............................................................5

       A.     The Affirmative Defense is Procedurally Improper ..........................................5

              1.     The Affirmative Defense is Premature Under the Federal Rules ................5

              2.     The Stockholm-Koala Allegations Are Immaterial to the Counterclaims...................5

       B.     The Affirmative Defense is Legally Insufficient ...............................................9

              1.     An "Unclean Hands" Defense Cannot Be Asserted Against Broadcom's
                     Antitrust Claims.......................................................................................9

              2.     Qualcomm's Allegations Do Not Describe Conduct That is "Unclean"....................10

       C.     In the Alternative, Qualcomm's Filing Should Be Deemed Its Answer to the
              Second Amended Complaint .........................................................................12

II.    QUALCOMM'S COUNTERCLAIMS SHOULD BE DISMISSED .......................................12

CONCLUSION...............................................................................................................17

## TABLE OF AUTHORITIES

### Federal Cases

*Aldens Inc. v. Packel,*
   524 F.2d 38 (3d Cir. 1975)..................................................................13

*Aluminum Co. of Am. v. Beazer East Inc.,*
   124 F.3d 551 (3d Cir. 1997).................................................................14

*Am. Motor Inns v. Holiday Inns,*
   521 F.2d 1230 (3d Cir. 1975)............................................................9, 10

*Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Brothers and
Barnum & Bailey Circus,*
   244 F.R.D. 49 (D.D.C. 2007) ..............................................................10

*Am. Telephone and Telegraph Co. v. Delta Comm'ns Corp.,*
   408 F. Supp. 1075 (S.D. Miss. 1976)....................................................11

*Amwest Surety Ins. Co. v. Concord Bank,*
   2003 WL 553229 (E.D. Mo. Feb. 4, 2003)............................................13

*Apex Oil Co. v. DiMauro,*
   713 F. Supp. 587 (S.D.N.Y. 1989).......................................................10

*Broadcom Corp. v. Qualcomm, Inc.,*
   501 F.3d 297 (3d Cir. 2007)..................................................................8

*California Motor Tran. Co. v. Trucking Unlimited,*
   404 U.S. 508 (1972)............................................................................11

*Carpet Group Int'l v. Oriental Rug Import Ass'n,*
   256 F. Supp. 2d 249 (D.N.J. 2003) ......................................................12

*Cheminor Drugs, Ltd. v. Ethyl Corp.,*
   168 F.3d 119 (3d Cir. 1999).................................................................11

*Chrysler Corp. v. General Motors Corp.,*
   596 F. Supp. 416 (D.D.C. 1984) ..........................................................10

*Confre Cellars Inc. v. Robinson,*
   2002 WL 32376945 (D. Colo. Mar. 6, 2002) ........................................10

*Copperweld Corp. v. Independence Tube,*
   467 U.S. 752 (1984).............................................................................10

*De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.,*
  2001 WL 799870 (E.D. Pa. July 12, 2001)...................................................................13, 14

*Dominium Mgmt. Servs., Inc. v. Nationwide Housing Group,*
  195 F.3d 358 (8th Cir. 1999) ......................................................................................14

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,*
  365 U.S. 127 (1961)....................................................................................................11

*ESS Tech., Inc. v. PC-Tel, Inc.,*
  1999 WL 33520483 (N.D. Cal. Nov. 4, 1999) .............................................................8

*Federal Deposit Ins. Corp. v. Project Development Corp.,*
  819 F.2d 289 (6th Cir. May 27, 1987) ...................................................................13, 14

*Hydronautics v. Film Tec,*
  204 F.3d 880 (9th Cir. 2000) ......................................................................................11

*John Evans Sons, Inc. v. Majik-Ironers, Inc.,*
  95 F.R.D. 186 (E.D. Pa. Aug. 23, 1982).....................................................................13

*Kiefer-Stewart Co. v. Joseph E. Seagram & Sons,*
  340 U.S. 211 (1951)......................................................................................................9

*McGraw-Edison Co. v. Preformed Line Products Co.,*
  362 F.2d 339 (9th Cir. 1966) ......................................................................................14

*Microsoft Corp. v. Ion Technologies Corp.,*
  484 F. Supp. 2d 955 (D. Minn. 2007)........................................................................6, 7

*Old Republic Ins. Co. v. Hansa World Cargo Serv. Inc.,*
  170 F.R.D. 361 (S.D.N.Y. 1997) ................................................................................14

*Prime 24 Joint Venture v. Nat. Broadcasting Co.,*
  219 F.3d 92 (2d Cir. 2000)..........................................................................................11

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
  508 U.S. 49 (1993)......................................................................................................11

*RJCS Enterprises, Inc. v. Professional Benefit Trust, Inc.,*
  No. 03-C-6080, 2004 WL 2033067 (N.D. Ill. Sept. 2, 2004) .......................................7

*Skil Corp. v. Black & Decker Mfg. Co.,*
  351 F. Supp. 65 (N.D. Ill. 1972) ................................................................................10

*State Oil Co. v. Kahn,*
    522 U.S. 3 (1997) ..............................................................................9

*Suburban Restoration Co. v. Acmat Corp.,*
    700 F.2d 98 (2d Cir. 1983) .............................................................11

