# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM, INC.,<br><br>Defendant | CIVIL ACTION NUMBER<br><br>05-3350 (MLC/JJH)<br><br>**PLAINTIFF BROADCOM CORPORATION'S NOTICE OF MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)** |

**PLEASE TAKE NOTICE** that, on May 16, 2008, Plaintiff Broadcom Corporation, by its undersigned attorneys, Boies, Schiller & Flexner LLP, shall move this Court before the Honorable Mary L. Cooper, United States District Judge, at the Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608, for an Order to Transfer as set forth in Broadcom's Memorandum of Points and Authorities in Support of Motion to Transfer Under 28 U.S.C. § 1404(a).

**PLEASE TAKE FURTHER NOTICE** that a Brief and a Proposed Form of Order are hereby submitted in support of this motion.

Respectfully submitted,
BOIES, SCHILLER & FLEXNER LLP

By: /s David S. Stone
      David S. Stone, Esq.
      dstone@bsfllp.com
      Boies, Schiller & Flexner LLP
      150 JFK Parkway, 4th floor
      Short Hills, NJ 07078
      (973) 218-1111
      *Counsel for Plaintiff Broadcom Corporation*

Dated: May 16, 2008

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>          Plaintiff,<br><br>     v.<br><br>QUALCOMM, INC.,<br><br>          Defendant. | CIVIL ACTION NUMBER<br><br>05-3350 (MLC/JJH) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)

**Boies, Schiller & Flexner LLP**
150 JFK Parkway, 4th Floor
Short Hills, NJ 07078
(973) 218-1111

**Wilmer Cutler Pickering Hale and Dorr LLP**
60 State Street
Boston, MA 02109
(617) 526-6000

**Wilmer Cutler Pickering Hale and Dorr LLP**
1117 California Avenue
Palo Alto, CA 94304
(650) 858-6000

*Attorneys for Plaintiff Broadcom Corporation*

On the Brief:
William F. Lee
David S. Stone

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND .................................................................................................2

III.    ARGUMENT ......................................................................................................5

        A.      Legal Standards ......................................................................................5

        B.      This Court Should Transfer This Action to the Southern District of
                California Because of the Presence of Two Related Cases There ...........6

        C.      Both the Private and Public Interests in This Case Support Transfer
                to the Southern District of California ......................................................8

                1.      Private Interests Will Best Be Served in the Southern
                        District of California ....................................................................8

                2.      Transferring the Action to California is Also in the Public
                        Interest ........................................................................................13

IV.     CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

## CASES

Page(s)

*American Cyanamid Co. v. Eli Lilly & Co.*, 903 F. Supp. 781 (D.N.J. 1995)..............................6, 8

*American Telephone & Telegraph Co.*, 736 F. Supp. 1294 (D.N.J. 1990)................................5, 8

*Aventis Pharmaceuticals. S.A. v. Sandoz, Inc.*, No. 06-3671, 2007 WL 1101228
(D.N.J. Apr. 10, 2007) .................................................................................................5

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) ....................................................3

*Campus Dimensions, Inc. v. On-Campus Marketing Concepts, Inc.*, No. 94-649,
1994 WL 470188 (E.D. Pa. Aug. 25, 1994) ..............................................................6

*Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991) ........................5

*Continental Grain Corp. v. Barge FBL-585*, 364 U.S. 19 (1960) .....................................................6

*Cuco v. United States*, No. 05-5347, 2007 WL 2904193 (D.N.J. Oct. 2, 2007)............................9

*Ferens v. John Deere Co.*, 494 U.S. 516 (1990)...............................................................................5

*Gulf Oil Co. v. Gilbert*, , 330 U.S. 501 (1947)................................................................................6

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) .......................................................................5

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995) ........................................5, 6, 13

*LG Electronics v. First International Computer, Inc.*, 138 F. Supp. 2d 574 (D.N.J.
2001) .....................................................................................................................6, 14

*Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442 (D.N.J. 1999).......................................................5, 6

*Liebig v. Schneider National Bulk Carriers*, No. 9204773(AMW), 1993 U.S. Dist.
LEXIS 1681 (D.N.J. Feb. 10, 1993) ..........................................................................7

*Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518 (D.N.J.
2000) ..............................................................................................................9, 13, 14

*Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473 (D.N.J. 1993) ............................................... 10-11

*Schwilm v. Holbrook*, 661 F.2d 12 (3d. Cir. 1981)..........................................................................5

*Security Savings Bank SLA v. Green Tree Acceptance, Inc.*, 703 F. Supp. 350
(D.N.J. 1989).............................................................................................8, 9, 10, 12

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).........................................................5

*Todd Shipyards Corp. v. Cunard Line Ltd.*, 708 F. Supp. 1440 (D.N.J. 1989) ..............................8

*Walsh v. Chez*, No. 05-286, 2006 WL 2583623 (E.D. Pa. Sept. 6, 2006) .......................................6

*Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283 (E.D. Pa. 2001)...............................................8

## STATUTES

28 U.S.C. § 1404(a) ...................................................................................................................1, 5

## I.    INTRODUCTION

Since the return of this case from the Third Circuit, a number of changes in circumstances have occurred that now make venue in the Southern District of California much more appropriate than in New Jersey, and Broadcom therefore requests that the case be transferred to California pursuant to 28 U.S.C. § 1404(a).

First, one of the principal factual links between Broadcom's claims and New Jersey has been severed with the dismissal of Broadcom's antitrust claim premised on Qualcomm's acquisition of New Jersey-based Flarion Technologies.

Second, two private antitrust class actions were filed last month against Qualcomm in the Southern District of California. Those cases present questions of law and fact nearly identical to Broadcom's Second Amended Complaint in this proceeding, as Qualcomm has acknowledged in motions filed earlier this month to have those two cases transferred to this Court. Moreover, both the California cases and this one remain in many ways at a preliminary stage.

Third, California state-law claims are the only remaining state law claims in Broadcom's Second Amended Complaint. Broadcom's First Amended Complaint, in contrast, stated claims for relief under numerous state antitrust or unfair competition statutes, including the laws of New Jersey.

Fourth, much of Qualcomm's deceptive behavior that gives rise to this suit occurred in or was directed from California. As reflected in allegations that appear for the first time in Broadcom's Second Amended Complaint, Broadcom has gained additional information over the past year and a half that Qualcomm's misconduct sprang from California.

Because Qualcomm, in motions to transfer the California cases to this Court, acknowledges that consolidation of those cases with this one in a single district is appropriate,

the only real issue is which district is more appropriate. At this juncture, the Southern District of California is the superior forum for the three cases.

Both Qualcomm and Broadcom are headquartered in southern California, the lead plaintiffs in the California cases reside there, and many witnesses reside in southern California. As Qualcomm acknowledges in its transfer motions, the Southern District of California "ordinarily would be a convenient venue" for it and "there is little doubt that relevant evidence and witnesses are located in [that] [d]istrict."[1] Transferring this action to the Southern District of California will promote judicial efficiency while conserving the resources that witnesses and parties must expend in litigating this dispute.

## II.    BACKGROUND

Broadcom filed this action on July 1, 2005, and amended its complaint two months later. Broadcom's First Amended Complaint alleged that Qualcomm engaged in a variety of anticompetitive practices in order to obtain and maintain its monopoly in the CDMA chipset market and then engaged in a variety of additional anticompetitive schemes to extend that monopoly into the WCDMA technology market and the UMTS chipset market. Among the latter practices, the First Amended Complaint alleged, was Qualcomm's breach of its obligation to license its technology on fair, reasonable, and non-discriminatory ("FRAND") terms and its acquisition of Flarion Technologies, a company located in Bedminster, New Jersey. The First Amended Complaint alleged that Qualcomm's actions harmed competition in both the technology and chipset markets, injured Broadcom and similarly situated companies, and,

---

[1] Qualcomm Incorporated's Memorandum of Points and Authorities in Support of Its Motion to Transfer, *Meyer v. Qualcomm Inc.*, No. 08-cv-0655-WQH (LSP) (S.D. Cal. May 1, 2008), at 8 (attached hereto as Exhibit A); Qualcomm Incorporated's Memorandum of Points and Authorities in Support of Its Motion to Transfer, *Valikhani v. Qualcomm Inc.*, No. 08-cv-0786-WQH (JMA) (S.D. Cal. May 2, 2008), at 7 (attached hereto as Exhibit B).

ultimately, harmed consumers. The First Amended Complaint stated eight claims for relief under federal antitrust law, one claim for unfair competition under New Jersey and other state antitrust or unfair competition statutes, and four common-law claims.

In October 2005, this Court issued an order to show cause why the case should not be transferred to either the Southern or Central District of California. Dkt. 21. Noting that both Broadcom and Qualcomm have their principal places of business in California and that many of the claims have nationwide significance, the Court suggested that the case "would have been more-properly brought" in California. *Id.* at 1. In response to that Order, Qualcomm stated that while it did not object to venue in New Jersey, it considered the Southern District of California a more appropriate venue than the Central District. Dkt. 25, at 2.[2]

Qualcomm filed a motion to dismiss for failure to state a claim upon which relief can be granted in December 2006, and this Court granted the motion. Broadcom appealed to the Third Circuit, which overturned the dismissal of all but one of Broadcom's monopolization and attempted monopolization claims under §§ 1 and 2 of the Sherman Act. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007). However, the Third Circuit upheld this Court's dismissal of Broadcom's attempt to enjoin Qualcomm's acquisition of New Jersey-based Flarion Technologies, a key link to this venue. *Id.* at 321. Broadcom then filed its Second Amended Complaint, without any allegations about Flarion, on November 2, 2007. The Second Amended Complaint states three claims under federal antitrust law and five claims under California law,

---

[2] Consistent with its having filed this suit in New Jersey, Broadcom asserted that it was "properly venued" in the District of New Jersey at that time. Dkt. 26, at 2; *see also* Dkt. 44, at 1 (noting same in order vacating order to show cause). In September 2005, Broadcom also made Qualcomm's agreement not to move to transfer or to dismiss on grounds of improper venue one of the conditions for Broadcom's consent to an extension of time for Qualcomm to respond to Broadcom's First Amended Complaint. *See* Dkt. 23, at 1. As explained throughout this brief, changes that have occurred since the return of the case from the Third Circuit now make transfer to the Southern District of California appropriate.

one under California's unfair competition law and four under the common law. Qualcomm's motion to dismiss the state-law claims remains pending.

Within the last two months, two groups of plaintiffs in California filed class actions against Qualcomm focusing on very much the same allegations that Broadcom has made in the instant case. The first case, *Valikhani v. Qualcomm Inc.*, No. 3:08-cv-00786-WQH-JMA (S.D. Cal.), was initially filed in California Superior Court and was removed to the Southern District of California in April 2008. The second, *Meyer v. Qualcomm Inc.*, No. 3:08-cv-00655-WQH-LSP (S.D. Cal.), was filed in the U.S. District Court for the Southern District of California on April 10, 2008. The allegations in these class actions overlap to a considerable extent with the allegations in this case, as Qualcomm concedes in its motions to transfer the California cases to this Court. Qualcomm notes that the "similarity is borne out by a simple comparison of the complaints, both of which … allege the same theory of anticompetitive conduct, accuse Qualcomm of the same allegedly non-FRAND licensing practices and assert similar causes of action under the same state and federal antitrust laws." (Qualcomm *Meyer* Transfer Motion at 6.) Both those cases and this one will require resolution of numerous common issues of fact and law, including:

- Whether Qualcomm represented to members of the European Telecommunications Standards Institute ("ETSI") that it would license its patents on fair, reasonable, and non-discriminatory ("FRAND") terms;

- Whether ETSI and other standard-setting organizations only adopted UMTS as the mobile standard based on Qualcomm's representations that it would offer patents on FRAND terms;

- Whether Qualcomm offers licenses on FRAND terms, or whether Qualcomm requires licensees to pay unfair, unreasonable or discriminatory royalty rates; and

- Whether Qualcomm abused its dominance in the CDMA technology market to build a monopoly in the newer, growing UMTS chipset market.

## III.   ARGUMENT

### A.    Legal Standards

Transfer to another district under 28 U.S.C. § 1404(a) is appropriate when doing so will promote the convenience of the parties and serve the interests of justice. *See, e.g., Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 449 (D.N.J. 1999). A party may move to transfer at any juncture, *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d. Cir. 1981); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991), and a plaintiff's request for transfer should be judged by the same standards as a defendant's. *See, e.g., In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) ("The Supreme Court has clearly indicated that either a defendant or a plaintiff can move for change of venue under § 1404 and that the same treatment and consideration should be given to the motion for transfer regardless of who the movant of that motion may be."); *Aventis Pharms. S.A. v. Sandoz, Inc.*, No. 06-3671, 2007 WL 1101228, at *2, n.1 (D.N.J. Apr. 10, 2007); *cf. Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) (same rule as to governing law in diversity cases applies whether plaintiff or defendant initiates transfer).

The decision whether to transfer a case requires a court to balance a number of factors on a case-by-case basis. *See, e.g., Stewart Org.*, 487 U.S. at 29; *American Tel. & Tel. Co.*, 736 F. Supp. 1294, 1305-1306 (D.N.J. 1990). The private interests to be considered include (1) the plaintiff's forum preference; (2) the defendant's preference; (3) where the claim arose; (4) the

parties' ability to travel; (5) the convenience of the witnesses and the possibility they would not

be available for trial; and (6) the location of relevant documents. *See Jumara v. State Farm Ins.*

*Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Walsh v. Chez*, No. 05-286, 2006 WL 2583623 (E.D. Pa.

Sept. 6, 2006); *Campus Dimensions, Inc. v. On-Campus Marketing Concepts, Inc.*, No. 94-649,

1994 WL 470188 (E.D. Pa. Aug. 25, 1994); *cf. Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508

(1947). The public-interest factors include (1) the enforceability of the judgment; (2) practical

considerations to make the trial easy, expeditious, or inexpensive; (3) relative court congestion

and administrative loads; (4) the local interest of each forum in actually litigating the dispute; (5)

the public policies of each forum; and (6) each trial judge's familiarity or expertise in the

applicable law. *Jumara*, 55 F.3d at 879. On balance, these factors weigh heavily in favor of

transferring this action to the Southern District of California.

**B.    This Court Should Transfer This Action to the Southern District of California Because of the Presence of Two Related Cases There**

Efficiency in the use of judicial and party resources counsels in favor of transfer when

related cases are being litigated simultaneously in different districts. *See, e.g., Continental Grain

Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases

involving precisely the same issues are simultaneously pending in different District Courts leads

to the wastefulness of time, energy and money that § 1404(a) was designed to protect."). The

Third Circuit and the District Court for the District of New Jersey have repeatedly made clear

that "[w]here related lawsuits exist, 'it is in the interests of justice to permit suits involving the

same parties and issues to proceed before one court and not simultaneously before two

tribunals.'" *Lawrence*, 56 F. Supp. 2d at 453; *see Am. Cyanamid Co. v. Eli Lilly & Co.*, 903 F.

Supp. 781, 787 (D.N.J. 1995) (citing *Continental Grain Corp.*, 364 U.S. at 19); *LG Elec. v. First*

*Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001) ("The interests of justice strongly favor transfer of a case to another jurisdiction where a related matter is pending.").

There is no dispute between the parties that this case and the class actions recently filed in the Southern District of California are related in this sense. In its motions filed in the Southern District of California to transfer those cases to this District, Qualcomm argues that moving all three cases to a single district will "prevent the needless duplication of time, cost and judicial resources" because, in relation to the California cases, this case constitutes "a largely identical action." (Ex. A at 1; Ex. B at 1.) Qualcomm suggests that the "similarity is borne out by a simple comparison of the complaints, both of which … allege the same theory of anticompetitive conduct, accuse Qualcomm of the same allegedly non-FRAND licensing practices and assert similar causes of action." (Ex. A at 6; Ex. B at 6.)

Because the allegations in Broadcom's Second Amended Complaint run parallel to the allegations in *Meyer* and *Valikhani*, it is highly likely that many of the same witnesses will be deposed in the California cases, and that Broadcom, Qualcomm, and the plaintiffs in the California cases will seek discovery of like documents and records. Again, Qualcomm concedes as much. "Because the claims and allegations are essentially the same," Qualcomm asserts in its motions to transfer the California cases to this Court, "both suits would require much of the same motion practice, document discovery and deposition and in-court testimony." (Ex. A at 6; Ex. B at 6.) Not only does litigation in two fora increase the burden on all parties, but this will require two different courts to rule on the same objections and disputes that likely will arise throughout the trial and discovery process. Such a process poses an intolerable risk of inconsistent rulings. *Liebig v. Schneider Nat'l Bulk Carriers, Inc.*, No. 9204773 (AMW), 1993 U.S. Dist. LEXIS 1681, at *6 (D.N.J. Feb. 10, 1993) ("The Court is unwilling to sanction this waste of judicial

resources or to create the risk of inconsistent verdicts.").[3]

Indeed, judges in this District have held that the presence of a related action in an alternative forum can, on its own, be enough to compel transfer. In *Todd Shipyards Corp. v. Cunard Line Ltd.*, 708 F. Supp. 1440 (D.N.J. 1989), the plaintiff filed a motion to confirm an arbitration award in the Northern District of California while the defendant moved to vacate that same arbitration award in the District of New Jersey. Although the parties could make no showing that transfer would be more convenient for either party, or that either forum had a greater interest in the dispute, the court transferred the action to the Northern District of California because "private interest factors were less important than the public interest in having related disputes litigated in the same forum." *Am. Tel. & Tel. Co.*, 736 F. Supp. at 1310; *accord Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001) (the presence of related litigation in a separate fora "is powerful enough to tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite.").

### C.    Both the Private- and Public-Interest Considerations Support Transfer to the Southern District of California.

#### 1.    Private Interests Will Best Be Served in the Southern District of California

Among the private-interest factors to be considered in weighing a transfer motion are ease of access to proof, availability of compulsory process of unwilling witnesses, and ease of

---

[3] Cases do not have to be perfectly duplicative—involve the exact same claims between identical parties—for transfer to be warranted. Even when cases are related but not identical, "the interests of justice, judicial administration and economy weigh heavily in favor of transfer." *American Tel. & Tel. Co.*, 736 F. Supp. at 1312. Having related but not identical disputes "stemming from basically the same underlying facts" before a single court allows that court to realize economies in "activities such as document production, depositions and other discovery, pre-trial management, motions and trial scheduling." *Security Sav. Bank v. Green Tree Acceptance, Inc.*, 703 F. Supp. 350, 355 (D.N.J. 1989).

attendance by willing witnesses. *Am. Cyanamid Co.*, 903 F. Supp. at 787. *All* of these factors weigh in favor of transfer to the Southern District of California. In addition, Broadcom's initial choice of New Jersey as the venue for this case should be given little weight in light of several more recent changes in circumstances that now make the Southern District of California a superior venue.

