William J. O'Shaughnessy
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056
973-622-4444

Richard S. Taffet
Philip L. Blum
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

Evan R. Chesler
Peter T. Barbur
Elizabeth L. Grayer
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000

Robert N. Feltoon
CONRAD O'BRIEN GELLMAN & ROHN,
P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102
(215) 864-8064

*Attorneys for Defendant Qualcomm Incorporated*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>                              Plaintiff,<br><br>              v.<br><br>QUALCOMM INCORPORATED,<br><br>                              Defendant. | Civil Action No.  05-3350 (MLC) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF BROADCOM CORPORATION'S
MOTION TO STRIKE AFFIRMATIVE DEFENSE AND RELATED ALLEGATIONS
AND TO DISMISS COUNTERCLAIMS**

## Table of Contents

Page

Table of Authorities .................................................................................................... ii

Preliminary Statement .................................................................................................. 1

Statement of Facts ........................................................................................................ 3

Argument ...................................................................................................................... 7

I.     QUALCOMM'S COUNTERCLAIMS ARE NOT REDUNDANT AND ARE A
       PROPER MECHANISM FOR RESOLVING AN ONGOING DISPUTE
       BETWEEN THE PARTIES ............................................................................... 7

II.    BROADCOM'S MOTION TO STRIKE QUALCOMM'S AFFIRMATIVE
       DEFENSE IS PROCEDURALLY IMPROPER AND WITHOUT MERIT .................... 11

       A.     Qualcomm's Affirmative Defense Was Properly Raised Under the Pretrial
              Order and Under the Federal Rules ...................................................... 12

       B.     Qualcomm's Unclean Hands Defense Is Substantively Proper ............................ 15

Conclusion .................................................................................................................. 20

## Table of Authorities

Page(s)

CASES

*Aldens Inc. v. Packel,*
    524 F. 2d 38 (3d Cir. 1975)....................................................................................7, 11

*Altvater v. Freeman,*
    319 U.S. 359 (1943)...........................................................................................10

*Amwest Surety Ins. Co. v. Concord Bank,*
    No. 4: 00CV1988SNL, 2003 WL 553229 (E.D. Mo. Feb. 4, 2003)....................7, 8

*Associated General Contractors of California, Inc. v. California State Council of
    Carpenters,*
    459 U.S. 519 (1983)............................................................................................8

*Blank v. Kirwan,*
    39 Cal. 3d 311 (1985) .........................................................................................8

*Broadcom Corp. v. Qualcomm, Inc.,*
    501 F.3d 297 (3d Cir. 2007)...........................................................................13, 14

*Californians for Disability Rights v. Mervyn's, LLC,*
    39 Cal. 4th 223 (2006) ........................................................................................9

*Careau & Co. v. Sec. Pac. Bus. Credit,*
    222 Cal. App. 3d 1371 (1990) .............................................................................8

*Cipollone v. Liggett Group, Inc.,*
    789 F.2d 181 (3d Cir. 1986)............................................................................15, 18

*Circuit City Stores, Inc. v. Citgo Petroleum Corp.,*
    No. 92-7394, 1994 WL 483463 (E.D. Pa. Sept. 7, 1994) ....................................15

*Daro v. Superior Court,*
    151 Cal. App. 4th 1079 (2007) ............................................................................9

*De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.,*
    No. CIV. A. 00-2355, 2001 WL 799870 (E.D. Pa. July 12, 2001)...........................8

*England v. Deere & Co.,*
    158 F. Supp. 904 (S.D. Ill. 1958).......................................................................10

*ESS Tech., Inc. v. PC-Tel, Inc.,*
    No. C-99-20292 RMW, 1999 WL 33520483 (N.D. Cal. Nov. 4, 1999) .................14

*FDIC v. Project Dev. Corp.,*
    819 F.2d 289, 1987 WL 37488 (6th Cir. May 27, 1987)........................................7

*Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists,*
    227 Cal. App. 2d 675 (1st Dist. 1964) ...............................................17, 19

*Great W. Life Assurance Co. v. Levithan,*
    834 F. Supp. 858 (E.D. Pa. 1993) ...................................................12

*Hartless v. Clorox Co.,*
    No. 06CV2705, 2007 WL 3245260 (S.D. Cal. Nov. 2, 2007)................................9

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.,*
    434 F. Supp. 2d 598 (N.D. Iowa 2006)................................................15

*John Evans Sons, Inc. v. Majik-Ironers, Inc.,*
    95 F.R.D. 186 (E.D. Pa. 1982)......................................................11

*Kendall-Jackson Winery, Ltd. v. Superior Ct.,*
    76 Cal. App. 4th 970 (1999) .......................................................19

*Laker Airways Ltd. v. Pan American World Airways, Inc.,*
    604 F. Supp. 280 (D.D.C. 1984)....................................................20

*Leach v. Ross Heater & Mfg. Co.,*
    104 F.2d 88 (2d Cir. 1939).........................................................11

*Linker v. Custom-Bilt Machinery Inc.,*
    594 F. Supp. 894 (E.D. Pa. 1984)..................................................16

*Lucent Techs. v. Microsoft Corp.,*
    No. 06-CV-0684, 2008 WL 410692 (S.D. Cal. Feb. 12, 2008)............................18

*Madjar v. New Jersey,*
    Civ. No. 92-5265 (CSF), 1993 WL 152066 (D.N.J. Apr. 5, 1993) .......................16

*McKennon v. Nashville Banner Publ'g Co.,*
    513 U.S. 352 (1995)...............................................................17

*Merit Ins. Co. v. Leatherby Ins. Co.,*
    581 F.2d 137 (7th Cir. 1978) ......................................................9

*Motors, Inc. v. Times Mirror Co.,*
    102 Cal. App. 3d 735 (2d Dist. 1980)...............................................9

*N.C. Elec. Membership Corp. v. Carolina Power & Light Co.,*
    666 F.2d 50 (4th Cir. 1981) .......................................................19

*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*,
    331 F. Supp. 92 (C.D. Cal. 1971) ....................................................................20

*Olsen v. Breeze, Inc.*,
    48 Cal. App. 4th 608 (1996) ..........................................................................9

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
    133 Cal. App. 4th 658 (2005) ........................................................................19

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945) ......................................................................................18

