# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>          Plaintiff,<br><br>     v.<br><br>QUALCOMM, INC.,<br><br>          Defendant. | CIVIL ACTION NUMBER<br><br>05-3350 (MLC/JJH) |

## REPLY IN SUPPORT OF PLAINTIFF BROADCOM CORPORATION'S MOTION TO STRIKE AFFIRMATIVE DEFENSE AND RELATED ALLEGATIONS AND TO DISMISS COUNTERCLAIMS

**Boies, Schiller & Flexner LLP**
150 JFK Parkway, 4th Floor
Short Hills, New Jersey 07078
(973) 218-1111

**Wilmer Cutler Pickering Hale and Dorr LLP**
60 State Street
Boston, MA 02109

**Wilmer Cutler Pickering Hale and Dorr LLP**
1117 California Avenue
Palo Alto, CA 94304

*Attorneys for Plaintiff Broadcom Corporation*

On the Brief:
Jonathan G. Cedarbaum
David S. Stone

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ................................................................................................................... 2

I.     QUALCOMM'S PIECEMEAL PLEADING VIOLATES THE
       FEDERAL RULES OF CIVIL PROCEDURE, AND SHOULD BE
       DEEMED QUALCOMM'S ANSWER .................................................................. 2

II.    QUALCOMM'S "UNCLEAN HANDS" AFFIRMATIVE DEFENSE
       SHOULD BE STRICKEN ..................................................................................... 4

       A.     The Defense Is Substantively Improper ...................................................... 4

       B.     The Defense Is Procedurally Improper ....................................................... 8

III.   QUALCOMM'S COUNTERCLAIMS SHOULD BE DISMISSED .................... 9

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

*Adidas America, Inc. v. Payless Shoesource, Inc.*, 2008 WL 508060 (D. Or. Feb. 22, 2008) ..................................................................................................................6

*American Society for Prevention of Cruelty to Animals v. Ringling Brothers & Barnum & Bailey Circus*, 244 F.R.D. 49 (D.D.C. 2007) .......................................4

*Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297 (3rd Cir. 2007) ...........................8

*Carpet Group International v. Oriental Rug Import Ass'n*, 256 F. Supp. 2d 249 (D.N.J. 2003) ..............................................................................................................6

*Citizens Financial Group, Inc. v. Citizens National Bank*, 383 F.3d 110 (3d Cir. 2004) .......................................................................................................................7

*Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983) ...................6

*Dollar Systems Inc. v. Avcar Leasing Systems*, 673 F. Supp. 1493 (C.D. Cal. 1987) .........................................................................................................................7

*Garlanger v. Verbeke*, 223 F.Supp.2d 596 (D.N.J. 2002) .........................................9

*Hellman v. Kercher*, 2008 WL 1969311 (W.D. Pa. May 6, 2008) .........................2, 8

*Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160 (3d Cir. 2001) ................7

*Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App.4th 970 (5th Dist. 2000) .......................................................................................................................8

*Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211 (1951) .................4

*Mattco Forge, Inc. v. Arthur Young & Co.*, 52 Cal. App.4th 820 (1997) ...................7

*McInerney v. Moyer Lumber & Hardware Inc.*, 244 F. Supp. 2d 393 (E.D. Pa. 2002) .........................................................................................................................2

*McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995) ......................4

*MedImmune Inc. v. Genentech Inc.*, 127 S. Ct. 764 (2007) .....................................10

*Modern Creative Services, Inc. v. Dell Inc.*, 2008 WL 305747 (D.N.J. Jan. 28, 2008) .........................................................................................................................9

*Nome Eskimo Community v. Babbitt*, 67 F.3d 813 (9th Cir. 1995) ..........................10

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ..........................................................................................................5

*Seifert v. Winter*, Civ. A. No. 06-2219, 2008 WL 879029 (D.D.C. Apr. 3, 2008) .........................4

## STATUTES

Fed. R. Civ. P. 8 ......................................................................................................3, 4

28 U.S.C. § 2201(a) ....................................................................................................10

## OTHER AUTHORITIES

U.S. Dep't of Justice and Federal Trade Comm'n, *Antitrust Enforcement
Guidelines for International Operations* § 3.34 (1995) ........................................6

