Boies, Schiller & Flexner LLP
150 JFK Parkway, 4th Floor
Short Hills, New Jersey  07078
(973) 218-1111

Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

Wilmer Cutler Pickering Hale and Dorr LLP
1117 California Avenue
Palo Alto, CA 94304

Attorneys for Plaintiff Broadcom Corporation

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BROADCOM CORPORATION, | : | |
| | : | Civil Action No. 05-3350 (MLC)(JJH) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| QUALCOMM, INC., | : | |
| | : | |
| Defendant. | : | |

_____

## NOTICE OF SUBPOENA

PLEASE TAKE NOTICE that pursuant to Rules 34(c) and 45 of the Federal Rules of

Civil Procedure, Panasonic Corporation of North America shall be commanded to produce the

documents and materials described in Schedule A to the attached subpoena at the offices of

Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New York, New York, 10022 on

September 26, 2008 at 12:00 p.m.

By:

Kate Saxton
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109

◇AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Southern District of New York

Broadcom Inc.                              **SUBPOENA IN A CIVIL CASE**

V.

Qualcomm Inc.                     Case Number:[1]  05-3350 D.N.J.

<span style="font-family:monospace">Transfer to S.D. Cal. pending
per court order dated 8/12/2008</span>

TO:  Panasonic Corporation of North America
     1 Panasonic Way
     Secaucus, NJ 07094

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Schedule A.

| PLACE     Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New York, NY 10022 | DATE AND TIME  9/26/2008 12:00 pm |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Kate Saxton*   Attorney for Plaintiff | 8/29/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Kate Saxton, Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston MA 02109
(617) 526-6253

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                              DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may  promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# SCHEDULE A

## Instructions

The instructions contained in Rule 45 of the Federal Rules of Civil Procedure and the Local Rules of this Court are incorporated herein by reference and are supplemented as follows:

A.        Each paragraph in this attachment is to be construed independently and no paragraph shall be construed to limit any other paragraph.

B.        The use of any definition in this attachment is not an agreement or acknowledgment that such definition is accurate, meaningful, or appropriate for any other purpose in this action.

C.        Each requested document must be produced in its entirety without deletions or excisions.  If a document responsive to any request cannot be produced in its entirety, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

D.        Each page or sheet produced shall be marked with a consecutive document control number.

E.        All documents produced in response to this subpoena shall be produced in the same order that they are kept in the ordinary course of business.  Documents that are attached in the ordinary course of business shall not be separated or disassembled.

F.        If you object or otherwise refuse to respond or produce documents in response to any portion of a document request, you shall (1) state the objection or reason for such refusal,

and (2) provide all documents and information called for by that portion of the requests for production that you do not object to and/or which you do not refuse to respond as follows:

(i)     If you object to a document request on the ground that it is too broad, you shall produce documents and things in response to that request by producing all documents and things that are within the permissible scope of discovery and identify all categories of documents being withheld;

(ii)    If you object to a document request on the ground that to produce documents and things would constitute an undue burden, then you shall produce as many of the requested documents and things as can be provided without undertaking an undue burden;

(iii)   If you object to any portion of a document request on the ground that it is vague or indefinite, then You shall set forth its understanding of the allegedly vague or indefinite term and shall then produce Documents and Things based upon that stated understanding.

G.      If any document, or portion thereof, is withheld under a claim of privilege, the privilege invoked shall be stated and such information as required under Rule 26(b)(5) shall be provided.

H.      In interpreting the requests, the singular shall include the plural and the plural shall include the singular.

I.          In interpreting the requests, the connectives "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive, and "any" shall mean each and every.

J.          Unless otherwise specified, these document requests demand the production of all responsive contracts that were in effect since January 1, 2000 and all other relevant documents created since January 1, 2000.

## Definitions

A.          "Agreement" means any executed or draft Agreement whether or not ultimately executed.

B.          "Baseband Processor" means a chip that converts cellular signals to digital form within a Wireless Subscriber Unit.

C.          "Broadcom" means, collectively and individually, Broadcom Corporation, and all of its predecessors, successors, corporate parents, direct or indirect subsidiaries, divisions, affiliated Entities, officers, directors, employees, consultants, agents, representatives, servants, and all other Persons acting on its behalf.

