1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   BROADCOM CORPORATION,                   CASE NO. 08cv1607 WQH (LSP)

12                         Plaintiff,        **ORDER**
              vs.
13   QUALCOMM INCORPORATED,

14                         Defendant.

15   HAYES, Judge:

16        The matters before the Court are the (1) Motion to Dismiss Claims Four through Eight

17   of Plaintiff's Second Amended Complaint (Doc. # 238) filed by Defendant Qualcomm

18   Incorporated, (2) Motion to Deem Qualcomm's Responsive Pleading to be its Answer, Strike

19   Qualcomm's Affirmative Defenses and Related Allegations, and Dismiss Qualcomm's

20   Counterclaims (Doc. # 239) filed by Plaintiff Broadcom Corporation, and (3) Motion for Leave

21   to File a Sur Reply Memorandum of Points in Opposition to Qualcomm Incorporated's Partial

22   Motion to Dismiss (Doc. # 265) filed by Plaintiff Broadcom Corporation.

23                              **BACKGROUND**

24        This action arises out of allegations that Defendant Qualcomm Incorporated

25   ("Qualcomm") systematically undermined competition in the markets for technology and

26   integrated circuit chips used in mobile wireless devices, and willfully manipulated various

27   standard-setting processes.  On July 1, 2005, Plaintiff Broadcom Corporation ("Broadcom")

28   initiated this action by filing a complaint (Doc. # 1) in the United States District Court for the

District of New Jersey.  On November 2, 2007, Broadcom filed the Second Amended Complaint ("SAC"), which is the operative pleading in this case (Doc. # 2).  On September 3, 2008, the case was transferred to the Southern District of California from the District of New Jersey (Doc. # 194).

## I.      Factual Allegations in the SAC

### A.      The Parties

Broadcom is a supplier of semiconductors for wired and wireless broadband communications.  *SAC,* ¶ 2.  Qualcomm operates several business units around the world.  Relevant to this action, Qualcomm licenses its intellectual property rights ("IPR") through a business unit called the Technology Licensing Segment, and sells chipsets through a business unit called the CDMA Technologies Segment.  *Id.* ¶ 3.

### B.      The Structure of the Mobile Wireless Industry

Mobile wireless carriers ("carriers") provide cell phone service to consumers.  *Id.* ¶ 15.  Cell phone manufacturers "manufacture mobile wireless handsets (also known as cell phones), and the manufacturers typically sell those phones to the carriers, which in turn arrange for sale of the cell phones to consumers."  *Id.*  Among other components, cell phones contain "one or more computer chipsets that deliver the cell phones' core ability to communicate with the wireless system."  *Id.* ¶ 17.  Once a carrier has made an initial decision to install a particular wireless system, "the sunk investment in that system, and the costs that would be incurred to establish a different system, make it virtually impossible to switch to a different technology."  *Id.* ¶ 50.  Only phones with the appropriate technology will work on a particular mobile wireless network, and the chipsets that operate cell phones must conform to the technology of the system for which the phone is being manufactured.  *Id.* ¶ 52.

Standards that facilitate the adoption and advancement of technology and facilitate the development of products that can interoperate "are especially critical to and prevalent in the mobile wireless industry," and "are required to ensure that a carrier's wireless system can seamlessly interface and function properly with cell phones made by various manufacturers."  *Id.* ¶ 24.  Standard-development organizations ("SDOs") establish standards for high-

technology industries, such as the wireless industry, to ensure compatibility and interoperability. When SDO participants select a technology to perform a function needed to practice a standard, "all alternative technological solutions for that function are excluded from use in connection with that standard." *Id.* ¶ 43. Thus, once a standard has been adopted, companies can become "locked in" to a particular technology. *Id.* ¶ 44.

If not constrained, the adoption of a patent holder's technology into a standard can then enable the patent holder to extract monopoly rents from parties that want to produce products that implement the standard, and to "capture for itself downstream markets or [] shut down use of the standard entirely." *Id.* ¶¶ 20, 21. "To prevent such abuse of the standard-setting process by participants, SDOs frequently adopt rules, policies, and/or procedures relating to participants' intellectual property rights" ("IPR policies"). *Id.* ¶ 22. For example, SDOs often require patent holders to disclose their essential intellectual property ("IP") and commit to license such IP on fair, reasonable and non-discriminatory ("FRAND") terms. Telecommunications SDOs include the European Telecommunications Standards Institute ("ETSI"), which produces global telecommunications standards. *Id.* ¶¶ 26-30. The ETSI "led and continues to lead the standardization process for a family of standards referred to as Global System for Mobility ("GSM"), GSM Packet Radio Service ("GPRS"), Enhanced Data Rates for GSM Evolution ("EDGE"), and Universal Mobile Telecommunications System ("UMTS")." *Id.* ¶ 30.