*United Mine Workers v. Pennington,*
    382 U.S. 657 (1965) .......................................................................11

*United States v. 729.773 Acres of Land,*
    531 F. Supp. 967 (D. Haw. 1982) ....................................................9

*Veltman v. Norton Simon,*
    425 F. Supp. 774 (S.D.N.Y. 1977) ................................................14

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) .......................................................................14

**Federal Statutes**

28 U.S.C. § 2201(a) .............................................................................14

**Federal Rules**

Fed. R. Civ. P. 7 ...................................................................................5

Fed. R. Civ. P. 8(b)(1) ........................................................................12

Fed. R. Civ. P. 8(b)(6) ........................................................................12

Fed. R. Civ. P. 8(c) .............................................................................12

Fed. R. Civ. P. 12 .................................................................................5

Fed. R. Civ. P. 12(b) .......................................................................5, 12

Fed. R. Civ. P. 12(f) ........................................................................8, 9

Fed. R. Civ. P. 12(h)(1) ......................................................................12

**Other Authorities**

5C Wright & Miller, Federal Practice & Procedures § 1382 (2008) .................................8

6 Wright & Miller, Federal Practice & Procedure § 1406 (2008) ...........................13, 15

**INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure 12(f) and 12(b)(6), Plaintiff Broadcom Corporation ("Broadcom") hereby respectfully moves (i) to strike the unclean hands affirmative defense asserted and many of the allegations made by Defendant Qualcomm, Inc. ("Qualcomm") in its February 29, 2008 filing (Dkt. 139) and (ii) to dismiss Qualcomm's counterclaims. In the alternative, Broadcom respectfully requests, pursuant to Federal Rule of Civil Procedure 7, that Qualcomm's filing be treated as Qualcomm's Answer to Broadcom's Second Amended Complaint.

Qualcomm's filing is nothing but a pretext to seek far-ranging discovery into purported joint litigation and enforcement activities by Broadcom and other companies and an alleged internal Broadcom litigation strategy that Qualcomm alleges were somehow untoward. Those purported issues are irrelevant to the issues in Broadcom's case-in-chief, concern litigation activities that are legally protected, and have nothing to do with the declaratory judgments Qualcomm actually requests in its counterclaims. In order to justify inclusion of its sensationalized and irrelevant allegations, Qualcomm includes an "unclean hands" affirmative defense. But that defense is procedurally improper, having been asserted in advance of Qualcomm's answer and while Qualcomm's motion to dismiss remains pending, and legally insufficient, both because "unclean hands" is not a permissible defense against antitrust claims and because the conduct alleged is protected. Stripped of Qualcomm's immaterial allegations, Qualcomm's actual counterclaims are merely redundant flip-sides of some elements of certain Broadcom's claims. Accordingly, they should be dismissed.

## BACKGROUND

Broadcom filed its Second Amended Complaint on November 2, 2007 (Dkt. 106), asserting three federal antitrust claims and five state-law claims. Qualcomm moved to dismiss only the state-law claims. Dkt. 118. In its December 4, 2007 Scheduling Order (Dkt. 115), the Court required Qualcomm to file any counterclaims by February 29, 2008. The Scheduling Order did not authorize the filing of affirmative defenses.

On February 29, 2008, Qualcomm filed a document that it styled "Counterclaims and Affirmative Defense of Defendant/Counterclaims-Plaintiff Qualcomm Incorporated" ("Counterclaims"). Dkt. 139. In that filing, Qualcomm asserts two declaratory judgment counterclaims. One seeks a declaration that "Qualcomm's disclosure of IPR was timely, as set forth in the ETSI IPR Policy." Counterclaims ¶ 117. The other seeks a declaration that "the terms offered by Qualcomm to Broadcom for rights to Qualcomm's UMTS patents are 'fair, reasonable and non-discriminatory', as those terms are used in the ETSI IPR policy." *Id.* ¶ 121.

In its nearly 40 pages and 121 paragraphs of allegations, however, Qualcomm devotes little attention to the counterclaims themselves. Instead, pages and pages of allegations are devoted to supporting an affirmative defense of "unclean hands" in which Qualcomm portrays a supposed global conspiracy against it, code-named "Project Stockholm," involving several companies in the wireless telecommunications industry, principally Nokia and Ericsson,[1] and an allegedly related Broadcom internal effort to

---

[1] *See id.* ¶¶ 23-24 (complaining about Nokia and Ericsson conduct in European Union); ¶¶ 47-48 (complaining of Nokia and Ericsson conduct in 1998 ETSI proceedings); ¶ 98 (complaining of 2005 complaint filed with European Union's antitrust authority); ¶¶ 103-104 (asserting relevance of advocacy position adopted by Nokia in an unrelated European Commission merger review process and in a separate and equally

obtain favorable terms from Qualcomm called "Project Koala." The only ways in which Qualcomm alleges Broadcom actually participated in the supposed conspiracy, though, are by refusing to accept Qualcomm's licensing offers and by initiating lawsuits or filing administrative complaints against Qualcomm. *See* Counterclaims ¶¶ 111-12; *see also* Barbur Letter to Court at 5 (Apr. 4, 2008) (Dkt. 151) (identifying Broadcom's participation as involving "unreasonable refusals to accept Qualcomm's FRAND license offers" and the "decision to launch coordinated global litigation (including this case)"). These allegations describe conduct that is immunized or otherwise not illegal and does not give rise to a cognizable counterclaim.