Trial in California will be easier for both parties, for party witnesses, and for non-party witnesses. Both Qualcomm's and Broadcom's principal places of business are in California, with key personnel residing in southern California. Virtually all party depositions will likely take place in California.[4] Qualcomm concedes these points in its transfer motions, acknowledging that the Southern District of California "ordinarily would be a convenient venue" for it and that "there is little doubt that relevant evidence and witnesses are located in [that] [d]istrict." Ex. A at 8; Ex. B at 7. Requiring the party witnesses to travel to New Jersey to provide in-court testimony, while they must appear simultaneously in the California court, imposes a significant inconvenience on the overwhelming number of witnesses who are located in California. This court has recognized that the considerable expense of transporting witnesses to a distant jurisdiction supports transferring the case, and the same outcome should result here. *See Sec. Sav. Bank v. Green Tree Acceptance, Inc.*, 703 F. Supp. 350, 355 (D.N.J. 1989); *see also Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 534 (D.N.J. 2000)

---

[4] *See* Qualcomm Incorporated's Amended and Supplemental Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), at 2-18 (attached hereto as Exhibit C) (listing 53 Qualcomm employees with office addresses in San Diego as likely to have discoverable information and acknowledging that many relevant Qualcomm documents could be at Qualcomm's San Diego campus); Plaintiff Broadcom Corporation's Amended Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a), at 2-11, 37 (attached hereto as Exhibit D) (listing 72 present or former Broadcom or Qualcomm employees with office addresses within 100 miles of the U.S. courthouse in San Diego as likely to have discoverable information and identifying San Diego as one of the locations where relevant Broadcom documents are located).

("convenience of potential witnesses also must be balanced.").  Like the claims of the plaintiffs in the California cases, Broadcom's claims focus on the conduct of individuals based in southern California area; as "these witnesses will likely play a key role in the development of the case," this fact "tips in favor of transfer."  *Cuco v. United States*, No. 05-5347, 2007 WL 2904193, at *3 (D.N.J. Oct. 2, 2007).

The parties may lose testimony from key witnesses should the trial proceed in this Court. Some non-party witnesses, such as former Qualcomm employees, may be resistant to testifying and refuse to appear voluntarily.  Transfer would reduce the risk that a party will be unable to subpoena any non-party witnesses who reside in southern California.  *Sec. Sav. Bank, SLA*, 703 F. Supp. at 355 (because New Jersey lacked proper jurisdiction over unwilling witnesses, the fact that both parties will possibly be unable to call certain witness leans toward transfer to a jurisdiction with subpoena power).

Both the California cases and this case will require testimony about Qualcomm's participation in ETSI and other standards setting organizations; about the meaning of FRAND to Qualcomm and to standards-setting organizations; about Qualcomm's royalty rates and negotiation patterns.  Broadcom anticipates calling third-party witnesses to provide this information as well as context about the chipset market, overviews of the standard-setting practice, and Qualcomm's negotiations with licensees.  Many handset manufacturers, whose employees may provide this testimony, are Asian companies, *see* Ex. D, at 13-36 (identifying 74 Singaporean, Chinese, Japanese, Taiwanese, and Korean companies as having employees likely to possess discoverable information), and their employees will have an easier time traveling to California than to New Jersey.  Broadcom expects that the class-action plaintiffs will need to call

similar third-party witnesses to aid the court in the California actions as well. It is illogical for the witnesses to have to testify to these facts in two courts on opposite sides of the country.

Much of Qualcomm's deceptive behavior—the very behavior that generated this action— took place in or was directed from southern California. When the key activities in question took place outside the forum state, transfer is warranted. *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 (D.N.J. 1993) (holding that the fact that "neither the design nor the development nor the manufacture of the . . . products involved in this action occurred in New Jersey" supported transfer).

While Broadcom's initial choice of New Jersey as the venue for this action might normally count against transfer, changed circumstances since the return of this case from the Third Circuit eliminate the significance of that choice as a reason to retain the case in this Court.

First, one of the strongest factual links connecting this case to New Jersey has been eliminated by the Third Circuit's affirmance of this Court's dismissal of Broadcom's antitrust claim that rested on Qualcomm's acquisition of New Jersey-based Flarion Technologies.

Second, the initiation of two class actions in the Southern District of California last month that raise virtually identical allegations to this case militate in favor of consolidating all three related cases in that venue. Moreover, while this case is somewhat more advanced than the California cases, all three cases are at an early stage. Qualcomm has not yet answered. No expert discovery has occurred. Only one deposition has been taken in this case, and none has been taken in the California actions. No trial dates have been set. The document discovery that has commenced has been electronic document production that is easily transferable to California. The two new cases filed in California court thus present a new opportunity for all parties to

benefit from the economies that result when common subject matter is litigated together in a single court.

Third, while Broadcom's First Amended Complaint stated claims under the laws of numerous states, including New Jersey, all of the state-law claims in Broadcom's Second Amended Complaint are stated under California law. While this Court is of course perfectly capable of adjudicating claims under California law, the greater significance of California-law claims—both in Broadcom's Second Amended Complaint and in the three cases considered as a group—constitutes an additional factor favoring transfer to California. *See Sec. Sav. Bank SLA,* 703 F. Supp. at 354 (the presence of another state's law supports transfer to avoid "forcing a court wholly unfamiliar with that State's laws to apply the same to the instant action.").

Fourth, much of Qualcomm's deceptive behavior that gives rise to this suit occurred in or was directed from California. As reflected in allegations that appear for the first time in Broadcom's Second Amended Complaint, Broadcom has gained additional information over the past year and a half that Qualcomm's misconduct sprang from California. Qualcomm planned a campaign to intentionally manipulate and sabotage the standard setting process in its headquarters. Second Amended Complaint ¶ 8. Many of Qualcomm's licensing negotiations took place in California. California was the locale of many internal Qualcomm discussions about setting royalties in an unreasonable, unfair, and discriminatory manner, *id.* ¶¶ 7, 27, 107, false commitments to license on FRAND terms, *id.* ¶ 7, and Qualcomm's assertions that its patents are essential to comply with the relevant standards, *id.* ¶¶ 46, 103. Qualcomm has also attempted to collect royalties on items that are beyond its patented technology, *id.* ¶ 110, demanded non-reciprocal patent rights, *id.* ¶ 112, and collected double royalties by insisting

on licenses at the component and handset level, *id.* ¶ 113; *see also id.* ¶¶ 58, 61, 65, 67, 70, 103, 117, 123.

Because of these changed circumstances, this Court's initial instinct, that this case "would have been more-properly brought" in California, Dkt. 21, at 1, has now been vindicated.

### 2.    Transferring the Action to California is Also in the Public Interest

Public-interest factors governing transfer motions include the enforceability of the judgment; practical considerations that make a trial easy or expeditious; relative court congestion and administrative loads; local interest in litigating the dispute; public policies of each forum; and the trial judges' relative familiarity with the applicable law. *Jumara*, 55. F.3d at 879. These factors also indicate that the proper venue for this case is the Southern District of California.

Solely from the perspective of practicality, discovery and trial in this action will be easier at this juncture if the case is transferred to the Southern District of California and coordinated or consolidated with the recently-filed class actions. Many of the relevant witnesses, documents, and companies are based in California. *See supra* n.4. Again, Qualcomm concedes as much in its motions to transfer, acknowledging that "there is little doubt that relevant evidence and witnesses are located in" the Southern District of California. Ex. A at 8; Ex. B at 7. This action shares common questions of fact and law with the California class actions. Coordinated discovery in the state where many witnesses, relevant documents, and both companies are located would be much more efficient than having disparate discovery efforts proceed on opposite ends of the country.

California has a greater interest in the outcome of this litigation. Both companies are headquartered in California. A state has a "compelling interest in regulating the conduct of businesses in its state." *Liggett*, 102 F. Supp. 2d at 536. While both companies have ties to New

Jersey, California has a greater interest in the outcome of litigation between two companies that are crucial to the cell phone industry within California.

Finally, these cases will hardly be the Southern District of California's first foray into the complicated chipset market and the claims surrounding Qualcomm's many patents. In *LG Electronics*, this Court recognized that when the "center of gravity" surrounding a party's patent infringement claims exists in an alternate forum, that court is likely to be a "more convenient forum for the parties and a majority of the witnesses," especially when the transferee forum "already has a number of related cases pending before it and has already construed one of the patents at issue in this litigation." 138 F. Supp. 2d at 593. In the present dispute between Broadcom and Qualcomm, the Southern District of California has overseen four complicated disputes—two of which are highly relevant to this action—requiring the dissection of detailed cell-phone technology, and overseeing the two class actions will demand that the Southern District of California once again immerse itself in the same. Indeed, two of the Broadcom-Qualcomm suits adjudicated in the Southern District of California involved two of the same standard-setting bodies and technical standards that are at issue in this case. One concerned the H.264 video compression standard issued by the Joint Video Team formed by expert groups of the International Organization for Standardization, the International Electrotechnical Commission, and the International Telecommunication Union. There, Qualcomm was found to have abused the standards process and thereby waived its patent rights. The other addressed the GSM/GPRS/EDGE cell-phone standards established by ETSI.

Furthermore, a California federal court has considerable experience applying California state law and routinely adjudicates claims rooted in the same California laws that Broadcom and the class-action plaintiffs allege Qualcomm has violated. As this Court has recognized, "[a]n

important public interest factor is the desire to have the case tried before judges familiar with the applicable law." *Liggett Group, Inc.*, 102 F. Supp. 2d at 537. The Southern District of California is not just familiar with the state law and federal law applicable in this case, it is well versed in the special legal requirements of the very dispute in this case.

## IV.    CONCLUSION

For the foregoing reasons, this case should be transferred to the Southern District of California.

Respectfully submitted,


BOIES, SCHILLER & FLEXNER LLP

By:    /s  David S. Stone
       David S. Stone, Esq.
       dstone@bsfllp.com

*Counsel for Plaintiff Broadcom Corporation*


Dated:  May 16, 2008

**CERTIFICATE OF SERVICE**

I, David S. Stone, hereby certify that the foregoing Motion to Strike Affirmative Defense

and Related Allegations and to Dismiss Counterclaims, which was filed and served electronically

on May 16, 2008 on counsel for all named parties through the Court's *ECF system*, including:

William J. O'Shaughnessy, Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056

Peter T. Barbur, Esq.
Elizabeth Grayer, Esq.
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Steven J. Kaiser, Esq.
CLEARY, GOTTLEIB, STEIN & HAMILTON
200 Pennsylvania Avenue, NW
Washington, DC 20006

/s/ David S. Stone
David S. Stone, Esq.
dstone@bsfllp.com
Boies, Schiller & Flexner LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Tel: 973-218-1111
Fax: 973-218-1106
*Counsel for Plaintiff Broadcom Corporation*

- 16 -

# EXHIBIT A



1   EVAN R. CHESLER (*pro hac vice*)
    PETER T. BARBUR (*pro hac vice*)
2   ELIZABETH L. GRAYER (*pro hac vice*)
    CRAVATH, SWAINE & MOORE LLP
3   825 Eighth Avenue
    New York, NY 10019
4   Telephone: (212) 474-1000
    Facsimile: (212) 474-3700
5
    WILLIAM S. BOGGS (Bar No. 053013)
6   BRIAN A. FOSTER (Bar No. 110413)
    TIMOTHY S. BLACKFORD (Bar No. 190900)
7   DLA PIPER US LLP
    401 B Street, Suite 1700
8   San Diego, CA 92101-4297
    Telephone: (619) 699-2700
9   Facsimile: (619) 699-2701

10  Attorneys for Defendant
    QUALCOMM INCORPORATED

11

12                    UNITED STATES DISTRICT COURT

13                  SOUTHERN DISTRICT OF CALIFORNIA

14  JESSE MEYER, an individual, on his own        Case No. 08cv0655-WQH (LSP)
    behalf and on behalf of all similarly
15  situated,                                     **QUALCOMM INCORPORATED'S**
                                                  **MEMORANDUM OF POINTS AND**
16            Plaintiff,                          **AUTHORITIES IN SUPPORT OF ITS**
                                                  **MOTION TO TRANSFER**
17       v.
                                                  **NO ORAL ARGUMENT UNLESS**
18  QUALCOMM INCORPORATED, a                      **REQUESTED BY THE COURT**
    Delaware corporation,
19                                                Date:    June 2, 2008
              Defendant.                          Time:    11:00 a.m.
20                                                Judge:   Hon. William Q. Hayes

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3     I.     INTRODUCTION ...................................................................................................1

4     II.    PROCEDURAL BACKGROUND ........................................................................2

5     III.   ARGUMENT...........................................................................................................4

6            A.     Legal Standards..............................................................................................4

7            B.     Transferring this Action Would Serve the Interests of Justice. ...................5

8            C.     Transfer Is Proper Under All Other Relevant Factors. .................................7

9     IV.    CONCLUSION.......................................................................................................9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alexander v. Franklin Resources, Inc.*, No. 06-CV-7121, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007)............................................................................5, 6

*Alexander v. Franklin Resources, Inc.*, No. 06-CV-7121, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007)..................................................................................8

*Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256 (W.D. Wash. 2005) ....................................6

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) ....................................4

*Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19 (1960)....................................5

*CoxCom, Inc. v. Hybrid Patents Inc.*, No. 06-CV-7918, 2007 WL 2500982 (N.D. Cal. Aug. 30, 2007)..................................................................................8

*Cuco v. United States*, No. 05-CV-5347, 2007 WL 2904193 (D.N.J. Oct. 2, 2007)....................5

*Harris v. Stonecrest Care Auto Center, LLC*, No. 04-CV-2593, 2008 WL 474388 (S.D. Cal. Feb. 20, 2008) ....................................................................7

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000)....................................5

*London and Hull Maritime Ins. Co. v. Eagle Pacific Ins. Co.*, No. 96-CV-1512, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996)....................................5

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ....................................7

*Pacific Coast Fed. v. Gutierrez*, No. 05-CV-3232 2006 WL 194507 (N.D. Cal. Jan. 24, 2006) ....................................................................5

*Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ....................................8

*Papaleo v. Cingular Wireless Corp.*, No. 07-CV-1234, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) ....................................................................8

*Wiley v. Trendwest Resorts, Inc.*, No. 04-CV-4321, 2005 WL 1910934 (N.D. Cal. Aug. 10, 2005) ....................................................................6

## STATUTES AND RULES

15 U.S.C. § 1 *et seq.* ........................................................................2, 3, 4

15 U.S.C. § 22........................................................................5

28 U.S.C. § 1331........................................................................5

28 U.S.C. § 1391(c)........................................................................5

28 U.S.C. § 1404(a) ........................................................................passim

DLA PIPER US LLP
SAN DIEGO

SD\1817303.1

08cv0655-WQH (LSP)

Cal. Bus. & Prof. Code § 17200 *et seq.* .................................................................................2, 4, 7

Cal. Bus. & Prof. Code §§ 16720, 16726 ........................................................................................2, 7

CivLR 40.1.......................................................................................................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Qualcomm Incorporated ("Qualcomm") respectfully submits this memorandum of points

2    and authorities in support of its motion, pursuant to 28 U.S.C. § 1404(a), for an order transferring

3    this action to the United States District Court for the District of New Jersey, in which an earlier-

4    filed, related action is currently pending.

5    **I.    INTRODUCTION**

6    Transfer of this action is proper under 28 U.S.C. § 1404(a) to prevent the needless

7    duplication of time, cost and judicial resources associated with maintaining the present action

8    alongside a largely identical action currently pending in the District of New Jersey. Plaintiff has

9    brought this action on the basis of allegations against Qualcomm that apparently have been lifted

10   wholesale from a complaint filed by Broadcom Corporation, a Qualcomm competitor, in the

11   action captioned *Broadcom Corp. v. Qualcomm Inc.*, No. 05-CV-3350 (D.N.J.) (hereinafter the

12   "NJ Action"). As Plaintiff stated in his recent Notice of Potentially Related Cases, "[t]he current

13   case is a class action that arises out of the same facts and circumstances that gave rise to the

14   Broadcom [NJ] suit and asserts similar claims". (Dkt. 3, at 3.) Like the present action, the NJ

15   Action is an antitrust suit accusing Qualcomm of alleged anticompetitive conduct in the markets

16   for so-called "third generation" or "3G" cellular technology, including allegedly "unfair" and

17   "discriminatory" licensing practices.[1]

18   Under these circumstances, transfer in favor of the earlier-filed, related case is appropriate

19   for at least three reasons. *First*, it would make no sense for this Court to duplicate the substantial

20   judicial effort that already has been expended in New Jersey to clarify the relevant legal issues,

21   define the scope of discovery and move the NJ Action towards trial. *Second*, given the extensive

22   overlap between the two complaints, transferring this action to the District of New Jersey would

23   help avoid duplicative discovery, inconsistent deadlines and conflicting rulings on identical

24   issues. *Third*, transfer would be convenient for the parties, in particular for Qualcomm, which

25   
---

26   [1] Plaintiff's action is also virtually identical to another putative class action filed on April 18,
2008, in San Diego, California Superior Court under the caption *Valikhani v. Qualcomm Inc.*, No.
27   37-2008-00082231-CU-AT-CTL (Cal. Super. Ct.) (hereinafter the "Valikhani Action"). On April
30, 2008, Qualcomm removed the Valikhani Action to this Court under the case number 08-CV-
28   0786. As it has with the present action, Qualcomm intends to file a motion to transfer the
Valikhani Action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

1   otherwise would have to litigate parallel actions simultaneously on two sides of the country, and

2   for the witnesses, who otherwise might be forced to appear for multiple depositions and attend

3   two different forums for court proceedings.  These factors outweigh Plaintiff's choice of forum,

4   which in any event is entitled to little weight where, as here, Plaintiff purports to represent a

5   nationwide class of consumers.

6   **II.    PROCEDURAL BACKGROUND**

7          Plaintiff filed this action on April 10, 2008, on behalf of a putative class consisting of all

8   persons who (1) purchased cellular devices containing "the Wide Band Code Division Multiple

9   Access ('WCDMA') technology or that are compatible with the Universal Mobile

10  Telecommunications System ('UMTS') standard"; or (2) "purchased cellular service from any

11  carrier in the United States which bundles its cellular service with subsidized UMTS-compliant

12  devices".  (Pl.'s Compl. (hereinafter "Meyer Compl.") ¶ 1.)  Plaintiff's complaint asserts claims

13  for violation of the Sherman Act, 15 U.S.C. § 1, California's Cartwright Act, Cal. Bus. Prof.