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) ...........................................................................8

*R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*,
    No. 99-C-1174, 2001 WL 747422 (N.D. Ill. Jun. 29, 2001) ...............18, 19

*Serv. by Medallion, Inc. v. Clorox Co.*,
    44 Cal. App. 4th 1807 (1996) ........................................................................9

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) ......................................................................................8

*Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.*,
    160 Cal. App. 4th 528 (2008) ......................................................................17

*Tonka Corp. v. Rose Art Indus.*,
    836 F. Supp. 200 (D.N.J. 1993) ...................................................................12

*Toscano v. Greene Music*,
    124 Cal. App. 4th 685 (2004) ........................................................................9

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1965) ....................................................................................19

*United States v. City of Fairview Heights*,
    132 F. Supp. 2d 684 (S.D. Ill. 2000) ...........................................................15

*United States v. Pennsalt Chemical Corp.*,
    262 F. Supp. 101 (E.D. Pa. 1967) ...............................................................16

*Veltman v. Norton Simon*,
    425 F. Supp. 774 (S.D.N.Y. 1977) ..............................................................11

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ......................................................................................8

**STATUTES & RULES**

Cal. Bus. & Prof. Code § 17200 ...............................................................................4, 9

Fed. R. Civ. P. 8 ..............................................................................................15

Fed. R. Civ. P. 12 ............................................................................................15

Fed. R. Civ. P 12(b) ........................................................................................14

Fed. R. Civ. P 12(f) .............................................................................12, 14, 15

Fed. R. Civ. P. 26(b)(1) ...................................................................................14

Fed. R. Civ. P. 41(a)(1) ......................................................................................9

**OTHER AUTHORITIES**

5C Wright & Miller, *Federal Practice and Procedure* § 1380 ......................................15

6 Wright & Miller, *Federal Practice and Procedure* § 1406 & n.13 ........................................9, 10

**Preliminary Statement**

Broadcom's motion to dismiss Qualcomm's Counterclaims and strike its affirmative defense of unclean hands is built on a series of erroneous factual and legal assumptions.

Broadcom bases its motion to dismiss the Counterclaims solely on the erroneous premise that, because Broadcom's claims and Qualcomm's Counterclaims touch upon the same subject matters—*i.e.,* whether Qualcomm's IPR disclosures were timely and whether its licensing offers to Broadcom were FRAND—the Counterclaims are "redundant" of Broadcom's claims. Even overlooking that Courts virtually never dismiss a counterclaim as redundant until *after* the parties have had an opportunity to develop their claims and counterclaims through discovery, the law is quite clear that a counterclaim should be dismissed only if it is *completely* redundant of a plaintiff's claim, such that resolution of the latter *necessarily* entails resolution of the former. Here, however, Broadcom has brought claims (*e.g.,* antitrust, unfair competition, fraud) that have multiple elements (*e.g.,* market power, intent, reliance, causation, injury) and thus might be resolved in a myriad of ways that would never resolve the core issue of whether Qualcomm's IPR disclosures were timely and whether its licensing offers were FRAND. Accordingly, and especially because these are hotly disputed issues that Broadcom has raised and continues to raise in multiple fora around the globe, Qualcomm's Counterclaims are not redundant of Broadcom's claims and, therefore, are entirely proper.

Broadcom's motion to strike Qualcomm's affirmative defense of unclean hands is based on the erroneous premises that (a) Qualcomm's affirmative defense is "premature" and is improperly being used to justify discovery to which Qualcomm would not otherwise be entitled and (b) Qualcomm's affirmative defense is improper because it is raised *solely* against Broadcom's federal antitrust claims. But there is no law—and certainly no law cited by

Broadcom—that prevents affirmative defenses from being asserted "too early"; the law only prohibits asserting affirmative defenses too late. Moreover, Broadcom's suggestion that Qualcomm is using its affirmative defense to play discovery "games" is preposterous. To begin with, and as described in greater detail below, the factual allegations made in support of Qualcomm's affirmative defense are exactly the same factual allegations that are integral to and made in support of Qualcomm's Counterclaims. Indeed, this is why Qualcomm asserted its affirmative defense at the same time as Qualcomm was required by Court order to file its Counterclaims, even though this was earlier than defendants typically assert an affirmative defense. Thus, Qualcomm would be entitled to the discovery at issue because it is relevant to Qualcomm's Counterclaims regardless of whether it is also relevant to any affirmative defense.

In any event, like every defendant, Qualcomm is entitled to take discovery related to its defenses as well as Counterclaims, regardless of whether they are regular defenses or defenses that need to be affirmatively pleaded and regardless of whether they have yet been formally incorporated into a pleading or other document filed with the Court. Indeed, it is Broadcom's motion to strike, not Qualcomm's affirmative defense, that smacks of gamesmanship. Broadcom knows that fact discovery closes in approximately seven months and that the Court has not indicated when it intends to decide Qualcomm's pending motion to dismiss directed to Broadcom's state law claims. Yet, according to Broadcom, unless and until that motion is decided and it becomes "timely" for Qualcomm to file its answer and affirmative defenses, Qualcomm has no right to take discovery directed to those affirmative defenses. Meanwhile, Broadcom would be free to continue taking searching discovery directed to its own claims. This is plainly wrong.

Broadcom's suggestion that Qualcomm's affirmative defense is asserted only against Broadcom's federal antitrust claims is unsupported by any specific reference to Qualcomm's Counterclaims and Affirmative Defense, and is simply wrong. Qualcomm's unclean hands affirmative defense is also applicable to and asserted against Broadcom's state law claims. Accordingly, the authorities Broadcom cites for the proposition that unclean hands is not a defense to a federal antitrust claim are beside the point. Moreover, and as further discussed below, Qualcomm's affirmative defense is based on conduct that is plainly "unclean" under California law.

For all these reasons, Broadcom's motion should be denied in its entirety.