5 Wright & Miller, *Federal Practice and Procedure* § 1380 (2008) ............................9

In its opposition brief, Qualcomm fails to provide any procedural or substantive justification for its "Counterclaims and Affirmative Defense." Procedurally, Qualcomm cites no rule or case authorizing its piecemeal assertion of an affirmative defense before it even has answered the allegations in Broadcom's Second Amended Complaint. Qualcomm effectively is seeking leave to file a partial answer in which it asserts its own theories—on which it intends to take discovery—but makes no response to Broadcom's allegations. The Federal Rules of Procedure prohibit such gamesmanship, with Rule 8 requiring that an answer must not only include all affirmative defenses, but also a response to each and every allegation. The Court should treat Qualcomm's pleading as its answer and deem admitted those allegations that Qualcomm tactically chose not to answer.

Substantively, Qualcomm's affirmative defense of unclean hands fails as a matter of law, and should be stricken. Under longstanding Supreme Court precedent, as Qualcomm acknowledges, unclean hands is not a permissible defense to Broadcom's federal antitrust claims.

As to Broadcom's state-law claims, the defense fails as well. It is simply a vehicle for introducing legally deficient allegations concerning "Project Stockholm" and "Project Koala." In those allegations, Qualcomm portrays a supposed global conspiracy against Qualcomm by several companies in the telecommunications industry, principally Nokia and Ericsson. Broadcom barely appears in the story. The core of the few allegations that actually mention Broadcom concerns the bringing of lawsuits and the filing of administrative complaints. Broadcom's litigation and administrative filings are, however, protected under the *Noerr-Pennington* doctrine—and thus, as a matter of law, cannot constitute misconduct grounding an affirmative defense or counterclaim. Qualcomm fails even to address this central point until a single footnote near the end of its opposition, and even then it dodges the issue.

Qualcomm's allegations also have nothing to do with the core issues in this case: Qualcomm's deliberate failure to abide by its obligations timely to disclose intellectual property rights ("IPR") relevant to certain standard-setting processes and its failure to fulfill its commitments to license IPR on fair, reasonable, and non-discriminatory ("FRAND") terms. Not surprisingly, Qualcomm does not even attempt to connect its Stockholm-Koala allegations to the question of IPR disclosure since absolutely no connection exists between them. And Qualcomm fails to establish any legally relevant link between these allegations and its request for a declaration that its licensing offers were FRAND. At bottom, Qualcomm is trying to take this case on an "unnecessary foray[] into immaterial matters." *Hellman v. Kercher*, Civ. No. 07-1373, 2008 WL 1969311, at *3 (W.D. Pa. May 6, 2008) (quoting *McInerney v. Moyer Lumber & Hardware Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

Finally, Qualcomm's counterclaims should be dismissed. These too depend on the legally deficient Koala-Stockholm "conspiracy" allegations, and any remaining allegations are redundant of Broadcom's claims.

## ARGUMENT

I. **QUALCOMM'S PIECEMEAL PLEADING VIOLATES THE FEDERAL RULES OF CIVIL PROCEDURE, AND SHOULD BE DEEMED QUALCOMM'S ANSWER**

Federal Rule of Civil Procedure 8 requires that "[i]n responding to a pleading, a party *must . . .* admit or deny the allegations asserted against it by an opposing party." (Emphasis added.) Qualcomm has ignored this Rule, choosing to assert its own factual theories without responding to Broadcom's allegations. Qualcomm asserts (Br. at 15 n.11) that "it is not required to answer the complaint until its motion to dismiss has been decided." This is true, of course, but misses the point. Although it need not have, Qualcomm nevertheless chose to assert an affirmative defense responding to Broadcom's Second Amended Complaint, and the Rules

provide that in so responding a party must "admit or deny the allegations asserted against it by [the] opposing party." Fed. R. Civ. P. 8(b)(1)(B). If, as Qualcomm insists (Br. 16), its "unclean hands" defense is responsive to Broadcom's state-law claims—notwithstanding that these are the very claims as to which Qualcomm has a motion to dismiss pending—that confirms that its counterclaims filing is functionally an answer and should be treated as such.