D.          "CDMA" means Code Division Multiple Access, including without limitation technologies referred to in the wireless telecommunications industry as cdmaOne, CDMA2000-1x-RTT, CDMA2000-1xEVDO, and CDMA2000-1xEVDV.

E.          "Communication" means any written, electronic, or otherwise recorded transmittal or exchange of information between two or more entities, regardless of form,

including without limitation notes of any verbal or oral transmittal or exchange of information between any two or more entities.

F.        "Concerning" means relating to, referring to, describing, evidencing, referencing, discussing, or constituting.

G.        "Device" means any component, system, sub-system, or equipment that conforms in whole or in part to an industry standard.

H.        "Document" and/or "Thing" has the broadest definition of Document under the Federal Rules of Civil Procedure and the cases interpreting those rules, specifically including, but not limited to, information and data in computer-readable formats, information recorded in a tangible form, including without limitation information printed, typewritten, handwritten, photographed, filmed, recorded by electronic means upon a tape or disk or any other means of recording and includes without limitation letters, memoranda, handwritten notes, Agreements, contracts, books, pamphlets, brochures, newspapers, magazines, periodicals, catalogues, price lists, bank records, tapes, computer printouts, data cards, programs or other input or output of data processing systems, photographs, transcripts of interviews or testimony before any Person, officer or body whether sworn or unsworn, written statements or notes of interview or testimony, diaries, calendars, logs, expense records or other financial data, charts, graphs, maps, drawings or other representational depictions, telephone records, telegrams, magnetic tapes, dram or disk records, motion picture film, microfilm, e-mail, or microfiche. The term "Document" or "Documents" also means every copy of a Document where such copy is not an identical duplicate of the original.

I.        "EDGE" means Enhanced Data Rates for GSM Evolution.

J.         "Entity" or "Entities" includes natural Persons, proprietorships, partnerships, firms, corporations, public corporations, municipal corporations, governments, including foreign national governments, the government of the United States, or any state or local government, and all departments and agencies thereof, political subdivisions, groups, associations, or organizations.

K.         "Essential" means necessary for implementation of any mobile wireless technology standard, such that the standard could not be practiced without infringing the patent or technology to which "essential" refers.

L.         "802.20 Working Group" means the Mobile Broadband Wireless Access Working Group responsible for developing the IEEE 802.20 standard currently under development.

M.         "Equipment" means any device, component, system, or sub-system that conforms in whole or in part to an industry standard.

N.         "FRAND" or "RAND" means: (i) fair, reasonable, and non-discriminatory; (ii) reasonable and non-discriminatory; (iii) fair, reasonable and free from unfair discrimination; or (iv) any other recitation used by any SDO to reflect a commitment to license on non-discriminatory terms.

O.         "ETSI" means the European Telecommunications Standards Institute.

P.         "GPRS" means GSM Packet Radio Services.

Q.         "GSM" means Global System for Mobility.

R.          "H.264" means the digital video coding standard developed by the JVT, and is

also known as MPEG-4 Part 10 or Advanced Video Coding ("AVC").

S.          "IEEE-SA" means the IEEE Standards Association, and any committee thereof,

including but not limited to, the Board of Governors, executive committees, assembly, standards

boards, corporate advisory groups, standing committees, new standards committees, standards

review committees, procedures committees, audit committees, standards coordinating

committees, study groups, and working groups.

T.          "IPR" means intellectual property rights, and includes patent rights.

U.          "License" or "licensee" means and includes each and every license, licensee, sub-

license, and/or sub-licensee.

V.          "Litigation" means the following proceedings:

- *Qualcomm, Inc. v. Broadcom Corp.,* Civil Action No. 05-1392 (S.D. Cal.);

- *Qualcomm, Inc. v. Broadcom Corp.*, Civil Action No. 05-1958 (S.D. Cal.);

- *In The Matter Of Certain Mobile Telephone Handsets, Wireless Communication Devices, And Components Thereof*, Inv. No. 337-TA-578;

- *Nokia v. Qualcomm, Inc.,* in the Court Of Chancery Of The State Of Delaware In And For New Castle County, Civil Action No. 2330-N;

- *Nokia v. Qualcomm, Inc.,* American Arbitration Association, Civil Action No. 500 133 T 00504 05;

- *Broadcom Corp. v. Qualcomm, Inc.*, Civil Action No. 05-3350 (D. N.J.)