"Cell phones have developed through several 'generations' in response to demand for mobile wireless systems that carry data at faster rates and voice traffic at higher capacity." *Id.* ¶ 34. The earliest wireless systems are typically referred to as first generation ("1G"). *Id.* ¶ 34. The leading second generation ("2G") technologies are based on the GSM family of standards, and the Code Division Multiple Access ("CDMA") family of standards, which are incompatible: "a GSM phone will not work on a CDMA network and vice versa." *Id.* ¶ 36. "As demand for wireless systems that carry both data at faster speeds and voice at higher capacity has increased significantly, third generation or '3G' wireless standards have been proposed and adopted by international SDOs." *Id.* ¶ 38. The UMTS standard was designed

to permit economical transition from 2G GSM-based systems to a 3G standard, which incorporates the GSM family of standards as well as a set of 3G protocols based on Wideband Code Division Multiple Access ("WCDMA"). *Id.* ¶ 39. "Despite the similarity in name, cell phones designed for WCDMA operation under the UMTS standard are not compatible with any of the CDMA standards, regardless of generation, and the 3G standard for CDMA networks is entirely separate from either UMTS or WCDMA." *Id.* As cell phone technology continues to develop, development of technologies may be implemented in beyond-third-generation ("B3G") and fourth-generation ("4G") mobile wireless systems.

### C.   Qualcomm's Anticompetitive Conduct

#### i.   Monopolization of the CDMA Chipset Markets

The CDMA standard cannot be practiced without using Qualcomm's patented technology because Qualcomm holds more than 1400 patents relating to CDMA technology, including the majority of patents declared as "essential" for the various generations of CDMA, and has more than a 90% share of each of the CDMA chipset markets. *Id.* ¶¶ 57, 60. "Qualcomm has charged extremely high prices for CDMA chipsets - on the order of double the price of GSM chipsets - that are not justified by production costs, by product functionality, or by quality," and has "repeatedly demonstrated that it possesses the power to control the output of CDMA chipsets." *Id.* ¶ 61. Qualcomm's control of essential patents create high barriers for entry into the CDMA chipset market. *Id.* ¶ 62. "Qualcomm's durable monopoly position in the CDMA markets has resulted from a continuing course of exclusionary and anticompetitive conduct," including using its power over the CDMA chipset supply to discipline customers and exclude competitors, and reducing royalty rates when a licensee agrees to purchase Qualcomm chipsets exclusively. *Id.* ¶¶ 64-69.

#### ii.   Qualcomm's Monopolization of the WCDMA Chipset Markets

"Successful in its efforts to obtain and maintain its CDMA chipset monopolies, Qualcomm now has its eyes set on the UMTS chipset market." *Id.* ¶ 70. Qualcomm is a member of the ETSI, and expressly agreed to license patents that it claims are essential to practicing ETSI standards on terms and conditions that comply with the ETSI's IPR Policy.

*Id.* ¶¶ 72, 85. Qualcomm deliberately and intentionally failed to timely disclose any patents as being purportedly essential to the UMTS standard, as required by virtue of its participation in the ETSI. *Id.* ¶¶ 93-98. Qualcomm falsely represented that it would license any of its essential patents on FRAND terms. *Id.* ¶¶ 89-90. "In reliance on Qualcomm's FRAND assurances, SDOs around the world, including the ETSI, included Qualcomm's technology in the UMTS standard." *Id.* ¶ 90. In contradiction of its FRAND commitments, Qualcomm has engaged in anticompetitive conduct through making unreasonable royalty demands, and licensing its IPR on unreasonable terms. *Id.* ¶¶ 110, 112, 113.

       *iii.*     Abuse of the Standard-Setting Process for GSM/GPRS/EDGE, H.264, IEEE 802.20, and CDMA 200 EVDV

Qualcomm is the assignee of at least 104 patents or patent applications that it claims are essential to practice GSM, GPRS and/or EDGE. *Id.* ¶ 144. Qualcomm deliberately and intentionally failed to timely disclose the patent numbers of patents it considered essential to practice GSM, GPRS and/or EDGE in violation of the ETSI IPR Policy. *Id.* ¶¶ 143-149. Qualcomm selectively asserts its patents through patent infringement actions with respect to patents purportedly essential to GSM, GPRS, and EDGE "in an effort to shield its anticompetitive conduct from challenge, and in furtherance of its monopolization of the WCDMA technology markets and the UMTS chipset market." *Id.* ¶ 159. Qualcomm refuses to honor its commitments to the ETSI to license its purportedly essential IPR on FRAND terms and conditions and in accordance with the other terms of the ETSI IPR Policy. Qualcomm's failure to timely disclose its patent rights to the ETSI and unwillingness to license its purportedly essential IPR on FRAND terms has allowed Qualcomm to demand and obtain monopoly rents and terms from parties practicing the GSM, GPRS, and EDGE standards. *Id.* ¶¶ 162-168. Furthermore, "[b]ecause UMTS chipsets must have backward compatibility with GSM, GPRS, and EDGE as previous GSM-path standards, Qualcomm's conduct in GSM/GPRS/EDGE had the additional effect of reinforcing the effects of Qualcomm's conduct relating to UMTS chipsets." *Id.* ¶ 169.