The irrelevance of most of Qualcomm's allegations to its actual counterclaims makes plain the principal purpose of its filing: to provide a platform to seek massive discovery into issues having nothing to do with the genuine issues in this case and to force Broadcom to answer its voluminous allegations of supposedly improper conduct before Qualcomm has to answer all of Broadcom's claims. Indeed, in its letter briefing to Judge Hughes regarding the parties' discovery disputes, Qualcomm repeatedly cited its counterclaims as justification for seeking broad-based discovery that is irrelevant to Broadcom's claims. Barbur Letter to Court at 2, 5-7. Qualcomm's gamesmanship should not be tolerated. If Qualcomm wishes to assert affirmative defenses it must wait until the time that the Federal Rules of Civil Procedure permit, that is, when it answers Broadcom's Second Amended Complaint. Broadcom should not be forced to answer allegations that Qualcomm falsely labels as relating to "counterclaims" and bearing, if on anything, a procedurally improper and legally deficient affirmative defense.

---

unrelated lawsuit filed in Spain); ¶¶ 69-72 (complaining of lawsuits filed across a two-year span in South Korea, Europe, New Jersey, and California).

Accordingly, Qualcomm's affirmative defense and the allegations relating to it should be stricken for three reasons. First, the defense is procedurally improper. Under the Federal Rules of Civil Procedure, Qualcomm's counterclaims filing is not a proper vehicle for the assertion of an "unclean hands" defense. Qualcomm cannot assert such a defense in advance of answering Broadcom's claims. Nor can Qualcomm save its "Project Stockholm"-"Project Koala" allegations by linking them to its counterclaims. Those allegations are plainly immaterial to Qualcomm's counterclaims, which concern only Qualcomm's supposed fulfillment of its IPR disclosure and FRAND licensing obligations. Second, as to Broadcom's antitrust claims, apparently the only claims as to which the defense is asserted, "unclean hands" is not a legally permissible defense. Third, Qualcomm's allegations do not describe conduct by Broadcom that amounts to the sort of misbehavior required to support an "unclean hands" defense.

Qualcomm's counterclaims should be dismissed as well. Qualcomm's actual counterclaims are nothing but mirror-images of particular elements of some of Broadcom's claims. Because the counterclaims are simply redundant of Broadcom's claims, and the issues they legitimately raise will be fully addressed in the adjudication of Broadcom's claims, the counterclaims should be dismissed.[2]

In the alternative, Broadcom respectfully requests that Qualcomm's counterclaims filing be deemed Qualcomm's Answer to Broadcom's Second Amended Complaint. Doing so would prevent Qualcomm from gaining improper advantage from its procedurally improper assertion of an affirmative defense as a means to justify far-

---

[2] While Broadcom moves pursuant to Rule 12(b)(6), if the Court views the motion as going to the exercise of its jurisdiction under the Declaratory Judgment Act, Broadcom requests that its motion be treated in the alternative as being made pursuant to Rule 12(b)(1).

reaching discovery expeditions and to force Broadcom to answer Qualcomm's allegations before Qualcomm has had to answer Broadcom's.

## ARGUMENT

## I. QUALCOMM'S AFFIRMATIVE DEFENSE AND ITS STOCKHOLM-KOALA ALLEGATIONS SHOULD BE STRICKEN

### A. The Affirmative Defense Is Procedurally Improper

### 1. The Affirmative Defense Is Premature Under the Federal Rules

Pursuant to Federal Rule of Civil Procedure 12, defenses must be stated either in a pleading or a motion. Qualcomm's counterclaims filing is neither. While this Court's scheduling order of December 4, 2007 (Dkt. 115) required Qualcomm to file any counterclaims by February 29, 2008, it did not give Qualcomm license to assert defenses in a manner inconsistent with the Federal Rules of Civil Procedure. Accordingly, Qualcomm's affirmative defense should be stricken.

Federal Rule of Civil Procedure 12(b), which governs "how to present defenses," provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." In the alternative, it permits certain defenses to be "asserted by motion." Plainly, Qualcomm's counterclaims filing is not a motion. Equally plainly, it is not a "responsive pleading." Federal Rule of Civil Procedure 7 defines the "pleadings allowed" under the Federal Rules. It states that "only these pleadings are allowed" and then lists seven: a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a cross-claim, a third-party complaint, an answer to a third-party complaint, and, if ordered, a reply to either an answer or a third-party answer. A counterclaim is not on the list, and thus it is well established that a counterclaim is not a pleading. *See, e.g., Microsoft Corp. v. Ion Technologies Corp.*, 484

5

F. Supp. 2d 955, 965 (D. Minn. 2007) (counterclaim itself not a pleading); *RJCS*

*Enterprises, Inc. v. Professional Benefit Trust, Inc.*, No. 03-C-6080, 2004 WL 2033067,

at *2 n.4 (N.D. Ill. Sept. 2, 2004) (same).