14  Code §§ 16720, 16726, and California's Unfair Competition Law, Cal. Bus. Prof. Code § 17200.

15  To date, the only activity in this action has been service of the summons and complaint, notices of

16  related case filed by both parties (listing the NJ Action among others as related), and the present

17  motion.

18         The allegations in Plaintiff's complaint appear to have been taken almost word-for-word

19  from Broadcom's Second Amended Complaint in the NJ Action filed in November 2007.  As

20  Plaintiff here alleges, his complaint purportedly "arises from [Qualcomm's] illegal and

21  anticompetitive conduct in the markets for the technology and chipsets that operate cell phones

22  employing WCDMA, a third generation ('3G') technology that is implemented through the

23  UMTS standard".  (Meyer Compl. ¶ 2.)  Similarly, in the NJ Action, Broadcom's theory of the

24  case is that "Qualcomm has systematically undermined competition in markets for technology

25  and integrated circuit chips used in mobile wireless devices".  (Loft Decl., Ex. 1 (hereinafter "NJ

26  Second Am. Compl.") ¶ 4.)  As in the NJ action, Plaintiff here alleges that Qualcomm deceived a

27  private standards-development organization ("SDO") known as "ETSI" (the European

28  Telecommunications Standards Institute) into choosing to incorporate Qualcomm's proprietary

1   technology within the UMTS standard.  (Meyer Compl. ¶¶ 3, 42; NJ Second Am. Compl. ¶¶ 7,

2   96.)  Both complaints allege that Qualcomm originally had represented to ETSI that it would

3   license its proprietary technology on fair, reasonable and non-discriminatory terms (so-called

4   "FRAND terms"), but that, after adoption of the UMTS standard by industry participants,

5   Qualcomm then allegedly disregarded those FRAND commitments and offered customers

6   licenses on allegedly non-FRAND terms.  (Meyer Compl. ¶¶ 3, 5; NJ Second Am. Compl. ¶¶ 6-

7   7.)

8            Specifically, both complaints accuse Qualcomm of exactly the same allegedly non-

9   FRAND licensing practices, including:

10  •    Allegedly discriminating among licensees of the essential WCDMA technology by

11       charging more and higher fees to those who do not use Qualcomm's UMTS

12       chipsets (Meyer Compl. ¶¶ 50-55; NJ Second Am. Compl. ¶¶ 125-32);

13  •    Allegedly demanding royalties on parts of UMTS chipsets for which it did not

14       own patents (Meyer Compl. ¶ 58; NJ Second Am. Compl. ¶ 110);

15  •    Allegedly demanding that UMTS licensees grant back to Qualcomm licenses for

16       their own proprietary technologies on terms much more favorable to Qualcomm

17       (Meyer Compl. ¶ 63; NJ Second Am. Compl. ¶ 112);

18  •    Allegedly charging double royalties to UMTS cell phone manufacturers who use

19       non-Qualcomm UMTS chipsets (Meyer Compl. ¶¶ 55-57; NJ Second Am. Compl.

20       ¶¶ 113-20);

21  •    Allegedly discouraging price competition by demanding sensitive sales and pricing

22       information from its UMTS chipset licensees (Meyer Compl. ¶ 64; NJ Second Am.

23       Compl. ¶ 123); and

24  •    Allegedly providing discounts, incentives, and payments to cell phone

25       manufacturers who use only Qualcomm UMTS chipsets (Meyer Compl. ¶ 65; NJ

26       Second Am. Compl. ¶¶ 69, 125).

27  On the basis of these and other allegations, the complaints in both actions assert causes of action

28  under the federal Sherman Act, 15 U.S.C. § 1 *et seq.*, and under California's Unfair Competition

1    Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (Meyer Compl. ¶¶ 104-24, 130-34; NJ Second Am.

2    Compl. ¶¶ 275-88; 318-29.)

3         In September 2007, the United States Court of Appeals for the Third Circuit partially

4    reversed an order dismissing Broadcom's First Amended Complaint in the NJ Action, reinstating

5    two of Broadcom's claims under Section 2 of the Sherman Act and additionally allowing

6    Broadcom the opportunity to re-file its state law claims. *See Broadcom Corp. v. Qualcomm Inc.*,

7    501 F.3d 297 (3d Cir. 2007). Prior to the dismissal in August 2006, the parties had exchanged

8    various discovery requests and had begun rolling productions of documents, one witness had been

9    deposed and various third parties were served with subpoenas pursuant to Federal Rule of Civil

10   Procedure 45. (Loft Decl. ¶¶ 7, 13-14.) While Broadcom's appeal was pending in the Third

11   Circuit, however, no discovery took place.

12        Subsequent to the Third Circuit's remand, Broadcom filed its Second Amended

13   Complaint in November 2007, adding new state law causes of action and new theories of liability.

14   (Loft Decl. ¶ 6; *id.*, Ex. 1.) Discovery has since recommenced in the NJ Action. The parties

15   have served new document requests and recently have received guidance from the Court

16   concerning the scope of this "second wave" discovery. (*Id.* ¶ 9.) Documents to be produced in

17   this "second wave", however, have not yet been collected or produced. (*Id.* ¶ 8.) Since the filing

18   of Broadcom's Second Amended Complaint, the parties also have exchanged amended

19   disclosures pursuant to Federal Rule of Procedure 26, listing employees and third parties with

20   potentially discoverable information. (*Id.* ¶¶ 10-11.) Certain third parties to the action have been

21   served with discovery subpoenas pursuant to Rule 45. (*Id.* ¶ 14.) No additional depositions have

22   taken place or been scheduled, and the Court has allotted 40 depositions to each side. (*Id.* ¶13;

23   *id.*, Ex. 6.)

24   **III.    ARGUMENT**

25        **A.    Legal Standards**

26             Under 28 U.S.C. § 1404(a), a case may be transferred "[f]or the convenience of the parties

27   and witnesses, in the interest of justice", to "any other district or division where the action might

28

1   have been brought".[2]  In *Continental Grain Co. v. Barge F.B.L.-585*, the Supreme Court held that

2   "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously

3   pending in different District Courts leads to the wastefulness of time, energy and money that

4   § 1404(a) was designed to prevent".  364 U.S. 19, 26 (1960).  In reliance on *Continental Grain*,

5   courts within the Ninth Circuit have held consistently that "the pendency of a similar action in the

6   transferee court is a universally recognized reason for granting a change of venue".  *Pac. Coast*

7   *Fed'n v. Gutierrez*, No. 05-CV-3232, 2006 WL 194507, at *2 (N.D. Cal. Jan. 24, 2006); *see also*,

8   *e.g., Cuco v. United States*, No. 05-CV-5347, 2007 WL 2904193, at *4 (D.N.J. Oct. 2, 2007)

9   ("The presence of a related case in the transferee forum is a powerful reason to grant a change of

10  venue." (internal quotation marks omitted)).  Further, this "'interests of justice' consideration is

11  the most important factor a court must consider, and may be decisive in a transfer motion even

12  when all other factors point the other way".  *London and Hull Maritime Ins. Co. v. Eagle Pac.*

13  *Ins. Co.*, No. 96-CV-1512, 1996 WL 479013, at *3 (N.D. Cal. Aug. 14, 1996).

14          Other factors considered by courts in determining whether a case should be transferred

15  under § 1404(a) include: "(1) plaintiff's choice of forum, (2) convenience of the parties,

16  (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum

17  with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in

18  the controversy, and (8) the relative court congestion and time of trial in each forum."  *Alexander*

19  *v. Franklin Res., Inc.*, No. 06-CV-7121, 2007 WL 518859, at *2 (N.D. Cal. Feb. 14, 2007); *see*

20  *also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (same).

21          **B.      Transferring this Action Would Serve the Interests of Justice.**

22          As Plaintiff concedes in his notice of related case (Dkt. 3), his action overlaps

23  substantially, if not completely, with the NJ Action.  *See Amazon.com v. Cendant Corp.*, 404

---

24  [2] It is indisputable that this action could have been brought initially in the District of New Jersey.
    Subject-matter jurisdiction would have existed under 28 U.S.C. § 1331, as this case involves
25  claims arising under the federal antitrust laws.  Qualcomm transacts and is registered to do
    business in, receives process in, and is found within the District of New Jersey, and is therefore
26  subject to personal jurisdiction there to the same extent as it is subject to personal jurisdiction in
    this district.  Finally, venue would have been proper in the District of New Jersey under Section
27  12 of the Clayton Act, 15 U.S.C. § 22, and under the federal venue statute, 28 U.S.C. § 1391(c),
    pursuant to which "a corporation shall be deemed to reside in any judicial district in which it is
28  subject to personal jurisdiction".

-5-

1    F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) ("[I]t is inconsistent for plaintiffs to argue that the

2    cases are not similar when it was [plaintiffs] who filed a 'notice of related case'."). The similarity

3    is borne out by a simple comparison of the complaints, both of which, as discussed above, allege

4    the same theory of anticompetitive conduct, accuse Qualcomm of the same allegedly non-

5    FRAND licensing practices and assert similar causes of action under the same state and federal

6    antitrust laws. (*See supra* 2-3.)

7         In cases with this much factual and legal similarity, courts routinely transfer the later-filed

8    action to the district in which the earlier case is pending. *See Alexander*, 2007 WL 518859, at *3

9    (transferring in favor of an earlier-filed action "because it [was] apparent that regardless of the

10   true nature of plaintiff's claims, the instant claims and the New Jersey claims ar[o]se out of the

11   same factual predicate"); *Wiley v. Trendwest Resorts, Inc.*, No. 04-CV-4321, 2005 WL 1910934,

12   at *4 (N.D. Cal. Aug. 10, 2005) ("[T]he allegations supporting the California Complaint's

13   § 17200 claim have been reproduced verbatim in the Nevada Complaint . . . ."). Transfer, in

14   these situations, is necessary to serve the interests of "judicial economy", because it allows parties

15   to resolve all differences in a single forum, avoids conflicting decisions by different courts and

16   saves substantial judicial resources. *Bomanite Corp. v. Newlook Int'l, Inc.*, No. 07-CV-1640,

17   2008 WL 1767037, at *11 (E.D. Cal. Apr. 16, 2008).

18        Given the substantial overlap between the Meyer Action and the earlier-filed NJ Action, it

19   would be an unnecessary waste of time, money and judicial resources to maintain these two

20   actions in different forums simultaneously. Because the claims and allegations are essentially the

21   same, both suits would require much of the same motion practice, document discovery and

22   deposition and in-court testimony. Indeed, substantial resources are currently being expended

23   toward these ends in the NJ Action, including the production of millions of pages of documents

24   and rulings on numerous discovery issues. This Court would needlessly duplicate these efforts—

25   at great time and expense—if it separately maintains this action in the Southern District of

26   California.

27        This analysis is not altered by the Plaintiff's citation in his Notice of Potentially Related

28   Cases to two other cases filed in this District as being supposedly "related" to the present

1  action—*Qualcomm Inc. v. Broadcom Corp.*, No. 05-CV-1392 (S.D. Cal.) ("1392"); and

2  *Qualcomm Inc. v. Broadcom Corp.*, No. 05-CV-1958 (S.D. Cal.) ("1958"). Both of these actions

3  have been resolved on the merits and are, in any event, patent infringement actions that are far

4  less similar to the present action than the NJ Action. The 1392 case, assigned to the Honorable

5  Rudi M. Brewster, was settled and voluntarily dismissed in March 2007. In the 1958 case—also

6  assigned to Judge Brewster—the district court has decided the merits, and an appeal has been

7  fully briefed and currently is pending in the Federal Circuit. Neither action involved any claim

8  under the federal antitrust laws or under California's Cartwright Act or Unfair Competition

9  statute. Plaintiff's Notice of Potentially Related Cases, which glossed over these differences,

10  caused the clerk of the court to issue a report and proposed order transferring this action to Judge

11  Brewster pursuant to the "low number rule". *See* CivLR 40.1.[3] Judge Brewster, however, has

12  declined such an order (Dkt. 7). *See also Harris v. Stonecrest Care Auto Center, LLC*, No. 04-

13  CV-2593, 2008 WL 474388, at *1 (S.D. Cal. Feb. 20, 2008) (finding transfer inappropriate under

14  Local Rule 40.1(d) because the complaints involved different plaintiffs and arose from different

15  facts). The 1392 and 1958 cases therefore have no bearing on the transfer analysis.

16      **C.**    **Transfer Is Proper Under All Other Relevant Factors.**

17      The remaining § 1404(a) factors are neutral or favor transfer to the District of New Jersey.

18  These other considerations include (1) plaintiff's choice of forum, (2) convenience of the parties,

19  and (3) convenience of the witnesses.

20      *First*, Plaintiff's choice of forum carries far less weight than it ordinarily would because

21  he seeks to proceed on behalf of a nationwide class of consumers. *See Lou v. Belzberg*,

22  834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual brings a derivative suit or represents a

23  class, the named plaintiff's choice of forum is given less weight."). Plaintiff's chosen venue

24  therefore deserves no more deference than the home venues of any other potential class members,

25  some of whom presumably reside in the District of New Jersey. *Alexander*, 2007 WL 518859, at

26  *3 ("[P]laintiffs' choice of forum is less significant where the plaintiff purports to represent a

27  [3] The "low number rule" requires the clerk of court to prepare a report and proposed order
transferring a related action filed within this District "to the district and magistrate judge to whom

28  the lowest numbered case was assigned". CivLR 40.1(h).

-7-

1    nationwide class.").

2    *Second*, with respect to the convenience of the parties, it certainly would be more

3    convenient for Qualcomm to litigate in a single district, rather than simultaneously in two

4    different districts on two sides of the country. *See id.* ("[A]ppearing in a single district is more

5    convenient than appearing in two different districts on opposite coasts of the country."). To be

6    sure, San Diego, California—Qualcomm's principal place of business—ordinarily would be a

7    convenient venue for Qualcomm, and there is little doubt that relevant evidence and witnesses are

8    located in this District. Plaintiff's allegations, however, range far more broadly than Qualcomm's

9    actions within the Southern District of California, in particular those allegations concerning

10   "global" wireless markets, Qualcomm's conduct before the ETSI, a European SDO, and

11   Qualcomm's licensing of counterparties all over the world. (*See* Meyer Compl. ¶¶ 20, 68.) As

12   the Ninth Circuit has held, "the location of the evidence . . . is no longer weighed heavily given

13   the modern advances in communication and transportation". *Panavision Int'l L.P. v. Toeppen*,

14   141 F.3d 1316, 1323 (9th Cir. 1998). Indeed, the principal "convenience" consideration here is

15   having related cases litigated in one forum rather than two, and this factor far outweighs any

16   convenience associated with litigating in the Southern District of California.

17   *Third*, transfer would also be more convenient because a single court would be

18   empowered to help prevent witnesses from having to submit to two different depositions and

19   from having to travel to two different forums to attend court proceedings. *CoxCom, Inc. v.*

20   *Hybrid Patents Inc.*, No. 06-CV-7918, 2007 WL 2500982, at *2 (N.D. Cal. Aug. 30, 2007)

21   ("[T]he Court finds transfer would be substantially more convenient for each such witness, even

22   those who reside in California, because such witnesses would not be required to engage in

23   duplicative litigation or travel to two different forums to attend court proceedings."). This

24   consideration is especially significant for the potentially large number of third-party witnesses

25   likely to testify in these actions (*see* Loft Decl., Exs. 3-5 (disclosing third parties pursuant to

26   Federal Rule of Civil Procedure 26)). *Papaleo v. Cingular Wireless Corp.*, No. 07-CV-1234,

27   2007 WL 1238713, at *2 (N.D. Cal. Apr. 26, 2007) ("[W]ith respect to the convenience of third-

28   party witnesses, which often is the most significant factor, the Court finds transfer would be

1  substantially more convenient for each such witness, because such witnesses would not be

2  required to engage in duplicative litigation or travel to two different forums to attend court

3  proceedings.").

4          On balance, the relevant § 1404(a) considerations weigh decisively in favor of

5  transferring this action to the District of New Jersey.

6  **IV.    CONCLUSION**

7          For the foregoing reasons, Qualcomm respectfully asks this Court to grant Qualcomm's

8  motion to transfer pursuant to 28 U.S.C. § 1404(a).

9

10  Dated: May 1, 2008                      DLA PIPER US LLP

11                                           By /s/ William S. Boggs

12                                              william.boggs@dlapiper.com

13                                           CRAVATH, SWAINE & MOORE LLP
                                             Evan R. Chesler
14                                           Peter T. Barbur
                                             Elizabeth L. Grayer
15
16                                           Attorneys for Defendant
                                             QUALCOMM INCORPORATED
17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1817303.1

-9-

08cv0655-WQH (LSP)

# EXHIBIT B



EVAN R. CHESLER (*pro hac vice* to be filed)
PETER T. BARBUR (*pro hac vice* to be filed)
ELIZABETH L. GRAYER (*pro hac vice* to be filed)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: 212.474.1000
Facsimile: 212.474.3700

WILLIAM S. BOGGS (Bar No. 053013)
BRIAN A. FOSTER (Bar No. 110413)
TIMOTHY S. BLACKFORD (Bar No. 190900)
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: 619.699.2700
Facsimile: 619.699.2701

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERDAD VALIKHANI, an individual, on behalf of himself, the general public and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation, and DOES 1-100,<br><br>        Defendants. | CASE NO. 08 cv 0786 WQH (JMA)<br><br>**QUALCOMM INCORPORATED'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Date:    June 2, 2008<br>Time:   11:00 a.m.<br>Judge:  Hon. William Q. Hayes |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................................... 1

II.   PROCEDURAL BACKGROUND ........................................................................... 2

III.  ARGUMENT .............................................................................................................. 4

      A.    Legal Standards.................................................................................................. 4

      B.    Transferring this Action Would Serve the Interests of Justice ................... 6

      C.    Transfer Is Proper Under All Other Relevant Factors ............................... 7

IV.   CONCLUSION ........................................................................................................... 8

DLA PIPER US LLP
SAN DIEGO

-i-

1

## TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4
*Alexander v. Franklin Res., Inc.,*
    No. 06-CV-7121, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ..................................5, 6, 7

5

*Bomanite Corp. v. Newlook Int'l., Inc.,*
6
    No. 07-CV-1640, 2008 WL 1767037 (E.D. Cal. Apr. 16, 2008) ................................6

7
*Broadcom Corp. v. Qualcomm Inc.,*
    501 F.3d 297 (3d Cir. 2007) ....................................................................4
8

*Broadcom Corp. v. Qualcomm Inc.,*
9
    No. 05-CV-3350 (D.N.J.) ....................................................................1

10
*Continental Grain Co. v. Barge F.B.L.-585* ....................................................5
    364 U.S. 19 (196)
11

*CoxCom, Inc. v. Hybrid Patents Inc.,*
12
    No. 06-CV-7918, 2007 WL 2500982 (N.D. Cal. Aug. 30, 2007) ...........................8

13
*Cuco v. United States,*
    No. 05-CV-5347, 2007 WL 2904193 (D.N.J. Oct. 2, 2007) ................................5
14

*Jones v. GNC Franchising, Inc.,*
15
    211 F.3d 495 (9th Cir. 2000) .................................................................5

16
*London and Hull Maritime Ins. Co. v. Eagle Pac. Ins. Co.,*
    No. 96-CV-1512, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996.) ...........................5
17

*Lou v. Belzberg,*
18
    834 F.2d 730 (9th Cir. 1987) .................................................................7

19
*Meyer v. Qualcomm, Inc.,*
    No. 08-CV-655 (S.D. Cal. Apr. 10, 2008)..................................................1
20

*Pac. Coast Fed'n v. Gutierrez,*
21
    No. 05-CV-3232, 2006 WL 194507 (N.D. Cal. Jan. 24, 2006)............................5

22
*Panavision Int'l L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998) ...............................................................7
23

*Papaleo v. Cingular Wireless Corp.,*
24
    No. 07-C 2007, WL 1238713 (N.D. Cal. Apr. 26, 2007)..................................8

25
*Wiley v. Trendwest Resorts, Inc.,*
    No. 04-CV-4321, 2005 WL 1910934 (N.D. Cal. Aug. 10, 2005) .........................6

26

27

28

# TABLE OF AUTHORITIES
**(continued)**

Page

## STATUTES

28 U.S.C. §§ 1332(d)(2) ...................................................................................2, 5

28 U.S.C. § 1391(c) .............................................................................................5

28 U.S.C. § 1404(a) ...............................................................................1, 4, 5, 7, 8

28 U.S.C. § 1441(a) .............................................................................................2

Fed. R. Civ. P. 26 .............................................................................................4, 8

Fed. R. Civ. P. 45 .............................................................................................4

## MISCELLANEOUS

Cal. Bus. Prof. Code §§ 16720, 16726 .................................................................2

Cal. Bus. & Prof. Code § 17200 *et seq* ...........................................................2, 3

DLA PIPER US LLP
SAN DIEGO

1    Qualcomm Incorporated ("Qualcomm") respectfully submits this memorandum of points

2  and authorities in support of its motion, pursuant to 28 U.S.C. § 1404(a), for an order transferring

3  this action to the United States District Court for the District of New Jersey, in which an earlier-

4  filed, related action is currently pending.