### Statement of Facts[1]

Broadcom's original Complaint and First Amended Complaint alleged violations of federal and state antitrust laws as well as various common law causes of action, based on allegations that Qualcomm had engaged in misconduct before various standards development organizations ("SDOs"),[2] including failing to license its intellectual property rights ("IPR") that

---

[1] For purposes of this motion, we rely only on the allegations in Broadcom's Second Amended Complaint, the allegations in Qualcomm's Counterclaims and Affirmative Defense, matters of public record, and documents that form the basis of the parties' claims or defenses. Citations in the form (SAC ¶ [number]) are citations to the referenced paragraph of Broadcom's Second Amended Complaint. (Dkt. 106.) Citations in the form (CC ¶ [number]) are citations to the referenced paragraph of Qualcomm's Counterclaims and Affirmative Defense. (Dkt. 139.) Citations in the form (Dkt. [number]) are citations to documents on this Court's docket sheet for this case.

[2] SDOs are nongovernmental organizations that develop standards to ensure the compatibility and interoperability of the products made by different manufacturers. (SAC ¶¶ 5, 18-19.) The principal SDOs that the SAC focuses on are the European Telecommunications Standards Institute ("ETSI"), the Joint Video Team ("JVT") and the Institute of Electrical and Electronics Engineers ("IEEE") 802.20 working group. ETSI led the standardization process for the Global System for Mobility ("GSM") family of wireless standards, including GSM Packet Radio Service ("GPRS"), Enhanced Data Rates for GSM Evolution ("EDGE"), and Universal Mobile Telecommunications System ("UMTS"). (SAC ¶ 30.) The JVT is an SDO whose purpose is to develop H.264, a video compression standard with improved compression and picture quality. (SAC ¶¶ 173-74.) Lastly, the IEEE 802.20 working group is developing a standard known as IEEE 802.20, which relates to fourth-generation wireless technology. (SAC ¶¶ 247-49.)

are essential to certain wireless standards ("essential IPR") on fair, reasonable and non-discriminatory ("FRAND") terms, and deceiving the SDOs about its intent to do so. This Court dismissed all of Broadcom's claims and, by opinion dated September 4, 2007, the Third Circuit affirmed in part and reversed in part that dismissal. Among other things, the Third Circuit reinstated certain of Broadcom's claims under Section 2 of the Sherman Act as well as its pendent state-law claims. (Dkt. 92, 95.) On November 2, 2007, Broadcom filed a Second Amended Complaint in this Action (Dkt. 106; hereinafter, the "Second Amended Complaint") incorporating new claims and allegations, including state law claims that Broadcom had asserted against Qualcomm in a separate state court action filed in California in 2007 (which the California court stayed in favor of this action). (CC ¶ 72.)

Broadcom's Second Amended Complaint purports to state three claims under Section 2 of the Sherman Act (Counts I-III), as well as five state law causes of action: breach of contract (Count IV); tortious interference with prospective economic advantage (Count V); promissory estoppel (Count VI); fraud (Count VII); and alleged violations of California's Unfair Competition Law ("UCL") (Count VIII). Broadcom's claims are based, in part, on allegations that Qualcomm intentionally failed timely to disclose its essential IPR to various SDOs and failed to offer licenses to its essential IPR on FRAND terms, and deceived the SDOs about its intent to do so.[3] Pursuant to the Amended Pretrial Scheduling Order entered by Judge Hughes on December 4, 2007 (Dkt. 115, hereinafter the "Pretrial Order"), Qualcomm moved to dismiss claims IV through VIII of the Second Amended Complaint on December 21, 2007 (Dkt. 118); that motion is now pending, and Broadcom is nevertheless taking discovery on those claims.

---

[3] The legal theories and factual allegations underlying Broadcom's state-law claims (and the deficiencies of both) are discussed at greater length in Qualcomm's Memorandum in Support of Defendant's Motion to Dismiss Claims Four Through Eight of Plaintiff's Second Amended Complaint. (Dkt. 118.)

The Pretrial Order provides that fact discovery is to conclude on or before December 19, 2008, and requires Qualcomm to serve and file any counterclaims no later than February 29, 2008, "[n]otwithstanding the pendency of any motion to dismiss, and regardless of whether [Qualcomm] has served and filed an answer". (Pretrial Order ¶¶ 1, 6.) Accordingly, on February 29, 2008, Qualcomm filed its Counterclaims with two Counts seeking declaratory judgments. Qualcomm also asserted an affirmative defense of unclean hands based on the same factual allegations underlying its Counterclaims.

Qualcomm's Counterclaims and Affirmative Defense set forth a factual summary of the IPR-related policies of ETSI (one of the SDOs at issue) (CC ¶¶ 31-39), of Qualcomm's disclosures of IPR to ETSI (CC ¶¶ 40-55), and of Qualcomm's offers to license its IPR to Broadcom, all of which Broadcom rejected (CC ¶¶ 56-85). Qualcomm further alleges that Broadcom has engaged, and is engaging, in a conspiracy with other companies in the wireless technology industry to entrench their own position, to reduce the threat of competition by new entrants enabled by Qualcomm's open, fair, and non-discriminatory licensing of its IPR, and to attack Qualcomm's business model in order to diminish the value of its IPR. (CC ¶¶ 86-110.) This conspiracy even has a code name among its members: Project Stockholm. (CC ¶ 88.)

Broadcom's role in this conspiracy includes collusion with other Project Stockholm companies on business tactics, public relations ploys, activities before SDOs, and worldwide litigation strategies in an effort to weaken or eliminate competition from Qualcomm and its downstream customers and licensees. (CC ¶¶ 85-110.) For example, Qualcomm alleges that the licensing terms Qualcomm offered to Broadcom were FRAND, and that some in fact were substantially similar to terms agreed to by several other major chip suppliers. (CC ¶ 83.) Nevertheless, Broadcom rejected all of Qualcomm's FRAND licensing offers, demanding terms

5

substantially worse for Qualcomm than those in any agreement Qualcomm has reached with any similarly situated chip supplier. (CC ¶ 84.) It is now apparent that Broadcom was not negotiating in good faith, but rather was and is using the licensing negotiations as a sham in furtherance of Project Stockholm's anticompetitive agenda. Indeed, Broadcom's prosecution of this litigation appears to be not an effort to redress a bona fide legal claim, but rather a pretextual exercise coordinated with Qualcomm's competitors as part of a strategy to devalue Qualcomm's IPR and technology and otherwise commercially harm Qualcomm—a strategy referred to within Broadcom as "Project Koala". (CC ¶¶ 75-82, 86-94, 98-106.) Broadcom's participation in the Project Stockholm conspiracy also includes coordination of licensing behavior and SDO activity in an effort to fix prices and prevent the standardization of Qualcomm technology that would compete against the Project Stockholm group's technology. (CC ¶¶ 95-109.)