Qualcomm cites no authority supporting its unique form of pleading. Instead, Qualcomm contends (Br. 12-15) that its procedurally improper maneuver should be excused because Broadcom will suffer no prejudice as a result. But that is not so. Qualcomm insists (Br. 12-13) that the same allegations that support its affirmative defense support its counterclaims. But as discussed in Broadcom's opening brief (at 7-9) and below, the Stockholm-Koala allegations that form the basis for Qualcomm's affirmative defense have nothing to do with the actual declaratory judgments it seeks in its counterclaims. Thus, permitting the affirmative defense to remain will sustain allegations that would not otherwise be permitted.

Moreover, although Qualcomm suggests that it has done Broadcom a favor by asserting its "unclean hands" defense early, permitting Qualcomm to assert its affirmative defense before it answers Broadcom's claims does disadvantage Broadcom. In particular, this would require Broadcom to expend resources on discovery concerning Qualcomm's affirmative defense, diverting resources from discovery efforts related to the actual claims and counterclaims. It would also require Broadcom to provide specific responses to Qualcomm's allegations before Qualcomm is forced to do the same in response to Broadcom's allegations. That will permit Qualcomm to target its discovery efforts more effectively while Qualcomm stays silent on responses that could similarly assist Broadcom in its discovery efforts.

In sum, Qualcomm provides no cause for this Court to permit Qualcomm to engage in

piecemeal pleading that conflicts with the Federal Rules of Civil Procedure. It was Qualcomm's

choice to try this procedural gambit, and Qualcomm should bear the consequences—the Rules

require that Qualcomm be held to its pleading, with the allegations to which Qualcomm chose

not to respond deemed admitted.[1]

## II.    QUALCOMM'S "UNCLEAN HANDS" AFFIRMATIVE DEFENSE SHOULD BE STRICKEN

### A.    The Defense Is Substantively Improper

Qualcomm's "unclean hands" defense is legally insufficient for several reasons. First, as

Qualcomm effectively concedes (Br. 16), under binding Supreme Court precedent, the defense is

legally impermissible against Broadcom's antitrust claims.[2] At a minimum, the defense must be

stricken in relation to these claims.[3]

---

[1] *See* Fed. R. Civ. P. 8(b)(6) ("Effect of Failing to Deny. An allegation . . . is admitted if . . . the allegation is not denied."); *Seifert v. Winter*, Civ. A. No. 06-2219, 2008 WL 879029, at *1 n.2 (D.D.C. Apr. 3, 2008) ("Because the defendant did not file an answer to the plaintiff's complaint, the Court will treat all of the facts alleged in the complaint as true pursuant to Federal Rule of Civil Procedure 8(b)(6).").

[2] *See Kiefer-Stewart Co. v. Joseph E. Seagram & Sons,* 340 U.S. 211, 214 (1951) ("The alleged illegal conduct of [plaintiff], however, could not legalize the unlawful combination by respondents nor immunize them against liability to those they injured."); *American Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus*, 244 F.R.D. 49, 53, *reconsidered in part on other grounds*, 246 F.R.D. 39 (D.D.C. 2007) (applying *Kiefer-Stewart* and denying motion to amend answer to add unclean-hands defense).

[3] In a footnote, Qualcomm suggests (Br. 16 n.12) that unclean hands, though not providing a complete defense, may be considered in fashioning a remedy. It offers no authority to support that proposition when it comes to the federal antitrust laws, and there is none. The only decision it cites, *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360-361 (1995), rested on considerations specific to the statute there at issue, the Age Discrimination in Employment Act. In *McKennon*, the Supreme Court held that courts could consider after-acquired evidence of employee wrongdoing in exercising their expressly granted equitable powers under the ADEA because (i) when such evidence would have justified employee termination it implicated "the lawful prerogatives of the employer in the usual course of its business" and thus could have led to rejection of the plaintiff's claim if revealed earlier, *id.* at 361, and (ii) the ADEA expressly granted the courts broad equitable powers. Neither of those considerations comes into play under the federal antitrust laws, and indeed the Supreme Court expressly contrasted the first consideration with the usual concerns that underpin an unclean hands defense. *See id.* (contrasting these ADEA-specific considerations with the "relative moral

- 4 -

Second, as to Broadcom's state-law claims, the defense fails as a matter of law.  The defense is grounded in a supposed conspiracy involving "Project Stockholm" and "Project Koala."  Much of this account describes actions by other telecommunications companies, principally Nokia and Ericsson, in which Broadcom is not even mentioned.  Counterclaims ¶¶ 15, 23-25, 27-29, 47-48, 92-96, 105, 108.  Qualcomm's pleading focuses on only two ways in which it claims Broadcom's conduct was somehow illegitimate:  by initiating lawsuits or filing administrative complaints against Qualcomm and by refusing to accept Qualcomm's licensing offers—both purportedly motivated by the conspiracy.  *See id.* ¶¶ 111-113.