- *Qualcomm Incorporated v. Broadcom Corporation*, Case No. 05 CV 1662 (S.D. Cal.);

- *Broadcom Corporation v. Qualcomm Incorporated*, Case No. 05 CV 468 JVS (C.D. Cal.);

- *In the Matter of Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips, and Products Containing Same, Including Cellular Handsets*, Investigation No. 337-TA-543 (U.S. International Trade Commission);

- *Qualcomm Inc. v. Maxim Integrated Products, Inc.*, Civil Action No. 02 CV 2429 (S.D. Cal.);

- *Qualcomm Inc. v. Conexant Systems, Inc. and Skyworks Solutions, Inc.*, Civil Action No. 02 CV 2002 (S.D. Cal.);

- *Golden Bridge Technology, Inc. v. Nokia, Inc., Motorola, Inc., T-Mobile USA, Inc., Ericsson, Inc., Panasonic Mobile Communications Development Corp. of U.S.A., Panasonic Mobile Communications Co. Ltd., Nu Do Co Mo USA, Inc., Qualcomm Inc., Lucent Technologies, Inc., Telecom Italia*, Civil Action No. 20 CV 170 (E.D. Tex.).

W.        "Person" means any natural Person, legal Entity, governmental Entity, or business Entity, including without limitation any corporation, partnership, unincorporated association, joint venture, sole proprietorship, or any and/or all other organizations or groups of individuals together with the employees, agents, consultants and attorneys thereof.

X.        "Qualcomm" means, collectively and individually, Qualcomm Incorporated, and all of its predecessors, successors, corporate parents, direct or indirect subsidiaries, divisions, affiliated Entities, officers, directors, employees, consultants, agents, representatives, servants, and all other Persons acting on its behalf.

Y.        "Relevant Business Unit" means any business unit of Your company involved in H.264, GSM/GPRS/EDGE, WCDMA/UMTS, IEEE 802.20, CDMA, and TD-CDMA technologies, Baseband Processors, or services.

Z.        "Standards Development Organization" or "SDO" means IEEE-SA, ETSI, Video Coding Experts Group, Heinrich Hertz Institute, Moving Pictures Experts Group and Joint Video Team.

AA.         "TD-CDMA" means Time Division-Synchronous Code Multiple Access.

BB.         "UMTS" means the Universal Mobile Telecommunications System standard first released by ETSI in December 1999 and all amendments and revisions to that standard, including but not limited to HSPA.

CC.         "WCDMA" means Wideband Code Division Multiple Access.  As used herein, "WCDMA" excludes "CDMA," which is separately defined above.

DD.         "Wireless Subscriber Unit" means a wireless radio capable of transmitting and receiving wireless communications, such as wireless phones, laptop computers capable of transmitting or receiving wireless communications, or other wireless consumer equipment, including but not limited to devices designed to enable computers to transmit or receive wireless communications using GSM, GPRS/EDGE, CDMA, or WCDMA.

EE.         "You" or "Your" means Panasonic Corporation of North America and all of its predecessors, successors, corporate parents, direct or indirect subsidiaries, divisions, affiliated Entities, officers, directors, employees, consultants, agents, representatives, servants, and all other Persons acting on its behalf.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1)      Documents sufficient to show all organizational structures of any Relevant Business Unit applicable in each year since 2002, including without limitation the title, job function, and line of reporting for each managerial or executive employee who is part of, oversees, or provides services to any such relevant business unit.

2)      Documents sufficient to show Your purchases (separately by vendor, technology, and model number) of chips and/or chipsets and associated software for incorporation into Wireless Subscriber Units that are or were intended to comply with the GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA Standards.

3)      All Agreements for Your purchase of Baseband Processors for incorporation in Wireless Subscriber Units that are or were intended to comply with the GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA Standards, and documents sufficient to identify Your personnel that negotiated or authorized the terms of the agreements.

4)      All License Agreements for IPR relating to the GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA Standards, and documents sufficient to identify Your personnel that negotiated or authorized the terms of such agreements.

5)      All Documents Concerning the relative advantages or disadvantages of chips and/or chipsets and associated software designed or offered for sale by Broadcom, Qualcomm, and/or any other chip designer or manufacturer for incorporation in Wireless Subscriber Units compliant with the H.264, GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA standards.