H.264 is a standard for video compression, developed by the Joint Video Team ("JVT"), a SDO involved in setting standards for digital video compression. *Id.* ¶¶ 170-175. Qualcomm claims to own at least two patents that are purportedly essential to practice H.264. *Id.* ¶ 191. Qualcomm participated in the JVT's development of the H.264 standard, and as a result is bound by JVT's Terms of Reference for Joint Video Team Activities ("JVT Terms of Reference"), which requires participants in the standard-setting process to disclose patents believed to be essential to the H.264 standard. *Id.* ¶¶ 181-186. Qualcomm deliberately and intentionally failed to timely disclose its patents purportedly essential to practice the H.264 standard. *Id.* ¶¶ 195-199. Qualcomm refused to offer FRAND licenses with respect to its patents purportedly essential to practice the H.264 standard. Qualcomm's failure to timely disclose its patents to the JVT, and its refusal to offer FRAND licenses to its patents has injured Broadcom by interfering with Broadcom's ability to develop and market semiconductors for H.264-compliant devices, and has allowed Qualcomm to obtain or seek monopoly rents and terms from parties practicing the H.264 standard. *Id.* ¶¶ 240-241.

The IEEE 802.20 working group is an SDO, which is developing the IEEE 802.20 standard, sometimes referred to as a 4G wireless standard. *Id.* ¶¶ 247-248. Both Qualcomm and Broadcom participated in and were members of the IEEE 802.20 working group. *Id.* ¶¶ 254-255. Qualcomm took several improper steps in attempt to steer the IEEE 802.20 working group toward adopting Qualcomm technology for the IEEE 802.20 standard, including improperly sending employees and consultants to cast multiple votes on Qualcomm's behalf, and paying the chairman of the IEEE 802.20 working group as an "independent consultant," and failing to timely disclose this financial relationship to the IEEE 802.20 working group. *Id.* ¶¶ 257-264.

D.   Claims for Relief

The first three claims for relief allege violations arising under the federal antitrust laws. The first claim for relief alleges that Qualcomm "has unlawfully monopolized the WCDMA technology markets by inducing the relevant SDOs to adopt 3G standards that incorporate Qualcomm's patents as an essential element, relying on Qualcomm's promise to observe

FRAND licensing and the relevant SDO IPR disclosure policies, and then not acting in accordance with those promises, all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2." *Id.* ¶ 276.  The second claim for relief alleges that Qualcomm has willfully and unlawfully engaged in, and is willfully and unlawfully engaging in a cumulative course of conduct with the specific intent of monopolizing the UMTS chipset market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. *Id.* ¶¶ 281-282.  The third claim for relief alleges that Qualcomm "has unlawfully monopolized the markets for providing the functionality that its purportedly essential GSM, GPRS, and EDGE IPR covers by failing to disclose timely its purportedly essential IPR to ETSI, which IPR ETSI purportedly incorporated in the GSM, GPRS, and EDGE standards as an essential element, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2." *Id.* ¶ 286.

The fourth through eight claims for relief allege violations arising under California state law.  The fourth claim for relief alleges that Qualcomm entered into actual or implied contracts with the ETSI, the JVT and other SDOs relating to the GSM, GPRS, EDGE, UMTS, and H.264 standards, and breached these contracts by failing to timely disclose Qualcomm's purportedly essential IPR, failing to offer to license the IPR that it now claims to be essential in accordance with its FRAND commitments, and failing to disclose certain financial relationships.  *Id.* ¶¶ 290-295.  The fifth claim for tortious interference with prospective economic advantage alleges that "Qualcomm has undertaken a willful and malicious course of conduct to foreclose Broadcom from various commercial opportunities in chipsets that implement the GSM, GPRS, EDGE, UMTS, and H.264 standards." *Id.* ¶ 298.  The sixth claim for promissory estoppel alleges that Qualcomm falsely promised potential licensees of its declared essential technology through its promises to various SDOs that it would disclose relevant IPR and would license its IPR on FRAND terms.  *Id.* ¶ 303.  The seventh claim for fraud alleges that Qualcomm intentionally failed to disclose its patents to the ETSI, the JVT and other relevant SDOs, and intentionally failed to disclose its financial relationship to members of the IEEE 802.20 working group.  *Id.* ¶ 309.  The eighth claim for violations of section 17200 of the California Business and Professions Code alleges that Qualcomm's

misconduct before the ETSI, the JVT, the IEEE 802.20 working group and other SDOs, and its claim of ownership of IPR in the GSM, GPRS, EDGE, UMTS, and H.264 standards constitute unlawful business practices, unfair business acts or practices and fraudulent business practices. *Id. ¶* 320.

## II.     Procedural History

On September 19, 2005, Broadcom amended its original complaint by filing a first amended complaint ("FAC") (Doc. # 14).  The FAC alleged federal antitrust and state-law claims arising out of Qualcomm's misconduct before the ETSI and its practices with respect to licensing its purportedly essential UMTS intellectual property.  The FAC did not contain any allegations with respect to the JVT, the H.264 standard, the IEEE 802.20 working group or the IEEE 802.20 standard.  On December 12, 2005, Qualcomm filed a motion to dismiss the FAC (Doc. # 30).  On August 31, 2006, the New Jersey federal court granted the motion to dismiss with prejudice as to the federal claims and without prejudice as to the state-law claims (Doc. # 86).  On April 12, 2007, Broadcom filed a complaint in the Superior Court for Orange County (the "State Court Action").  *Broadcom Corp. v. Qualcomm, Inc.,* No. 07CC01249 (Cal. Super. Ct. Orange County).  In addition to repleading its UMTS claims under state law, the State Court Action added additional allegations relating to the GSM/GPRS/EDGE family of standards and Qualcomm's conduct before the ETSI, and state law claims relating to the JVT, the H.264 standard, the 802.20 working group and the 802.20 standard.  On September 4, 2007, the Third Circuit Court of Appeals reinstated Broadcom's federal antitrust claims related to the UMTS standard and Qualcomm's conduct before the ETSI, and Broadcom's state-law claims.  *Broadcom Corp. v. Qualcomm Inc.,* 501 F.3d 297, 313 (3d Cir. 2007).  Shortly after the Third Circuit opinion, Qualcomm "promptly sought and obtained a stay" of the State Court Action.  *Mot. to Dismiss,* p. 4.