     In its scheduling order of December 4, 2007, the Court ordered that

"[n]otwithstanding the pendency of any motion to dismiss, and regardless of whether

Defendant has served and filed an answer, Defendant shall serve and file counterclaims

no later than February 29, 2008." Order at 2 (¶ 6) (Dec. 4, 2007). That mandate required

Qualcomm to file its counterclaims by February 29, 2008, but it neither expressly nor

implicitly authorized the assertion of affirmative defenses, let alone their assertion in a

manner inconsistent with the Federal Rules of Civil Procedure. If Qualcomm wants to

assert the affirmative defense of unclean hands to Broadcom's claims, it must do so in its

answer to those claims.

     By inserting an affirmative defense—and dozens of supporting allegations—into

it counterclaims filing, Defendant Qualcomm is plainly trying to force Plaintiff

Broadcom to answer its allegations before Qualcomm has to answer Broadcom's claims.

The Court should not permit Qualcomm to gain an improper advantage by flipping the

order of responses envisioned by the Federal Rules in this manner.

     The impropriety of Qualcomm's strategy is highlighted by its assertion that it

"reserves the right to assert additional affirmative defenses when it answers Broadcom's

Second Amended Complaint." Counterclaims at 38. As Qualcomm correctly notes, it

will have the opportunity to assert affirmative defenses when it answers the Second

Amended Complaint. Qualcomm offers no explanation as to why it nonetheless is

entitled to assert one particular affirmative defense in advance of its answer. Nor does it explain how it can be permitted to do so while its motion to dismiss remains pending.

Because Qualcomm's affirmative defense should be stricken, so should the allegations that relate to it. Many of the paragraphs in Qualcomm's filing concern its affirmative defense, not its counterclaims. With respect to paragraphs 86 through 113, paragraph 113 of the filing itself makes that clear by summing up those allegations as showing, "[a]ccordingly," that "Broadcom has unclean hands." But Qualcomm's story of a "Project Stockholm" conspiracy runs throughout its allegations. *See* Counterclaims ¶¶ 2-3, 15, 23-25, 27-29, 47-48, 67-76. Indeed, Qualcomm introduces its entire set of allegations by averring that Broadcom is part of a "collective effort" "to attack Qualcomm" with "other Project Stockholm companies." *Id.* ¶¶ 2-3. Both Qualcomm's affirmative defense and at least paragraphs 2-3, 15, 23-25, 27-29, 47-48, 67-76, and 86-113 should be stricken.

### 2. The Stockholm-Koala Allegations Are Immaterial to the Counterclaims

Nor can Qualcomm seek to save its inflammatory allegations based on their relationship to its counterclaims. Those allegations concern a supposed conspiracy (in which Broadcom barely figures and two other companies are the principal participants) that has nothing to do with the issues Qualcomm seeks to have adjudicated in its actual counterclaims, namely, whether "Qualcomm's disclosure of IPR was timely" and whether "the terms offered by Qualcomm to Broadcom for rights to Qualcomm's UMTS

patents are 'fair, reasonable, and non-discriminatory,' as those terms are used in the ETSI IPR policy." Counterclaims ¶¶ 117, 121.[3]

Qualcomm identifies only two ways in which Broadcom participated in the supposed conspiracy that purportedly makes Broadcom's hands unclean: by refusing to accept Qualcomm's licensing offers and by initiating lawsuits or filing administrative complaints against Qualcomm. *See id.* ¶¶ 111-13; *see also* Barbur Letter to Court at 5 (identifying Broadcom's participation as involving "unreasonable refusals to accept Qualcomm's FRAND license offers" and the "decision to launch coordinated global litigation (including this case)").

Qualcomm's allegations do not even identify a way in which Broadcom's actions or state of mind could have any relevance to the first of those issues, namely, whether *Qualcomm* made timely disclosures to ETSI. And Qualcomm's Stockholm-Koala allegations are similarly immaterial to whether Qualcomm has breached its obligations to offer licenses on FRAND terms. That question turns on whether Qualcomm's licensing offers were in fact FRAND—not on any non-FRAND-related speculation as to why Broadcom might have refused Qualcomm's licensing offers. *See, e.g., Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 314 n.8 (3d Cir. 2007) (noting factors relevant to determination whether Qualcomm offers were made on FRAND terms); *ESS Tech., Inc. v. PC-Tel, Inc.*, 1999 WL 33520483, at *4 (N.D. Cal. Nov. 4, 1999) (noting factors that may be relevant to FRAND determination). Moreover, why Broadcom brought legal actions or participated in administrative proceedings is also irrelevant to the issue of whether

---

[3] Matter in a filing may be stricken when it is "immaterial." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." 5C Wright & Miller, Federal Practice and Procedure § 1382 (2008).

*Qualcomm* offered FRAND licensing terms as it was required to do. Qualcomm either did or did not offer FRAND terms. That Qualcomm's affirmative defense and its supporting allegations are immaterial to the only permissible elements of its counterclaims filing provides an additional reason the defense and allegations should be stricken.

### B. The Affirmative Defense Is Legally Insufficient

Affirmative defenses may be stricken under Rule 12(f) when they are "legally insufficient." *United States v. 729.773 Acres of Land,* 531 F. Supp. 967, 971 (D. Haw. 1982); *see* Fed. R. Civ. P. 12(f).