5  **I.    INTRODUCTION**

6    Transfer of this action is proper under 28 U.S.C. § 1404(a) to prevent the needless

7  duplication of time, cost and judicial resources associated with maintaining the present action

8  alongside a largely identical action currently pending in the District of New Jersey.  Plaintiff has

9  brought this action on the basis of allegations against Qualcomm that apparently have been lifted

10  wholesale from a complaint filed by Broadcom Corporation, a Qualcomm competitor, in the

11  action captioned *Broadcom Corp. v. Qualcomm Inc.*, No. 05-CV-3350 (D.N.J.) (hereinafter the

12  "NJ Action").  Like the present action, the NJ Action is an antitrust suit accusing Qualcomm of

13  alleged anticompetitive conduct in the markets for so-called "third generation" or "3G" cellular

14  technology, including allegedly "unfair" and "discriminatory" licensing practices.[1]

15    Under these circumstances, transfer in favor of the earlier-filed, related case is appropriate

16  for at least three reasons. *First*, it would make no sense for this Court to duplicate the substantial

17  judicial effort that already has been expended in New Jersey to clarify the relevant legal issues,

18  define the scope of discovery and move the NJ Action towards trial. *Second*, given the extensive

19  overlap between the two complaints, transferring this action to the District of New Jersey would

20  help avoid duplicative discovery, inconsistent deadlines and conflicting rulings on identical

21  issues. *Third*, transfer would be convenient for the parties, in particular for Qualcomm, which

22  otherwise would have to litigate parallel actions simultaneously on two sides of the country, and

23  for the witnesses, who otherwise might be forced to appear for multiple depositions and attend

24

25    [1] Plaintiff's action also is a virtual carbon copy of another putative class action filed in this
Court on April 10, 2008 under the caption *Meyer v. Qualcomm, Inc.*, No. 08-CV-655 (S.D. Cal.,

26  Apr. 10, 2008) (hereinafter the "Meyer Action").  For the same reasons as it is filing the present
motion, Qualcomm has filed a motion to transfer the Meyer Action to the District of New Jersey

27  pursuant to 28 U.S.C. § 1404(a).  Qualcomm respectfully requests that the Court consider the
present motion together with its motion directed at the Meyer Action.

28

1   two different forums for court proceedings. These factors outweigh Plaintiff's choice of forum,

2   which in any event is entitled to little weight where, as here, Plaintiff purports to represent a

3   nationwide class of consumers.

4   **II.    PROCEDURAL BACKGROUND**

5         On April 18, 2008, Plaintiff filed a complaint in San Diego, California Superior Court on

6   behalf of a putative class consisting of all persons who (1) purchased cellular devices containing

7   "the Wide Band Code Division Multiple Access ('WCDMA') technology or that are compatible

8   with the Universal Mobile Telecommunications System ('UMTS') standard"; or (2) "purchased

9   cellular service from any carrier in the United States which bundles its cellular service with

10  subsidized UMTS-compliant devices". (Plaintiff's Complaint (hereinafter "Valikhani Compl.")

11  ¶ 1 at Blackford Decl., Ex. 7.) Plaintiff's complaint asserts claims for violation of California's

12  Cartwright Act, Cal. Bus. Prof. Code §§ 16720, 16726, and California's Unfair Competition Law,

13  Cal. Bus. Prof. Code § 17200. (Valikhani Compl. ¶¶ 106-115.) On April 30, 2008, Qualcomm

14  filed a notice of removal (Dkt. 1), removing Plaintiff's state court action to this Court on the basis

15  of 28 U.S.C. §§ 1332(d)(2) and 1441(a).

16        The allegations in Plaintiff's complaint appear to have been taken almost word-for-word

17  from Broadcom's Second Amended Complaint in the NJ Action filed in November 2007. As

18  Plaintiff here alleges, his complaint purportedly "arises from [Qualcomm's] illegal and

19  anticompetitive conduct in the markets for the technology and chipsets that operate cell phones

20  employing WCDMA, a third generation ('3G') technology that is implemented through the

21  UMTS standard". (Valikhani Compl. ¶ 2.) Similarly, in the NJ Action, Broadcom's theory of the

22  case is that "Qualcomm has systematically undermined competition in markets for technology

23  and integrated circuit chips used in mobile wireless devices". (Blackford Decl., Ex. 1 (hereinafter

24  "NJ Second Am. Compl.") ¶ 4.) As in the NJ action, Plaintiff here alleges that Qualcomm

25  deceived a private standards-development organization ("SDO") known as "ETSI" (the European

26  Telecommunications Standards Institute) into choosing to incorporate Qualcomm's proprietary

27  technology within the UMTS standard. (Valikhani Compl. ¶¶ 3, 44; NJ Second Am. Compl. ¶¶ 7,

28  96.) Both complaints allege that Qualcomm originally had represented to ETSI that it would

1   license its proprietary technology on fair, reasonable and non-discriminatory terms (so-called

2   "FRAND terms"), but that, after adoption of the UMTS standard by industry participants,

3   Qualcomm then allegedly disregarded those FRAND commitments and offered customers

4   licenses on allegedly non-FRAND terms.  (Valikhani Compl. ¶¶ 3, 42, 45; NJ Second Am.

5   Compl. ¶¶ 6-7.)

6           Specifically, both complaints accuse Qualcomm of exactly the same allegedly non-

7   FRAND licensing practices, including:

8   •   Allegedly discriminating among licensees of the essential WCDMA technology by

9           charging more and higher fees to those who do not use Qualcomm's UMTS

10          chipsets (Valikhani Compl. ¶¶ 52-56; NJ Second Am. Compl. ¶¶ 125-32);

11  •   Allegedly demanding royalties on parts of UMTS chipsets for which it did not

12          own patents (Valikhani Compl. ¶ 60; NJ Second Am. Compl. ¶ 110);

13  •   Allegedly demanding that UMTS licensees grant back to Qualcomm licenses for

14          their own proprietary technologies on terms much more favorable to Qualcomm

15          (Valikhani Compl. ¶ 65; NJ Second Am. Compl. ¶ 112);

16  •   Allegedly charging double royalties to UMTS cell phone manufacturers who use

17          non-Qualcomm UMTS chipsets (Valikhani Compl. ¶¶ 57-59; NJ Second Am.

18          Compl. ¶¶ 113-20);

19  •   Allegedly discouraging price competition by demanding sensitive sales and pricing

20          information from its UMTS chipset licensees (Valikhani Compl. ¶ 66; NJ Second

21          Am. Compl. ¶ 123); and

22  •   Allegedly providing discounts, incentives, and payments to cell phone

23          manufacturers who use only Qualcomm UMTS chipsets (Valikhani Compl. ¶ 67;

24          NJ Second Am. Compl. ¶¶ 69-125).

25  On the basis of these and other allegations, the complaints in both actions assert causes of action

26  under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*  (Valikhani

27  Compl. ¶¶ 106-115; NJ Second Am. Compl. ¶¶ 318-29.)

28  /////

1    In September 2007, the United States Court of Appeals for the Third Circuit partially

2    reversed an order dismissing Broadcom's First Amended Complaint in the NJ Action, reinstating

3    two of Broadcom's claims under Section 2 of the Sherman Act and additionally allowing

4    Broadcom the opportunity to re-file its state law claims. *See Broadcom Corp. v. Qualcomm Inc.*,

5    501 F.3d 297 (3d Cir. 2007).  Prior to the dismissal in August 2006, the parties had exchanged

6    various discovery requests and had begun rolling productions of documents, one witness had been

7    deposed and various third parties were served with subpoenas pursuant to Federal Rule of Civil

8    Procedure 45.  (Blackford Decl. ¶¶ 7, 13-14.)  While Broadcom's appeal was pending in the Third

9    Circuit, however, no discovery took place.

10    Subsequent to the Third Circuit's remand, Broadcom filed its Second Amended

11    Complaint in November 2007, adding new state law causes of action and new theories of liability.

12    (Blackford. Decl. ¶ 6; *id.*, Ex. 1.)  Discovery has since recommenced in the NJ Action.  The

13    parties have served new document requests and recently have received guidance from the Court

14    concerning the scope of this "second wave" discovery.  (*Id.* ¶ 9.)  Documents to be produced in

15    this "second wave", however, have not yet been collected or produced.  (*Id.* ¶ 8.)  Since the filing

16    of Broadcom's Second Amended Complaint, the parties also have exchanged amended

17    disclosures pursuant to Federal Rule of Procedure 26, listing employees and third parties with

18    potentially discoverable information.  (*Id.* ¶¶ 10-11.)  Certain third parties to the action have been

19    served with discovery subpoenas pursuant to Rule 45.  (*Id.* ¶ 14.)  No additional depositions have

20    taken place or been scheduled, and the Court has allotted 40 depositions to each side.  (*Id.* ¶ 13;

21    *id.*, Ex. 6.)

22    **III.    ARGUMENT**

23    **A.    Legal Standards**

24    Under 28 U.S.C. § 1404(a), a case may be transferred "[f]or the convenience of the parties

25    and witnesses, in the interest of justice", to "any other district or division where the action might

26    /////

27    /////

28    /////

1    have been brought".[2]  In *Continental Grain Co. v. Barge F.B.L.-585*, the Supreme Court held that

2    "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously

3    pending in different District Courts leads to the wastefulness of time, energy and money that

4    § 1404(a) was designed to prevent".  364 U.S. 19, 26 (1960).  In reliance on *Continental Grain*,

5    courts within the Ninth Circuit have held consistently that "the pendency of a similar action in the

6    transferee court is a universally recognized reason for granting a change of venue".  *Pac. Coast*

7    *Fed'n v. Gutierrez*, No. 05-CV-3232, 2006 WL 194507, at *2 (N.D. Cal. Jan. 24, 2006); *see also,*

8    *e.g., Cuco v. United States*, No. 05-CV-5347, 2007 WL 2904193, at *4 (D.N.J. Oct. 2, 2007)

9    ("The presence of a related case in the transferee forum is a powerful reason to grant a change of

10   venue." (internal quotation marks omitted)).  Further, this "'interests of justice' consideration is

11   the most important factor a court must consider, and may be decisive in a transfer motion even

12   when all other factors point the other way".  *London and Hull Maritime Ins. Co. v. Eagle Pac.*

13   *Ins. Co.*, No. 96-CV-1512, 1996 WL 479013, at *3 (N.D. Cal. Aug. 14, 1996).  Other factors

14   considered by courts in determining whether a case should be transferred under § 1404(a)

15   include: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the

16   witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable

17   law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy,

18   and (8) the relative court congestion and time of trial in each forum." *Alexander v. Franklin Res.,*

19   *Inc.*, No. 06-CV-7121, 2007 WL 518859, at *2 (N.D. Cal. Feb. 14, 2007); *see also Jones v. GNC*

20   *Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (same).

21

22

---

23   [2] This action could have been brought initially in the District of New Jersey.  As
     Qualcomm's remand notice makes clear (Dkt. 1), subject-matter jurisdiction would have existed
24   under 28 U.S.C. § 1332(d)(2) because the matter in controversy is a putative class action on
     behalf of a nationwide class of consumers, one of whom must be a citizen of a state different from
25   defendant and the amount in controversy certainly exceeds $5 million.  Qualcomm transacts and
     is registered to do business in, receives process in, and is found within the District of New Jersey,
26   and is therefore subject to personal jurisdiction there to the same extent as it is subject to personal
     jurisdiction in this district.  Finally, venue would have been proper in the District of New Jersey
27   under the federal venue statute, 28 U.S.C. § 1391(c), pursuant to which "a corporation shall be
     deemed to reside in any judicial district in which it is subject to personal jurisdiction".
28

1    **B.    Transferring this Action Would Serve the Interests of Justice.**

2    Plaintiff's action overlaps substantially, if not completely, with the NJ Action.  The

3    similarity is borne out by a simple comparison of the complaints, both of which, as discussed

4    above, allege the same theory of anticompetitive conduct, accuse Qualcomm of the same

5    allegedly non-FRAND licensing practices and assert similar causes of action under California's

6    Unfair Competition Law.  (*See supra* 2-3.)

7    In cases with this much factual and legal similarity, courts routinely transfer the later-filed

8    action to the district in which the earlier case is pending. *See Alexander*, 2007 WL 518859, at *3

9    (transferring in favor of an earlier-filed action "because it [was] apparent that regardless of the

10    true nature of plaintiff's claims, the instant claims and the New Jersey claims ar[o]se out of the

11    same factual predicate"); *Wiley v. Trendwest Resorts, Inc.*, No. 04-CV-4321, 2005 WL 1910934,

12    at *4 (N.D. Cal. Aug. 10, 2005) ("[T]he allegations supporting the California Complaint's

13    § 17200 claim have been reproduced verbatim in the Nevada Complaint . . . .").  Transfer, in

14    these situations, is necessary to serve the interests of "judicial economy", because it allows parties

15    to resolve all differences in a single forum, avoids conflicting decisions by different courts and

16    saves substantial judicial resources. *Bomanite Corp. v. Newlook Int'l., Inc.*, No. 07-CV-1640,

17    2008 WL 1767037, at *11 (E.D. Cal. Apr. 16, 2008).

18    Given the substantial overlap between the present action and the earlier-filed NJ Action, it

19    would be an unnecessary waste of time, money and judicial resources to maintain these two

20    actions in different forums simultaneously.  Because the claims and allegations are essentially the

21    same, both suits would require much of the same motion practice, document discovery and

22    deposition and in-court testimony.  Indeed, substantial resources are currently being expended

23    toward these ends in the NJ Action, including the production of millions of pages of documents

24    and rulings on numerous discovery issues.  This Court would needlessly duplicate these efforts—

25    at great time and expense—if it separately maintains this action in the Southern District of

26    California.

27    /////

28    /////

**C.    Transfer Is Proper Under All Other Relevant Factors.**

The remaining § 1404(a) factors are neutral or favor transfer to the District of New Jersey. These other considerations include (1) plaintiff's choice of forum, (2) convenience of the parties, and (3) convenience of the witnesses.

*First*, Plaintiff's choice of forum carries far less weight than it ordinarily would because he seeks to proceed on behalf of a nationwide class of consumers. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."). Plaintiff's chosen venue therefore deserves no more deference than the home venues of any other potential class members, some of whom presumably reside in the District of New Jersey. *Alexander*, 2007 WL 518859, at *3 ("[P]laintiffs' choice of forum is less significant where the plaintiff purports to represent a nationwide class.").

*Second*, with respect to the convenience of the parties, it certainly would be more convenient for Qualcomm to litigate in a single district, rather than simultaneously in two different districts on two sides of the country. *See id.* ("[A]ppearing in a single district is more convenient than appearing in two different districts on opposite coasts of the country."). To be sure, San Diego, California—Qualcomm's principal place of business—ordinarily would be a convenient venue for Qualcomm, and there is little doubt that relevant evidence and witnesses are located in this District. Plaintiff's allegations, however, range far more broadly than Qualcomm's actions within the Southern District of California, in particular those allegations concerning "global" wireless markets, Qualcomm's conduct before the ETSI, a European SDO, and Qualcomm's licensing of counterparties all over the world. (*See* Valikhani Compl. ¶¶ 21-22, 70.) As the Ninth Circuit has held, "the location of the evidence . . . is no longer weighed heavily given the modern advances in communication and transportation". *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). Indeed, the principal "convenience" consideration here is having related cases litigated in one forum rather than two, and this factor far outweighs any convenience associated with litigating in the Southern District of California.

/////

DLA PIPER US LLP
SAN DIEGO

SD\1817453.1
1-6

08 CV 0786 WQH (JMA)

1    *Third*, transfer would also be more convenient because a single court would be

2    empowered to help prevent witnesses from having to submit to two different depositions and

3    from having to travel to two different forums to attend court proceedings. *CoxCom, Inc. v.*

4    *Hybrid Patents Inc.*, No. 06-CV-7918, 2007 WL 2500982, at *2 (N.D. Cal. Aug. 30, 2007)

5    ("[T]he Court finds transfer would be substantially more convenient for each such witness, even

6    those who reside in California, because such witnesses would not be required to engage in

7    duplicative litigation or travel to two different forums to attend court proceedings."). This

8    consideration is especially significant for the potentially large number of third-party witnesses

9    likely to testify in these actions (*see* Blackford Decl., Exs. 3-5 (disclosing third parties pursuant to

10   Federal Rule of Civil Procedure 26)). *Papaleo v. Cingular Wireless Corp.*, No. 07-CV-1234,

11   2007 WL 1238713, at *2 (N.D. Cal. Apr. 26, 2007) ("[W]ith respect to the convenience of third-

12   party witnesses, which often is the most significant factor, the Court finds transfer would be

13   substantially more convenient for each such witness, because such witnesses would not be

14   required to engage in duplicative litigation or travel to two different forums to attend court

15   proceedings.").