Based on these allegations, Qualcomm's pleading asserts two declaratory judgment counterclaims and one affirmative defense. Counterclaim I seeks a declaratory judgment that Qualcomm's disclosure of IPR to ETSI (as set forth in Qualcomm's pleading) was timely under the ETSI IPR Policy. (CC ¶¶ 114-17.) Counterclaim II seeks a declaratory judgment that the terms offered by Qualcomm to Broadcom for rights to Qualcomm's patents are FRAND under the ETSI IPR Policy. (CC ¶¶ 118-21.) Both counterclaims incorporate the factual allegations concerning Broadcom's collusive and anticompetitive behavior (CC ¶¶ 114, 118), making clear that Broadcom's failure to obtain a license from Qualcomm has nothing to do with Qualcomm's SDO activities or the terms of Qualcomm's licensing offers, but rather is a direct result of Broadcom's own anticompetitive, collusive and bad-faith conduct. Qualcomm's declaratory judgment counterclaims seek to put an end to that conduct by removing the pretext that allows Broadcom and its Project Stockholm co-conspirators to continue their campaign of

harassment.  Conversely, Qualcomm's unclean hands defense raises the same allegations as a bar to Broadcom's recovery in this action.

**Argument**

## I.    QUALCOMM'S COUNTERCLAIMS ARE NOT REDUNDANT AND ARE A PROPER MECHANISM FOR RESOLVING AN ONGOING DISPUTE BETWEEN THE PARTIES

The *only* ground Broadcom asserts as a basis for dismissing Qualcomm's Counterclaims is that they are supposedly redundant of Broadcom's claims against Qualcomm. Although Broadcom also asserts that Qualcomm's allegations relating to Project Stockholm and Project Koala "are immaterial" to Qualcomm's Counterclaims (Mem. Supp. Mot. to Strike at 7-9), that argument is made solely in support of Broadcom's motion to strike Qualcomm's affirmative defense of unclean hands; the motion to dismiss the Counterclaims is based on solely on alleged redundancy.  (Mem. Supp. Mot. to Strike at 12-17.)

As the very cases Broadcom cites make clear, however, a declaratory judgment counterclaim should be dismissed as redundant only where the counterclaim is *completely* redundant with a plaintiff's claim, such that resolution of the latter *necessarily* entails resolution of the former.  For example, in *Aldens Inc. v. Packel*, 524 F. 2d 38 (3d Cir. 1975) (cited in Mem. Supp. Mot. to Strike at 13), the Third Circuit affirmed the grant of summary judgment dismissing defendant's counterclaim seeking a declaration of a statute's constitutionality only because the plaintiff was seeking a declaration of *exactly the opposite, i.e.,* the statute's unconstitutionality— but reversed the award of summary judgment dismissing a claim for injunctive relief under *the same statute.*  Similarly, in *FDIC v. Project Dev. Corp.*, 819 F.2d 289, 1987 WL 37488 (6th Cir. May 27, 1987) (cited at Mem. Supp. Mot. to Strike at 13 n.9), the plaintiff sought a declaration that its lease agreement with defendant was valid, while the defendant sought a declaration that the lease was void.  *FDIC*, 1987 WL 37488 at *3.  Likewise, in *Amwest Surety Ins. Co. v.*

7

*Concord Bank*, No. 4: 00CV1988SNL, 2003 WL 553229 (E.D. Mo. Feb. 4, 2003) (*cited in* Mem.

Supp. Mot. to Strike at 13 n.9), the court explicitly noted that the parties were seeking "mirror-

image" relief: "Plaintiff seeks a declaration that its [letter of credit] was proper and should have

been honored by the defendant. Defendant seeks a declaration that the [letter of credit] was

improper and that it had cause to dishonor it." *Amwest Surety*, 2003 WL 553229 at *4 & n.7.[4]

        These cases are not applicable to Qualcomm's Counterclaims against Broadcom.

Broadcom's claims against Qualcomm are not simply for a declaratory judgment that

Qualcomm's IPR disclosures were untimely or that its license offers were not FRAND, such that

mirror image counterclaims would be redundant. Rather, Broadcom has asserted affirmative

claims for damages and injunctive relief under the Sherman Act and various state law theories

(unfair competition, fraud, breach of contract)—each of which will require Broadcom to prove

multiple elements (*e.g.*, market power, intent, causation, injury)[5] beyond whether Qualcomm's

---

[4] Similarly, in *De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.*, No. CIV. A. 00-2355, 2001 WL 799870 (E.D. Pa. July 12, 2001), the defendant essentially sought a declaratory judgment on each of the grounds on which it sought to refute plaintiff's contract claims, as well as a declaratory judgment "defining the rights and obligations of all parties under the various ... agreements" upon which plaintiff had sued. 2007 WL 799870 at *3.

[5] Apart from the antitrust standing and antitrust injury elements of Broadcom's federal antitrust claims, *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 534-35 & n.31 (1983), Broadcom must also satisfy the elements of its theories of monopolization and attempted monopolization. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (to state a claim for monopolization, a plaintiff must allege both "the possession of monopoly power in a relevant market" and "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident"); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (the elements of an attempted monopolization claim are "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power"); *accord Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 442 (3d Cir. 1997). Broadcom will similarly have the burden of establishing each element of its common-law claims. *Careau & Co. v. Sec. Pac. Bus. Credit*, 222 Cal. App. 3d 1371, 1388 (1990) ("a cause of action for damages for breach of contract is comprised of the following elements: [the contract, plaintiff's performance, defendant's breach] and the resulting damages to plaintiff"); *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985) ("The elements of the tort of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and

IPR disclosures were timely under the ETSI rules and whether Qualcomm's license offers were

FRAND. If Broadcom's claims were resolved against Broadcom for failure to establish any of

these other elements, the core issues of whether Qualcomm's IPR disclosures were timely and

whether its license offers were FRAND would remain unresolved.[6] It is, of course, for this very

reason that Qualcomm brought its Counterclaims seeking declaratory judgments. Qualcomm