Qualcomm now effectively concedes (Br. 16), as it must, that litigation and the filing of administrative complaints are protected First Amendment conduct under the well-established *Noerr-Pennington* doctrine.  *See, e.g., Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-57 (1993).  Tellingly, Qualcomm does not address this caselaw until a footnote to the final sentence of its brief.  Even there, it does not contest that the doctrine shields motivations for initiating litigation and administrative proceedings, rendering legally irrelevant Qualcomm's allegations concerning Broadcom's supposedly improper use of courts and agencies.[4]

---

worth of the parties" underlying "unclean hands" defenses).

Qualcomm insists (Br. 16) that nothing in its counterclaims filing suggests that its "unclean hands" defense should be understood as targeted only at Broadcom's antitrust claims. But, as noted in Broadcom's opening brief (at 9 & n.4), two characteristics of that filing indicate precisely that:  Qualcomm asserted the defense while it already has a motion to dismiss Broadcom's state-law claims pending, and Qualcomm expressly reserved a right to assert additional defenses when it actually answered Broadcom's state-law claims.

[4] Qualcomm's footnote suggests (Br. 19 n.14) that even if the conduct alleged is protected by *Noerr-Pennington*, Qualcomm is entitled to discovery concerning it.  That argument misses the point and so is insufficient to save Qualcomm's affirmative defense or the allegations upon which it rests.  The issue of discovery based on relevance to claims and defenses only arises if the claims or defenses are permissible.  The antecedent question is whether *Noerr-Pennington*-protected conduct can form the basis for an unclean hands defense.  Qualcomm

Apparently recognizing that *Noerr-Pennington*-protected conduct cannot ground its defense, Qualcomm now insists (Br. 17-18) that its allegations are not so limited. But it identifies only two other alleged acts by Broadcom, each of which is legally inadequate as well.

First, Qualcomm points (Br. 17) to ¶ 97 of its counterclaims filing, which alleges that "Nokia, supported by Broadcom's vote, also recently launched a coordinated attack to exclude from standardization in ETSI Qualcomm's MediaFlo technology." But Mediaflo is a technology for streaming video to cell phones. It is not a standard for communications like UMTS or the other standards at issue in this case.

Second, Qualcomm highlights (Br. 17) ¶ 109 of the counterclaims filing, which it characterizes as asserting that "Broadcom has refused to license its own patents to Qualcomm on FRAND terms." But the paragraph in question actually cites to and quotes a decision by Judge Selna of the U.S. District Court for the Central District of California, in earlier litigation in which Qualcomm was found to have infringed three Broadcom patents. Judge Selna did not find, however, that Broadcom has breached any obligation to license on FRAND terms to Qualcomm

---

offers no authority that it can. *Cf. Adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV01-1655, 2008 WL 508060, at *49 n.18 (D. Or. Feb. 22, 2008) ("To the extent that [defendant's] unclean hands ... defense[] [is] premised upon [plaintiff's] aggressive trademark enforcement efforts, those claims are barred under the *Noerr-Pennington* doctrine."). Thus, the affirmative defense must be stricken.

As to whether the Stockholm-Koala allegations could be saved once the affirmative defense is stricken, they cannot. As explained in Broadcom's opening brief (at 7-9) and herein at 6-8, the Stockholm-Koala allegations are utterly irrelevant to Broadcom's claims or Qualcomm's counterclaims.