6)        All Documents containing any evaluation or assessment of technical contributions or proposals made in connection with the development of the H.264, GSM/GPRS/EDGE or WCDMA/UMTS standards, including any evaluation or assessment of (i) the technical alternatives considered for inclusion in the WCDMA/UMTS standard and any feasibility or other technical analyses regarding the same; (ii) the IPRs disclosed as essential or potentially essential to the H.264, GSM/GPRS/EDGE, WCDMA/UMTS, IEEE 802.20, or CDMA2000 EVDV Standards; and (iii)  any commitments to license essential patents made under Section 6.1 of Annex 6 of the ETSI Rules of Procedure.

7)        All Documents Concerning any conduct by Qualcomm to influence the adoption of, or the incorporation or any technology into, the GSM/GPRS/EDGE, WCDMA/UMTS, H.264, or IEEE 802.20 standards, including but not limited to Qualcomm's participation in any ETSI committee or 802.20 Working Group with regard to evaluation, adoption, or implementation of any actual or proposed standard for GSM/GPRS/EDGE, WCDMA/UMTS, H.264, or IEEE 802.20.

8)        All Documents Concerning Your participation in the ETSI SMG or SMG 2 technical bodies in the period 1996-2000.

9)        All Documents Concerning Your participation in the UMTS IPR Working Group in the period 1998-2000.

10)        All Documents Concerning Your consideration of whether to participate in the Third Generation Patent Platform Partnership, also known as 3G3P.

11)        All Documents Concerning the licensing, licensing policies, or licensing practices by Qualcomm of any IPR, patents, or patent applications claimed or asserted by Qualcomm to any Person or Entity to be essential for the implementation of GSM, GPRS/EDGE, or WCDMA/UMTS.

12)        All Documents Concerning the cost, expense, difficulty, advantages, and/or disadvantages of making or having a chipset made for You pursuant to Your rights under any Agreement or License with Qualcomm.

13)        All Documents (other than bills of lading, invoices, purchase orders, and customs declarations) Concerning Qualcomm prices, including but not limited to Documents concerning price discrimination, discounts, license fee reductions, rebates, market development funds, or other incentives, for purchasing any Qualcomm GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA Baseband Processor.

14)        Documents sufficient to show annual research and development expenditures related to Wireless Subscriber Units, separately for Wireless Subscriber Units using GSM, GPRS, EDGE, WCDMA, UMTS, and CDMA.

15)        All Documents discussing the relative profitability of Wireless Subscriber Units that implement:  the GSM standard only; the GSM standard and the GPRS standard; the GSM, GPRS, and EDGE standards; and the GSM, GPRS, EDGE, and UMTS standards.

16)        All Documents discussing the relative profitability of services provided to subscribers using the GSM standard only; the GSM standard and the GPRS standard; the GSM, GPRS, and EDGE standards; and the GSM, GPRS, EDGE, and UMTS standards.

17)        Documents sufficient to show Your payments made under any current or past license with Qualcomm and the basis for calculating the amount of such payments.

18)        Documents sufficient to show your annual sales for each model of Wireless Subscriber Units sold or manufactured by You.

19)        Documents sufficient to show, for each Wireless Subscriber Unit sold or manufactured by you, the manufacturer of the chipset used in the Wireless Subscriber Unit and the standard or standards (GSM, GPRS, EDGE, UMTS, CDMA, etc.) that it implements.

20)        All Documents Concerning the meaning or interpretation of FRAND or RAND with respect to licensing of any patents claimed or asserted to be essential to any GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA technology or product.

21)        All Agreements (including but not limited to License agreements, non-disclosure agreements, confidentiality agreements, chipset purchase agreements, strategic agreements, incentive agreements, and market development agreements) between You and Qualcomm, and all Documents and Things concerning negotiations of these Agreements.

22)        All documents concerning any disputes regarding any and all Agreements (including but not limited to License agreements, non-disclosure agreements, confidentiality agreements, chipset purchase agreements, strategic agreements, incentive agreements, and market development agreements) between You and Qualcomm, and all Documents and Things concerning resolution of such disputes.