On November 2, 2007, Broadcom filed the SAC, which incorporated the state-law claims alleged in the State Court Action.  On December 4, 2007, the New Jersey Magistrate Judge issued an amended pretrial scheduling order ("Scheduling Order"), which required Qualcomm to file any counterclaims to the SAC on or before February 29, 2008 (Doc. # 115).

On February 29, 2008, Qualcomm filed a document entitled "Counterclaims and Affirmative Defense" ("Counterclaim") (Doc. # 139).   The Counterclaim states the following counterclaims for relief: (1) declaratory judgment, which "seeks a declaration that Qualcomm's disclosure of IPR was timely;" and (2) declaratory judgment, which "seeks a declaration that the terms offered by Qualcomm to Broadcom for rights to Qualcomm's UMTS practices are 'fair, reasonable and non-discriminatory', as those terms are used in the ETSI IPR Policy." *Counterclaim,* ¶¶ 117, 121.  The Counterclaim also asserts the affirmative defense of unclean hands on grounds that Broadcom participated in a conspiracy to refuse to license its IP to Qualcomm on fair and reasonable terms and to improperly file lawsuits against Qualcomm. The Counterclaim asserts that "Broadcom's claims are barred by the doctrine of unclean hands," and that "Qualcomm reserves the right to assert additional affirmative defenses when it answers Broadcom's Second Amended Complaint."  *Id.* p. 38-39.

On October 20, 2008, Qualcomm filed the Motion to Dismiss Claims Four through Eight of Plaintiff's SAC ("Motion to Dismiss").  On October 27, 2008, Broadcom filed the Motion to Deem Qualcomm's Responsive Pleading to be its Answer, to Strike Qualcomm's Affirmative Defense and Related Allegations, and to Dismiss Qualcomm's Counterclaims ("Motion to Strike").  On November 17, 2008, Broadcom filed a Response in Opposition to the Motion to Dismiss (Doc. # 245).  On November 24, 2008, Qualcomm filed a Response in Opposition to the Motion to Strike (Doc. # 247).  On December 12, 2008, Qualcomm filed a Reply to the Response in Opposition to the Motion to Dismiss (Doc. # 257).  On December 15, 2008, Broadcom filed a Reply to the Response in Opposition to the Motion to Strike (Doc. # 260).  On January 6, 2009, Broadcom filed the Ex Parte Motion for Leave to File a Sur Reply in Opposition to the Motion to Dismiss, and attached the Sur Reply as Exhibit A.  On February 2, 2009, the Court heard oral argument (Doc. # 267).

///

///

///

///

**ANALYSIS**

**I.      Broadcom's Motion to File a Sur-Reply**

Broadcom requests leave to file a Sur-Reply to Qualcomm's Motion to Dismiss pursuant to the Court's December 5, 2008 order granting the parties' joint motion for entry of stipulation concerning briefing, which stated that if "Broadcom requests leave to file a sur-reply to Qualcomm's Reply in Support of Its Partial Motion to Dismiss, Qualcomm will not oppose that request provided that the sur-reply does not exceed three pages in length and is limited to a response to any discussion of the Federal Circuit's 12/1/2008 decision in *Qualcomm Inc. v. Broadcom Corp.,* Nos. 2007-1545, 2008-1162" (Doc. # 254).  Broadcom attached the Sur-Reply as Exhibit A to the Motion to File a Sur-Reply.  Qualcomm has not filed an opposition to the Motion to File a Sur-Reply.  The Court grants the Motion to File a Sur-Reply, and has considered the Sur-Reply in deciding the Motion to Dismiss.

**II.     Qualcomm's Motion to Dismiss Claims Four through Eight of the Second Amended Complaint**

Qualcomm moves to dismiss claims four through eight of the SAC insofar as they seek to recover on grounds that Qualcomm's conduct related to the JVT, the H.264 standard, the IEEE 802.20 working group and the IEEE 802.20 standard violated state law. Qualcomm asserts that the Court lacks subject matter jurisdiction over these claims because they do not share a common nucleus of operative fact with the SAC's federal claims over which the Court has original jurisdiction.  Alternatively, Qualcomm contends that these claims should be dismissed as barred by res  judicata, and as violating the compulsory counterclaim rule.