### 1. An "Unclean Hands" Defense Cannot Be Asserted Against Broadcom's Antitrust Claims

Qualcomm's counterclaims filing indicates that Qualcomm's "unclean hands" defense is directed only at Broadcom's federal antitrust claims.[4] Yet it is settled law that "unclean hands" provides no defense in a private antitrust action. *See Kiefer-Stewart Co. v. Joseph E. Seagram & Sons,* 340 U.S. 211, 214 (1951) ("The alleged illegal conduct of [plaintiff], however, could not legalize the unlawful combination by respondents nor immunize them against liability to those they injured.").[5] *See also Am. Motor Inns v.*

---

[4] In its counterclaims filing Qualcomm notes that it has moved to dismiss Broadcom's state-law claims and it points to its pending motion to dismiss both in justifying its failure to answer Broadcom's Second Amended Complaint and in attempting to reserve its right to assert additional affirmative defenses when it does answer. Counterclaims at 38-39. The fact that Qualcomm will have an opportunity to assert affirmative defenses when it answers Broadcom's state-law claims suggests that the affirmative defense it has asserted prematurely is directed principally, if not exclusively, at Broadcom's antitrust claims.

[5] The portion of the opinion in *Kiefer-Stewart* that imposed liability under Section 1 of the Sherman Act for agreements restraining maximum resale prices was subsequently overruled in *State Oil Co. v. Khan,* 522 U.S. 3 (1997). The portion of the opinion imposing liability on the defendant for conspiring with its subsidiary was

9

*Holiday Inns,* 521 F.2d 1230, 1254 (3d Cir. 1975). An "unclean hands" defense is

unavailable whether the plaintiff seeks money damages or injunctive relief. *See Chrysler*

*Corp. v. General Motors Corp.,* 596 F. Supp. 416, 419 (D.D.C. 1984); *Skil Corp. v. Black*

*& Decker Mfg. Co.,* 351 F. Supp. 65, 66 (N.D. Ill. 1972).

Because "unclean hands" is not a valid defense to an antitrust claim, courts have

not hesitated to strike "unclean hands" affirmative defenses when they have been asserted

against antitrust plaintiffs. *See, e.g., Apex Oil Co. v. DiMauro,* 713 F. Supp. 587, 604-05

(S.D.N.Y. 1989) (striking "unclean hands" affirmative defense because "[s]ince *Kiefer-*

*Stewart,* the law has remained consistent that unclean hands is not a defense to an

antitrust action"). The Court should do the same here.

### 2. Qualcomm's Allegations Do Not Describe Conduct That Is "Unclean"

Qualcomm identifies only two ways in which Broadcom participated in the

supposed conspiracy that purportedly makes Broadcom's hands unclean: by refusing to

accept Qualcomm's licensing offers and by initiating lawsuits or filing administrative

complaints against Qualcomm. *See* Counterclaims ¶¶ 111-13; *see also* Qualcomm Letter

Brief at 5 (Apr. 4, 2008) (identifying Broadcom's participation as involving

"unreasonable refusals to accept Qualcomm's FRAND license offers" and the "decision

to launch coordinated global litigation (including this case)").

Qualcomm seems to make these allegations in an attempt to establish a predicate

for an antitrust or unfair competition claim, but it does not—nor could it—assert such a

---

subsequently overruled by *Copperweld Corp. v. Independence Tube,* 467 U.S. 752 (1984).
*Kiefer-Stewart's* prohibition on the assertion of an unclean hands defense in a federal
antitrust case remains good law. *See, e.g., Am. Soc'y for the Prevention of Cruelty to*
*Animals v. Ringling Brothers and Barnum & Bailey Circus,* 244 F.R.D. 49, 55 (D.D.C.
2007); *Confre Cellars. Inc. v. Robinson,* 2002 WL 32376945 (D. Colo. Mar. 6, 2002).

claim because the supposedly unclean conduct is legally protected. As to Qualcomm's allegations that Broadcom has refused to accept licensing offers, unlike Qualcomm (which is obligated to offer the IPR at issue on FRAND terms), Broadcom is under no obligation to accept Qualcomm's licensing offers, whether they are FRAND or not. Broadcom's alleged refusal to accept a license offer does not give rise to an antitrust claim or any other type of claim. *See, e.g., Am. Telephone and Telegraph Co. v. Delta Comm'ns Corp.,* 408 F. Supp. 1075, 1101 (D.C. Miss. 1976) ("a refusal to buy a product for more than it is worth simply cannot be a violation of the antitrust laws").

As to the second form of conduct about which Qualcomm complains, namely, Broadcom's suing or filing administrative complaints against Qualcomm for its anticompetitive behavior, Broadcom's actions are specifically protected. As the Supreme Court has made clear through the *Noerr-Pennington* doctrine[6], absent proof of sham activity—which Qualcomm does not and could not allege—lawsuits and approaches to administrative agencies are immune from antitrust liability. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-57 (1993).[7] There is, moreover, no antitrust liability for parties with common legal interests coordinating enforcement of their legal rights. *See, e.g., Prime 24 Joint Venture v. Nat. Broadcasting Co.*, 219 F.3d 92, 99 (2d Cir. 2000). And Broadcom's litigation efforts before the European Commission concerning Qualcomm's compliance with European competition

---

[6] *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 382 U.S. 657 (1965); *see also California Motor Tran. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) (emphasizing *Noerr-Pennington*'s First Amendment basis).