16        On balance, the relevant § 1404(a) considerations weigh decisively in favor of

17   transferring this action to the District of New Jersey.

18   **IV.   CONCLUSION**

19        For the foregoing reasons, Qualcomm respectfully asks this Court to grant Qualcomm's

20   motion to transfer pursuant to 28 U.S.C. § 1404(a).

21   Dated:  May 2, 2008                    DLA PIPER US LLP

22

23        By /s/ William S. Boggs
            william.boggs@dlapiper.com

24        CRAVATH, SWAINE & MOORE LLP

25        Evan R. Chesler
          Peter T. Barbur

26        Elizabeth L. Grayer

27        Attorneys for Defendant
          QUALCOMM INCORPORATED

28

DLA PIPER US LLP
SAN DIEGO

SD\1817453.1
1-6

-8-

08 CV 0786 WQH (JMA)

# EXHIBIT C

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

———

WRITER'S DIRECT DIAL NUMBER

(212) 474-1908

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
GREGORY M. SHAW

PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH

ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN

DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK

———

SPECIAL COUNSEL

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

———

OF COUNSEL

ROBERT ROSENMAN
CHRISTINE BESHAR

December 21, 2007

<u>Broadcom Corporation v. QUALCOMM Incorporated</u>

Dear Steven:

      Enclosed please find QUALCOMM Incorporated's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a).

Very truly yours,

Christopher A. Stanton

Steven J. Kaiser, Esq.
    Cleary Gottlieb Steen & Hamilton LLP
      2000 Pennsylvania Avenue, N.W.
        Washington, DC 20006

Encl.

BY U.S. MAIL

William J. O'Shaughnessy (WJO 5256)
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Evan R. Chesler
Peter T. Barbur
Elizabeth L. Grayer
Karin A. DeMasi
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Richard S. Taffet
Philip L. Blum
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022
(212) 705-7000

Robert N. Feltoon
**CONRAD O'BRIEN GELLMAN & ROHN, P.C.**
1515 Market Street, Suite 1600
Philadelphia, PA 19102
(215) 864-8064

Attorneys for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BROADCOM CORPORATION,<br><br>                              Plaintiff.<br><br>                v.<br><br>QUALCOMM INCORPORATED,<br><br>                              Defendant. | Civil Action No. 05-3350 (MLC) |

**QUALCOMM INCORPORATED'S AMENDED AND SUPPLEMENTAL
INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)**

Defendant QUALCOMM Incorporated ("Qualcomm") hereby submits the following amended initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.  The following amended and supplemental initial disclosures are intended to supersede Qualcomm Incorporated's Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, dated October 28, 2005.

Qualcomm has not fully completed its investigation into its claims and/or defenses herein and makes these disclosures based solely on information reasonably available to it to date and reserves the right to amend or further supplement these disclosures.  Qualcomm makes these disclosures subject to, and without waiver of, any attorney-client, work product or other applicable privileges or immunities.

**A.i.    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

The following individuals may have discoverable information, relating to the bracketed subjects, that Qualcomm may use to support its defenses herein. Qualcomm provides each individual's current position:[1]

1.    <u>Derek Aberle</u>
      *Vice President & General Manager, CDMA Licensing*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's licensing discussions with Broadcom; Qualcomm licensing practices and policies; Licensing practices of wireless communications and video technology industry participants]

---

[1] All persons whose names are underlined are current or former employees of Qualcomm.  All communications with those individuals should be made only through Qualcomm counsel.

2

2.    Avneesh Agrawal
      *Senior Vice President, Engineering*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's acquisition of Flarion and research and development
      activities; Qualcomm's development of OFDMA technology]

3.    Jeff Altman
      *Sr. Director, Business Development*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's licensing discussions with Broadcom]

4.    Steve Altman
      *President*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's competitive position, business strategy, and licensing
      practices and policies; European Telecommunications Standards Institute
      ("ETSI") selection of WCDMA for the UMTS standard; Qualcomm's
      licensing discussions with Broadcom; Licensing practices of wireless
      communications and video technology industry participants]

5.    Cristiano Amon
      *Sr. Vice President, Product Management*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Marketing of Qualcomm's WCDMA chipset products; Relative merits of
      wireless solutions provided by Broadcom, Qualcomm and other third party
      wireless communications industry participants]

6.    Niels Peter Skov Andersen
      *Vice President, Technical Standards*
      QUALCOMM Denmark
      Lxvparken 14
      DK Roskilde
      Phone: 45-4018-4793
      [ETSI, including, Qualcomm's participation in and commitments to ETSI;
      ETSI's selection of WCDMA for the UMTS standard]

3

7.    Kent Baker
      *Vice President, Patent Counsel*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [ETSI's selection of WCDMA for the UMTS standard; Qualcomm's IPR
      disclosures; Content of relevant IPR policies of standards development
      organizations; Industry practice with regard to IPR disclosure and the
      making of FRAND commitments to standards development organizations]

8.    Yiliang Bao
      *Engineer, Sr. Staff Manager*
      QUALCOMM Incorporated
      10145 Pacific Heights Blvd.
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's participation in and commitments to the Joint Video Team
      ("JVT")]

9.    Jeff Belk
      *Senior Vice President, Marketing*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Marketing of and competition in wireless communications technology,
      including industry trends]

10.   Paul Bender
      *Sr. Vice President, Technology*
      QUALCOMM Incorporated
      5665 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Wireless communications technologies; Qualcomm's research and
      development activities]

4

11.  Liat Ben-Zur
     *Director, Business Development*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm's WCDMA chipset business, including competitive position
     and business strategy; Business reputation of Broadcom; Relative merits
     of wireless solutions offered by Qualcomm, Broadcom and third party
     wireless communications industry participants]

12.  Peter Black
     *Sr. Vice President, Technology*
     QUALCOMM Incorporated
     5665 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Wireless communications technologies; Qualcomm's research and
     development activities]

13.  Marv Blecker
     *President, Qualcomm Technology Licensing*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm licensing practices and policies; Qualcomm's licensing
     discussions with Broadcom; Licensing practices of wireless
     communications and video technology industry participants]

14.  Kirk Burroughs
     *Engineer, Principal*
     QUALCOMM Incorporated
     675 Campbell Technology Parkway
     Campbell, CA 95008
     Phone: (858) 587-1121
     [Qualcomm's participation in and commitments to ETSI]

5

15.  David Bush
     *Sr. Vice President, Sales*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm's WCDMA chipset business, including competitive position
     and business strategy; Qualcomm's sales and pricing of WCDMA chipset
     products; Qualcomm's efforts to meet customers' demand for WCDMA
     chipsets]

16.  Lorenzo Casaccia
     *Sr. Staff Engineer*
     QUALCOMM Italy
     Via Tirso #6, 3rd Floor
     Rome, Italy 00198
     Phone: 39-06-49-218121
     [Qualcomm's participation in and commitments to ETSI]

17.  James Clifford
     *Senior Vice President & General Manager, Operations*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm's efforts to meet customers' demand for chipsets]

18.  Gregory Cobb
     *Vice President and Assistant General Manager, Technology Licensing*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm licensing practices and policies; Qualcomm's licensing
     discussions with Broadcom]

19.  William ("Bill") Davidson
     *Sr. Vice President, Global Marketing and Investor Relations*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Marketing of and competition in wireless communications technology,
     including industry trends]

6

20.  Sean English
     *Vice President, Legal Counsel*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm's IPR disclosures]

21.  Mark Epstein
     *Senior Vice President, Development*
     QUALCOMM Incorporated
     9209 Fox Meadow Lane
     Potomac, MD 20854
     Phone: (858) 587-1121
     [Qualcomm's participation in and commitments to IEEE]

22.  Mark Frankel
     *Vice President, Product Management*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Marketing of Qualcomm's WCDMA chipset products; Relative merits of
     wireless solutions provided by Broadcom, Qualcomm and other third party
     wireless communications industry participants]

23.  Harinath Garudardri
     *Engineer, Sr. Staff Manager*
     QUALCOMM Incorporated
     5665 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm's analysis of its IPR with respect to JVT standards]

24.  Andrew Gilbert
     *Sr. Vice President, President, Qualcomm Europe*
     QUALCOMM Incorporated
     Waterfront 4th floor
     Hammersmith Embankment
     Chancellors Road
     London, W6 9RU
     Phone: 44-7909-910517
     [Qualcomm's competitive position, business strategy, and licensing
     practices]

25.    Klein Gilhousen
       *Sr. Vice President, Technology*
       QUALCOMM Incorporated
       5665 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Wireless communications technologies]

26.    Olivier Glauser
       *Sr. Director, Business Development*
       Former Employee
       QUALCOMM Incorporated
       5775 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [ETSI's selection of WCDMA for the UMTS standard]

27.    Jin Guo
       *Director, Technical Marketing*
       QUALCOMM Incorporated
       5775 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Marketing of and competition in wireless communications technology,
       including industry trends]

28.    Michael Hartogs
       *Sr. Vice President, Div. Counsel (Qualcomm Technology Licensing)*
       QUALCOMM Incorporated
       5775 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Qualcomm licensing practices and policies; Qualcomm's licensing
       discussions with Broadcom; Licensing practices of wireless
       communications and video technology industry participants; Content of
       relevant IPR policies of standards development organizations]

29.    Chris Irvine
       *Principal Engineer (QTC/QDM/QGOV)*
       QUALCOMM Incorporated
       Non-Qualcomm Site
       Phone: (858) 651-3425
       [Qualcomm's analysis of its IPR with respect to JVT standards]

30.   Jordan Isailovic
      *Consultant*
      QUALCOMM Incorporated
      P.O. Box 17516
      Anaheim, CA 92807
      Phone: (858) 587-1121
      [Qualcomm's participation in and commitments to JVT]

31.   Irwin Jacobs
      *Chairman*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [History of Qualcomm, CDMA and wireless communications]

32.   Paul Jacobs
      *Chief Executive Officer*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's competitive position and business strategy]

33.   Sanjay Jha
      *Executive Vice President and Group President, Qualcomm CDMA*
      *Technologies*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's WCDMA chipset business, including competitive position,
      business strategy, and WCDMA chipset features; Marketing of
      Qualcomm's WCDMA chipset products; Qualcomm's research and
      development activities; Relative merits of wireless solutions provided by
      Broadcom, Qualcomm and other third party wireless communications
      industry participants; Business reputation of Broadcom]

34.   Tingfang Ji
      *Engineer, Staff Manager*
      QUALCOMM Incorporated
      6965 Lusk Blvd
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's development of OFDMA technology]

9

35.   Alex Katouzian
      *Vice President, Product Management*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Marketing of Qualcomm's WCDMA chipset products; Relative merits of
      wireless solutions provided by Broadcom, Qualcomm and other third party
      wireless communications industry participants; Business reputation of
      Broadcom]

36.   Farrokh Khatibi
      *Director, Engineering (QSE)*
      QUALCOMM Incorporated
      5665 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's participation in and commitments to IEEE]

37.   Mark Klerer
      *Sr. Director, Technology*
      QUALCOMM Incorporated
      500 Somerset Corporate Blvd.
      Bridgewater, NJ 08807
      Phone: (908) 443-8092
      [Qualcomm's participation in and commitments to IEEE]

38.   Warren Kneeshaw
      *Vice President, Finance*
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone: (858) 587-1121
      [Qualcomm's analysis of the costs to carriers of switching between
      wireless communications standards]

39.   Anil Kripalani
      *Sr. Vice President, Global Tech. Affairs*
      Former Employee
      QUALCOMM Incorporated
      5775 Morehouse Drive
      San Diego, CA 92121
      Phone:  (858) 587-1121
      [ETSI's selection of WCDMA for the UMTS standard]

10

40.  James Lederer
     *Senior Vice President, Finance*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Pricing and costs of Qualcomm's WCDMA chipset products]

41.  Louis Lupin
     *Legal Consultant, former Executive Vice President, General Counsel*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm's licensing discussions with Broadcom; Qualcomm licensing
     practices and policies; ETSI's selection of WCDMA for the UMTS
     standard; Qualcomm's IPR disclosures; Content of relevant IPR policies
     of standards development organizations]

42.  Clint McClellan
     *Sr. Director, Marketing*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Marketing of and competition in wireless communications technology,
     including industry trends]

43.  Sanjay Mehta
     *Vice President, Finance*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Pricing, costs and sales of Qualcomm's WCDMA chipset products;
     Qualcomm's efforts to meet customers' demand for WCDMA chipsets]

44.  Max Miyazono
     *Sr. Manager, Technical Marketing (CTR)*
     Former Employee
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Marketing of and competition in wireless communications technology,
     including industry trends]

11

45.    Ayman Naguib
       *Sr. Staff Engineer (CORP R&D SYS Engineering)*
       QUALCOMM Incorporated
       6965 Lusk Blvd.
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Qualcomm's participation in and commitments to IEEE]

46.    Sanjiv Nanda
       *Sr. Director, Engineering (Corporate System Engineering)*
       QUALCOMM Incorporated
       5665 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Qualcomm's participation in and commitments to JVT]

47.    Andy Oberst
       *Vice President, Business Strategy*
       QUALCOMM Incorporated
       5775 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Qualcomm's WCDMA chipset business, including competitive position
       and business strategy; Business reputation of Broadcom; Relative merits
       of wireless solutions provided by Broadcom, Qualcomm and other third
       party wireless communications industry participants]

48.    Roberto Padovani
       *Executive Vice President and Chief Technology Officer*
       QUALCOMM Incorporated
       5775 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Wireless communications technologies; Qualcomm's research and
       development activities; History of Qualcomm, CDMA and wireless
       communications]

12

49.    Luis Pineda
*Senior Vice President, Marketing and Product Management*
QUALCOMM Incorporated
5775 Morehouse Drive
San Diego, CA 92121
Phone: (858) 587-1121
[Qualcomm's WCDMA chipset business, including competitive position and business strategy; Marketing of Qualcomm's WCDMA chipset products; Relative merits of wireless solutions provided by Broadcom, Qualcomm and other third party wireless communications industry participants]

50.    Gene Ratliffe
*Sr. Manager, Finance*
QUALCOMM Incorporated
5775 Morehouse Drive
San Diego, CA 92121
Phone:  (858) 587-1121
[Pricing, costs and sales of Qualcomm's WCDMA chipset products; Qualcomm's efforts to meet customers' demand for WCDMA chipsets]

51.    Viji Raveendran
*Sr. Staff Engineer (QDM & QCT)*
QUALCOMM Incorporated
10145 Pacific Heights Blvd
San Diego, CA 92121
Phone: (858) 587-1121
[Qualcomm's participation in and commitments to JVT; Qualcomm's analysis of its IPR with respect to JVT standards]

52.    Yuriy Reznik
*Staff Engineer*
QUALCOMM Incorporated
5775 Morehouse Drive
San Diego, CA 92121
Phone: (858) 587-1121
[Qualcomm's participation in and commitments to JVT]

13

53.    Hank Robinson
       *Vice President, Sales*
       QUALCOMM Incorporated
       5775 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Qualcomm's sales and pricing of WCDMA chipset products and
       Qualcomm's efforts to meet customers' demand for WCDMA chipsets]

54.    Thomas Rouse
       *Vice President, Chief Patent Counsel*
       QUALCOMM Incorporated
       5775 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Qualcomm's IPR disclosures]

55.    Phoom Sagetong
       *Staff Engineer (Corp. R&D)*
       Former Employee
       QUALCOMM Incorporated
       5775 Morehouse Drive
       San Diego, CA 92121
       Phone:  (858) 587-1121
       [Qualcomm's participation in and commitments to JVT]

56.    Donald Schrock
       *Executive Vice President, QCT*
       Former Employee
       QUALCOMM Incorporated
       5775 Morehouse Drive
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Qualcomm's WCDMA chipset business, including competitive position
       and business strategy]

57.    Amnon Silberger
       *Sr. Staff Engineer (QDM/MFT)*
       QUALCOMM Incorporated
       9940 Barnes Canyon Rd
       San Diego, CA 92121
       Phone: (858) 587-1121
       [Qualcomm's participation in and commitments to JVT; Qualcomm's
       analysis of its IPR with respect to JVT standards]

58. <u>Kevin Thompson</u>
*Vice President, Sales Operations*
QUALCOMM Incorporated
5775 Morehouse Drive
San Diego, CA 92121
Phone: (858) 587-1121
[Qualcomm's efforts to meet customers' demand for WCDMA chipsets]

59. <u>Edward Tiedemann</u>
*Senior Vice President, Engineering*
QUALCOMM Incorporated
5775 Morehouse Drive
San Diego, CA 92121
Phone: (858) 587-1121
[Qualcomm's participation in and commitments to ETSI and IEEE;
ETSI's selection of WCDMA for the UMTS standard; Content of relevant
IPR policies of standards development organizations]

60. <u>James Tomcik</u>
*Director Engineering*
QUALCOMM Incorporated
5665 Morehouse Drive
San Diego, CA 92121
Phone: (858) 587-1121
[Qualcomm's participation in and commitments to the IEEE]

61. <u>Stephane Tronchon</u>
*Legal Counsel*
QUALCOMM France
40 Rue d'Oradour sur Glane
1st and 4th floors
Paris, 75015
Phone: 33-4-92-96-91-16
[ETSI's selection of WCDMA for the UMTS standard; Qualcomm's
processes and practices for determining whether and when to disclose
patents to standards development organizations; Content of relevant IPR
policies of standards development organizations; Industry practice with
regard to IPR disclosure and the making of FRAND commitments to
standards development organizations]

62. Jerry Upton
*Consultant*
317 North Meacham
Park Ridge, IL 60068
Phone: (847) 772-4800
[Qualcomm's participation in and commitments to the IEEE]

63. Herbert Vanhove
*Vice President, Product Management*
QUALCOMM Incorporated
Waterfront 4th floor
Hammersmith Embankment
Chancellor's Road
London, W6 9RU
Phone: 44-20-8237-7123
[Qualcomm's participation in and commitments to ETSI]

64. Tom Wasilewski
*Sr. Director Government Affairs*
QUALCOMM Incorporated
2001 Pennsylvania Ave, NW
Suite 650
Washington, DC 20006-1850
Phone: (202) 263-0028
[Qualcomm's participation in and commitments to the IEEE]