---

some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant."); *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 692 (2004) (under California law, a claim for promissory estoppel has four elements: (1) a clear promise; (2) reliance; (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.'"); *Serv. by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996) ("A complaint for fraud must allege the following elements: (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages."). Finally, under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. C. § 17200 *et seq.*, Broadcom will have the burden of proving not only causation and injury-in-fact in the form of lost money or property, *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006); *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1098-99 (2007), but also establish facts sufficient to satisfy the statutory requirement of "unlawful", "unfair" or "fraudulent" conduct. *See, e.g., Daro*, 151 Cal. App. 4th at 1093 ("unlawful" prong satisfied by business practices that are in violation of some other provision of law); *Hartless v. Clorox Co.*, No. 06CV2705, 2007 WL 3245260, at *5 & n.5 (S.D. Cal. Nov. 2, 2007) (common-law claims insufficient to satisfy the "unlawful" prong of the UCL); *Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 618 (1996) ("fraudulent " prong of the UCL requires a showing that "members of the public are likely to be deceived"); *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (2d Dist. 1980) ("unfair" prong of the UCL "involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer…[and a weighing of the] utility of the defendant's conduct against the gravity of the harm to the alleged victim").

[6] Indeed, even though this case has been pending for almost three years and millions of pages of documents have been produced in discovery, because Qualcomm has not yet filed an answer or motion for summary judgment, Broadcom could dismiss its claims at any time without prejudice. *See* Fed. R. Civ. P. 41(a)(1) (allowing voluntary dismissal without prejudice at any time prior to filing of an answer or motion for summary judgment); *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 143 (7th Cir. 1978) (voluntary dismissal by notice permitted even where significant discovery has been undertaken). This is precisely why courts strongly disfavor dismissals of counterclaims for redundancy at the pleading stage. *See* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1406 (3d ed. 2008) (noting that, because a plaintiff could bring an action and then dismiss it prior to trial without prejudice, leaving the defendant without resolution of the issues, "the interposition of a counterclaim for declaratory relief could be used to protect defendant from plaintiff's harassment").

wants to assure that the core issues of its timely IPR disclosures and FRAND license offers are resolved, regardless of how Broadcom's claims are resolved.

In analogous situations, where the declaration sought by a counterclaim plaintiff represents only one of several possible bases for resolving the adverse plaintiff's claims in the defendant's favor, courts routinely deny motions to dismiss declaratory judgment counterclaims. For example, when a plaintiff brings a claim for patent infringement, and a defendant asserts a counterclaim seeking a declaratory judgment of invalidity, it is well settled that the claims are not redundant, because invalidity is only one possible ground for resolving an infringement claim. *See, e.g., Altvater v. Freeman*, 319 U.S. 359, 363 (1943) ("Though the decision of non-infringement disposes of the bill and answer, it does not dispose of the counterclaim which raises the question of validity".); *England v. Deere & Co.*, 158 F. Supp. 904, 905 (S.D. Ill. 1958) (collecting cases); *see generally* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (hereinafter "*Wright & Miller*") § 1406 & n.13 (3d ed. 2008) (discussing the non-redundancy of counterclaims that address only one possible basis for resolving a plaintiff's claims). The same logic applies here: because a determination that Qualcomm's IPR disclosures were timely and that its license offers were FRAND is only one possible basis for resolving Broadcom's claims, Qualcomm is entitled to seek declaratory relief to that effect.

Moreover, while this Court certainly would have the discretion to dismiss a *wholly* redundant counterclaim, that discretion must be exercised with a view to the sensitivity to the procedural posture of the case. In particular, "it is very difficult to determine whether [a] declaratory judgment counterclaim really is redundant prior to trial". 6 *Wright & Miller* § 1406. For this reason, courts frequently defer motions to dismiss counterclaims for redundancy until the later stages of case development. *Id.* ("[T]he safer course for the court to follow is to deny a

10

request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action."); *Leach v. Ross Heater & Mfg. Co.*, 104 F.2d 88, 91-92 (2d Cir. 1939) (L. Hand, J.) ("While it may turn out at trial that a decision on the merits of the plaintiff's bill will dispose of the controversy between the parties completely and render declaratory judgment unnecessary, in which case the counterclaim may be dismissed, we are of opinion that it was error to strike out the counterclaim at [the pleadings] stage."). Indeed, several of the cases Broadcom cites as examples of dismissals for redundancy were decided not at the pleading stage, but at very late stages of case development—in one instance after *denial* of the motion to dismiss at an earlier stage of the case. *John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186 (E.D. Pa. 1982) (eve-of-trial *sua sponte* decision by court to reconsider previously denied motion to dismiss counterclaims in context of plaintiff's motion for voluntary dismissal with prejudice of its own complaint) (cited in Mem. Supp. Mot. to Strike at 13); *see also Aldens Inc. v. Packel*, 524 F. 2d 38 (3d Cir. 1975) (summary judgment stage) (cited in Mem. Supp. Mot. to Strike at 13); *Veltman v. Norton Simon*, 425 F. Supp. 774 (S.D.N.Y. 1977) (post-trial motions stage) (cited in Mem. Supp. Mot. to Strike at 13-14 n.9). Consequently, even if Qualcomm's counterclaims were potentially redundant with Broadcom's claims (and they are not), it would be error to dismiss Qualcomm's counterclaims for declaratory judgment on redundancy grounds until the case is fully developed and the factual and legal disputes are ready for presentation to the fact finder.

## II.    BROADCOM'S MOTION TO STRIKE QUALCOMM'S AFFIRMATIVE DEFENSE IS PROCEDURALLY IMPROPER AND WITHOUT MERIT

Broadcom makes two arguments in support of its motion to strike Qualcomm's affirmative defense of unclean hands, one procedural and one substantive. Neither has any merit.

A.   Qualcomm's Affirmative Defense Was Properly Raised Under the Pretrial Order and Under the Federal Rules

To succeed on a motion under Rule 12(f) to strike a defense as insufficient, the moving party has the burden of showing both that (1) "the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense" *and* that (2) "the moving party is prejudiced by the presence of the allegations in the pleading." *Great W. Life Assurance Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993) (emphasis added); *see also Tonka Corp. v. Rose Art Indus.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (holding that a motion to strike allegations should be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues"). Taking the second prong of this test first, Broadcom cannot establish that it has been prejudiced in any way by Qualcomm's assertion of its unclean hands affirmative defense.