In the same footnote, Qualcomm also asserts, half-heartedly, that "there is authority to suggest" that *Noerr-Pennington* does not apply to contacts with foreign governments. In fact, the weight of authority favors the view that petitioning foreign governments is protected, *see, e.g.*, *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1364 (5th Cir. 1983), and that view has been embraced both by judges in this District, *see, e.g.*, *Carpet Group Int'l v. Oriental Rug Imps. Ass'n*, 256 F. Supp. 2d 249, 266 (D.N.J. 2003), and by the antitrust enforcement agencies, *see* U.S. Dep't of Justice and Federal Trade Comm'n, *Antitrust Enforcement Guidelines for International Operations* § 3.34 (1995).

or anyone else—and indeed, Qualcomm did not even allege such breach. Rather, Judge Selna simply found that "Broadcom has pursued a policy of not generally licensing its patents" at all. *Broadcom Corp. v. Qualcomm, Inc.*, No. SACV 05-467 JVS (RNBx), Memorandum of Decision re Injunctive Relief at 6 (Dec. 31, 2007). Broadcom, Judge Selna explained, "has determined that it best protects its intellectual property through the patent system, and then by maintaining tight control over its property." *Id.* "Broadcom has used licensing as a tool to settle pending or threatened litigation, but has generally done so through portfolio-wide cross-licenses. It has not licensed its key technology on a patent-by-patent basis." *Id.* Thus, the very decision upon which Qualcomm relies does not remotely support its contention that Broadcom has breached FRAND licensing obligations to Qualcomm. In any event, Qualcomm cannot explain how this allegation concerning licensing of *Broadcom's* patents has the requisite "direct relationship" to Broadcom's claims concerning licensing of *Qualcomm's* patents. *See, e.g., Mattco Forge, Inc. v. Arthur Young & Co.*, 52 Cal. App. 4th 820, 846 (1997).

Finally, the supposed "conspiracy" motivation for Broadcom's rejection of Qualcomm's licensing offers is not only factually incorrect, but also legally insufficient to sustain Broadcom's defense. First, mere refusal of licensing proposals, even for ulterior motives related to commercial battles, cannot be considered "unclean hands." *See, e.g., Dollar Sys. Inc. v. Avcar Leasing Sys.*, 673 F. Supp. 1493, 1504 (C.D. Cal. 1987), *remanded in part on other grounds*, 890 F.2d 165 (9th Cir. 1989) (repeated breach of licensing agreement and other "irresponsible" behavior insufficient to show "unclean hands" under California law); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) ("unconscionable act" required for unclean hands).[5]

---

[5] *See also Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 129 (3d Cir.

Second, Qualcomm has not even attempted to connect the Stockholm-Koala allegations to its requested declaration of FRAND compliance in accord with the Third Circuit's reference to factors relevant to the FRAND inquiry. *See Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 314 n.8 (3d Cir. 2007) (discussing decisions identifying factors possibly relevant to reasonableness determination).[6] Qualcomm's allegations thus lack the "direct relationship" to the claims required for unclean hands:

> The misconduct that brings the unclean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice. The determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties.

*Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (5th Dist. 2000) (internal citation omitted).

In sum, Qualcomm's affirmative defense rests on allegations that have nothing to do with the core issues in the case: Qualcomm's deliberate failure to abide by its obligations timely to disclose IPR relevant to certain standard-setting processes and its failure to license those IPR on FRAND terms. One "purpose of a motion to strike is to clean up pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters," *Hellman*, 2008 WL 1969311, at *3, and striking Qualcomm's affirmative defense would serve precisely this purpose.

## B.     The Defense Is Procedurally Improper

Qualcomm offers no direct response to Broadcom's contention that the assertion of its unclean hands defense was procedurally improper because neither the Court's scheduling order nor the Federal Rules of Civil Procedure authorized the assertion of affirmative defenses in its counterclaims filing. Nor does Qualcomm come to grips with the oddity of permitting the

---

2004) ("egregious misconduct" required).

   [6] Striking the Koala-Stockholm allegations will not deprive Qualcomm of necessary discovery into Broadcom's motivations for its refusals of Qualcomm's licensing offers: Broadcom has agreed to produce its non-privileged analyses of Qualcomm's licensing offers.

assertion of affirmative defenses while its motion to dismiss remains pending (and it asserts, citing no basis in the Federal Rules of Civil Procedure or other authority, the ability to add further, unspecified defenses when it actually files its answer).

Qualcomm simply asserts that Broadcom would not be prejudiced by allowing it to assert its affirmative defense now. But, as explained above, *see supra* p. 3, that is not so. Permitting Qualcomm to flout the Rules would require Broadcom to divert resources to discovery driven by Qualcomm's defense rather than Broadcom's claims, while Broadcom remains in the dark about Qualcomm's specific responses to those claims. For these reasons as well, Qualcomm's defense should be stricken.