23)    Strategic and business plans discussing actual or potential competition in the design or sale of GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA chips and/or chipsets and associated software designed for use in Wireless Subscriber Units, including without limitation,

    a. market shares in the design or sale of GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA chips and/or chipsets and associated software designed for use in Wireless Subscriber Units;

    b. the competitive position of Qualcomm or any of its competitors;

    c. relative strengths and weaknesses of Qualcomm or other companies;

    d. analyses of product, technology, or market plans of Qualcomm or any of its actual or potential competitors;

    e. supply and demand conditions;

    f. allegations that Qualcomm is not behaving in a competitive manner;

    g. analysis of actual or potential competition relating to improvements or innovations in features, functions, ease of operation, performance, cost, or other advantages to customers or users.

24)    All Documents Concerning Communications relating to any instances where Qualcomm delivered fewer chips and/or chipsets and associated software than any Person or Company requested, any Qualcomm explanations for such under delivery, or any efforts by You to obtain greater volumes of Baseband Processors directly or indirectly from Qualcomm.

- 6 -

25)        All Documents Concerning any actual, threatened, prospective, or possible repercussions, actual or perceived consequences, punishments (including without limitation withdrawal of Qualcomm technical or marketing support, delay in supply of chips and/or chipsets and associated software, withholding of supply of chips and/or chipsets and associated software, loss of discounts or incentives, or withdrawal of market development funds or other funds) or rewards (such as discounts or marketing funds) by Qualcomm in connection with any other Person's or Entity's actual, prospective, or possible purchase of Baseband Processors from any Person or Entity other than Qualcomm.

26)        All Communications between You and Qualcomm concerning:

   a.  The evaluation, adoption, and/or implementation of any actual or proposed H.264, GSM/GPRS/EDGE, WCDMA/UMTS, IEEE 802.20, or CDMA standard;

   b.  Your participation in any SDO;

   c.  The actual or potential licensing of, licensing terms or royalties for, or termination of any license to, any patent or patents relating to the GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA standards;

   d.  The actual or potential sale or purchase of any GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA Baseband Processors;

   e.  Any Person's or Company's right to make or sell any GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA compliant chips and/or chipsets and associated software;

     f.   Competition in or for the sale of GSM/GPRS/EDGE, WCDMA/UMTS, or CDMA chips and/or chipsets and associated software;

     g.   Broadcom;

     h.   Any United States or foreign government investigation concerning Qualcomm;

     i.   Any policy or practice with regard to the retention or destruction of documents.

27)       All Documents Concerning any Communications between You and Qualcomm Concerning:

     a.   Any actual or potential business relationship between You and Broadcom;

     b.   Any actual or potential business relationship between You and any chipset manufacturer other than Qualcomm;

     c.   Any actual or potential termination of any license to any Qualcomm patent or patents;

     d.   Any litigation between Broadcom and Qualcomm; or

     e.   Any United States or foreign government investigation concerning Qualcomm.

28)       All Documents provided, whether formally or informally, or voluntarily or by compulsion, to any foreign government, administrative agency, or regulatory Entity, in connection with any litigation or investigation into potential antitrust or competition-related violations by Qualcomm, including but not limited to investigations by the European Commission, the Korea Fair Trade Commission, and the Japanese Fair Trade Commission into complaints relating to Qualcomm's licensing and sales practices.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

Civil Action No. 05-3350 (MLC) (JH)

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a true and correct copy of the within and

foregoing Notice of Subpoena via electronic mail to the Clerk and the Parties listed below:

William J. O'Shaughnessy
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NK 07102

Richard Hernandez
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Peter T. Barbur
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Robert Feltoon
CONRAD O'BRIEN GELLMAN & ROHN, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102

*Attorneys for Qualcomm Incorporated*

David S. Stone
BOIES, SCHILLER & FLEXNER LLP.
150 John F. Kennedy Parkway, 4th Floor
Short Hills, NJ 07078

Robert A. Magnanini
BOIES, SCHILLER & FLEXNER LLP.
150 John F. Kennedy Parkway, 4th Floor
Short Hills, NJ 07078

Steven John Kaiser
CLEARY, GOTTLIEB, STEIN & HAMILTON, LLP
200 Pennsylvania Avenue, NW
Washington DC 20006

*Attorneys for Broadcom Corporation*

This 29th day of August 2008.

_____
Kate Saxton