Qualcomm contends that the factual allegations giving rise to Broadcom's federal claims involve the Qualcomm's conduct before the ETSI with respect to the GSM, GPRS, EDGE and UMTS standards, and are completely unrelated to the factual allegations giving rise to Broadcom's state law claims involving the JVT, the H.264 standard, the IEEE 802.20 working group and the IEEE 802.20 standard.[1]  Qualcomm contends that Broadcom's theory

---

[1] The SAC alleges that Qualcomm's conduct before the ETSI and related to the GSM, GPRS, EDGE and UMTS standards violated state law.  However, the Motion to Dismiss does not request dismissal of the SAC's state law claims insofar as they assert state law violations arising from

giving rise to its federal claims is completely unrelated to its JVT and IEEE 802.20 working group theory such that the categories of evidence that will be crucial to Qualcomm's federal claims are inapposite to the facts Broadcom must prove with respect to its JVT and IEEE 802.20 claim.  Qualcomm contends that ETSI, the JVT and the IEEE 802.20 working group are governed by separate rules, and that the SAC's claims relating to ETSI, the JVT and the IEEE 802.20 working group relate to entirely different spans of time.  Qualcomm contends that operative facts underlying Broadcom's federal claims involve different rules of a different SDO, different disclosures of different patents at different times, different technically viable alternatives to any Qualcomm patents, and different FRAND commitments.  Qualcomm contends that unlike the wireless communications standards at issue in Broadcom's federal claims, the JVT and H.264 standard have nothing to do with telecommunications.  *Id.* at 15. Qualcomm contends that the "sole 'connection' Broadcom alleges between its IEEE/JVT state law claims and its ETSI claims is that Qualcomm's conduct before each group allegedly 'is part of a pattern of misconduct,'" which is insufficient to establish supplemental jurisdiction. *Id.* at 17.

Broadcom contends that each of the SAC's state law claims arises in part from misconduct by Qualcomm before the same SDO (i.e. ETSI), and in relation to the same standards (i.e. GSM, GPRS, EDGE and UMTS) that are the subjects of Broadcom's federal claims.  Broadcom contends that even assuming the SAC "included stand-alone JVT and 802.20 state-law claims (which it does not), they would still share a common nucleus of operative facts with Broadcom's federal antitrust claims" for the following reasons:

> (1) Qualcomm employees and agents who oversaw Qualcomm's [IPR] disclosure and licensing policies applicable to patents that Qualcomm asserts are essential to implement standards created by ETSI, the JVT, and the IEEE are likely to have been largely the same, as Qualcomm itself acknowledged; (2) the chipsets that comply with the UMTS and H.264 standards are, in many cases, one and the same, and Qualcomm often licensed its purportedly essential IPR for both standards in the same license agreements; and (3) Qualcomm's misconduct in the 802.20 Working Group is relevant to Qualcomm's intent and efforts to monopolize UMTS technology and chipsets, as it demonstrates a strategy to deter the emergence of new technology with the potential to compete with UMTS.

---

Qualcomm's conduct with respect to the ETSI or the GSM, GPRS, EDGE and UMTS standards.

*Opposition,* p. 10.  Broadcom also contends that the pattern of Qualcomm's misconduct alleged in this case involves the ETSI, GSM, GPRS, EDGE and UMTS standards, the JVT, the H.264 standard, the IEEE 802.20 working group and the IEEE 802.20 standard, and provides a basis for Broadcom's state unfair competition law claim.

Pursuant to 28 U.S.C. section 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form the same controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Federal courts have broad authorization under section 1367 to assert supplemental jurisdiction over state law claims when the state and federal claims derive from a "common nucleus of operative fact," the claims are such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding," and the federal issues are substantial.  *Executive Software North America, Inc. v. Jensen,* 24 F.3d 1545, 1552 (9th Cir. 1994).  However, "[i]t has consistently been recognized that [supplemental] jurisdiction is a doctrine of discretion." *Id.* at 1556.

As alleged in the SAC, Qualcomm made misrepresentations before the ETSI with respect to its patents related to the GSM, GPRS, EDGE and UMTS family of standards.  The SAC alleges that this conduct before the ETSI in connection with the GSM, GPRS, EDGE and UMTS family of standards gives rise to Broadcom's three federal antitrust claims for (1) monopolization of the WCDMA technology markets, (2) attempted monopolization of the UMTS chipset market, and (3) monopolization of the GSM, GPRS and EDGE technology markets.  Broadcom does  not dispute that each of the SAC's federal antitrust claims arises from alleged misconduct by Qualcomm before ETSI with respect to the GSM, GPRS, EDGE, and UMTS family of standards.  *See Opposition,* p. 8.

As alleged in the SAC, the JVT is a SDO involved in setting standards for digital video compression, and H.264 is a standard for video compression.   The SAC does not allege that the H.264 standard has any relation to the GSM, GPRS, EDGE, and UMTS family of standards or that the H.264 standard has any relation to wireless standards at all.  The SAC alleges that