[7] These same principles would also apply to defeat any state-law claims based on filing of lawsuits. *See, e.g., Cheminor Drugs, Ltd v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999); *Hydranautics v. Film Tec*, 204 F.3d 880, 887 (9th Cir. 2000); *Suburban Restoration Co. v. Acmat Corp.*, 700 F.2d 98, 102 (2d Cir. 1983).

law are similarly protected. *See Carpet Group Int'l v. Oriental Rug Import Ass'n,* 256 F.

Supp. 2d 249, 266 (D.N.J. 2003) (antitrust immunity extends to petition of foreign

governments).

### C. In the Alternative, Qualcomm's Filing Should Be Deemed Its Answer to the Second Amended Complaint

If the Court declines to strike Qualcomm's affirmative defense and its related

allegations, Broadcom respectfully requests that the Court treat Qualcomm's filing as its

Answer to Broadcom's Second Amended Complaint. The Federal Rules of Civil

Procedure do not envision or permit the piece-meal approach to answering that

Qualcomm has attempted here. Rather, the Rules provide that an answer must include all

affirmative defenses and a response to each and every allegation, and they are equally

clear that any allegation not denied is admitted and any defense not raised is waived. *See*

Fed. R. Civ. P. 8(b)(1), 8(b)(6), 8(c), 12(b), 12(h)(1). Qualcomm has in effect filed an

answer with a single defense. If the defense is not stricken, the Rules require that

Qualcomm be preclusively held to its filing. Thus, any allegations in the Second

Amended Complaint that are not denied in Qualcomm's filing should be deemed

admitted. Doing so would ensure that Qualcomm bears the cost of seeking to assert an

affirmative defense prematurely.

## II. QUALCOMM'S COUNTERCLAIMS SHOULD BE DISMISSED

Once Qualcomm's improper and legally deficient affirmative defense and the

allegations made in support of it are set aside, it becomes clear that Qualcomm's actual

counterclaims are nothing but mirror-images of particular elements of some of

Broadcom's claims. Because the counterclaims are simply redundant of Broadcom's

claims, and the issues they legitimately raise will be fully aired in the adjudication of Broadcom's claims, the counterclaims should be dismissed.[8]

If a defendant's counterclaim seeks a declaratory judgment simply negating a subset of the issues presented by the plaintiff's claims, the request for declaratory relief may be struck "on the ground that it is redundant and a decision on the merits of the plaintiff's claim will render the request . . . moot." 6 Wright & Miller, Federal Practice and Procedure § 1406 (2008). When deciding whether a declaratory-judgment counterclaim should be struck for this reason, courts look at whether the counterclaim simply raises issues encompassed in the plaintiff's claims and thus whether resolution of the claims will necessarily decide the proposed counterclaim as well and make it moot. *See, e.g., Aldens Inc. v. Packel*, 524 F.2d 38, 52 (3d Cir. 1975) (striking counterclaim where "the counterclaim for declaratory relief . . .was redundant and became moot" after the issues in the complaint were decided); *De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.,* 2001 WL 799870, at *4 (E.D. Pa. July 12, 2001) (dismissing request for declaratory judgment because it would "require a determination of the same factual issues which underlie the parties' substantive legal claims"); *John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186, 190 (E.D. Pa. Aug. 23 1982) (dismissing counterclaim because it is was redundant).[9]

---

[8] To the extent Qualcomm's counterclaims rest on its Stockholm-Koala allegations, they should be dismissed because the conduct described in those allegations is protected. *See supra* part I.B.2.

[9] *See also Federal Deposit Ins. Corp. v. Project Development Corp.*, 819 F.2d 289, at *3-4 (6th Cir. May 27, 1987) (unpub.) (upholding dismissal of counterclaim for declaratory relief because it essentially raised the same issues as the original complaint and therefore served no purpose); *Amwest Surety Ins. Co. v. Concord Bank*, 2003 WL 553229, at *4 (E.D. Mo. Feb. 4, 2003) (where there exists a "complete identity" of factual and legal issues between the complaint and the counterclaim, the counterclaim is

Qualcomm's counterclaims plainly meet this test and accordingly should be stricken. Qualcomm's counterclaims seek declarations that "Qualcomm's disclosure of [UMTS] IPR [to ETSI] was timely" and that "the terms offered by Qualcomm to Broadcom for rights to Qualcomm's UMTS patents are 'fair, reasonable, and non-discriminatory,' as those terms are used in the ETSI IPR policy." Counterclaims ¶¶ 117, 121. These precise issues are raised throughout the Second Amended Complaint and constitute core elements of seven out of eight of Broadcom's claims for relief. *See* Second Am. Compl. ¶¶ 276, 281, 286, 292, 293, 303, 306, 313, 314, 322-324.[10]

---

redundant and should be dismissed); *Veltman v. Norton Simon*, 425 F. Supp 774, (S.D.N.Y. 1977) (dismissing counterclaim because it was "redundant and has become moot").