65. Serge Willenegger
*Sr. Director, Technology*
QUALCOMM Switzerland
Vignes-Dessous
1425 ONNENS
Switzerland
Phone:  41-244-363541
[Qualcomm's participation in and commitments to ETSI; ETSI's selection
of WCDMA for the UMTS standard]

66. David Wise
*Vice President, Finance*
QUALCOMM Incorporated
5775 Morehouse Drive
San Diego, CA 92121
Phone: (858) 587-1121
[Qualcomm's acquisition of Flarion]

67. Charles ("Chuck") Wheatley
*Sr. Vice President, Technology*
QUALCOMM Incorporated
5665 Morehouse Drive
San Diego, CA 92121
Phone: (858) 587-1121
[History of Qualcomm, CDMA and wireless communications; Wireless
communications technologies]

16

68.  Rao Yallapragada
     *Sr. Director Technical Marketing*
     QUALCOMM Incorporated
     6965 Lusk Blvd
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Marketing of and competition in wireless communications technology,
     including industry trends]

69.  Jay Yun
     *Staff Engineer (QDM & QCT)*
     QUALCOMM Incorporated
     10145 Pacific Heights Blvd
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm's participation in and commitments to JVT; Qualcomm's
     analysis of its IPR with respect to JVT standards]

70.  Byeong-Ho Yuu
     *Sr. Patent Counsel*
     QUALCOMM Incorporated
     5775 Morehouse Drive
     San Diego, CA 92121
     Phone: (858) 587-1121
     [Qualcomm's participation in and commitments to ETSI]

71.  Broadcom Corporation, its subsidiaries and its employees
     16215 Alton Parkway
     Irvine, California USA 92618
     [Broadcom's practices and policies respecting, and commitments to,
     standards development organizations; Broadcom's wireless
     communications business and strategy; Licensing discussions between
     Broadcom and Qualcomm; Discussions between Broadcom and other
     wireless communications industry participants concerning Qualcomm or
     the adoption by ETSI of the WCDMA standard; Broadcom's attempts to
     design, develop, manufacture, market and sell chipset solutions
     implementing or compliant with the WCDMA standard; Broadcom's
     policies and practices with respect to licensing; Broadcom's ability or
     inability fairly to compete in the market for wireless communications
     chipset solutions; Broadcom's policies and practices with respect to the
     sales of ASICs (for any application), including bundling and rebate
     practices; and Broadcom's motivation in bringing this action]

17

**A.ii.    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.**

The following categories of documents, copies of which are located in the files of the persons listed in Section A above or in general Qualcomm files, may be used by Qualcomm to support its defenses in this action:

- Documents regarding the licensing practices of wireless communications technology industry participants

- Documents regarding the IPR disclosure practices of participants in standards development organizations

- Documents regarding practices and conduct of participants in standards development organizations

- Documents regarding competition in digital video technology

- Documents regarding the licensing practices of participants in the digital video technology industry

- Documents regarding proposals to standards development organizations, and the consideration thereof by standards development organizations and their respective members or participants

- Documents regarding the relative merits of different technologies or specifications that were considered by standards development organizations

- Documents regarding the relative merits of various vendors' wireless application-specific integrated circuits

These documents are likely to be located at Qualcomm's San Diego campus and at its offices at 9 Damon Mill Square - Suite 2A, Concord, MA 01742-2864.

As Qualcomm has previously advised plaintiff, some of the documents requested by plaintiff exist in an electronic form. Some of the documents that Qualcomm may use to support its claims or defenses exist in an electronic form, but Qualcomm does not currently expect to use them in that form to support its claims or defenses.

18

A.iii.    **A computation of any category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.**

   None known at this time.

A.iv.    **For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

   No such agreements exist.

December 21, 2007

CRAVATH, SWAINE & MOORE LLP,

by

Evan R. Chesler
Peter T. Barbur
Elizabeth L. Grayer
Karin A. DeMasi

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

MCCARTER & ENGLISH, LLP
William J. O'Shaughnessy (WJO 5256)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

*Attorneys for Defendant*

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BROADCOM CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-3350 (MLC) |
| v. | ) ) | |
| QUALCOMM INCORPORATED, | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF BROADCOM CORPORATION'S AMENDED INITIAL DISCLOSURES

## PURSUANT TO FED. R. CIV. P. 26(a)(1)

Pursuant to the Court's Amended Pretrial Scheduling Order entered December 4, 2007,

Broadcom Corporation ("Broadcom") makes the following initial disclosures under Federal Rule

of Civil Procedure 26(a)(1). These initial disclosures are based on information reasonably

available to Broadcom at this time. Broadcom's investigation and review of documents related

to this matter is continuing, and Broadcom reserves the right to supplement these disclosures as

provided for under Federal Rule of Civil Procedure 26(e) as developments warrant.

These disclosures are made without waiving any right to object (1) to any discovery

request or proceeding involving or relating to the subject matter of these disclosures consistent

with the Federal Rules of Civil Procedure and the Local Rules; or (2) to the use of any

information disclosed in any proceeding in this action or in any other action.

1

A.    **Individuals Likely to Have Discoverable Information That Broadcom May Use to Support Its Claims**

Subject to the foregoing and based on the information reasonably available to Broadcom at the present time, Broadcom identifies the following individuals as likely to have discoverable information that Broadcom may use to support its claims, unless solely for impeachment.

<u>Past & Present Broadcom Corporation Employees</u>

1.    Moussa Bavafa – Broadcom Corporation, 190 Mathilda Place, Sunnyvale, California 94086 (T: 408-922-5898).  Subjects:  development of the IEEE 802.20 standard.

2.    Joseph Boccuzzi – Broadcom Corporation, 100 Matawan Road, Suite 210, Matawan, New Jersey 07747 (T: 732-888-3500).  Subjects: Broadcom's efforts to design and/or sell WCDMA[1] ASICs; and standard-setting/development efforts related to 3G mobile wireless technologies.

3.    Mark D. Brazeal – Broadcom Corporation, 190 Mathilda Place, Sunnyvale, California 92618 (T: 408-543-3300).  Subjects:  Broadcom's WCDMA and GSM/GPRS/EDGE licensing negotiations with Qualcomm Incorporated ("Qualcomm").

4.    Xuemin Chen – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6185).  Subjects:  development of the H.264 video compression standard.

5.    Michael A. Civiello – Broadcom Corporation, 1131 West Warner Street, Suite 104, Tempe, Arizona 85284 (T: 480-753-2260).  Subjects:  Zyray's WCDMA licensing negotiations with Qualcomm; Zyray's and Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; and Zyray's and Broadcom's efforts to design and/or sell WCDMA ASICs.

6.    Yossi Cohen – Broadcom Corporation, 5300 California Ave., Irvine California 92617 (T: 949-585-5319).  Subjects:  Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCMDA ASICs; and Broadcom's efforts to design and/or sell WCDMA ASICs.

7.    Ed H. Frank – Broadcom Corporation, 190 Mathilda Place, Sunnyvale, California 92618 (T: 408-543-3300).  Subjects:  Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs.

---

[1] Terms such as "WCDMA," "ASICs," "3G," and the other acronyms and terms used herein have the same meanings as in the Plaintiff's Second Amended Complaint.

2

8.      Stephen Gordon – Broadcom Corporation, 200 Brickstone Square, Suite 401, Andover, Massachusetts 01810 (T: 978-719-1322). Subjects: development of the H.264 video compression standard; and Broadcom's H.264-compliant products.

9.      Victor Hou – Broadcom Corporation, 16340 West Bernardo Drive, San Diego, California 92127 (T: 858-521-5875). Subjects: standard-setting/development efforts related to B3G/4G mobile wireless technologies.

10.     Ketan Kamdar – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-450-8700). Subjects: Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; and Broadcom's efforts to design and/or sell WCDMA ASICs.

11.     Mark Kent – Broadcom Corporation, 16340 West Bernardo Drive, San Diego, California 92127 (T: 858-521-5853). Subjects: ETSI rules and requirements.

12.     Thomas Kolze – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6136). Subjects: development of the IEEE 802.20 standard.

13.     Thomas Lagatta – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6644). Subjects: effect of Qualcomm's misconduct on Broadcom's business.

14.     Alexander MacInnis – Broadcom Corporation, 2370 E. Stadium Boulevard, No. 42, Ann Arbor, Michigan 48104-4811 (T: 408-501-3801). Subjects: development of the H.264 video compression standard; and Broadcom's H.264-compliant products.

15.     Robert G. Nalesnik – Broadcom Corporation, 190 Mathilda Place, Sunnyvale, California 94086 (T: 408-543-3300). Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCMDA ASICs; and Broadcom's efforts to design and/or sell WCDMA ASICs.

16.     Robert A. Rango – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-450-8700). Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; and Broadcom's efforts to design and/or sell WCDMA ASICs.

17.     Henry Samueli – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-5610). Subjects: Broadcom's corporate history and business model; and Broadcom's marketing and sales of products compliant with the WCDMA, GSM/GPRS/EDGE, and H.264 standards.

18.     Nambi Seshadri – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-450-8700). Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; Broadcom's efforts to design

3

and/or sell WCDMA ASICs; effect of Qualcomm's misconduct on Broadcom's business; and Broadcom's strategic planning and/or competitive analyses relating to B3G/4G mobile wireless technologies and products.

19.    Bazhong Shen – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6019). Subjects: ETSI rules and requirements.

20.    Adam C. Spice – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-450-8700). Subjects: Broadcom's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs.

21.    Robert E.M. Swann – Broadcom Corporation, Unit 406, Science Park, Milton Road, Cambridge, CB4 OWW, United Kingdom (T: 44-1223-381352). Subjects: Broadcom's H.264-compliant products; and effect of Qualcomm's misconduct on Broadcom's business.

22.    Pat Thaler – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-570-2707). Subjects: rules and regulations pertaining to the IEEE 802.20 working group.

23.    Shannon Tyson, Jr., Esq. – Broadcom Corporation, 8303 Mopac Expressway North, Austin, Texas 78759 (T: 512-651-9542). Subjects: Broadcom's participation in standard-setting organizations; Qualcomm's participation in standard-setting organizations; and rules and requirements of standard-setting organizations.

24.    Pieter van Rooyen – Broadcom Corporation, 15434 Innovation Drive, San Diego, California 92128 (T: 858-385-8800). Subjects: Zyray's WCDMA licensing negotiations with Qualcomm; Zyray's strategic planning and/or competitive analyses relating to WCDMA technology or WCDMA ASICs; Zyray's efforts to design and/or sell WCDMA ASICs; standard-setting/development efforts related to 3G mobile wireless technologies and B3G/4G mobile wireless technologies; and Broadcom's strategic planning and/or competitive analyses relating to B3G/4G mobile wireless technologies and products.

25.    Wade K. Wan – Broadcom Corporation, 5300 California Ave., Irvine, California 92617 (T: 949-926-6387). Subjects: development of the H.264 video compression standard.

26.    Sheng Zhong – Broadcom Corporation, 2451 Mission College Blvd., Santa Clara, California 95054 (T: 408-501-3885). Subjects: development of the H.264 video compression standard.

Past & Present Qualcomm Incorporated / Flarion Technologies Incorporated Employees[2]

27.    Derek K. Aberle – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Broadcom's WCDMA licensing

---

[2] Broadcom believes that all individuals listed are employed, or were employed, by Qualcomm or an affiliate of Qualcomm. The noted affiliations within Qualcomm may not in some instances be current or correct.

negotiations with Qualcomm; and Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

28.     Jeff Altman – Qualcomm Technology Licensing, Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; and Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

29.     Steven R. Altman  – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; Qualcomm's participation in ETSI; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

30.     Sanjeev Athalye – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

31.     Kent Baker – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's licensing policies; Qualcomm's understanding of its patent disclosure obligations; Qualcomm's understanding of its FRAND obligations; Qualcomm's participation in ETSI; and Qualcomm's participation in the JVT.

32.     Gwen Barriac – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

33.     Yiliang Bao - Qualcomm Incorporated, 10145 Pacific Heights Blvd., San Diego, California  92121.  Subjects:  Qualcomm's participation in the JVT.

34.     Marvin Blecker – Qualcomm Technology Licensing, Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

35.     Luke Bonacci – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects: Zyray's WCDMA licensing negotiations with Qualcomm; and Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

36.     Peter Carson – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

5

37.    Tao Chen – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

38.    Greg Cobb – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; and Qualcomm's participation in the JVT.

39.    James Determan – Qualcomm Incorporated, 9950 Barnes Canyon Road, San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

40.    Sean English – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in ETSI; and Qualcomm's efforts to conceal information related to its JVT patents.

41.    Mark Epstein – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

42.    John Fan – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

43.    Mark Frankel – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

44.    Hari Ganti – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

45.    Harinath Garudadri – Qualcomm Incorporated, 5665 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in ETSI; and Qualcomm's participation in the JVT.

46.    Glenn Golden – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

47.    Dhananja Gore – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

48.    Jin Guo – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

49.    Michael Hartogs – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; Qualcomm's understanding of its patent disclosure obligations; Qualcomm's understanding of its FRAND obligations; and Qualcomm's participation in ETSI.

50.    George Iritz – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000). Subjects: IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

51.    A. Chris Irvine – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121. Subjects: Qualcomm's participation in the JVT.

52.    Irwin M. Jacobs – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

53.    Jeffrey A. Jacobs – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

54.    Paul E. Jacobs – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

55.    Avinash Jain – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

56.    Sanjay K. Jha – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264

technology; and pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

57.     Ravi Kalavakunta – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: IEEE 802.16e, the Working Group on Broadband Wireless Access Standards.

58.     Samir Kapoor – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000). Subjects: IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

59.     Farrokh Khatibi – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

60.     Mark Klerer – Qualcomm Incorporated, 500 Somerset Corporate Blvd., Bridgewater, New Jersey 08807. Subjects: IEEE 802.20, the Mobile Broadband Wireless Access Working Group; Qualcomm's violations of the rules of the 802.20 working group; Qualcomm's participation in ETSI; and the Mobile Broadband Wireless Access Working Group.

61.     Rajiv Larioa – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000). Subjects: IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

62.     Junyi Li – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000). Subjects: IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

63.     James Lederer – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Qualcomm's licensing, interactions with standard-development organizations and related business practices.

64.     Jeff Lorbeck – MediaFLO USA, Inc., Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

65.     Albert Scott Ludwin – Qualcomm Incorporated, 5665 Morehouse Drive, San Diego, California 92121. Subjects: Qualcomm's participation in ETSI; and Qualcomm's participation in JVT.

66.     Louis M. Lupin  – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; Qualcomm's understanding of its patent disclosure obligations; Qualcomm's

8

understanding of its FRAND obligations; Qualcomm's participation in ETSI; and Qualcomm's participation in the JVT.

67.    Ajay Luthra – Motorola, BCS, 6420 Sequence Drive, San Diego, CA 92121 (T:858-404-3470).  Subjects:  JVT disclosure obligation; and Qualcomm's participation in the JVT.

68.    Sandip Minhas – Qualcomm Incorporated, 5355 Mira Sorrento Place, San Diego, CA 92121.  Subjects:  Qualcomm's participation in JVT.

69.    Max Miyazono – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

70.    Ayman Naguib – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

71.    Mullaguru Naidu – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

72.    Tom O'Neil – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Qualcomm's licensing and related business practices.

73.    William Otondo – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Qualcomm's licensing and related business practices.

74.    Roberto Padovani – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Zyray's and Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and standard-setting/development efforts related to 3G mobile wireless technologies and B3G/4G mobile wireless technologies.

75.    Vincent Park – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

76.    Vladimir Parizhsky – Flarion Technologies Incorporated, Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921 (T: 908-947-7000).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

9

77.     Luis Pineda – Qualcomm CDMA Licensing, Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses).

78.     Rajat Prakash – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

79.     Viji Raveendran – Qualcomm Incorporated, 10145 Pacific Heights Blvd., San Diego, California 92121. Subjects: Qualcomm's participation in the JVT.

80.     Yuriy Reznik – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121. Subjects: Qualcomm's participation in the JVT.

81.     Alex Rogers – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121. Subjects: Qualcomm's participation in the JVT.

82.     Thomas R. Rouse – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm; Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; Qualcomm's understanding of its patent disclosure obligations; Qualcomm's understanding of its FRAND obligations; Qualcomm's participation in ETSI; Qualcomm's participation in the JVT; and Qualcomm's obligations to comply with standard-setting organization rules.

83.     Phoom Sagetong – Qualcomm Incorporated, address unknown. Subjects: Qualcomm's participation in the JVT.

84.     Don Schrock – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Qualcomm's licensing and related business practices.

85.     Ammon Silberger – Qualcomm Incorporated, 9940 Barnes Canyon Road, San Diego, California 92121. Subjects: Qualcomm's participation in the JVT.

86.     Richard Sulpizio – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: Broadcom's WCDMA licensing negotiations with Qualcomm.

87.     Arak Sutivong – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121). Subjects: IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

88.     Anne-Lise Thieblemont – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121. Subjects: Qualcomm's participation in the JVT.

89.    Edward Tiedemann – Qualcomm Incorporated, 5665 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in ETSI, the JVT, and the 802.20 working group.

90.    James Tomcik – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

91.    Stephane Tronchon – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  Qualcomm's interactions with ETSI and other standard-development organizations.

92.    Tom Wasilewski – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

93.    Rao Yallapragada – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121 (T: 858-587-1121).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

94.    Yan Ye – Qualcomm Incorporated, 5775 Morehouse Drive, San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

95.    Jay C. Yun – Qualcomm Incorporated, 10145 Pacific Heights Blvd. San Diego, California 92121.  Subjects:  Qualcomm's participation in the JVT.

Other

96.    Friedhelm Hillebrand – [contact info to come].  Subject:  the development of the UMTS standard; IPR policies pertinent to the development of the UMTS standard; and Qualcomm's participation in the development of the UMTS standard.

97.    Lee Patch – Day Casebeer Madrid & Batchelder LLP, 20300 Stevens Creek Boulevard, Suite 400, Cupertino, California 95014.  Subjects:  Qualcomm's concealment of its participation in the JVT.

98.    Gary Sullivan – Microsoft Corp., One Microsoft Way, Redmond, Washington 98052 (T: 425-703-5308).  Subjects:  JVT disclosure obligations; and Qualcomm's participation in the JVT.

99.    Jerry Upton – J. Upton Consulting, 317 N. Meacham, Park Ridge, Illinois 60068 (T: 847-772-4800).  Subjects:  IEEE 802.20, the Mobile Broadband Wireless Access Working Group.