The only alleged prejudice to which Broadcom points is the notion that Qualcomm's affirmative defense is being used as a justification for discovery to which Qualcomm would not otherwise be entitled. (Mem. Supp. Mot. to Strike at 4-5.)[7] That argument fails for at least two reasons. *First*, the same factual allegations underlying Qualcomm's affirmative defense that Broadcom seeks to strike are also made in support of Qualcomm's Counterclaims. Thus, Qualcomm would be entitled to discovery relating to those allegations regardless of whether, in addition to asserting Counterclaims, Qualcomm asserted an unclean hands affirmative defense. Broadcom tries to sidestep this point by arguing, in addition, that *some* of Qualcomm's factual allegations relating to Project Stockholm and Project Koala are "not

---

[7] Broadcom's passing reference to being "force[d] … to answer Qualcomm's allegations before Qualcomm has had to answer Broadcom's" (Mem. Supp. Mot. to Strike at 5), does not appear to be offered as an example of prejudice, and in any event Broadcom has not cited any authority to suggest that the *timing* of a party's response to a pleading, as opposed to the obligation to respond itself, can give rise to prejudice sufficient to ground a motion to strike.

material" to the Counterclaims.[8]  (Mem. Supp. Mot. to Strike at 7-9.)  But that argument is sheer sophistry.  One of Qualcomm's Counterclaims seeks a declaratory judgment that Broadcom's licensing offers to Broadcom were FRAND—that is, fair, reasonable and nondiscriminatory.  One could not begin to examine that issue without looking at the long history of licensing negotiations between Qualcomm and Broadcom, including what offers were made and why they were turned down.  The gist of Broadcom's allegations in this case (and in numerous other fora around the globe) is that Broadcom lacks a license to Qualcomm's IPR because Qualcomm has refused to offer a license on FRAND terms.  (*E.g.*, SAC ¶¶ 99-123.)  Surely, therefore, Qualcomm is entitled to support its request for a declaration that licensing offers were FRAND with evidence that the true reason Broadcom lacks a license to Qualcomm's IPR has nothing to do with whether Qualcomm's offers were FRAND—it has to do with Broadcom's participation in the Project Stockholm conspiracy, as well as Broadcom's own Project Koala.[9]

   *Second*, under the plain text of Rule 26(b)(1), a party is entitled to take discovery to support its "defenses"; the only limitation is that the discovery must be reasonably calculated

---

[8] Broadcom does *not* seek to strike certain allegations relating to Project Stockholm, including the allegation that Qualcomm offered Broadcom licensing terms substantially similar to those offered to similarly situated chipset suppliers, but that Broadcom rejected those offers and instead demanded unreasonable terms and initiated litigation to further the Project Stockholm agenda.  (*Compare* Mem. Supp. Mot. to Strike at 7; *with* CC ¶¶ 83-85.)  Instead, Broadcom seeks to strike the factual context necessary to understand the background for these allegations, claiming that this background is "immaterial".

[9] Nothing in the two FRAND cases cited by Broadcom is to the contrary.  The Third Circuit's decision in *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297 (3d Cir. 2007), does not set down any rule concerning the type of evidence that would be relevant to a determination as to whether a particular licensing offer is FRAND; rather, that opinion merely notes that, "*given a fully-developed factual record*", such a determination should be within a court's competence. *Broadcom*, 501 F.3d at 314 n.8.  This can hardly be read as supporting a motion to strike allegations without permitting any discovery on their underlying facts.  Similarly, in *ESS Tech., Inc. v. PC-Tel, Inc.*, No. C-99-20292 RMW, 1999 WL 33520483 (N.D. Cal. Nov. 4, 1999), the court did not endeavor to set down an exclusive list—or indeed any list—of facts relevant to the FRAND inquiry.  Rather, the court merely noted that it could "envision a scenario" where licensing terms offered to other licensees would aid in determining what a FRAND license would look like. *ESS Tech.*, 1999 WL 33520483 at *4.

to lead to the discovery of admissible evidence.  Contrary to Broadcom's argument—for which it offers no support—a party is not limited in taking discovery to defenses that have formally been served on opposing counsel at the same time as the defendant's answer.  Indeed, any such rule would make no sense because in many cases such as this one, by virtue of a pending motion to dismiss, no answer will be served until near the end of fact discovery or even after fact discovery closes.  Thus, Broadcom's novel and unsupported argument should be seen for what it is:  a disingenuous effort to prevent Qualcomm from *ever* taking discovery to support its affirmative defenses.

In any event, there is absolutely no basis for Broadcom's suggestion that Qualcomm's affirmative defense is improperly "premature".  Rule 12(b) requires that defenses be included in a responsive pleading but does not prohibit earlier assertion of such defenses.  Similarly, Rule 12(f) does not identify as a basis for a motion to strike the "premature" assertion of anything.  The rule allows a motion to strike only with respect to an "insufficient defense" or any "redundant, immaterial, impertinent, or scandalous matter".  There is nothing impertinent about providing *earlier* notice of a party's defenses than is required under the rules.

The potential for gamesmanship and delay associated with a motion to strike is one of the chief reasons why such motions are so strongly disfavored.[10]  *See Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986) (reversing the grant of a motion to strike on grounds that "a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent'"); *United States v. City of Fairview Heights*, 132 F. Supp. 2d 684, 687 (S.D. Ill. 2000) ("As a general rule, motions to strike are disfavored, in part because they

---

[10]  Indeed, Broadcom essentially admits that its purpose in moving to strike Qualcomm's affirmative defense is delay.  *See* Mem. Supp. Mot. to Strike at 5 (complaining that failure to strike Qualcomm's affirmative defense would "force Broadcom to answer Qualcomm's allegations before Qualcomm has had to answer Broadcom's").

tend to delay judicial proceedings."); *see generally* 5C *Wright & Miller* § 1380 ("Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted." (footnotes omitted)). Requiring Qualcomm to wait until its motion to dismiss is resolved and only then assert a key affirmative defense—a defense which could have been asserted with Qualcomm's Counterclaims that are based on the same factual allegations—would not remove any issue from the case, and would not narrow any of the disputes between the parties. Because it would have no other effect than to delay, Broadcom's motion to strike Qualcomm's affirmative defense on grounds that it is "premature" should be denied.[11]