## III.    QUALCOMM'S COUNTERCLAIMS SHOULD BE DISMISSED

Qualcomm's counterclaims should be dismissed because they are redundant of Broadcom's claims—which is particularly evident once the legally improper Stockholm and Koala allegations are set aside.[7] Broadcom's claims turn on whether Qualcomm has engaged in misconduct by failing to comply with certain FRAND and IPR-disclosure obligations; Qualcomm's counterclaims are aimed at exactly the same issues.

Qualcomm now seeks to distinguish its counterclaims by positing scenarios in which the Court might dismiss all of Broadcom's claims without reaching the core issues of Qualcomm's FRAND and IPR-disclosure compliance—and then arguing that, in such scenarios, Qualcomm would be deprived of its requested adjudication of its FRAND and IPR-compliance. At bottom, Qualcomm's argument is that if Broadcom had literally *no* legally cognizable claim against

---

[7] *See Modern Creative Servs., Inc. v. Dell Inc.*, Civ. No. 05-3891, 2008 WL 305747, at *2 (D.N.J. Jan. 28, 2008) (striking affirmative defenses because, *inter alia*, one was redundant of allegations in complaint and defendant had no authority that alleged bad-faith actions by plaintiff provided grounds for affirmative defense); *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (striking allegations as redundant in order to "streamlin[e] the pleadings and remov[e] . . . redundant clutter"); *see also* 5 Wright & Miller, *Federal Practice and Procedure* § 1380 n.1 (2008).

Qualcomm on these FRAND and IPR-disclosure issues, Qualcomm could nonetheless maintain its declaratory judgment claims against Broadcom. This is incorrect as a matter of law: if Broadcom were adjudged to have *no* legal recourse against Qualcomm based on the facts alleged, then there would be no longer be a case or controversy between the parties on these issues. Accordingly, the Court no longer would have jurisdiction—either under the Declaratory Judgment Act or Article III—to hear Qualcomm's counterclaims.[8]

Moreover, Qualcomm's hypothetical scenario should never come to pass, as the Third Circuit already has held that Broadcom has asserted cognizable claims against Qualcomm on the FRAND issues, and the Third Circuit's logic applies equally to the IPR-disclosure issues. Thus, the core merits issues will indeed be reached, and Qualcomm's counterclaims are superfluous.

## CONCLUSION

For the foregoing reasons, as well as those stated in Broadcom's opening memorandum, Broadcom's motion should be granted.

Respectfully submitted,
BOIES, SCHILLER & FLEXNER LLP

By:    s/ David S. Stone
David S. Stone, Esq.
dstone@bsfllp.com
*Counsel for Plaintiff Broadcom Corporation*

Dated: May 28, 2008

---

[8] *See* 28 U.S.C. § 2201(a) (requiring "case of actual controversy" for declaratory judgment jurisdiction); *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (Article III case-or-controversy analysis turns on "whether the facts alleged …show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." (emphasis added and internal quotation omitted)); *Nome Eskimo Cmt'y v. Babbitt*, 67 F.3d 813, 816 (9th Cir. 1995) (rejecting parties' contention that "even absent a continuing case or controversy, we should provide a declaration of their rights," and holding that "[a] declaratory judgment may not be used to secure judicial determination of moot questions." (internal quotation omitted)).

## CERTIFICATE OF SERVICE

I, David S. Stone, hereby certify that the foregoing Motion to Strike Affirmative Defense

and Related Allegations and to Dismiss Counterclaims, which was filed and served electronically

on May 28, 2008 on counsel for all named parties through the Court's *ECF system*, including:

William J. O'Shaughnessy, Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102-4056

Peter T. Barbur, Esq.
Elizabeth Grayer, Esq.
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019

Steven J. Kaiser, Esq.
CLEARY, GOTTLEIB, STEIN & HAMILTON
200 Pennsylvania Avenue, NW
Washington, DC 20006

s/  David S. Stone
David S. Stone, Esq.
dstone@bsfllp.com
Boies, Schiller & Flexner LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Tel: 973-218-1111
Fax: 973-218-1106
*Counsel for Plaintiff Broadcom Corporation*

- 11 -