the IEEE 802.20 standard is "currently under development for packet-based air interface for Internet Protocol (IP) services," and is "sometimes referred to as a 4G wireless standard." *Complaint,* ¶¶ 247-248.  Even though the SAC alleges that the IEEE 802.20 standard is a wireless standard, the SAC does not allege that this standard is related to the GSM, GPRS, EDGE, and UMTS family of standards.  The SAC does not allege that the H.264 standard or the IEEE 802.20 standard relate to the GSM, GPRS, EDGE and UMTS family of standards which are the basis of the federal claims.  The state law claims relating to the JVT, H.264 standard, IEEE 802.20 working group and IEEE 802.20 standard involve representations before the JVT and the IEEE 802.20 working group respectively, whereas the federal claims in the SAC involve representations before the ETSI.  The SAC does not allege any facts to show that the JVT and 802.20 working group have any relation to the ETSI.  The state law claims in the SAC with respect to the JVT, H.264 standard, IEEE 802.20 working group and IEEE 802.20 standard and the federal claims involve representations before different SDOs, and the SAC does not allege facts to support a finding that the ETSI, IEEE 802.20 working group and JVT are related.  As alleged in the SAC, the state law claims relating to the JVT, H.264 standard, IEEE 802.20 working group and IEEE 802.20 standard also involve different licensing agreements, different FRAND terms, different time frames, and different IPR.  The Court finds that the SAC fails to allege that the state law claims relating to the JVT, H.264 standard, IEEE 802.20 working group and IEEE 802.20 standard share a common nucleus of operative facts with the federal claims.

Even if the SAC's allegations with respect to the JVT, H.264 standard, IEEE 802.20 working group and IEEE 802.20 standard are relevant to Broadcom's federal antitrust claims in that, if true, they may tend to show a pattern of misconduct, supplemental jurisdiction over the state law claims does not exist simply because evidence that is the basis for these state law claims may be relevant to proving the federal claims; relevance to Broadcom's federal claims alone does not support the conclusion that there is a common nucleus of operative fact between the state law claims with respect to the JVT, H.264 standard, IEEE 802.20 working group and IEEE 802.20 standard and the federal claims.  Broadcom asserts that Qualcomm's conduct

related to the JVT, H.264 standard, IEEE 802.20 working group and IEEE 802.20 standard is "parallel" to Qualcomm's conduct related to the ETSI, and GSM, GPRS, EDGE and UMTS family of standards. However, "parallel" conduct underlying the two claims does support the conclusion that the operative facts underlying the two claims are common, overlap, or "share a common nucleus." *Executive Software,* 24 F.3d at 1552. The Court concludes that Broadcom's Unfair Competition claim, which alleges a pattern of misconduct encompassing all three SDOs (ETSI, JVT and IEEE 802.20 working group), does not create supplemental jurisdiction under the facts alleged because federal courts only have supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(a), and the SAC does not allege facts to support that the UCL claim is within the original jurisdiction of the federal courts.

The allegations in the SAC do not support a finding that the SAC's state law claims involving the JVT, the H.264 standard, the IEEE 802.20 working group and the IEEE 802.20 standard and the SAC's federal claims over which the Court has original jurisdiction derive from a common nucleus of operative fact. The Court concludes that it does not have supplemental jurisdiction over the SAC's fourth, fifth, sixth, seventh and eight claims for relief insofar as they relate to the JVT, the H.264 standard, the IEEE 802.20 working group and the IEEE 802.20 standard. To the extent that the state law claims derive from alleged misconduct before the ETSI or related to the GSM, GPRS, EDGE or UMTS standards, the Court concludes that it has supplemental jurisdiction over these state law claims. The Court grants the Motion to Dismiss, and dismisses claims four through eight of the SAC as to Broadcom's state law claims involving the JVT, H.264 standard, IEEE 802.20 working group and IEEE 802.20 standard.

///

///

///

///

**III.   Broadcom's Motion to Deem Qualcomm's Responsive Pleading to be its Answer, to Strike Qualcomm's Affirmative Defense and Related Allegations, and to Dismiss Qualcomm's Counterclaims**

    A.   <u>Request to Deem Qualcomm's February 29, 2008 "Counterclaims and Affirmative Defense" to be Qualcomm's Answer</u>

Broadcom contends that even though the Federal Rules of Civil Procedure do not require Qualcomm to file a responsive pleading because Qualcomm filed the Motion to Dismiss, "Qualcomm nevertheless chose to assert an 'affirmative defense' responding to" the SAC. *Mot. to Strike,* p. 4. Broadcom contends that in choosing to assert its own factual theories without responding to Broadcom's allegations, Qualcomm has ignored the mandate in Rule 8 of the Federal Rules of Civil Procedure that "[i]n responding to a pleading, a party must . . . admit or deny the allegations asserted against it by an opposing party." *Id.* at 3 (quoting Fed. R. Civ. P. 8(b)). Broadcom contends that it was Qualcomm's choice to engage in piecemeal pleading that conflicts with the Federal Rules of Civil procedure, "and Qualcomm should bear the consequences - the Rules require that Qualcomm be held to its pleading, with the allegations to which Qualcomm chose not to respond deemed admitted." *Id.* at 4 (quoting Fed. R. Civ. P. 8(b)(6)).

Qualcomm states that "[o]nce the Court resolves the pending motion to dismiss, Qualcomm will file its answer to Broadcom's remaining allegations." *Opposition,* p. 16. Qualcomm contends that it "would be unjust for this Court to hold that Qualcomm, which adhered to the New Jersey Court's scheduling order and the Federal Rules in filing its counterclaims and an affirmative defense in advance of an answer, has 'admitted' to all of Broadcom's allegations." *Id.* at 17. Qualcomm contends that "Broadcom can present no reasoned basis for its objection to receiving earlier notice of Qualcomm's affirmative defense than it otherwise might have, and it is unsurprising that neither the federal rules nor case law suggest the unjust result that Broadcom advocates." *Id.*

Rule 8 of the Federal Rules of Civil Procedure provides: "In responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ.