Courts' authority to dismiss redundant counterclaims is rooted in the discretionary character of their jurisdiction to grant declaratory relief. *See* 28 U.S.C. §2201(a) ("any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration"); *De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.*, No. Civ. A. 00-2355, 2001 WL 799870, at *4 (E.D. Pa. July 12, 2001). To cabin their discretion, courts have adopted certain rules, including a rule that "where a declaratory judgment will not serve a useful purpose, the court may decline to entertain such relief." *See id.* (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995)); *Dominium Mgmt. Servs., Inc. v. Nationwide Housing Group*, 195 F.3d 358, 367 (8th Cir. 1999); *Aluminum Co. of Am. v. Beazer East Inc.*, 124 F.3d 551 (3d Cir. 1997); *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 343 (9th Cir. 1966); *Old Republic Ins. Co. v. Hansa World Cargo Serv. Inc.*, 170, F.R.D. 361, 386 (S.D.N.Y. 1997)). "[W]hen a counterclaim merely restates the issues as a 'mirror image' to the complaint, the counterclaim serves no purpose." *Project Development Corp.*, 819 F.2d 289, at *3. Furthermore, redundant counterclaims should also be stricken because trying both a claim in the original complaint and a declaratory judgment request that is its mirror image, would, "[i]nsofar as each request is adjudicated discretely, [result in] an unacceptable series of minitrials and unwarranted expenditure of resources." *De Lage Landen Fin. Servs. Inc.*, 2001 WL 799870, at * 4.

[10] The only claim for relief that does not mention the issues raised in Counts I and II of the Counterclaim is fifth claim for relief, which discusses Qualcomm's "willful and malicious course of conduct to foreclose Broadcom from various commercial opportunities in chipsets that implement the GSM, GPRS, EDGE, UMTS, and H.264 standards," (Second Am. Compl. ¶ 298), but does not actually describe the specific behavior in question.

In particular, Qualcomm's first counterclaim involves the same issues and facts raised in Broadcom's third claim for relief. While the counterclaim seeks a declaration that "Qualcomm's disclosure of IPR was timely," Counterclaims ¶ 117, liability under Broadcom's third claim for relief is predicated precisely on Qualcomm's "failing to disclose timely its purportedly essential IPR to ETSI," Second Am. Compl. ¶ 287. The counterclaim thus mirrors a central component of Broadcom's claim, and deciding the claim will resolve the issue raised in the counterclaim as well. Qualcomm expressly recognizes the redundancy in its counterclaims allegations: "Broadcom alleges that Qualcomm failed to disclose its  . .. patents in a timely manner [and] Qualcomm seeks declaratory judgment with respect to [the same] issue[]." Counterclaims ¶ 40. Indeed, Qualcomm sets out the request for declaratory relief as a response to Broadcom's claims:

> 116. . . .  On July 1, 2005, Broadcom filed this action in the New Jersey Federal court, in which Broadcom asserts . . . that Qualcomm's disclosure to ETSI of IPR that might be essential to the UMTS standard was improper and untimely.

> 117 Accordingly, Qualcomm seeks a declaration that Qualcomm's disclosure of IPR was timely, set forth in the ETSI IPR Policy.

Counterclaims ¶¶ 116 -17. Since the only question for both the Complaint's Third Claim for Relief and Count I of the Counterclaim is whether the disclosure of the IPR was timely, the counterclaim is "redundant and a decision on the merits of the [P]laintiff's claim will render the request . . . moot." 6 Wright & Miller, Federal Practice and Procedure § 1406.

The redundancy of this counterclaim is evident as well in the way that many of the allegations supporting it match up as denials of particular allegations in the Second Amended Complaint. For example:

- While the Second Amended Complaint alleges that "Qualcomm had an obligation to disclose [relevant IPR] earlier than October 19, 2001," Second Am. Compl. ¶ 94, and "[i]t was not until October 19, 2001 that Qualcomm disclosed any patents to ETSI," *id.* ¶ 93, the counterclaim alleges that "[b]eginning in 1997, Qualcomm repeatedly disclosed to ETSI that it held patents that might be essential to the [relevant] standard," Counterclaims ¶ 41.

- While the Second Amended Complaint avers that Qualcomm had an obligation to disclose "all patents," Second Am. Compl. ¶ 94, the counterclaim alleges that "Qualcomm's general disclosure of IPRs to ETSI—a disclosure that did not identify particular patents—was consistent with the practices of other ETSI members at the time," Counterclaims ¶ 46.

- While the Second Amended Complaint avers that "Qualcomm's disclosure . . . was untimely and in violation of the polices and practices of ETSI," Second Am. Compl. ¶ 94, the counterclaim alleges that "Qualcomm's disclosure of IPRs to ETSI . . . was consistent with practice of other ETSI members of the time," Counterclaims ¶ 46.

These match-ups further demonstrate that the issues raised in the counterclaim would clearly be adjudicated in resolution of Broadcom's claims. This redundancy makes Qualcomm's first counterclaim a prime candidate for dismissal.