100.    Andrew Viterbi – University Park Campus, Viterbi Department of Electrical Engineering, University of Southern California, Los Angeles, California 90089. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm

11

ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); Flarion, its technology and intellectual property holdings; and Qualcomm's proposed acquisition of Flarion.

101.    Thomas Wiegand – Heinrich Hertz Institute, Einsteinufer 37, 10587, Germany (T: 49-0-30-31002-617).  Subjects:  JVT disclosure obligation; and Qualcomm's participation in the JVT.

For the companies listed below, Broadcom believes that individual(s) not yet identified

from each company and/or each company's subsidiaries and affiliates are likely to have

discoverable information that Broadcom may use to support its claims.

102.    Agere Systems Incorporated (individual(s) not yet identified), 1110 American Parkway NE, Allentown, Pennsylvania 18109.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

103.    Airvana, Incorporated (individual(s) not yet identified), 19 Alpha Road, Chelmsford, Massachusetts 01824.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

104.    AirWalk Communications, Inc. (individual(s) not yet identified), 1830 North Greenville Avenue, Richardson, Texas 75081.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

105.    ALBAHITH (individual(s) not yet identified), P.O. Box 927495, Amman 11190, Jordan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

106.    Alcatel SA (individual(s) not yet identified), 54, rue La Boétie, 75008 Paris, France.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for

similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

107.    Alliance for Telecommunications Industry Solutions, ATIS (individual(s) not yet identified), 1200 G Street, NW, Suite 500, Washington, DC 20005, T: 202-628-6380. Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

108.    Alltel Corporation (individual(s) not yet identified), One Allied Drive, Little Rock, Arkansas, 72202. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

109.    Alps Electric Co., Ltd. (individual(s) not yet identified), Suite # 500, 910 E. Hamilton Avenue, Campbell, California 95008. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

110.    Alvarion Ltd. (individual(s) not yet identified), 21A HaBarzel Street, P.O. Box 13139, Tel Aviv 61131, Israel. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

111.    American National Standards Institute, ANSI (individual(s) not yet identified), 1819 L Street, NW, Sixth Floor, Washington, DC 20036, T: 202-293-8020. Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

112.    Amoi Mobile Co., Ltd. (individual(s) not yet identified), 210 Middel Road, #08-01, IOI Plaza, Singapore 188994. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

113.    Analog Devices, Inc., (individual(s) not yet identified), One Technology Way, Norwood, Massachusetts 02062-9106. Subjects:  standard-setting/development efforts related to 3G mobile wireless technologies.

114.    Apple. Inc.  (individual(s) not yet identified), 1 Infinite Loop, Cupertino, California, 95014. Qualcomm licensing practices for CDMA technology, WCDMA

technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

115.    ArrayComm Incorporated (individual(s) not yet identified), 2480 N. First Street, Suite 200, San Jose, California 95131 or Davies Corporate Center, 1016 Rt. 33 East, Freehold, New Jersey 07728.  Subjects:  Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

116.    Association of Radio Industries and Businesses, ARIB (individual(s) not yet identified), Nittochi Bldg. 14F, 1-4-1, Kasumigaseki, Chiyoda-ku, Tokyo 100-0013, Japan, T: 81-3-5510-8590.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

117.    AT&T Inc. (individual(s) not yet identified), 175 E. Houston, San Antonio, Texas.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

118.    Axesstel, Incorporated (individual(s) not yet identified), 6815 Flanders Drive, Suite 210, San Diego, California 92121.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

119.    Axio Wireless, Incorporated (individual(s) not yet identified), 805 Aerovista Place, Suite 103, San Luis Obispo, California 93401.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

120.    Bellwave, Incorporated (individual(s) not yet identified), 6th Floor Kamco Yang Jae Tower, 949-3 Dogok-Dong, Kangnam-GU, Seoul 135-270, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

121.    BenQ Corporation (individual(s) not yet identified), 157 Shanying Road, Gueishan, Taoyuan 333, Taiwan.  Subjects:  Qualcomm licensing practices for CDMA

technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

122.    BT Group PLC (individual(s) not yet identified), BT Centre, 81 Newgate Street, London EC1A 7AJ. Subjects: standard-setting/development efforts related to 3G mobile wireless technologies.

123.    Casio Computer Co., Ltd. (individual(s) not yet identified), 6-2, Honmachi 1-chome, Shibuya-ku, Tokyo 151-8543, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

124.    CEC Telecom Co., Ltd. (individual(s) not yet identified), CEC Information Mansion, No. 6, Zhongguancun South Road, Haidian District, Beijing, China. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

125.    Chi Mei Communications Systems (individual(s) not yet identified), 11F, No. 39, Chung Hua Road Sec. 1, Taipei 100, Taiwan, R.O.C. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

126.    China Communications Standards Association, CCSA (individual(s) not yet identified), 52, Hua Yuan Bei Road, Haidian District, Beijing 100083, China, T: 86-10-6230-2645. Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

127.    China Mobile (individual(s) not yet identified), 60/F, The Center 99 Queen's Road Central, Hong Kong. Subjects: Qualcomm licensing practices for CDMA technology and WCDMA technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders.

128.    China Unicom (individual(s) not yet identified), 75th Floor The Center 99 Queens Road, Central, Hong Kong. Subjects: Qualcomm licensing practices for CDMA technology and WCDMA technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

129.   Cisco Systems, Incorporated (individual(s) not yet identified), 170 West Tasman Drive, San Jose, California 95134.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

130.   Compal Electronics, Incorporated (individual(s) not yet identified), 581 Juikang Road Neihu, Taipei, Taiwan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

131.   Contela, Incorporated (individual(s) not yet identified), 4th Floor, Korea First Bank Building 6-8, Sunae-dong, Bundang-gu, Sungnam-si, Kyunggido 463-825, Korea. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

132.   Curitel Communications, Incorporated (individual(s) not yet identified), Peungwha Seocho Bldg., 1451-34, Seochodong, Seocho-gu, Seoul 137-867, Korea. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

133.   Dalian Daxian Group Co., Ltd. (individual(s) not yet identified), Houge Street, Gezhenpu, Ganjingzi District, Dalian, Liaoning, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

134.   Dalian Huanyu Mobile Technological Co., Ltd. (individual(s) not yet identified), No.107 Huaihe Road, 116600, Dalian, Tianjin, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

135.   Datang Telecom Technology Co., Ltd. (individual(s) not yet identified), 40 Xueyuan Road, Haidian District, Beijing 100083, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA

mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

136.    Dell Incorporated (individual(s) not yet identified), One Dell Way, Round Rock, Texas 78682. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

137.    Denso Corporation (individual(s) not yet identified), 1-1, Showa-cho, Kariya, Aichi 448-8661, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

138.    Deutsche Telekom AG (individual(s) not yet identified), Friedrich-Ebert-Allee 140, 53113 Bonn, Germany. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

139.    eAnywhere Telecom, Incorporated (individual(s) not yet identified), 9710 Scranton Road, Suite 200, San Diego, California 92121. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

140.    Eastern Communications Co., Ltd., No. 66 Dongxin Avenue, Binjiang High Tech Dev. Zone, Hangzhou, ZHJ 310053, PRC. Subjects: Qualcomm licensing practices for CDMA technology and WCDMA technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders.

141.    Eastern Communications Co., Ltd. (individual(s) not yet identified), No.398, Wensan Road, Hanghou, China. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

142.    EC Telecom Ltd. (individual(s) not yet identified), 801, Tower 2, World Trade Square, 123 Hoi Bun Road, Kwun Tong, Kowloon, Hong Kong. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE

17

technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

143.    Egyptian Telephone Company (individual(s) not yet identified), HATIF Telecom Industries, P.O. Box 1058, Amman 11821, Jordan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

144.    EMS Technologies, Incorporated (individual(s) not yet identified), 660 Engineering Drive, Norcross, Georgia 30092.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

145.    EoNex Technologies, Incorporated (individual(s) not yet identified), 10th Floor Sunae-Dong 22-3, Bundang-Gu, Songnam, Kyunggi-Do 463-825, Korea.  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology.

146.    ERON Technologies Corporation (individual(s) not yet identified), 6-8 NownHyun-Dong, Seoul, 135-010, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

147.    ETRONICS Corporation (individual(s) not yet identified), 177, Chongchon-Dong, Bupyung-Gu, Inchon 403-030, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

148.    European Telecommunications Standards Institute, ETSI (individual(s) not yet identified), 650, route des Lucioles, 06921 Sophia-Antipolis Cedex, France, T: 33 (0)4 92 94 42 00.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

149.    Evercore Partners (individual(s) not yet identified), 55 East 52nd Street, 43rd Floor, New York, New York 10055.  Subjects:  Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

150.    Flarion Technologies Incorporated (additional individual(s) not yet identified), Bedminster One, 135 Route 202/206 South, Bedminster, New Jersey 07921. Subjects: Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

151.    Flextronics International Ltd. (individual(s) not yet identified), 2 Changi South Lane, Singapore 486123. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

152.    France Telecom (individual(s) not yet identified), 6, place d'Alleray, 75015 Paris, France. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; and selecting mobile wireless technologies.

153.    Freescale Semiconductor, Incorporated (individual(s) not yet identified), 6501 William Cannon Drive West, Austin, Texas 78735. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

154.    Fujitsu Limited (individual(s) not yet identified), Shiodome City Center, 1-5-2 Higashi-Shimbashi Minato-ku, Tokyo 105-7123 Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

155.    Garmin Corporation (individual(s) not yet identified), No 68, Jangshu 2nd Road, Shijr, Taipei County, Taiwan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

156.    Glenayre Electronics, Incorporated (individual(s) not yet identified), Unit 22 Challenge House, Showered Drive, Bletchley, MK3 6DP. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE

technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

157.    Great Dragon Information Technology Corporation Ltd. (individual(s) not yet identified), 169 Beiyuan Road, Chaoyang District, Beijing 100101, China. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

158.    Growell Telecom Co., Ltd. (individual(s) not yet identified), Two University Plaza, Suite 308, Hackensack, New Jersey 07601. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

159.    GSM Association (individual(s) not yet identified), 1st Floor Mid City Place, 71 High Holborn, London WC1V 6EA. Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

160.    Guangzhou Jinpeng Group Co., Ltd. (individual(s) not yet identified), No.9 Shenzhou Road, Guangzhou Science City, Guangzhou, Guangdong 510663, China. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

161.    Guangzhou Southern Hi-Tech Co., Ltd. (individual(s) not yet identified), Er heng Road, Science Park, Guangzhou Hi-tech Industrial Development Zone, Guangzhou, China. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

162.    Haier Group Company (individual(s) not yet identified), No.1 Haier Road Hi-tech Zone Qingdao, China 266101. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

163.    Hewlett-Packard Company (individual(s) not yet identified), 3000 Hanover Street, Palo Alto, California 94304. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264

technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

164.    High Tech Computer Corporation (individual(s) not yet identified), No.23, Hsin Hua Road, Taoyuan 330, Taiwan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

165.    Hisense Group Co., Ltd. (individual(s) not yet identified), 17 Donghaixi Road, Qingdao, China.  Subjects Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

166.    Hitachi Kokusai Electric Incorporated (individual(s) not yet identified), P's higashi-nakano Bldg., 3-14-20 Higashi-Nakano, Nakano-ku, Tokyo 164-8511, Japan. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

167.    Hitachi, Ltd. (individual(s) not yet identified), 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo, 100-8280 Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

168.    Hon Hai Precision Industry Co., Ltd. (individual(s) not yet identified), 2 Tzu Yu St., Tu-Cheng City, Taipei, Taiwan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

169.    Huawei Technologies Co., Ltd. (individual(s) not yet identified), Bantian, Longgang District, Shenzhen 518129, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

170.    Hutchison Telecommunications Ltd. (individual(s) not yet identified), Building A, 207 Pacific Highway, St. Leonards NSW 2065, Australia. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

171.    Hynix Semiconductors Inc. (individual(s) not yet identified), San 136-1, Ami-Ri Bubal-eub Icheon-si Kyoungki-do, Korea 467-701. Subjects: Qualcomm licensing practices for WCDMA technology and GSM/GPRS/EDGE technology, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

172.    Infineon Technologies AG (individual(s) not yet identified), St.-Martin-Strasse 53, 81669 Munich, Germany. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

173.    Institute of Electrical and Electronic Engineers, Incorporated, IEEE (individual(s) not yet identified), IEEE Operations Center, 445 Hoes Lane, Piscataway, New Jersey 08854, T: 732-981-0060. Subjects: standard-setting/development efforts related to B3G/4G mobile wireless technologies.

174.    Intel Corporation (individual(s) not yet identified), 2200 Mission College Blvd., Santa Clara, California 95052. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

175.    InterDigital (individual(s) not yet identified), 781 3rd Ave., King of Prussia, Pennsylvania 19406-1409. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; licensing practices of other CDMA or WCDMA intellectual property holders; actual or potential litigation threatened by Qualcomm regarding the licensing of its CDMA or WCDMA technology patents or regarding sales of its CDMA or WCDMA ASICs; and standard-setting/development efforts related to 3G mobile wireless technologies; essentiality of declared CDMA and WCDMA patents.

176.    International Telecommunication Union, ITU (individual(s) not yet identified), Place des Nations, CH-1211 Geneva 20, Switzerland, T: 41 22 730 51 11. Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

177.    Inventec Appliances Corp. (individual(s) not yet identified), No.37, Wugung 5th Rd., Wugu Shiang, Taipei, Taiwan 248.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

178.    IP Wireless, Incorporated (individual(s) not yet identified), 1001 Bayhill Drive, 2nd Floor, San Bruno, California 94066.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

179.    Italtel Group S.p.A. (individual(s) not yet identified), Castelletto, 20019 Settimo Milanese, Milan, Italy.  Subjects:  Qualcomm licensing practices for WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; and selecting mobile wireless technologies.

180.    KDDI Corporation (individual(s) not yet identified), Garden Air Tower, 10-10, Iidabashi 3-chome, Chiyoda-ku, Tokyo 102-8460, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

181.    Kenwood Corporation (individual(s) not yet identified), 2967-3, Ishikawa-machi, Hachioji-shi, Tokyo, 192-8525 Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

182.    Kisan Telecom Co., Ltd. (individual(s) not yet identified), Taewon Building, 65 Bangyi-Dong, Songpa-Gu, Seoul, 138-828 Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

183.    Koninklijke KPN N.V. (individual(s) not yet identified), Maanplein 55, The
Hague, 2516 CK.  Subjects:  Qualcomm licensing practices for CDMA technology,
WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing
and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications
devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual
property holders; and selecting mobile wireless technologies.

184.    Koninklijke Philips Electronics N.V. (individual(s) not yet identified),
Groenewoudseweg 1, 5621 BA Eindhoven, Netherlands.  Subjects:  Qualcomm licensing
practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology,
and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA
mobile telecommunications devices (or for similar uses); and licensing practices of other
CDMA or WCDMA intellectual property holders.

185.    Konka Group Co., Ltd. (individual(s) not yet identified), Overseas Chinese Town,
Shenzhen, Guangdong 518053, China.  Subjects:  Qualcomm licensing practices for
CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264
technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile
telecommunications devices (or for similar uses); and licensing practices of other CDMA
or WCDMA intellectual property holders.

186.    KTF Technologies Incorporated (individual(s) not yet identified), 9th Floor
Shinyoong Tower 265-3(4), Seohyun-dong Bundang-gu, Songnam City, Korea 463 769.
Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology,
GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm
ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses);
and licensing practices of other CDMA or WCDMA intellectual property holders.

187.    Kyocera Corporation (individual(s) not yet identified), 6, Takeda Tobadono-cho,
Fushimi-ku, Kyoto, Japan 612-8501.  Subjects:  Qualcomm licensing practices for
CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264
technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile
telecommunications devices (or for similar uses); and licensing practices of other CDMA
or WCDMA intellectual property holders.

188.    Langchao Group Co., Ltd. (individual(s) not yet identified), 2 Xinxizhonglu
Road, Shangdi, Haidian District, Beijing, China.  Subjects:  Qualcomm licensing
practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology,
and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA
mobile telecommunications devices (or for similar uses); and licensing practices of other
CDMA or WCDMA intellectual property holders.

189.    Lenovo Mobile Communications Technology Ltd. (individual(s) not yet
identified), 1 Manhattanville Rd., Purchase, New York 10577-2100.  Subjects:
Qualcomm licensing practices for CDMA technology, WCDMA technology,
GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm

24

ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

190.    LG Electronics, Incorporated (individual(s) not yet identified), LG Twin Towers, 20,Yeouido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

191.    Lucent Technologies Incorporated (individual(s) not yet identified), 600 Mountain Ave., Murray Hill, New Jersey 07974-0636.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies and B3G/4G mobile wireless technologies; and selecting mobile wireless technologies.

192.    Matsushita Electronic Components Co., Ltd. (individual(s) not yet identified), 1006, Oaza Kadoma, Kadoma, Osaka 571-8506, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

193.    Maxim Integrated Products, Incorporated (individual(s) not yet identified), 120 San Gabriel Dr., Sunnyvale, California 94086.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and actual or potential litigation threatened by Qualcomm regarding the licensing of its CDMA or WCDMA technology patents or regarding sales of its CDMA or WCDMA ASICs.

194.    Maxon Telecom Co., Ltd. (individual(s) not yet identified), 3F Sewon Venture Bldg.,705-18,Yeuksam-dong, Kangnam-gu, Seoul, Korea 135-948.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

195.    Mitsubishi Electric Corporation (individual(s) not yet identified), Mitsubishi Denki Building, 2-2-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm

ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

196.    Mobile System Technologies, Incorporated (individual(s) not yet identified), West Hill Building, 2chome 24-4 Nishigotanda, Shinagawa-Ku, Tokyo 141-0031, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

197.    Morgan Stanley, (individual(s) not yet identified), 1585 Broadway, New York, New York 10036. Subjects: Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

198.    Motorola, Incorporated (individual(s) not yet identified), 1299 East Algonquin Rd., 2nd Floor, Schaumburg, Illinois 60196. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; essentiality of declared CDMA and WCDMA patents; and selecting mobile wireless technologies.

199.    NEC Corporation (individual(s) not yet identified), 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

200.    Neuf Cegetel SA (individual(s) not yet identified). 40/42 quai du Point du Jour, 92659 Boulogne Billancourt cedex, France. Subjects: Qualcomm licensing practices for WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; and selecting mobile wireless technologies.