> B.    <u>Qualcomm's Unclean Hands Defense Is Substantively Proper</u>

Broadcom's substantive argument against Qualcomm's affirmative defense has no more merit than its procedural argument. In considering a motion to strike an affirmative defense, "the court's discretion is narrowly circumscribed". *Madjar v. New Jersey*, Civ. No. 92-5265 (CSF), 1993 WL 152066, at *2 (D.N.J. Apr. 5, 1993) (internal quotation omitted) (denying plaintiff's motion to strike an affirmative defense added to defendant's amended answer). "An affirmative defense can be stricken only if the defense asserted could not possibly

---

[11] Moreover, Broadcom has cited no caselaw in support of its absurd alternative request that the Court should deem Qualcomm's Counterclaims and Affirmative Defense be its answer to Broadcom's complaint and preclude any further pleading. Qualcomm is not required to answer the complaint until its motion to dismiss has been decided. *Circuit City Stores, Inc. v. Citgo Petroleum Corp.*, No. 92-7394, 1994 WL 483463, at *4 (E.D. Pa. Sept. 7, 1994) ("A partial 12(b) motion enlarges the time to file an answer."); *see also Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 598, 639 (N.D. Iowa 2006) (declaring that dividing claims for two different schedules "makes no sense"). Accordingly, the preclusion and waiver provisions of Rules 8 and 12 of the Federal Rules of Civil Procedure, on which Broadcom purports to rely, are simply inapplicable at this stage of the proceedings. *See* Mem. Supp. Mot. to Strike at 12. Once the Court resolves the pending motion to dismiss, Qualcomm will file its answer to so much of Broadcom's complaint as remains pursuant to the schedule established by the case management orders entered by the Court.

prevent recovery under any pleaded or inferable set of facts." *Linker v. Custom-Bilt Machinery Inc.*, 594 F. Supp. 894, 898 (E.D. Pa. 1984) (internal quotation marks omitted), quoting *United States v. Pennsalt Chemical Corp.*, 262 F. Supp. 101 (E.D. Pa. 1967). Under these standards, Broadcom's motion to strike fails.

To begin with, Broadcom's entire argument is premised on an obvious misreading—in two respects—of Qualcomm's Counterclaims and Affirmative Defense. *First*, Broadcom suggests that Qualcomm's unclean hands defense should be read as having been asserted only against Broadcom's federal antitrust claims—which comprise only three of the eight counts in its Second Amended Complaint. (Mem. Supp. Mot. to Strike at 9 & n. 4 (arguing that the assertion of an affirmative defense during the pendency of Qualcomm's motion to dismiss some of Broadcom's claims "*suggests* that the affirmative defense…is directed principally, if not exclusively, at Broadcom's antitrust claims" (emphasis added)).) The Court will search in vain for any such limitation; to the contrary, Qualcomm clearly asserted its affirmative defense of unclean hands as against Broadcom's Second Amended Complaint in its entirety. Moreover, Broadcom has not argued, and cannot argue, that its state common law claims are immune to an unclean hands defense. *See, e.g., Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists*, 227 Cal. App. 2d 675, 727-28 (1964) (holding that an unclean hands defense is available against both legal and equitable claims under California law). Broadcom's argument that unclean hands may not be available to defeat its claims under the federal antitrust laws thus provides no basis for striking Qualcomm's affirmative defense, since it remains fully applicable to Broadcom's other claims.[12]

---

[12] In addition, even if unclean hands does not provide a complete defense to Broadcom's federal antitrust claims, under federal law just as under the California Unfair Competition Law ("UCL"), unclean hands may be considered in the fashioning of a remedy. *Ticconi v. Blue Shield of Cal.*

*Second*, Broadcom simply ignores certain portions of Qualcomm's Counterclaims and Affirmative Defense that undermine Broadcom's argument. In particular, Broadcom's claim that Qualcomm's unclean hands defense is "legally insufficient" rests on the assertion that:

> Qualcomm identifies only two ways in which Broadcom participated in the supposed conspiracy that purportedly makes Broadcom's hands unclean: by refusing to accept Qualcomm's licensing offers and by initiating lawsuits or filing administrative complaints against Qualcomm.

(Mem. Supp. Mot. to Strike at 10.) That is simply false. Most notably, Qualcomm also alleges that Broadcom, along with the other Project Stockholm companies, "conspired to attack Qualcomm through, among other things…improper SDO activities". (CC ¶ 88.) For example, Qualcomm alleges that:

> Nokia, *supported by Broadcom's vote*, also recently launched a coordinated attack to exclude from standardization in ETSI Qualcomm's MediaFLO technology…another purposeful and improper effort (which ETSI rejected out of hand as procedurally improper and itself a potential antitrust violation) to stifle standardization and adoption of technological innovations developed by Qualcomm that would compete against the Project Stockholm group's technology.

(CC ¶ 97 (emphasis added).) Qualcomm also alleges not only that Broadcom has refused to accept FRAND licensing offers from Qualcomm, but that Broadcom has refused to license its own patents to Qualcomm on FRAND terms. (CC ¶ 109.) This is precisely the type of allegation on which Broadcom has staked the lion's share of its case against Qualcomm under legal theories ranging from antitrust to tort to contract to equity. (*See, e.g.*, SAC ¶¶ 99-123, 276-329.) Broadcom cannot at the same time assert that this kind of conduct is sufficient to support

---

*Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 544-45 (2008) (noting that unclean hands evidence is relevant to remedies available under the UCL); *cf. McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360-61 (1995) (noting, in the employment discrimination context, that even where public policy prevents unclean hands evidence from serving as a complete defense, it may be considered in determining the remedies available).

the host of legal claims Broadcom makes in this case (including antitrust theories) against

Qualcomm while arguing that it is "legally insufficient" to support an unclean hands defense

asserted by Qualcomm against Broadcom.[13] *See, e.g., R.J. Reynolds Tobacco Co. v. Premium*

*Tobacco Stores, Inc.*, Case No. 99-C-1174, 2001 WL 747422, at *4 (N.D. Ill. Jun. 29, 2001)

("Courts have recognized that antitrust violations … may constitute an unclean hands defense.").