P. 8(b)(1).  Rule 8 provides that "[a]n allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."  Fed. R. Civ. P. 8(b)(6).  Rule 8 further provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."  Fed. R. Civ. P. 8(c).  The Federal Rules should "be construed and administered to secure the just . . . determination of every action and proceeding," Fed. R. Civ. P. 1, and pleadings "must be construed so as to do justice," Fed. R. Civ. P. 8(e).

The December 4, 2007 Scheduling Order stated that "[n]otwithstanding the pendency of any motion to dismiss, and regardless of whether Defendant has served and filed an answer, Defendant shall serve and file counterclaims no later than February 29, 2008." *Scheduling Order*, p. 2.  The Scheduling Order did not prohibit the filing of affirmative defenses with Qualcomm's counterclaims.  The Federal Rules and case law do not suggest that a defendant, in filing counterclaims and an affirmative defense in advance of an answer, is deemed to have admitted all of a complaint's allegations.  The Court concludes that deeming Qualcomm's Counterclaims and Affirmative Defense to be its answer is not in the interests of justice or supported by law, and declines to deem Qualcomm's Counterclaims and Affirmative Defense to be its answer.

B.     Request to Strike Qualcomm's Affirmative Defense and Related Stockholm-Koala Allegations

Broadcom contends that "[i]f Qualcomm wants to assert the affirmative defense of unclean hands to Broadcom's claims, it must do so in its Answer to those claims - and if Qualcomm's February 29th Filing is intended to be the functional equivalent to Qualcomm's Answer, then the Court should treat it as such." *Mot. to Strike*, p. 5.  Broadcom contends that Qualcomm's affirmative defense and related allegations should be stricken as premature.  Broadcom further contends that Qualcomm's Stockholm-Koala allegations, which concern a supposed conspiracy that makes Broadcom's hands unclean, "ha[ve] nothing to do with the issues Qualcomm seeks to have adjudicated in its actual counterclaims, namely, whether 'Qualcomm's disclosure of IPR was timely' and whether 'the terms offered by Qualcomm to

Broadcom for rights to Qualcomm's UMTS patents are 'fair, reasonable, and non-discriminatory.'" *Id.* at 6-7. Broadcom contends that Qualcomm's affirmative defense of unclean hands is legally insufficient because unclean hands is not recognized as a defense to an antitrust action. Broadcom contends that its conduct that was supposedly unclean - refusing to accept licensing offers and suing Qualcomm for its anticompetitive behavior - is legally protected.

Qualcomm contends that its affirmative defense "was properly raised under the pretrial order and under the Federal Rules." *Opposition,* p. 12. Qualcomm contends that Rule 12(f) of the Federal Rules of Civil Procedure provides no basis for striking a premature assertion, and only provides for striking an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Id.* at 12-13. Qualcomm contends that Broadcom fails to establish that it has been prejudiced because Rule 23(b)(1) of the Federal Rules of Civil Procedure plainly allows a party to take discovery to support its defenses, and "a party is not limited in taking discovery to defenses that have formally been served on opposing counsel." *Id.* at 14. Qualcomm contends that "Broadcom's argument that unclean hands may not be available to defeat its claims under the federal antitrust laws . . . provides no basis for striking Qualcomm's affirmative defense, since it remains fully applicable to Broadcom's" state law claims. *Id.* at 18.

Rule 12(f) of the Federal Rules of Civil Procedure provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike a pleading are disfavored and "are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Ky. Cent. Life Ins. Co.,* 814 F. Supp. 820, 830 (N.D. Cal. 1992). "[C]ourts often require a showing of prejudice by the moving party before granting" a motion to strike, and "[u]ltimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.,* 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citing *Fantasy, Inc., v. Fogerty,* 984 F.2d 1524, 1528 (9th Cir. 1993). In exercising its discretion, the court views the

pleadings in the light most favorable to the non-moving party, and "resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in the defendant's favor." *Cal. Dept. of Toxic Substances Control,* 217 F. Supp. 2d at 1033.

The defense of unclean hands does not apply to antitrust claims. *Memorex Corp. v. Int's Bus. Machines Corp.,* 555 F.2d 1379, 1381-84 (9th Cir. 1977). An unclean hands defense is applicable to both legal and equitable claims under California law. *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists,* 227 Cal. App. 2d 675, 727-28 (1964).

In support of Qualcomm's affirmative defense for unclean hands, the Counterclaim alleges that Broadcom and other companies "conspired to attack Qualcomm through, among other things concerted global litigation, improper SDO activities and coordinated licensing strategies." *Counterclaim,* ¶ 88. The Counterclaim further alleges that Broadcom has refused to license its own patents to Qualcomm on FRAND terms. *Id.* ¶ 109. Viewing these allegations in the light most favorable to Qualcomm, the non-moving party, the Court finds that Qualcomm's affirmative defense is substantively proper because the Counterclaim alleges Broadcom's anticompetitive collusion and bad faith, which may give rise to an unclean hands defense, and has some bearing on the subject matter of this litigation. The Court further finds that Qualcomm's affirmative defense is procedurally proper because nothing in the Scheduling Order, Federal Rules or case law prohibits filing an affirmative defense with a counterclaim in advance of an answer, and an unclean hands defense is applicable to Broadcom's state law claims. Furthermore, Broadcom has not shown that it will be prejudiced as a result of Qualcomm's proving earlier notice of it's defenses than is required under the Federal Rules. The Court declines to exercise its discretion to strike Qualcomm's affirmative defense of unclean hands.