Qualcomm's second counterclaim should be stricken as redundant as well. It is the mirror image of Broadcom's second claim for relief. The counterclaim seeks a declaration that "the terms offered by Qualcomm to Broadcom for [its] patents are 'fair, reasonable and non-discriminatory', as those terms are used in the ETSI IPR Policy." Counterclaims ¶ 121. Conversely, determining liability under Broadcom's second claim will require deciding whether the terms Qualcomm offered were "unfair, discriminatory, and patently unreasonable" under the ETSI IPR Policy. Second Am. Compl. ¶ 281. Again, the counterclaim itself expressly notes its direct overlap with Broadcom's claims: "Broadcom alleges that Qualcomm has refused to offer to license its essential patents on FRAND terms. Qualcomm seeks declaratory judgment with respect to [this] issue[]." Counterclaims ¶ 40; *see also id.* ¶ 1 ("Broadcom's claims in this lawsuit are premised on

the false notions that Qualcomm has refused to license its patents to Broadcom on 'fair, reasonable and non-discriminatory' ('FRAND') terms, and that refusal has violated Federal antitrust laws and various California state laws."). Moreover, as does its first counterclaim, Qualcomm's second counterclaim couches its request for declaratory judgment as a mirror-image effort to deny an essential component of Broadcom's claims:

> 120. . . . On July 1, 2005, Broadcom filed this action in the New Jersey Federal court, in which Broadcom asserts . . . that Qualcomm did not offer to license its patents to Broadcom on FRAND Terms.

> 121 Accordingly, Qualcomm seeks a declaration that the terms offered by Qualcomm to Broadcom for rights to Qualcomm's UMTS patents are 'fair, reasonable and non-discriminatory', as those terms are used in the ETSI IPR Policy.

Counterclaims ¶¶ 120-21. Again, the parallelism between the two can also be seen in the underlying allegations. Paragraphs 99 through 121 of the Second Amended Complaint give a detailed description of the licensing negotiations between Broadcom and Qualcomm and aver how Qualcomm's terms were "unfair, discriminatory, and patently unreasonable." Second Am. Compl. ¶¶ 99-121. Conversely, paragraphs 57 through 85 of the Counterclaims make opposing claim, averring that Qualcomm's terms were fair, reasonable, and non-discriminatory. Counterclaims ¶¶ 57-85.

Because Qualcomm's counterclaims simply seek declarations denying essential factual components of Broadcom's claims, the counterclaims are redundant of the claims. This Court should exercise its discretion to strike them.

## CONCLUSION

For the foregoing reasons, Qualcomm's affirmative defense of unclean hands and paragraphs 2-3, 15, 23-25, 27-29, 47-48, 67-76, and 86-113 of its counterclaims filing should be stricken. In the alternative, Broadcom respectfully requests that Qualcomm's

filing be treated as Qualcomm's Answer to Broadcom's Second Amended Complaint.  In

addition, Qualcomm's counterclaims should be dismissed.

<div style="margin-left: 40%;">

Respectfully submitted,
BOIES, SCHILLER & FLEXNER LLP

By: s/ David S. Stone
    David S. Stone, Esq.
    dstone@bsfllp.com

*Counsel for Plaintiff Broadcom Corporation*

</div>

Dated:  April 21, 2008

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION, | |
| Plaintiff, | CIVIL ACTION NUMBER |
| v. | 05-3350 (MLC/JJH) |
| QUALCOMM, INC., | [PROPOSED] |
| Defendant | **ORDER** |

This matter comes before the Court upon the motion of Plaintiff Broadcom Corporation to strike affirmative defense and related allegations and to dismiss counterclaims set forth in the Counterclaims and Affirmative Defense of Plaintiff Qualcomm, Incorporated. The Court being fully apprised of the parties' briefs, arguments of counsel, if any, and the file herein, it is hereby **ORDERED** that the Motion to Strike and to Dismiss is **GRANTED**.

It is further **ORDERED** that Defendant Qualcomm, Incorporated's counterclaims are hereby **DISMISSED** and its affirmative defense of unclean hands is **STRICKEN**.

**SO ORDERED** this _____ day of _____, 2008.

_____
Honorable Mary L. Cooper
United States District Court Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BROADCOM CORPORATION,<br><br>       Plaintiff,<br><br>    v.<br><br>QUALCOMM, INC.,<br><br>       Defendant. | CIVIL ACTION NUMBER<br><br>05-3350 (MLC/JJH) |

## CERTIFICATE OF SERVICE

    I, David S. Stone, hereby certify that the foregoing Motion to Strike Affirmative Defense and Related Allegations and to Dismiss Counterclaims was filed and served electronically on April 21, 2008 on counsel for all named parties through the Court's *ECF system*, including:

        William J. O'Shaughnessy, Esq.
        McCARTER & ENGLISH, LLP
        Four Gateway Center
        100 Mulberry Street
        Newark, NJ 07102-4056

        Peter T. Barbur, Esq.
        Elizabeth Grayer, Esq.
        CRAVATH, SWAINE & MOORE LLP
        Worldwide Plaza
        825 Eighth Avenue
        New York, NY 10019

Steven J. Kaiser, Esq.
CLEARY, GOTTLEIB, STEIN & HAMILTON
200 Pennsylvania Avenue, NW
Washington, DC 20006

s/ David S. Stone
David S. Stone, Esq.
dstone@bsfllp.com
Boies, Schiller & Flexner LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Tel: 973-218-1111
Fax: 973-218-1106
*Counsel for Plaintiff Broadcom
Corporation*