201.    Ningbo Bird Co., Ltd. (individual(s) not yet identified), 99 Chengshan Road, Ningbo 315500, Zhejiang, China. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

202.    NOKIA Corporation (individual(s) not yet identified), Keilalahdentie 4, FIN-00045 Espoo, Finland.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; essentiality of declared CDMA and WCDMA patents; Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

203.    Nortel Networks (individual(s) not yet identified), 8200 Dixie Road, Brampton, Ontario L6T 5P6, Canada.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts for 3G mobile wireless technologies; selecting mobile wireless technologies; Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

204.    Novatel Wireless Incorporated (individual(s) not yet identified), 9645 Scranton Rd., Suite 205, San Diego, California 92121.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

205.    NTT DoCoMo (individual(s) not yet identified), Sanno Park Tower 11-1, Nagata-cho 2-chome, Chiyoda-ku, Tokyo 100-6150, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

206.    NXP B.V. (individual(s) not yet identified), High Tech Campus 60, 5656 AG, Eindhoven, The Netherlands.  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

27

207.    Option NV S.A. (individual(s) not yet identified), 45 Kolonel Begaultlaan, B-3012 Leuven, Belgium.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

208.    Palm, Inc. (individual(s) not yet identified), 950 W. Maude Avenue, Sunnyvale, California.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

209.    Panasonic Mobile Communications Co., Ltd. (individual(s) not yet identified), 600 Saedo-cho, Tsuzuki-ku Yokohama-city, Kanagawa 224-8539.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

210.    Pantech Co., Ltd. (individual(s) not yet identified), Sinsong Center Bldg. 25-12, Yeiouido-dong, Yeoungdeungpo-gu, Seoul, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

211.    Planet Technology Corporation (individual(s) not yet identified), 11F, No. 96, Min Chuan Road, Hsin Tien, Taipei, Taiwan, R.O.C.  Subjects:  standard-setting/development efforts related to 3G mobile wireless technologies.

212.    Putian Capital Group (individual(s) not yet identified), No. 28, Xuan Wu Men, Xi Da Jie, Beijing 100053, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

213.    Renesas Technology Corp. (individual(s) not yet identified), Marunouchi Bldg., 4-1, Marunouchi 2-chome, Chiyoda-ku, Tokyo 100-6334, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

214.    Research In Motion Limited (individual(s) not yet identified), 295 Phillip Street, Waterloo, Ontario, Canada N2L 3W8.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

215.    Sagem SA (individual(s) not yet identified), 27, rue Leblanc, 75512 Paris Cedex 15.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

216.    Samsung Electronics Co. (individual(s) not yet identified), 250, 2-ga, Taepyung-ro, Chung-gu Seoul 100-742, South Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); standard-setting/development efforts related to B3G/4G mobile wireless technologies; and licensing practices of other CDMA or WCDMA intellectual property holders.

217.    Sanyo Electric Co., Ltd. (individual(s) not yet identified), 5-5 Keihan-Hondori, 2-chome, Moriguchi, Osaka 570-8677, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

218.    Seiko Instruments Incorporated (individual(s) not yet identified), Seavans North, 1-2-1, Shibaura, Minato-ku, Tokyo 105-8459, Japan.  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

219.    Sejin Electron Incorporated (individual(s) not yet identified), 60-19, Gasan-Dong, Keumchon-Ku, Seoul, Korea 153-023.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

220.    Sendum Wireless Corporation (individual(s) not yet identified), 4500 Beedie St., Burnaby, British Columbia V5J 5L2, Canada. Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile

telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

221. Sewon Telecom Ltd. (individual(s) not yet identified), 1077-2, Younyang-dong, Kimpo-si, Kyunggi-do, Korea. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

222. Shanghai Huntel Technologies Co., Ltd. (individual(s) not yet identified), Room 820, Hongmei Business Center., No.8075 Humin Road, Xuhui District, Shanghai 200233, China. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

223. SHARP Corporation (individual(s) not yet identified), 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

224. Siemens Aktiengesellschaft (individual(s) not yet identified), Wittelsbacherplatz 2, D-80333 Munich, Germany. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

225. Sierra Wireless, Incorporated (individual(s) not yet identified), 13811 Wireless Way, Richmond, British Columbia V6V 3A4, Canada. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

226. Silicon Laboratories (individual(s) not yet identified), 4635 Boston Lane, Austin, Texas 78735. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

227.    SK Telecom Co., Ltd. (individual(s) not yet identified), 11 Eulijiro, 2-ga, Jung-gu, Seoul 100-999, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

228.    Skyworks Solutions, Incorporated (individual(s) not yet identified), 20 Sylvan Rd., Woburn, Massachusetts 01801.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

229.    SOMA Networks, Incorporated (individual(s) not yet identified), 312 Adelaide St. W., Suite 600, Toronto, Ontario M5V 1R2, Canada.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

230.    Sony Corporation (individual(s) not yet identified), 6-7-35 Kitashinagawa, Shinagawa-ku, Tokyo 141-0001, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

231.    Sony Ericsson Mobile Communications (individual(s) not yet identified), Sony Ericsson House, 202 Hammersmith Rd., London W6 7DN, United Kingdom.  Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

232.    Sprint Nextel Corporation (individual(s) not yet identified), 2001 Edmund Halley Drive, Reston, Virginia 20191.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; selecting mobile wireless technologies; Flarion, its technology and intellectual property holdings; and Qualcomm's proposed acquisition of Flarion.

233.    STMicroelectronics (individual(s) not yet identified), 39, Chemin du Camp des Filles, C.P. 21, CH 1228 Plan-les-Ouates, Geneva, Switzerland.  Subjects:  Qualcomm

licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

234.    Sungil Telecom Co., Ltd. (individual(s) not yet identified), Yongsan-gu Galwol-dong 92 Yongsan Bldg. 2nd Seoul, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

235.    Swisscom AG  (individual(s) not yet identified), CH – 3050 Berne, Switzerland.  Subjects:  Qualcomm licensing practices for WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies; and selecting mobile wireless technologies.

236.    Synertek, Incorporated (individual(s) not yet identified), Trade Tower Rm. 3808, World Trade Center, Samsung-dong, Kangnam-gu, Seoul 135-729, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

237.    TCL Corporation (individual(s) not yet identified), E. Yunshan Road, Jiangbei, Huizhou, Guangdong 516003, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

238.    Techfaith Wireless Communication Technology Limited (individual(s) not yet identified), 3/F M8 West, No. 1 Jiu Xian Qiao East Rd., Beijing 100016, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

239.    Telecom Italia S.p.A. (individual(s) not yet identified), Piazza degli Affari, 2-20123 Milan, Italy.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

240.    Telecommunications Industry Association, TIA (individual(s) not yet identified), 2500 Wilson Blvd., Suite 300, Arlington, Virginia 22201, T: 703-907-7700). Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

241.    Telecommunications Technology Association, TTA (individual(s) not yet identified), 267-2 Seohyeon-dong, Bundang-gu, Seongnam-City, Gyonggi-do, Korea, T: 82 31 724 0114. Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

242.    Telecommunications Technology Committee, TTC (individual(s) not yet identified), Hamamatsu-cho Suzuki Building, 1-2-11,Hamamatsu-cho,Minato-ku, Tokyo105-0013, Japan, T: 81 3 3432 1551. Subjects: standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

243.    Telefónica S.A. (individual(s) not yet identified), Gran Via 28, 29013 Madrid, Spain. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

244.    Telefonaktiebolaget LM Ericsson (individual(s) not yet identified), Torshamnsgatan 23, Kista, SE-164 83 Stockholm, Sweden. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; actual or potential litigation threatened by Qualcomm regarding the licensing of its CDMA or WCDMA technology patents or regarding sales of its CDMA or WCDMA ASICs; standard-setting/development efforts related to 3G mobile wireless technologies; selecting mobile wireless technologies; essentiality of declared CDMA and WCDMA patents; Flarion, its technology and intellectual property holdings; Qualcomm's proposed acquisition of Flarion; Qualcomm's B3G/4G mobile wireless technologies and intellectual property holdings; and standard-setting/development efforts related to B3G/4G mobile wireless technologies.

245.    TeliaSonera AB (individual(s) not yet identified), Sturegatan 1 SE-106 63 Stockholm, Sweden. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

246.    Telit Communications PLC (individual(s) not yet identified), 3 Nirim Street, Tel-Aviv 67060, Israel. Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of

Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; standard-setting/development efforts related to 3G mobile wireless technologies

247.    Telular Corporation (individual(s) not yet identified), 647 N. Lakeview Pkwy, Vernon Hills, Illinois 60061.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

248.    Texas Instruments Incorporated (individual(s) not yet identified), 12500 TI Blvd., Dallas, Texas 75266.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; design, pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; actual or potential litigation threatened by Qualcomm regarding the licensing of its CDMA or WCDMA technology patents or regarding sales of its CDMA or WCDMA ASICs; standard-setting/development efforts related to 3G mobile wireless technologies; and essentiality of declared CDMA and WCDMA patents.

249.    The 3rd Generation Partnership Project, 3GPP (individual(s) not yet identified), ETSI Mobile Competence Centre, 650, route des Lucioles, 06921 Sophia-Antipolis Cedex, France, T: 33 (0)4 92 94 42 00.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

250.    The 3rd Generation Partnership Project 2, 3GPP2 (individual(s) not yet identified), 2500 Wilson Boulevard, Suite 300, Arlington, Virginia 22201, T: 703-907-7497.  Subjects:  standard-setting/development efforts related to 3G and B3G/4G mobile wireless technologies.

251.    T-Mobile USA, Incorporated (individual(s) not yet identified), 12920 S.E. 38th Street, Bellevue, Washington 98006.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

252.    Toshiba Corporation (individual(s) not yet identified), 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

253.    Ubistar Co., Ltd. (individual(s) not yet identified), 5/7/8/9/15F, SeoungDo Building, 587-23 SinsaDong, Gangnam-Gu, Seoul, Korea. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

254.    Uniden Corporation (individual(s) not yet identified), 2-12-7 Hatchobori, Chuo-ku, Tokyo 104-8512, Japan. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

255.    United Computer & Telecommunication, Incorporated (individual(s) not yet identified), 18902 Bardeen Ave, Irvine, California 92612. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

256.    UTStarcom, Incorporated (individual(s) not yet identified), 1275 Harbor Bay Pkwy, Alameda, California 94502. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

257.    Verizon Wireless (individual(s) not yet identified), 180 Washington Valley Road, Bedminster, New Jersey 07921. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

258.    VIA Telecom, Incorporated (individual(s) not yet identified), 3390 Carmel Mountain Rd., San Diego, California, 92121. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

259.    Vitelcom Mobile Technology S.A. (individual(s) not yet identified), Avda. Juan López Peñalver, 7, 29590 Campanillas, Málaga, Spain. Subjects: Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA

mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

260.   VK Corporation (individual(s) not yet identified), Yoido P.O. Box 393, Seoul 150-603, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

261.   Vodafone Group plc (individual(s) not yet identified), The Connection, Newbury, Berkshire RG14 2FN, United Kingdom.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); licensing practices of other CDMA or WCDMA intellectual property holders; and selecting mobile wireless technologies.

262.   Wavecom S.A. (individual(s) not yet identified), 3, Esplanade du Foncet, 92442 Issy-les-Moulineaux, France.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

263.   Westech Korea, Incorporated (individual(s) not yet identified), 548-9, Gajwa 3-Dong, Seo-Gu, Incheon, 404-817, Korea.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

264.   Wherify Wireless, Incorporated (individual(s) not yet identified), 39111 Paseo Padre Pkwy., Suite 304, Fremont, California 94538.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

265.   Wide Telecom Co., Ltd. (individual(s) not yet identified), 514-1 Yatap-Dong, Pundang-Ku, Sungnam-Si, Kyunggi-Do, Korea 463-070.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

266.    ZTE Corporation (Zhongxing Telecommunications Equipment Corp.) (individual(s) not yet identified), Keji Road South, Hi-Tech Industrial Park, Shenzhen 518057, China.  Subjects:  Qualcomm licensing practices for CDMA technology, WCDMA technology, GSM/GPRS/EDGE technology, and H.264 technology; pricing and supply of Qualcomm ASICs for CDMA or WCDMA mobile telecommunications devices (or for similar uses); and licensing practices of other CDMA or WCDMA intellectual property holders.

In addition to the above-named individuals, other persons identified in the documents described in Section B below may have discoverable information that Broadcom may use to support its claims.  Broadcom reserves the right to seek discovery from, and relating to, other persons that may subsequently become known as persons likely to have discoverable information.  The foregoing list also does not include experts and/or consultants who might be retained.

## B.    Relevant Documents and Tangible Things

The types of documents Broadcom may use in support of its claims include but are not limited to:  strategic plans, market studies, sales projections, cost analyses, marketing materials, pricing information, product materials, internal and external correspondence (including negotiation correspondence), draft and final license agreements, and meeting notes and presentations.  Some of these documents are currently in the possession of Broadcom and many already have been produced to Qualcomm.  Broadcom's paper files are located at various Broadcom offices, including its Irvine, California office (5300 California Ave., Irvine, CA 92617), its Matawan, New Jersey office (100 Matawan Road, Suite 210, Matawan, NJ 07747), its San Diego, California office (15434 Innovation Drive, San Diego, CA 92128), its Sunnyvale, California office (190 Mathilda Place, Sunnyvale, CA 94086), and its Tempe, Arizona office (1131 West Warner St., Suite 104, Tempe, AZ 85284).  Broadcom's electronic files are stored on servers located at the aforementioned locations and at Broadcom's San Jose, California office

(3151 Zanker Road, San Jose, CA 95134) and also locally on hard drives and other electronic storage media that Broadcom provides for its employees' use in undertaking their employment with Broadcom, which generally are located at those employees' offices in the aforementioned locations.

Broadcom may also support its claims with documents currently in the possession of Defendant and of third-parties. To the extent any documents are produced in this case in response to any party's document request or subpoena, the documents should be considered disclosed for purposes of Broadcom's obligations under Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure.

Based upon information reasonably available to Broadcom at the present time, the subject matters of the documents that Broadcom may use to support its claims include the following:

- Operations and policies of organizations that have developed or are developing standards related to mobile wireless technology (including adoption of 3G technology and subsequent generations of technology) and video compression technology, and Defendant's participation in those processes.

- Mobile wireless technology and video compression technology markets and the ability of carriers and manufacturers to switch from one mobile wireless technology to another.

- Mobile wireless and video compression technology and product markets in general, including UMTS/WCDMA, GSM, GPRS, and EDGE technology markets.

- Competition for the sale of ASICs for use in mobile wireless handsets.

- Defendant's plans to market and sell ASICs for use in mobile wireless handsets.

- Defendant's plans related to its mobile wireless technology (including CDMA, WCDMA, GSM, GPRS, EDGE, and CDMA EVDO) and video compression technology.

- Defendant's plans related to any mobile wireless technology for or beyond 3G technologies.

38

- Defendant's licenses or offers to license any of its patents relating to mobile wireless technology and video compression technology, and Defendant's licensing practices for technology related to mobile wireless telephony and video compression.

- Pricing and supply of Defendant's ASICs for mobile wireless handsets and for video compression.

- Defendant's practices as to mobile wireless handset manufacturers that are or were considering purchasing or that are or were purchasing ASICs from a supplier other than Defendant.

- Defendant's practices as to mobile wireless handset manufacturers that are or were considering purchasing or that are or were purchasing ASICs exclusively or on preferential terms from Defendant.

- Defendant's communications with any purchaser of ASICs regarding any person's rights to make or sell ASICs for mobile wireless communications or video compression.

- Actual or potential litigation threatened or filed by Defendant regarding the licensing of its patents relating to mobile wireless technology, video compression technology, or regarding sales of its ASICs for mobile wireless handsets or video compression, including actual and threatened litigation against Broadcom and Broadcom's customers and potential customers.

- Licensing practices of intellectual property holders other than Defendant for mobile wireless technology and video compression technology.

## C.    Computation of Damages

Because discovery is just underway, Broadcom has not yet calculated its damages. Such calculations will involve assessments of information not yet collected and/or reviewed, as well as expert analysis. Broadcom anticipates calculating its damages in connection with preparing its disclosures under Rule 26(a)(2) of the Federal Rules of Civil Procedure, and will make any disclosures required under that Rule at the time specified herein, or as the court otherwise orders.

D.     **Insurance Agreement**

Broadcom is not currently aware of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy a judgment.

Dated:  December 21, 2007

George S. Cary (admitted *pro hac vice*)
Mark W. Nelson (admitted *pro hac vice*)
Steven J. Kaiser
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500     Fax: (202) 974-1999

David S. Stone (DSS-8580)
Boies, Schiller & Flexner LLP
150 John F. Kennedy Parkway
Short Hills, NJ 07078
(973) 218-1111     Fax: (973) 218-1106

David Boies (admitted *pro hac vice*)
David A. Barrett (admitted *pro hac vice*)
Steven C. Holtzman (admitted *pro hac vice*)
Scott E. Gant
W. Fred Norton
Kieran P. Ringgenberg

Boies, Schiller & Flexner LLP
570 Lexington Avenue
New York, NY 10022
(212) 446-2300     Fax: (212) 446-2350

*Counsel for Plaintiff Broadcom Corporation*

## PROOF OF SERVICE

I, Steven J. Kaiser, declare:

I am a citizen of the United States and employed in Washington, D.C.  I am over the age of eighteen years and not a party to the within action.  My business address is 2000 Pennsylvania Avenue, N.W., Washington, D.C., 20006-1801.  On [DATE], 2005, I served a copy of the following document: *Broadcom Corporations's Amended Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1).*

☒    by transmitting via email the document(s) listed above on this date.

☐    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Washington, D.C. addressed as set forth below.

☐    by placing the document(s) listed above in a sealed FedEx envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

For Defendant Qualcomm Incorporated:

William J. O'Shaughnessy
McCarter & English
Four Gateway Center
100 Mulberry Street

Evan R. Chesler
Peter T. Barbur
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019-7475

Counsel for Defendant Qualcomm Incorporated

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 21, 2007, at Washington, D.C.

41

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>      Plaintiff,<br><br>   v.<br><br>QUALCOMM, INC.,<br><br>      Defendant | CIVIL ACTION NUMBER<br><br>05-3350 (MLC/JJH)<br><br>[PROPOSED]<br>**ORDER** |

This matter comes before the Court upon the motion of Plaintiff Broadcom Corporation to transfer the case pursuant to 28 U.S.C. § 1404(a) from the District of New Jersey to the Southern District of California as set forth in Broadcom's Memorandum of Points and Authorities in Support of Motion to Transfer Under 28 U.S.C. § 1404(a). The Court being fully apprised of the parties' briefs, arguments of counsel, if any, and the file herein, it is hereby **ORDERED** that the Motion to Transfer is **GRANTED**.

It is further **ORDERED** that this case is hereby transferred to the U.S. District Court for the Southern District of California.

**SO ORDERED** this _____ day of _____, 2008.

_____
Honorable Mary L. Cooper
United States District Court Judge