Indeed, the pattern of Broadcom's anticompetitive collusion and bad faith

described in Qualcomm's pleading is precisely the type of conduct that gives rise to an unclean

hands defense. "Conduct creating unclean hands includes a 'willful act concerning the cause of

action' or 'bad faith relative to the matter.'" *Lucent Techs. v. Microsoft Corp.*, Case No. 06-CV-

0684, 2008 WL 410692, at *14 (S.D. Cal. Feb. 12, 2008), quoting *Precision Instrument Mfg. Co.*

*v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816 (1945). Broadcom makes no effort to claim that

the conduct described in Qualcomm's Counterclaims and Affirmative Defense lacks a sufficient

nexus to Broadcom's own claims against Qualcomm to give rise to an unclean hands defense—

indeed it could not do so, given that Broadcom's misconduct is an essential element of its own

strategy for the licensing negotiations on which it bases its claims. *See, e.g., Kendall-Jackson*

*Winery, Ltd. v. Superior Ct.*, 76 Cal. App. 4th 970, 987 (1999) (unclean hands defense

sufficiently alleged where a jury could find that the inequitable conduct "occurred in the

transaction related directly to the matter before the court…and affects the equitable relationship

between the litigants"); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,

133 Cal. App. 4th 658, 681 (2005) ("The question is whether the unclean conduct relates directly

---

[13] Broadcom's motion to strike is plainly premature in any event, until after the facts underlying Qualcomm's allegations have been developed through discovery. *Cipollone*, 789 F.2d at 187-88 (reversing the district court's grant of a motion to strike affirmative defenses at the pleadings stage and cautioning that "a court should restrain from evaluating the merits of a defense where, as here, the factual background for a case is largely undeveloped").

'to the *transaction* concerning which the complaint is made', *i.e.*, to the '*subject matter* involved'" quoting *Fibreboard*, 227 Cal. App. at 728.).

Moreover, Broadcom's suggestion that Qualcomm has not adequately alleged that Broadcom was acting in bad faith is disingenuous.  (Mem. Supp. Mot. to Strike at 10-12.) Qualcomm alleges that Broadcom has engaged in a wide array of conduct, undertaken in bad faith and in collusion with other wireless industry players, for the purpose of further entrenching the position of the members of Project Stockholm and reducing competition in the very technologies on which Broadcom's claims against Qualcomm are based.  (CC ¶¶ 40-113.)  Such concerted, collusive anticompetitive behavior clearly rises to the level of unclean hands.  *See R.J. Reynolds*, 2001 WL 747422, at *4.[14]

---

[14] Broadcom's invocation of the *Noerr-Pennington* doctrine (Mem. Supp. Mot. to Strike at 11-12) does not support its motion to strike Qualcomm's Project Koala allegations.  As discussed at length above, Qualcomm's allegations relating to Broadcom's improper use of litigation and administrative proceedings represent only one aspect of Broadcom's collusion in Project Stockholm's anticompetitive agenda.  Even if this prong of Broadcom's improper behavior were not enough standing alone to support an unclean hands defense, *Pennington* itself recognizes that evidence of such behavior is still discoverable and may be admissible.  *United Mine Workers v. Pennington*, 381 U.S. 657, 670 n.3 (1965) (noting that evidence of immunized activity "may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny" (internal quotation marks omitted)); *see also N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 53 (4th Cir. 1981) ("*Noerr-Pennington* is by definition an exemption from anti-trust liability, and not a bar to discovery of evidence.").  Moreover, there is authority to suggest that the Noerr-Pennington doctrine does not apply to contacts with foreign governments.  *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F. Supp. 92, 108 (C.D. Cal. 1971); *Laker Airways Ltd. v. Pan American World Airways, Inc.*, 604 F. Supp. 280, 287 n.20 (D.D.C. 1984) (collecting cases).

## **Conclusion**

For the foregoing reasons, Broadcom's Motion to Strike Qualcomm's Affirmative

Defense and to Dismiss Qualcomm's Counterclaims should be denied in its entirety.

May 21, 2008

Respectfully submitted,

McCARTER & ENGLISH, LLP

by

s/ William J. O'Shaughnessy
William J. O' Shaughnessy

Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Evan R. Chesler
Peter T. Barbur
Elizabeth L. Grayer
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Richard S. Taffet
Philip L. Blum
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

Robert N. Feltoon
CONRAD O'BRIEN GELLMAN & ROHN, P.C.
1515 Market Street, Suite 1600
Philadelphia, PA 19102
(215) 864-8064

William J. O'Shaughnessy
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056
973-622-4444

Richard S. Taffet
Philip L. Blum
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

Evan R. Chesler
Peter T. Barbur
Elizabeth L. Grayer
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000

Robert N. Feltoon
CONRAD O'BRIEN GELLMAN & ROHN,
P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102
(215) 864-8064

*Attorneys for Defendant Qualcomm Incorporated*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BROADCOM CORPORATION, | : | |
| | : | Civil Action No. 05-3350 (MLC) (JJH) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| QUALCOMM INCORPORATED, | : | |
| | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

WILLIAM J. O'SHAUGHNESSY, of full age, certifies as follows:

1.      I am an attorney at law of the State of New Jersey and a partner with the firm of McCarter & English, LLP, attorneys for Defendant Qualcomm Incorporated.

2.      On May 21, 2008, I caused to be delivered via ECF and electronic mail a copy of the Defendant's Memorandum in Opposition to Plaintiff Broadcom Corporation's Motion to

Strike Affirmative Defense and Related Allegations and to Dismiss Counterclaims to the

following:

David S. Stone, Esq.
Robert M. Magnanini, Esq.
Boies, Schiller & Flexner LLP
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
dstone@bsfllp.com
rmagnanini@bsfllp.com


Steven John Kaiser, Esq.
Mark W. Nelson, Esq.
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
skaiser@cgsh.com
mnelson@cgsh.com


William F. Lee, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
william.lee@wilmerhale.com


Mark D. Selwyn, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
1117 California Avenue
Palo Alto, CA 94304
mark.selwyn@wilmerhale.com


David Barrett, Esq.
Boies, Schiller & Flexner LLP
570 Lexington Avenue
New York, NY 10022
dbarrett@bsfllp.com

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

<u>s/ William J. O'Shaughnessy</u>
William J. O'Shaughnessy

DATED: May 21, 2008