C.      Request to Dismiss Qualcomm's Counterclaims

Broadcom contends that "[o]nce Qualcomm's improper and legally deficient affirmative defense and the allegations made in support of it are set aside, it becomes clear that Qualcomm's actual counterclaims are nothing but mirror-images of particular elements of some of Broadcom's claims." *Mot. to Strike,* p. 10-11. Broadcom contends that Qualcomm's

counterclaims seek a declaration that Qualcomm's disclosure of its IPR to ETSI was timely, and that the terms offered by Qualcomm to Broadcom for rights to Qualcomm's UMTS patents are FRAND.  Broadcom contends that these counterclaims should be dismissed as redundant because "[t]hese precise issues are raised throughout the [SAC] and constitute core elements of seven out of eight of Broadcom's claims for relief."  *Id.* at 12.

Qualcomm contends that counterclaims "almost always overlap with 'some' of the plaintiff's allegations, because they touch upon related subject matter," but "that does not make them redundant."  *Opposition,* p. 7.  Qualcomm contends that dismissal of a counterclaim as redundant is only proper where, unlike here, the counterclaim is completely redundant with a plaintiff's claim.  Qualcomm contends that Broadcom's claims against Qualcomm are not simply for a declaratory judgment that Qualcomm's IPR disclosures were untimely or that its license offers were not on FRAND terms "such that Qualcomm's counterclaims might be deemed redundant 'mirror images.'"  *Id.* at 9.  Qualcomm contends that Broadcom has asserted affirmative claims for damages and injunctive relief, which will require Broadcom to prove multiple elements beyond whether Qualcomm's IPR disclosures were timely and whether Qualcomm's license offers were FRAND.  Qualcomm states: "If Broadcom's claims are resolved against Broadcom for failure to establish any of these other elements, the core issues of whether Qualcomm's IPR disclosures were timely and whether its license offers were FRAND would remain unresolved.  It is for this very reason that Qualcomm brought its counterclaims seeking declaratory judgments."  *Id.* at 10.

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir. 1986).  "Clearly a district court need not accept a redundant declaratory counterclaim . . . , and may reserve making a decision on whether declaratory relief is appropriate until after the decision on the plaintiff's claim. . . .  The standard is whether the declaratory relief would be appropriate as cumulative or alternative relief."  *Morton Int's, Inc. v. Cardinal Chemical Co.,* 967 F.2d 1571, 1576 (Fed. Cir. 1992).

In determining that the district court erred in striking a counterclaim at the pleadings state, the Second Circuit has stated that "[w]hile it may turn out at trial that a decision on the merits of the plaintiff's bill will dispose of the controversy between the parties completely and render declaratory judgment unnecessary, in which case the counterclaim may be dismissed, we are of opinion that it was error to strike out the counterclaim [at the pleadings] stage." *Leach v. Ross Heather & Mfg. Co.,* 104 F.2d 88, 91-92 (2d Cir. 1939).

The eight claims for relief asserted by Broadcom require proof of elements beyond whether Qualcomm's IPR disclosures were timely and whether Qualcomm's license offers were on FRAND terms. If any of these claims are resolved against Broadcom for failure to prove elements unrelated to Qualcomm's IPR disclosures and Qualcomm's license offers, issues with respect to the timeliness of Qualcomm's IPR disclosures and the terms of Qualcomm's license offers may remain unresolved. The Court therefore concludes that Qualcomm's counterclaims are not redundant, and that dismissal of Qualcomm's counterclaims is not proper at this stage of the proceedings. Broadcom's request to dismiss Qualcomm's counterclaims is denied.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Leave to File a Sur Reply Memorandum of Points in Opposition to Qualcomm Incorporate's Partial Motion to Dismiss (Doc. # 265) filed by Plaintiff Broadcom Corporation is **GRANTED**. The Motion to Dismiss Claims Four through Eight of Plaintiff's Second Amended Complaint (Doc. # 238) filed by Defendant Qualcomm Incorporated is **GRANTED.** The Fourth through Eighth Claims in the Second Amended Complaint are **DISMISSED** insofar as they relate to the Joint Video Team, the H.264 standard, the IEEE 802.20 working group and the IEEE 802.20 standard. The

///
///
///
///
///

08cv1607 WQH (LSP)

1  Motion to Deem Qualcomm's Responsive Pleading to be its Answer, Strike Qualcomm's

2  Affirmative Defenses and Related Allegations, and Dismiss Qualcomm's Counterclaims (Doc.

3  # 239) filed by Plaintiff Broadcom Corporation is **DENIED**.

4  DATED:  March 11, 2009

5

*William Q. Hayes*

**WILLIAM Q. HAYES**
6  United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08cv1607 WQH (LSP)